IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, and MARK KARPELES, an individual,<br><br>*Defendants*. | Case No. 1:14-cv-1437 |

**PLAINTIFF'S MOTION FOR AND MEMORANDUM
IN SUPPORT OF CLASS CERTIFICATION**

Plaintiff Gregory Greene ("Greene") by and through his undersigned counsel, hereby respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), but requests that the Court enter and continue the instant motion until after the completion of discovery on class wide issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in support of class certification.[1]

**I.      INTRODUCTION.**

This matter presents a model case for class certification. Defendants MtGox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles (collectively referred to in the singular as "Mt. Gox")

---

[1] Plaintiff filed this motion at the outset of the litigation to prevent Defendants from attempting a so-called "pick off" to moot his representative claims (*i.e.*, tendering to him the full amount of relief he seeks to recover). *See Damasco v. Clearwire Corp.*, 662 F.3d 891, 896 (7th Cir. 2011) ("Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs . . . If the parties have yet to fully develop the facts needed for certification, then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation.").

1

owns and operates one of the largest web-based Bitcoin[2] exchanges in the world. That is, Mt. Gox is one of largest digital marketplaces where individuals can buy and sell bitcoins, exchange them for traditional currencies (like the United States Dollar), and also deposit and store bitcoins. In an attempt to market its exchange, Mt. Gox uniformly represented to Plaintiff and the Classes that they could use its service to "quickly and securely trade bitcoins with other people around the world" and that they could also "securely store Bitcoins in a virtual 'vault' for safe keeping." Mt. Gox further represented to Plaintiff and the Classes that its website would "always [be] on" and that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform." Unfortunately for its users, Mt. Gox failed to live up to its promises.

A supposed security breach on Mt. Gox's services recently uncovered its massive scheme to defraud millions of consumers. More specifically, and supposedly as a result of the security breach, Mt. Gox recently and abruptly shut down its services, which resulted in the loss of millions of dollars worth of its users' bitcoins. Plaintiff is one such consumer who traded bitcoins on Mt. Gox's exchange and who is now unable to access dozens of bitcoins worth tens of thousands of dollars. In light of Mt. Gox's conduct, Plaintiff filed the instant lawsuit and now respectfully moves the Court for an Order certifying this case as a class action pursuant to Federal Rule of Civil Procedure 23. Plaintiff's claims are readily certifiable because thousands of consumers, like Plaintiff, were subjected to Mt. Gox's misleading representations about the security of the Mt. Gox exchange, as well as representations that he would be able access and withdraw his bitcoins freely. As a result, every class member traded bitcoins on Mt. Gox's exchange and suffered injury in a nearly identical manner (*i.e.*, damages in the form of the difference between what they paid for the Mt. Gox's services and what it's actually worth, as

---

[2] Bitcoin is a form of digital currency. For the sake of clarity, "Bitcoin" refers to the digital currency and "bitcoin" (with a lower case "b") refers to an individual unit of the currency itself.

well as bitcoins and Fiat Currency wrongfully held by Mt. Gox).

For these reasons and as discussed further herein, the proposed Classes meets each of the requisites to certification under Federal Rules 23(a), (b)(2), and (b)(3), and the instant motion may be granted in its entirety. Notwithstanding, Plaintiff respectfully requests that the Court enter and reserve ruling on the motion until after the completion of discovery on class wide issues, at which time Plaintiff will submit a fulsome memorandum of points and authorities in support of class certification.

**II.     FACTUAL BACKGROUND.**

    **A.     Facts Applicable to All Members of the Putative Classes.**

Introduced in early 2009, Bitcoin has quickly become a recognized form of digital currency. (Class Action Complaint and Demand for Jury Trial ["Compl."], Dkt. 1 at ¶ 16.) Just like paper money (*e.g.*, Dollars, Euros, etc.) (commonly known as "Fiat Currency"), bitcoins can be used to purchase and sell goods and services through a number of websites or from any merchant that accepts them. (Id. ¶ 17.) However, that's where the similarities end. (*Id*.) For instance, with "paper money, a government decides when to print and distribute [it]." (*Id*.) Bitcoin, on the other hand, is a currency that is not issued or directly regulated by any central authority or government. (*Id*.) Instead, bitcoins are created by individuals through a complex computer program and then bought and sold to consumers through private "exchanges." (*Id*.)

Mt. Gox claims to operate the "world's most established Bitcoin exchange" that handles "over 80% of all Bitcoin trade" worldwide. (*Id*. ¶ 18.) Mt. Gox boasts that it has become the leader in Bitcoin exchanges because its purported ability to allow consumers to "quickly and securely trade bitcoins with other people around the world with your local currency." (*Id*.) To trade bitcoins using Mt. Gox's service, a consumer must sign up for an account with it at

www.mtgox.com. (*Id.* ¶ 19.) Once registered, users are required to verify their accounts by providing Mt. Gox with detailed information such as the user's full name, date of birth, country of birth, physical address, and proof of identity (such as a state issued identification card). (*Id.* ¶ 19.) Once the registration process is complete, users can start "trading" Bitcoins using Mt. Gox's online trading platform. (*Id.* ¶ 20.) Alternatively, Mt. Gox also provides users "with the ability to securely store Bitcoins in a virtual 'vault' for safe keeping." (*Id.* ¶ 21.) In signing up for an account, Mt. Gox promises that its website is "always on" and that users can "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform." (*Id.* ¶ 22.)

In early February 2014, Mt. Gox halted its users' ability to withdraw any form of currency (including bitcoins) from its website while it purportedly investigated a "bug" or "technical malfunction" in the Bitcoin network. (*Id.* ¶ 24.) Ultimately, reports indicate that Mt. Gox had actually shut down due to a security breach that went unnoticed for *years*, which resulted in the loss of hundreds of millions of dollars worth of its users' bitcoins (approximately 744,000 of them). (*Id.* ¶ 27.)

   **B. Facts Applicable to Plaintiff Greene.**

In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff Greene navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements and representations about its service, including its representations about the exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time—substantially similar to the advertisements and representations described in Section II of the Complaint. (*Id.* ¶ 29.) Relying upon these representations made to him by Mt. Gox on its website when he registered his account—namely, that Mt. Gox would allow him to "quickly and securely trade bitcoins with other people around the world," give him "the ability to securely store [his] Bitcoins in a virtual

4

'vault' for safe keeping," and allow him to access his bitcoins "at any time"—Greene signed up for an account on Mt. Gox's website, transferred United States Dollars into the account, and then used Mt. Gox's services to convert those funds into bitcoins. (*Id*. ¶ 30.)

Unfortunately, as a result of Mt. Gox's unlawful conduct, Greene overpaid it for services that he did not receive, and worse, lost approximately $25,000 dollars. (*Id*. ¶¶ 32-36.)

### C. The Proposed Classes.

As a result of Mt. Gox's conduct described above, Plaintiff brought the instant lawsuit and now seeks certification of two nationwide classes of individuals (the "Classes") defined as follows:

> **Payment Class**: All persons in the United States who paid a fee to Mt. Gox to buy, sell, or otherwise trade bitcoins.
>
> **Frozen Currency Class**: All persons in the United States who had bitcoins or Fiat Currency stored with Mt. Gox on February 7, 2014.[3]

(*Id*. ¶ 37.) As demonstrated below, the proposed Classes meet each of Rule 23's prerequisites to certification and therefore, the instant motion should be granted in its entirety.

### III. THE PROPOSED CLASSES SATISFY EACH OF THE REQUIREMENTS FOR CERTIFICATION.

Class certification is appropriate under Rule 23 when the proponent of certification demonstrates that each of the requirements of Rule 23(a) and at least one of the subsections under Rule 23(b) have been satisfied. Rule 23(a) requires that (i) the proposed class is so numerous that joinder of all individual class members is impracticable (numerosity); (ii) that

---

[3] Excluded from the Payment Class and Frozen Currency Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

5

there are common questions of law and fact amongst class members (commonality); (iii) that the proposed representative's claims are typical of those of the class (typicality); and, (iv) that both the named-representative and his or her counsel have and will continue to adequately represent the interests of the class (adequacy).

In this case, Plaintiff seeks certification of the proposed Classes under both Rule 23(b)(2) and (b)(3). In order to certify a class under Rule 23(b)(2), a plaintiff must show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate…." Under Rule 23(b)(3) there must be (i) questions of law or fact common to the proposed class members, which predominate over any questions affecting only individual members, and (ii) the class mechanism must be superior to other available methods for fairly and efficiently adjudicating the controversy.

In determining whether to certify a proposed class, a court does not inquire into the merits of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). Instead, "for purposes of considering a motion for class certification, the substantive allegations of the complaint are generally assumed to be true and it is also assumed that cognizable claims are stated." *Anderson v. Cornejo*, 199 F.R.D. 228, 237 (N.D. Ill. 2000). Thus, courts are required to analyze the allegations of the complaint and any evidence submitted by the parties, with a presumption in favor of certification. *Id*.

As explained further below, the proposed Classes in this case meet all of the requirements of Rules 23(a), (b)(2) and (b)(3), and therefore, can properly be certified.

    **A.    The Numerosity Requirement is Satisfied.**

Rule 23(a)'s first requirement—numerosity—is satisfied where "the class is so numerous

that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). However, there is no specific number required, nor are the plaintiffs required to state the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Generally, "[t]he court is permitted to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, 2004 WL 719278, at *2 (N.D. Ill. 2004); *see also* 3 ALBA CONTE & HERBERT B. NEWBERG, *Newberg on Class Actions* § 7.20, 66 (4th ed. 2001).

Here, Plaintiff Greene alleges—and discovery will show—that thousands of consumers traded bitcoins on the Mt. Gox Exchange, and likewise, thousands of consumers were prohibited from accessing and withdrawing (or trading) their bitcoins and Fiat Currency following the shut down of Mt. Gox. (Compl. ¶¶ 2, 6, 7, 38, 51); *see Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity requirement); ALBA CONTE & HERBERT NEWBERG, *Newberg on Class Actions* § 3:5, 243-46 (4th ed. 2002) ("Class actions under the amended Rule 23 have frequently involved classes numbering in the hundreds, or thousands . . . In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.") Accordingly, the proposed Classes satisfy the numerosity requirement.[4]

### B. The Commonality Requirement is Satisfied.

Next, Rule 23(a)(2) requires that "there are questions of law or fact common to the class." To meet the commonality requirement, the named-representative is required to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S.

---

[4] Of course, to the extent the Court requires additional details regarding the number of members in the Classes, such information may be readily obtained through discovery and specifically, Mt. Gox's records.

147, 157 (1982)). In other words, commonality requires that the claims of the class "depend upon a common contention . . . of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Commonality is present where a "common nucleus of operative fact" exists, even if as to one question of law or fact, *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992), and is often found where "defendants have engaged in standardized conduct toward members of the proposed class." *Whitten v. ARS Nat'l Servs. Inc.*, 2001 WL 1143238, at *3 (N.D. Ill. 2001) (internal quotations omitted). The question of commonality is a relatively low and easily surmountable hurdle. *Scholes v. Stone, McGuire, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992).

As alleged in this case, all members of the proposed Classes share common questions of fact that predominate over issues affecting only individual members. Those common factual issues for the Classes include: (1) whether Mt. Gox adequately safeguarded Plaintiff's and the members of the Classes' bitcoins and Fiat Currency; (2) whether Mt. Gox breached its duty to protect Plaintiff's and the Classes' bitcoins and Fiat Currency; (3) whether Mt. Gox should retain the monies paid by Plaintiff and the putative Classes; and (4) whether implied or express contracts existed between Mt. Gox, on the one hand, and Plaintiff and the members of the putative Classes on the other. (Compl. ¶ 39.)

Those common factual questions also lead to several legal questions common to the Classes, including: (1) whether Mt. Gox's conduct described herein constitutes consumer fraud; (2) whether Mt. Gox's conduct constitutes fraudulent inducement; (3) whether Mt. Gox's conduct constitutes a breach of contract; (4) whether Mt. Gox's has been unjustly enriched as a result of its conduct; (5) whether Mt. Gox's conduct constitutes negligence; (6) whether Mr.

8

Gox's conduct constitutes a breach of fiduciary duty; (7) whether a temporary restraining order and/or preliminary injunction is appropriate and necessary; (8) whether a permanent injunction is appropriate and necessary; (9) whether an accounting is appropriate and necessary; (10) whether Mt. Gox's conduct constitutes trespass to chattels; and (11) whether Mt. Gox's conduct constitutes conversion. (Compl. ¶ 39.)

Accordingly, the commonality requirement is met.

C. **Plaintiff's Claims are Typical of the Classes.**

Rule 23(a) next requires that Plaintiff's claims are typical of those of the other members of the Classes. Fed. R. Civ. P. 23(a)(3). The typicality requirement is closely related to commonality and is satisfied if Plaintiff's claims arise from "the same event or practice or course of conduct that gives rise to the claims of other class members and . . . are based on the same legal theory." *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 432 (N.D. Ill. 2003) (internal quotations omitted). Nevertheless, the existence of factual differences will not preclude a finding of typicality; the claims of a named plaintiff need only share "the same essential characteristics" as those of the class. *Id.* Indeed, "'[s]imilarity of legal theory is more important than factual similarity….'" *Id.* (quoting *Harris v. City of Chicago*, 1998 WL 59873, at *5 (N.D. Ill. 1998)).

In this case, Plaintiff and the proposed members of the Classes were each subjected to Mt. Gox's common course of conduct and common scheme to defraud. That is, Defendants misrepresented the security and accessibility of the Mt. Gox exchange to Plaintiff and the putative Classes, failed to secure their bitcoins and Fiat Currency in a manner consistent with industry standards, and, misled them into depositing bitcoins and Fiat Currency knowing that they would be unable to trade or withdraw it. (Compl. ¶¶ 3-5, 20-28.) As a result of Mt. Gox's

9

conduct, Plaintiff and the putative Classes were damaged in a nearly identical manner; namely, in the form of the Fiat Currency and bitcoins Mt. Gox collected from them either through transactions or through the wrongful capture and conversion of their property. (*Id.*) As such, by pursuing his own claims, Plaintiff will necessarily advance the interests of the proposed Classes in satisfaction of Rule 23(a)(3)'s typicality requirement.

### D. The Adequacy of Representation Requirement is Satisfied.

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This means that both a proposed class representative and his counsel have the ability to "zealously represent and advocate on behalf of the class as a whole." *Maxwell*, 2004 WL 719278, at *5. The proposed class representative must not have claims that are "antagonistic or conflicting . . . with other members of the class," and must have a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Id.* (internal quotations omitted). Additionally, proposed class counsel must be competent and have the resources necessary to sustain the complex litigation necessitated by class claims; it is persuasive evidence that proposed class counsel have been found adequate in prior cases. *Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987).

Plaintiff Greene has the same interests as the other members of the Classes. They were all deceived into depositing Fiat Currency and bitcoins into the Mt. Gox Exchange, trading those bitcoins, and each has lost money or bitcoins in the form of the transaction fees that Mt. Gox charged and collected as well as bitcoins and Fiat Currency that Mt. Gox is wrongfully withholding. (Compl. ¶¶ 3-5, 20-28, 30-36, 41.) Plaintiff has no interests antagonistic to those of the Classes and therefore, will fairly and adequately protect the interests of the Classes. (*Id*. ¶ 41.) Plaintiff's pursuit of the instant action demonstrates as much.

Similarly, proposed class counsel are well-respected members of the legal community who have extensive experience in class actions of similar size, scope, and complexity to the instant action. (*See* Declaration of Christopher L. Dore ["Dore Decl."] attached as Exhibit 1, at ¶ 3; *see also* Firm Resume of Edelson PC, attached to the Dore Decl as Exhibit 1-A.) Proposed class counsel have regularly engaged in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (Dore Decl. ¶ 3.) To date, proposed class counsel have also diligently investigated and dedicated substantial resources to the claims in this action, and they will continue to do so throughout its pendency. (*Id*. ¶ 4.)

As such, Greene and his counsel have and will continue to adequately represent the Classes, and the final Rule 23(a) requirement is satisfied.

E. **The Proposed Classes Meet the Requirements of Rule 23(b)(2).**

Once the prerequisites of Rule 23(a) have been satisfied, one of the three subsections of Rule 23(b) must be satisfied as well. Here, Plaintiff seeks certification of the proposed Classes under Rules 23(b)(2) and (b)(3).

Rule 23(b)(2) provides that the party opposing certification must have acted or failed to act on grounds generally applicable to the proposed class, "so that final injunctive relief or corresponding declaratory relief is appropriate." *Brown v. Yellow Transp., Inc.*, 2011 WL 1838741, at *2 (N.D. Ill. 2011) (quoting Fed. R. Civ. P. 23(b)(2)). The requirement that the defendant act on grounds generally applicable to the class, like the whole of Rule 23, is to be "liberally construed so as to favor the maintenance of class actions where appropriate." *Yellow Transp., Inc.*, 2011 WL 1838741, at *2; *see also King v. Kansas City Southern Indus.*, 519 F.2d 20, 26 (7th Cir. 1975)). Where a court finds that Rule 23(a)'s commonality requirement is met,

the courts have typically found that there is a sufficient showing that the defendant acted on grounds generally applicable to the class as a whole. *See Lemon v. Int'l. Union of Operating Engineers, Loc. No. 139, AFL-CIO*, 216 F.3d 577, 580 (7th Cir. 2000); *Yellow Transp.*, 2011 WL 183871, at *7.

There should be no question that Mt. Gox acted on grounds generally applicable to the Classes as a whole. It represented to each member of the putative Classes that his or her bitcoins and Fiat Currency would be secure and accessible to trade and withdraw, when in fact the Mt. Gox was not secure and members of the Classes were unable to withdraw or trade bitcoins when they so desired. (Compl. ¶¶ 3-5, 20-28.) Regardless of the actual form they took, each of the representations Mt. Gox made to the Classes were essentially the same: they represented that the Mt. Gox Exchange was secure and always accessible. (*Id*.) Further, Mt. Gox specifically misled members of the Classes by representing that any prohibition on withdrawing bitcoins or Fiat Currency was temporary, and allowed trading to continue, only to shut down the exchange entirely and capture members of the Classes' property. (*Id*.) Mt. Gox's conduct did not vary significantly from Class member to Class member and therefore, final injunctive relief is necessary to protect Plaintiff and the other members of the Classes from such conduct in the future.

Thus, the requirements of Rule 23(b)(2) are satisfied.

**F.      The Proposed Classes Also Meet the Requirements of Rule 23(b)(3).**

Plaintiff also seeks class certification under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to members of the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the

controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 331-32 (N.D. Ill. 2006). This case easily meets both of these requirements.

    i.  <u>Common Questions of Law and Fact Predominate</u>.

Rule 23(b)(3)'s "predominance requirement looks to whether the proposed class is 'sufficiently cohesive' to warrant 'adjudication' by representation.'" *Williams-Green v. J. Alexander's Restaurants, Inc.*, 277 F.R.D. 374, 383 (N.D. Ill. 2011) (citing *Dukes*, 131 S. Ct. at 2566). The inquiry requires courts to identify "the substantive issues that will control the outcome, assess[ ] which issues will predominate, and then determin[e] whether the issues are common to the class." *Id.* (citing *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 398 (N.D. Ill. 2006)) (internal quotations omitted).

Here, Plaintiff's and the putative Classes' claims all arise from Mt. Gox's uniform advertising and operating of the Mt. Gox exchange, which resulted in Mt. Gox's collecting money and bitcoins through transaction fees, losing bitcoins, and wrongfully withholding Fiat Currency and bitcoins in direct contrast to members of the Classes requests to withdraw their property. As such, the common questions at issue in this case—described in Section III.B, *supra*—clearly predominate.

Moreover, the answers to these questions are necessarily subject to common proof, primarily from information to be found within Mt. Gox's own records. *See Dukes*, 131 S. Ct. at 2551 (2011) ("What matters to class certification . . . is not the raising of common 'questions'— even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."); *Schmidt v. Smith & Wollensky, LLC*, 268 F.R.D. 323, 329 (N.D. Ill. 2010) (holding that the court must determine "whether plaintiffs can, through individualized cases, offer proof on a class-wide basis."). Mt. Gox

13

operated its exchange such that it is incapable of providing all of features as advertised, and further wrongfully prohibited withdrawals and shut down the exchange entirely. As a result, the information necessary to prove Plaintiff's and the Classes' claims—*e.g.*, internal communications, policies, and procedures regarding operating and security of the exchange and also transaction records for its users' Bitcoin trading—will come from within Mt. Gox own records.[5]

For all of these reasons, Rule 23(b)(3)'s predominance requirement is easily satisfied as well.

        ii.    <u>The Class Action Mechanism is Superior to Other Available Methods for the Adjudication of this Matter</u>.

Finally, Rule 23(b)(3) requires that the class action mechanism be superior to the other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3); *Fletcher*, 245 F.R.D. at 334. The instant class action is superior to other available methods for litigating Plaintiff's and the other members of the putative Classes' claims for several reasons.

Absent class treatment in this case, each individual member of the Classes would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judicial system and the litigants. Such a result would be neither efficient nor fair to anyone, including Mt. Gox. Similarly, class certification would promote consistency of rulings and judgments, giving all parties the benefit of finality.

Accordingly, the superiority requirement is satisfied as well.

---

[5] Additionally, records of each member of the putative Classes will be within Mt. Gox's possession and control.

14

IV.     **CONCLUSION.**

For the foregoing reasons, Plaintiff Gregory Greene, individually and on behalf of the putative Classes, respectfully requests that the Court (i) enter and reserve ruling on his Motion for Class Certification; (ii) allow for and schedule discovery to take place on class wide issues; (iii) grant him leave to file a memorandum in support of his Motion for Class Certification upon the conclusion of class wide discovery; (iv) grant his Motion for Class Certification after full briefing of the issues presented herein; and, (v) provide all other and further relief that the Court deems equitable and just.[6]

                                                    Respectfully submitted,

                                                   **GREGORY GREENE**, individually and on behalf of all others similarly situated,

Dated: February 27, 2014            By:  /s/ Christopher L. Dore
                                                       One of Plaintiff's Attorneys

| | |
|---|---|
| Steven L. Woodrow | Jay Edelson |
| swoodrow@edelson.com | jedelson@edelson.com |
| Megan Lindsey | Christopher L. Dore |
| mlindsey@edelson.com | cdore@edelson.com |
| EDELSON PC | David I. Mindell |
| 999 West 18th Street, Suite 3000 | dmindell@edelson.com |
| Denver, Colorado 80202 | Alicia Hwang |
| Tel: 303.357.4878 | ahwang@edelson.com |
| Fax: 303.446.9111 | EDELSON PC |
| | 350 North LaSalle Street, Suite 1300 |
| | Chicago, Illinois 60654 |
| | Tel: 312.589.6370 |
| | Fax: 312.589.6378 |

---

[6]     Plaintiff respectfully reserves the right to amend the definitions of the putative Classes at the conclusion of class wide discovery, subject to Court approval.