## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, | |
| *Defendants*. | |

### *CORRECTED* FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs Gregory Greene ("Greene") and Joseph Lack ("Lack") bring this First

Amended Class Action Complaint and Demand for Jury Trial ("First Amended Complaint")

against Defendants MtGox Inc., Mt. Gox KK, Mt. Gox North America, Inc., Tibanne KK,

Gonzague Gay-Bouchery, Mark Karpeles, and Jed McCaleb (collectively referred to in the

singular as "Mt. Gox" or the "Mt. Gox Defendants"), as well as Defendant Mizuho Bank, Ltd.

("Mizuho") and John Doe Defendants ("Non-Mt. Gox Defendants") (collectively, Mt. Gox and

the Non-Mt. Gox Defendants are referred to herein as "Defendants"), to challenge Defendants'

fraudulent misappropriation of the money and property of Mt. Gox members and conspiracy to

hide such wrongfully obtained assets. Plaintiffs, for their First Amended Complaint, allege as

follows upon personal knowledge as to themselves and their own acts and experiences, and, as to

all other matters, upon information and belief, including investigation conducted by their attorneys.[1]

## NATURE OF THE ACTION

1.     This is a case involving a massive fraud and the theft of hundreds of millions of dollars worth of bitcoins and currency. Defendant Mt. Gox claims to have lost over $400 million worth of "Bitcoin" (a new form of digital commodity and peer-to-peer payment system that essentially functions as a digital currency) and fiat currency (paper money issued by a government) belonging to its members. Asserting that such losses were due to internal security flaws in its system that had been exploited by outside parties, Mt. Gox shut down its online exchange (depriving its members of any access to their accounts and account funds) and filed for bankruptcy protection. The weeks following the bankruptcy filing, however, have since uncovered the existence of a massive conspiracy by Defendants to defraud consumers tricked into putting bitcoins and money in their Mt. Gox accounts, spearheaded by Mt. Gox's top shareholders and executives, and perpetuated with the aid of Defendant Mizuho Bank and John Doe Defendants. To help understand this scheme, a brief introduction to the Bitcoin industry follows.

2.     Bitcoin[2] is a form of digital currency that was created in early 2009.[3] Unlike

---

[1]     It is expressly understood that in accordance with the provisional stay entered with respect to Mt. Gox K.K. by the Bankruptcy Court for the Northern District of Texas on March 10, 2014 (and any subsequent stay that may be entered) and as recognized by Judge Feinerman in the Northern District of Illinois on March 11, 2014, none of the claims asserted in this First Amended Complaint are being pursued against Mt. Gox K.K. until such time, if any, that the Court enters an order dissolving the stay or otherwise granting appropriate relief therefrom.

[2]     For the sake of clarity, "Bitcoin" refers to the digital currency and "bitcoin" (with a lower case "b") refers to an individual unit of the currency itself.

traditional money, bitcoins aren't issued from a government and aren't regulated by any central authority. Instead, bitcoins can be obtained (or "mined") by any person with specialized hardware and computer software and then sold to other consumers on the Internet via private companies, called "Bitcoin exchanges" (like Mt. Gox).

3.      Founded in 2009, Mt. Gox claimed, at one point, to be the world's largest Bitcoin exchange—meaning it was the largest digital marketplace where individuals could register for an account, and then buy and sell bitcoins, as well as exchange bitcoins for traditional currencies (like the United States Dollar). Through "digital wallets," users could allegedly deposit and store their bitcoins in their accounts on Mt. Gox's servers to be held in their own names and on their respective behalves.

4.      However, while Mt. Gox intentionally gave the impression that users' money and bitcoins were safe in their Mt. Gox accounts, the opposite was true. Rather than safeguard users' property, Mt. Gox—aided and abetted by Mizuho and John Doe Defendants—devised a scheme whereby they stole the money and bitcoins of its users, claimed that the property had been lost due to security flaws, and then sought bankruptcy protection so as to buy time for it to hide and transfer the stolen bitcoins and money.

5.      Plaintiffs are just a few of the many Mt. Gox users who lost bitcoins and money as a result of Defendants' scheme. Accordingly, Plaintiffs bring suit on behalf of themselves and all others similarly situated, to seek redress for Defendants' deceptive and unlawful conduct.

**PARTIES**

6.      Plaintiff Gregory Greene is a natural person and citizen of the State of Illinois.

---

[3]     Bitcoins were created by Satoshi Nakamoto, a person or group of persons that created the Bitcoin protocol and reference software, Bitcoin-Qt. In 2008, Nakamoto published a paper on The Cryptography Mailing list at metzdowd.com describing the Bitcoin digital currency. In 2009, he or they released the first Bitcoin software that launched the network and the first bitcoins.

7.     Plaintiff Joseph Lack is a natural person and citizen of the State of California.

8.     Defendant MtGox Inc. is a corporation existing under the laws of the State of Delaware with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. MtGox Inc. conducts business throughout this District, the State of Illinois, and the United States. MtGox Inc. is registered with the Financial Crimes Enforcement Network (United States Department of the Treasury) as entity number 31000029348132. Additionally, it is registered as a Money Services Business ("MSB") to conduct MSB Activities in the State of Illinois.

9.     Defendant Mt. Gox KK is a Japanese corporation with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. Mt. Gox KK conducts business throughout this District, the State of Illinois, and the United States. Mt. Gox KK is a parent of MtGox Inc. and conducts business in the United States directly by and through MtGox Inc.

10.    Defendant Tibanne KK is a Japanese corporation with its principal place of business located at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512. Tibanne KK conducts business throughout this District, the State of Illinois, and the United States. Tibanne KK is a parent of Mt. Gox KK and conducts its business in the United States directly by and through MtGox Inc.

11.    Defendant Mt. Gox North America, Inc. is a corporation existing under the laws of the State of New York with its business address located at 10 E. 40th Street, Floor 10, New York, NY 10016. Mt. Gox North America conducts business throughout the United States.

12.    Defendant Jed McCaleb is a natural person and resident of the State of California. Upon information and belief, McCaleb owns 12% of Mt. Gox KK and is aware of, participated

in, and benefitted from the fraudulent conduct described in this Complaint.

13.     Defendant Mark Karpeles serves as the Chief Executive Officer of MtGox Inc., Mt. Gox KK, and Tibanne KK. Additionally, Mr. Karpeles is the primary shareholder of all three companies, owning 100% of Tibanne KK, which in turn owns 88% of Mt. Gox KK. Based on Defendants' own statements, "Mark Karpeles is the President and CEO of both MtGox and Tibanne. Mark providers [sic] overall direction, responsible for supervising main operations and steering the company according to his vision."[4]

14.     Defendant Mizuho Bank is a Japanese financial institution with its principal headquarters located at 1-3-3, Marunouchi, Chiyoda-ku, Tokyo, Japan 100-8210. Mizuho conducts business worldwide and has branch offices located in the United States and this District. Mizuho held bank accounts on behalf of Mt. Gox, as well as processed wire money transfers between Mt. Gox and its users in the United States and in other Countries.

15.     Defendant Gonzague Gay-Bouchery serves as the Chief Marketing Officer and Manager of Business Development of Mt. Gox KK and Tibanne KK and is one of Defendant Karpeles' most trusted advisors. According to Defendants' own statements, "Gonzague is in charge of growing the business for MtGox by initiating partnerships, developing expansion strategies, and directing marketing activities internationally."[5]

16.     John Doe Defendants are the professional firms (such as financial accounting firms, law firms, and financial institutions) who, upon information and belief, knowingly rendered professional services to Mt. Gox Defendants in furtherance of the fraud alleged in this Complaint.

---

[4]     Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan-MtGox-2014-2017 (last accessed February 27, 2014).

[5]     *Id*. at p. 19.

17.     Mt. Gox Defendants act in direct concert and as a single unified entity under the brand name "Mt. Gox." MtGox Inc., Mt. Gox KK, Tibanne KK, Mt. Gox North America, Inc., Gonzague Gay-Bouchery, Jed McCaleb, and Mark Karpeles are indistinguishable as separate entities as all four corporations are maintained for a singular purpose (operation of the Mt. Gox Bitcoin exchange) and Mr. Bouchery, Mr. McCaleb, and Mr. Karpeles are top executives and/or shareholders of the companies. Additionally, Mr. Karpeles is the primary shareholder of all three companies.

18.     On information and belief, Mr. Karpeles personally participated in, and had direct control over, Mt. Gox's public statements, the design and development of its website, the maintenance of its hardware and software, its customer service, banking regulatory affairs, interactions with government entities, and events leading to the loss of its users' bitcoins and Fiat Currency and the closing of the Mt. Gox exchange.

19.     Mt. Gox operates its Bitcoin exchange through the website www.mtgox.com, which operates from servers located in the Commonwealth of Massachusetts (IP address 23.198.168.44).

**JURISDICTION AND VENUE**

20.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Classes is a citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

21.     This Court has personal jurisdiction over Defendants because they conduct business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

22. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

## COMMON FACTUAL ALLEGATIONS

### I. An Overview of the Bitcoin Market.

23. Introduced in early 2009, Bitcoin has quickly become a recognized form of digital currency. Similar to paper money (*e.g.*, Dollars, Euros, etc.) (commonly known as "Fiat Currency"), bitcoins can be used to purchase and sell goods and services through a number of websites or from any merchant that accepts it. However, that's where the similarities end. For instance, with "paper money, a government decides when to print and distribute [it]."[6] Bitcoin, on the other hand, is a currency that is not issued or directly regulated by any central authority or government. Instead, bitcoins are created by individuals through a complex computer program and then bought and sold to consumers through private "exchanges."[7] The price of bitcoins fluctuate on these exchanges just like any other currency market.

### II. The Establishment of the Mt. Gox Bitcoin Exchange.

24. Founded in 2009, Mt. Gox at one time claimed to operate the "world's most established Bitcoin exchange," handling "over 80% of all Bitcoin trade" worldwide and boasting that it became the leader in Bitcoin exchanges due to its purported ability to allow consumers to "quickly and securely trade bitcoins with other people around the world with your local

---

[6] Bitcoin Mining, http://www.bitcoinmining.com/ (last accessed February 26, 2014).

[7] By way of background, there are three primary ways to obtain bitcoins: mining new ones (meaning creating new bitcoins using specialized computer hardware and software), accepting them for goods and services, and buying them on an exchange (like Mt. Gox).

currency."[8]

25.    In addition to buying and selling bitcoins, Mt. Gox promised its users "the ability to securely store Bitcoin in a virtual 'vault' for safe keeping"[9] on its servers. It further promised that its website would be "always on" so that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform."[10]

26.    To use Mt. Gox's service, consumers were required to sign up for an account at www.mtgox.com and agree to Mt. Gox's Terms of Use, which expressly stated that "MtGox represents and warrants that…it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf."[11] The Terms of Use further represented that "Members may at any time transfer any amount of Bitcoins to any other Members as well as any other Bitcoin users even if they are not Members" and that that "These Terms may be terminated without reason by either party providing the other with reasonable prior notice, receipt of which shall be promptly acknowledged in writing by the other party."

27.    Users were also asked to verify their accounts by providing Mt. Gox with detailed information, such as the user's full name, date of birth, country of birth, physical address, and proof of identity (such as a state issued identification card).

28.    To make purchases, users transferred Fiat Currency (i.e dollars) into their

---

[8]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[9]    Mt. Gox About Us, www.mtgox.com/about-us (last accessed December 4, 2013).

[10]    Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed February 26, 2014).

[11]    *See* Terms of Use, Group Exhibit B to the Declaration of Steven Woodrow, Dkt. 11-2, pp. 3-4.

accounts by wiring money to Mt. Gox's banking partner(s)—Mizuho Bank and John Doe financial institutions. After receiving the funds, Mizuho and John Doe financial institutions would then transfer the money into accounts held on behalf of Mt. Gox.

29.     Mt. Gox received a transaction fee for each trade made on the exchange. Upon information and belief, Mt. Gox made up to tens of thousands of dollars per day in transaction fees from users on its site.[12]

### III.    Mt. Gox Freezes its Users' Accounts and Then Shuts Down its Website.

30.     Mt. Gox operated the exchange with some hiccups throughout 2011-2013. While some hints of irregular conducted existed that was known to its owners, bankers, accountants, lawyers, and other professional service providers, consumers were generally left in the dark. In late 2013, users began reporting payment and withdrawal delays.

31.     In announcements made through its online Support Desk in early February 2014, Mt. Gox claimed that it was "currently experiencing a problem where some bitcoin withdrawals are not being transferred correctly, affecting a limited number of users."[13]

32.     On February 7, 2014, Mt. Gox halted its users' ability to withdraw any form of currency from its website while it purportedly investigated a "bug" or "technical malfunction" in the Bitcoin network.[14]

---

[12]     Mt. Gox kept exchange open despite knowledge of large-scale theft, http://www.computerworld.com/s/article/9246921/Mt._Gox_kept_exchange_open_despite_knowledge_of_large_scale_theft?taxonomyId=144&pageNumber=2 (last accessed March 13, 2014).

[13]     *See* Support Desk Updates, Ex. C to the Declaration of Steven Woodrow, Dkt. 11-3.

[14]     Bitcoin Price Plunges as Mt. Gox Exchange Halts Activity, http://www.bloomberg.com/news/2014-02-07/bitcoin-price-falls-as-mt-gox-exchange-halts-activity.html (last accessed February 27, 2014).

33.     On February 10, 2014, Mt. Gox represented through the Support Desk that Mt. Gox had detected "unusual activity" with respect to its Bitcoin wallets and had been investigating a technical issue, called "transaction malleability," which appeared to involve the ability of third parties to manipulate certain transactions. Mt. Gox assured members that "MtGox will resume bitcoin withdrawals to outside wallets once the issue" had been addressed.[15]

34.     On February 17, 2014, Mt. Gox represented through the Support Desk that "we have now implemented a solution that should enable withdrawals" and that "Mt. Gox should be able to resume withdrawals soon." On February 20, 2014, the Support Desk notified members that certain challenges had "pushed back our progress" but again assured customers that "we are working on re-initiating bitcoin withdrawals."[16]

35.     Customers who inquired about these delays were likewise informed by Mt. Gox's online Support Desk that, among other things, transaction speeds were "due to a change in [Mt. Gox's] banking systems" which had resulted in a "back-log" of requests that needed to be processed."[17] In communications to a user on February 23, 2014, Mt. Gox additionally claimed it was "trying to form relationships with several new banking partners both in Japan and around the world" and "in the process of finalizing even more," meaning that "we will have increased stability and ability to transmit withdrawals going forward."[18]

36.     Although all withdrawals were suspended, Mt. Gox (with the aid of Mizuho Bank and John Doe bank Defendants) continued to accept currency and bitcoin deposits up until February 24, 2014.

---

[15]     *Supra* note 14.

[16]     *Id*.

[17]     *See* Declaration of Andrew Van Almen, Dkt. 18, Exs. B-D.

37.     At some point on February 24, 2014, the Mt. Gox website "went dark." Users who visited the site found nothing but a blank page and were unable to view or access their accounts. A message on the Mt. Gox website later notified members that a "decision was taken to close all transactions for the time being."[19]

38.     During the same time, any remaining vestiges of Mt. Gox (including its Chief Executive Officer, Mark Karpeles) began to quickly disappear. Specifically, on or around February 23, 2014, Mt. Gox's social media webpage went offline, its website (www.mtgox.com) shut down, and Karpeles stepped down from the board of directors at the Bitcoin Foundation, the Bitcoin currency advocacy group.[20]

## IV.     Mt. Gox KK Files for Bankruptcy.

39.     On February 28, 2014, Mt. Gox KK filed for bankruptcy protection in Japan. During a press conference, Karpeles revealed that Mt. Gox has assets of over $20 million (USD) and liabilities in excess of $65 million (USD)—which apparently does not include the over $450 million worth of bitcoins it had lost through what it has claimed is a supposed bug.[21] The other Mt. Gox Defendants, however, did not file for bankruptcy or reorganization.

40.     On March 9, 2014, Mt. Gox KK filed suit in the Bankruptcy Court for the

---

[19]     Is it the beginning of the end for Bitcoin? Virtual currency in turmoil as rumoured $375m theft closes major exchange," http://www.thisismoney.co.uk/money/news/article-2567436/Bitcoin-turmoil-rumoured-375mtheft-closes-major-exchange.html (last visited March 4, 2014).

[20]     Survival of Bitcoin Exchange in Mt. Gox in Doubt, http://money.cnn.com/2014/02/24/technology/security/mtgox-bitcoin/ (last accessed February 27, 2014).

[21]     Mt. Gox files bankruptcy, says hackers stole all its bitcoins, http://articles.chicagotribune.com/2014-02-28/news/sns-mt-gox-bankruptcy-bitcoins-20140228_1_gox-bitcoin-market-bitcoin-community (Feb. 28, 2014) (last visited March 4, 2014).

Northern District of Texas under Chapter 15 of the Bankruptcy Code, seeking recognition of the Japanese bankruptcy proceedings and stating that Defendant Karpeles had been appointed as Mt. Gox KK's foreign representative in the U.S. proceedings. Again, the other Mt. Gox Defendants did not file for protection.

41.     In its papers, the Mt. Gox KK attorneys represented to the Court that:

On February 7, 2014, all bitcoin withdrawals were halted by MtGox due to the theft or disappearance of hundreds of thousands of bitcoins owned by MtGox customers as well as MtGox itself. The cause of the theft or disappearance is the subject of intensive investigation. It is believed to have been caused or related to a defect or "bug" in the bitcoin software algorithm, which was exploited by one or more persons who had "hacked" the bitcoin network. On February 24, 2014, MtGox suspended all trading after internal investigation discovered a loss of 744,408 bitcoins presumably from this method of theft.[22]

## V.     Subsequent Information Reveals Defendants' Fraudulent Conduct.

42.     Information revealed in the weeks following Mt. Gox's Japanese bankruptcy filing, however, cast doubt upon Defendants' initial claims of a security breach—and instead suggested the existence of a conspiracy spearheaded by Mt. Gox's top executives and perpetuated with the aid of Defendants Mizuho Bank and John Doe.

43.     On information and belief, including information that has been presented on the Internet, Mizuho knew of irregularities and serial complaints regarding Mt. Gox and eventually, long after it had profited from its illicit partnership, asked Mr. Karpeles to close his accounts with Mizuho voluntarily at some unspecified point in the future.[23] Internet sources have likewise indicated that Mizuho became concerned about its relationship with Mt. Gox in as early as mid-

---

[22]     *See In re MtGox Co., Ltd.*, No. 14-31229-sgj15, Dkt. 2 ¶ 8 (Bankr. N.D. Tex. Mar. 9, 2014).

[23]     Mizuho to Mt. Gox: 'Close Your Account', http://blogs.wsj.com/moneybeat/2014/03/05/mizuho-to-mt-gox-close-your-account/ (last accessed Mar. 14, 2014).

2013 following reports that U.S. authorities were investigating Mt. Gox for business dealings related to money laundering,[24] and that Mt. Gox's account with Mizuho was not properly segregated between customer and operational funds[25] despite Mt. Gox's express trust agreement in its consumer contracts to keep and maintain exchange member bitcoins and funds in an account in the consumer's name and on the consumer's behalf and Mizuho's awareness of (or willful blindness to) such consumer agreements.

44.    On March 7, 2014, reports began surfacing that 180,000 bitcoins believed to be owned by one or more of the Mt. Gox Defendants (worth approximately $113 million dollars) were being moved through the "Block Chain" (the public ledger that records all Bitcoin transactions) and broken down into different accounts in preparation for mixing or tumbling them to avoid detection.[26] Upon information and belief, and as supported by evidence from the Block Chain, some of these bitcoins have been transferred into accounts associated with one or more of the Mt. Gox Defendants.[27] Further upon information and belief, Mt. Gox Defendants have already hidden and/or transferred funds associated with Mt. Gox, and continue to do so, during the pendency of its bankruptcy proceedings.

---

[24]    Recording Shows Mizuho Pushed to End Dealings With Mt. Gox, http://online.wsj.com/news/articles/SB10001424052702304732804579420791991665968 (last accessed Mar. 14, 2014).

[25]    Lost in translation: The tangled tale of Mt. Gox's missing millions, http://www.pcworld.com/article/2105920/lost-in-translation-the-tangled-tale-of-mt-goxs-missing-millions.html (last accessed Mar. 14, 2014).

[26]    $113m in Gox Bitcoins Believed To Be Moving Through Block Chain, http://www.coindesk.com/gox-money-moving-through-block-chain/ (last accessed Mar. 14, 2014).

[27]    Subreddit forum: Lots of Mt. Gox transactions ("withdrawals") 50 BTC taking place, http://www.reddit.com/r/Bitcoin/comments/20byl8/lots_of_mtgox_transactions_withdrawals_50 _btc/ (last accessed Mar. 14, 2014).

45.     On March 9, 2014, after this case was filed, a file containing Mt. Gox's operational information and transaction data was purportedly released online. The document shows the Bitcoin and currency balance in users' Mt. Gox accounts held by Mt Gox at the time of closure. The document indicated that Mt. Gox had approximately 950,000 bitcoins and millions in various currencies, far greater than the 2000 bitcoins and currency disclosed in Mt. Gox's bankruptcy filings and public statements.[28]

46.     Furthermore, Defendants continue to mine and receive bitcoins in the US even after this Court ordered such assets be temporarily frozen in favor of Plaintiff Greene on March 11, 2014. On information and belief, certain Mt. Gox Defendants continue to have interests in bitcoin mining pools and mining operations in the United States and continue to receive such bitcoins through mining activities in the United States with the substantial assistance of persons located within the United States.

**VI.     Facts Relating to Plaintiff Gregory Greene.**

47.     In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff Greene navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements about its service, including its representations about the exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time—substantially similar to the advertisements and representations described in Section II above.

48.     Relying upon these representations made by Mt. Gox—namely, that it would allow him to "quickly and securely trade bitcoins with other people around the world" and give him "the ability to securely store [his] Bitcoins in a virtual 'vault' for safe keeping"—Greene

---

[28]     Mt. Gox Hackers Claim to Release Transaction Details, CEO's Personal Data, http://www.coindesk.com/mt-gox-hackers-claim-release-transaction-details-ceos-personal-data/?_ga=1.78637330.746612940.1394773852 (last accessed Mar. 14, 2014).

signed up for an account on Mt. Gox's website in 2012 and began trading and selling Bitcoin.

49.     As a member of Mt. Gox, Greene paid transaction fees to Mt. Gox on every trade that he made, in part, to be able to buy, sell, trade, and withdraw bitcoins, and also, in part, to maintain and protect his bitcoins and Fiat Currency in compliance with industry standards.

50.     In November 2013, Greene began experiencing delays with his bitcoin transactions and complained to Mt. Gox customer service.

51.     Although customer service helped to resolve his issues, they did not notify or inform him that the security of the Mt. Gox system had been compromised by any sort of bug. Accordingly, based upon the representations that were made to him through the Mt. Gox website and in its Terms of Use and Privacy Policy, Greene continued to believe that his bitcoins were stored safely and securely on Mt. Gox's system.

52.     On February 5, 2014, Greene logged onto his Mt. Gox account and discovered that certain previously available functions, such as the simple withdrawal of bitcoins, had been restricted or were otherwise inaccessible. He immediately contacted customer service for further information.

53.     On February 10, 2014, customer service responded to his inquiry and informed him that he was now required to verify his Mt. Gox account by submitting proof of identification to the site. Greene promptly submitted the documents requested, including a copy of his driver's license and proof of address, and on February 24, 2014, was notified that his account had been verified.

54.     After being notified of his verification, Greene logged onto his account and tried to make a withdrawal. The transaction did not go through. Rather, and despite not showing any sort of error message, the page simply cleared the inputs.

55.     A few hours later, Greene attempted to log onto his account and discovered that Mt. Gox had gone offline, blocking all account access. He has since been unable to log onto or access his Mt. Gox account in any way.

56.     At the time Mt. Gox shut down, Greene's account contained approximately $25,000 dollars in bitcoins, which he has been unable to view or withdraw.

57.     Had Greene known that Mt. Gox lacked the proper security measures to protect his property or that Defendants intended to defraud him, he would not have deposited or stored his bitcoins on the Mt. Gox exchange. Further, had he known that Mt. Gox intended to go offline permanently, he would have withdrawn any remaining bitcoins from his account.

**VII.    Facts Relating to Plaintiff Joseph Lack.**

58.     Plaintiff Lack joined Mt. Gox in early 2014. To activate his account, he was required to (and did) accept Mt. Gox's Terms of Use, and provided all requested documentation.

59.     Upon joining, on January 22, 2014, Lack wire-transferred $40,000 USD to his account at Mt. Gox. To do so, Lack was directed to wire the money directly from his local Wells Fargo bank branch to the account that Mizuho held on behalf of Mt. Gox or its owners. Lack was directed to list his individual Mt. Gox account number on the wire transfer instructions ostensibly so Mizuho and Mt. Gox could identify the Fiat currency as belonging specifically to him.

60.     Following the transfer, Lack waited several weeks for the money to appear in his Mt. Gox account and for Mt. Gox to acknowledge receipt of his funds.

61.     On February 11, 2014, Lack contacted Mt. Gox regarding his $40,000 and when he would be able to access his money. Mt. Gox responded on February 14, 2014, stating that "withdrawal delays does [sic] not affect transferring funds to your Mtgox [sic] account." It did

not answer his specific question regarding the status of his deposit but instead asked for a scanned copy of his wire transfer form. Lack provided this information on February 15, 2014.

62. Lack continued to wait for the funds to appear in his Mt. Gox account. On February 19, 2014, he contacted Mt. Gox again for a status update, only to be informed, "We continue to check the status of the deposit with our banking team. We will let you know once the funds reaches your account." Lack responded on February 20, 2014, complaining of these non-responsive emails and demanding to know the location of his money.

63. Mt. Gox responded on February 20, 2014 stating, "We are yet to receive your deposit. We are facing Bank delays on international deposit and we will surely keep you updated once we receive your deposit."

64. Upon receiving this message, Lack immediately went to his bank to trace the wire transfer and recall the money, since according to Mt. Gox, his funds were still with Mizuho Bank.

65. At no time prior to depositing his funds or while he was made to wait for the funds to appear in his account, did Mt. Gox directly notify him that it had suffered any type of "bug" and that his money would be permanently inaccessible.

66. On February 24, 2014, Mt. Gox "went dark." Since that time, Lack has not been able to see his account, let alone the $40,000 he transferred to Mt. Gox.

67. On March 3, 2014, Lack's bank informed him that they were unable to recall the funds since they had already transferred to Mt. Gox on February 3, 2014. His bank provided all the documentation showing that his funds did indeed transfer on February 3, 2014, through Mizuho.

## CLASS ALLEGATIONS

68.     **Class Definition**: Plaintiffs bring this action pursuant to Federal Rule of Civil

Procedure 23(b)(2) and (b)(3) on behalf of themselves and Classes of similarly situated

individuals, defined as follows:

> **Payment Class**: All persons in the United States who paid a transaction fee to Mt. Gox to
> buy, sell, or otherwise trade bitcoins.

> **Frozen Currency Class**: All persons in the United States who had bitcoins or Fiat
> Currency stored with Mt. Gox on February 24, 2014.

Excluded from the Payment Class and Frozen Currency Class (collectively, the

"Classes") are (1) Defendants, Defendants' agents, subsidiaries, parents, successors,

predecessors, and any entity in which the Defendants or their parents have a controlling interest

and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge

to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3)

persons who execute and file a timely request for exclusion, (4) all persons who have previously

had claims similar to those alleged herein finally adjudicated or who have released their claims

against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded

person.

69.     **Numerosity**: The exact number of the members of the Classes is unknown and

not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable. On

information and belief, there are hundreds of thousands of persons in the Classes. Members of

the Classes can be identified through Defendants' records.

70.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiffs and the members of the putative Classes, and those questions

predominate over any questions that may affect individual members of the Classes. Common

questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Mt. Gox Defendants adequately safeguarded Plaintiffs' and the members of the Classes' bitcoins and Fiat Currency;

(b)     whether Mt. Gox Defendants breached their duty to protect Plaintiffs' and the Classes' bitcoins and Fiat Currency;

(c)     whether Defendant Mizuho breached its fiduciary duty to Plaintiffs and the putative Classes;

(d)     whether implied or express contracts or trust agreements existed between Mt. Gox, on the one hand, and Plaintiffs and the members of the putative Classes on the other;

(e)     whether Mt. Gox Defendants' conduct described herein constitutes consumer fraud;

(f)     whether Mt. Gox Defendants' conduct constitutes fraudulent inducement;

(g)     whether Mt. Gox Defendants' conduct constitutes negligence;

(h)     whether Mt. Gox Defendants' conduct constitutes a breach of fiduciary duty;

(i)     whether Defendants' conduct described herein constitutes a breach of contract;

(j)     whether Mt. Gox should retain the monies paid by Plaintiffs and the putative Classes;

(k)     whether Defendant Mizuho and John Doe Defendants have aided and abetted Mt. Gox Defendants in their fraudulent conduct;

(l)     whether a preliminary injunction is appropriate and necessary;

(m)     whether a permanent injunction is appropriate and necessary;

(n)     whether an accounting is appropriate and necessary;

(o)     whether Defendants' conduct constitutes trespass to chattels;

(p)     whether Defendants' conduct constitutes conversion; and

(q)     whether Plaintiffs and the putative Classes are entitled to such further

relief requested herein.

71.     **Typicality**: Plaintiffs' claims are typical of the claims of other members of the

Classes, in that Plaintiffs and the Classes members sustained damages arising out of Defendants'

uniform wrongful conduct.

72.     **Adequate Representation**: Plaintiffs will fairly and adequately represent and

protect the interests of the Classes, and have retained counsel competent and experienced in

complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and

Defendants have no defenses unique to Plaintiffs.

73.     **Policies Generally Applicable to the Classes**: This class action is appropriate for

certification because Defendants have acted or refused to act on grounds generally applicable to

the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure

compatible standards of conduct toward the members of the Classes, and making final injunctive

relief appropriate with respect to the Classes as a whole. Defendants' policies challenged herein

apply and affect members of the Classes uniformly and Plaintiffs' challenge of these policies

hinges on Defendants' conduct with respect to the Classes as a whole, not on facts or law

applicable only to Plaintiffs. Specifically, the factual and legal bases of Defendants' liability to

Plaintiffs and to the other members of the Classes are the same, resulting in injury to the

Plaintiffs and to all of the other members of the Classes. Plaintiffs and the members of the

Classes have suffered harm and damages as a result of Defendants' unlawful and wrongful conduct.

74.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Consumer Fraud (Against All Defendants)**
**(On behalf of Plaintiffs and the Classes)**

75.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

76.    As described herein, Mt. Gox has engaged in unlawful, deceptive, and unfair conduct.

77.    Through its online marketing materials and advertisements, including expressly in its Terms of Use, Mt. Gox represented to Plaintiffs and the Classes that it would, *inter alia*, protect their bitcoins and Fiat Currency, safely and quickly allow them to buy, sell, trade, or

withdraw the same, and hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf.

78.     Mt. Gox's utility, privacy and security promises were, in fact, false. Mt. Gox did not adequately safeguard its exchange or its users' bitcoins and Fiat Currency, did not safely and quickly allow Plaintiffs and the members of the Classes to buy, sell, and otherwise trade the same, and did not hold all monetary sums and bitcoins deposited by each Member in their account in that Member's name and on that Member's behalf.

79.     Thus, Mt. Gox's representations to Plaintiffs and the members of the Classes were false.

80.     Knowing that consumers are less likely to do business with companies that fail to adequately safeguard and hold their bitcoins and Fiat Currency or allow them to buy, sell, trade, or withdraw the same, Mt. Gox made the false representations with the intention that Plaintiffs and the members of the Classes would rely on them in contracting with Mt. Gox and transferring money and Bitcoin into their accounts.

81.     Mt. Gox additionally made false representations to Plaintiffs and the members of the Classes through its online Support Desk and in its customer service correspondence. In particular, Mt. Gox falsely claimed that its withdrawal and transaction issues were temporary, that withdrawals would soon resume on its website, that it was developing new business relationships with other banks for improved withdrawal capabilities, and that a security "bug" in its system was the cause of its suspended withdrawals.

82.     In reality, Mt. Gox was preparing to shut down the exchange and file for bankruptcy and was not working to resume withdrawals or develop business relationships with

other banks. Mt. Gox further knew that its withdrawal issues were not caused by a security bug, but rather, were due to the loss or theft of users' bitcoins.

83.     Knowing that users would stop depositing bitcoins and funds in their account, and rather, would attempt to withdraw funds, close accounts, and/or report Mt. Gox to the authorities if made aware of any impending bankruptcy or large-scale loss/theft of coins, Mt. Gox made the false representations with the intention that Plaintiffs and the members of the Classes would rely on them by continuing to deposit money and bitcoins into their Mt. Gox accounts, refraining from attempts to withdraw funds and close accounts, and refraining from reporting Mt. Gox to authorities.

84.     Because ordinary consumers lacked access to Mt. Gox's proprietary information regarding its true business policies, practices and procedures prior to February 2014, Mt. Gox's representations were likely to deceive consumers who had no other resource for assessing Mt. Gox's services.

85.     Had Mt. Gox disclosed its true practices, Plaintiffs and the Payment Class would have paid substantially less for Mt. Gox's services, would not have paid at all (*i.e.*, the value of Mt. Gox's exchange services *without* adequate protections is worth substantially less than the value of such services *with* adequate protection), or would not have maintained accounts with Mt. Gox at all. Because Plaintiffs and the Payment Class paid, in part, for Mt. Gox to protect their bitcoins and Fiat Currency in compliance with industry standards, Plaintiffs and the Payment Class did not receive the services they paid for.

86.     Further, Mt. Gox's deceptive conduct caused Plaintiffs and the members of the Frozen Currency Class monetary damages because, but for Mt. Gox's unlawful conduct, they would have withdrawn their bitcoins or Fiat Currency, which are worth millions of United States

Dollars.

87.     Accordingly, Mt. Gox's false representations constituted deceptive conduct.

88.     Mt. Gox's failures to comply with its security, Terms of Use, and privacy promises and obligations were also unlawful conduct.

89.     Mt. Gox's conduct also constitutes unfair conduct because it caused substantial injury to Plaintiffs and the members of the Classes that was not offset by countervailing benefits to consumers or competition and is not reasonably avoidable by consumers.

90.     Mt. Gox's inadequate security measures and false representations caused substantial injury to Plaintiffs and the members of the Payment Class because Plaintiffs and the Payment Class would have paid substantially less for Mt. Gox's services, or would have not paid at all, but for Mt. Gox's deception. Further, Mt. Gox's unlawful conduct caused the Frozen Currency Class to suffer actual harm in the form of lost or stolen bitcoins or Fiat Currency.

91.     The harm suffered by Plaintiffs and the Classes was not reasonably foreseeable to them because they lacked firsthand knowledge of Mt. Gox's security measures and other business practices given Mt. Gox's false public representations regarding the same.

92.     Mt. Gox's deceptive, unlawful, and unfair conduct occurred in the course of consumers contracting for the exchange of currency, and therefore occurred in the course of conduct involving trade and commerce.

93.     In sum, Mt. Gox's deceptive, unlawful, and unfair conduct caused Plaintiffs and the Classes monetary damage. Plaintiffs and the Payment Class would have paid substantially less for Mt. Gox's services or would have not paid at all had they known that Mt. Gox would protect their bitcoins in violation of its representations. Likewise, Plaintiffs and the Frozen Currency Class would not have lost bitcoins and Fiat Currency but for Mt. Gox's unlawful,

deceptive, and unfair conduct.

94.     Mizuho and the other Non Mt. Gox Defendants had knowledge of Mt. Gox's fraudulent and unfair conduct and directly benefitted from it. Mizuho knew or remained willfully blind to Mt. Gox's consumer agreements, which specifically require Mt. Gox to hold all funds and bitcoins in accounts in the consumers' names and on the consumers' respective behalves. Despite this knowledge, Mizuho continued to provide financial services and substantial assistance to Mt. Gox, including the continued acceptance of deposits and transfers from American consumers even after Mizuho knew of Mt. Gox's illicit activities and irregularities. Mizuho profited from the fraud and, on information and belief, continues to hold funds (and potentially Bitcoin) belonging to U.S. citizens who were Mt. Gox exchange members.

95.     Plaintiffs and the Frozen Currency Class would not have lost bitcoins and Fiat Currency, or their losses sustained would not have been as great, but for Mizuho's unlawful, deceptive, and unfair conduct.

96.     In furtherance of its fraudulent conduct, and with the help of all Defendants, Mt. Gox Defendants falsely declared bankruptcy in Japan and in the United States as a ploy to delay proceedings while they hide over 180,000 bitcoins (approximate value $112,860,000) by breaking down such amounts into smaller wallets through a series of hundreds or thousands of bitcoin transactions, which they intend to conceal and launder so as to avoid detection and continue in their fraud.

**SECOND CAUSE OF ACTION**
**Fraud in the Inducement (Against Mt. Gox Defendants)**
**(On Behalf of Plaintiffs and the Classes)**

97.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

98.     Mt. Gox misrepresented and/or failed to disclose material provisions of the sale of its Bitcoin exchange services.

99.     Through the misrepresentations and omissions detailed herein and in Paragraphs 77 and 81 *supra*, Mt. Gox wrongfully induced Plaintiffs and the Classes to purchase its services, provide it with Fiat Currency and bitcoins, and continue to make deposits of Fiat Currency and bitcoins. These representations included statements on Mt. Gox's website, in its Terms of Use, and in its correspondence indicating that the Mt. Gox exchange was safe and secure, that users would be able to freely deposit and withdraw Fiat Currency and bitcoins at any time, that Mt. Gox was working to fix and deposit or withdrawal issues, and that withdrawals would soon resume.

100.     Mt. Gox knew or should have known that its misstatements and omissions regarding the terms of its services were misleading to Plaintiffs and the Classes.

101.      Mt. Gox intended that consumers rely upon its misstatements and omissions regarding its services and continue to use its services and/or deposit money and bitcoins into their accounts.

102.     In deceiving Plaintiffs and members of the Classes regarding the full terms of its services, Mt. Gox has engaged in fraudulent practices designed to induce consumers to sign up for and use its services.

103.     Mt. Gox Defendants jointly participated in a fraudulent scheme to defraud consumers. Specifically, Mt. Gox Defendants made numerous false statements and broke numerous affirmative promises, including but not limited to the quality of its security procedures, users' ability to withdraw bitcoins and Fiat Currency, and the accessibility and ownership of the bitcoins and Fiat Currency held by Mt. Gox Defendants. Moreover, Mt. Gox

Defendants perpetrated a fraudulent scheme halting user withdrawals, representing that the prohibition was only temporary, and allowing users to continue to trade (and therefore profiting from transaction fees) and deposit funds, but thereafter never lifted the withdrawal prohibition and shut down the entire exchange.

104.     As a proximate result of Mt. Gox's violations of law and wrongful conduct alleged herein, Plaintiffs and the Classes have suffered actual harm. Plaintiffs and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

105.     Accordingly, Plaintiffs seek an order (i) permanently enjoining Mt. Gox from continuing to engage in unfair and fraudulent conduct; (ii) requiring Mt. Gox to make full restitution of all funds wrongfully obtained; and (ii) awarding punitive damages to Plaintiffs and the Classes.

## THIRD CAUSE OF ACTION
### Negligence (Against Mt. Gox Defendants)
### (On behalf of Plaintiffs and the Classes)

106.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

107.     Mt. Gox requested and came into possession of Plaintiffs' and the Classes' bitcoins and Fiat Currency, and had a duty to exercise reasonable care in safeguarding and protecting such information from being accessed, stolen, or otherwise harmed. Mt. Cox's duty arose from the legal and industry standards discussed above and its relationship with Plaintiffs and the Classes.

108.     Mt. Gox had a duty to employ procedures to detect and prevent the improper

access and misuse of Plaintiffs' and the Classes' bitcoins and Fiat Currency and also to allow them complete access to the same. The breach of security, unauthorized access, freezing of their accounts, and resulting injury to the Plaintiffs and the Classes were reasonably foreseeable, particularly in light of Mt. Gox's inadequate data management and security system.

109.    Mt. Gox, through its actions and/or omissions, unlawfully breached its duty to the Plaintiffs and the Classes by failing to implement industry-standard protocols and exercise reasonable care in maintaining, protecting and safeguarding the Plaintiffs' and the Classes' bitcoins and Fiat Currency within Mt. Gox's control.

110.    Mt. Gox, through its actions and/or omissions, breached its duty to Plaintiffs and the Classes by failing to have procedures in place to detect and prevent access to Plaintiffs' and the Classes' bitcoins and Fiat Currency.

111.    But for Mt. Gox's breach of its duties, Plaintiffs' and the Classes' bitcoins and Fiat Currency would not have been compromised and/or frozen. The Plaintiffs' and Classes' bitcoins and Fiat Currency were accessed, frozen, stolen, and/or misused as the proximate result of Mt. Gox's failure to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate data management and security measures.

112.    As a result of Mt. Gox's conduct, Plaintiffs and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

## FOURTH CAUSE OF ACTION
### Breach of Fiduciary Duty (Against Mt. Gox Defendants)
### (On Behalf of Plaintiffs and the Classes)

113.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

114.    As guardians of the Plaintiffs' and the Classes' bitcoins, Mt. Gox owed a fiduciary duty to Plaintiffs and the Classes to protect their bitcoins and Fiat Currency and maintain complete and accurate records of how its users' bitcoins and Fiat Currency were stored, maintained, purchased, sold, and withdrawn.

115.    Mt. Gox breached its fiduciary duty to the Plaintiffs and the Classes by: (i) failing to adequately safeguard its users' bitcoins and Fiat Currency, (ii) failing to allow them to safely and quickly buy, sell, trade, or withdraw the same, (iii) failing to hold all monetary sums and all bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf, (iv) mixing user funds with its own operational funds, and (v) declaring bankruptcy under false pretenses and unlawfully transferring and hiding assets to frustrate the purpose of any bankruptcy proceeding.

116.    As a result of Mt. Gox's conduct, Plaintiffs and the Classes have suffered actual harm. Plaintiffs and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

## FIFTH CAUSE OF ACTION
### Breach of Contract (Against Mt. Gox Defendants)
### (On behalf of Plaintiffs and the Classes)

117.    Plaintiffs incorporate all allegations as if fully set forth herein.

118.    Plaintiffs and the Classes entered into valid and enforceable agreements with Mt. Gox whereby Mt. Gox promised to provide services to Plaintiffs and the Classes, and Plaintiffs and the Classes agreed to pay money for such services.

119.    A material part of Mt. Gox's promise to Plaintiffs and the Classes was to adequately protect and hold their bitcoins and Fiat Currency and to allow them to safely and quickly buy, sell, trade, or withdraw the same.

120.    Based on the foregoing offers and representations, Plaintiffs and the Classes agreed to sign up for Mt. Gox's services and trade bitcoins and Fiat Currency using the same. Further, Plaintiffs and the Frozen Currency Class agreed to store and maintain bitcoins and Fiat Currency on Mt. Gox's website. As such, Plaintiffs and the Classes performed their obligations under the contracts.

121.    Mt. Gox breached its contracts with Plaintiffs and the Payment Class by failing to safely and adequately protect and hold their bitcoins and Fiat Currency. Mt. Gox further breached its contracts with Plaintiffs and the Frozen Currency Class by unlawfully retaining, losing, or misusing their bitcoins and Fiat Currency.

122.    Likewise, Illinois contract law recognizes the implied covenant of good faith and fair dealing in every contract. Thus, implicit in its contracts with Plaintiffs and the Classes were provisions prohibiting Mt. Gox from engaging in conduct that frustrated or injured Plaintiffs' and the Classes' rights to receive the benefits of the agreement.

123.    Mt. Gox acted in bad faith and breached these provisions of the agreement, specifically by not honoring its responsibilities to adequately safeguard its users' bitcoins and Fiat Currency and by unlawfully retaining, losing, or misusing the same.

124.    Furthermore, Mt. Gox was under an implicit obligation to be truthful in its

advertisements, and to adequately safeguard its users' bitcoins and Fiat Currency and to allow them to safely and quickly buy, sell, trade, or withdraw the same. Mt. Gox did not honor any of these obligations.

125.    Mt. Gox breached the implied covenant of good faith and fair dealing by: (i) failing to adequately safeguard its users' bitcoins and Fiat Currency, (ii) unlawfully retaining, losing, or misusing their bitcoins and Fiat Currency, (iii) failing to maintain its users' bitcoins and Fiat Currency in the user's name and in separate and segregated accounts, and (iv) by failing to fully comply with the proscriptions of applicable law.

126.    Mt. Gox also breached the implied covenant of good faith and fair dealing and acted to frustrate Plaintiffs' and Class Members' ability to receive the benefits of their contracts by breaching its commitment to hold consumer funds in the consumers' accounts, in the consumers' names, and on the consumers' behalves and abusing its discretion, if any, to determine the method by which such funds would be held and maintained.

127.    The aforementioned breaches of contract have directly and proximately caused Plaintiffs and the Payment Class economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

## SIXTH CAUSE OF ACTION
### Violation of the California Unfair Competition Law, "UCL" § 17200
### (Against Defendant Mizuho)
### (On behalf of Plaintiffs and the Classes)

128.    Plaintiffs incorporate all allegations as if fully set forth herein.

129.    Mizuho performed critical financial services for Mt. Gox even after it knew or

should have known that Mt. Gox had violated its express trust, fiduciary, and contractual agreements with customers and had engaged in other unlawful and unscrupulous behavior.

130.    Mizuho transferred money and provided financial assistance and services that make it possible for Mt. Gox to continue to defraud the Classes. Mizuho had notice of Mt. Gox's unscrupulous and unfair practices and permitted such activities to exist. Mizuho further provided substantial assistance and support in the form of continued financial and banking services to Mt. Gox even though it knew that Mt. Gox had breached its commitment to hold consumer funds in the consumers' accounts, in the consumers' names, and on the consumers' respective behalves. Mizuho also had notice of other irregularities constituting fraudulent and even criminal conduct.

131.    The aforementioned breaches of contract have directly and proximately caused Plaintiffs and the Classes economic injury and other damages, including in the amount of fees and prices they paid for Mizuho's money-wiring services, as well as damages in the amount of wired Fiat Currency that was misplaced, stolen, lost, or misused by Mt. Gox. Mizuho's conduct violates UCL § 17200 and it should be made to cease all such activity and return all monies it obtained through its dealings with Mt. Gox to the Class Members. On information and belief, over 30% (and potentially higher than 50%) of the monies held by Mizuho in connection with Mt. Gox belongs to United States' citizens. Mizuho should be disgorged of such monies and provide restitution to the Class Members.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment/Restitution**
**(In the alternative to contract claims)**
**(On Behalf of Plaintiffs and the Classes against All Defendants)**

132.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein, excluding Plaintiffs' allegations for breach of contract.

133.    If the Court finds Plaintiffs' and the Classes' contracts with Mt. Gox or Mizuho to

be invalid, non-existent, or otherwise unenforceable, Plaintiffs and the Classes may be left without any adequate remedy at law.

134.    Plaintiffs and the Classes conferred a monetary benefit on Mt. Gox and Mizuho in the form of fees paid for their services and on Mt. Gox specifically in the form of actual bitcoins and Fiat Currency deposited in their accounts.

135.    Mt. Gox and Mizuho appreciate or have knowledge of the benefits conferred upon them by Plaintiffs and the Classes.

136.    Under principles of equity and good conscience, Mt. Gox should not be permitted to retain the money belonging to Plaintiffs and the Classes because Mt. Gox failed to implement adequate bitcoin management and security measures that Plaintiffs and the Classes paid for and are otherwise entitled to by industry standards. Further, the actual bitcoins and Fiat Currency that Plaintiffs and the Classes provided for deposit were supposed to be released back to Plaintiffs and the Classes.

137.    Under principles of equity and good conscience, Mizuho should not be permitted to retain the money belonging to Plaintiffs and the Classes because it knew of Plaintiffs' contracts and Terms of Use with Mt. Gox and Mt. Gox's rampant violations of those terms but still provided substantial assistance to Mt. Gox by facilitating payments *into* the exchange. Mizuho further failed to perform the services for which it received fees from Plaintiffs, the members of the Classes, and Mt. Gox on those consumers' behalves.

138.    Accordingly, as a result of Mt. Gox's conduct, Plaintiffs and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of

the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

139.     As a result of Mt. Gox and Mizuho's conduct, Plaintiffs and the Classes suffered

damages in the form of the fees they overpaid for Mt. Gox fees and commissions, Mizuho's wire

services, as well as damages in the amount of wired Fiat Currency that were misplaced, stolen,

lost, or misused by Mt. Gox. Neither defendant should be permitted to retain such benefits,

should be immediately disgorged of such benefits, and the Class Members are entitled to

restitution of their lost bitcoins and Fiat currency, benefits they conferred on Defendants.

### EIGHTH CAUSE OF ACTION
**Preliminary Injunction (As against All Defendants)**
**(On Behalf of Plaintiffs and the Frozen Currency Class)**

140.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

141.     Plaintiffs and the Frozen Currency Class conferred a monetary benefit on Mt. Gox

in the form of actual bitcoins and Fiat Currency.

142.     Mt. Gox appreciated or had knowledge of the benefits conferred upon it by

Plaintiffs and the Frozen Currency Class

143.     In early February 2014, Mt. Gox halted all withdrawals from its website and

subsequently shut down its service. As a result, Plaintiffs and the Frozen Currency Class cannot

access, withdraw, or cash out their bitcoins or Fiat Currency.

144.     The bitcoins and Fiat Currency that Plaintiffs and the Frozen Currency Class

provided to Mt. Gox were supposed to be released back to Plaintiffs and the Frozen Currency

Class.

145.     Plaintiffs and the Frozen Currency Class will suffer irreparable harm if Mt. Gox

retains the bitcoins and Fiat Currency belonging to Plaintiffs and the Frozen Currency Class. The

harm greatly outweighs any claimed harm by the Defendants. The public's interest weighs in

favor of not allowing the perpetrators and facilitators of fraud like Defendants to continue their unscrupulous conduct.

146.    Plaintiffs and the Frozen Currency Class have no adequate remedy at law since they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat Currency.

147.    Plaintiffs and the Frozen Currency Class will likely succeed on the merits, because Mt. Gox unlawfully misused or misappropriated Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency.

## NINTH CAUSE OF ACTION
### Permanent Injunction (As against All Defendants)
### (On Behalf of Plaintiffs and the Frozen Currency Class)

148.    Plaintiffs incorporate all allegations as if fully set forth herein.

149.    Plaintiffs and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

150.    Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Frozen Currency Class.

151.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiffs and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

152.    The bitcoins and Fiat Currency that Plaintiffs and the Frozen Currency Class provided to Mt. Gox were supposed to be released back to Plaintiffs and the Frozen Currency Class.

153.    Plaintiffs and the Frozen Currency Class will suffer irreparable harm if Mt. Gox retains the bitcoins and Fiat Currency belonging to Plaintiffs and the Frozen Currency Class. The

harm to Plaintiffs outweighs any harm to Defendants and the public interest supports an injunction.

154.    Plaintiffs and the Frozen Currency Class have no adequate remedy at law since they have no other means of accessing, withdrawing, or cashing out their bitcoins or Fiat Currency.

155.     Plaintiffs and the Frozen Currency Class will likely succeed on the merits, because Mt. Gox unlawfully misused or misappropriated Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency.

## TENTH CAUSE OF ACTION
### Trespass to Chattels (As against Mt. Gox Defendants)
### (On Behalf of Plaintiffs and the Frozen Currency Class)

156.    Plaintiffs incorporate all allegations as if fully set forth herein.

157.    Plaintiffs and the Frozen Currency Class transferred, maintained, and stored actual bitcoins and Fiat Currency on Mt. Gox's exchange.

158.    Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency are protected property interests.

159.    Mt. Gox intentionally (or in the alternative, through gross recklessness or negligence) and without authorization or consent, gained accessed to Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency, used Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency, exercised control, dominion or ownership of Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency, and/or dispossessed Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency.

160.    In doing so, Mt. Gox intentionally (or, alternatively, through gross negligence) intermeddled with, damaged, and/or deprived Plaintiffs and the other members of the Frozen

Currency Class of the use of their bitcoins and Fiat Currency.

161.    As a result of Mt. Gox's interference with Plaintiffs'sand the other Frozen

Currency Class's use of their bitcoins and Fiat Currency, Plaintiffs and the other members of the

Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form

of the lost value of their bitcoins and currency.

**ELEVENTH CAUSE OF ACTION**
**Conversion (Against Mt. Gox Defendants)**
**(On Behalf of Plaintiffs and the Frozen Currency Class)**

162.    Plaintiffs incorporate the all allegations as if fully set forth herein.

163.    Plaintiffs and the Frozen Currency Class transferred, maintained, and stored

actual bitcoins and Fiat Currency on Mt. Gox's exchange.

164.    Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency are

protected property interests.

165.    Mt. Gox intentionally and/or negligently, and without authorization or consent,

gained accessed to Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency, used

Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency, exercised control,

dominion or ownership of Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat

Currency, and/or dispossessed Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat

Currency.

166.    In doing so, Mt. Gox intentionally and/or negligently intermeddled with,

damaged, and/or deprived Plaintiffs and the other members of the Frozen Currency Class of the

use of their bitcoins and Fiat Currency.

167.    As a result of Mt. Gox's interference with Plaintiffs' and the other Frozen

Currency Class's use of their bitcoins and Fiat Currency, Plaintiffs and the other members of the

Frozen Currency Class have suffered, and will continue to suffer, damages, including in the form of the lost value of their bitcoins and currency.

## TWELFTH CAUSE OF ACTION
### Accounting (against all Defendants)
### (On Behalf of Plaintiffs and the Frozen Currency Class)

168.    Plaintiffs incorporate all allegations as if fully set forth herein.

169.    In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiffs and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

170.    Because all transaction records relating to the deposit, purchase, sale, trade, and withdrawal of Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency are exclusively within the control of Mt. Gox and Mizuho, Plaintiffs and the Frozen Currency Class have an inadequate legal remedy in that they cannot determine the precise amount of damage that they have suffered as a result of Mt. Gox and Mizuho's conduct, including their breaches of duty and contract. Although there are postings on the Internet of potential holdings, Mt. Gox and Mizuho are in the best position to confirm the actual amounts held.

171.    Mt. Gox and Mizuho have breach fiduciary obligations, breached an express trust agreement between Mt. Gox and its customers, and have engaged in a fraudulent scheme as alleged throughout this Complaint.

172.    As a result, Plaintiffs and the Frozen Currency Class seek an order requiring Mt. Gox and Mizuho to provide a full and complete accounting of all transactions or records relating to the deposit, purchase, sale, trade, withdrawal, and/or disbursement of Plaintiffs' and the Frozen Currency Class's bitcoins or Fiat Currency so they may discern and calculate their damages.

### THIRTEENTH CAUSE OF ACTION
**Constructive Trust (against all Defendants)**
**(On Behalf of Plaintiffs and the Frozen Currency Class)**

173.     Plaintiffs incorporate the all allegations as if fully set forth herein.

174.     Plaintiffs and the Frozen Currency Class conferred a monetary benefit on Mt. Gox in the form of actual bitcoins and Fiat Currency.

175.     Mt. Gox appreciated or had knowledge of the benefits conferred upon it by Plaintiffs and the Frozen Currency Class.

176.     In early February 2014, Mt. Gox halted all withdrawals from its website and subsequently shut down its service. As a result, Plaintiffs and the Frozen Currency Class cannot access, withdraw, or cash out their bitcoins or Fiat Currency.

177.     As a result, Plaintiffs and the Frozen Currency Class seek the imposition of a constructive trust on all of their bitcoins or Fiat Currency within Mt. Gox's possession, custody, or control.

178.     Mt. Gox intentionally and/or negligently, and without authorization or consent, gained possession, custody or control of Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency.

179.     The imposition of a constructive trust on Plaintiffs' and the Frozen Currency Class's bitcoins and Fiat Currency is warranted given Mt. Gox's unlawful conduct described above.

180.     Plaintiffs have no other adequate remedy at law.

### FOURTEENTH CAUSE OF ACTION
**Civil Conspiracy (As against Mt. Gox Defendants and Mizuho)**
**(On Behalf of Plaintiffs and the Classes)**

181.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

182.    Mt. Gox Defendants, in conjunction with Defendant Mizuho Bank, entered into a knowing agreement whereby Defendants jointly conspired to misappropriate user funds that had been entrusted into Mt. Gox's bank accounts with Mizuho.

183.    Specifically, Mt. Gox Defendants used Mizuho's services to continue extracting cash deposits from its users even after knowing that it intended to file for bankruptcy and that thereafter its users would be unable to access the funds in their accounts. In accordance with and in furtherance of the conspiracy, Mizuho agreed to, and did in fact, accept and deposit user wire transfers into Mt. Gox accounts up to and until the Mt. Gox website shut down despite knowing that such funds belonged to the Class Members and that Mt. Gox was going to collapse or lacked sufficient funds to operate the exchange and pay consumers.

184.    Additionally, Mizuho knowingly agreed to, and did, aid Mt. Gox in breaching its fiduciary and other duties to Plaintiffs and the Classes by depositing Plaintiffs' and the Classes' funds into Mt. Gox's general account, unsegregated from operating and other monies, and thus, knowingly aided Mt. Gox's breach of its Terms of Use, which expressly promised, in a manner giving rise to an express trust and fiduciary obligations, to hold all monetary sums deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf.

185.    Accordingly, and as alleged above, Mt. Gox in concert with Mizuho, unlawfully dispossessed its users' property and committed the torts of conversion, fraud, fraudulent inducement, breach of contract, breach of express trust and breach of fiduciary duty.

186.    Mizuho agreed to and was an active participant in the conspiracy, as evidenced by its knowledge of Mt. Gox's unlawful activity and continued participation in furtherance of such activity.

187.     As an actual and proximate result of Mt. Gox and Mizuho's scheme, Plaintiffs

and the Classes suffered damages in the form of the fees they overpaid for Mizuho and Mt.

Gox's services, as well as damages in the amount of wired Fiat Currency and/or Bitcoin that was

misplaced, stolen, lost, or misused by Mt. Gox and Mizuho.

### FIFTEENTH CAUSE OF ACTION
**Civil Conspiracy (As against all Defendants)**
**(On Behalf of Plaintiffs and the Classes)**

188.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

189.     Mt. Gox Defendants, in conjunction with Mizuho Bank and John Doe Defendants,

entered into a knowing agreement or understanding whereby Mizuho Bank and John Doe

Defendants would assist Mt. Gox with the concealment, destruction, and conversion of Fiat

Currency and bitcoins misappropriated from Plaintiffs' and the Classes' Mt. Gox accounts.

190.     Mizuho and John Doe Defendants knowingly provided professional financial,

accounting, legal, and banking services and advice designed to assist Mt. Gox with the

concealment, destruction, and/or conversion of bitcoins and Fiat Currency, both before and after

Mt. Gox's filing for bankruptcy protection in Japan and the United States. Mizuho and the John

Does defendants knew of Mt. Gox's fraud, conversion, and breaches of contracts, trusts, and

fiduciary duties, and actively participated and supported such conduct by continuing to render

professional services, delaying legal processes and proceedings, obstructing investigations, and

otherwise delaying matters while Karpeles and the other Mt. Gox Defendants continued to

perpetrate their fraud by hiding their personal and other bitcoin ad Fiat Holdings. Such deception

includes the filing of bankruptcy proceedings in Japan and the US to delay investigations while

Defendants worked to hide over 180,000 bitcoins (approx. value $112,860,000) through

hundreds or thousands of transactions on the Block Chain to avoid detection after the filing of

bankruptcy and to continue to receive assets in derogation of Court orders.

191.     As an actual and proximate result of Mt. Gox, Mizuho, and John Doe Defendants'
conspiracy, Plaintiffs and the Classes suffered damages in the amount of the stolen bitcoins and
Fiat Currency belonging to Plaintiffs and the Classes that was concealed, destroyed, transferred,
or hidden by Mt. Gox with the aid of John Doe Defendants and Mizuho.

### SIXTEENTH CAUSE OF ACTION
**Breach of Express Trust (As against Mt. Gox Defendants)**
**(On Behalf of Plaintiffs and the Classes)**

192.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

193.     Under the terms of its agreement with Plaintiffs and the Classes, and as stated in
its Terms of Use, Mt. Gox agreed to hold all monetary sums and all bitcoins deposited by
Plaintiffs and members of the Classes in accounts registered in that member's name and on such
member's behalf. Such terms constitute an express trust agreement under which Mt. Gox
promised to hold property belonging to Plaintiffs and the Classes in trusts individually
maintained under the names of Plaintiffs and the members of the Classes.

194.     Mt. Gox breached the express trusts it held on behalf of Plaintiffs and members of
the Classes by failing to adequately safeguard the bitcoins and Fiat Currency held in such trusts,
and further, by failing to hold all monetary sums and all bitcoins deposited by each member in
accounts registered in that member's name and on such member's behalf. In particular, Mt. Gox
failed to deposit the currency and bitcoins belonging to its members in separate accounts
maintained in each member's name and on such member's behalf, and instead, commingled the
currency and bitcoins belonging to its members with its own operational funds.

195.     Mt. Gox's breach of its express trusts with Plaintiffs and the Classes allowed the
funds (in both Bitcoin and currency) to be lost, stolen, misplaced, or misused by Mt. Gox and/or

third parties.

196.     As a result of Mt. Gox's conduct, the Plaintiffs and the Classes have suffered actual harm. Plaintiffs and the Payment Class suffered economic injury and other damages, including in the amount of the difference between the price they paid for Mt. Gox's services as promised and the actual diminished value of its services. Further, Plaintiffs and the Frozen Currency Class have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

## SEVENTEENTH CAUSE OF ACTION
### Breach of Racketeer Influenced and Corrupt Organizations Act ("RICO")
### 18 U.S.C. § 1962
### (As against all Defendants)
### (On Behalf of Plaintiffs and the Classes)

197.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

198.     Through the civil conspiracy described in Counts Fourteen and Fifteen *supra*, Mt. Gox Defendants, in conjunction with Mizuho Bank and John Doe Defendants, have directly participated in and devised an enterprise through which to commit racketeering acts in violation of 18 USC § 1962. Specifically, Defendants have used interstate wires in the furtherance of their scheme to defraud Mt. Gox users.

199.      Defendants devised and participated in their scheme to induce Mt. Gox users to transmit funds through wire transfers (processed by Mizuho and other John Doe banking Defendants) to accounts held and controlled on behalf of Mt. Gox, after which the funds were misappropriated and otherwise used by Defendants for fraudulent purposes.

200.     Upon information and belief, Defendants further used wire transfers, in part, to hide, transfer, or conceal the misappropriated funds belonging to Plaintiffs and the members of the Classes before and during the pendency of its bankruptcy proceedings in Japan and Tokyo.

201.    Defendants' racketeering activities were conducted on an international basis and affected both interstate and foreign commerce, as Plaintiffs and the members of the Classes submitted international wire transfers from states across the country.

202.    Further, Defendants intended to defraud Plaintiffs and the members of the Classes and regularly and repeatedly used the wires in furtherance of such fraud.

203.    As an actual and proximate result of Mt. Gox, Mizuho, and John Doe Defendants' racketeering activities, Plaintiffs and the Classes have suffered damages in the amount of the stolen bitcoins and Fiat Currency belonging to Plaintiffs and the Classes that was misappropriated, concealed, transferred, and/or hidden by Mt. Gox with the aid of John Doe Defendants and Mizuho.

## EIGHTEENTH CAUSE OF ACTION
**Tortious Interference With Contract or Prospective Economic Advantage**
**(Against Non-Mt. Gox Defendants)**
**(On behalf of Plaintiffs and the Classes)**

207.    Plaintiffs hereby incorporate the above paragraphs as if set forth in full apart from allegations dependent upon the lack of any contractual relationship.

208.    Plaintiffs each entered into consumer agreements with Mt. Gox wherein Mt. Gox agreed to hold their bitcoins and Fiat currency in the consumer's account, in the consumer's name, and on the consumer's behalf.

209.    Defendant Mizuho and John Does had actual knowledge of such consumer agreements.

210.    Defendant Mizuho and John Does knew that Mt. Gox did not actually hold consumer bitcoins and Fiat currency in the consumer's account, in the consumer's name, and on the consumer's behalf and that Mt. Gox was likely to collapse or otherwise on the verge of bankruptcy and collapse.

211.    Notwithstanding Mizuho's knowledge, Mizuho continued to assist Mt. Gox in making it appear to the outside world that Mt. Gox was adhering and honoring its contractual provisions by, among other things, continuing to facilitate the transfer of money into Mt. Gox or the bitcoin exchange.

212.    By continuing to give such assistance and support to Mt. Gox as described in this Complaint, Mizuho acted to frustrate the Plaintiffs' ability to obtain and enjoy the benefits of their agreements with Mt. Gox and caused or allowed Mt. Gox to breach such contracts.

213.    As a result of Mizuho's conduct, Plaintiffs and the class members have suffered damages in the form of millions of dollars worth of lost bitcoins and Fiat currency and fees in amounts to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs Gregory Greene and Joseph Lack, individually and on behalf of the Classes, pray for the following relief:

(a)    An order certifying the Classes as defined above, appointing Plaintiffs Greene and Lack as representatives of the Classes, and appointing their counsel as Class Counsel;

(b)    An award of actual and statutory damages;

(c)    An award of injunctive, statutory and/or declaratory relief as necessary to cease Mt. Gox's unlawful conduct as described herein;

(d)    An award of restitution for Mt. Gox's wrongful conduct;

(e)    An award of reasonable attorneys' fees and costs;

(f)    An award of punitive or exemplary damages,

(g)    An award of interest

(h)    An order recognizing an express trust and fiduciary relationship breached by

Defendants and enter an order returning the Class Members' property to the Class Members, and

 (i)  Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

         Respectfully submitted,

         **GREGORY GREENE AND JOSEPH LACK**,
         individually and on behalf of all others similarly
         situated,

Dated: March 17, 2014    By: /s/ Steven L. Woodrow
           One of Plaintiffs' Attorneys

Steven L. Woodrow      Jay Edelson
swoodrow@edelson.com    jedelson@edelson.com
Megan Lindsey        Christopher L. Dore
mlindsey@edelson.com     cdore@edelson.com
EDELSON PC         David I. Mindell
999 18th Street, Suite 3000   dmindell@edelson.com
Denver, Colorado 80202    Alicia E. Hwang
Tel: 303.357.4878       ahwang@edelson.com
Fax: 303.446.9111       EDELSON PC
            350 North LaSalle Street, Suite 1300
            Chicago, Illinois 60654
            Tel: 312.589.6370
            Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Classes*

**<u>CERTIFICATE OF SERVICE</u>**

I, Steven L. Woodrow, an attorney, hereby certify that I served the above and

foregoing ***Corrected First Amended Class Action Complaint*** by causing true and accurate

copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic

filing system on March 17, 2014.

<u>s/ Steven L. Woodrow</u>