# Exhibit A

1

```
 1                    IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                             EASTERN DIVISION

 3
     GREGORY GREENE, individually   )
 4   and on behalf of all others    )
     similarly situated,            )
 5                                  )
                     Plaintiffs,    )
 6                                  )
     -vs-                           )  Case No. 14 C 1437
 7                                  )
     MTGOX, INC., a Delaware        )  Chicago, Illinois
 8   corporation; MT. GOX KK, a     )  March 11, 2014
     Japanese corporation;          )  10:40 a.m.
 9   TIBANNE KK, a Japanese         )
     corporation; and MARK          )
10   KARPELES, an individual,       )
                                    )
11                   Defendants.    )

12                       TRANSCRIPT OF PROCEEDINGS
                   BEFORE THE HONORABLE GARY FEINERMAN
13

14   APPEARANCES:

15   For the Plaintiffs:    EDELSON, P.C.
                            BY:  MR. JAY EDELSON
16                               MR. STEVEN L. WOODROW
                                 MR. CHRISTOPHER L. DORE
17                               MS. ALICIA E. HWANG
                            350 North LaSalle Street
18                          Suite 1300
                            Chicago, Illinois  60654
19                          (312) 589-6370

20

21
     Court Reporter:
22
                      CHARLES R. ZANDI, CSR, RPR, FCRR
23                        Official Court Reporter
                        United States District Court
24              219 South Dearborn Street, Room 2128
                        Chicago, Illinois  60604
25                   Telephone:  (312) 435-5387
                email:  Charles_zandi@ilnd.uscourts.gov
```

1    APPEARANCES:  (Continued)

2    For Defendant              BAKER & McKENZIE, LLP
     Mt. Gox KK:                BY:  MR. JOHN M. MURPHY
3                               300 East Randolph Street
                                Suite 5000
4                               C/hicago, Illinois  60601-6342
                                (312) 861-8000
5
                                BAKER & McKENZIE, LLP
6                               BY:  MR. TOD L. GAMLEN
                                660 Hansen Way
7                               Palo Alto, California  94304
                                (415) 856-2400
8
                                BAKER & McKENZIE, LLP
9                               BY:  MR. JOHN E. MITCHELL
                                2001 Ross Avenue
10                              Suite 2300
                                Dallas, Texas  75201
11                              (214) 978-3037

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    (Proceedings heard in open court:)

2         THE CLERK:  14 C 1437, Greene versus Mt. Gox.

3         MR. EDELSON:  Good morning, your Honor.  Jay Edelson

4    for the plaintiff and putative class.

5         MR. MURPHY:  Good morning, your Honor.  My name is

6    John Murphy.  Yesterday, I filed my appearance as local

7    counsel for Mt. Gox KK, one of the four defendants in the

8    action.

9         I'm here this morning with two of my colleagues,

10   Mr. Tod Gamlen, Mr. John Mitchell, from California and Texas,

11   respectively.  They filed their applications yesterday for

12   *pro hac vice* admission.  They paid their fees.  I'd ask the

13   Court to grant those motions or permit Mr. Mitchell and

14   Mr. Gamlen to present on behalf of our common client this

15   morning.

16        THE COURT:  Any objection?

17        MR. EDELSON:  No objection, your Honor.

18        THE COURT:  Okay.  The Court will grant the motions

19   for leave to appear *pro hac vice*.  I think those are docket

20   Nos. 23 and 25.

21        Anyone else?

22        MR. WOODROW:  Yes, your Honor.  Steven Woodrow for

23   the plaintiff and the putative class.

24        MR. DORE:  Good morning, your Honor.  Chris Dore on

25   behalf of the plaintiff and putative class.

4

1          MS. HWANG:  Alicia Hwang on behalf of the plaintiff
2    and putative class.
3          MR. EDELSON:  And, your Honor, just for the record,
4    our client, Greg Greene, is at counsel's table.
5          MR. GREENE:  Good morning, your Honor.
6          THE COURT:  All right.  Good morning.  So, we have a
7    number of matters before the Court this morning.  All or most
8    are all related to the motion for a TRO and a preliminary
9    injunction.
10          The first order of business is this bankruptcy matter
11   in the Northern District of Texas -- well, actually, let me
12   take care of a preliminary matter.
13          Counsel for Mt. Gox KK, is that right?
14          MR. GAMLEN:  That's correct, your Honor.
15          THE COURT:  Are you appearing on behalf of any of the
16   other defendants?
17          MR. GAMLEN:  No, your Honor, we're not.  We're only
18   appearing on behalf of Mt. Gox KK, the Japanese corporation.
19          THE COURT:  And do you know whether anybody's going
20   to appear on behalf of Karpeles or the two other entities?
21          MR. GAMLEN:  At the hearing this morning, your Honor?
22   At this morning's hearing?
23          THE COURT:  No.  I'm assuming nobody's going to
24   appear for them this morning.  At any point in the near
25   future -- I figure you -- I'm asking you because I'm just

1    guessing that you probably know better than anybody else in

2    this courtroom whether anybody's going to be appearing on

3    behalf of the two related entities and the owner of the

4    Mt. Gox entity that you're representing.

5            MR. GAMLEN:  We don't know the answer to that

6    question, your Honor.  That's a decision they're going to have

7    to make.  That's a decision that those particular defendants

8    will have to make.  We just don't know if they will be

9    appearing or not.

10           THE COURT:  Okay.  Has Karpeles -- how do you

11   pronounce that?  Karpeles?

12           MR. GAMLEN:  Karpeles.

13           THE COURT:  Has he been named as a defendant in any

14   other cases in the United States?

15           MR. GAMLEN:  Not that I'm aware of, your Honor.  The

16   other litigation we're aware of is the *Coin Lab versus Mt. Gox*

17   *KK* litigation.  He is not a defendant in that case.

18           THE COURT:  Is that the one in Seattle?

19           MR. GAMLEN:  That's correct.

20           THE COURT:  Okay.  He is not a defendant.  What about

21   the two other entities?

22           MR. GAMLEN:  The entity Tibanne KK is a defendant in

23   the Seattle action.

24           THE COURT:  Which one?

25           MR. GAMLEN:  The Seattle action, the *Coin Lab* action.

1      THE COURT:  Right.  And which defendant?

2      MR. GAMLEN:  Tibanne KK.

3      THE COURT:  Oh, Tibanne, T-I-B-A-N-N-E, KK?

4      MR. GAMLEN:  Correct.

5      THE COURT:  And who's representing Tibanne KK in the

6  Seattle action?

7      MR. GAMLEN:  In the Seattle action, our firm is

8  representing Tibanne KK as well as Mt. Gox KK.

9      THE COURT:  Okay.  But you don't know whether Tibanne

10  KK is going to retain Baker in this case?

11      MR. GAMLEN:  We don't know, your Honor.  We

12  represent -- in light of the fact that we represent the debtor

13  in the bankruptcy, that does create potential issues, and they

14  have to be looked into.

15      THE COURT:  Understood.  And what about the Delaware

16  entity, Mt. Gox, Inc.?

17      MR. GAMLEN:  Mt. Gox, Inc., your Honor, is not a

18  defendant or a party -- excuse me, is not a defendant in any

19  litigation we're aware of other than this one.

20      THE COURT:  Okay.  Do the plaintiffs have any

21  insights -- have you heard from any of the other defendants,

22  meaning the two other entities or Mr. Karpeles?

23      And do you want to -- if you want to put your --

24  Mr. Edelson will make -- give you half the podium there.

25      MR. EDELSON:  Of course.  He can have more than half

1    if he wants, your Honor.

2              THE COURT:  Go ahead.

3              MR. EDELSON:  Yeah.  So, our understanding is Baker

4    McKenzie has been representing the interests of all of these

5    parties in Tokyo.  When they were in the bankruptcy court

6    yesterday in Texas, they were representing the interests of

7    the parties.  So, we understand --

8              THE COURT:  Well, you have to be very particular --

9              MR. EDELSON:  I am.

10             THE COURT:  -- when you say the parties.  And I know

11   in the complaint, you allege that all four are the same thing,

12   but let's, just for my purposes so I can keep my score card

13   straight, let's -- when you mention a defendant, please

14   mention the actual defendant.

15             So, the only thing I saw in Texas is Mt. Gox KK.

16             MR. EDELSON:  You're correct, your Honor.  I should

17   be as precise as possible.  I apologize.

18             Yesterday at the hearing -- and Mr. Woodrow can speak

19   more intelligently about this -- Baker McKenzie argued to the

20   court that this whole action with regard to each of the four

21   defendants ought to be stayed.  So, my point was that they

22   were representing all of their interests, each one of them

23   individually.  And they won with respect to Mt. Gox KK.

24             MR. MITCHELL:  Your Honor, may I address that point?

25             THE COURT:  Sure.

1          MR. MITCHELL:  Your Honor, John Mitchell, Baker &
2    McKenzie.

3          That's not correct, your Honor.  We appeared on
4    behalf of Mt. Gox KK as well as Mr. Karpeles, but in his
5    capacity solely as the petitioner to be a foreign
6    representative of a foreign proceeding.  And under
7    Section 1510 of the bankruptcy code, he can appear solely for
8    that purpose, and it's not a general appearance for any other
9    matter.

10          So, it is correct.  We were only representing the
11    estate under the direction of the petitioner, the equivalent
12    of a trustee over an estate, your Honor.

13          Yesterday, what was being argued was that the
14    automatic stay should be extended to third parties for
15    particular reasons, but that doesn't necessarily mean that we
16    were representing those individuals either in this proceeding,
17    in that bankruptcy case, or anywhere else.  It was simply an
18    argument to extend the stay to third parties in addition to
19    Mt. Gox KK, the debtor.

20          THE COURT:  And what did the bankruptcy judge say?

21          MR. MITCHELL:  The bankruptcy judge declined to enter
22    the stay to non-debtor parties, but he did enter an order
23    extending the automatic stay of 11 USC 362 to Mt. Gox KK, your
24    Honor, and its assets, your Honor, as well.

25          But the full effect of 11 USC 362 is in effect with

1    respect to Mt. Gox KK and its assets.

2            THE COURT:  Mr. Edelson, is that your understanding?

3            MR. EDELSON:  Correct, your Honor.

4            THE COURT:  Okay.  So, we have a bankruptcy stay as

5    to Mt. Gox KK, and the stay has not been entered and, in fact,

6    was expressly denied as to the two other entity defendants and

7    Mr. Karpeles, is that right?

8            MR. WOODROW:  That is correct.

9            MR. MITCHELL:  That's correct.

10            THE COURT:  Okay.  So, in light of the bankruptcy

11    stay as to KK, Mr. Edelson, do you agree that the Court cannot

12    proceed on your case or on your motions with respect to the KK

13    entity?

14            MR. EDELSON:  Correct, your Honor.

15            THE COURT:  Okay.  So, the Court is going to stay all

16    proceedings as to only the KK entity.

17            And then the next question is:  What do we do with

18    respect to the other three defendants?  So, do you -- do you

19    believe that the other three defendants have assets in the

20    United States?

21            MR. WOODROW:  Judge, Steven Woodrow.  At this point,

22    your Honor, it is believed that the other three defendants

23    might have assets located within the United States.  As we

24    pled in our complaint at paragraph 12, we believe that the

25    defendants may have been using computer equipment located in

1   Massachusetts.  We also understand that the Department of

2   Homeland Security or another branch of the United States

3   government has seized between 2.1 million and $5 million

4   belonging to potentially Mr. Karpeles himself.

5            THE COURT:  Is that fake money or real money?

6            MR. WOODROW:  It would be fiat currency, your Honor.

7            THE COURT:  Fiat currency?  Okay.

8            MR. WOODROW:  Yes, Judge.  And that would be cash.

9            Really, your Honor, that's part of the reason why

10  we're here is because we need discovery into what assets

11  Mr. Karpeles might have, Karpeles, I apologize, and the other

12  entities that the stay has not been issued as to.

13           THE COURT:  I see.  And as to the other three

14  entities, you're not representing them, so do you have

15  anything to say as to the motion as it is directed to the

16  three defendants whom you are not representing?

17           MR. GAMLEN:  Your Honor, if it would be helpful to

18  the Court in making its decision, I can explain to you the

19  relationship of these four entities that are -- the four named

20  defendants if you think that will help.

21           As the Court recognized, in the complaint, they're

22  all clumped together with no differentiation between them.

23  It's my belief that if the Court understands at least the

24  relationship between them, it might help crystallize his

25  thinking as to what relief, if any, he's going to grant,

1  particularly in light of the bankruptcy proceeding, in light
2  of the fact that there is going to be a recognition hearing on
3  April 1 and 2 down in Dallas, which could shed some further
4  light and crystallization as to, you know, what are the -- to
5  what extent the stay is going to be continued.

6          So, with that, if the Court would like --

7          THE COURT:  And by recognition hearing, you mean the
8  proceeding under Chapter 15 to coordinate the actions in the
9  Northern District of Texas with the Japanese bankruptcy court?

10         MR. GAMLEN:  It would be the recognition of the
11 Japanese proceedings.

12         MR. MITCHELL:  That's correct, your Honor.  There
13 will be a trial on April 1st to determine whether or not the
14 Chapter 15 even should be accepted and whether or not that
15 foreign proceeding should be recognized.

16         And then at that time, as part and parcel of that
17 recognition proceeding, your Honor, under Chapter 15, there's
18 a broad range of relief and remedies that the bankruptcy court
19 can fashion with respect to administering and taking
20 jurisdiction over the assets in the United States and working
21 in conjunction with that proceeding in Tokyo.

22         One thing I would point out is germane to any
23 bankruptcy process, be it 11, 7, or 15, is determining what is
24 or isn't property of the debtor or property of the estate,
25 which it sounds like may be also before your Honor with

1   respect to the non-debtor parties, what is or isn't property
2   of Mt. Gox KK versus other individuals.

3          MR. GAMLEN:  With that understanding, your Honor, if
4   it would help to have an explanation as to the various
5   parties, I'm then happy to give it to you.

6          THE COURT:  I can use all the help I can get, so why
7   don't you go ahead.  And then I'll give plaintiff a chance to
8   weigh in on anything that is said with respect to the other
9   three entities and their relationship to the debtor.

10         MR. GAMLEN:  So, let's start -- as the Court is
11  aware, there's four named defendants.  Let's start with my
12  client, Mt. Gox KK.

13         Mt. Gox KK is the company that operates the Bitcoin
14  exchange and Mt. Gox web site that is the subject of this
15  action.  In our view, it is the main defendant.

16         THE COURT:  If you can speak up just a little bit.
17  Maybe you can grab the microphone, and then when I turn it
18  over to the plaintiff, we'll switch.

19         MR. GAMLEN:  The customers, including the U.S.
20  custom -- including Mr. Greene and the U.S. customers who
21  plaintiffs seek to represent in this action, they are
22  customers of Mt. Gox KK.  They're not customers of Mt. Gox,
23  Inc.  They're not customers of Tibanne KK.  They're not
24  customers of Mark Karpeles.

25         To the extent that the plaintiff or any of the U.S.

1  customers they seek to represent made deposits of currency or

2  Bitcoin, those deposits were made to Mt. Gox KK.  And it was

3  Mt. Gox KK or its banks that were the repository of those

4  currency funds and the Bitcoins.  Again, it was not Mt. Gox,

5  Inc.  It was not Tibanne KK.  It was not Mr. Karpeles.

6       To the extent a customer made a withdrawal request

7  for Bitcoin or currency, that request is directed to

8  Mt. Gox KK, not the other defendants.

9       The relief that they are seeking in this action

10  relating to their currency fund, relating to the currency

11  funds and the Bitcoin funds, is relief that basically only

12  Mt. Gox KK can provide.

13       Tibanne KK, another defendant, it is the parent of

14  Mt. Gox KK.  It owns 88 percent of the stock of Mt. Gox KK.

15  It does not operate the Bitcoin exchange which is the subject

16  of this litigation.

17       Mr. Karpeles is the CEO and director of Mt. Gox KK.

18  Mt. Gox, Inc., the fourth defendant, is a corporation that was

19  formed under Delaware law in June 2013.  It was formed for the

20  purpose of obtaining state and federal licenses and

21  registrations to operate a Bitcoin business in the U.S. and

22  develop banking relationships.

23       It obtained a FinCEN registration in June of 2013.

24  It has not obtained any other licensing.  It has never

25  conducted any business because it's just something that does

1   not have the licensing to do so.  It has no assets.  It has no

2   bank accounts.  It has never been involved with the currency

3   and the Bitcoin, which is the subject of this complaint.

4           THE COURT:  Who owns Mt. Gox, Inc.?

5           MR. GAMLEN:  Mt. Gox, Inc., technically is owned as

6   an indirect subsidiary of Mt. Gox KK.

7           THE COURT:  And who owns Mt. Gox -- well, Mt. Gox KK

8   is owned by Tibanne, and Tibanne, I'm assuming, is not

9   publicly traded, is that right?

10          MR. GAMLEN:  Tibanne?  No.

11          THE COURT:  It's a closely-held Japanese corporation?

12          MR. GAMLEN:  Right.  Its sole shareholder is

13  Mr. Karpeles.  The other 12 percent of Mt. Gox KK is owned by

14  a gentleman named Jed McCaleb, who actually developed the

15  Mt.Gox.com web site.

16          THE COURT:  I see.  All right.  Any -- do you want to

17  weigh in on any of that?

18          MR. WOODROW:  Your Honor, just initial impressions,

19  we heard counsel say that the other defendants cannot provide

20  the relief that we're presently seeking today; but with all

21  due respect, that's the discovery that we need to determine.

22          Mr. Karpeles, who counsel admittedly does not

23  represent, we believe that he is behind this fraud, that he

24  has siphoned away tens of millions, if not more, in Bitcoin

25  and fiat currency, and that he could potentially satisfy or

1   provide relief to the class; and that counsel is not in a

2   position to stand before the Court today or advise the Court

3   as to what assets he may or may not have.

4           With respect to Tibanne KK, it has an asset.  It owns

5   88 percent of the debtor.

6           There's also -- we've heard testimony this morning

7   from counsel with respect to Mt. Gox, Inc., and what assets it

8   may have, indicating that it has no assets.  Well, we need the

9   discovery to confirm that, Judge.  We can't just rely on the

10  statements of counsel.

11          THE COURT:  What happens in a Japanese bankruptcy

12  proceeding?  Can the trustee, whoever -- well, is there a

13  trustee?  And if there is a trustee, can the trustee file

14  adversary proceedings or the equivalent of adversary

15  proceedings against individuals or entities whom the trustee

16  believes have received fraudulent transfers from the debtor?

17          MR. EDELSON:  Your Honor, we're in preliminary talks

18  with experts on Japanese bankruptcy law to delve further into

19  those questions.

20          It is our understanding that with respect to your

21  Honor's first question, yes, there is the equivalent of a

22  trustee with respect to the Japanese reorganization that has

23  been appointed by the court and that has approved payments to

24  Baker & McKenzie as counsel with respect to Mt. Gox KK in

25  these proceedings.

1    We are not certain at this point whether the Japanese

2  trustee would have the authority to commence adversary

3  proceedings to stop any preferential transfers.  We're looking

4  into that currently.

5    THE COURT:  Any thoughts on that?

6    And the reason I ask is I don't want to do anything

7  that will get in the way of the Japanese bankruptcy proceeding

8  or, as it may happen, the Chapter 15 proceeding in Dallas.  In

9  other words, I don't want to grab assets that are

10  rightfully -- are subject to being corralled by either the

11  Dallas court or the Tokyo bankruptcy court.

12    MR. WOODROW:  Yes, Judge.  And that issue was in part

13  before the bankruptcy court in Dallas yesterday; and after an

14  hour-long hearing where the court heard arguments not only

15  from counsel and from our side, but from the lawyers in the

16  *Coin Lab* litigation pending in Seattle, the bankruptcy court

17  expressly decided to decline extending the automatic stay with

18  respect to the non-debtor defendants.

19    And while we certainly appreciate the Court wouldn't

20  want to do anything at this point to necessarily deprive the

21  bankruptcy court of any assets, we would still, at a minimum,

22  would like discovery into what those assets might be so we can

23  figure out whether or not Mr. Karpeles is hiding money in the

24  United States.

25    For example, Judge, when the U.S. government seized

1   his bank accounts at Wells Fargo, one was in the name of a

2   corporate entity, and one was in the name of Mr. Karpeles

3   personally.  We have commissioned an international asset

4   search with respect to the defendants.  We expect to have the

5   results of that later in the week or early next week, and that

6   will give us some indication of what can be found through

7   public databases.

8         But in truth, Judge, the person who's going to know

9   the most about what assets Mark Karpeles has is Mr. Karpeles.

10         THE COURT:  Okay.  Go ahead.  If you could let

11   counsel --

12         MR. MITCHELL:  Your Honor, with respect to not

13   extending the stay yesterday, Judge Hale heard that on

14   admittedly 12 hours' notice.  We filed the case very, very

15   late Sunday night.  And so it's not necessarily a given that

16   the stay might ultimately be extended to the third parties.  I

17   just want the Court to understand that was effectively

18   something very similar to an emergency TRO, and the request

19   was made to extend the stay to the third parties.

20         That issue very well could be brought up again later

21   on in the bankruptcy proceeding, and there's a lot of

22   different reasons why a court might extend the stay to third

23   parties.  I'm certainly not suggesting it will happen, but I

24   also don't want the Court to leave today with the impression

25   that it will never be raised again.

1        Secondly, with respect to the Court's concern about
2    what may or may not go on in a Tokyo proceeding, I am no
3    expert in Japanese insolvency law, either.  But what's
4    important is Chapter 15 gives broad equitable relief or
5    rights -- excuse me, broad equitable remedies to the
6    bankruptcy judge to work in conjunction with the Tokyo
7    proceeding.

8        But if anything that is going on or alternatively
9    fails to go on in the Tokyo proceeding that would be contrary
10   to public policy or otherwise, and it's specific in the code,
11   your Honor, would act as a prejudice to U.S. creditors, then
12   the bankruptcy court can fashion the appropriate relief to
13   ensure that U.S. creditors and parties are on the same equal
14   footing with the Japanese creditors or what's going on in the
15   insolvency proceedings.

16       I cannot address whether or not there are preference
17   actions or there are fraudulent transfer actions under
18   Japanese law, but the bankruptcy court is going to be able to
19   take a step back and see what's going on and fashion the
20   appropriate remedies as needed to make sure that the interests
21   of U.S. creditors and U.S. parties are protected.

22       And I think there would be some concern that if this
23   Court goes down a parallel path, that that might -- that might
24   either be duplicative or otherwise interfere with the
25   restructuring proceeding in the Northern District of Texas,

1    which is in its infancy right now.

2         THE COURT:  I see.

3         MR. EDELSON:  Your Honor, may I respond to that?

4         THE COURT:  Of course.

5         MR. EDELSON:  Two issues, I think, that may bear

6    worth noting.  First of all, we're not seeking a permanent

7    injunction here.  We're seeking a TRO just to keep the status

8    quo for the meantime.  If something changes, if the Texas

9    court rethinks its ruling and says there is a stay, obviously

10   that would trump.  We understand that.

11         The big issue, and the reason we understand that the

12   defendant wants just to go through the normal process and go

13   through the Japanese bankruptcy process, the problem, though,

14   is that our allegations claim that Karpeles every day is

15   siphoning funds off and doing who knows what.

16         This is just a massive fraud.  So, every day that we

17   wait, our view is there's going to be less and less money,

18   fewer and fewer assets for us to be able to attach should we

19   be successful at verdict.

20         We also haven't heard any -- it sounds like they're

21   representing some other interests, but the other defendants

22   have not --

23         THE COURT:  By the way, I'm -- I only heard counsel

24   just by way of background.  So far as I'm concerned, nobody's

25   here on behalf of Karpeles or the other two entity defendants.

1   No opposition to the TRO motion has been mounted with respect
2   to Karpeles or the other two entity defendants.
3          And not only that, it's not because Karpeles and the
4   two other entity defendants don't know about this case.  They
5   have deliberately decided not to appear here and oppose, and
6   I'm going to consider the TRO motion in that light.
7          And Mr. -- Mt. Gox KK is here.  Mt. Gox KK is owned
8   88 percent by Tibanne.  Tibanne is owned 100 percent by
9   Karpeles, so Karpeles is essentially paying 88 percent of
10  Baker McKenzie's bills.
11         So he absolutely knows that he could have been here
12  to oppose, and he's not.  And he may have good reasons to, but
13  he's got to take the bitter with the sweet.
14         Go ahead.
15         MR. EDELSON:  Well, your Honor, I was just going to
16  say the same thing, just not artfully so.
17         THE COURT:  You don't have to butter me up,
18  Mr. Edelson.  I'm sure you could say it much better than I
19  just did.
20         Anyway, you were saying?
21         MR. EDELSON:  Truly, that was my last point.
22         THE COURT:  All right.  Anything else?
23         MR. MITCHELL:  Your Honor, to the extent this goes to
24  your question about fraudulent transfers, things of this
25  nature in the Japanese proceeding, what we did file in support

1   of our Chapter 15 petition was one of the orders -- and I have

2   a translation and I'm happy to hand it up to the Court if

3   you'd like me to -- from the Tokyo court.  And basically,

4   there's the effect of a restriction on Mt. Gox KK, the

5   rehabilitation debtor, as they refer to it, broadly

6   restricting transfers of Mt. Gox's property outside of the

7   ordinary course of business.  Transfers of right --

8                    THE COURT:  You mean transfers of KK?

9                    MR. MITCHELL:  Mt. Gox KK, that's correct, your

10  Honor.  No, it's not directed to Mr. Karpeles individually.

11  But with respect to the assets of KK, there is a broad

12  restriction, I don't know if the right term is injunction, by

13  the Japanese -- the Tokyo district court preventing transfers

14  of any assets of -- or any other use outside the ordinary

15  course of business, of Mt. Gox KK absent the consent of the

16  supervisor.  And the supervisor is the equivalent, loose

17  equivalent of a trustee.

18                   THE COURT:  And so if this Court were to do the same

19  thing -- or were to corral the assets of Mr. Karpeles and the

20  other two entities, that wouldn't conflict with the Tokyo

21  court's order.  It would, in fact, be of a piece with the

22  Tokyo court's order, is that right?

23                   MR. MITCHELL:  It might be, your Honor.  I guess to

24  answer your question, I read the Tokyo court's order as only

25  applying to Mt. Gox KK.

1          THE COURT:  Right.  Okay.

2          MR. GAMLEN:  Just one point, your Honor.  I believe

3     that in light of the stay, I don't know if the Court is

4     suggesting that it would issue any kind of TRO against

5     Mt. Gox KK.

6          THE COURT:  No.  The proceeding as to Mt. Gox KK is

7     stayed, and I'm not going to do anything with respect to KK.

8          Anybody have anything else to say?

9          MR. GAMLEN:  Just one quick clarification, your

10    Honor.

11         THE COURT:  Go ahead.

12         MR. GAMLEN:  When I was giving the background, I did

13    not mention that Mr. Karpeles resides in Tokyo, and that

14    Mt. Gox KK is a Japanese corporation located in Tokyo.

15    Tibanne KK is a Japanese corporation located in Tokyo.

16         THE COURT:  Understood.  And Mr. Karpeles is a

17    citizen of --

18         MR. GAMLEN:  He was born in France.  He lives in

19    Japan.  I don't know whether or not his -- what his actual

20    citizenship would be, but he's never been to the United

21    States, so far as I understand.

22         THE COURT:  Okay.  And -- so, Mt. Gox, Inc., was

23    served through its registered agent, is that right?

24         MR. WOODROW:  Yes, Judge.

25         THE COURT:  And that was in Delaware?

1          MR. WOODROW:  Correct.

2          THE COURT:  Karpeles was served by mail.  I assume

3  you didn't send it ground?

4          MR. WOODROW:  No, Judge.  We sent it international

5  express.  I have the receipt if your Honor would like.

6          THE COURT:  Okay.  Do you know if it hit --

7          MR. WOODROW:  It was scheduled for delivery

8  yesterday, and he certainly has constructive notice of this

9  proceeding, Judge.

10         THE COURT:  Okay.  And what about Tibanne?  How was

11  Tibanne served?

12         MR. WOODROW:  Tibanne was served constructively by

13  e-mail notice to counsel, both Baker McKenzie in the United

14  States as well as Baker McKenzie lawyers in Japan, another

15  Japanese law firm that represents the debtor.  And given that

16  Mr. Karpeles owns 100 percent of Tibanne KK, notice on him

17  should be deemed sufficient for notice on Tibanne KK.

18         THE COURT:  All right.  I'm going to step back for

19  10 minutes and collect my thoughts, and then I'll come out and

20  give you a ruling.  Thank you for -- thank you for the --

21  thank you for the materials, and thank you for your argument

22  here and for bringing the Dallas proceedings to my attention.

23         MR. GAMLEN:  Thank you, Judge.

24   (Recess had.)

25         THE COURT:  Okay.  Good morning.  Again, thanks to

1  counsel for their written submissions and for their

2  presentations here in court.

3        The Court's going to grant in part and deny in part

4  the motion for a TRO and preliminary injunction.  The Court's

5  not going to -- going to deny it with respect to the

6  preliminary injunction in its entirety.  The Court's going to

7  enter a limited TRO with respect to all the defendants other

8  than Mt. Gox KK, for which this action is stayed.

9        The notice provided to the three non-appearing

10  defendants was sufficient.  Mt. Gox, Inc., the Delaware

11  corporation, was served.  And Mr. Karpeles and Tibanne KK

12  certainly have notice of this proceeding through the

13  involvement of Mt. Gox KK.

14        Tibanne is the majority parent of KK, and Karpeles

15  owns 100 percent of Tibanne.  So, they certainly know about

16  this matter, and they've elected not to appear, which is fine.

17  But they had a chance to oppose the TRO, and they didn't.

18        So, I'm making this ruling without the benefit of

19  having argument from the three defendants against whom this

20  action is not stayed.

21        The Court finds that there's a sufficient likelihood

22  of success on the merits to warrant the granting of a TRO in

23  light of the other factors, which I'll get to in a moment.

24        And let me make this perfectly clear.  The Court's

25  operating on a very limited record.  It's hearing from one

1   side.  So, everything the Court's about to say about the
2   merits is subject to reexamination and revision.  This is the
3   most preliminary of findings, and it's good -- these findings
4   are good only for purposes of this TRO and not good for
5   anything else.

6       So, later on in the case, I don't want to hear, "But,
7   Judge, you said such and such in the TRO."  I did say it, but
8   it's only for purposes of the TRO because the factual
9   predicate is almost certainly going to change.

10      The statutory fraud, common law fraud, accounting and
11  conversion claims, based upon the facts that are now before
12  the Court, strike the Court as having a sufficient likelihood
13  of success.  Mr. Greene's and the putative class members'
14  Bitcoin currency and fiat currency were taken or disappeared
15  or they can no longer access it.  And there were -- in the
16  events of late last year and the first couple of months of
17  this year, there certainly were communications from Mt. Gox,
18  and I'm using Mt. Gox collectively at this point, that -- that
19  turned out not to have been true.

20      And I understand that the exchange itself is operated
21  by KK and the web site itself is operated by KK; but the
22  relationship among the four defendants, with the exception of
23  Inc., so I'll just say the relationship between KK, Karpeles,
24  and Tibanne is such that the plaintiffs have made a decent
25  showing at the TRO stage that Karpeles and Tibanne were part

1   of the fraud, were directing the fraud, the alleged fraud, and
2   directed the KK entity to do what it did.

3          Again, there may be facts brought to the Court's
4   attention that warrant a different result; but at this point,
5   based upon what's in front of the Court, the Court finds that
6   a sufficient showing has been made with respect to Karpeles
7   and Tibanne certainly as being engineers of or full
8   participants in the fraud.

9          Mt. Gox, Inc., I'm not so sure about it, but the
10  allegations of the complaint are that all four of the
11  defendants are really one and the same, and there's been no
12  evidence submitted to the contrary, so at this point, I'm
13  going to -- the Court's going to apply the TRO to the Inc.
14  entity as well, Mt. Gox, Inc.

15         In terms of adequate remedy at law and irreparable
16  harm, the currency is gone -- the Bitcoin currency and the
17  fiat currency is gone, or at least it can't be accessed.  And
18  recoupment through the bankruptcy proceeding is not assured
19  and, in fact, is unlikely, given the dollar figures that were
20  presented in the TRO motion in the complaint.  So, it's
21  unlikely that there's an adequate remedy at law, and the
22  plaintiff has made a sufficient showing of irreparable harm at
23  this time.

24         So, the Court's going to grant the following TRO:
25  The assets of the three non-debtor defendants in the United

1   States will be frozen, including any servers or other computer
2   equipment in the U.S., bank accounts, and other assets.
3   Again, this doesn't apply to KK.  It applies only to the three
4   non-debtor defendants.  And it may turn out that there are no
5   such assets, but to the extent that there are assets of the
6   three non-debtor defendants, those are frozen.

7           And in -- part and parcel of that is that the three
8   non-debtor defendants shall not transfer any Bitcoins or
9   currency belonging to Mr. Greene or the putative class members
10  from the United States to any other country.

11          The Court is not going to impose a constructive trust
12  on the Bitcoins and the fiat currency and any of the other
13  assets.  It's just not necessary at this point.  If the assets
14  are frozen, they're frozen.  And if they remain frozen,
15  they'll be there to satisfy any judgment that the plaintiffs
16  may obtain, and that's by no means assured at this point.

17          The plaintiff also asked the Court to direct the
18  defendants to transfer the property -- their property
19  immediately and directly to the plaintiff and the putative
20  class members.  The Court's not going to do that.  I don't
21  know if the plaintiff is going to win this case.  I don't know
22  if class certification is going to be granted.

23          And again, for purposes of the TRO, the freezing of
24  the assets is sufficient to protect the plaintiffs on the back
25  end if, in fact, they end up winning this case.

1      The Court is also going to allow the plaintiff to
2  engage in expedited discovery into the three non-debtor
3  defendants' assets.  And you can proceed with that as soon as
4  you'd like.

5      The TRO will last for 14 days.  And I should say, if
6  it turns out that the bankruptcy court in Dallas or the
7  insolvency court in Japan is starting to corral the assets
8  that are subject to the TRO, I would be inclined to stand down
9  and to defer to whatever's happening in the Tokyo insolvency
10 proceeding or the Dallas Chapter 15 proceeding.

11     And my thoughts on this are informed by the Third
12 Circuit's decision in *In Re: ABC Learning Centers, Ltd.*,
13 728 F.3d 301, at page 310, where the court expressed the
14 importance of not allowing domestic plaintiffs to jump in line
15 ahead of all the other creditors of the bankrupt or the debtor
16 in a foreign insolvency proceeding.

17     That hasn't happened yet, but I know there's going to
18 be further proceedings in Dallas.  There may be further
19 proceedings in Tokyo.  So, you know my thoughts on that; and
20 to the extent that there's a motion to modify or vacate the
21 TRO during the time period in which it remains in effect, I'll
22 certainly be open to that.

23     What about bond?  What are your thoughts on the bond,
24 Mr. Edelson, or any of your colleagues want to field that
25 question?

1        MR. EDELSON:  The -- I guess it's hard to know

2  because we don't know how much they have in assets, so our

3  view would be it should be a *de minimis* bond, if anything, at

4  this point.

5        THE COURT:  And what do you mean by *de minimis*?

6        MR. EDELSON:  Whatever your Honor thinks.

7        THE COURT:  Well, one man's *de minimis* is another

8  man's fortune, so what do you have in mind?

9        MR. EDELSON:  Well, I mean, it's a putative class

10  action, so this is not a wealthy individual, but, your Honor,

11  I have to admit, I hadn't gotten that far, so --

12        THE COURT:  Okay.  Let's make it $5,000 for now.  If

13  it turns out that you find substantial assets here in the

14  United States of the three non-debtor defendants, I'll want to

15  know about that; and I may increase the bond just in case the

16  TRO was -- the relief requested ended up being erroneous in

17  light of subsequent information provided to the Court, and to

18  the extent that the three defendants were unjustifiably

19  injured by the freezing of their assets, it's possible that a

20  larger bond would be appropriate.

21        MR. EDELSON:  We will let your Honor know when we

22  know.

23        THE COURT:  Okay.  All right.  So, where do we go

24  from here?  I guess you're just representing KK, so the case

25  is stayed as to you.

1            So, what are your thoughts on that?

2            MR. WOODROW:  Yes, your Honor.  First, if we could

3    submit a proposed order to the Court outlining your Honor's

4    findings and ordering the expedited discovery.

5            With respect to the expedited discovery, we would

6    like certain truncated notice procedures.  I mean, if we

7    have -- if the TRO is only in place for 14 days and the

8    defendants are given 28 days to answer, that will be too long.

9    So, we are looking at a truncated schedule, which we would

10   submit to your Honor in the proposed order.

11           The other thing, Judge, as a housekeeping matter,

12   every day, we're coming into contact with new revelations and

13   new facts and new potential defendants, including a bank,

14   Mizuho Bank, and potential financial and other professional

15   service providers.  We would like the opportunity to file an

16   amended complaint to get those entities in now as opposed to

17   waiting until later.

18           THE COURT:  What other entities are you talking

19   about?

20           MR. WOODROW:  Specifically, there's Mizuho Bank in

21   Japan, and then we're also looking into whether there are any

22   other accounting or legal firms that would have potential

23   liability.

24           THE COURT:  That's fine.  You can -- the time for

25   filing an amended complaint has not passed, so --

1       MR. WOODROW:  I just wanted to apprise the Court.

2       THE COURT:  That's fine.

3       MR. WOODROW:  Otherwise, your Honor, we would proceed

4   with submitting the bond to the Court and submitting a

5   proposed order within the next 24 hours.

6       THE COURT:  24 hours is fine.

7       Why don't we come in, Jackie, either on March 20th or

8   March 24th.

9       THE CLERK:  We'll set you for -- how about

10  March 20th, 9:30 a.m.

11      THE COURT:  The TRO is set to expire on March 25th at

12  11:30.  Rule 65(b)(2) allows the Court, for good cause, to

13  extend the TRO for another 14 days, and that's something we

14  ought to discuss on the 25th -- I'm sorry, on the 20th.

15      And at that point, you could apprise the Court of

16  whether you've been able to find any assets of the three

17  non-debtor defendants in the United States, in other words,

18  whether the order actually operates on anything or whether it

19  turned out to have been an empty gesture.

20      MR. WOODROW:  Thank you, your Honor.

21      THE COURT:  Anything else?  All right.

22      MR. WOODROW:  Judge, thanks for your time and

23  consideration.

24      MR. EDELSON:  Thanks, your Honor.

25      THE CLERK:  All rise.  Court stands adjourned.

1    THE COURT:  Oh, I'm sorry.  Texas and California

2  counsel, if you're going to be -- if you'd like to appear at

3  any of the hearings, you're welcome to do so.  And if you want

4  to call in, you can just make arrangements with the courtroom

5  deputy.

6    MR. MITCHELL:  We will.  Thank you, your Honor.

7  Appreciate it.

8    MR. GAMLEN:  Thank you, your Honor.

9   (Which were all the proceedings heard.)

10                  CERTIFICATE

11   I certify that the foregoing is a correct transcript from

12  the record of proceedings in the above-entitled matter.

13

14  */s/Charles R. Zandi*            *March 11, 2014*

15  Charles R. Zandi                 Date
    Official Court Reporter

16

17

18

19

20

21

22

23

24

25