# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | Hon. Gary Feinerman |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, | Magistrate Judge Susan Cox |
| *Defendants*. | |

**PLAINTIFFS' MOTION TO APPROVE SERVICE BY ALTERNATIVE MEANS
UNDER FEDERAL RULES OF CIVIL PROCEDURE 4(f)(3) AND 4(h)(2)**

I.       **INTRODUCTION**

As this Court is well aware, this case seeks answers regarding the Defendants'—owners and operators of the failed bitcoin exchange known as Mt.Gox—loss of hundreds of thousand of bitcoins (worth over $400 million at the time their exchange collapsed) and tens of millions of dollars. Up until Friday, April 4, 2014, Defendants Mark Karpeles ("Karpeles") and Tibanne KK ("Tibanne") had chosen not to participate directly in these proceedings despite knowing about them fully.[1] Now Karpeles and Tibanne[2] have appeared through counsel and have communicated their intention to object to the Court's jurisdiction and contest service.

The Court should authorize Plaintiffs to serve the operative Complaint and summons on Karpeles and Tibanne's attorneys at Novack & Macey LLP—which courts permit with respect to foreign defendants routinely—while their (as will be seen, unsupportable) objections to jurisdiction are litigated for at least three reasons. First, Plaintiffs' several attempts at service to date,[3] while reasonable, are ill-suited where a preliminary injunction is needed to protect U.S. residents. Second, service on the lawyers will be far more efficient should amended pleadings be required. And third, service on Novack & Macey is appropriate because Defendants have an

---

[1]    That Defendants have known of this case and of Plaintiff's Motion for a Temporary Restraining Order ("TRO") cannot be disputed. On March 10, 2014, Karpeles moved the Japanese Court to be appointed foreign representative of the debtor specifically so he could seek, through a Chapter 15 petition, a stay of this case and a lawsuit pending in the United States District Court for the Western District of Washington. (*Coinlab v. Mt. Gox K.K. et al.*, No. 2:13cv-0777.) (*See* Translated Mar. 10, 2014 "Application for consent of supervisor," attached as Ex. 7 to the Declaration of Steven Woodrow ["Woodrow Decl."], attached as Exhibit A.)

[2]    Only Karpeles and Tibanne have recently appeared. No appearances have been filed on behalf of Defendants MtGox Inc., Mt. Gox North America, Inc., or Gonzague Gay-Bouchery.

[3]    As explained below, Plaintiffs have attempted to effect service of process through the Hague Convention by sending a translation of the *Corrected* First Amended Complaint ("Complaint") and summons to the Central Authority in Japan and by process server on Defendants' U.S. subsidiaries. (*See* Woodrow Decl. ¶¶ 7-9.) Plaintiffs have also attempted service of other legal documents, such as the TRO and their discovery requests, by international mail, and via email. (*Id.* at ¶¶ 11-14.)

ongoing relationship with the firm, communicate directly with them with respect to this case, and service through their lawyers will guarantee that Defendants are apprised of the pendency of the action and are afforded the chance to object.

As such, and as explained further below, this Court should grant Plaintiffs' Motion to Approve Service by Alternative Means.

**II.     STATEMENT OF FACTS**

*Mt. Gox loses hundreds of millions of dollars worth of Bitcoin and Fiat Currency*

At one time, Mt. Gox was the world's largest "bitcoin exchange" where members could buy, sell and store their bitcoins and Fiat Currency. Between February 7 and 10, 2014, Mt. Gox ceased withdrawals (but continued to allow transfers *into* the exchange). Despite reassuring members that they were working to resume withdrawals, on February 24, 2014, the Mt. Gox site "went dark"—returning nothing but a blank screen. Plaintiff Greene filed the instant lawsuit on February 27, 2014 on behalf of U.S. exchange members who lost their bitcoins and money. (*See* "Initial Complaint," Dkt 1.) The next day, on February 28, 2014, Mt. Gox KK filed an application for Commencement of Civil Rehabilitation Proceedings in Japan claiming to have lost over 750,000 member bitcoins (plus 100,000 of its own bitcoins). It further claimed that a "shortfall" of ¥ 2.8 billion ($27.1 million) of Fiat Currency "was found" in its bank accounts.

*Plaintiff's Initial Motion for TRO and Preliminary Injunction*

On March 4, 2014, Plaintiff moved for a TRO and preliminary injunction seeking to freeze the Defendants' U.S. assets and to conduct expedited discovery. Plaintiffs' counsel called Defendants' attorneys at Baker & McKenzie and emailed copies of the motion to them. The day before the hearing, on March 10, 2014, Karpeles, as the foreign representative of Mt. Gox KK (and represented by Baker & McKenzie) filed an "emergency" Petition for Chapter 15

2

Recognition in the bankruptcy court for the Northern District of Texas. Following a hearing, the bankruptcy court entered a provisional stay as to Mt. Gox KK only.

The next day, at this Court's hearing on Plaintiff's motion for a TRO, some of the same Baker & McKenzie attorneys appeared solely on behalf of Mt. Gox KK, but argued that the Court should stay the case as to all defendants. Following the hearing, the Court granted in part and denied in part Plaintiff's motion—staying all proceedings at to Mt. Gox KK but freezing the U.S. assets, if any, of Mt. Gox Inc., Mark Karpeles, and Tibanne KK. The Court also granted Plaintiff leave to conduct expedited discovery as to the assets of the non-debtors.

***Following the TRO, Plaintiff issues discovery, files a First Amended Complaint, continues to investigate Defendants' U.S. assets, and reports on the progress of the TRO to the Court.***

After the TRO was entered, Plaintiff Greene propounded requests to produce, interrogatories, requests for admission, and deposition notices on all Defendants via mail and email. (Woodrow Decl. ¶¶ 10-14.) No defendants have responded to discovery. (*Id*. at ¶ 16.)

On March 14, 2014, Plaintiff filed his First Amended Complaint ("FAC") naming Joseph Lack as an additional Plaintiff, Mt. Gox North America, Inc., Mizuho Bank, Ltd., Gonzague Gay-Bouchery, Jed McCaleb, and John Doe Defendants as additional defendants, and adding additional facts regarding their involvement in the management and collapse of the exchange. (Dkt. 36.) Plaintiff also issued third-party discovery to certain Bitcoin mining pools and mining hardware manufacturers. (Woodrow Decl. ¶ 17.) On March 17, 2014, in response to complaints by Defendants' lawyers at Baker & McKenzie that the FAC didn't make clear that proceedings were stayed as to the debtor, Plaintiffs filed their *Corrected* First Amended Complaint ("Complaint"). (Dkt. 37.)

Through their investigation, Plaintiffs have learned that someone using an IP address owned by Tibanne KK or Karpeles is mining bitcoins on a domestic mining pool, transferring

those bitcoins out of the United States, and mixing them with bitcoin wallets also under Karpeles's control. (Woodrow Decl. ¶ 17.) Further, a subsidiary, Mutum Sigillum, LLC, along with Karpeles, had substantial cash deposits seized by the United States Department of Homeland Security in 2013 that were held in U.S. accounts at Wells Fargo Bank, N.A. and Dwolla. (*Id*. at ¶ 20.) Further, Defendants' subsidiary, Mutum Sigillum, either on its own or on behalf of Tibanne or Mt. Gox KK, offers web and data hosting services to U.S. customers. *Id*.

Plaintiffs have reported on the status of their investigations to the Court at status conferences held on March 20, 2014 and March 27, 2014.[4]

***Attorneys from Novack and Macey appear on behalf of Karpeles and Tibanne KK only and indicate they intend to contest jurisdiction.***

On April 4, 2014, attorneys from the law firm of Novack & Macey filed appearances in this case on behalf of Karpeles and Tibanne KK. (Woodrow Decl. ¶ 22.) During a phone call later that day, Eric Macey informed Jay Edelson that the defendants intended to contest jurisdiction and service. *Id.* Mr. Macey further stated he would ask "Mark" whether he intended to comply with the bankruptcy court's order compelling his examination in the United States. *Id.*

***As explained in the Declaration of Steven Woodrow and accompanying exhibits, Plaintiffs have attempted service through the Hague Convention, via process server on Mt. Gox Inc., through international express mail, and via email.***

Plaintiffs have attempted service of the Complaint and summons through the Hague Convention and by process server on Mt. Gox's U.S. subsidiaries, as well as attempted to serve other legal documents via international mail and by email. (Woodrow Decl. ¶¶ 3-9, 11-14.) As

---

[4] Also during Plaintiffs' investigation, on March 20, 2014, Karpeles announced on the Mt. Gox website that he had "discovered" 200,000 bitcoins—worth between $90 million and $110 million—in an "older format wallet." (Woodrow Decl. ¶ 21.) Further, on April 1, 2014, the bankruptcy court for the Northern District of Texas granted Plaintiffs Greene and Lack's Motion to Compel Examination of Mark Karpeles in the United States and ordered that Karpeles travel to Dallas by April 17, 2014 to be deposed with respect to the Chapter 15 petition. *See In re Mt. Gox Co. Ltd.*, Case No. 14-31229-sgj, Dkt. 72 (Bankr. N.D. Tex. April 4, 2014).

explained in the Affidavit of John Pierceall Regarding the Progress of Service on Mt. Gox et al, the Complaint and Summons, filed March 14, 2014, were received by Ancillary Legal Corporation on March 18, 2014. (*See* Pierceall Affidavit, attached as Exhibit B, ¶ 6.) The documents were translated into Japanese and sent to the Central Authority in Japan—the Ministry of Foreign Affairs, 2-2-1 Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan—via Federal Express on April 2, 2014. *Id*. Ancillary Legal Services expects to receive proof of service in approximately 20 weeks (five months, or sometime in or around September 2014). *Id*.

Additionally, Plaintiffs' process server delivered copies of the Complaint to Mt. Gox Inc. and Karpeles's registered agent in Delaware, who accepted service on behalf of both of them, while refusing to accept service on behalf of Tibanne KK. (Woodrow Decl. ¶¶ 3-8.)

Plaintiffs have also sent copies of the Complaint, Summons and other case documents via international mail to Defendants' addresses in Japan and have sent emails to Defendants' attorneys at Baker & McKenzie and to Defendants themselves. (Woodrow Decl. ¶¶ 5, 11-14.)

**III.    ARGUMENT**

Allowing service of the Complaint and Summons on Defendants Mark Karpeles and Tibanne through their attorneys at Novack & Macey is a decision that is "committed to the 'sound discretion of the district court," *Flava Works, Inc. v. Does 1-26*, 12 C 5844, 2013 WL 1751468 (N.D. Ill. Apr. 19, 2013) (Gettleman, J.) (*citing In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 929 (N.D. Ill. 2009), *vacated and remanded sub nom. Minn–Chem, Inc. v. Agrium Inc.*, 657 F.3d 650 (7th Cir. 2011) and *aff'd sub nom. Minn–Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012)—and is warranted in this case under Federal Rule 4(f)(3).

First, Plaintiffs have made reasonable attempts to serve Defendants Karpeles and Tibanne. Second, as discovery progresses and new Tibanne and Karpeles subsidiaries, related

entities, and assets are uncovered, amended pleadings may be required. And third, allowing service through Defendants' attorneys comports with due process, as Karpeles and Tibanne are in direct communications and have an ongoing relationship with their lawyers in this case.

> **A.  Plaintiffs have attempted service via the Hague Convention, process server, international mail, and email, but each method has drawbacks in terms of timing, pricing, efficiency, and efficacy when compared to simple service on the Defendants' lawyers.**

Federal Rule of Civil Procedure 4(h)(2) provides for service of corporations in a foreign country "in any manner prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Rule 4(f)(1), in turn, states that an individual or corporation may be served in a foreign country "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). Rule 4(f)(3) further provides for service "by any other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3); *see* Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil and Commercial Matters, Nov. 15, 1965 ("Hague Convention"), [1969] 20 U.S.T. 361, T.I.A.S. No. 6638, 1969 WL 97765, Art. 10.

Faced with a request last year under Rule 4(f)(3) where the plaintiff hadn't attempted service through the Hague Convention, Judge Gettleman considered whether other means of service must be exhausted prior to seeking an alternate method. *Flava Works, Inc.,* 2013 WL 1751468. Judge Gettleman explained that "there is no hierarchy in Rule 4(f)" and, as such, "adopt[ed] the reasoning of the Ninth Circuit in *Rio Properties* [*v. Rio Intern. Link,* 284 F.3d 1007, 1016 (9th Cir. 2002)] and [held] that it is not necessary for plaintiff to attempt service by the Hague Convention prior to *seeking permission* for alternative service." 2013 WL 1751468, at \*7 (emphasis in original.) Nevertheless, Judge Gettleman explained that plaintiffs were still

6

"required to make a showing as to why alternative service should be authorized" and concluded that "[a] number of courts that have held there is no hierarchy in Rule 4(f) still require plaintiffs to demonstrate reasonable attempts of service before exercising the discretion to allow plaintiffs to serve under alternative means." *Id* (*citing Rio,* 284 F.3d at 1016; *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005); *Ryan v. Brunswick*, 2002 WL 1628933, at *2 (W.D.N.Y. 2002); *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 113–120 (S.D.N.Y. 2010) (holding that plaintiffs must meet a "threshold requirement of reasonably attempting to effect service on defendants" before seeking alternative service). On the facts before him, Judge Gettleman found that the plaintiff hadn't explained other steps taken to perform service such that an alternative was needed or that the proposed alternative method would constitute sufficient service. *Flava Works*, 2013 WL 1751468 at *8.

As demonstrated below, that is the opposite of the instant case, where Plaintiffs can show several attempts at service. Plaintiffs have commenced service under the Hague Convention, a process that will require approximately 20 more weeks to complete, and have served Defendants' domestic subsidiaries by process server. (Woodrow Decl. ¶¶ 3, 7–9.) As such, given that only service through the Hague appears likely to lead to a judgment enforceable in Japan (and that will not be completed until September 2014)—coupled with the fact that Plaintiffs require an injunction, given Defendants' inability to satisfy a judgment and their apparent dissipation of U.S. assets, the Court should allow alternative service to be had on Karpeles and Tibanne.

1. **Plaintiffs have commenced service under the Hague Convention.**

As explained above and supported by the Pierceall Affidavit, Plaintiffs sent their international process server the operative Complaint the day after it was filed on March 17, 2014. (Pierceall Affidavit ¶ 6.) It was thereafter translated into Japanese and sent out for service

through Japan's official Central Authority on April 2, 2014.[5] *Id*. As this process will take 20 weeks just for service of the Complaint, service will not be effectuated by the time this Court considers Plaintiffs' forthcoming Motion for a Preliminary Injunction.

As courts have recognized, the Advisory Committee Notes indicate that Rule 4(f)(3) is most appropriately used "in cases of urgency if convention methods will not permit service within the time required by the circumstances." *Flava Works*, 2013 WL 1751468, at *7; *see also Richmond Technologies, Inc. v. Aumtech Bus. Solutions*, 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) ("Plaintiff also claims that it faces a threat of immediate, irreparable harm if it cannot obtain preliminary relief in this action. Defendants have offered no evidence suggesting that service through Hague Convention methods is likely to be completed more efficiently, and…the Court has found that Plaintiff's claims of urgency have merit.") As will be explained in Plaintiffs' Motion for a Preliminary Injunction, the record that supported the entry of the Court's TRO initially has only grown stronger. Plaintiffs have a likelihood of success on the merits of their claims—Karpeles has now admitted to conduct demonstrative of, at a minimum, gross negligence—and Defendants appear both incapable of satisfying a judgment and all-too-willing to ignore this Court's orders (as evidenced by their continued transfer of mined bitcoins out of the U.S. and into foreign wallets). As such, the Court should allow alternative service so as not to further delay hearing the preliminary injunction.

### 2. Plaintiffs have attempted service via process server.

Plaintiffs have also attempted service of the Initial Complaint and Complaint via process server on the registered agents of Mt. Gox, Inc. and Mt. Gox North America, Inc., Defendants'

---

[5] Defendants cannot contend that this period of translation was too long. To date they still have been unable to produce translated copies of the exhibits to their Japanese Application for Civil Rehabilitation Proceedings, which were filed on February 28, 2014, and were due to the bankruptcy Court in Texas on March 10, 2014. (Woodrow Decl. ¶ 23.)

8

U.S. subsidiaries located in Delaware and New York, respectively. (Woodrow Decl. ¶¶ 3, 7–8.) Under Illinois law, a domestic subsidiary of a foreign parent corporation may serve as the parent corporation's agent for the purposes of service when the parent "so controls the affairs of [the subsidiary] that the two entities are essentially one," or when the subsidiary "exercises no free will of its own in . . . any . . . aspect of its relationship with" its parent. *In re Subpoena To Huawei Technologies Co., Ltd.*, 720 F. Supp. 2d 969, 975 (N.D. Ill. 2010) (*citing Schlunk v. Volkswagenwerk Aktiengesellschaft*, 503 N.E.2d 1045, 1054 (Ill.App.Ct.1986)) (citation and internal quotation marks omitted).[6] Though "there is no bright-line test for determining how much control a foreign parent corporation must have over its domestic subsidiary before the subsidiary will be deemed its agent for purposes of service of process under Illinois law," *Chung v. Tarom, S.A.*, 990 F. Supp. 581, 584 (N.D. Ill. 1998), the court in *Akari Imeji Co. v. Qume Corp.*, 748 F. Supp. 588, 592–93 (N.D. Ill. 1990) listed factors such as whether: "(1) the subsidiary was established and wholly owned by the parent; . . . [2] the subsidiary existed primarily to promote the sale and distribution of the parent's products; [3] the parent dominated the subsidiary's board of directors; and [4] the subsidiary was listed on a consolidated financial sheet along with the parent rather than publishing its own annual report." *Id*. As such, courts look at the closeness of the subsidiary and parent's financial and business dealings. *Chung*, 990 F. Supp. at 584.

Here, the facts indicate that the Mt.Gox Inc. and Mt. Gox North America, Inc. subsidiaries are controlled by their parent—Mt. Gox KK and/or Tibanne KK—who in turn are

---

[6] The facts, which would be confirmed through discovery, indicate that Mt.Gox Inc.'s agent is authorized to accept process for Karpeles individually, as the agent accepted process directed at Mark Karpeles but declined acceptance of process for Tibanne. (*See* Woodrow Decl. ¶¶ 3–4.) *See also Bober v. Kovitz, Shifrin, Nesbit*, 03 C 9393, 2005 WL 2271861, at *1 (N.D. Ill. Sept. 14, 2005) (Under Federal Rule 4(e)(2), service on an individual may be made by delivery to "an agent authorized by appointment or by law" to receive such process.)

controlled by Karpeles. Karpeles is the Chief Executive Officer, sole director, and primary shareholder of MtGox Inc., Mt. Gox KK, and Tibanne KK. (*See* Translated "Civil Rehabilitation Proceeding Commencement Application" attached as Ex. 8 to the Woodrow Decl.) Further, MtGox Inc. was created solely to advance the activities of its parent by aiding in the formation of banking relationships and licensing, and Defendants admit MtGox Inc. has no independent operations.[7] Such contacts and control are sufficient for the subsidiary to act as a recipient of process. *See Schlunk*, 503 N.E.2d at 1046 (1986) *aff'd*, 486 U.S. 694 (1988) (wholly-owned subsidiary was agent for process where, *inter alia*, subsidiary shared a majority of the members of the board of directors).

Hence, service upon MtGox Inc. and Mt. Gox North America, Inc. can reasonably be construed as service upon Tibanne and Karpeles. Given questions regarding the authority of the agent to accept process and uncertainties as to how the entities are related, however, this method may ultimately be deemed insufficient, warranting approval of alternative means.

    **3.    Plaintiffs have also attempted service via mail, though authorities disagree as to whether such service would be enforceable in Japan.**

Furthermore, although courts have found that service by mail is not contrary to the Hague Convention as adopted by Japan,*see Zisman v. Sieger*, 106 F.R.D. 194, 199 (N.D. Ill. 1985) (*citing Shoei Kako Co., Ltd. v. Superior Court, San Francisco*, 33 Cal.App.3d 808, 820–22, 109 Cal.Rptr. 402, 410–12 (1973)); *see also Tamari v. Bache & Co. (Lebanon) S. A. L.*, 431 F. Supp. 1226, 1228–29 (N.D. Ill. 1977), *aff'd*, 565 F.2d 1194 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978); *accord Chrysler Corp. v. General Motors Corp.*, 589 F.Supp. 1182, 1206 (D.D.C. 1984), at the same time, other sources have expressed doubt about

---

[7]     Defendants have represented that MtGox, Inc. "has never conducted any business operations" and "was formed to, among other things, operate certain US operations, including forming banking relationships and obtain appropriate licenses in the US." (Woodrow Decl. ¶ 24.)

10

such service. *See Suzuki Motor Co. v. Superior Court*, 200 Cal. App. 3d 1476, 1480 (Cal. Ct. App. 1988); *Bankston v. Toyota Motor Corp.*, 889 F.2d 172, 174 (8th Cir. 1989) (citing *Suzuki Motor Co.* analysis); *see also* 1 Litigation of International Disputes in U.S. Courts § 2:6. The U.S. State Department has issued an opinion stating:

> The Japanese statement suggests, however, that it is possible, and even likely, that service in Japan by mail, which may be considered valid service by courts in the United States, would not be considered valid service in Japan for the purposes of Japanese law. Thus, a judgment by a court in the United States based on service on the defendant in Japan by mail, while capable of recognition and enforcement throughout the United States, may well not be capable of recognition and enforcement in Japan by the courts of that country.

*United States Department of State Opinion Regarding the Bankston Case and Service by Mail to Japan Under the Hague Service Convention*, 30 I.L.M. 260 (1991).

In this case, Plaintiffs have sent copies of legal documents, such as the TRO and their discovery requests, via international mail to the Defendants' addresses in Japan. (Woodrow Decl. ¶¶ 11, 14.) However, as it is doubtful that such service would be recognized should Plaintiffs seek to enforce the judgment in Japan, alternative service should be allowed.

### 4. Plaintiff has also attempted service by email to Defendants' lawyers.

As courts have also recognized, "[t]he Hague Convention does not prohibit service by e-mail or facsimile." *MacLean-Fogg Co. v. Ningbo Fastlink Equip. Co., Ltd.*, 08 CV 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) (approving of service via email where foreign defendant was shown to have communicated with consumers through its website and via email) (citing *Williams-Sonoma Inc. v. Friendfinder Inc.*, 2007 WL 11140639, at *2 (N.D. Cal. April 17, 2007)). In this case, Plaintiffs have emailed copies of legal documents to Defendants at their email addresses and to their lawyers at Baker & McKenzie. (Woodrow Decl. ¶¶ 5, 12-14.) The emails sent to Defendants, however, do not appear to have been opened, and emails to their

11

attorneys—while reasonably calculated to provide notice and an opportunity to object—may be deemed insufficient. As such, even with email notice, alternative service is warranted.

Accordingly, Plaintiffs have made repeated reasonable attempts to effectuate service on the Defendants and to apprise them of this lawsuit (which they plainly and fully know about). This case is therefore distinguishable from *Flava Works*. Because Plaintiffs have reasonably attempted service but will be unable to effectuate it for months, the Court may exercise its discretion in allowing an alternative method here.

> **B.    As discovery progresses, the filing of amended pleadings and the motion for preliminary injunction may become necessary but exceptionally costly if process is required to be sent through the Japanese Central Authority.**

Furthermore, and as discussed above, Plaintiffs continue to gather new facts pertaining to Defendants' organizational structure, involvement in the operation of the exchange, and U.S. assets. For example, someone using an IP address owned by Tibanne KK and Mark Karpeles personally appears to be mining bitcoins on a domestic mining pool, transferring those assets out of the United States, and mixing them with bitcoin wallets apprently controlled by Karpeles. (Woodrow Decl. ¶ 17.) It is unclear whether the person doing so is Tibanne or Karpeles, or Mt. Gox KK under a contract allowing it to use Tibanne's IP addresses.[8]

Likewise, it appears that a subsidiary, Mutum Sigillum, LLC, along with Karpeles personally, had substantial cash deposits seized by the Department of Homeland Security in 2013 that were held in U.S. accounts at Wells Fargo Bank, N.A. and Dwolla. (Woodrow Decl. ¶ 20.)

---

[8]    Though bizarre, such a contract may exist. As Karpeles's lawyers explained to the bankruptcy court in Dallas, Mt. Gox KK supposedly had no employees. (*See* Transcript of April 1, 2014 Hearing, attached as Exhibit 9 to the Woodrow Decl., 14:12–18.) Rather, all personnel are technically Tibanne KK employees who offer services to Mt. Gox KK through a supposed agreement (that has yet to be produced in any U.S. proceeding). *Id*.

Mutum Sigillum additionally seems to offer web and data hosting services to U.S. customers and related Internet services. *Id*.

Also, reports out of Japan now indicate that Karpeles, on top of having sole authority to change the exchange's source code,[9] was the only individual with access to the companies' bank accounts. The bankruptcy filings indicate that there is "a large shortfall of deposit balances [approximating] ¥2.8 billion" ($27.1 million).[10] Because such missing funds cannot be explained through any technical glitch, discovery will likely lead to the uncovering of additional facts that would be included in any amended pleadings.

These facts show that additional defendants and allegations may need to be added to the pleadings.[11] Allowing service of such pleadings on the Defendants' lawyers would be far more efficient that requiring Plaintiffs to translate yet another complaint (which costs several thousand dollars) and effectuate service through the Hague Convention.

### C. Service on Novack & Macey is proper because Karpeles and Tibanne have an ongoing relationship with the firm with respect to this lawsuit.

Third and finally, service on Novack & Macey is allowable because Defendants have an ongoing relationship with their lawyers and are obviously communicating with the firm about the case. Under Rule 4(f), service of a foreign entity within the United States may be ordered

---

[9]   McMillan, Robert. "The Inside Story of Mt. Gox, Bitcoin's $460 million Disaster," *Wired* (available at http://www.wired.com/2014/03/bitcoin-exchange/) (last visited April 6, 2014) ("[T]here was only one person who could approve changes to the site's source code: Mark Karpeles. That meant that some bug fixes—even security fixes—could languish for weeks, waiting for Karpeles to get to the code.") As Defendants have blamed a technical issue for the loss of hundreds of thousands of exchange member bitcoins—a result shown to be impossible and wholly unsupported according to Plaintiffs' expert—Karpeles's coding must be examined.

[10]  *See* Civil Rehabilitation Commencement Application, Ex. 8 to the Woodrow Decl., p. 9.

[11]  The difficulty in understanding the relationship between Tibanne KK, Mt. Gox KK, and their U.S. subsidiaries and/or affiliates is compounded by the Defendants' failure to provide translated copies of the exhibits to Mt. Gox KK's Japanese "Application for Commencement of Civil Rehabilitation" with the Chapter 15 Petition. Such translated exhibits would include an organizational chart and were due to be filed with the Chapter 15 Petition on March 10, 2014.

13

through the entity's attorneys. *See Bobel v. U Lighting Am., Inc.*, 12 C 6064, 2013 WL 597678 (N.D. Ill. Feb. 16, 2013) (citing *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1239–40 (Fed. Cir. 2010)) ("[T]he Federal Circuit has held that the rule permits a court to direct service of a foreign entity within the United States"); *Forum Fin. Group, LLC v. President and Fellows of Harvard College*, 199 F.R.D. 22, 23 (D. Me. 2001) (directing service on a defendant residing in Russia to be made on the defendant's attorney in another matter); *see also Levin v. Ruby Trading Corp.*, 248 F. Supp. 537 (S.D.N.Y. 1965) (when prior service attempts on Canadian defendant failed, court approved service on defendant's attorney).

Substituted service may be effected on U.S. counsel under Rule 4(f)(3) as long as the service satisfies due process. *In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 931. *See e.g. Rio*, 284 F.3d at 1017 (approving service of process on U.S.-based affiliate and counsel of foreign defendant under Rule 4(f)(3)); *1st Tech. LLC v. Digital Gaming Solutions*, No. 4:08CV586, 2008 WL 4790347, at *7–8 (E.D. Mo. Oct. 31, 2008) (allowing service of foreign defendant through counsel under Rule 4(f)(3)); *Brookshire Bros. Ltd. v. Chiquita Brands Int'l*, No. 05CIV21962, 2007 WL 1577771 (S.D. Fla. May 31, 2007) (authorizing service of foreign defendant through local counsel pursuant to Rule 4(f)(3)). "Due process requires that service provides 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988)) (*quoting Mullane v. Central Hanover Bank & Trust Co*, 70 S.Ct. 652, 657 (1950)).[12]

---

[12] To be sure, allowing service upon a foreign defendant's United States-based counsel under Rule 4(f)(3) is a matter of routine. *See Knit With v. Knitting Fever,* Inc., Nos. 08–4221, 08–4775, 2010 WL 4977944, at *4 (E.D. Pa. Dec. 7, 2010) ("Repeatedly, courts around the country have found that service upon a foreign defendant through counsel is appropriate to prevent further delays in litigation."); *Richmond Technologies, Inc. v. Aumtech Bus. Solutions*,

To determine whether service satisfies due process, courts look to the communications and contact between attorney and defendant. "A court cannot authorize service on a foreign defendant's lawyer unless there has been adequate communication between the two." *1st Tech., LLC*, 2009 WL 879463, at *9 (collecting cases). *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 932 (finding service on U.S. law firm appropriate when "it was clear that the law firm has been retained by [defendant] and was in contact with the company."); *BP Products N. Am., Inc. v. Dagra*, 232 F.R.D. 263, 265 (E.D. Va. 2005). Recent attorney court-appearances and filings are sufficient evidence of contact. *See Progressive Se. Ins. Co. v. J & P Transp.*, 1:11-CV-137, 2011 WL 2672565 (N.D. Ind. July 8, 2011) (citing docket and filings as evidence of sufficient contact); *BP Products*, 232 F.R.D. at 265 (finding it reasonable to conclude that attorney had some mechanism for contacting defendant).

Applied here, Novack & Macey attorneys are surely in touch with Karpeles and Tibanne. The firm has appeared on their behalves specifically with respect to this lawsuit, and Mr. Macey said he would ask "Mark" about whether Karpeles intended to comply with the order compelling his deposition in the United States. As such, the lawyers plainly have ongoing communications such that due process concerns are satisfied.

## IV. CONCLUSION

In light of the foregoing, Plaintiffs respectfully request that the Court grant their Motion for Alternative Service Under Rule 4(f)(3) and allow service on Tibanne KK and Karpeles through their lawyers at Novack & Macey.

---

11-CV-02460-LHK, 2011 WL 2607158 (N.D. Cal. July 1, 2011); *see also RSM Production Corp. v. Fridman,* No. 06 Civ. 11512(DLC), 2007 WL 2295907, at *3 (S.D.N.Y. Aug.10, 2007) ("The Hague Service Convention does not prohibit an order pursuant to Rule 4(f)(3) permitting service through American counsel.")

Respectfully submitted,

**GREGORY GREENE and JOSEPH LACK**,
individually and on behalf of all others similarly situated,

Dated: April 7, 2014                By:/s/  Steven L. Woodrow
                                      One of Plaintiffs' Attorneys

| | |
|---|---|
| Steven L. Woodrow | Jay Edelson |
| swoodrow@edelson.com | jedelson@edelson.com |
| Megan Lindsey | Christopher L. Dore |
| mlindsey@edelson.com | cdore@edelson.com |
| EDELSON PC | David I. Mindell |
| 999 18th Street, Suite 3000 | dmindell@edelson.com |
| Denver, Colorado 80202 | Alicia Hwang |
| Tel: 303.357.4878 | ahwang@edelson.com |
| Fax: 303.446.9111 | EDELSON PC |
| | 350 North LaSalle Street, Suite 1300 |
| | Chicago, Illinois 60654 |
| | Tel: 312.589.6370 |
| | Fax: 312.589.6378 |

*Counsel for Plaintiffs and the Putative Classes*

**CERTIFICATE OF SERVICE**

       I, Steven L. Woodrow, an attorney, hereby certify that I served the above and foregoing ***Plaintiffs' Motion to Approve Service by Alternative Means Under Federal Rules of Civil Procedure 4(f)(3) and 4(h)(2)*** by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on April 7, 2014.

                                      /s/Steven L. Woodrow