# Exhibit A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-01437 |
| *Plaintiffs*, | Hon. Gary Feinerman |
| v. | Magistrate Judge Susan Cox |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, | **DECLARATION OF ATTORNEY STEVEN WOODROW IN SUPPORT OF PLAINTIFFS' MOTION TO APPROVE SERVICE BY ALTERNATIVE MEANS UNDER FEDERAL RULES OF CIVIL PROCEDURE 4(f)(3) AND 4(h)(2)** |
| *Defendants*. | |

I, Steven Woodrow, on oath declare:

1.       I am a Partner at the law firm of Edelson PC, which has been retained to represent Plaintiffs Gregory Greene and Joseph Lack (collectively, "Plaintiffs") in this matter. I am an adult over the age of 18 and am fully competent to make this Declaration. If called upon to testify as to the matters stated herein, I could and would competently do so.

***Service of Process***

2.       After filing the Instant action, my firm forwarded a copy of the issued summons and Initial Complaint (Dkt. 1) to Delaware Attorney Services, a process server, for service on Defendants Mt. Gox KK, MtGox Inc., Tibanne KK, and Mark Karpeles.

3. On March 4, 2014, Delaware Attorney Services hand-delivered the Initial Complaint and summons to MtGox Inc. and Mark Karpeles's registered agent, National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901. Service was accepted on behalf of both of them. (A true and accurate copy of the Proof of Service is attached hereto as Ex. 1.)

4. National Corporate Research, Ltd. refused, however, to accept service on behalf of Mt. Gox KK and Tibanne KK. (A true and accurate copy of the attempted Proof of Service is attached hereto as Ex. 2.)

5. On March 14, 2014, Plaintiff Greene filed his First Amended Complaint, naming Mizuho Bank, Ltd., Jed McCaleb, Mt. Gox North America, Inc., and Gonzague Gay-Bouchery as additional defendants in this matter, and adding Joseph Lack as a named Plaintiff. We also emailed copies of the First Amended Complaint to Defendant Mt. Gox KK's attorneys, Tod Gamlen and John Mitchell, at Baker & McKenzie. On March 17, 2014, counsel for Mt. Gox KK, David Parham, sent an email to my firm complaining that the First Amended Complaint was unclear as to the provisional stay that had been entered as to Mt. Gox KK. Plaintiffs filed a Corrected First Amended Complaint ("Complaint") (Dkt. 37) later that day to cure the issue and add additional support for their claims.

6. On March 18, 2014, my firm sent copies of the Complaint and re-issued summons to Delaware Attorney Services for service on Defendants MtGox Inc. and Mark Karpeles. We likewise sent copies of the Complaint and summons to First Legal Network, another process server, for service on Defendant Mt. Gox North America, Inc.

7.      On March 18, 2014, First Legal Network successfully served the Complaint and summons on Mt. Gox North America, Inc. at the offices of its registered agent, National Corporate Research, Ltd., at 10 East 40th Street, 10th Floor, New York, New York 10016.

8.      On March 19, 2014, Delaware Attorney Services successfully served the Corrected First Amended Complaint and summons on MtGox Inc. and Mark Karpeles at the offices of their registered agent, National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901. That is, service was accepted as to both of them.

9.      My firm has also attempted to effect service of process through the Hague Convention by sending a translation of the ("Complaint") and summons to the Central Authority in Japan. As explained in the Affidavit of John Pierceall Regarding the Progress of Service on MtGox et al, the Complaint and summons, filed March 17, 2014, were received by Ancillary Legal Corporation on March 18, 2014. They were translated into Japanese and sent to the Central Authority in Japan—the Ministry of Foreign Affairs, 2-2-1 Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan—via Federal Express on April 2, 2014. Ancillary Legal Services expects to receive a proof of service in approximately 20 weeks, which I've calculated as being approximately 5 months, or sometime by September 2014.

*Service of the Temporary Restraining Order and Discovery*

10.     After the Court's entry of the Temporary Restraining Order on March 11, 2014, my firm served the Temporary Restraining Order and propounded written discovery—including interrogatories, requests for production, and requests for admission—on all Defendants (apart from Mt. Gox KK, per the entered stay), in accordance with the expedited discovery schedule ordered by the Court.

11.     On March 12, 2014, attorneys at my firm sent a hard copy of the Temporary

Restraining Order to Tibanne KK and Mark Karpeles at Defendants' addresses in Japan via International Express Mail. The packages were delivered to Cross Office Shibuya Medio, 11-5 Shibuya 2-Chome, Shibuya-Ku, Tokyo, Japan 150-0002, and Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512 on March 14, 2014 and March 17, 2014, respectively. (A true and accurate copy of the confirmations of delivery are attached as Ex. 3.)

12.     On March 12, 2014, attorneys at my firm also sent the Temporary Restraining Order via e-mail to Mark Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com. A hard copy of the Temporary Restraining Order was also served by process server on Karpeles's registered agent, National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901.

13.     On March 14, 2014, attorneys at my firm propounded written discovery directed at Mark Karpeles, including a Notice of Deposition, Interrogatory Requests, and Requests for the Production of Documents, via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com. Hard copies of the documents were likewise served by process server on Karpeles's registered agent, National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901.

14.     On March 14, 2014, attorneys at my firm propounded written discovery directed at Tibanne KK, including a 30(b)(6) Notice of Deposition, Interrogatory Requests, and Requests for the Production of Documents, via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com, via International Express Mail to Tibanne

KK at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512, and via process server to National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901.

15.     On March 17, 2014, tracking of the March 14, 2014 package to Tibanne at Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo, Japan 150-8512, showed that delivery had been refused on the grounds that the "recipient moved." (A true and accurate copy of the International Express Mail Tracking is attached hereto as Ex. 4.)

16.     No defendants have responded to discovery.

***Plaintiffs' Investigation into Defendants' Assets***

17.     Through Plaintiffs' investigation into this matter, and through information obtained from communications with third parties, Plaintiffs have learned that someone is currently using an IP address owned by Tibanne KK to mine bitcoins in the United States and to transfer those bitcoins into bitcoin wallets controlled by Mark Karpeles or Mt. Gox KK. Accordingly, Plaintiffs issued third-party discovery to certain Bitcoin mining pools and mining hardware manufacturers.

18.     Specifically, Plaintiffs served subpoenas for the Rule 30(b)(6) deposition of Butterfly Labs (a manufacturer/distributor of bitcoin mining equipment), as well as for the depositions of Jason Hughes and Luke Dashjr (the operators of a bitcoin mining pool known as Eligius), and Michael Marsee (the operator of a bitcoin mining pool known as BTC Guild).

19.     Plaintiffs are currently tracking the movement of these bitcoins, and their investigation into Defendants' IP addresses continues.

20.     Plaintiffs have also learned that a subsidiary of either Tibanne KK or Mt. Gox KK—Mutum Sigillum, LLC—along with Karpeles personally, had substantial cash deposits

seized by the United States Department of Homeland Security in 2013 that were held in U.S. accounts at Wells Fargo Bank, N.A. and Dwolla. Plaintiffs have also learned that Mutum Sigillum, either on its own or on behalf of Tibanne or Mt. Gox KK, offers web and data hosting services to U.S. customers. (A true and accurate copy of the seizure warrants utilized by the Department of Homeland Security is attached hereto as Exhibit 5.)

21.     On March 20, 2014, during the course of Plaintiffs' investigation, Mark Karpeles announced on the Mt. Gox website that he had "discovered" 200,000 bitcoins—worth between $90 million and $110 million—in an "older format wallet." (A true and accurate of the March 20, 2014 announcement is attached hereto as Exhibit 6.)

***Defendants' Stated Position***

22.     On April 4, 2014, attorneys from the law firm of Novack & Macey filed appearances in this case on behalf of Karpeles and Tibanne KK only. During a phone call later that day, attorney Eric Macey informed Jay Edelson, the managing partner of Edelson PC, that Karpeles and Tibanne KK intended to contest jurisdiction and service. When Mr. Edelson asked Mr. Macey if Mr. Karpeles intended to comply with the United States Bankruptcy Court for the Northern District of Texas's Order requiring that Mr. Karpeles personally appear by April 17, 2014 for his deposition related to the elements underlying his Chapter 15 petition, Mr. Macey responded that he would ask "Mark" about it. It appears that Mr. Macey has an ongoing relationship with Karpeles and communicates openly with him.

23.     To date, Defendants have yet to produce translated copies of the exhibits to their Japanese application for Civil Rehabilitation Proceedings, which were filed on February 28, 2014, and were due to the bankruptcy Court in Texas on March 10, 2014.

24.     In Mt. Gox KK's Petition for Recognition and Application for Provisional Relief filed before the bankruptcy court in the Northern District of Texas on March 10, 2014, Defendants represent that MtGox Inc. "has never conducted any business operations" and "was formed to, among other things, operate certain US operations, including forming banking relationships and obtain appropriate licenses in the US." *See In re Mt. Gox Co. Ltd.*, Case No. 14-31229-sgj, Dkt. 6 at10 (Bankr. N.D. Tex. March 9, 2014).

***Additional Exhibits***

25.     Attached hereto as Exhibit 7 is a translated copy of the "Application for consent of supervisor" filed by Mt. Gox KK on March 10, 2014 in its Japanese bankruptcy proceedings.

26.     Attached hereto as Exhibit 8 is a translated copy of the "Civil Rehabilitation Proceeding Commencement Application" filed by Mt. Gox KK on February 28, 2014 in its Japanese bankruptcy proceedings.

27.     Attached hereto as Exhibit 9 is an excerpt from the transcript of the April 1, 2014 hearing on Plaintiffs' Motion to Compel Deposition Testimony before the Texas bankruptcy court.

Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of April, 2014 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow

# Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

GREGORY GREENE, individually and on
behalf of all others similarly situated,

1:14-cv-01437

CASE NUMBER:

V.

ASSIGNED JUDGE:  Hon. Gary Feinerman

MTGOX INC., MT. GOX KK, TIBANNE KK,
and MARK KARPELES,

DESIGNATED
MAGISTRATE JUDGE: Hon. Susan E. Cox

TO: (Name and address of Defendant)

Mark Karpeles
c/o National Corporate Research, Ltd.
615 South Dupont Highway
Dover, Delaware 19901

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Dore
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

an answer to the complaint which is herewith served upon you, within _____21_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

THOMAS  G. BRUTON, CLERK

(By) DEPUTY CLERK **THOMAS G. BRUTON, CLERK**

(By) DEPUTY CLERK

DATE

February 28, 2014

DATE

Civil Action No. 1:14-cv-01437

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*  Mark Karpeles

was received by me on *(date)*  03/04/2014  .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)*  Diana Lewis, Managing Agent  , who is

designated by law to accept service of process on behalf of *(name of organization)*  Mark Karpeles

at National Corporate Research, Ltd., Registered Agent  on *(date)*  03/04/2014  ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date:  03/04/2014

*Server's signature*

Sharlene Ryan, Process Server
*Printed name and title*

Delaware Attorney Services
3516-16 Silverside Road
Wilmington, DE 19810
*Server's address*

Additional information regarding attempted service, etc:
Service was made on 3/4/14 at 4:00 PM, at National Corporate Research, 616 S. DuPont Hwy, Dover, DE 19901.

Documents Served:  Summons in a Civil Action; Preservation Letter; Plaintiff's Motion for and Memorandum in
Support of Class Certification; and Class Action Complaint and Demand for Jury Trial with Exhibit 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

### SUMMONS IN A CIVIL CASE

GREGORY GREENE, individually and on
behalf of all others similarly situated,

1:14-cv-01437

CASE NUMBER:

V.

ASSIGNED JUDGE:  Hon. Gary Feinerman

MTGOX INC., MT. GOX KK, TIBANNE KK,
and MARK KARPELES,

DESIGNATED
MAGISTRATE JUDGE: Hon. Susan E. Cox

TO: (Name and address of Defendant)

MtGox Inc.
c/o National Corporate Research, Ltd.
615 South Dupont Highway
Dover, Delaware 19901

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Dore
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

an answer to the complaint which is herewith served upon you, within _____21_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

THOMAS G. BRUTON, CLERK

(By) DEPTHOMAS G. BRUTON, CLERK

(By) DEPUTY CLERK

DATE

February 28, 2014

DATE

Civil Action No. 1:14-cv-01437

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   MTGox Inc.

was received by me on *(date)*        03/04/2014        .

☐ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☑ I served the summons on *(name of individual)*   Diana Lewis, Managing Agent            , who is

designated by law to accept service of process on behalf of *(name of organization)*   MTGox Inc.

at National Corporate Research, Ltd., Registered Agent   on *(date)*   03/04/2014   ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:    03/04/2014

*Server's signature*

Sharlene Ryan, Process Server
*Printed name and title*

Delaware Attorney Services
3516-16 Silverside Road
Wilmington, DE 19810
*Server's address*

Additional information regarding attempted service, etc:
Service was made on 3/4/14 at 4:00 PM, at National Corporate Research, 616 S. DuPont Hwy, Dover, DE 19901.

Documents Served:  Summons in a Civil Action; Plaintiff's Motion for and Memorandum in Support of Class Certification; and Class Action Complaint and Demand for Jury Trial with Exhibit 1

# Exhibit 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

GREGORY GREENE, individually and on
behalf of all others similarly situated,

1:14-cv-01437

CASE NUMBER:

V.

ASSIGNED JUDGE:  Hon. Gary Feinerman

MTGOX INC., MT. GOX KK, TIBANNE KK,
and MARK KARPELES,

DESIGNATED
MAGISTRATE JUDGE: Hon. Susan E. Cox

TO: (Name and address of Defendant)

Mt. Gox KK
c/o National Corporate Research, Ltd.
615 South Dupont Highway
Dover, Delaware 19901

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Dore
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

an answer to the complaint which is herewith served upon you, within _____21_____ days after service of this
summons upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint.  You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

THOMAS  G. BRUTON, CLERK

(By) DEPTHOMAS G. BRUTON, CLERK

(By) DEPUTY CLERK

DATE

February 28, 2014

DATE

Civil Action No. 1:14-cv-01437

## PROOF OF SERVICE

*(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*   MTGox KK

was received by me on *(date)*   03/04/2014   .

◻ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

◻ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

◻ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☑ I returned the summons unexecuted because   Service rejected by Diana Lewis, Not Agent for entity   ; or

◻ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date:   03/04/2014 _____

_____
*Server's signature*

Sharlene Ryan, Process Server
*Printed name and title*

Delaware Attorney Services
3516-16 Silverside Road
Wilmington, DE 19810
*Server's address*

Additional information regarding attempted service, etc:

Service was attempted on 3/4/14 at 4:00 PM, at National Corporate Research, 616 S. DuPont Hwy, Dover, DE 19901, however, service was rejected by Diana Lewis, as they are not registered agent for this entity. A search of DE Secretary of State records reveals no such named company to be incorporated in DE.

Attempted to serve: Summons in a Civil Action; Plaintiff's Motion for and Memorandum in Support of Class Certification; and Class Action Complaint and Demand for Jury Trial with Exhibit 1

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

**SUMMONS IN A CIVIL CASE**

GREGORY GREENE, individually and on
behalf of all others similarly situated,

1:14-cv-01437

CASE NUMBER:

V.

ASSIGNED JUDGE:  Hon. Gary Feinerman

MTGOX INC., MT. GOX KK, TIBANNE KK,
and MARK KARPELES,

DESIGNATED
MAGISTRATE JUDGE: Hon. Susan E. Cox

TO: (Name and address of Defendant)

Tibanne KK
c/o National Corporate Research, Ltd.
615 South Dupont Highway
Dover, Delaware 19901

**YOU ARE HEREBY SUMMONED** and required to serve upon PLAINTIFF'S ATTORNEY (name and address)

Christopher L. Dore
Edelson PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654

an answer to the complaint which is herewith served upon you, within _____21_____ days after service of this
summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for
the relief demanded in the complaint. You must also file your answer with the Clerk of this Court within a reasonable period
of time after service.

THOMAS G. BRUTON, CLERK

(By) DEPUTY CLERK THOMAS G. BRUTON, CLERK

(By) DEPUTY CLERK

DATE

February 28, 2014

DATE

Civil Action No. 1:14-cv-01437

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)*  Tibanne KK

was received by me on *(date)*  03/04/2014  .

❑ I personally served the summons on the individual at *(place)*

_____ on *(date)* _____ ; or

❑ I left the summons at the individual's residence or usual place of abode with *(name)*

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❑ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)*

_____ on *(date)* _____ ; or

☑ I returned the summons unexecuted because  Service rejected by Diana Lewis, Not Agent for entity  ; or

❑ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $  0.00  .

I declare under penalty of perjury that this information is true.

Date:  03/04/2014

_____
*Server's signature*

Sharlene Ryan, Process Server
_____
*Printed name and title*

Delaware Attorney Services
3516-16 Silverside Road
Wilmington, DE 19810
_____
*Server's address*

Additional information regarding attempted service, etc:

Service was attempted on 3/4/14 at 4:00 PM, at National Corporate Research, 616 S. DuPont Hwy, Dover, DE 19901, however, service was rejected by Diana Lewis, as they are not registered agent for this entity. A search of DE Secretary of State records reveals no such named company to be incorporated in DE.

Attempted to serve: Summons in a Civil Action; Plaintiff's Motion for and Memorandum in Support of Class Certification; and Class Action Complaint and Demand for Jury Trial with Exhibit 1

# Exhibit 3



March 17,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **798197480940**.

---

### Delivery Information:

| | | | |
|---|---|---|---|
| **Status:** | Delivered | **Delivered to:** | Receptionist/Front Desk |
| **Signed for by:** | .TAKAMURA | **Delivery location:** | SHIBUYA-KU |
| **Service type:** | FedEx International Priority | **Delivery date:** | Mar 14, 2014 12:59 |
| **Special Handling:** | Deliver Weekday | | |

Signature images are not available for display for shipments to this country.

---

### Shipping Information:

| | | | |
|---|---|---|---|
| **Tracking number:** | 798197480940 | **Ship date:** | Mar 12, 2014 |
| | | **Weight:** | 0.3 lbs/0.1 kg |

**Recipient:**
SHIBUYA-KU JP

**Shipper:**
JAY EDELSON
EDELSON PC
350 NORTH LASALLE STREET
SUITE 1300
CHICAGO, IL 60654 US

Additional recipient and address information is not available for display for shipments to this country.

Thank you for choosing FedEx.



March 17,2014

Dear Customer:

The following is the proof-of-delivery for tracking number **798197581803**.

---

**Delivery Information:**

| | | | |
|---|---|---|---|
| Status: | Delivered | **Delivered to:** | Receptionist/Front Desk |
| Signed for by: | .MARK | **Delivery location:** | SHIBUYA-KU |
| **Service type:** | FedEx International Priority | **Delivery date:** | Mar 17, 2014 10:49 |
| **Special Handling:** | Deliver Weekday | | |

Signature images are not available for display for shipments to this country.

---

**Shipping Information:**

| | | | |
|---|---|---|---|
| Tracking number: | 798197581803 | **Ship date:** | Mar 12, 2014 |
| | | **Weight:** | 0.3 lbs/0.1 kg |

**Recipient:**
SHIBUYA-KU JP

**Shipper:**
JAY EDELSON
EDELSON PC
350 NORTH LASALLE STREET
SUITE 1300
CHICAGO, IL 60654 US

Additional recipient and address information is not available for display for shipments to this country.

Thank you for choosing FedEx.

Exhibit 4



## 804296540923

| Ship (P/U) date : | | |
|---|---|---|
| **Fri 3/14/2014 6:29 pm** | | Estimated delivery : |
| |  | **N/A** |
| CHICAGO IL, IL  US | | TOKYO   JP |
| | **In transit** | |
| | At FedEx destination facility | |
| | *TOKYO-KOTO-KU, JP* | |

**Let us tell you when your shipment arrives. Sign up for delivery notifications**

## Travel History

| Date/Time | Activity | Location |
|---|---|---|
| **-** 3/26/2014  -  Wednesday | | |
| 10:34 am | At local FedEx facility | TOKYO-KOTO-KU JP |
| **-** 3/25/2014  -  Tuesday | | |
| 10:38 am | At local FedEx facility | TOKYO-KOTO-KU JP |
| **-** 3/24/2014  -  Monday | | |
| 8:03 pm | At local FedEx facility | TOKYO-KOTO-KU JP |
| 10:28 am | Delivery exception<br>Refused by recipient | TOKYO-KOTO-KU JP |
| 8:38 am | On FedEx vehicle for delivery | TOKYO-KOTO-KU JP |
| **-** 3/22/2014  -  Saturday | | |
| 10:05 am | At local FedEx facility | TOKYO-KOTO-KU JP |
| **-** 3/20/2014  -  Thursday | | |
| 7:48 pm | At local FedEx facility | TOKYO-KOTO-KU JP |
| 1:02 pm | Delivery exception<br>Refused by recipient | TOKYO-KOTO-KU JP |
| 11:38 am | On FedEx vehicle for delivery | TOKYO-KOTO-KU JP |
| **-** 3/19/2014  -  Wednesday | | |
| 7:48 pm | At local FedEx facility | TOKYO-KOTO-KU JP |
| 1:03 pm | Delivery exception<br>Refused by recipient | TOKYO-KOTO-KU JP |
| 11:31 am | On FedEx vehicle for delivery | TOKYO-KOTO-KU JP |
| **-** 3/18/2014  -  Tuesday | | |
| 10:28 am | At local FedEx facility | TOKYO-KOTO-KU JP |
| **-** 3/17/2014  -  Monday | | |
| 7:44 pm | At local FedEx facility | TOKYO-KOTO-KU JP |
| 12:20 pm | Delivery exception<br>Incorrect address - Recipient moved | TOKYO-KOTO-KU JP |
| 9:35 am | On FedEx vehicle for delivery | TOKYO-KOTO-KU JP |
| 8:22 am | At local FedEx facility | TOKYO-KOTO-KU JP |
| **-** 3/16/2014  -  Sunday | | |
| 2:09 pm | At local FedEx facility | TOKYO-KOTO-KU JP |
| 1:34 pm | International shipment release - Import | TOKYO-KOTO-KU JP |
| 1:34 pm | In transit<br>Package available for clearance | TOKYO-KOTO-KU JP |
| **-** 3/15/2014  -  Saturday | | |
| 6:58 am | Departed FedEx location | MEMPHIS, TN |
| 3:37 am | In transit | MEMPHIS, TN |
| 12:39 am | Arrived at FedEx location | MEMPHIS, TN |
| **-** 3/14/2014  -  Friday | | |
| 9:55 pm | Left FedEx origin facility | CHICAGO, IL |

| 6:29 pm | Picked up<br>Tendered at FedEx Office | CHICAGO, IL |
|---|---|---|

Local Scan Time

## Shipment Facts

| Tracking number | 804296540923 | Service | FedEx International Priority |
|---|---|---|---|
| Weight | 0.7 lbs | Total pieces | 1 |
| Total shipment weight | 0.7 lbs / 0.32 kgs | Packaging | FedEx Pak |
| Special handling section | Deliver Weekday | | |

Exhibit 5

*RCK*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In the Matter of the Seizure of
(Address or brief description of property to be seized)

**The contents of one
Dwolla account.**

**SEIZURE WARRANT**
CASE NUMBER: 13-1162 SKG

TO: Michael T. McFarland, Special Agent, United States Homeland Security Investigations (HSI), and any Authorized Officer of the United States:

An Affidavit having been made before me by Michael T. McFarland, Special Agent, United States Homeland Security Investigations (HSI), who has reason to believe that in Des Moines, Iowa, and elsewhere there is now certain property which is subject to seizure and forfeiture to the United States, namely (describe the property to be seized)

**the contents of Dwolla Account 812-649-1010 registered in the name of Mutum Sigillum LLC, held in the custody of Veridian Credit Union.**

I am satisfied that the affidavit establishes probable cause to believe that the property so described is subject to seizure and forfeiture and that grounds exist for the issuance of this seizure warrant.

**YOU ARE HEREBY AUTHORIZED** to seize within fourteen (14) days, the property specified, serving this warrant and making the seizure in the daytime - 6:00 AM to 10:00 PM - leaving a copy of this warrant and receipt for the property seized, and prepare a written inventory of the property seized and promptly return this warrant to any U.S. Magistrate Judge, as required by law. Service of this seizure warrant may be made by facsimile, provided that a hard copy is thereafter served by regular mail, overnight mail, or personal delivery.

Issued <u>May 14, 2013,</u> at Baltimore, Maryland, by
Date Issued

_____
Honorable Susan K. Gauvey
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In the Matter of the Seizure of
(address or brief description of property to be seized)

**The contents of one**
**Dwolla account.**

**APPLICATION AND**
**AFFIDAVIT FOR SEIZURE WARRANT**
CASE NUMBER: 1 3 - 1 1 6 2 SKG

Michael T. McFarland, Special Agent, United States Homeland Security Investigations (HSI), being duly sworn deposes and says:

I have reason to believe that there is now certain property in Des Moines, Iowa, and elsewhere, which is the subject of forfeiture to the United States, namely (describe property to be seized):

**the contents of Dwolla Account 812-649-1010 registered in the name of**
**Mutum Sigillum LLC, held in the custody of Veridian Credit Union,**

which are (state one or more bases for seizure under the U.S. Code)

subject to forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A) because the contents of the Mutum Sigillum LLC account were involved in transactions and attempted transactions in violation of 18 U.S.C. section 1960.

The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are set forth in the attached Affidavit.

_Michael T McFarland_
Michael T. McFarland
Special Agent
Homeland Security Investigations
U.S. Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence on (Date) May 14, 2013 at Baltimore, Maryland.

_Susan K. Gauvey_
Honorable Susan K. Gauvey
United States Magistrate Judge

## Affidavit in Support of Seizure Warrant

### I. Purpose of the Affidavit

This Affidavit is submitted in support of an application for a seizure warrant for the contents of **Dwolla Account 812-649-1010 registered in the name of Mutum Sigillum LLC, held in the custody of Veridian Credit Union.** I submit that there is probable cause to believe that the contents of Dwolla account **812-649-1010** in the name of Mutum Sigillum LLC were involved in transactions and attempted transactions in violation of 18 U.S.C. section 1960, and that the contents of that account are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

### II. Affiant

Michael McFarland, is a Special Agent with Homeland Security Investigations (HSI). While working for the HSI your affiant has prepared and executed state and federal search and seizure warrants, seized evidence of both state and federal violations, interviewed suspects, witnesses, and informants, and evaluated evidence obtained during the course of these investigations.

### III. Applicable Statutes

**18 U.S.C. section 1960**

**(a)** Whoever knowingly conducts, controls, manages, supervises, directs, or owns all or part of an unlicensed money transmitting business, shall be fined in accordance with this title or imprisoned not more than 5 years, or both.

**(b)** As used in this section—

    **(1)** the term "unlicensed money transmitting business" means a money transmitting business which affects interstate or foreign commerce in any manner or degree and—

        **(A)** is operated without an appropriate money transmitting license in a State where such operation is punishable as a misdemeanor or a felony under State law, whether or not the defendant knew that the operation was required to be licensed or that the operation was so punishable;

        **(B)** fails to comply with the money transmitting business registration requirements under section 5330 of title 31, United States Code, or regulations prescribed under such section; or

        **(C)** otherwise involves the transportation or transmission of funds that are known to the defendant to have been derived from a criminal offense or are intended to be used to promote or support unlawful activity;

    **(2)** the term "money transmitting" includes transferring funds on behalf of the public by any and all means including but not limited to transfers within this country or to locations abroad by wire, check, draft, facsimile, or courier; and

    **(3)** the term "State" means any State of the United States, the District of Columbia, the Northern Mariana Islands, and any commonwealth, territory, or possession of the United States.

18 U.S.C. section 981

(a)(1) The following property is subject to forfeiture to the United States:

    (A)    Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957, or 1960 of this title, or any property traceable to such property.

* * *

## IV. Probable Cause

    The information set forth below is based upon your affiant's review of records and upon information provided by other sworn law enforcement officers participating in this investigation. I have not included each and every fact obtained pursuant to this investigation, but have set forth those facts that I believe are essential to establish the necessary foundation for the issuance of the seizure warrant for the specified account.

    A company called "Mt. Gox," is the world's largest bitcoin exchange, and it operates out of Tokyo, Japan. Mt. Gox has a subsidiary company known as "Mutum Sigillum LLC." According to bank records, Mutum Sigillum LLC holds an account at Wells Fargo Bank, N.A. The account is held in the business name Mutum Sigillum LLC, which is incorporated in the state of Delaware. According to Wells Fargo Bank records, the account was established on May 20, 2011, with the account number 7657841313 and with a single authorized signer; Mark Karpeles. According to open source information, Karpeles is the owner of Mt. Gox. According to the bank records, Karpeles is also the owner of Mutum Sigillum LLC.

    As part of the account opening process, Wells Fargo required Karpeles and Mutum Sigillum LLC to complete a "Money Services Business (MSB) Accounts, Identification of an MSB Customer" form. That document was completed on May 20, 2011, and identified Mutum Sigillum LLC as a business not engaged in money services. The application asks several questions; to include, "Do you deal in or exchange currency for your customer?" and "Does your business accept funds from customers and send the funds based on customers' instructions (Money Transmitter)?" Karpeles answered these questions "no," indicating that Mutum Sigillum LLC does not deal in or exchange money, and that it does not send funds based on customer instructions.

    Money transmitting businesses are required by 31 U.S.C. section 5330 to register as such with FinCEN. According to FinCEN records on May 6, 2013, neither Mt. Gox nor the subsidiary, Mutum Sigillum LLC, is registered as a Money Service Business.

2

Mt. Gox acts as a digital currency exchange where customers open accounts and fund their respective accounts with fiat currency, which is then exchanged into crypto-currency by Mt. Gox; the crypto-currency is known as bitcoin. Fiat currency simply refers to any money that a government has declared to be legal tender. The exchange is bidirectional and allows customers to also exchange bitcoins back into fiat currency, and then withdraw those funds. The exchange of fiat currency and bitcoins incurs a floating rate fee charged by Mt. Gox and is determined by the customer's aggregate amount of funds exchanged on a monthly basis. So, the exchange of a small amount of bitcoin would include a larger fee than a larger exchange.

An online payment processor, known as Dwolla, is located in Iowa. People can purchase bitcoin by depositing funds with Dwolla and then directing that the funds be used to make the purchase from Mt. Gox, which then maintains the registry of the ownership of the bitcoin. Bank records show a number of deposits to the Mutum Sigillum account at Wells Fargo originating from international wires sent from Sumitomo Mitsui Bank in Japan. The wires indicate that the transfer is in the name of Mt. Gox Company Ltd. for the benefit of the Mutum Sigillum LLC account 7657841313.

After the funds are credited to that account, they are frequently disbursed to Dwolla, an online payment service for e-commerce; bank records show such transfers to Dwolla since at least in December 2011. Dwolla is located in Des Moines, Iowa. The funds being sent to Dwolla are those of Mt. Gox customers that withdraw said funds from Mt. Gox and direct their transfer to Dwolla. A Confidential Informant (CI-1), who resides and banks in Maryland, provided information to government agents that has been corroborated. CI-1 stated that he initiated this process by establishing a new account, while in Maryland, with both Mt. Gox and Dwolla. After funding his Mt. Gox account with U.S. funds, he exchanged the currency in his Dwolla account for bitcoins. During the past six months, CI-1 exchanged the bitcoins back into U.S. dollars, which he directed Mt. Gox to transfer to Dwolla on his behalf. The funds were then credited to his Dwolla account.

According to bank records, this transfer was completed through the subsidiary, Mutum Sigillum LLC. This demonstrates that Mutum Sigillum LLC is engaged in a money transmitting business but is not registered as required with FinCEN. Because the 7657841313 account at Wells Fargo was involved in this money transmitting activity, the contents of the account were

subject to seizure and forfeiture in accordance with 18 U.S.C. section 981(a)(1)(A).

On May 9, 2013, the Honorable Stephanie A. Gallagher issued a seizure warrant for the contents of the Mutum Sigillum LLC account at Wells Fargo, based on the foregoing information. Bank records also show that nearly all of the activity in that Wells Fargo account consists of wires between that account and Dwolla, which represent bitcoin transactions for customers. The other transactions in this account are not significant in number or amounts.

Dwolla records indicate that the destination for the funds wired from the Wells Fargo account was **Dwolla Account 812-649-1010 registered in the name of Mutum Sigillum LLC, held in the custody of Veridian Credit Union.** Dwolla records also indicate that the Wells Fargo account was the sole financial institution account that was funding the Dwolla account 812-649-1010. Therefore, it is evident that the Dwolla account was used exclusively to move funds between Mt. Gox and Mutum Sigillum and their customers. Consequently, there is probable cause to believe that Mt. Gox and Mutum Sigillum are using **Dwolla Account 812-649-1010 registered in the name of Mutum Sigillum LLC, held in the custody of Veridian Credit Union** to conduct transactions as part of an unlicensed money service business in violation of 18 U.S.C. section 1960, and that the contents of the account are involved in those transactions and attempted transactions.

Based upon my training and experience, I know that 18 U.S.C. section 981(b)(3) provides that "a seizure warrant may be issued ... by a judicial officer in any district in which a forfeiture action against the property may be filed under Section 1355(b) of title 28, and may be executed in any district in which the property is found...." According to 28 U.S.C. Section 1355(b)(1)(A), a forfeiture action may be brought in "the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred...." Because the affidavit demonstrates that transactions through the Dwolla and Mutum Sigillum accounts were initiated and caused by a customer in the District of Maryland, the forfeiture action can be brought in the District of Maryland, and the seizure warrant may be issued in the District of Maryland.

## V.    Conclusion

Based on the foregoing, I submit that there is probable cause to believe that the contents of **Dwolla Account 812-649-1010 registered in the name of Mutum Sigillum LLC, held in the custody of Veridian Credit Union,** were involved in transactions and attempted

transactions in violation of 18 U.S.C. section 1960, and that the contents of that account are subject to seizure and forfeiture pursuant to 18 U.S.C. section 981(a)(1)(A).

Michael T. McFarland, Special Agent
Homeland Security Investigations
Immigration and Customs Enforcement

Subscribed and sworn before me on May 14, 2013.

Susan K. Gauvey
United States Magistrate Judge



FILED
RECEIVED

JUN 1 9 2013

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

In the Matter of the Seizure of
(Address or brief description of property to be seized)

**The contents of one
Wells Fargo Bank account, and
up to $50,000 in another Wells
Fargo Bank account.**

**SEIZURE WARRANT**
CASE NUMBER:

# 13-1085SAG

TO: Shaun Bridges, Special Agent, United States Secret Service, and any Authorized Officer of the
United States:

An Affidavit having been made before me by Shaun Bridges, Special Agent, United States Secret
Service, who has reason to believe that in Maryland, and elsewhere there is now certain property
which is subject to forfeiture to the United States, namely (describe the property to be seized)

the contents of **Wells Fargo Bank account 7657841313 in the name of
Mutum Sigillum LLC** and up to **$50,000** contained in
**Wells Fargo Bank account 6836757515 in the name of Mark Karpeles.**

I am satisfied that the affidavit establishes probable cause to believe that the property so described is subject to seizure and
forfeiture and that grounds exist for the issuance of this seizure warrant.

**YOU ARE HEREBY AUTHORIZED** to seize within fourteen (14) days, the property specified, serving this warrant
and making the seizure in the daytime - 6:00 AM to 10:00 PM - leaving a copy of this warrant and receipt for the property
seized, and prepare a written inventory of the property seized and promptly return this warrant to any U.S. Magistrate Judge,
as required by law. Service of this seizure warrant may be made by facsimile, provided that a hard copy is thereafter served
by regular mail, overnight mail, or personal delivery.

Issued <u>May 9, 2013,</u> at Baltimore, Maryland, by
     Date Issued

Honorable Stephanie A. Gallagher
United States Magistrate Judge

13-1085SAG

| RETURN | | |
|---|---|---|
| DATE WARRANT RECEIVED<br>5/9/13 | DATE AND TIME WARRANT EXECUTED<br>5/9/13  1009 Am | COPY OF WARRANT AND RECEIPT FOR ITEMS LEFT WITH<br>Wells Fargo Bank |
| INVENTORY MADE IN THE PRESENCE OF | | |

INVENTORY OF PROPERTY TAKEN PURSUANT TO THE WARRANT

- Account 7657841313 - USD $2,109,214.09
- Account 6836757515 - USD $8,200.87

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated magistrate judge.

6/18/13
Date

Executing officer's signature

Shaun Bridges
Printed name and title

Exhibit 6

[translation]

March 20, 2014

To everyone concerned

Mark Karpeles
Representative Director
MtGox Co., Ltd.

We inform you as follows with regard to the balance of bitcoins (BTC) held by MtGox Co., Ltd.

1.      MtGox Co., Ltd. had certain old-format wallets which were used in the past and which, MtGox thought, no longer held any bitcoins. Following the application for commencement of a civil rehabilitation proceeding, these wallets were rescanned and their balance researched. On March 7, 2014, MtGox Co., Ltd. confirmed that an old-format wallet which was used prior to June 2011 held a balance of approximately 200,000 BTC (199,999.99 BTC). MtGox Co., Ltd. investigated the presence of these 200,000 BTC, immediately reported it to its counsels in the application for commencement of a civil rehabilitation proceedings ("counsels"). A hearing took place on March 8 where a detailed explanation of the situation was made to counsels. Immediately on Monday (March 10), counsels reported the existence of the 200,000 BTC to the Court and the Supervisor.

2.      For security reasons, the 200,000 BTC which were at first on the 7th moved to online wallets were moved between the 14th and the 15th to offline wallets. These bitcoin movements (including the change in the manner in which these bitcoins were stored) has been reported to the Court and the Supervisor by counsels.

Further, the bitcoins held today by MtGox Co., Ltd. amount to a total of approximately 202,000 BTC, including the above 200,000 BTC and the approximately 2,000 BTC which existed prior to the application for commencement of a civil rehabilitation proceeding.

3.      MtGox Co., Ltd. had previously reported about the disappearance of bitcoins which had triggered this application for commencement of a civil rehabilitation proceeding that MtGox Co., Ltd. had lost almost all of the approximately 850,000 bitcoins it held (approximately 750,000 BTC corresponding to the balance of bitcoins belonging from users as seen from transaction records as well as approximately 100,000 BTC belonging to MtGox). Taking into account the existence of the 200,000 BTC, the total number of bitcoins which have disappeared is therefore estimated to be approximately 650,000 BTC. (Please note that the reasons for their disappearance and the exact number of bitcoins which disappeared is still under investigation and that the above figures may still change depending on the results of the investigation.)

# Exhibit 7

March  10,  2014

(Supervisor's opinion)

I consent to the application below.

March 10, 2014


          Supervisor     Attorney-at-law Nobuaki Kobayashi (seal and signature)

Supervisor          Attorney-at-law Nobuaki Kobayashi



                    Application for consent of supervisor (assets disposal)


                                        Counsel of Applicant MtGox Co., Ltd.
                                        Baker & McKenzie
                                        Attorney-at-law Hideyuki Yamamoto
                                        Attorney-at-law Junko Suetomi
                                        Yodoyabashi & Yamagami LPC
                                        Attorney-at-law Akio Shinomiya
                                        Attorney-at-law Kazumasa Kawai


1.        Purpose of the application

The rehabilitation debtor hereby requests consent to execute an entrustment agreement with David W Parham of Baker & McKenzie Dallas Office with regard to the following matters:

1.        A petition to have this civil rehabilitation proceeding accepted under US
          Federal Insolvency Law Chapter 15.
2.        A petition to stay the proceedings of the US lawsuits listed in exhibit.

Provided, however, the Foreign Representative for the purpose of the above procedures shall be Mark Marie Robert Karpeles, representative director of the rehabilitation debtor.


2.        Reasons for the application

1.     In relation with the application for commencement of a civil rehabilitation procedure made on February 28, 2014 (Tokyo District Court 2014 (rehabilitation) no. 12), the applicant received from the Tokyo District Court an order prohibiting the disposal of assets (the "Preservation Order").

2.     The rehabilitation debtor has assets in the United States of America ("US").

3.     Lawsuit no. 1 in the attached exhibit of US lawsuits is continuing in the US against the rehabilitation debtor. In addition, the class action listed as no. 2 (the class is not certified yet) has been initiated and a request has been made to obtain a court order to freeze the assets held by the rehabilitation debtor in the US (the "Class Action Preservation Order").

4.     The first oral hearing in relation with the Class Action Preservation Order shall take place on March 11, 2014 (US Central Standard Time) and the rehabilitation debtor needs to take defensive action since its US assets risk being attached.

5.     Further, the US assets of the rehabilitation debtor consist mainly of cash deposits. The sums attached by the US Department of Homeland Security could be used as operating capital should it be released which means that the Class Action Preservation Order may have a negative impact on the progress of this civil rehabilitation. In addition, should the Class Action Preservation Order be accepted and should a situation where the plaintiffs of the class action would get the preference over the rehabilitation creditors with regard to the US assets arise, a situation of unfairness among the rehabilitation creditors would arise and there would be a risk that the fair repayment to creditors be impeded.

6.     As indicated above, it is highly necessary to stop the class action proceeding and prevent the plaintiffs in the class action to get a preservation order over the US assets of the rehabilitation debtor and further taking into account the planned first hearing on March 11, 2014, it is urgent to take defensive action.

7.     The analysis made by US lawyers indicates that in order to preserve the US assets of the rehabilitation debtor and stop the class action, the rehabilitation debtor should demand the recognition of a foreign insolvency procedure under Chapter 15 of the US Federal Bankruptcy Law (the "Chapter 15 Petition") and obtain the extension over US assets of the effect of the civil rehabilitation. In addition, should this petition be granted, during the 30 days period until an automatic stay comes into effect, it is also necessary to demand a stay of the proceedings under the US lawsuit and the class action on the basis of the Chapter 15 Petition in each competent jurisdiction (federal district courts).

8.      It is obvious that the Chapter 15 Petition and the demands in each federal

district courts will be more efficiently and speedily done by US insolvency law experts.

9.      The rehabilitation debtor has asked David W Parham of the Dallas Office of Baker & McKenzie, an expert in US insolvency law and with whom consultations have already taken place,　to prepare for proceeding with the Chapter 15 Petition.

10.     We believe that it is appropriate to execute an entrustment agreement with said law firm (Exhibit 2), to pay an estimate of USD 75,000 (approximately JPY 7.5 million) as fees for the Chapter 15 Petition and the petitions for stays and to quickly start said petitions.

11.     In addition the payment of said fees of USD 75,000 is not likely to impede the financing of the rehabilitation debtor.

12.     Accordingly, this application is being made since there is a need to promptly pay these lawyers fees in accordance with said entrustment agreement and further since this payment is possible.

Exhibits

1.     List of US lawsuits

2.     Entrustment agreement

# Exhibit 8

[translation]

Civil Rehabilitation Proceeding Commencement Application

February 28, 2014

To the person in charge of civil rehabilitation
Tokyo District Court 20th Civil Chamber


Applicant            MtGox Co., Ltd.
                     11-5, Shibuya 2-chome, Shibuya-ku, Tokyo 150-0002

                     Representative Director of the above Mark Marie Robert Karpeles

                     Counsel of the applicant
                             Attorney-at-law  Hideyuki Yamamoto
                             Attorney-at-law  Junko Suetomi
                             Baker & McKenzie (Gaikokuho Joint Enterprise)
                             Ark Hills Sengokuyama Mori Tower 28F
                             Roppongi 1-9-10, Minato-ku, Tokyo 106-0032
                             Tel: 03-6271-9900
                             Fax: 03-5549-7736

                     Counsel of the applicant
                             Attorney-at-law Akio Shinomiya
                             Attorney-at-law Kazumasa Kawai
                             Yodoyabashi & Yamagami LPC
                             Yusen Bldg 4F
                             Marunouchi 2-3-2, Chiyoda-ku, Tokyo 100-0005
                             Tel: 03-6267-1241
                             Fax: 03-6267-1210
                                     Attachments
1.       Certificate of eligibility (same as exhibit 2 of prima facie evidence documents)
2.       Determination of Director
3.       Power of attorney

1

Purpose of the application

A decision of commencement of civil rehabilitation procedure against the applicant is hereby demanded.

Reasons for the application

Section 1.      Facts causing the the civil rehabilitation commencement

The outline as well as the current situation of the assets and liabilities of the applicant (the debtor) MtGox Co., Ltd. (the "applicant") are as follows. The applicant is not able to pay his debts when due without severe impediments to the continuation of the activity and since there is also a possibility of assets exceeding liabilities, there is a possibility of a cause for bankruptcy. Further, the circumstances leading to the causes for commencement are indicated below.

Section 2.      Outline of the debtor
      1.      Outline of the company
            (1)      Corporate name
                  The name is: MtGox Co., Ltd.
            (2)      Business purpose of the company
                  ①      Building and consulting with regard to IT systems
                  ②      Development, production and consulting with regard to web content for the internet
                  ③      Planning, development and design of computers and servers
                  ④      Management and administration of internet sites
                  ⑤      Anything incidental to each of the above.
            (3)      Shares and amount of capital
                  Total number of shares that can be issued  10,000 shares
                  Total number of shares issued           500 shares
                  Amount of capital                  JPY 5,000,000
            (4)      Date of establishment
                  August 9, 2011
            (5)      Shareholders
                  The following two parties. Further, the representative of the

2

applicant, Mark Marie Robert Karpeles (the "applicant representative") holds 100% of the issued shares of Tibanne Co., Ltd. (the "parent company" or "Tibanne") which owns 440 shares of the applicant (88% of the total number of issued shares).

Tibanne            440 shares (88% of the total)
Jed McCaleb (individual) 60 shares (12% of the total)

(6)    Directors
Representative Director Mark Marie Robert Karpeles
As indicated above, the applicant representative is also the representative director of the parent company as well as its only shareholder.

(7)    Address of the head office
11-5, Shibuya 2-chome, Shibuya-ku, Tokyo

2.    Business of the applicant
The main business of the applicant is the operation of an online exchange for the purchase and sale of virtual currencies such as bitcoins.

3.    Facilities at factories and other places of business
The only place of business of the company is at the address of its head office at 11-5, Shibuya 2-chome, Shibuya-ku, Tokyo.
This office is leased by the parent company and the applicant leases it from Tibanne.

4.    Employees
There are no employees directly employed by the applicant but a service agreement has been executed with the parent company and the applicant receives services from the parent company. The parent company has 32 employees (permanent employees, contract employees, arbeito).

Section 3.        Situation of the assets and liabilities of the applicant

1.  Balance sheet for the two most recent fiscal years
    The balance sheets of the applicant since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Balance sheet | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Current assets | 95 | 3,838,803 |
| Total assets | 95 | 3,838,803 |
| Current liabilities | 21,232 | 3,831,393 |
| Total liabilities | 21,232 | 3,831,393 |
| Total net assets | (21,137) | 7,410 |
| Total liabilities and net assets | 95 | 3,838,803 |

2.  Profit and loss statement for the two most recent fiscal years
    The profit and loss statement of te application since its establishment are as submitted in the prima facie evidence documentation. The outline is as follows:

| Profit and loss statement | August 9, 2011 - March 31, 2012 | April 1, 2012 - March 31, 2013 |
|---|---|---|
| Sales | 0 | 135,072 |
| Gross margin | 950 | 131,085 |
| Operating margin | (26,138) | 21,205 |
| Current margin | 0 | 29,395 |
| Current net income (loss) | (26,137) | 28,548 |

3.  Contents of the assets
    The assets of the applicant are as shown in the list of assets. The situation, etc. of the main assets is as follows.

    Current assets:
    (1)     Cash deposits
            The applicant holds a total of JPY 513,988,952 in banks and at payment service providers.
    (2)     BTC account
            The applicant earns a bitcoin fee of approximately 0.6% from users of the exchange of the applicant ("users") who sell bitcoins. This bitcoin fee is recorded as an assets in the

4

account "BTC account". Its value as of the time of the application is approximately JPY 901 millions.

(3) Inventory assets

This includes OTP cards (JPY 18,627,790), Yubikeys (JPY 3,419,440) for a total of JPY 22,047,230.

(4) Advance payments

Advance fees of JPY 7,968,000 paid to an annual event in France, E Logic, for computer fans.

(5) Short term loans

This includes expenses borne on behalf of related companies as well as related loans. The total amounts to JPY 801,249,564.

(6) Other companies cash

These are cash deposits located outside the bank accounts of the applicant. The total amounts to JPY 1,384,057,302.

Fixed assets:

(7) Fixtures and tools

These include computers, hardware and servers for a total of JPY 107,510,694.

(8) Development expenses

This include software development, web pages development, mobile phone developments. The total amounts to JPY 91,964,675.

(9) Deposits

The deposit for the leased space is JPY 540,000.

(10) Deposited insurance money

Seizures resulting from provisional dispositions. JPY 10,586,875

Total assets                                   JPY 3,841,866,163

4. Contents of the liabilities

The liabilities of the applicant are as follows.

(1) Trade accounts payable

The total amount of trade accounts payable can mostly be

       ascertained and, although it does not include everything, amounts to JPY 19,033,902.

| | | |
|---|---|---|
| (2) | BTC suspense receipts | JPY 901,952,870 |

This is the same amount as the one recorded in "BTC account" on the assets side.

| | | |
|---|---|---|
| (3) | Deposits | JPY 5,502,576,538 |

Cash deposited from users (there are approximately 127,000 users).

Section 4.    Other procedures or disposition related to the properties of the applicant

1.    Lawsuits in Japan

Case no. Tokyo District Court 2013 (*wa*) 33872 Claim for return of deposits

Case outline    This is a claim for return of a deposit of approximately JPY 10 million made by a user (individual)

2.    Civil proceedings in the USA

The applicant has received from a Delaware corporation a claim for payment of damages of USD 75 million for breach of a license contract. On the other hand, the applicant is claiming the return of USD 5 million from the same corporation. The lawsuit is proceeding in the United States District Court, Western District of Washington.

3.    Seizure of deposits from the Department of Homeland Security

The US Department of Homeland Security has seized USD 5 million from a related company of the applicant. The deposits are not those of the applicant but were held under the name of a related company but the source of these funds were deposits from users (mostly US users).

Section 5.    Existence of labor unions

None.

Section 6.    Existence of foreign bankruptcy proceedings

None.

Section 7.      Permits from administrative authorities or other agencies with regard
                to the establishment of the company or its business purpose
                None.

Section 8.      Related companies
                The related companies of the applicant are as shown in the prima facie
                evidence documentation. The applicant has two subsidiaries and the
                parent of the applicant, Tibanne has several subsidiaries other than
                the applicant.
                Said corporations can be separated into two categories. The first one
                consists in corporations established in countries where the applicant
                which is a Japanese corporation cannot for financial regulations
                reasons open an account with financial instructions (since users exist
                all over the world, there is a need to have accounts in many financial
                institutions to receive deposits from users). The second category
                consists of corporation established for a business or with a business
                purpose unrelated to the operation of a bitcoin online exchange.

Section 9.      Existence of a cause for commencement of proceedings

        1.      Account up to the application
                (1)     Establishment of the applicant
                        Jed McCaleb, one of the shareholders of the applicant
                        developed the software to exchange online the virtual
                        currency known as bitcoin and the online exchange started
                        operations in 2010. In February 2011, the online exchange
                        (not only the system but also the customers and the bitcoins
                        held) was transferred from Jed McCaleb to Tibanne and
                        Tibanne established the applicant on August 9, 2011 as
                        recipient for the business.
                        When transferring the business, Tibanne delivered to Jed
                        McCaleb 60 shares of the applicant as part of the price for the
                        business which explains why Jed McCaleb is also a
                        shareholder of the applicant.

(2)  Expansion of the business of the applicant

Immediately following the continuation of the business by Tibanne, in June 2011, the system was hacked and Tibanne had to stop the online exchange, develop new software and restart the online exchange after a few weeks. Following this, the business grew rapidly.

The applicant was at some time the largest bitcoin exchange in the world.

(3)  Troubles with the applicant business

In May 2013, the US Department of Homeland Security ("DHS") seized approximately USD 5 million in the US bank account and the account held at a money transmitting business provider of Mutum Sigillum LLC, a corporation related to the applicant.

The reasons for the seizure was the fact that the applicant did not have a money transmitter license in the US. With regard to the return of the funds seized, negotiations have been going on for more than 6 months but there is no solution in sight.

Further, in order to solve its regulatory problems, the applicant looked for a business partner and in November 2012 executed a license agreement with CoinLab Inc. The purpose of this agreement was to transfer to CoinLab Inc., as licensee, the US business and it stipulated a fixed transition period to ensure a smooth transfer. However, CoinLab Inc. used the test of the API with the site of the applicant during said period to unduly collect in its own account large amounts from users. CoinLab Inc. returned a part of these funds but has failed to return approximately USD 5 million. The applicant is in a lawsuit with CoinLab Inc in a US court and but there are no prospects yet for the return of these funds.

(4)  Troubles which lead to the application

At the start of February 2014, illegal access which abused a bug in the bitcoin base software (the software which manages the transfers, confirmation and mining, etc.) known as

8

"transaction malleability" resulted in an increase in unconfirmed transactions of bitcoins transfers (bitcoins withdrawals) and it was found that there was a possibility that the abuse of this bug may have resulted in illicit withdrawals of bitcoins. On February 10, 2014, the applicant stopped the withdrawal of bitcoins in order to eliminate the impact of this bug and develop and test an upgrade to the software of the applicant. The existence of this bug was known since May 2011 but it was not known until the end of January 2014 that it could lead to a large number of unconfirmed transactions and to a risk of illicit withdrawals.

Following this, the applicant's investigation revealed that a large number of bitcoins had disappeared and although the exact situation is still not known today, it was found that until February 24, 2014, almost all of 750,000 bitcoins held on the basis of users transactions records as well as of 100,000 bitcoins held on the basis of the applicant's own transaction records had disappeared. These 750,000 bitcoins expressed in currency would amount to approximately JPY 11.46 billion on the basis of the last exchange rate on the online exchange of the applicant on February 25 which is the date when the exchange service was stopped (1 bitcoin = 13472.79 yen). The applicant believes that there is a high probability that the bitcoins were stolen by the abuse of the above bug and is currently asking an expert to investigate criminal complaints as well as procedures.

Further, on February 24, it was found that there was a large discrepancy in the total of deposit balances at those financial institutions which managed said deposits compared to the total amount actually deposited by users and that there was a large shortfall of deposit balances (the amounts are still under investigation and will probably change but the amount should be a maximum of JPY 2.8 billion).

The reasons for these problems are under investigation. It is probable that there are several causes including damages from hacking by third parties but it is necessary to

9

investigate a huge number of past transactions in order to find these causes. As of this date, it is therefore not possible to confirm the total amount of bitcoins which disappeared and the shortfall of deposit balances compared to money deposited.

The applicant judged that continuing the business normally would be difficult taking into account the lost bitcoins and the discrepancy between deposit balances and the balance of funds deposited and stopped all access to the site of the applicant around noon (Japan time) on February 25.

2.   Insolvency, liabilities exceeding assets

From the circumstances described above, the total current liabilities of the applicant amount to JPY 6.4 billion compared to total assets of JPY 3.8 billion and the applicant is therefore in a situation of liabilities exceeding assets.

Further, making public the loss of bitcoins and the shortfall of funds deposited would abruptly worsen the credit of the applicant which is already affected by users' concerns about the stop of currency withdrawals and the stop of the online exchange service. A rush of withdrawals of bitcoins or currencies from users would clearly be impossible for the applicant to pay. It is therefore obvious that the applicant is not able to face the payment of its debts at the time they are due without this creating a significant problem to the business of the applicant.

Section 10.   Opinion of the applicant with regard to the policy of drafting a rehabilitation plan

1.   Method of rehabilitation

The main source of revenue of the application is the fees earned upon the purchase of sale and bitcoins on the online exchange (both purchaser and seller pay a fee of approximately 0.6% to the applicant). Users of the online exchange include many which use bitcoins as a method of daily settlement of funds and many which transact for the purpose of investment focusing on the different exchanges rates

available on each online exchange. On this basis, even if the currencies and bitcoins deposited cannot be used, exchanged or converted, the applicant believes that if the online exchange was restarted and if trust was restored in the business by a change in management, it is expected that many users would transact bitcoins again and new users would start transactions on the online exchange of the applicant.

Accordingly, if the online exchange system could be restarted without problems, since it is possible to search for persons willing to invest in the online exchange system, the business could be rehabilitated by having said person succeed the online exchange system and the funds obtained from said succession would secure the funds necessary to repay rehabilitation debts.

2.    Future financing plans
      Since there is sufficient cash on hand, financing is not an issue.

3.    Prospects of cooperation from creditors, employees and important business partners
      (1)    Creditors
             The impossibility for creditors to withdraw bitcoins and currencies is likely to generate significant reaction.
             Taking this into account, it is necessary to thoroughly investigate the disappearance of bitcoins and deposits which is the cause for this application, to evaluate damages, find causes, to actively repair damages, report damages to authorities and cooperate with their investigations. But even if these investigations, activities to repair damages, report and cooperation with authorities, etc. were implemented, the civil rehabilitation which assumes a rehabilitation of the activity should be easier for creditors to accept than a bankruptcy proceeding which would almost exclude any possibility of restart of the business. On this basis, the cooperation of creditors may be expected.
             Further, according to some press reports, chief cabinet secretary Suga expressed in a press conference that the government would react as necessary after having collected

11

information through related government agencies and understood the situation. The applicant will do its best efforts to cooperate fully with authorities and with any agencies in or outside Japan investigating the situation and asking for the applicant's cooperation.

(2)    Employees, important business partners

Since the cooperation of the parent Tibanne can be obtained, the cooperation of the employees should not be a problem. Further, the main business partners of the applicant are the users of the online exchange, there should be no problems obtaining their continuing cooperation even after the application for civil rehabilitation.

Prima facie evidence documentation

1.    Articles of association
2.    Certificate of commercial registry
3.    Shareholders' registration
4. and 5. Financial statements and details of account headings
6.    List of creditors (trade accounts payable)

(since there are lots of member creditors for whom only an email address is known, this will be filed after further investigations)

7.    List of assets
8.    Chart showing related companies

# Exhibit 9

1            IN THE UNITED STATES BANKRUPTCY COURT
              NORTHERN DISTRICT OF TEXAS (DALLAS)

2

3
                         ) Case No. 14-31229-SGJ15

4    In re                   ) Dallas, Texas
                         )

5    MTGOX CO., LTD.,       )
    a/k/a MTGOX KK,       )

6                         ) April 1, 2014
                Debtor. ) 1:38 PM

7    _____)

8 TRANSCRIPT OF STATUS CONFERENCE (DOC. 1), MOTION FOR EXPEDITED
    HEARING (DOC. 28), MOTION TO COMPEL DEPOSITION TESTIMONY
9   (DOC. 39), MOTION TO APPROVE NOTICE PROCEDURES (DOC. 48)
           BEFORE THE HONORABLE STACEY G. C. JERNIGAN,
10              UNITED STATES BANKRUPTCY JUDGE

11 APPEARANCES:
   For the Debtor:          DAVID WILLIAM PARHAM, ESQ.
12                        JOHN E. MITCHELL, ESQ.
                        BAKER & MCKENZIE LLP
13                     2001 Ross Avenue
                       Suite 2300
14                     Dallas, TX 75201

15 For the U.S. Trustee:    LISA L. LAMBERT, AUST
                        OFFICE OF THE UNITED STATES TRUSTEE
16                     1100 Commerce Street
                       Room 976
17                     Dallas, TX 75242

18 For CoinLab:            ROGER M. TOWNSEND, ESQ.
                       (TELEPHONICALLY)
19                     BRESKIN JOHNSON & TOWNSEND PLLC
                       1000 Second Avenue
20                     Suite 3670
                       Seattle, WA 98104
21
   Transcription Services:          eScribers
22                        700 West 192nd Street
                       Suite #607
23                     New York, NY 10040
                     (973) 406-2250
24
   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
25 TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

```
2

APPEARANCES (cont'd.):

For CoinLab (cont'd.):   LARRY ENGEL, ESQ. (TELEPHONICALLY)
                         MORRISON FOERSTER
                         425 Market Street
                         San Francisco, CA 94105

For Gregory D. Greene:   ROBIN ERIC PHELAN, ESQ.
                         HAYNES & BOONE, LLP
                         2323 Victory Avenue
                         Suite 700
                         Dallas, TX 75219

                         STEVEN L. WOODROW, ESQ.
                         EDELSON PC
                         350 North LaSalle Street
                         Suite 1300
                         Chicago, IL 60654
```

1   explained there's kind of this dual debtor-in-possession

2   concept --

3            MR. PARHAM:  Uh-huh.

4            THE COURT:  -- and supervisor/examiner, and you've

5   explained that investigations are ongoing.  But what is up and

6   running, and what is not?  And I guess I read somewhere there

7   were thirty-two employees at the parent level, not at the

8   debtor level.  I mean, are those people still working, or are

9   they still basically shut down?

10           MR. PARHAM:  Yeah, well, it's both.

11           THE COURT:  Okay.

12           MR. PARHAM:  First of all, with respect to the

13  employees, the employees are essentially retained by Tibanne,

14  which is the parent, but all their work is at MtGox, for

15  MtGox.  And there're contractual arrangements, as I understand

16  it, between MtGox and Tibanne.  So whether they're contract

17  employees -- it's a different circumstance than we typically

18  see, but that's how that has been structured.

19           My understanding is that they are working.  A lot of

20  the effort, obviously, is to try and determine what happened

21  and to fix the program such that they can restart the

22  exchange.  At the present time, there is an ability for

23  customers to log onto the Web site and then see their

24  balances.  There is a qualification, because I think the

25  accounting with all this has lagged and so it's -- they say

 1    themselves the numbers may not be precise -- exactly precise.

 2    But the exchange itself is not operating.  You cannot go on

 3    the exchange and trade bitcoin.  You cannot go on the exchange

 4    and buy and sell and the like.

 5            So in a sense, yes, they are -- there're people

 6    there, they're working, but the company is not operating in

 7    the fashion that it was before the incident.

 8            THE COURT:  How are these people getting paid?

 9            MR. PARHAM:  You know, I don't know the answer to

10    that.  I don't know if they are getting paid by MtGox or if

11    they're being paid by Tibanne.  It -- you know, I'm --

12            THE COURT:  I mean, the --

13            MR. PARHAM:  I'm surmising it's MtGox is paying them.

14            THE COURT:  -- the company is not making revenue and,

15    I guess --

16            MR. PARHAM:  Right.

17            THE COURT:  -- hasn't been for a couple of months.

18            MR. PARHAM:  Right.

19            THE COURT:  How much traditional cash does the

20    company have right now?

21            MR. PARHAM:  You know, I --

22            THE COURT:  Or I guess y'all call it fiat cash in

23    pleadings.

24            MR. PARHAM:  From its real name as opposed to bitcoin

25    name.