IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated,<br><br>            *Plaintiffs*,<br><br>v.<br><br>MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS,<br><br>            *Defendants*. | Case No. 1:14-cv-01437<br><br>Hon. Gary Feinerman<br><br>Magistrate Judge Susan Cox<br><br>**DECLARATION OF STEVEN WOODROW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** |

I, Steven L. Woodrow, pursuant to 28 U.S.C. § 1746, hereby declare on oath as follows:

       1.      I am a Partner at the law firm of Edelson PC, which has been retained to represent Plaintiffs Gregory Greene and Joseph Lack (collectively, "Plaintiffs") in this matter. I am an adult over the age of 18 and am fully competent to make this Declaration. If called upon to testify as to the matters stated herein, I could competently do so.

***Discovery Propounded on Defendants to Date***

      2.      After the Court's entry of the Temporary Restraining Order on March 11, 2014, my firm served the Temporary Restraining Order and propounded written discovery—including interrogatories, requests for production, and requests for admission—on all Defendants (apart from Mt. Gox KK, per the entered stay), in accordance with the expedited discovery schedule

ordered by the Court.

3. In addition, Plaintiffs served subpoenas for the Rule 30(b)(6) deposition of Butterfly Labs (a manufacturer/distributor of bitcoin mining equipment), and depositions for Jason Hughes and Luke Dashjr (the operators of a bitcoin mining pool known as Eligius), and Michael Marsee (the operator of a bitcoin mining pool known as BTC Guild). The subpoenas were served personally via process server on March 18, March 15, and March 31, 2014, respectively.

4. **Mark Karpeles**. On March 14, 2014, attorneys at my firm propounded written discovery directed at Mark Karpeles, including a Notice of Deposition, Interrogatories, and Requests for the Production of Documents, via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com. Hard copies of the documents were likewise served by process server on Karpeles's registered agent, National Corporate Research, Ltd., at 615 South Dupont Highway, Dover, Delaware 19901. On March 18, 2014, my firm also sent notice of the depositions of all Defendants in this action (except Mizuho Bank Ltd., "Mizuho") along with notices of subpoenas served on Luke Dashjr, Butterfly Labs, and Jason Hughes via email and process server to the same locations. Requests to Admit Facts and Notice of Mizuho's 30(b)(6) deposition were likewise sent to Mr. Karpeles on March 21, 2014 via email and USPS First Class Mail to the same addresses.

5. **MtGox Inc.** On March 14, 2014, attorneys at my firm propounded Interrogatories, Requests for the Production of Documents, and a Notice of Deposition to MtGox, Inc. via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and

2

magicaltux@gmail.com. Hard copies of the documents were served by process server at its registered agent, National Corporate Research, Ltd. at 615 South Dupont Highway, Dover, Delaware 19901. On March 18, 2014, my firm sent notice of the depositions of all Defendants in this action (except Mizuho) along with notices of subpoenas served on Luke Dashjr, Butterfly Labs, and Jason Hughes via email and process server to the same addresses. Notice of Mizuho's deposition and Requests to Admit Facts were likewise sent via email and USPS First Class Mail to the same addresses on March 21, 2014.

6. **Mt. Gox North America, Inc.** On March 18, 2014, attorneys at my firm propounded a Notice of Deposition, Interrogatories, and Requests for the Production of Documents to Mt. Gox North America, Inc. ("Mt. Gox NA") via process server at its registered agent, National Corporate Research, Ltd., at 10 East 40th Street, 10th Floor, New York, New York 10016. On the same day, my firm sent notices of deposition for all Defendants in this action (except Mizuho) along with notices of subpoenas served on Luke Dashjr, Butterfly Labs, and Jason Hughes via process server to the same address. On March 21, 2014, my firm sent Requests to Admit Facts, along with a notice of Mizuho's 30(b)(6) deposition to Mt. Gox NA via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com, mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com. Hard copies of the documents were sent the same day via USPS First Class Mail to National Corporate Research, Ltd., at 10 East 40th Street, 10th Floor, New York, New York 10016.

7. **Tibanne KK**. On March 14, 2014, attorneys at my firm propounded Interrogatories, Requests for Production, and a Notice of Deposition to Tibanne KK via email to Mr. Karpeles's supposed e-mail addresses at: mark@tibanne.com, auto-tr@mutumsigillum.com,

3

mark@hell.ne.jp, support@mtgox.com, contact@tibanne.com, and magicaltux@gmail.com. Hard copies of the documents were served by process server to Tibanne KK c/o MtGox Inc. at National Corporate Research, Ltd. 615 South Dupont Highway, Dover, Delaware 19901, and via International Express Mail to Tibanne KK, Level 15-F, Cerulean Tower, 26-1 Sakuragaoka-cho, Shibuya-ku, Tokyo Japan, 15-8512. On March 16, 2014, my firm sent notice of the depositions of MtGox, Inc. and Mark Karpeles, along with notices of the subpoenas served on Luke Dashjr, Butterfly Labs, and Jason Hughes to Tibanne KK via email and process server to the same addresses. On March 21, 2014, my firm sent Notice of Mizuho's 30(b)(6) deposition and Requests to Admit Facts to Tibanne KK via email and International Express Mail to the same addresses.

8. **Gonzague Gay-Bouchery**. On March 17, 2014, attorneys at my firm propounded Interrogatories, Requests to Produce, and a Notice of Deposition to Gonzague Gay-Bouchery via email to Gay-Bouchery's supposed email addresses at: gonzague.a@me.com and nihoncar.com@service.tibanne.com. Hard copies of the documents were sent via International Express Mail to: (1) 3-9-10 Jiyugaoka, Tokyo, Japan, 152-0035 and (2) Shibuya 2-11-5, Tokyo, Japan 15-0002. That same day, my firm also sent notice of the depositions of all Defendants in this action (except Mizuho) along with notice of subpoenas for the depositions of Butterfly Labs, Jason Hughes, and Luke Dashjr to the same addresses. Requests to Admit Facts and a Notice of Mizuho's 30(b)(6) deposition were sent via email and International Express Mail to those same addresses on March 21, 2014.

9. **Jed McCaleb**. On March 18, 2014 my firm propounded Interrogatories, Requests for the Production of Documents, and a Notice of Deposition to Jed McCaleb via process server to Code Collective, 286 Union Avenue, #1A, Brooklyn, New York 11211. Notices of depositions

for all defendants (except Mizuho), along with notices of subpoenas for the depositions of Butterfly Labs, Luke Dashjr, and Jason Hughes, were also served via process server on the same day. On March 21, 2014, my firm mailed a Notice of Mizuho's 30(b)(6) deposition to Mr. McCaleb via USPS First Class Mail to the same address.

10. **Mizuho.** On March 20, 2014, my firm propounded Interrogatories, a Notice of 30(b)(6) Deposition, and Requests to Produce Documents via process server to Mizuho's registered agent, Geoff Matsunaga, at 350 S. Grand Avenue, Suite 1500, Los Angeles, California, 90071.

11. Plaintiffs expressly indicated in each of their discovery requests that they do not seek any documents or information relating to the assets of Mt. Gox KK.

12. As of the date of this filing, Plaintiffs have not received *any* discovery responses from Defendants, and none of the Defendants have appeared for any scheduled deposition. However, Plaintiffs' counsel are in communication with counsel for Defendant Mizuho regarding Plaintiffs' outstanding discovery requests. Discovery issued to Jed McCaleb has been withdrawn pursuant to an agreement between the parties.

13. Likewise, as of the date of this filing, Plaintiffs have not received any affidavits from Defendants regarding their distribution of the TRO, as ordered by the Court. (*See* Dkt. 33 at 8.)

14. Further, Defendants have ignored Plaintiffs' discovery requests and the affirmative obligations imposed upon them by the Court even though Mark Karpeles has acknowledged, in the United States Bankruptcy Court for the Northern District of Texas, that he is aware of Plaintiff Greene's Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 8). *See In re MtGox Co., Ltd*, Case No. 14-31229-15 (Bankr. N.D. Tex. Mar. 9,

5

2014).

*Plaintiffs File Their Corrected First Amended Complaint*

15. On Friday, March 14, 2014, Plaintiff Greene filed his First Amended Complaint, naming Mizuho Bank, Ltd., Jed McCaleb, Mt. Gox North America, Inc., and Gonzague Gay-Bouchery as additional defendants in this matter. The First Amended Complaint also added Joseph Lack as a named Plaintiff.

16. The following Monday, March 17, 2014, counsel for Mt. Gox KK sent an email to my firm, complaining that the First Amended Complaint was unclear as to the provisional stay that had been entered as to Mt. Gox KK. Later that day Plaintiffs filed their Corrected First Amended Complaint (Dkt. 37), adding a footnote to make clear that no claims were being pursued against the debtor, Mt.Gox KK, while any stay was in place, as well as additional support for their claims.

*The March 20, 2014 Status Hearing*

17. On March 20, 2014, the Court held a status hearing following its entry of the temporary restraining order. During the hearing, Plaintiffs' counsel updated the Court as to the status of: (1) service of process on Defendants, (2) discovery, and (3) Plaintiffs' continued investigation into the facts of the case and Defendants' U.S. assets. The Mt. Gox Defendants (Mt. Gox, Inc., Mt. Gox North America, Inc., Tibanne KK, Mark Karpeles, Gonzague Gay-Bouchery, and Jed McCaleb) did not attend the hearing. Likewise, no one appeared on behalf of Mt. Gox KK.

18. During the status, Plaintiffs' counsel explained to the Court that Plaintiffs had located minimal assets in the U.S. belonging to Defendants. Plaintiffs requested partial relief from the temporary restraining order with respect to an unnamed third party to allow for the

6

movement of certain of the Defendants' assets so as to effectively trace and monitor them. The Court granted this partial relief.

19. Plaintiffs' counsel also notified the Court at the March 20th status that Plaintiffs' professional asset investigators were unable to locate any "hard" assets belonging to Defendants (real property, vehicles, etc.) but that Plaintiffs were in the process of searching for assets related to Defendants' accounts.

*The March 27, 2014 Status Hearing*

20. On March 27, 2014, the Court held a status hearing at which Plaintiffs' counsel and counsel for Mizuho appeared.

21. During the hearing, Plaintiffs' counsel informed the Court of the status of their ongoing investigation into the U.S. assets of the Mt. Gox Defendants and of Plaintiffs' intention to move for default judgment in the future against any non-appearing Defendants. Plaintiffs' counsel also notified the Court that Plaintiffs' professional asset search service had been unable to locate any bank accounts held by the Defendants or any entities related to them. For their part, Mizuho's counsel denied that Mizuho was liable to the putative Class Members. Plaintiffs' counsel explained that the allegations against Mizuho center on its facilitation of transfers into Mt. Gox even after Mizuho knew or should have known that the exchange was insolvent and in breach of its agreements with its members.

22. The Court set another status hearing regarding the TRO for April 7, 2014, and raised the question of whether the TRO could be extended a second time, past its expiration at 11:30 a.m. on April 8, 2014. Plaintiffs' counsel informed the Court of Plaintiffs' intention to file a motion for a preliminary injunction.

7

*Counsel for Mark Karpeles and Tibanne KK file appearances*

23. On April 4, 2014, attorneys from the law firm of Novack & Macey LLP filed appearances on behalf of Mr. Karpeles and Tibanne KK and, through communications with my firm, indicated their intent to contest jurisdiction and service.

*The April 7, 2014 Status and Motion Hearing*

24. On April 7, 2014, the Court held a status and motion hearing at which Plaintiffs' counsel and counsel for Tibanne KK and Mark Karpeles appeared in person, and counsel for Mizuho appeared by telephone.

25. During the hearing, counsel for Tibanne KK and Mark Karpeles requested leave to file a Rule 12 briefing contesting jurisdiction and service but refused to comment on any other matters, stating they were concerned about waiving their objections to jurisdiction (even after Plaintiffs' counsel offered on the record to stipulate that any jurisdictional defenses would not be waived). However, counsel for Tibanne KK and Mark Karpeles did mention that the Department of Homeland Security had previously seized assets that counsel claimed belonged to Tibanne KK and/or Mark Karpeles.

26. During the same hearing, this Court granted Plaintiffs' Motion to Extend the TRO, which effectively converted the TRO into a preliminary injunction while the Court considered and ruled upon Plaintiffs' Motion for a Preliminary Injunction.

27. Plaintiffs' counsel also informed the Court of their intent to file a Motion for Alternative Service Under Federal Rule 4(f)(3), seeking leave to serve Karpeles and Tibanne KK through their counsel at Novak & Macey LLP. That motion was filed on April 7, 2014. (Dkt. 54.)

*Plaintiffs Uncover Additional Evidence that Strengthens Their Claims*

28. Through Plaintiffs' investigation into this matter, and through information

obtained from communications with third parties (including through the subpoenas issued pursuant to the TRO), Plaintiffs have learned that someone is currently using an IP address registered to Tibanne KK or Mark Karpeles to mine bitcoins on a mining pool in the United States and to transfer those bitcoins into bitcoin wallets[1] controlled by Karpeles. Plaintiffs are currently tracking the movement of these bitcoins, and their investigation into Defendants' IP addresses and mining activity continues.

29. On March 20, 2014, Mt. Gox, through Mark Karpeles, posted a message on Mt. Gox's website announcing that it had found just over 200,000 bitcoins (valued at approximately $100 million) in an older-format wallet "which was used prior to June 2011." Since this announcement, however, Plaintiffs' review of the Block Chain (the public record of all transactions on the bitcoin network, located online at http://bitcoin.info), suggests that contrary to Karpeles' assertions, the wallets holding these bitcoins were used at points in 2012 and 2013. Further, Plaintiffs have learned that when Karpeles caused the 200,000 to be moved along the Block Chain he broke the coins up into hundreds if not thousands of other wallets or addresses. He has since claimed that this was done to make them harder to trace, though prior to this transfer, even he was unaware that these "older-format" wallets contained these substantial amounts. Plaintiffs have also learned whoever is mining bitcoins using an IP address registered to Tibanne KK is mixing those bitcoins with the bitcoins wallets holding segments of the 200,000 broken-up bitcoins.

30. Additionally, and even though Mark Karpeles insisted that he notified his attorneys at Baker & McKenzie LLP of Mt. Gox's "discovery" of over 200,000 bitcoins as early as March 7, 2014, his lawyers failed to apprise the bankruptcy court in the Northern District of

---

[1] A "bitcoin wallet" is a file that contains cryptographic identifiers that enable the transfer of bitcoins, or that allows a Bitcoin holder to prove ownership of bitcoins.

9

Texas of the newly-found assets during its March 10, 2014 hearing on Mt. Gox's emergency Chapter 15 filing, or this Court during the March 11, 2014 hearing on Plaintiff Greene's TRO.

31. Even with this "discovery" of over 200,000 bitcoins, the evidence suggests that Defendants still cannot account for at least 600,000 missing bitcoins and approximately $27 million USD worth of Fiat Currency (a supposed maximum of ¥2.8 billion).

32. In addition to the active investigation of the Mt. Gox Defendants' assets, my firm has received information from hundreds of putative Class Members that strengthen Plaintiffs' claims. Among such information is the fact that Mt. Gox continued to accept putative Class Members' deposits of bitcoins and Fiat Currency in the days and hours before Mt. Gox "went dark" and shut down completely. This was after users began reporting delays in facilitating withdrawals of both Fiat Currency and bitcoin (*see*, *e.g.*, http://www.reddit.com/r/Bitcoin/comments/1wpokk/mtgox_statement_on_btc_withdrawal_delays_131/) and after Mt. Gox repeatedly assured customers that withdrawals would be restored soon, even without mentioning the massive loss of bitcoins and Fiat Currency.

33. Finally, Mt. Gox KK's Chapter 15 filings indicated that Mt. Gox's primary assets in the United States consisted of "servers" located somewhere in or near the Dallas area. This was later clarified, as the servers themselves, which are leased, are not Mt. Gox KK's United States assets. Rather, the main asset apparently consists of the back-up data that exists or is stored on the servers. Mt. Gox KK has not revealed any information as to the nature or scope of this back-up data, its valuation of the data, where such data may otherwise reside, or any other information regarding the data. In light of this lack of information and other reasons, Plaintiffs Greene and Lack moved the Bankruptcy Court for the Northern District of Texas for an order compelling Karpeles to travel to the United States for his deposition. Plaintiffs' Motion to

Compel was granted following a hearing on April 1, 2014. *See In re Mt. Gox Co. Ltd.*, No. 14-31229-sgj15, Dkt. 72 (Bankr. N.D. Tex. March 9, 2014).

***Plaintiffs Engage Emin Gün Sirer—an expert in distributed systems and virtual currencies and Professor at Cornell University,***

34. In March 2014, Plaintiffs engaged Emin Gün Sirer—an expert in distributed systems and virtual currencies and Professor at Cornell University—to help explain what could have happened at Mt. Gox to cause the disastrous loss of Class Members' bitcoins and Fiat Currency. On April 6, 2014, Dr. Sirer informed Plaintiffs' counsel that Mr. Karpeles had recently chatted online—under his IRC handle "MagicalTux"—about both this case and his plans for re-opening the Mt. Gox exchange. With respect to the reopening, Karpeles expressed a need for "having a third party certifying everything is 100% secure," and Dr. Sirer was recommended to him as a possible source.

35. Among other things, Professor Sirer explains in his report (a true and accurate copy of which is attached hereto as Exhibit 4) that Mt. Gox's public explanations for what caused the loss of hundreds of millions of dollars' worth of bitcoins and Fiat Currency are implausible and that "transaction malleability," Mt. Gox's primary culprit, could not have caused such a large loss of exchange member bitcoins (and if it somehow did, it would be a clear breach of the Defendants' duty of care to members). Professor Sirer further explains that transaction malleability could not have caused the loss of Fiat Currency—that "large shortfall" remains unexplained. News reports from Japan have stated that Karpeles personally had sole authority over his and the companies' accounts at Mizuho Bank and JapanNet.

***Exhibits***

36. Attached hereto as Exhibit 1 is a true and accurate copy of Mt. Gox's Terms of Use.

11

37. Attached hereto as Exhibit 2 is a true and accurate copy of the Declaration of Robert Marie Mark Karpeles submitted in support of Mt. Gox KK's Chapter 15 Bankruptcy petition. (*In re MtGox Co., Ltd.*, No. 14-31229-sgj15 (Bankr. N.D. Tex.)(Dkt. 2).

38. Attached hereto as Exhibit 3 is a true and accurate copy of the Civil Rehabilitation Proceeding Commencement Application filed in the Japanese Bankruptcy Proceedings concerning Mt. Gox Co., Ltd. (a/k/a Mt. Gox KK).

39. Attached hereto as Exhibit 4 is a true and accurate copy of Professor Emin Gün Sirer's Expert Report.

40. Attached hereto as Exhibit 5 is printout of an online news article authored by Robert McMillian entitled, "The Inside Story of Mt. Gox, Bitcoin's $460 Million Disaster" as it appeared on April 7, 2014 at the following URL: www.wired.com/2013/03/bitcoin-exchange/.

41. Attached hereto as Exhibit 6 is a printout of an online news article authored by Sophie Knight and Nathan Layne entitled "Mt. Gox Faced Questions on Handling Client Cash Long Before Bankruptcy Crisis" as it appeared on April 1, 2014 at the following URL: http://tech.firstpost.com/news-analysis/mt-gox-faced-questions-handling-client-cash-long-bankruptcy-crisis-220734.html.

42. Attached hereto as Exhibit 7 is a true and accurate copy of the Declaration of Jose Fernandez.

43. Attached hereto as Exhibit 8 is a true and accurate copy of the Mt. Gox Website's "Landing Page" as it appeared prior to February 24, 2014, when the Mt. Gox exchange went offline.

44. Attached hereto as Exhibit 9 is a true and accurate copy of the "Support Desk Updates" as they appeared on http://www.mtgox.com prior to February 24, 2014, when the Mt.

Gox exchange went offline.

45. Attached hereto as Exhibit 10 is a translated copy of the "Application for consent of supervisor" filed by Mt. Gox KK on March 10, 2014 in its Japanese bankruptcy proceedings.

46. Attached hereto as Exhibit 11 is a true and accurate copy of the Declaration of Gregory Greene.

47. Attached hereto as Exhibit 12 is a true and accurate copy of excerpts from the March 11, 2014 status hearing in this matter.

48. Attached hereto as Exhibit 13 is a true and accurate copy of the Declaration of Joseph Lack.

49. Attached hereto as Exhibit 14 is a true and accurate copy of the "March 20, 2014 Announcement," posted on Mt. Gox's website on March 20, 2014.

50. Attached hereto as Exhibit 15 is a true and accurate copy of the Declaration of Jeffrey C. Parker.

51. Attached hereto as Exhibit 16 is a true and accurate copy of the Declaration of Andrew Van Almen.

52. Attached hereto as Exhibit 17 is a printout of "Mt. Gox Business Plan Europe 2014-2017" as it appeared on April 1, 2014 at the following URL: http://www.scribd.com/doc/209535200/Business-Plan-MtGox-2014-2017.

53. Attached hereto as Exhibit 18 is a true and accurate copy of the Declaration of Eric P. Amstutz.

54. Attached hereto as Exhibit 19 is a true and accurate copy of the Declaration of Dario Di Pardo.

55. Attached hereto as Exhibit 20 is a true and accurate copy of the Declaration of

Jonathan Carmel.

56. Attached hereto as Exhibit 21 is a true and accurate copy of the Declaration of Michael Yablon.

57. Attached hereto as Exhibit 22 is a true and accurate copy of the Declaration of Dennis Ou.

58. Attached hereto as Exhibit 23 is an excerpt from the transcript of the April 1, 2014 hearing on Plaintiffs' Motion to Compel Deposition Testimony before the Texas bankruptcy court. *See In re Mt. Gox Co. Ltd*., No. 14-31229-sgj15, Dkt. 71 (Bankr. N.D. Tex. March 9, 2014.)

59. Attached hereto as Exhibit 24 is a printout of the Mt. Gox Fee Schedule, as it appeared on February 10, 2014. To obtain this printout, an attorney at my firm, Jack Yamin, used the Internet Archive's "Wayback Machine" (a non-profit digital library that captures archives of websites at various dates) to access archived versions of the Mt. Gox Fee Schedule. To do so, Mr. Yamin first navigated to http://archive.org/web/. Then, Mr. Yamin inputted the web address for the Mt. Gox Fee Schedule as it appeared on the Mt. Gox Terms of Use— https://www.mtgox.com/fee-schedule. Next, Mr. Yamin clicked on the "Browse History" button and was presented with various dates, reflecting the dates that the Internet Archive captured versions of the Fee Schedule. Mr. Yamin then selected the archive temporally closest to the present, which was February 10, 2014. Mr. Yamin then clicked on the resulting webpage, and saved the site as a PDF in order to create the printout.

*Online News Articles Cited in Plaintiffs' Motion for Preliminary Injunction*

60. On April 1, 2014, I accessed the online news article authored by Catherine Shu entitled "Mt. Gox Finds 200,000 Bitcoin in an 'Old Format' Digital Wallet" as it appeared at the

14

following URL: http://techcrunch.com/2014/03/20/mt-gox-finds-200000-bitcoin-in-an-old-format-digital-wallet/.

61. On April 1, 2014, I accessed the online news article authored by Richard Rubin and Carter Dougherty entitled "Bitcoin is Property, Not Currency, in Tax System: IRS" at the following URL: http://www.bloomberg.com/news/2014-03-25/bitcoin-is-property-not-currency-in-tax-system-irs-says.html.

62. On April 1, 2014, I accessed the online news article authored by Matthew Sparkes entitled "Who is the Reclusive Billionaire Creator of Bitcoin?" at the following URL: http://www.telegraph.co.uk/technology/10673546/Who-is-the-reclusive-billionaire-creator-of-Bitcoin.html.

63. On April 1, 2014, I accessed the online news article authored by Toru Hanai entitled "Mt. Gox Updates Website, Allows Customers to Check Bitcoin Balances" at the following URL:
http://www.reuters.com/article/2014/03/18/us-bitcoin-mtgoxwebsiteidUSBREA2H09V20140318

64. On April 1, 2014, I accessed the online news article entitled "Mt. Gox CEO Apologizes for Bitcoin Withdrawal Freeze" at the following URL: http://www.upi.com/Business_News/2014/02/17/Mt-Gox-CEO-apologizes-for-bitcoin-withdrawal-freeze/UPI-99051392667941/.

65. On April 1, 2014, I accessed the online news article authored by Rob Wile entitled "MtGox Resigns From Bitcoin Foundation, Deletes All Tweets From Twitter Feed" at the following URL: http://www.businessinsider.com/mtgox-resigns-from-bitcoin-foundation-2014-2#ixzz2v1CxPstF.

66. On April 5, 2014, I accessed the online news article authored by Chris O'Brien

15

entitled "Mt. Gox files for bankruptcy as 850,000 bitcoins go missing," at the following URL: http://articles.latimes.com/2014/feb/28/business/la-fi-tn-mt-gox-bankruptcy-bitcoins-20140228.

67. On April 1, 2014, I accessed the online news article authored by Nathaniel Popper and Rachel Abrams entitled "Apparent Theft at Mt. Gox Shakes Bitcoin World" at the following URL: http://www.nytimes.com/2014/02/25/business/apparent-theft-at-mt-gox-shakes-bitcoin-world.html?_r=0.

68. On April 1, 2014, I accessed the online news article authored by Adrian Lowery entitled "Is it the beginning of the end for Bitcoin? Virtual currency in turmoil as rumoured $375m theft closes major exchange" at the following URL: http://www.thisismoney.co.uk/money/news/article-2567436/Bitcoin-turmoil-rumoured-375m-theft-closes-major-exchange.html.

69. On April 1, 2014, I accessed the online news article authored by Yoshifumi Takemoto and Sophie Knight entitled "Mt. Gox files bankruptcy, says hackers stole all its bitcoins" at the following URL: http://articles.chicagotribune.com/2014-02-28/news/sns-mt-gox-bankruptcy-bitcoins-20140228_1_gox-bitcoin-market-bitcoin-community.

70. On April 1, 2014, I accessed the online news article authored by Jon Shazar entitled "The Bitcoin Bungle: 'Investor' Seeks to Block Mt. Gox From Playing 'Disappear' Card" as it appeared on April 1, 2014 at the following URL: http://dealbreaker.com/2014/03/the-bitcoin-bugle-investor-seeks-to-block-mt-gox-from-playing-disappear-card/.

71. On April 1, 2014, I accessed the online news article authored by Adrienne Jeffries entitled "Barons of Bitcoin: the Tokyo-based powerhouse that controls the world's virtual money" at the following URL: http://www.theverge.com/2013/4/1/4154500/mt-gox-barons-of-bitcoin.

72. On April 1, 2014, I accessed the online news article authored by Morgan Peck entitled "Bitcoin Hits $1 Billion" as it appeared on April 1, 2014 at the following URL: http://spectrum.ieee.org/computing/networks/bitcoin-hits-1billion.

73. On April 1, 2014, I accessed the online news article authored by Kate Cox entitled "Bitcoin: What the Heck is it, and How Does it Work?" at the following URL: http://consumerist.com/2014/03/04/bitcoin-what-the-heck-is-it-and-how-does-it-work/.

74. On April 1, 2014, I accessed the online news article authored by Jeffrey Sparshot entitled "Bitcoin Exchange Makes Apparent Move to Play by U.S. Money-Laundering Rules" at the following URL: http://online.wsj.com/news/articles/SB10001424127887323873904578574000957464468.

75. On April 7, 2010, I navigated to http://www.preev.com, the website for "Simple Bitcoin Converter. The website displayed the current conversion rate from Bitcoin currency ("BTC") to US Dollars. When I logged in, the conversion rate was "1 BTC = 454.4 USD."

*Additional Exhibit*

76. Attached hereto as Exhibit 25 is a true and accurate copy of the Affidavit of John Peirceall, which details the present status of Plaintiffs' efforts to serve the Japanese Defendants through the Hague Convention. As explained in the Affidavit, the Corrected First Amended Complaint and summons, filed March 17, 2014, were received by Ancillary Legal Corporation on March 18, 2014. They were translated into Japanese and sent to the Central Authority in Japan—the Ministry of Foreign Affairs, 2-2-1 Kasumigaseki Chiyoda-ku, Tokyo, 100-8919, Japan—via Federal Express on April 2, 2014. Ancillary Legal Services expects to receive a proof of service in approximately 20 weeks, which I've calculated as being approximately 5 months, or sometime by September 2014.

Further affiant sayeth not.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of April, 2014 in Denver, Colorado.

/s/ Steven L. Woodrow
Steven L. Woodrow