# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | Hon. Gary Feinerman |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, | Magistrate Judge Susan Cox **DECLARATION OF JAY EDELSON IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL** |
| *Defendants*. | |

I, Jay Edelson, pursuant to 28 U.S.C. § 1746, hereby declare on oath as follows:

1.      I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon person knowledge unless otherwise indicated.

2.      I am an attorney admitted to practice in the State of Illinois and in the United States District Court for the Northern District of Illinois. I am entering this declaration in support of Plaintiffs' Motion and Memorandum in Support of Preliminary Approval of Class Action Settlement.

3.      I am the managing Partner at the law firm of Edelson PC, which has been retained to represent Plaintiffs Gregory Greene and Joseph Lack (collectively, "Plaintiffs") in this matter. I am an adult over the age of 18 and am fully competent to make this Declaration. If called upon

to testify as to the matters stated herein, I could and would competently do so.

4.      Attached hereto as Exhibit A is a true and accurate copy of the firm resume of Edelson PC.

5.      Attached hereto as Exhibit B is a true and accurate copy of the Decision and Judgment from the Tokyo District Court ordering that "[a] bankruptcy procedure shall commence with regard to debtor MtGox Co., Ltd. [a/k/a Mt. Gox KK]" and appointing Attorney-at-law Nobuaki Kobayashi as Bankruptcy Trustee over Mt. Gox KK and the Mt. Gox Exchange.

6.      Attached hereto as Exhibit C is a true and accurate copy of the "CAUTIONS TO THE BANKRUPT" issued by the Tokyo District Court 20th Civil Camber Consensus to MtGox Co., Ltd. and Representative Director Mark Marie Robert Karpeles.

7.      The proposed settlement class consists of approximately 45,000 of Mt. Gox account holders that had Mt. Gox "wallets" holding bitcoins or fiat currency at the time that the Mt. Gox Exchange "went dark" and closed (i.e., out of approximately 138,000 individual account holders from around the world).

8.      Because each settlement class member was required to provide certain information before creating an account with the Mt. Gox Exchange, Mt. Gox KK (which is now under the management of Mr. Kobayashi, the Exchange's Bankruptcy Trustee) has a complete list of contact information for the settlement class, including at least both names and email addresses. Indeed, as of this filing, Mt. Gox Exchange account holders (including settlement class members) can still use their Mt. Gox usernames and passwords to log into the Exchange (at www.mtgox.com) and check their wallet balances—i.e., at least as last recorded by the Exchange without the benefit of any confirmatory audit.

***Discovery and Related Efforts To-Date***

9.      All discovery efforts to-date have been effected through the Temporary

Restraining Order and Interim Preliminary Injunction entered in this case.

10.      Consistent with those Orders and as detailed in their other filings, Plaintiffs have

propounded extensive discovery requests on each of the Defendants and have issued many third

party subpoenas, requesting both documents and sworn testimony.

11.      To date, Plaintiffs have not received any discovery-related communications

(much less formal responses) from Mark Karpeles, Tibanne KK, Mt. Gox Inc., or Mt. Gox North

America, Inc. Plaintiffs have, however, received information from other Defendants, along with

information stemming from the issued third party subpoenas, including meaningful information

about Defendants' assets, their global operations, and the loss of Mt. Gox exchange members'

property.

12.      Likewise, my firm has conducted substantial factual investigations outside of the

formal discovery channels.  We are, for example, in constant contact with around 300 putative

class members who have been asked to be kept apprised of case developments—many of which

have provided us with valuable information about the Mt. Gox Exchange and the moments

leading up to its collapse, and many of whom have provided declarations in this matter. We have

engaged Emin Gün Sirer—an expert in distributed systems and virtual currencies, and professor

at Cornell University with substantial experience in crypto-currencies, including Bitcoin—to

help understand the circumstances of the Exchange's collapse and the legitimacy of those

excuses publicly offered to explain its downfall. Further, we have utilized both private

investigators and information obtained by the media and members of the Bitcoin community to

obtain additional information about the Mt. Gox Exchange and its collapse.

*Negotiations Leading to Proposed Class Settlement*

13.     Beginning in March 2014, I, along with attorneys my firm, began discussing the possible resolution of this matter with counsel for Jed McCaleb. Shortly thereafter, we began settlement discussions with certain other Defendants and explored different potential settlement structures.

14.     Over the course of these negotiations, we entered into concurrent discussions with a group of investors external to the litigation—Sunlot Holdings Limited ("Sunlot")—regarding a possible plan for purchasing the assets and business of Mt. Gox in the course of the ongoing Japanese bankruptcy proceedings.

15.     These ongoing discussions culminated in a mediation that spanned the week of April 21, 2014, which was facilitated and provided over by Judge Andersen (Ret.) and involved (i) Plaintiffs and attorneys at my firm, (ii) Mr. McCaleb and Mr. Gay-Bouchery (collectively, the "Settling Defendants"), (iii) Sunlot, (iv) attorneys representing the putative Canadian Class in *Joyce et al. v. MtGox, Inc. et al.*, CV-14-500253-00CP (Ontario Sup. Ct. J.), and (v) other interested creditors of Mt. Gox KK internationally.

16.     Over the course of the week, the mediating parties coalesced around a negotiated purchase agreement, where Plaintiffs, on behalf of a class of U.S. Mt. Gox exchange members, would support Sunlot's acquisition of Mt. Gox in exchange for a set of terms benefitting and protecting the class.

17.     Throughout this time, the mediating parties exchanged and evaluated several drafts of proposed terms and—through the mediation process and negotiations with numerous interested international creditors and stakeholders—were able to reach both the terms of a settlement, and the material terms of Sunlot's acquisition of Mt. Gox that would make settlement

4

possible.

18.     An agreement materially identical to the Settlement Agreement reached here is being entered into on behalf of the class of Canadian Mt. Gox exchange members in the matter of *Joyce et al. v. MtGox, Inc. et al.*, CV-14-500253-00CP (Ontario Sup. Ct. J.).

19.     Assuming the enumerated contingencies of the settlement are met, I believe that the settlement provides the proposed settlement class with the greatest opportunity to realize a maximized recovery of their losses, and that it warrants approval by the Court.

***The Proposed Settlement Is In the Settlement Class's Best Interests***

20.      In my view, the proposed settlement provides significant relief to settlement class members, especially in light of their chances of recovering—even with a verdict in their favor—against Mt. Gox KK (which is in bankruptcy proceedings and against whom this litigation is currently stayed), Jed McCaleb (who was a part-owner of the Mt. Gox Exchange before its movement into bankruptcy and liquidation), and Gonzague Gay-Bouchery (Mt. Gox's Chief Marketing Officer and Manager of Business Development).

21.     Prior to and throughout the duration of this matter, my firm has diligently investigated and prosecuted this case, dedicating substantial resources to the investigation of the claims at issue in the action and has successfully negotiated the settlement of this matter to the benefit of the proposed Class. We are confident in the strength of Plaintiffs' claims and believe they would ultimately prevail at trial—indeed, we have been shown nothing to suggest otherwise, and are aware of no facts that would hurt Plaintiffs' chances of prevailing under any of their causes of action. Regardless, Plaintiffs also recognize that litigation is inherently risky.

22.     Here, such risks include that—in the absence of the proposed settlement—Mt. Gox and the Settling Defendants would certainly oppose class certification and vigorously

contest the merits of Plaintiffs' claims. Further, even if Plaintiffs ultimately succeeded on a class basis at trial against the Settling Defendants, lengthy appeals would likely follow, as would potential difficulties in collecting any award.

23.     More importantly, and even apart from the risks inherent to this and any other litigation, this matter carries significant obstacles relating to the settlement class's ability to be made whole, specifically because of several known and rapidly developing external factors that would, in all likelihood, make recovery difficult—if not impossible—as against the Settling Defendants. Namely, the Defendant against whom class members have the strongest claims— and who holds the most assets potentially available to remedy class members—Mt. Gox KK, is under bankruptcy protection. If the proposed settlement is not approved, and the Mt. Gox Reorganization Plan not adopted, the Japanese bankruptcy court will likely extinguish class members' claims against Mt. Gox KK, and force class members to participate in a lengthy and complex international claims process that could take years to resolve and would likely result in their obtaining only pennies on the dollar, if that. As such, and with respect to Mt. Gox, the alternative to settlement is not even continued litigation culminating in a trial (at which Plaintiffs' are confident they could prevail), but liquidation.

24.     Consequently, I believe that the proposed settlement presents a real—and the best—opportunity for members of the settlement class to recover all their losses caused by the Mt. Gox Exchange's collapse, if not more.  That is, under the proposed settlement (assuming the Mt. Gox Reorganization Plan is approved), all consumer creditors of the Mt. Gox Exchange (i.e., not just settlement class members, as the Settlement Agreement does not seek to prioritize U.S. consumer creditors over others) will receive (i) an immediate and definite pro rata recovery from certain bitcoins and fiat currency currently held by the Mt. Gox Exchange, (ii) ongoing

recoveries via distributions taken from the dividends and net proceeds enjoyed by the rehabilitated Mt. Gox Exchange (i.e., through the treatment of settlement class members as effective 16.5% stakeholders in the Exchange), and, (iii) upon any future sale of the Exchange and at the election of each class member, a 16.5% *pro rata* interest in the new Exchange's equity security or the equivalent value. The latter two modes of relief should be particularly valuable to settlement class members, as they have an interest both in maintaining public confidence in Bitcoin generally as well as in continued viability its largest exchange. The Plan will allow settlement class members to further those interests.

25.     Even aside from the above-discussed external factors that make recovery difficult in this case, the relief obtained on behalf of the settlement class is particularly favorable in light of the complex facts and novel legal issues involved. The claims asserted in the First Amended Complaint will require highly complex investigation and fact-finding to determine what actually took place (i.e., what actually led to and caused the loss of bitcoins and fiat currency and resulted in Mt. Gox's insolvency), and will then require the resolution of novel and complex legal issues involving rights, duties, and best practices as applied to the relatively recent phenomenon of digital currency.

26.     Adding an additional layer of complication is that all of these facts—i.e., as they directly relate to the Mt. Gox Exchange—are the subject of litigation in the United States and Canada, bankruptcy proceedings in Japan, and related bankruptcy proceedings in the United States.

27.     Even given all the above, it should be noted that if the proposed settlement is approved, the litigation will continue forward against Mark Karpeles, Tibanne KK, and Mizuho Bank, Ltd. Likewise, the Settlement Agreement is structured around key contingencies—such

that if the Tokyo District Court or appointed Administrator of the Mt. Gox Exchange fails to move forward with material aspects the proposed structured purchase, then the Settlement Agreement will unwind and the litigation will continue forward against all Defendants from where it left off. As such, the settlement class is insulated against any prejudicial harm that could conceivably result from the Settlement Agreement.

28.     All told, and based on my experience and knowledge of this case, the immediate and substantial relief provided by the Settlement here weighs strongly in favor of approval, and avoids the inherent and various external risks associated with this complex and novel litigation.

***Experience of Edelson PC***

29.     The attorneys of Edelson PC are well-qualified and experienced members of the plaintiffs' bar who have extensive experience in class actions of similar size, scope, and complexity to the instant action.

30.     The attorneys at my firm have regularly engaged in major complex litigation involving consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed class counsel by courts throughout the country.

31.     Consistent with this experience, Edelson PC has been recognized as a pioneer in both large digital privacy cases involving complicated technological issues as well as large-scale complex banking litigation.

32.     For example, Edelson PC was appointed as interim co-lead counsel in a privacy class action against Facebook, where the United States District Court for the Northern District of California described the firm as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. 10-cv-02389 (N.D. Cal. Dec. 10, 2010). *See also In re Netflix Privacy Litig.*,

No 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing Edelson PC interim lead counsel,

noting that while two other firms had impressive resumes and litigation experience, Edelson

PC's "significant and particularly specialized expertise in electronic privacy litigation and class

action renders them superior to represent the putative class."). Edelson PC has also been named a

"top national plaintiff's class action firm" in the areas of "technology, privacy, and

telecommunications" by the U.S. Chamber Institute for Legal Reform. U.S. Chamber Institute

for Legal Reform, The New Lawsuit Ecosystem: Trends, Targets and Players at 16 (October

2013) (available at http://www.instituteforlegalreform.com/uploads/sites/1/The_New_Lawsuit_

Ecosystem_pages_web.pdf).

33.     With respect to banking litigation, my firm has been at the forefront of class

action litigation arising in the aftermath of the federal bailouts of too-big-to-fail banks following

the 2008 financial crisis, being named as lead counsel in nationwide class actions involving

illegal suspensions of home equity lines of credit and the rights of individuals to sue to enforce

portions of the federal Home Affordable Modification Program ("HAMP"). These actions have

led to the restoration of billions of dollars of credit to homeowners, and, in the case of the HAMP

litigation, caused one Seventh Circuit judge to remark that "[p]rompt resolution of this matter is

necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells

Fargo Bank, N.A.*, 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J. concurring).

34.     For this case, my firm has already diligently investigated and dedicated

substantial resources to the claims in this action and will continue to do so throughout its

pendency. Examples, among others, include Edelson PC's (i) substantial efforts and expenses

towards third party discovery pursuant to the Temporary Restraining Order and Interim

Preliminary Injunction entered by this Court; (ii) early engagement of expert witnesses,

including Cornell Professor Emin Gün Sirer; and (iii) retention of Japanese counsel to keep apprised of the Tokyo District Court bankruptcy proceedings and, importantly, evaluate the proposed purchase plan underlying this settlement.

35.    Further, in this matter, my appointment as class counsel in this matter is supported by four committees of attorneys working on behalf of affected Mt. Gox exchange members: (1) U.S. Committee led by Robert Clifford of The Clifford Law Offices and Bret Lusskin of Law Office of Bret Lusskin, Esq.; (2) the Bankruptcy Committee led by Scott Kitei of Honigman Miller Schwartz and Cohn LLP; (3) the Canadian Committee led by Theodore P. Charney of Charney Lawyers; and (4) the International Committee led by Scott A. Kamber of KamberLaw, LLC.

I declare under penalty of perjury that the foregoing is true and correct. Executed April 28, 2014 in Chicago, Illinois.

/s/ Jay Edelson
  Jay Edelson

# Exhibit A

EDELSON PC FIRM RESUME

EDELSON PC is a plaintiff's class action and commercial litigation firm with attorneys in Illinois, Colorado and California.

Our attorneys have been recognized as leaders in these fields by state and federal legislatures, national and international media groups, the courts, and our peers. Our reputation for leadership in class action litigation has led state and federal courts to appoint us lead counsel in many high-profile class action suits, including privacy class actions involving comScore, Netflix, Time, Microsoft, and Facebook, numerous Telephone Consumer Protection Act ("TCPA") against companies such as Google, Twentieth Century Fox, and Simon & Schuester, class actions against Citibank, Wells Fargo, and JP Morgan Chase related to reductions in home equity lines of credit, fraudulent marketing cases against software companies such as Symantec, mobile content class actions against all major cellular telephone carriers, the Thomas the Tank Engine lead paint class actions, and the tainted pet food litigation. We have testified before the United States Senate on class action issues and have repeatedly been asked to work on federal and state legislation involving cellular telephony, privacy and other issues. Our attorneys have appeared on dozens of national and international television and radio programs to discuss our cases and class action and consumer protection issues more generally. Our attorneys speak regularly at seminars on consumer protection and class action issues, lecture on class actions at law schools and are asked to serve as testifying experts in cases involving class action and consumer issues.

## PLAINTIFFS' CLASS AND MASS ACTION PRACTICE GROUP

EDELSON PC is a leader in plaintiffs' class and mass action litigation, with a particular emphasis on consumer technology class actions, and has been called a "class action 'super firm'". (Decalogue Society of Lawyers, Spring 2010.) As recognized by federal courts nationwide, our firm has an "extensive histor[y] of experience in complex class action litigation, and [is a] well-respected law firm[] in the plaintiffs' class action bar." *In re Pet Food Prod. Liab. Litig.*, MDL Dkt. No. 1850, No. 07-2867 (NLH) (D.N.J. Nov. 18, 2008). A leading arbitrator concurred: "The proof of [the firm's] experience, reputation, and abilities is extraordinary. . . . Each [of their cases] elaborates on the experience and unique success [they] have had in achieving leading roles in the area of 'technology consumer protection class actions.'" (Arbitration award in mobile content class action settlement, August 6, 2009)

In appointing our firm interim co-lead in one of the most high profile cases in the country, a federal court pointed to our ability to be "vigorous advocates, constructive problem-solvers, and civil with their adversaries." *- In Re JPMorgan Chase Home Equity Line of Credit Litig.*, No. 10 C 3647 (N.D. Ill, July 16, 2010). After hard fought litigation, that case settled, resulting in the reinstatement of between $3.2 billion and $4.7 billion in home credit lines.

We have been specifically recognized as "pioneers in the electronic privacy class action field, having litigated some of the largest consumer class actions in the country on this issue." *In re Facebook Privacy Litig.*, No. C 10-02389 (N.D. Cal) (order appointing the firm interim co-lead of privacy class action); see also In re Netflix Privacy Litigation, 5:11-cv-00379 (N.D. Cal. Aug. 12, 2011) (appointing the sole lead counsel due, in part, to its "significant and particularly

specialized expertise in electronic privacy litigation and class actions[.]")

Similarly, as recognized by a recent federal court, our firm has "pioneered the application of the TCPA to text-messaging technology, litigating some of the largest consumer class actions in the country on this issue." *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D. Cal. May 7, 2013).

We have several sub-specialties within our plaintiffs' class action practice:

*Privacy/Data Loss*

**Data Loss/Unauthorized Disclosure of Data**

We have litigated numerous class actions involving issues of first impression against Facebook, Apple, Netflix, Sony, Red Box, Pandora, Sears, Storm 8, Google, T-Mobile, Microsoft and others involving the failure to protect customers' private information, security breaches, and unauthorized sharing of personal information with third parties. Representative settlements and ongoing cases include:

- *Dunstan v. comScore, Inc.*, No. 11-cv-5807 (N.D. Ill.): Lead counsel in certified class action accusing internet analytics company of improper data collection practices.

- *Resnick v. Avmed*, No. 10-cv-24513 (S.D. Fla.): Lead counsel in data breach case filed against health insurance company. Obtained landmark appellate decision endorsing common law unjust enrichment theory, irrespective of whether identity theft occurred.

- *In re Netflix Privacy Litigation*, No. 5:11-cv-00379 (N.D. Cal.): Sole lead counsel in suit alleging that defendant violated the Video Privacy Protection Act by illegally retaining customer viewing information. Case resulted in a $9 million dollar cy pres settlement that has been finally approved (pending appeal).

- *Halaburda v. Bauer Publishing Co.* 12-CV-12831 (E.D. Mich.), *Grenke v. Hearst Communications, Inc.,* 12-CV-14221 (E.D. Mich.), *Fox v. Time, Inc.,* 12-CV-14390 (E.D. Mich.) Consolidated actions brought under Michigan's Video Rental Privacy Act, alleging unlawful disclosure of subscribers' personal information. In a ground-breaking decision, the court denied three motions to dismiss finding that the magazine publishers were covered by the act and that the illegal sale of personal information triggers an automatic $5,000 award to each aggrieved consumer.

- *Standiford v. Palm*, No. 5:09-cv-05719-LHK (N.D. Cal.): Sole lead counsel in data loss class action, resulting in $640,000 settlement.

- *In re Zynga Privacy Litigation,* 10-cv-04680 (N.D. Cal.): Appointed co-lead counsel in suit against gaming application designer for the alleged

unlawful disclosure of its users' personally identifiable information to advertisers and other third parties.

- *In re Facebook Privacy Litigation,* 10-cv-02389 (N.D. Cal.): Appointed co-lead counsel in suit alleging that Facebook unlawfully shared its users' sensitive personally identifiable information with Facebook's advertising partners.

- *In re Sidekick Litig.,* No. C 09-04854-JW (N.D. Cal.): Co-lead counsel in cloud computing data loss case against T-Mobile and Microsoft. Settlement provided the class with potential settlement benefits valued at over $12 million.

- *Desantis v. Sears*, 08 CH 00448 (Cook County, IL): Lead counsel in injunctive settlement alleging national retailer allowed purchase information to be publicly available through the internet.

## Telephone Consumer Protection Act

Edelson has been at the forefront to TCPA litigation for over six years, having secured the groundbreaking *Satterfield* ruling in the Ninth Circuit applying the TCPA to text messages. In addition to numerous settlements totaling over $100 million in relief to consumers, we have over two dozen putative TCPA class actions pending against companies including Santander Consumer USA, Inc., Walgreen Co., Path, Inc., Nuance Communications, Inc., Stonebridge Life Insurance, Inc., UnitedHealth Group, Inc., GEICO, DirectBuy, Inc., and RCI, Inc. Representative settlements and ongoing cases include:

- *Rojas v CEC*, No. 1:10-cv-05260 (N.D. Ill): Lead counsel in text spam class action that settled for $19,999,400.

- *In re Jiffy Lube Int'l Text Spam Litig*, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012): Co-lead counsel in $35 million text spam settlement.

- *Ellison v Steve Madden, Ltd.,* cv 11-5935 PSG (C.D.Cal.): Lead counsel in $10 million text spam settlement.

- *Kramer v. B2Mobile, et al,* No. 0-cv-02722-CW (N.D. Cal.): Lead counsel in $12.2 million text spam settlement.

- *Pimental v. Google, Inc*., No. 11-cv-02585 (N.D.Cal.): Lead counsel in class action alleging that defendant co-opted group text messaging lists to send unsolicited text messages. $6 million settlement provides class members with an unprecedented $500 recovery.

- *Robles v. Lucky Brand Dungarees, Inc.*, No. 10-cv-04846 (N.D.Cal.).

Lead counsel in $10 million text spam settlement.

- *Miller v. Red Bull*, No. 12-CV-04961 (N.D. Ill.) Lead counsel in preliminary approved $6 million settlement.

- *Woodman et al v. ADP Dealer Services, et al.,* 2013 CH 10169 (Cook County, IL) Lead counsel in $7.5 million text spam settlement.

- *Lozano v. 20th Century Fox,* No. 09-cv-05344 (N.D. Ill): Lead counsel in class action alleging that defendants violated federal law by sending unsolicited text messages to cellular telephones of consumers. Case settled for $16 million.

- *Satterfield v. Simon & Schuster*, No. C 06 2893 CW (N.D. Cal.). Co-lead counsel in in $10 million text spam settlement.

- *Weinstein, et al. v. Airit2me, Inc*., Case No. 06 C 0484 (N.D. Ill): Co-lead counsel in $7 million text spam settlement.

### *Consumer Technology*

### <u>Fraudulent Software</u>

In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as McAfee, Inc., Avanquest North America Inc., PC Cleaner, AVG, iolo Technologies, LLC, among others. Representative settlements include:

- *Drymon v. Cyberdefender*, No. 11 CH 16779 (Cook County, IL): Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.75 million.

- *Gross v. Symantec Corp., et al.*, No. 3:12-cv-00154-CRB (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $11 million.

- *LaGarde, et al. v. Support.com, Inc., et al.* (N.D. Cal.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $8.59 million.

- *Ledet v. Ascentive LLC* (E.D. Pa.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $9.6 million.

- *Webb, et al. v. Cleverbridge, Inc.,* et al. (N.D. Ill.) Lead counsel in class action alleging that defendant deceptively designed and marketed its computer repair software. Case settled for $5.5 million.

## Video Games

Edelson PC has litigated cases video game related cases against Activision Blizzard Inc., Electronic Arts, Inc., Google, and Zenimax Media, Inc., and has active litigation pending, including:

- *Locke v. Sega of America*, 13-cv-01962-MEJ (N.D. Cal.) Pending putative class action alleging that Sega of America and Gearbox Software released video game trailer that falsely represented the actual content of the game.

### *Mortgage & Banking*

EDELSON PC has been at the forefront of class action litigation arising in the aftermath of the federal bailouts of the banks. Our suits include claims that the certain banks unlawfully suspended home credit lines based on pre-textual reasons, and that certain banks have failed to honor loan modification programs. We achieved the first federal appellate decision in the country recognizing the right of borrowers to enforce HAMP trial plans under state law. The court noted that "Prompt resolution of this matter is necessary not only for the good of the litigants but for the good of the Country." *Wigod v. Wells Fargo Bank,* N.A., 673 F.3d 547, 586 (7th Cir. 2012) (Ripple, J., concurring). Our settlements have restored billions of dollars in home credit lines to people throughout the country. Representative cases and settlements include:

- *In re JP Morgan Chase Bank Home Equity Line of Credit Litig.*, 10-cv-3647 (N.D. Ill.): Court appointed interim co-lead counsel in nationwide putative class action alleging illegal suspensions of home credit lines. Settlement restored between $3.2 billion and $4.7 billion in credit to the class.

- *Hamilton v. Wells Fargo Bank, N.A.*, 4:09-cv-04152-CW (N.D. Cal.). Lead counsel in class actions challenging Wells Fargo's suspensions of home equity lines of credit. Nationwide settlement restores access to over $1 billion in credit and provides industry leading service enhancements and injunctive relief.

- *In re Citibank HELOC Reduction Litigation*, 09-CV-0350-MMC. Lead counsel in class actions challenging Citibanks's suspensions of home equity lines of credit. The settlement restored up to $653,920,000 worth of credit to affected borrowers.

- *Wigod v. Wells Fargo*, No. 10-cv-2348 (N.D. Ill.): In ongoing putative class action, obtained first appellate decision in the country recognizing the right of private litigants to sue to enforce HAMP trial plans.

### *General Consumer Protection Class Actions*

We have successfully prosecuted countless class action suits against computer software companies, technology companies, health clubs, dating agencies, phone companies, debt collectors, and other businesses on behalf of consumers. In addition to the settlements listed below, Edelson PC has consumer fraud cases pending in courts nationwide against companies such as Motorola Mobility, Stonebridge Benefit Services, J.C. Penney, Sempris LLC, and Plimus, LLC. Representative settlements include:

### <u>Mobile Content</u>

We have prosecuted over 100 cases involving mobile content, settling numerous nationwide class actions, including against industry leader AT&T Mobility, collectively worth over a hundred million dollars.

- *McFerren v. AT&T Mobility, LLC*, No. 08-CV-151322 (Fulton County Sup. Ct., GA):  Lead counsel class action settlement involving 16 related cases against largest wireless service provider in the nation.  "No cap" settlement provided virtually full refunds to a nationwide class of consumers who alleged that unauthorized charges for mobile content were placed on their cell phone bills.

- *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Illinois):  Lead counsel in class action settlement involving 27 related cases alleging unauthorized mobile content charges.  Case settled for $36 million.

- *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.):  Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Case settled for $12 million.

- *Parone v. m-Qube, Inc.* No. 08  CH 15834 (Cook County, Illinois):  Lead counsel in class action settlement involving over 2 dozen cases alleging the imposition of unauthorized mobile content charges.  Case settled for $12.254 million.

- *Williams, et al. v. Motricity*, *Inc. et al.*, Case No. 09 CH 19089 (Cook County, Illinois):  Lead counsel in class action settlement involving 24 cases alleging the imposition of unauthorized mobile content charges. Case settled for $9 million.

- *VanDyke v. Media Breakaway, LLC*, No. 08 CV 22131 (S.D. Fla.):  Lead counsel in class action settlement alleging unauthorized mobile content charges.  Case settled for $7.6 million.

- *Gresham v. Cellco Partnership*, No. BC 387729 (Los Angeles Sup. Ct.):  Lead counsel in case alleging unauthorized charges were placed on cell phone bills.  Settlement provided class members with full refunds.

- *Abrams v. Facebook, Inc.*, No. 07-05378 (N.D. Cal.): Lead counsel in injunctive settlement concerning the transmission of allegedly unauthorized mobile content.

## **Deceptive Marketing**

- *Van Tassell v. UMG*, No. 1:10-cv-2675 (N.D. Ill): Lead counsel in negative option marketing class action. Case settled for $2.85 million.

- *McK Sales Inc. v. Discover Bank*, No. 1:10-cv-02964 (N.D. Ill): Lead counsel in class action alleging deceptive marketing aimed at small businesses. Case settled for $6 million.

- *Farrell v. OpenTable*, No 3:11-cv-01785-si (N.D. Cal.): Lead counsel in gift certificate expiration case. Settlement netted class over $3 million in benefits.

- *Ducharme v. Lexington Law*, No. 10-cv-2763-crb (N.D. Cal): Lead counsel in CROA class action. Settlement resulted in over $6 million of benefits to the class.

- *Pulcini v. Bally Total Fitness Corp.*, No. 05 CH 10649 (Cook County, IL): Co-lead counsel in four class action lawsuits brought against two health clubs and three debt collection companies. A global settlement provided the class with over $40 million in benefits, including cash payments, debt relief, and free health club services.

- *Kozubik v. Capital Fitness, Inc.*, 04 CH 627 (Cook County, IL): Co-lead counsel in state-wide suit against a leading health club chain, which settled in 2004, providing the over 150,000 class members with between $11 million and $14 million in benefits, consisting of cash refunds, full debt relief, and months of free health club membership.

- *Kim v. Riscuity*, No. 06 C 01585 (N.D. Ill): Co-lead counsel in suit against a debt collection company accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with full debt relief and return of all money collected.

- *Jones v. TrueLogic Financial Corp.*, No. 05 C 5937 (N.D. Ill): Co-lead counsel in suit against two debt collectors accused of attempting to collect on illegal contracts. The case settled in 2007, providing the class with approximately $2 million in debt relief.

- *Fertelmeyster v. Match.com*, No. 02 CH 11534 (Cook County, IL): Co-lead counsel in a state-wide class action suit brought under Illinois consumer protection statutes. The settlement provided the class with a collective award with a face value in excess of $3 million.

- *Cioe v. Yahoo!, Inc.*, No. 02 CH 21458 (Cook County, IL):  Co-lead counsel in a state-wide class action suit brought under state consumer protection statutes.  The settlement provided the class with a collective award with a face value between $1.6 million and $4.8 million.

- *Zurakov v. Register.com,* No. 01-600703 (New York County, NY):  Co-lead counsel in a class action brought on behalf of an international class of over one million members against Register.com for its allegedly deceptive practices in advertising on "coming soon" pages of newly registered Internet domain names.  Settlement required Register.com to fully disclose its practices and provided the class with relief valued in excess of $17 million.

### *Products Liability Class Actions*

We have been appointed lead counsel in state and federal products liability class settlements, including a $30, million settlement resolving the "Thomas the Tank Engine" lead paint recall cases and a $32 million settlement involving the largest pet food recall in the history of the United States and Canada. Representative settlements include:

- *Barrett v. RC2 Corp.*, No. 07 CH 20924 (Cook County, IL):  Co-lead counsel in lead paint recall case involving Thomas the Tank toy trains.  Settlement is valued at over $30 million and provided class with full cash refunds and reimbursement of certain costs related to blood testing.

- *In re Pet Food Products Liability Litig.*, No. 07-2867 (D. N.J.):  Part of mediation team in class action involving largest pet food recall in United States history.  Settlement provided $24 million common fund and $8 million in charge backs.

### *Insurance Class Actions*

We have prosecuted and settled multi-million dollar suits against J.C. Penney Life Insurance for allegedly illegally denying life insurance benefits under an unenforceable policy exclusion and against a Wisconsin insurance company for terminating the health insurance policies of groups of self-insureds. Representative settlements include:

- *Holloway v. J.C. Penney*, No. 97 C 4555, (N.D. Ill.):  One of the primary attorneys in a multi-state class action suit alleging that the defendant illegally denied life insurance benefits to the class.  The case settled in or around December of 2000, resulting in a multi-million dollar cash award to the class.

- *Ramlow v. Family Health Plan* (Wisc. Cir. Ct., WI):  Co-lead counsel in a class action suit challenging defendant's termination of health insurance to groups of self-insureds.  The plaintiff won a temporary injunction, which was sustained on appeal, prohibiting such termination and eventually

settled the case ensuring that each class member would remain insured.

***Mass/Class Tort Cases***

Our attorneys were part of a team of lawyers representing a group of public housing residents in a suit based upon contamination related injuries, a group of employees exposed to second hand smoke on a riverboat casino, and a class of individuals suing a hospital and national association of blood banks for failure to warn of risks related to blood transfusions. Representative settlements include:

- *Aaron v. Chicago Housing Authority,* 99 L 11738, (Cook County, IL): Part of team representing a group of public housing residents bringing suit over contamination-related injuries. Case settled on a mass basis for over $10 million.

- *Januszewski v. Horseshoe Hammond*, No. 2:00CV352JM (N.D. Ind.): Part of team of attorneys in mass suit alleging that defendant riverboat casino caused injuries to its employees arising from exposure to second-hand smoke.

The firm's cases regularly receive attention from local, national, and international media. Our cases and attorneys have been reported in the Chicago Tribune, USA Today, the Wall Street Journal, the New York Times, the LA Times, by the Reuters and UPI news services, and BBC International. Our attorneys have appeared on numerous national television and radio programs, including ABC World News, CNN, Fox News, NPR, and CBS Radio, as well as television and radio programs outside of the United States. We have also been called upon to give congressional testimony and other assistance in hearings involving our cases.

## GENERAL COMMERCIAL LITIGATION

Our attorneys have handled a wide range of general commercial litigation matters, from partnership and business-to-business disputes, to litigation involving corporate takeovers. We have handled cases involving tens of thousands of dollars to "bet the company" cases involving up to hundreds of millions of dollars. Our attorneys have collectively tried hundreds of cases, as well as scores of arbitrations and mediations.

## OUR ATTORNEYS

**JAY EDELSON** is the founder and Managing Partner of EDELSON PC. He has been recognized as a leader in class actions, technology law, corporate compliance issues and consumer advocacy by his peers, the media, state and federal legislators, academia and courts throughout the country.

Jay has been appointed lead counsel in numerous state, federal, and international class actions, resulting in hundreds of millions of dollars for his clients. He is regularly asked to weigh in on federal and state legislation involving his cases. He testified to the U.S. Senate about the largest pet food recall in the country's history and is advising state and federal politicians on consumer issues relating to the recent federal bailouts, as well as technology issues, such as those involving mobile marketing. Jay also counsels companies on legal compliance and legislative issues in

addition to handling all types of complex commercial litigation.

Jay has litigated class actions that have established precedent concerning the ownership rights of domain name registrants, the applicability of consumer protection statutes to Internet businesses, and the interpretation of numerous other state and federal statutes including the Telephone Consumer Protection Act and the Video Privacy Protection Act. As lead counsel, he has also secured settlement in cases of first impression involving Facebook, Microsoft, AT&T and countless others, collectively worth hundreds of millions of dollars.

In addition to technology based litigation, Jay has been involved in a number of high-profile "mass tort" class actions and product recall cases, including cases against Menu Foods for selling contaminated pet food, a $30 million class action settlement involving the Thomas the Tank toy train recall, and suits involving damages arising from second-hand smoke.

In 2009, Jay was named one of the top 40 Illinois attorneys under 40 by the Chicago Daily Law Bulletin. In giving Jay that award, he was heralded for his history of bringing and winning landmark cases and for his "reputation for integrity" in the "rough and tumble class action arena." In the same award, he was called "one of the best in the country" when it "comes to legal strategy and execution." Also in 2009, Jay was included in the American Bar Association's "24 hours of Legal Rebels" program, where he was dubbed one of "the most creative minds in the legal profession" for his views of associate training and firm management. In 2010, he was presented with the Annual Humanitarian Award in recognition of his "personal integrity, professional achievements, and charitable contributions" by the Hope Presbyterian Church. Starting in 2011, he has been selected as an Illinois Super Lawyer and, separately, as a top Illinois class action lawyer by Benchmark Plaintiff.

Jay is frequently asked to participate in legal seminars and discussions regarding the cases he is prosecuting, including serving as panelist on national symposium on tort reform and, separately, serving as a panelist on litigating high-profile cases. He has also appeared on dozens of television and radio programs to discuss his cases. He has taught classes on class action law at Northwestern Law School and The John Marshall Law School, and has co-chaired a 2-day national symposium on class action issues. He has been an adjunct professor, teaching a seminar on class action litigation at Chicago-Kent College of Law since 2010.

Jay is a graduate of Brandeis University and the University of Michigan Law School.

**RYAN D. ANDREWS** is a Partner at EDELSON PC, and the Chair of the Telecommunications Practice Group. Mr. Andrews has been appointed class counsel in numerous state and federal class actions nationwide that have resulted in nearly $100 million dollars in refunds to consumers, including *Satterfield v. Simon & Schuster, Inc.*, No. C 06 2893 CW (N.D. Cal.), *Gray v. Mobile Messenger Americas, Inc.*, No. 08-CV-61089 (S.D. Fla.), *Lofton v. Bank of America Corp.*, No. 07-5892 (N.D. Cal.), *Paluzzi v. Cellco Partnership*, No. 07 CH 37213 (Cook County, Ill.), *Parone v. m-Qube, Inc.* No. 08 CH 15834 (Cook County, Ill.), and *Kramer v. Autobytel*, Inc., No. 10-cv-2722 (N.D. Cal. 2010).

In addition, Mr. Andrews has achieved groundbreaking court decisions protecting consumers through the application of the Telephone Consumer Protection Act to emerging text-messaging

technology. Representative reported decisions include: Lozano v. Twentieth Century Fox, 702 F. Supp. 2d 999 (N.D. Ill. 2010), *Satterfield v. Simon & Schuster, Inc.* 569 F.3d 946 (9th Cir. 2009), and *Kramer v. Autobytel, Inc.*, 759 F. Supp. 2d 1165 (N.D. Cal. 2010), *In re Jiffy Lube Int'l Text Spam Litig*, --- F. Supp. 2d ---, No. 11-md-2261, 2012 WL 762888 (S.D. Cal. March 9, 2012).

Mr. Andrews received his J.D. with High Honors from the Chicago-Kent College of Law and was named Order of the Coif. Recently, Mr. Andrews has returned to Chicago-Kent as an Adjunct Professor of Law, teaching a third-year seminar on Class Actions. While in law school, Mr. Andrews was a Notes & Comments Editor for The Chicago-Kent Law Review, as well as a teaching assistant for both Property Law and Legal Writing courses. Mr. Andrews externed for the Honorable Joan B. Gottschall in the United State District Court for the Northern District of Illinois.

A native of the Detroit area, Mr. Andrews graduated from the University of Michigan, earning his B.A., with distinction, in Political Science and Communications.

Mr. Andrews is licensed to practice in Illinois state courts, the United States District Court for the Northern District of Illinois, the U.S. Court of Appeals for the Seventh Circuit, and the U.S. Court of Appeals for the Ninth Circuit.

**RAFEY S. BALABANIAN** is a Partner and the Chair of the Corporate Governance and Business Litigation Practice Group. Rafey's practice focuses upon a wide range of complex consumer class action litigation, as well as general business litigation.

On the plaintiff's side, Rafey has been appointed lead counsel in numerous class actions, including landmark settlements involving the telecom industry worth hundreds of millions of dollars. Rafey has been appointed Class Counsel in nationwide class action settlements against the major wireless carriers, aggregators, and providers of "mobile content," including *Van Dyke v. Media Breakaway, LLC*, No. 08-cv-22131 (S.D. Fla.); *Parone v. m-Qube, Inc.*, 08 CH 15834 (Cir. Ct. Cook County, Ill.); *Williams v. Motricity, Inc.*, et al., No. 09 CH 19089 (Cir. Ct. Cook County, Ill.); and *Walker v. OpenMarket, Inc., et al.*, No. 08 CH 40592 (Cir. Ct. Cook County, Ill.).

On the business side, Rafey has counseled clients ranging from "emerging technology" companies, real estate developers, hotels, insurance companies, lenders, shareholders and attorneys. He has successful litigated numerous multi-million dollar cases, including several "bet the company" cases.

Rafey has first chaired jury and bench trials, mediations, and national and international arbitrations.

Rafey received his J.D. from the DePaul University College of Law in 2005. While in law school, he received a certificate in international and comparative law. Rafey received his B.A. in History, with distinction, from the University of Colorado – Boulder in 2002.

**CHRISTOPHER L. DORE** is a Partner at Edelson and a member of the Technology and Fraudulent Marketing Group. Chris focuses his practice on emerging consumer technology issues, with his cases relating to online fraud, deceptive marketing, consumer privacy, negative option membership enrollment, and unsolicited text messaging. Chris is also a member of the firm's Incubation and Startup Development Group wherein he consults with emergent businesses.

Chris has been appointed class counsel in multiple class actions, including one of the largest text-spam settlements under the Telephone Consumer Protection Act, ground breaking issues in the mobile phone industry and fraudulent marketing, as well as consumer privacy. (*Pimental v. Google, Inc.*, No. 11-cv-02585 (N.D.Cal.); *Kramer v. Autobytel, Inc.* (10-cv-02722-CW); *Turner v. Storm8, LLC*, (09-cv-05234) (N.D. Cal.); Standiford v Palm, Inc. (09-cv-05719-LHK) (N.D. Cal.); and *Espinal v Burger King Corporation*, (09-20982) (S.D. Fla.)). In addition, Chris has achieved groundbreaking court decisions protecting consumer rights. Representative reported decisions include: *Claridge v. RockYou, Inc.* 785 F.Supp.2d 855 (N.D. Cal.), *Kramer v. Autobytel, Inc.*, 759 F.Supp.2d 1165 (N.D. Cal.), and *Van Tassell v. United Marketing Group, LLC*, 795 F.Supp.2d 770 (N.D.Ill.). In total, his suits have resulted in hundreds of millions of dollars to consumers.

Prior to joining Edelson, Chris worked for two large defense firms in the areas of employment and products liability. Chris graduated magna cum laude from The John Marshall Law School, where he served as the Executive Lead Articles for the Law Review, as well as a team member for the D.M. Harish International Moot Court Competition in Mumbai, India. Chris has since returned to his alma mater to lecture on current issues in class action litigation and negations.

Before entering law school, Chris received his Masters degree in Legal Sociology, graduating magna cum laude from the International Institute for the Sociology of Law, located in Onati, Spain. Chris received his B.A. in Legal Sociology from the University of California, Santa Barbara.

**BENJAMIN H. RICHMAN** is a Partner at EDELSON PC and is a member of the firm's Corporate Governance and Business Litigation Practice Group. He handles plaintiff's-side consumer class actions, focusing mainly on technology-related cases, represents corporate defendants in class actions, and handles general commercial litigation matters.

On the plaintiff's side, Ben has brought industry-changing lawsuits involving the marketing practices of the mobile industry, print and online direct advertisers, and Internet companies. He has successfully prosecuted cases involving privacy claims and the negligent storage of consumer data. His suits have also uncovered complex fraudulent methodologies of Web 2.0 companies, including the use of automated bots to distort the value of consumer goods and services. In total, his suits have resulted in hundreds of millions of dollars to consumers.

On the defense side, Ben has represented large institutional lenders in the defense of employment class actions. He also routinely represents technology companies in a wide variety of both class action defense and general commercial litigation matters.

Ben received his J.D. from The John Marshall Law School, where he was an Executive Editor of the Law Review and earned a Certificate in Trial Advocacy. While in law school, Ben served as a judicial extern to the Honorable John W. Darrah of the United States District Court for the Northern District of Illinois, in addition to acting as a teaching assistant for Prof. Rogelio Lasso in several torts courses. Ben has since returned to the classroom as a guest-lecturer on issues related to class actions, complex litigation and negotiation. He also lectures incoming law students on the core first year curriculums. Before entering law school, Ben graduated from Colorado State University with a B.S. in Psychology.

Ben is the director of EDELSON PC's Summer Associate Program.

**ARI J. SCHARG** is a Partner at EDELSON PC. He handles technology-related class actions, focusing mainly on cases involving the unlawful geo-locational tracking of consumers through their mobile devices, the illegal collection, storage, and disclosure of personal information, fraudulent software products, data breaches, and text message spam. His settlements have resulted in tens of millions of dollars to consumers, as well as industry-changing injunctive relief. Ari has been appointed class counsel by state and federal courts in several nationwide class action settlements, including Webb v. Cleverbridge, et al., 11-cv-4141 (N.D. Ill.), Missaghi v. Blockbuster, 11-cv-2559 (D. Minn.), Ledet v. Ascentive, 11-cv-294 (E.D. Penn.), and Drymon v. CyberDefender, 11 CH 16779 (Cook Cnty, Illinois), and was appointed sole-lead class counsel in Loewy v. Live Nation, 11-cv-4872 (N.D. Ill.), where the court praised his work as "impressive" and noted that he "understand[s] what it means to be on a team that's working toward justice." Ari was selected as an Illinois Rising Star (2013) by Super Lawyers.

Prior to joining the firm, Ari worked as a litigation associate at a large Chicago firm, where he represented a wide range of clients including Fortune 500 companies and local municipalities. His work included representing the Cook County Sheriff's Office in several civil rights cases and he was part of the litigation team that forced Craigslist to remove its "Adult Services" section from its website.

Ari is very active in community groups and legal industry associations. He is a member of the Board of Directors of the Chicago Legal Clinic, an organization that provides legal services to low-income families in the Chicago area. Ari acts as Outreach Chair of the Young Adult Division of American Committee for the Shaare Zedek Medical Center in Jerusalem, and is actively involved with the Anti-Defamation League. He is also a member of the Standard Club Associates Committee.

Ari received his B.A. in Sociology from the University of Michigan – Ann Arbor and graduated magna cum laude from The John Marshall Law School where he served as a Staff Editor for The John Marshall Law Review and competed nationally in trial competitions. During law school, he also served as a judicial extern to The Honorable Judge Bruce W. Black of the U.S. Bankruptcy Court for the Northern District of Illinois.

**STEVEN LEZELL WOODROW** is a Partner and Chair of the firm's Banking and Financial Services Practice Group. Mr. Woodrow focuses his practice on complex national class actions against some of the Country's largest financial institutions. Representative matters include cases against national banks and mortgage servicers for improper loan modification practices, unlawful

home equity line of credit ("HELOC") account suspensions and reductions, and claims regarding the misapplication of payments.

Mr. Woodrow delivered the winning oral argument in *Wigod v. Wells Fargo Bank, N.A.* (7th Cir. 2012), the first federal appellate court decision to allow borrowers to challenge bank failures to follow the federal Home Affordable Modification Program ("HAMP") under state law.

Courts have also appointed Mr. Woodrow as class counsel in nationwide class action settlements against cellphone companies, aggregators, and mobile content providers related to unauthorized charges for ringtones and other mobile content, including *Paluzzi v. Cellco Partnership*, *Williams et. al. v. Motricity, Inc.*, and *Walker et. al. v. OpenMarket Inc.*

Mr. Woodrow has also served as an Adjunct Professor of Law at Chicago-Kent College of Law where he co-taught a seminar on class actions. Prior to joining the firm, he worked as a litigator at a Chicago boutique where he tried and arbitrated a range of consumer protection and real estate matters.

Mr. Woodrow received his J.D. High Honors, Order of the Coif, from Chicago-Kent College of Law in 2005. During law school, Mr. Woodrow served as a Notes and Comments Editor for The Chicago-Kent Law Review, competed on Moot Court, and served as President of the Student Bar Association. He additionally spent a semester as a judicial extern for the Honorable Ann C. Williams on the United States Court of Appeals for the Seventh Circuit. Steven received the ALI-ABA Scholarship and Leadership Award for best representing the combination of leadership and scholarship in his graduating class as well as the Lowell H. Jacobson Memorial Scholarship, which is awarded competitively each year to a student from one of the law schools in the Seventh Circuit to recognize personal commitment and achievement.

Mr. Woodrow is admitted to practice in Colorado (2011) and Illinois (2005).

Mr. Woodrow received his B.A. in Political Science with Distinction from the University of Michigan—Ann Arbor in 2002.

**COURTNEY BOOTH** is an Associate at EDELSON PC. Courtney focuses her practice on consumer class actions.

Courtney received her J.D., magna cum laude, from The John Marshall Law School. While in law school, she was a staff editor of The John Marshall Law Review, a teaching assistant for Legal Writing and Civil Procedure, and a member of the Moot Court Honor Society. Courtney represented John Marshall at the Mercer Legal Ethics and Professionalism Competition where she was a semi-finalist and won Best Respondent's Brief and at the Cardozo/BMI Entertainment and Communications Law Competition where she placed in the top three oralists. Courtney was recently nominated as a 2013 Member of the National Order of Scribes.

Prior to law school, Courtney attended Saint Louis University where she earned a B.A. in Communication. While there, she was a community relations intern for the St. Louis Blues.

**MARK EISEN** is an Associate at Edelson PC, where he focuses on consumer class actions. Prior to joining the firm, Mark clerked for the Honorable Gary Allen Feess, United States District Court for the Central District of California.

Mark received his J.D., magna cum laude, from the Boston University School of Law. While in law school, he won the Homer Albers Prize Moot Court Competition, represented BU on the National Moot Court team, and was a note development editor on the BU International Law Journal. Mark's academic note, Who's Running This Place? A Comparative Look at the Political Appointment System in the United States and Britain, and What the United States Can Learn, was published in the International Law Journal in the spring of 2012. Most importantly, Mark was active with the Boston University School of Law Softball Team.

Prior to law school, Mark attended the University of Southern California where he earned a B.A., magna cum laude, in Political Science and Economics. While there, Mark was a teaching assistant to Professor Dan Schnur. Mark also traveled the country as part of the advance team for John McCain's 2008 presidential campaign.

**CHANDLER GIVENS** is an Associate at EDELSON PC, where his practice focuses on technology and privacy class actions. His lawsuits have centered on fraudulent software development, unlawful tracking of consumers through mobile devices and computers, illegal data retention, and data breach litigation.

Chandler leads a group of researchers in investigating complex technological fraud and privacy related violations. His team's research has lead to cases that have helped cause significant reforms to the utility software industry and resulted in tens of millions of dollars to U.S. consumers. On the privacy litigation front, Chandler plays an instrumental role in applying new technologies to federal and state statutes. His briefing of these issues has helped produce seminal rulings under statutes like the Stored Communications Act and establish data breach jurisprudence favorable to consumers.

A frequent speaker on emerging law and technology issues, Chandler has presented to legal panels and state bar associations on topics ranging from data privacy and security to complex litigation and social media. He has been featured on syndicated radio, quoted in major publications such as Reuters and PCWorld, and been an invited Cyberlaw guest lecturer at his alma mater.

Chandler graduated from the University of Pittsburgh School of Law where he was a research assistant for Cyberlaw Professor Dr. Kevin Ashley, and a judicial extern for the Honorable David S. Cercone of the United States District Court for the Western District of Pennsylvania. He graduated cum laude from Virginia Tech, with a B.S. in business information technology, with a focus on computer-based decision support systems. Chandler sits on the ABA committees for Information Security and e-Discovery.

Before joining the legal profession, Chandler worked as a systems analyst. He has also interned at the Virginia Attorney General's Office as well as the U.S. Department of Justice in Washington D.C.

**ALICIA HWANG** is an Associate at EDELSON PC. Alicia practices in the area of consumer class action and general litigation.

Alicia received her J.D. from the Northwestern University School of Law in May 2012, where she was an articles editor for the Journal of Law and Social Policy. During law school, Alicia was a legal intern for the Chinese American Service League, served as president of the Asian Pacific American Law Student Association and the Student Animal Legal Defense Fund, and was Chair of the Student Services Committee. She also worked as a student in the Northwestern Entrepreneurship Law Clinic and Complex Civil Litigation and Investor Protection Clinic.

Prior to joining EDELSON PC, Alicia worked as an Executive Team Leader for the Target Corporation, as well as a public relations intern for a tourism-marketing agency in London.

Alicia graduated magna cum laude from the University of Southern California, earning her B.A. in Communication in 2007. She is a member of the Phi Beta Kappa honor society.

**NICK LARRY** is an Associate at EDELSON PC. Nick practices in the area of consumer class action and general litigation.

Nick received his J.D., cum laude, from Northwestern University School of Law, where he was a senior editor of the Northwestern University Journal of International Law and Business.

Nick attended Michigan State University, where he graduated with a B.A. in General Business Administration/Pre-law in 2008 and played on the school's rugby team.

**MEGAN LINDSEY** is an Associate at EDELSON PC. Megan practices in the area of consumer class action, focusing on complex class actions in the banking industry.

Prior to joining EDELSON PC, Megan worked for several years as a commercial loan underwriter and portfolio officer at Merrill Lynch, Pierce, Fenner & Smith. Megan also worked as an analyst in the troubled asset group at Bank of America, helping to monitor and restructure high-risk loans.

Megan received her J.D. from Chicago-Kent College of Law in May 2011. During law school Megan externed for the Honorable Judge Bauer in the Seventh Circuit Court of Appeals and served as Vice President-Evening Division of the Student Bar Association and Vice President of the Moot Court Honor Society. Megan also represented Chicago-Kent at the National First Amendment Moot Court Competition in Nashville, Tennessee and the National Cultural Heritage Law Moot Court Competition in Chicago, Illinois.

Megan graduated with High Honors from DePaul University in July 2005, earning her B.S. in Finance.

**DAVID I. MINDELL** is an Associate at EDELSON PC. David practices in the area of technology and privacy class actions.

David has worked on cases involving fraudulent software products, unlawful collection and retention of consumer data, and mobile-device privacy violations. David also serves as a

business consultant to private companies at all stages of development, from start-up to exit.

Prior to joining EDELSON PC, David co-founded several technology companies that reached multi-million dollar valuations within 12 months of launch. David has advised or created strategic development and exit plans for a variety of other technology companies.

While in law school, David was a research assistant for University of Chicago Law School Kauffman and Bigelow Fellow, Matthew Tokson, and for the preeminent cyber-security professor, Hank Perritt at the Chicago-Kent College of Law. David's research included cyberattack and denial of service vulnerabilities of the Internet, intellectual property rights, and privacy issues.

David has given speeches related to his research to a wide-range of audiences.

**AMIR MISSAGHI** is an Associate at Edelson, where he focuses on technology and privacy class actions.

Amir received his J.D. from the Chicago-Kent College of Law, where he was a member of the Moot Court Honor Society and a teaching assistant in Property. Before law school, he attended the University of Minnesota, where he received his B.S. and M.S. in Applied Economics. He then began working at a Fortune 50 company as a programmer and data analyst. During that time Amir started working on his graduate studies in Applied Economics where he focused on analyzing consumer choice in healthcare markets.

**JOHN OCHOA** is an associate at Edelson PC, focusing his practice on protecting consumers with a special emphasis on plaintiffs' privacy class action litigation, including cases brought under the Telephone Consumer Protection Act. John prosecutes cases in both state and federal courts at the trial and appellate levels.

John has secured important court decisions protecting the rights of consumers, including Elder v. Pacific Bell Telephone Co., et al., 205 Cal. App. 4th 841 (2012), where the California Court of Appeals held that consumers may pursue claims against telecommunications companies for placing unauthorized charges on consumers' telephone bills, a practice known as "cramming." John was also appointed class counsel in *Lee v. Stonebridge Life Ins. Co., et al.*, --- F.R.D. ---, 2013 WL 542854 (N.D. Cal. Feb. 12, 2013), a case where the Defendants are alleged to have caused the transmission of unauthorized text messages to the cellular telephones of thousands of consumers.

He graduated magna cum laude from the John Marshall Law School in May, 2010 and served as Managing Editor for the John Marshall Law Review. His student Comment, which examines bicycling and government tort immunity in Illinois, appears in Vol. 43, No. 1 of the John Marshall Law Review. While in law school, John externed with Judge Thomas Hoffman at the Illinois Court of Appeals, and competed in the ABA National Appellate Advocacy Competition.

John is active in the Illinois legal community, and serves as Co-Chair of the Membership Committee on the Young Professionals Board of Illinois Legal Aid Online (ILAO). ILAO is a non-profit organization committed to using technology to increase access to free and pro bono legal services for underserved communities throughout Illinois.

He received his B.A. with Honors in Political Science from the University of Iowa in 2004.

**ROGER PERLSTADT** is an Associate at EDELSON PC, where he concentrates on appellate and complex litigation advocacy. Roger graduated from the University of Chicago Law School, where he was a member of the University of Chicago Law Review. After law school, he served as a clerk to the Honorable Elaine E. Bucklo of the United States District Court for the Northern District of Illinois.

Prior to joining the firm, Roger spent several years at a litigation boutique in Chicago where his practice included employment and housing discrimination claims, constitutional litigation, and general commercial matters. In 2011, he was named a Rising Star by Illinois Super Lawyers Magazine.

Roger also spent time as a Visiting Assistant Professor at the University of Florida Law School where he taught Arbitration, Conflict of Laws, and Employment Discrimination, and has published articles on the Federal Arbitration Act in various law reviews.

**EVE-LYNN RAPP** is an Associate at EDELSON PC. Eve-Lynn focuses her practice in the areas of consumer and technology class action litigation.

Prior to joining EDELSON PC, Eve-Lynn was involved in numerous class action cases in the areas of consumer and securities fraud, debt collection abuses and public interest litigation. Eve-Lynn has substantial experience in both state and federal courts, including successfully briefing issues in both the United States and Illinois Supreme Courts.

Eve-Lynn received her J.D. from Loyola University of Chicago-School of Law, graduating cum laude, with a Certificate in Trial Advocacy. During law school, Eve-Lynn was an Associate Editor of Loyola's International Law Review and externed as a "711" at both the Cook County State's Attorney's Office and for Cook County Commissioner Larry Suffredin. Eve-Lynn also clerked for both civil and criminal judges (The Honorable Judge Yvonne Lewis and Plummer Lott) in the Supreme Court of New York.

Eve-Lynn graduated from the University of Colorado, Boulder, with distinction and Phi Beta Kappa honors, receiving a B.A. in Political Science.

**BEN THOMASSEN** is an Associate at EDELSON PC. At the firm, Ben's practice centers on the prosecution of class actions cases that address federally protected privacy rights and issues of consumer fraud—several of which have established industry-changing precedent. Among other high profile cases, Ben recently played key roles in delivering the winning oral argument before the United States Court of Appeals for the Eleventh Circuit in *Curry v. AvMed*, 693 F.3d 1317 (11th Cir. 2012) (a data breach case that has, following the Eleventh Circuit's decision, garnered national attention both within and without the legal profession) and securing certification of a massive consumer class in *Dunstan v. comScore*, No. 11 C 5807, 2013 WL 1339262 (N.D. Ill. Apr. 2, 2013) (estimated by several sources as the largest privacy case ever certified on an adversarial basis).

Ben received his J.D., magna cum laude, from Chicago-Kent College of Law, where he also earned his certificate in Litigation and Alternative Dispute Resolution and was named Order of

the Coif. At Chicago-Kent, Ben was Vice President of the Moot Court Honor Society and earned (a currently unbroken firm record of) seven CALI awards for receiving the highest grade in Appellate Advocacy, Business Organizations, Conflict of Laws, Family Law, Personal Income Tax, Property, and Torts.

Before settling into his legal career, Ben worked in and around the Chicago and Washington, D.C. areas in a number of capacities, including stints as a website designer/developer, a regular contributor to a monthly Capitol Hill newspaper, and a film projectionist and media technician (with many years experience) for commercial theatres, museums, and educational institutions. Ben received his Bachelor of Arts, summa cum laude, from St. Mary's College of Maryland and his Master of Arts from the University of Chicago.

**JACK YAMIN** is an Associate at EDELSON PC, where he focuses on privacy and consumer class actions.

Jack graduated cum laude from Northwestern University's Accelerated (2-year) JD Program. While in law school, Jack was a member of the Center for Wrongful Convictions, where he worked on post-conviction cases in Illinois appellate courts. Jack also served as a judicial extern to the Honorable Marvin Aspen, a senior judge of the United States District Court for the Northern District of Illinois. Throughout law school, Jack was a member of the Center for Conflict Resolution, where he mediated cases in Illinois courts throughout Chicago.

Prior to joining the firm, Jack worked as a tax consultant for business owners throughout the country, representing clients before the Internal Revenue Service, negotiating installment agreements, and handling tax audits. Jack also spent some time working at a literary agency, helping writers publish novels and marketing their work. Jack graduated summa cum laude from Binghamton University, earning his B.A. in philosophy and English literature. He is a member of the Phi Beta Kappa honor society.

# Exhibit B

平成２６年（フ）第３８３０号

決　　　　定

東京都渋谷区渋谷二丁目１１番５号
債務者（破産者）　　株式会社ＭＴＧＯＸ
代表者代表取締役　カルプレス・マルク・マリ・ロベート

主　　　　文

債務者株式会社ＭＴＧＯＸについて破産手続を開始する。

理　　　　由

一件記録によれば，債務者が支払不能の状態にあることが認められる。
よって，主文のとおり決定する。
なお，この決定に併せて，下記のとおり定める。

記

1　破産管財人　　　東京都渋谷区渋谷二丁目１１番５号
　　　　　　　　　　株式会社ＭＴＧＯＸ　破産管財人室
　　　　　　　　　　弁護士　小林　信明
2　債権届出期間　　平成２６年１１月２８日まで
3　財産状況報告集会の期日
　　　　　　　　　　平成２６年７月２３日午後１時３０分
4　債権調査期日　　平成２７年２月２５日午前１０時


　　　　　平成２６年４月２４日午後５時

　　　　　東京地方裁判所民事第２０部

　　　　　　　　裁判長裁判官　鹿子木　　　康

　　　　　　　　　裁判官　金澤　秀樹

　　　　　　　　　裁判官　樋口　正樹

　　これは正本である。
　　　　　平成２６年４月２４日
　　　　　東京地方裁判所民事第２０部
　　　　　　　裁判所書記官　櫻庭　一威　

[translation]

2014 (*fu*) no. 3830

## DECISION

Shibuya 2-11-5, Shibuya-ku, Tokyo

Debtor (bankrupt) MtGox Co., Ltd.

Representative Director Robert Marie Mark Karpeles

## JUDGMENT

A bankruptcy procedure shall commence with regard to debtor MtGox Co., Ltd.

## REASONS

From the records of a case, it is recognized that the debtor is in a situation of insolvency. Accordingly, this judgment is decided.

Further, together with this decision, it is also hereby decided as follows.

1.      Bankruptcy trustee      Attorney-at-law Nobuaki Kobayashi

         Bankruptcy Trustee Room

         MtGox Co., Ltd.

         Shibuya 2-11-5, Shibuya-ku, Tokyo

2.      Period for notification of claims      until November 28, 2014

3.      General meeting to report the situation of properties

         July 23, 2014 1:30pm

4.      Period for investigation of claims    until February 25, 2015 10am

April 24, 2014 5pm

Tokyo District Court 20th Civil Chamber

Head Judge      Yasushi Kanokogi

Judge      Hideki Kanazawa

Judge      Masaki Higuchi

This is an authentic copy.

     April 24, 2014

     Tokyo District Court 20th Civil Chamber

     Court clerk      Kazui Sakuraba [seal]

# Exhibit C

平成２６年（フ）第３８３０号

破産者　株式会社ＭＴＧＯＸ

　　　　　代表者代表取締役　　カルプレス・マルク・マリ・ロベート

# 破産者に対する注意事項

1　破産者（本人及び破産会社代表者のほか，破産者の法定代理人，法人である破産者
　　の理事，取締役等も含む。以下同様）は，破産管財人等の請求により破産に関し必要
　　な説明をしなければなりません（破産法４０条）。

　　　説明を拒んだり，偽りの説明をしたときには，刑事上の処罰を受けたり（破産法２
　　６８条），免責が許可されなかったりします（破産法２５２条１項１１号）。

2　破産者が，破産手続中，住所を変更したり，居住地を離れたりする場合は，その旨
　　を書面で破産管財人に申請し，破産管財人の同意を得てください。その中で住所の変
　　更を伴う場合には，変更後の住所及び破産管財人の同意を得た旨を記載した上申書を，
　　破産者側から裁判所に提出してください。

　　　破産管財人の同意を得ないで転居等をした場合は，免責が許可されないことがあり
　　ます（破産法２５２条１項１１号，３７条１項）。

3　破産者にあてた郵便物については，破産手続開始決定の日と同日に，破産管財人に
　　配達することを嘱託する旨の決定がされました。管財人に配達された郵便物は，破産
　　管財人が破産財団に関するものかどうか内容を調査します（破産法８１条，８２条）。

4　破産財団に属する財産を隠したり，壊したり，仮装譲渡したり，債権者の不利益に
　　処分すると，詐欺破産罪で処罰されたり（破産法２６５条），免責が許可されなくな
　　ったりします（破産法２５２条１項１号）。破産者の業務や財産の状況に関する帳簿
　　や書類などを隠したり，偽造したり，変造した場合も同様です（破産法２７０条，２
　　５２条１項６号）。

　　　　　　　　　　　　　　平成２６年４月２４日

　　　　　　　　　　　　　東京地方裁判所民事第２０部　合議Ｆ係

[translation]

2014 (*fu*) no. 3830

Bankrupt       MtGox Co., Ltd.

               Representative Director Mark Marie Robert Karpeles

## CAUTIONS TO THE BANKRUPT

1.    The bankrupt (in addition to the bankrupt itself and the representatives of the bankrupt company, including the legal representatives, the administration officers and the directors, etc. of the bankrupt; the same shall apply thereafter) has an obligation to give the necessary explanations with regard to the bankruptcy at the request of the bankruptcy trustee (Bankruptcy Law Article 40).
Criminal sanctions (Bankruptcy Law Article 268) may apply and discharge may be refused (Bankruptcy Law Article 252.1.11) if explanations are refused or wrong explanations are given.

2.    If during the bankruptcy procedure, the bankrupt shall change its address or get away from its place of residence, please make a request in writing to the bankruptcy trustee and obtain the bankruptcy trustee's approval. In the case of a change of address, the bankrupt shall submit to the court an affidavit indicating the new address and the fact that the change has been approved by the bankruptcy trustee.
Discharge may be refused (Bankruptcy Law Articles 252.1.11 and 37.1) in the case of a change of residence made without the approval of the bankruptcy trustee.

3.    A decision was made on the same day that the day of decision of commencement of the bankruptcy procedure that postal articles addressed to the bankrupt shall be delivered to the bankruptcy trustee. The bankruptcy trustee shall examine the contents of the postal articles delivered to the bankruptcy trustee to determine if they are part or not of the bankruptcy estate (Bankruptcy Law Articles 81, 82).

4.    Hiding, destroying or making disguised transfers properties which belong to the bankruptcy estate, or disposing of the same to the detriment of the creditors may be punished as fraudulent bankruptcy (Bankruptcy Law Article 265) or the discharge may be refused (Bankruptcy Law Article 252.1.1). Hiding, falsifying or modifying the books and documents which relate to the situation of the properties of the bankrupt may be treated similarly (Bankruptcy Law Articles 270 and 252.1.6).

               April 24, 2014

               Tokyo District Court 20th Civil Chamber Consensus F