# Exhibit 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, <br><br> *Defendants*. | Case No. 1:14-cv-01437 <br><br> Hon. Gary Feinerman <br><br> Magistrate Judge Susan Cox |

## PARTIAL CLASS ACTION SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement" or "Settlement Agreement") is entered into by and among (i) Gregory Greene ("Greene"); (ii) Joseph Lack ("Lack"); (iii) the Settlement Class (as defined herein and together with Green and Lack the "Plaintiffs"); (iv) Defendant Jed McCaleb; (v) Defendant Gonzague Gay-Bouchery (McCaleb and Gay-Bouchery are collectively referred to herein as "Settling Defendants" unless otherwise stated)l and (vi) Sunlot Holdings Limited ("Sunlot"). The Plaintiffs, Sunlot, and the Settling Defendants are collectively referred to herein as the "Parties." This Settlement Agreement is intended by the Parties to fully, finally and forever resolve, discharge and settle the Released Claims (as the term is defined below), in

exchange for and subject to the terms and conditions of this Settlement Agreement, and the final approval of the Court.

## RECITALS

A.      WHEREAS, on February 27, 2014, Plaintiff Gregory Greene filed this putative class action in the United States District Court for the Northern District of Illinois ("the Court") against Mt. Gox KK, MtGox Inc., Tibanne KK, and Mark Karpeles, alleging, *inter alia*, consumer and common law fraud, negligence, breach of fiduciary duty, breach of contract, unjust enrichment, trespass to chattels, and conversion. (Dkt. 1.) Through his Complaint, Plaintiff Greene also sought a temporary restraining order ("TRO"), a preliminary injunction, a permanent injunction, an accounting, and a constructive trust over Class members' property. (Dkt. 1 ¶¶ 107–124, 139–154.)

B.      WHEREAS, on February 28, 2014, Mt. Gox KK sought bankruptcy protection in Japan, and filed a Civil Rehabilitation Proceeding Commencement Application in the Tokyo District Court.

C.      WHEREAS, on March 4, 2014, Plaintiff Greene filed a Motion for Temporary Restraining Order and Preliminary Injunction, seeking, *inter alia*, a freeze of Mt.Gox Inc., Mt. Gox KK, Tibanne KK, and Mark Karpeles'' assets in the United States, and expedited discovery with respect to those assets. (Dkt. 8.)

D.      WHEREAS Mt. Gox KK filed an "emergency" Chapter 15 Petition in the Bankruptcy Court for the Northern District of Texas on March 9, 2014, and obtained a provisional stay of litigation against it. *In re MtGox Co., Ltd.*, No. 14-31229-sgj15 (Dkt. 13) (Bankr. N.D. Tex.).

E.     WHEREAS, on March 11, 2014, the Court held a hearing on Plaintiff Greene's

motion for a TRO. At the hearing (i) the Court accepted the Northern District of Texas's

provisional stay with respect to Mt. Gox KK and stayed all proceedings against it, (ii) refused to

stay the case as against the remaining, non-debtor defendants, and (iii) granted in part Plaintiff

Greene's motion, entering a TRO freezing the U.S. assets of Mt. Gox Inc., Tibanne KK, and

Mark Karpeles, and permitting expedited discovery into those assets. (Dkt. 33.)

F.     WHEREAS, following the issuance of the TRO, Plaintiffs' counsel propounded

discovery—including interrogatories, requests for production, requests for admission, and

notices of depositions—on all defendants (except for Mt. Gox KK, pursuant to the provisional

stay), seeking information about their U.S. assets. Plaintiffs' counsel also served several third

parties with subpoenas, including different manufacturers/distributors of Bitcoin mining

equipment, Bitcoin "mining pools," among other individuals and entities.

G.     WHEREAS, through the third-party subpoenas, Plaintiffs' counsel uncovered

substantive information related to defendants' assets, operations, and the collapse of the Mt. Gox

exchange. Likewise, Plaintiffs' counsel additionally hired and utilized private asset investigators

to track the defendants' U.S. assets, and additionally retained an expert in distributed systems

and virtual currencies to investigate and analyze the technical issues that purportedly caused the

loss of bitcoins and fiat currency at Mt. Gox.

H.     WHEREAS, on March 14, 2014, Plaintiff Greene filed his First Amended

Complaint, adding Mizuho Bank Ltd. ("Mizuho"), Jed McCaleb, Mt. Gox North America, Inc.

("Mt. Gox NA"), Gonzague Gay-Bouchery, and John Does as defendants, and adding Joseph

Lack as a named Plaintiff. (Dkt. 36.) The First Amended Complaint added causes of action for

civil conspiracy, breach of express trust, tortious interference with contract, and violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. (Dkt. 36 ¶ 186–213.)

I.      WHEREAS, on March 14, 2014, a putative class action was filed in the Superior Court of Ontario against MtGox Inc., Mt. Gox KK, Tibanne KK, Mt. Gox NA, Mizuho, Mark Karpeles, and Jed McCaleb (the "Canadian Action") regarding the same subject matter as this litigation and alleging, *inter alia*, causes of action for negligence, breach of contract, breach of trust, breach of fiduciary duty, fraudulent misrepresentation, conversion, and unjust enrichment. *Joyce v. MtGox Inc.* No. 1cv-14-500253-00CP (Can. Ont. Sup. Ct. J.).

J.      WHEREAS, on March 17, 2014, Plaintiffs filed their Corrected First Amended Class Action Complaint, which made explicit that the case remained stay as to Mt. Gox KK and added additional factual support for Plaintiffs' claims. (Dkt. 37.)

K.      WHEREAS, at a status hearing on March 20, 2014, and on Plaintiffs' request, the Court extended the TRO until April 8, 2014 and granted partial relief from the TRO to allow Plaintiffs' investigators to trace the movement of the assets of MtGox, Inc., Tibanee KK, and Mark Karpeles, through the redistribution of certain bitcoins that had been "found" by the MtGox, Inc. or Mt. Gox KK. (Dkt. 38.)

L.      WHEREAS, on April 2, 2014, Plaintiffs filed a motion to "extend" the TRO—by effectively converting it into a preliminary injunction—pursuant to *H-D Michigan, LLC v. Hellenic Duty Free Shops, S.A.*, 694 F.3d 827 (7th Cir. 2012). (Dkt. 49.)

M.      WHEREAS, on April 4, 2014, attorneys filed appearances on behalf of defendants Mark Karpeles and Tibanne KK.

N.      WHEREAS, on April 7, 2014, the Court held a hearing on and ultimately granted Plaintiffs' motion to "extend" the TRO and, as such, converted the TRO into an interim

preliminary injunction. At that same hearing, counsel for Mr. Karpeles and Tibanne KK indicated their intent to contest jurisdiction and sufficiency of service.

O.     WHEREAS, after attempting service of the Complaint and Summons on Mr. Karpeles and Tibanne KK through the Hague Convention, by process server on Mt. Gox KK's U.S. subsidiaries (one of which was authorized to accept service on behalf of Mr. Karpeles), and by international mail and email, Plaintiffs filed their Motion to Approve Service by Alternative Means on April 7, 2014, seeking authorization to serve the operative Complaint and summons on Mr. Karpeles' and Tibanne KK's attorneys. (Dkt. 54.)

P.     WHEREAS, Plaintiffs filed their Motion for Preliminary Injunction on April 8, 2014, seeking, *inter alia*, a continued freeze (i.e., for the duration of this litigation) of defendants' assets located in the United States and continued expedited discovery into defendants' assets. (Dkt. 56.) That motion—34-pages in length—set forth the detailed factual findings of Plaintiffs' discovery efforts and their argument as to their likelihood of prevailing on each of their claims, and sought to preserve the status quo ante to ensure that Plaintiffs and the Class could ultimately recover should they prevail in the litigation.

Q.     WHEREAS, on April 14, 2014, attorneys filed appearances on behalf of defendants Jed McCaleb and Gonzague Gay-Bouchery. (Dkts. 62, 64.) Counsel for Mr. Gay-Bouchery also indicated his intent to contest the Court's jurisdiction and, potentially, Plaintiffs' Motion for Alternative Service.

R.     WHEREAS, on April 16, 2014, the Tokyo District Court dismissed Mt. Gox KK's petition for Civil Rehabilitation. Finding that "the drafting of a rehabilitation plan and its adoption or approval appear difficult," the Tokyo District court placed Mt. Gox KK into

provisional administration proceedings and appointed Nobuaki Kobayashi as Provisional

Administrator.

S.        WHEREAS without further intervention by its creditors and/or stakeholders, the

Japanese proceedings are likely to lead to the liquidation of the Mt. Gox Exchange, whereby

individual class members will have no other option than to file individual claims in the Tokyo

District Court and will stand to recover only insignificant, non-material percentages of their

investments of bitcoins and Fiat Currency that were lost once the Mt. Gox Exchange "went dark"

on February 24, 2014.

T.        WHEREAS, on April 22, 2014, the certain Parties, in consultation with Sunlot, an

investment group represented by Cooley LLC, attempted to resolve this matter through an arm's-

length mediation presided over by Hon. Wayne R. Andersen (Ret.) of JAMS. Through those

discussions and as described herein, the Parties discussed whether a sale—rather than

liquidation—of the Mt. Gox exchange might maximize Class members' ability to recover a

significant portion of their investments (i.e., rather than seeking a percentage share as individual

creditors of Mt. Gox's overall assets through a liquidation, as determined by the Japanese courts

and appointed Administrator) and gain an equity share in a "new" Mt. Gox.

U.        WHEREAS the plaintiffs in the Canadian Action have reached a class action

settlement upon substantially identical terms as the instant Settlement with the Settling

Defendants, which will be presented to the Superior Court of Ontario for approval in parallel

with this Action.

V.        WHEREAS the Settling Defendants have denied and continue to deny any

wrongdoing whatsoever and have denied and continue to deny that they have committed, or

threatened or attempted to commit, any wrongful act or violation of law or duty alleged in this

Action. Nonetheless, taking into account the uncertainty and risks inherent in any litigation, and considering the mutual benefits of the settlement structure discussed by certain of the Parties with Judge Andersen, the Settling Defendants have concluded that it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting from it shall not be construed as or deemed to be evidence of an admission or concession of liability or wrongdoing on the part of the Settling Defendants with respect to any claim of any fault, liability, wrongdoing, or damage whatsoever.

W.      WHEREAS, Plaintiffs Gregory Greene and Joseph Lack believe that the claims asserted in the Action against the Settling Defendants have merit and that they would have ultimately been successful in certifying the proposed Classes under Rule 23 and in prevailing on the merits at summary judgment or trial. Nonetheless, Plaintiffs and Class Counsel have performed considerable investigation and analysis since filing the Action, including obtaining information from counsel for the Settling Defendants about the Settling Defendants' involvement (or non-involvement) in the underlying facts, their potential liability and related issues, and recognize and acknowledge that Settling Defendants may raise factual and legal defenses in the Action that present a risk that Plaintiffs may not prevail. Plaintiffs and Class Counsel also recognize the expense and delay associated with continued prosecution of the Action against the Settling Defendants through class certification, trial, and any subsequent appeals. Plaintiffs and Class Counsel have also taken into account the uncertain outcome and risks of any litigation, especially in complex actions, as well as the difficulties inherent in such litigation. Therefore, Plaintiffs believe that it is desirable that the Released Claims be fully and finally compromised, settled, and resolved with prejudice, and barred pursuant to the terms set forth herein.

X.      WHEREAS, based on their evaluation, proposed Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to the proposed Settlement Class, and that it is in the best interests of the Settlement Class to settle the claims raised in the Action pursuant to the terms and provisions of this Agreement.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among Greene, Lack, the Settlement Class, and each of them, and Settling Defendants and Sunlot, by and through their respective undersigned counsel that, subject to final approval of the Court after a hearing or hearings as provided for in this Settlement Agreement, in consideration of the benefits flowing to the Parties from the Settlement Agreement set forth herein, that the Action and the Released Claims shall be finally and fully compromised, settled and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions of this Agreement.

## AGREEMENT

1.    **DEFINITIONS**.

As used in this Settlement Agreement, the following terms have the meanings specified below:

1.1      **"Action"** means *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437, pending in the United States District Court for the Northern District of Illinois.

1.2      **"Bitcoin"** means the digital currency and/or commodity mined from the "Bitcoin Network" and posted on the public ledger known as the "Block Chain." An individual unit of this currency and/or commodity shall be referred to herein as bitcoin (with a lowercase "b").

1.3      **"Class Counsel"** means lead class counsel Jay Edelson of Edelson PC.

8

1.4    **"Class Representatives"** means the named Plaintiffs in this Action, Gregory Greene and Joseph Lack.

1.5    **"Court"** means the United States District Court for the Northern District of Illinois, Judge Gary Feinerman or any judge who shall succeed him as the Judge in this Action, presiding.

1.6     **"Effective Date"** means the date ten (10) days after which all of the events and conditions specified in Paragraph 9.1 have been met and have occurred.

1.7    **"Fee Award"** means the amount of attorneys' fees and reimbursement of expenses awarded by the Court to Class Counsel.

1.8    **"Fiat Currency"** means money or official currency issued by the government of any country and deposited with or held by Mt. Gox.

1.9    **"Final"** means one (1) business day following the latest of the following events: (i) the date upon which the time expires for filing or noticing any appeal of the Court's Final Judgment approving the Settlement Agreement; (ii) if there is an appeal or appeals, other than an appeal or appeals solely with respect to the Fee Award, the date of completion, in a manner that finally affirms and leaves in place the Final Judgment without any material modification, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration or petitions for review and/or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); or (iii) the date of final dismissal of any appeal or the final dismissal of any proceeding on certiorari.

9

1.10    **"Final Approval Hearing"** means the hearing before the Court where the Parties will request the Final Judgment to be entered by the Court approving the Settlement Agreement, approving the Fee Award, and the incentive awards to the Class Representatives.

1.11    **"Final Judgment"** means the Final Judgment and Order to be entered by the Court approving the Settlement after the Final Approval Hearing.

1.12    **"Gay-Bouchery's Counsel"** means Daniel J. Fumagalli and Michael A. Eurich of Chuhak & Tecson, P.C.

1.13    **"Gonzague Gay-Bouchery"** means Defendant Gonzague Gay-Bouchery, an individual.

1.14    **"Japanese Bankruptcy Court"** means the Tokyo District Court, Twentieth Civil Division, Mr. Nobuaki Kobayashi as Trustee, or any person to be appointed trustee in his stead.

1.15    **"Jed McCaleb"** means Defendant Jed McCaleb, an individual and owner of twelve percent of Mt. Gox KK.

1.16    **"Mediator"** means Honorable Wayne R. Andersen (ret.).

1.17    **"McCaleb's Counsel"** means Stan Roman and Ethan Jacobs of Keller, Sloan, Roman & Holland LLP and David J. Bradford and Paul B. Rietema of Jenner & Block LLP.

1.18    **"Mt. Gox Exchange"** means the online Bitcoin marketplace located at www.mtgox.com where bitcoins can be bought, sold, or traded.

1.19    **"Mt. Gox Rehabilitation Plan"** means the plan for the purchase and rehabilitation of the entities controlling the Mt. Gox bitcoin exchange by Settling Defendants and Sunlot that will be presented to and approved by the Japanese Bankruptcy Court, that shall be consistent with this Agreement and incorporate the terms on the addendum attached hereto as

10

Exhibit A, and that shall apply those terms consistently to all affected Mt. Gox accountholders worldwide.

1.20 **"Notice"** means the notice of this proposed Class Action Settlement Agreement, Mt. Gox Rehabilitation Plan, and Final Approval Hearing, which is to be sent to Settlement Class substantially in the manner set forth in this Agreement, is consistent with the requirements of Due Process, and is substantially in the form of Exhibits B and C hereto.

1.21 **"Notice Date"** means the date by which the Notice Plan set forth in Paragraph 4.2 is complete, which shall be a date no later than twenty-eight (28) days after receipt of the Class List from the Japanese Bankruptcy Court.

1.22 **"Notice Plan"** means the proposed plan of disseminating notice to members of the Settlement Class of the proposed Settlement Agreement and of the Final Approval Hearing developed by the Settlement Administrator in consultation with the Parties.

1.23 **"Objection/Exclusion Deadline"** means the date by which a written objection to this Settlement Agreement or a request for exclusion submitted by a Person within the Settlement Class must be postmarked, which shall be designated as a date no later than forty-five (45) days after the Notice Date.

1.24 **"Parties"** means Plaintiffs Gregory Greene, Joseph Lack and Settling Defendants Jed McCaleb and Gonzague Gay-Bouchery, as well as Sunlot.

1.25 **"Person"** shall mean, without limitation, any individual, corporation, partnership, limited partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

11

1.26    **"Plaintiffs"** means Gregory Greene, Joseph Lack and the Settlement Class Members, collectively.

1.27    **"Preliminary Approval"** means the Court's certification of the Settlement Class for settlement purposes, preliminary approval of the Settlement Agreement, and approval of the form of the Notice and of the Notice Plan.

1.28    **"Released Claims"** means any and all actual, potential, filed, known or unknown, fixed or contingent, claimed or unclaimed, suspected or unsuspected, claims, demands, liabilities, rights, causes of action, contracts or agreements, extracontractual claims, damages (of every kind and nature), punitive, exemplary or multiplied damages, expenses, costs, attorneys' fees and obligations (including "Unknown Claims" as defined below), whether in law or in equity, accrued or unaccrued, direct, individual or representative, of every nature and description whatsoever, whether based on any federal, state, local, statutory or common law or any other law, rule or regulation, including the law of any jurisdiction outside the United States, against the Released Parties, or any of them, arising out of the facts, transactions, events, matters, occurrences, acts, disclosures, statements, misrepresentations, omissions or failures to act belonging to any and all Plaintiffs relating in any way to the Mt. Gox Exchange and Mt.Gox KK, MtGox, Inc., Tibanne KK or Mt. Gox NA, or any of their related individuals or entities, including without limitation all claims that were asserted or could have been asserted in the Action.

1.29    **"Released Parties"** means Settling Defendants Jed McCaleb and Gonzague Gay-Bouchery, as well as Sunlot, MTGOX INC., a Delaware corporation, Mt. Gox KK, a Japanese corporation, and Mt. Gox North America, Inc., a New York corporation, and any and all of their respective present or past heirs, executors, estates, administrators, predecessors, successors,

assigns, parents, subsidiaries, affiliates, associates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, employees, partners, principals, members, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations, officers, directors, other individuals or entities in which any of the Settling Defendants has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities. This definition specifically excludes: Tibanne KK, Mark Karpeles, and any and all financial, legal, or accounting firms who worked (or are working) with any of the defendants including the John Doe individuals or entities alleged in the Action, even if their names or identities are not known or have not been explicitly alleged, including—with the sole exceptions of, where applicable, the Released Parties—their respective present or past heirs, executors, estates, administrators, predecessors, successors, assigns, parents, subsidiaries, associates, employers, employees, agents, consultants, independent contractors, insurers, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, underwriters, shareholders, lenders, auditors, investment advisors, legal representatives, successors in interest, assigns and Persons, firms, trusts, corporations, officers, directors, other individuals or entities in which any of the such Persons has a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities.

1.30  **"Releasing Parties"** means Plaintiffs; those Settlement Class Members who do not opt out of the Settlement Class (whether or not such members submit claims); to the extent the Settlement Class Member is not an individual, all of its present, former, and future direct and indirect parent companies, affiliates, subsidiaries, divisions, agents, franchisees, successors,

predecessors-in-interest, and all of the aforementioned's present, former, and future officers, directors, employees, shareholders, attorneys, agents, independent contractors; and, to the extent the Settlement Class Member is an individual, any present, former, and future spouses, as well as the present, former, and future heirs, executors, administrators, representatives, agents, attorneys, partners, successors, predecessors-in-interest, and assigns of each of them.

1.31   **"Settlement Agreement" or "Agreement"** means the settlement contemplated by this Settlement Agreement.

1.32   **"Settlement Administration Expenses"** means the expenses incurred by the Settlement Administrator in providing Notice to and processing requests for information by the Settlement Class, as well as any costs incurred in sending the CAFA notices described in Paragraph 4.2(g) below, with such expenses to be paid by Sunlot as part of the Mt. Gox Rehabilitation Plan.

1.33   **"Settlement Administrator"** means Epiq Systems, Inc., selected by the Parties and approved by the Court to oversee the distribution of Notice to the Settlement Class as set forth in this Settlement Agreement.

1.34   **"Settlement Benefit"** means the benefits a Settlement Class Member may receive pursuant to this Settlement Agreement.

1.35   **"Settlement Class"** means all Persons in the United States and its territories who had bitcoins or Fiat Currency stored with the Mt. Gox Exchange on February 24, 2014. Excluded from the class are (1) MTGOX, Inc., Mt. Gox KK, Tibanne KK, Mt. Gox North America, Inc., Mizuho Bank, Ltd., Mark Karpeles, and any entity in which their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate

family, (3) Persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims, and (5) the Settling Defendants.

1.36    **"Settlement Class Member" or "Class Member"** means a Person who falls within the definition of the Settlement Class as set forth above and who has not submitted a valid request for exclusion.

1.37    **"Settling Defendants"** means Jed McCaleb and Gonzague Gay-Bouchery.

1.38    **"Steering Committees"** means the following four of committees of attorneys working on behalf of the Settlement Class: (1) U.S. Committee led by Robert A. Clifford of The Clifford Law Offices and Bret Lusskin of Law Office of Bret Lusskin, Esq.; (2) the Bankruptcy Committee led by Scott Kitei of Honigman Miller Schwartz and Cohn LLP; (3) the Canadian Committee led by Theodore P. Charney of Charney Lawyers; and (4) the International Committee led by Scott A. Kamber of KamberLaw, LLC.

1.39    **"Sunlot"** means Sunlot Holdings Limited, a Cyprus registered corporation, composed of a consortium of investors including Brock Pierce (Crypto Currency Partners), William Quigley (Clearstone Venture Partners), and Matthew Roszak (SilkRoad Equity) who collectively manage over one billion dollars of invested capital and have access to significant cash and credit facilities through public and private investment vehicles.

1.40    **"Sunlot's Counsel"** means counsel to Silk Road Equity, Michael G. Rhodes of Cooley LLP.

1.41    **"Texas Bankruptcy Court"** means the Bankruptcy Court for the Northern District of Texas where the Chapter 15 petition in *In re MtGox Co., Ltd.*, No. 14-31229-sgj15 (Bankr. N.D. Tex.) is pending.

15

1.42   **"Unknown Claims"** means claims that could have been raised in the Action and that the Plaintiffs or any or all other Persons and entities whose claims are being released, or any of them, do not know or suspect to exist, which, if known by him, her or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, object or not to object to the Settlement.  Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights and benefits of § 1542 of the California Civil Code, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

Upon the Effective Date, Plaintiffs and all other Persons and entities whose claims are being released, also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any law of any state or territory of the United States, or principle of common law, or the law of any jurisdiction outside of the United States, which is similar, comparable or equivalent to § 1542 of the California Civil Code. Plaintiffs acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of this release, but that it is their intention to finally and forever to settle and release the Released Claims, notwithstanding any Unknown Claims they may have, as that term is defined in this Paragraph.

2.      **SETTLEMENT RELIEF**

2.1     **Mt. Gox Rehabilitation Plan.** Sunlot, with the consent of the Settling

Defendants, will present, support, seek and obtain approval of, and implement the Mt. Gox

Rehabilitation Plan to the Japanese Bankruptcy Court and, if appropriate, the Texas Bankruptcy

Court.

2.2     **Complete Cooperation.** On final and formal approval and acceptance of the Mt.

Gox Rehabilitation Plan by the Japanese Bankruptcy Court and, if appropriate, the Texas

Bankruptcy Court, Sunlot shall:

(a)     agree to investigate and seek civil prosecution of any Person other than

the Settling Defendants determined by the PricewaterhouseCoopers audit or other investigation

to be in any way involved in the lost or stolen Mt. Gox Exchange bitcoins and Fiat Currency;

(b)     return *pro rata* to the Mt. Gox Exchange wallets of the Settlement Class

and all other Persons with registered accounts on the Mt. Gox Exchange any bitcoins or Fiat

Currency recovered through their investigation or prosecution; and

(c)     along with the Settling Defendants, agree to provide Plaintiffs and Class

Counsel all reasonably necessarily information in their possession or control related to the

Action and Plaintiffs' claims against Tibanne KK, Mark Karpeles, Mizuho and any other Persons

now known as John Does in the Action, provided that the scope of the information Sunlot and

the Settling Defendants agree to provide is no broader than what would otherwise be

discoverable in the Action. Settling Defendants will provide the information described above,

upon written request delivered to their respective legal counsel. The obligation of Settling

Defendants to provide information described above shall terminate within one (1) year of the

Effective Date or upon the dismissal or other conclusion of the Action, whichever occurs earlier.

2.3     **Continued Prosecution of Action.** To avoid duplicate efforts and excess

recoveries:

(a)     Plaintiffs agree that where Sunlot seeks prosecution of identified Persons

as described in Paragraph 2.2(a), and where such prosecution would substantially overlap and be

duplicative of the continued prosecution of the Action, Plaintiffs will dismiss the Action against

the remaining defendants to allow Sunlot to move forward with its prosecution;

(b)     Settling Defendants agree that, consistent with their agreement to provide

Plaintiffs with certain information as described in Paragraph 2.2(c), they agree to provide Sunlot

with such information in furtherance of any Sunlot prosecution of identified Persons as described

in Paragraph 2.2(a); and

(c)     Plaintiffs agree that where some or all of the Action continues and results

in money going to the affected Mt. Gox accountholders, such money would be credited to the

Settlement Class members as if it was recovered and paid through the Mt. Gox Rehabilitation

Plan.

3.      **RELEASES**

3.1     The obligations incurred pursuant to this Settlement Agreement shall be a full and

final disposition of the Action and any and all Released Claims, as against all Released Parties.

3.2     Upon the Effective Date, the Releasing Parties, and each of them, shall be deemed

to have, and by operation of the Final Judgment shall have, fully, finally, and forever released,

relinquished and discharged all Released Claims against the Released Parties, and each of them.

4.      **NOTICE TO THE CLASS**

4.1     Upon entry of an order granting Preliminary Approval, the Settlement

Administrator shall cause the Notice describing the Final Approval Hearing and the terms of the

Settlement embodied in this Settlement Agreement be disseminated to potential Settlement Class Members as provided herein. Such notice shall comport with due process and be effectuated pursuant to a Notice Plan, the costs of which shall be Settlement Administration Expenses.

      4.2    The Notice Plan shall include:

      (a)    *Class List*.  Within no later than five (5) business days after the execution of this Settlement Agreement, the Parties shall request that the Japanese Bankruptcy Court release to the Settlement Administrator and Class Counsel a list of all names, telephone numbers, U.S. Mail Addresses, and email addresses associated with each member of the Settlement Class registered with the Mt. Gox Exchange.

      (b)    *Confidentiality of the Class List*.  The Settlement Administrator and Class Counsel shall keep the Class List and all personal information obtained therefrom, including the identity, email addresses, and U.S. mailing addresses strictly confidential. The Parties and the Settlement Administrator agree that the Class List may not be used for any purpose other than effectuating the terms of this Agreement or duties arising there under, including the provision of Class Notice in the manner set forth in this paragraph.

      (c)    *Direct Notice by Mail and Email.* The Settlement Administrator shall send Notice substantially in the form attached as Exhibit B to each address by First Class U.S. Mail and email no later than twenty-eight (28) days after receipt of the Class List from the Japanese Bankruptcy Court or on such other date determined by the Court.

      (d)    *Press release*. Within fourteen (14) days of the entry of an order granting Preliminary Approval, the Settlement Administrator or Class Counsel shall distribute a press release to local, national, and syndicated news organizations discussing the terms of the Settlement Agreement that in no way disparages the Settling Defendants. The press release shall

19

be subject to the prior approval of the Settling Defendants, to the extent Settling Defendants are referenced therein, and such approval shall not be unreasonably withheld.

(e) *Internet Publication Notice.* Within ten (10) days following the entry of the Preliminary Approval, Notice shall be provided on a website at www.[website].com, which shall be administered by the Settlement Administrator and shall be substantially in the form of Exhibit C hereto.

(f) *Publication Notice.* The Settlement Administrator shall supplement the direct notice through a one-time 1/8 page advertisement in *Investors Business Daily*.

(g) *CAFA Notice.* Pursuant to 28 U.S.C. § 1715, not later than ten (10) days after the Agreement is filed with the Court, the Settlement Administrator shall serve upon the Attorneys General of each U.S. State, the Attorney General of the United States, and other required government officials, notice of the proposed settlement, which shall include (1) a copy of the most recent complaint and all materials filed with the complaint or notice of how to electronically access such materials; (2) notice of all scheduled judicial hearings in the Action; (3) all proposed forms of Notice to the Settlement Class; and (4) a copy of this Agreement. To the extent known, the Defendants shall serve upon the above-referenced government official the names of class members who reside in each respective state and the share of the claims of such members to the entire settlement, or if not feasible, a reasonable estimate of the number of class members residing in each state and the estimated proportionate share of the claims of such members to the entire Agreement.

4.3    The Notice shall advise the Settlement Class of their rights, including the right to be excluded from, comment upon, and/or object to the Settlement Agreement or its terms. The Notice shall specify that any objection to the Settlement Agreement, and any papers submitted in

support of said objection, shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Person making an objection files notice of an intention to do so and at the same time (a) files copies of such papers he or she proposes to be submitted at the Final Approval Hearing with the Clerk of the Court, (b) files any objection through the Court's CM/ECF system if the objection is from a Settlement Class Member represented by counsel, and (c) sends copies of such papers by mail, hand, or overnight delivery service to Class Counsel, Sunlot's Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel.

      4.4    Any Settlement Class Member who intends to object to this Agreement must include in the written objection his/her/its name and address, include all arguments, citations, and evidence supporting the objection (including copies of any documents relied on), state that he or she is a Settlement Class Member, provide the username and email associated their Mt. Gox Exchange account, provide a signature, and provide a statement indicating whether the objector intends to appear at the Final Approval Hearing with or without counsel. Any Settlement Class Member who fails to timely file a written objection with the Court and notice of his or her intent to appear at the Final Approval Hearing in accordance with the terms of this section and as detailed in the Notice, and at the same time provide copies to designated counsel for the Parties, shall not be permitted to object to this Agreement at the Final Approval Hearing, and shall be foreclosed from seeking any review of this Agreement by appeal or other means and shall be deemed to have waived his, her, or its objections and be forever barred from making any such objections in the Action or any other action or proceeding. To be valid, the objection must be filed with the Court and sent to Class Counsel, Sunlot's Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel on or before the Objection/Exclusion Deadline approved by the Court and

specified in the Notice.

4.5     A Settlement Class Member may request to be excluded from the Settlement

Class by sending a written request postmarked on or before the Objection/Exclusion Deadline

approved by the Court and specified in the Notice. In order to exercise the right to be excluded, a

Class Member must timely send a written request for exclusion to the Settlement Administrator

providing his/her name and address, provide the username and email associated their Mt. Gox

Exchange account, the name and number of the case, and a statement that he/she/it wishes to be

excluded from the Settlement Class for purposes of this Settlement. A request to be excluded that

does not include all of this information, or that is sent to an address other than that designated in

the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s)

serving such a request shall be a member(s) of the Settlement Class and shall be bound as

Settlement Class Members by the Agreement, if approved. Any member of the Settlement Class

who validly elects to be excluded from this Agreement shall not:  (i) be bound by any orders or

the Final Judgment; (ii) be entitled to relief under this Settlement Agreement; (iii) gain any rights

by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.  The

request for exclusion must be personally signed by the Person requesting exclusion.  So-called

"mass" or "class" opt-outs shall not be allowed.

5.     **SETTLEMENT ADMINISTRATION**

5.1     The Settlement Administrator shall, under the supervision of the Court, administer

the Notice provided for by this Settlement Agreement in a rational, responsive, cost effective and

timely manner. The Settlement Administrator shall maintain reasonably detailed records of its

activities under this Settlement Agreement. The Settlement Administrator shall maintain all such

records as are required by applicable law in accordance with its normal business practices and

such records will be made available to Class Counsel and Defendants' Counsel upon request. The Settlement Administrator shall also provide reports and other information to the Court as the Court may require. The Settlement Administrator shall provide Class Counsel, Sunlot's Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel with information concerning Notice, administration and implementation of the Settlement Agreement, including testimony regarding the sufficiency of the Notice if necessary.

5.2     The Settlement Administrator shall receive exclusion requests and other requests from the Settlement Class and promptly provide Class Counsel, Sunlot's Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel with copies thereof upon receipt. If the Settlement Administrator receives any exclusion forms or other requests from Settlement Class Members after the deadline for the submission of such forms and requests, the Settlement Administrator shall promptly provide copies thereof to Class Counsel, Sunlot's Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel.

6.     **TERMINATION OF SETTLEMENT**

6.1     Subject to Paragraph 9 below, the Plaintiffs, on behalf of the Settlement Class, or Sunlot, shall have the right to terminate this Settlement Agreement by providing written notice of the election to do so ("Termination Notice") to all other Parties hereto within ten (10) days, of any of the following events: (i) the Japanese Bankruptcy Court's refusal to approve in an material respect the Mt. Gox Rehabilitation Plan; (ii) the Texas Bankruptcy's Court refusal to dismiss the proceedings, or recognize or approve the Mt. Gox Rehabilitation Plan implemented by the Japanese Bankruptcy Court; (iii) the Court's refusal to grant Preliminary Approval of this Agreement in any material respect; (iv) the Court's refusal to grant final approval of this Agreement in any material respect; (v) the Court's refusal to enter the Final Judgment in this

23

Action in any material respect; (vi) the date upon which the Final Judgment is modified or reversed in any material respect by the Court of Appeals or the Supreme Court; or (vii) the date upon which an Alternative Judgment, as defined in Paragraph 9.1 of this Agreement is modified or reversed in any material respect by the Court of Appeals or the Supreme Court.

7.      **PRELIMINARY APPROVAL ORDER AND FINAL APPROVAL ORDER**

7.1      Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Agreement together with its Exhibits to the Court and shall move the Court for Preliminary Approval of the settlement set forth in this Agreement, certification of the Settlement Class for settlement purposes only, appointment of Class Counsel and the Class Representatives, and entry of an order granting Preliminary Approval, which shall set a Final Approval Hearing date and approve the Notice for dissemination in accordance with the Notice Plan, substantially in the form Exhibits A and B hereto.

7.2      At the time of the submission of this Settlement Agreement to the Court as described above, Class Counsel shall request that, after Notice is given, the Court hold a Final Approval Hearing and approve the settlement of the Action as set forth herein.

7.3      After Notice is given, the Parties shall request and obtain from the Court a Final Judgment.  The Final Judgment will (among other things):

(a)      find that the Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Settlement Agreement, including all exhibits thereto;

(b)      approve the Settlement Agreement and the proposed settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Settlement Agreement according

to its terms and provisions; and declare the Settlement Agreement to be binding on, and have *res judicata* and preclusive effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and all other Settlement Class Members, Releasing Parties, and their heirs, executors and administrators, successors and assigns;

      (c)    find that the Notice and the Notice Plan implemented pursuant to the Settlement Agreement (1) constitute the best practicable notice under the circumstances, (2) constitute notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, their right to object to or exclude themselves from the proposed Agreement and to appear at the Final Approval Hearing, (3) are reasonable and constitute due, adequate and sufficient notice to all persons entitled to receive notice, and (4) meet all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution and the rules of the Court;

      (d)    find that the Class Representatives and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

      (e)    dismiss the Action as to the Settling Defendants and Released Parties (including all individual claims and Settlement Class claims presented thereby) on the merits and with prejudice, without fees or costs to any party except as provided in the Settlement Agreement and the Mt. Gox Rehabilitation Plan;

      (f)    incorporate the Release set forth above, make the Release effective as of the date of the Final Judgment, and forever discharge the Released Parties as set forth herein;

      (g)    permanently bar and enjoin all Settlement Class Members who have not been properly excluded from the Settlement Class from filing, commencing, prosecuting,

25

intervening in, or participating (as class members or otherwise) in, any lawsuit, bankruptcy proceeding, or other action in any jurisdiction based on the Released Claims;

(h)     authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and its implementing documents (including all exhibits to this Agreement) as (1) shall be consistent in all material respects with the Final Judgment, or (2) do not limit the rights of Settlement Class Members; and

(i)     without affecting the finality of the Final Judgment for purposes of appeal, retain jurisdiction as to all matters relating to administration, consummation, enforcement and interpretation of the Settlement Agreement and the Final Judgment, and for any other necessary purpose relating to the Settlement.

8.     **CLASS COUNSEL'S ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; INCENTIVE AWARD.**

8.1     Settling Defendants and Sunlot agree that Class Counsel shall be entitled to a Fee Award in an amount to be determined by the Court and to be paid out of the proceeds going to the Settlement Class at the same time and in the same manner as the relief afforded to the Settlement Class in this Agreement and the Mt. Gox Rehabilitation Plan. Defendants and Sunlot are not responsible for Class Counsel's allocation of the Fee Award amongst the Steering Committee or counsel.  Any of the Settling Defendants may appear and be heard with respect to Class Counsel's Fee Award petition.

9.      **CONDITIONS OF SETTLEMENT, EFFECT OF DISAPPROVAL,
        CANCELLATION OR TERMINATION.**

9.1     The Effective Date of this Settlement Agreement shall not occur unless and until

each of the following events occurs and shall be the date upon which the last (in time) of the

following events occurs:

(a)     This Agreement has been signed by Plaintiffs, Settling Defendants, Sunlot,

Class Counsel, McCaleb's Counsel, and Gay-Bouchery's Counsel;

(b)     The Court has entered the Preliminary Approval Order;

(c)     The Japanese Bankruptcy Court has finally and formally approved the Mt.

Gox Rehabilitation Plan and there are no further proceedings to review or challenge such

determinations;

(d)     The Texas Bankruptcy Court has approved or recognized the Japanese

Court's approval of the Mt. Gox Rehabilitation Plan, or dismissed the proceedings;

(e)     The Court has entered an order finally approving the Agreement,

following notice to the Settlement Class and a Final Approval Hearing, as provided in the

Federal Rules of Civil Procedure, and has entered the Final Judgment, or a judgment

substantially consistent with this Agreement; and

(f)     The Final Judgment has become Final, as defined above, or, in the event

that the Court enters an order and final judgment in a form other than that provided above

("Alternative Judgment") and that has the consent of the Parties, such Alternative Judgment

becomes Final.

9.2     If some or all of the conditions specified in Paragraph 9.1 are not met (for

example, and for the sake of clarity and not limitation only, the Japanese Bankruptcy Court does

not finally and formally approve the Mt. Gox Rehabilitation Plan), or in the event that this

27

Settlement Agreement is not approved by the Court, or the settlement set forth in this Agreement is terminated or fails to become effective in accordance with its terms, then this Settlement Agreement shall be canceled and terminated subject to Paragraph 9.3 unless Class Counsel, Sunlot's Counsel, McCaleb's Counsel and Gay-Bouchery's Counsel mutually agree in writing to proceed with this Agreement. If any Party is in material breach of the terms hereof, any other Party, provided that it is in substantial compliance with the terms of this Agreement, may terminate this Agreement on notice to all of the Settling Parties at any time prior to the Effective Date. Notwithstanding anything herein, the Parties agree that the Court's failure to approve, in whole or in part, the attorneys' fees payment to Class Counsel set forth in Paragraph 8.1 above shall not prevent the Agreement from becoming effective, nor shall it be grounds for termination.

      9.3     If this Agreement is terminated or fails to become effective for the reasons set forth in Paragraphs 6.1, 6.2, 9.1, or 9.2 above, the Parties shall be restored to their respective positions in the Action as of the date of the signing of this Agreement. In such event, any Final Judgment or other order entered by the Court in accordance with the terms of this Agreement shall be treated as vacated, *nunc pro tunc*, and the Parties shall be returned to the *status quo ante* with respect to the Action as if this Agreement had never been entered into, and no part of this Agreement may be used to establish any Settling Defendant's liability or wrongdoing or otherwise against any Settling Defendant.

      9.4     Settling Defendants believe that in addition to factual defenses to the claims raised in the Action, they each have valid challenges regarding the lack of proper service or jurisdiction (including, but not limited to lack of personal jurisdiction), as well as potential objections to certification of a class for purposes of litigation the merits of the Action. Settling

Defendants expressly retain their right to raise any argument or defense, including lack of proper service or jurisdiction, which is unaffected by this Agreement.

10. **MISCELLANEOUS PROVISIONS**

10.1    Upon the execution of this Agreement, all Parties agree that the Action (including any motions, discovery or other pleadings) shall be stayed and held in abeyance pending further order of the Court.

10.2    The Parties (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.  Class Counsel and Settling Defendants' Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Agreement.

10.3    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by Plaintiffs and the Settlement Class, and each or any of them, on the one hand, against the Released Parties, and each or any of the Released Parties, on the other hand. Accordingly, the Parties agree not to assert in any forum that the Action was brought by Plaintiffs or defended by Settling Defendants, or each or any of them, in bad faith or without a reasonable basis.

10.4    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby released.  The Parties have read and understand fully the above and foregoing agreement and have been fully advised as to

the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

10.5     Whether or not the Effective Date occurs or this Settlement Agreement is terminated, neither this Agreement nor the settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the settlement:

(a)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission, concession or evidence of, the validity of any Released Claims, the truth of any fact alleged by the Plaintiff, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee Award, or of any alleged wrongdoing, liability, negligence, or fault of the Released Parties, or any of them;

(b)     is, may be deemed, or shall be used, offered or received against the Settling Defendants, as an admission, concession or evidence of any fault, misrepresentation or omission with respect to any statement or written document approved or made by the Released Parties, or any of them;

(c)     is, may be deemed, or shall be used, offered or received against Plaintiffs or the Settlement Class, or each or any of them, as an admission, concession or evidence of, the infirmity or strength of any claims raised in the Action, the truth or falsity of any fact alleged by the Settling Defendants, or the availability or lack of availability of meritorious defenses to the claims raised in the Action;

(d)     is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal

or administrative proceeding in any court, administrative agency or other tribunal.  However, the settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Agreement.  However, if this Settlement Agreement is approved by the Court, any party or any of the Released Parties may file this Settlement Agreement and/or the Final Judgment in any action that may be brought against such party or parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

(e)     is, may be deemed, or shall be construed against Plaintiffs and the Settlement Class, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than or greater than that amount that could have or would have been recovered after trial; and

(f)     is, may be deemed, or shall be construed as or received in evidence as an admission or concession against Plaintiffs and the Settlement Class, or each and any of them, or against the Released Parties, or each or any of them, that any of Plaintiffs' claims are with or without merit or that damages recoverable in the Action would have exceeded or would have been less than any particular amount.

10.6     The headings used herein are used for the purpose of convenience only and are not meant to have legal effect.

10.7     The waiver by one party of any breach of this Agreement by any other party shall not be deemed as a waiver of any other prior or subsequent breaches of this Agreement.

10.8    All of the Exhibits to this Settlement Agreement are material and integral parts thereof and are fully incorporated herein by this reference.

10.9    This Agreement and its Exhibits set forth the entire agreement and understanding of the Parties with respect to the matters set forth herein, and supersede all prior negotiations, agreements, arrangements and undertakings with respect to the matters set forth herein.  No representations, warranties or inducements have been made to any party concerning this Settlement Agreement or its Exhibits other than the representations, warranties and covenants contained and memorialized in such documents.  This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

10.10    Except as otherwise provided herein, each Party shall bear its own costs.

10.11    Plaintiffs represents and warrants that they have not assigned any claim or right or interest therein as against the Released Parties to any other Person or party and that they are fully entitled to release the same.

10.12    Each counsel or other Person executing this Settlement Agreement, any of its Exhibits, or any related settlement documents on behalf of any party hereto hereby warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms.

10.13    This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement all exchange original signed counterparts.  A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

32

10.14   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto and the Released Parties.

10.15   The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement, and all Parties hereto submit to the jurisdiction of the Court solely for purposes of implementing and enforcing the settlement embodied in this Agreement.

10.16   This Settlement Agreement shall be governed by and construed in accordance with the laws of the State of Illinois.

10.17   This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arms' length negotiations among the Parties with the aid of a neutral mediator.  Whereas all Parties have contributed substantially and materially to the preparation of this Agreement, it shall not be construed more strictly against one party than another.

10.18   Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to the undersigned counsel:

[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGE FOLLOWS.]

IN WITNESS WHEREOF, the parties hereto have caused this Settlement Agreement to be executed by their duly authorized attorneys.

Dated: April 28, 2014

EDELSON P.C.

By _____

Jay Edelson
Attorneys for Plaintiffs Gregory Greene, Joseph Lack individually and as representatives of the Settlement Class

Dated: April 28, 2014

KELLER, SLOAN, ROMAN & HOLLAND LLP

By _____

Stan G. Roman (*Pro hac vice* to be filed)
Attorneys for Defendant Jed McCaleb

Dated: April 28, 2014

JENNER & BLOCK LLP

By _____

Paul B. Rietema
Attorneys for Defendant Jed McCaleb

34

Dated: April 28, 2014

CHUHAK & TECSON, P.C.

By _____

Daniel J. Fumagalli
Attorneys for Defendant Gonzague Gay-Bouchery

Dated: April 28, 2014

COOLEY LLP

By _____

Michael G. Rhodes (*Pro hac vice* to be filed)
Attorneys for non-party Silk Road Equity as manager
of Sunlot Holdings Limited

# Exhibit A

# Mt. Gox Rehabilitation Plan
## Addendum to Class Action Settlement Agreement

This Rehabilitation Plan ("Plan") is an addendum to the Class Action Settlement Agreement ("Agreement") dated April 28, 2014 by the Parties to that Agreement. This Plan shall be consistent with both the Agreement and be incorporated into the plan formally submitted to the Japanese bankruptcy court.

The Plan outlines the general structure of the rehabilitation plan with the goal of returning to Mt. Gox account holders Bitcoin and Fiat ("Customer Assets") held by Mt. Gox at the time that the exchange was shut down and taken over by the Japanese bankruptcy officials (the "Supervisor"), and an equitable restitution plan that seeks to make customers whole and compensate them for their losses incurred by the Mt. Gox Exchange.

Further, the Plan details the responsibilities of Sunlot Holdings Ltd. ("Sunlot") to manage implementation and execution of the Plan and the formation of a new bitcoin exchange ("New Gox").

Nothing herein shall be interpreted to provide the Mt. Gox Account Holders, by virtue of this agreement, will receive any preferential treatment over any other putative creditors, and the Supervisor shall be responsible for the resolution of any such claims brought by additional creditors who have come forward or may come forward.

Nothing herein shall prevent the Parties from agreeing to modify these or other terms to the extent required by the Supervisor, so long as any such modifications substantially further the purposes of this Plan and the Agreement, and that such changes are otherwise consistent with the goals of the Plan and the Agreement.

**Caveats and Pre-requisites**

1. Under this plan, the Supervisor shall appoint and compensate PwC (or equivalent alternative agreed by Sunlot, if reasonable terms can not be agreed with PwC) to provide an audit of customer accounts, customer assets, and provide an accounting report on how Customer Assets were stolen ("Audit"). Sunlot and Class Counsel shall oversee the Audit and ensuing report.

2. All past and current legal responsibilities are either settled or released through this process, and Sunlot and/or New Gox will be protected by the courts and such releases against any future claims against any liabilities incurred up until the time Sunlot assumes control over the current and remaining Mt. Gox assets and business and when New Gox is established.

3. As a result, Sunlot and New Gox shall be free and unencumbered by any claims or liabilities, with exception of its specified responsibilities and obligations with respect to the bitcoin and fiat to be paid to the appropriate Mt. Gox account holders to be verified by the Audit ("Mt. Gox Account Holders").

**Restitution Plan**

1. Sunlot will acquire all Mt Gox shares from Supervisor for 1000 JPY, and agree to all terms and stipulations as provided for in this Agreement.

2. Supervisor will deposit all Mt. Gox held bitcoin to Sunlot for redistribution to Mt. Gox Account Holders' *pro rata* per the PwC Audit, which Sunlot will make immediately available with no restrictions to customers.

3. Supervisor will deposit Mt. Gox held fiat, minus the Restitution Fund amount with Sunlot for immediate redistribution to Mt. Gox Account Holders, with no restrictions.

4. Supervisor will administer the Restitution Fund and make disbursements as per agreed schedule and approved expenses.

5. Sunlot will setup a Class Action Administrator or Trustee to represent Mt. Gox Account Holders' interests and hold any security interests, fiat, or bitcoin as needed by the Plan.

6. Equity-Entitlement Plan

   a. Sunlot/New Gox will establish a structure under which the Trustee/Administrator, for the benefit of the Mt. Gox Account Holders, is entitled to receive (i) *pro rata* cash payments equal to 16.5% of any dividends paid by Sunlot/New Gox to its stockholders and (ii) a *pro rata* share of the net proceeds received by the shareholders of Sunlot/New Gox equity securities in any good faith exit transaction (*i.e.*, any transaction in which a majority of the equity ownership of New Gox is exchanged for cash or other liquid assets) equal to the proceeds allocable to a holder of a 16.5% interest in Sunlot/New Gox's equity securities.

   b. This arrangement will be structured such that it does not involve the issuance of securities by Sunlot/New Gox or the Trustee/Administrator, and the Trustee/Administrator will have no participation in the management or operation of Sunlot/New Gox.

   c. In the event that Sunlot/New Gox conducts an initial public offering of its equity securities while this arrangement is in place, a Mt. Gox Account Holder shall, at his or her discretion, receive on a *pro rata* basis either common stock of Sunlot/New Gox representing in aggregate a 16.5% interest in Sunlot/New Gox's equity securities or the equivalent value (at the IPO price) in cash.

   d. Nothing will restrict the ability of Mt. Gox Account Holders from selling or transferring their interests (as described herein) to Sunlot/New Gox, or otherwise.

   e. All equity percentages described above will be based upon Sunlot/New Gox's initial capitalization table.

    f.   Sunlot/New Gox will be in a fiduciary relationship with Mt. Gox Account Holders, and shall have a fiduciary duty to act towards them on the same good faith basis as they act towards Sunlot/New Gox shareholders.

7. Mt. Gox Account Holders can convert any recovered funds between BTC and Fiat commission free. Any Fiat transmission fees will remain.

## Restitution Fund

1. In order to be eligible for payments from the Restitution Fund, or any other cash or equity based payments described herein, customers will need to go through level 2 KYC verification, including proof of identification, bitcoin wallet address verification, and bank account verification, as a natural person or legal entity.

2. Restitution Fund allocations will be *pro rata* for valid customer accounts as per the Audit.

3. These funds will be deposited into the respective Mt. Gox Account Holders' New Gox Accounts, on the *pro rata* agreed basis.

4. Restitution Funds will come from one of the following sources

    a.   Cash payments paid out to Restitution Fund

    b.   Proceeds from any Recovery Efforts less Recovery Holdback.

    c.   An approved buy-out as per buy-out schedule for accelerated pre-payment of remaining restitution fund

5. If a customer account remains unclaimed for six (6) months from the date of Agreement, unclaimed Customer Assets in that account will be transferred to Restitution Fund and the customer will be removed from *pro rata* payments. Accounts that are removed from fund will reduce top line balance of Restitution Fund.

## Recovery Commitments

1. Sunlot shall commit to use commercially reasonable best efforts, and the resources of the Restitution Fund, to recover Customer Assets through ongoing investigation and legal prosecution both in Japan and internationally (as necessary), including, for example, hiring investigators, lawyers, accountants, or any other entities or services that may increase the likelihood of recovering Customer Assets ("Recovery Efforts").

2. $10 million USD in fiat currency shall be allocated from current Mt. Gox fiat assets held by the Supervisor to provide upfront funding for the administration and recovery of former Mt. Gox bitcoin and fiat assets (the "Restitution Fund").

3. As an incentive and additional compensation, Sunlot shall retain an upside percentage in the amount of 10% of recovered Customer Assets ("Recovery Holdback") obtained through its recovery efforts, which will include claims against those accountable for customer losses.

### Pricing Model

For the purposes of establishing the size of the Restitution Fund and customer loss calculations, a bitcoin exchange rate of 1 BTC to $500 USD will be used. For conversion between USD and other Fiat currencies, the published exchange rates as of February 25, 2014 will be used.

All bitcoin and Fiat customer assets currently under the protection of the Tokyo District Court Civil Rehabilitation and Bankruptcy Proceedings will be valued in both BTC and Fiat for the purposes of establishing *pro rata* distributions.

### Customer Moving Accounts

Sunlot will operate New Gox in a Global Local Model, which means all accounts will come under the same global protection. Customers will be able to open accounts in any New Gox jurisdiction, subject to New Gox KYC requirements applicable for the respective jurisdictions. Customers will be able to transfer balances between New Gox jurisdictions.


**IN WITNESS WHEREOF**, each of the Parties hereto have caused this Plan to be executed on their behalf by their duly authorized representatives, all as of the date(s) set forth below.


SUNLOT HOLDINGS LTD.

Signature: _____

Printed Name:  John Betts

Title:  CEO    John Betts

Date: April 28, 2014

April 28, 2014

EDELSON PC

Signature: _____

Printed Name: _____  Jay Edelson

Title: _____  Managing Partner

Date: _____  April 28, 2014

Exhibit B

**IF YOU HAD BITCOINS OR GOVERNMENT CURRENCY STORED WITH MT. GOX ON FEBRUARY 24, 2014, A PARTIAL CLASS ACTION SETTLEMENT MAY AFFECT YOUR RIGHTS**

## NOTICE OF CLASS ACTION AND PROPOSED PARTIAL SETTLEMENT

A proposed class action settlement has been reached in a lawsuit related to the closure of Bitcoin Exchange Mt. Gox, which resulted in the loss of consumers' bitcoins and currency.

You are receiving this notice because you have been identified as being a possible Class Member. Your legal rights may be affected whether you act or don't act. Please read this notice carefully. Visit www.website.com to read the full notice and the settlement agreement.

### What is the Lawsuit About?

This lawsuit claims that defendants Mt. Gox KK, MtGox Inc., Tibanne KK, Mark Karpeles, Mizuho Bank Ltd., Jed McCaleb, Mt. Gox North America, Inc., and Gonzague Gay-Bouchery engaged in wrongdoing resulting in the collapse of Mt. Gox and its later filing for bankruptcy in Japan and the United States. Defendants McCaleb and Gay-Bouchery (the "Setting Defendants") have agreed to settle this case and the court has decided that the plaintiffs can represent a group or "class" of persons whose lost bitcoins and currency when Mt. Gox closed for purposes of this settlement. The case will continue against Tibanne KK, Mark Karpeles, Mizuho Bank Ltd and others found to have been responsible for the lost bitcoins and currency.

The Settling Defendants deny that they engaged in any wrongdoing or violated any law, and the Court has not determined who is right. Rather, the parties have agreed to settle the lawsuit in order to reopen Mt. Gox and provide compensation to those affected.

### Who is a Class Member?

You are a class member if you live in the United States and had bitcoins or government-issued currency stored with the Mt. Gox Exchange on February 24, 2014 when it stopped all transactions.

### What Do I Get From the Settlement?

Mt. Gox is set to be liquidated though bankruptcy in Japan. The Settlement requires the Settling Defendants, along with investment group Sunlot Holdings Limited, to take certain steps in an attempt to stop the liquidation and implement a reorganization plan that will: (1) provide for the return of proportional amounts of the 200,000 recovered bitcoins and government-issued currency to affected Mt. Gox account holders' wallets; (2) provide proceeds in proportional amounts from bitcoins or money obtained from further lawsuits; (3) provide proportional payments equivalent to 16.5% on any dividends paid or upon sale; and (4) in the event of an IPO 16.5% of the shares of common stock in the reorganized Mt. Gox (or the cash equivalent) will be distributed in proportion to the amounts lost. Settling Defendants will also cooperate with the investigation into those responsible.

The Settlement and reorganization plan are available at www.website.com.

### What are My Other Options?

You will be a member of the Class unless you exclude yourself from the settlement. If you do not wish to be a member of the Class, you may exclude yourself by mailing a valid request for exclusion to the Settlement Administrator, and it must be postmarked no later than **[Objection/Exclusion Deadline]**. Be sure to include your name and address, provide the username and email associated with your Mt. Gox Exchange account, and a statement that you wish to be excluded from

the Class in *Greene et al v. MTGOX, Inc. et al*, Case No. 14-cv-01437. If you choose to exclude yourself, you give up your right to object to the settlement, but retain any rights you may currently have to sue the settling defendants and released Mt. Gox entities over the legal issues in the lawsuit.

You and/or your lawyer have the right to appear before the Court and object to the proposed settlement. Objecting is telling the Court you don't like something about the settlement. You can object ONLY if you stay in the Class. If you exclude yourself, you have no basis to object because the case no longer affects you. Your written objection must be filed with the Court referencing Case No. 14-cv-01437 and sent by prepaid first class U.S. mail to the attorneys for all parties to the lawsuit and postmarked no later than **[Objection/Exclusion Deadline]**. Specific instructions about how to object to, or exclude yourself from, the Settlement are available at www. [website].com.

If you do nothing you will be in the Class, and if the Court approves the Settlement, you will also be bound by all orders and judgments of the Court. If approved, your claim relating to the lost bitcoin and fiat currency that are the subject of this case against the Settling Defendants and released Mt. Gox entities, will be fully and finally resolved and released.

### Who Represents Me?

The Court has appointed a team of lawyers that brought the suit, lead by Jay Edelson of Edelson PC, to represent the class: These attorneys are referred to as Class Counsel. If you want to be represented by your own lawyer in this case, you may hire one at your expense.

At the hearing to determine the fairness of the settlement, Class Counsel will ask the Court for attorneys' fees and expenses to be paid out of the proceeds going to the Settlement Class for investigating the facts, litigating the case, and negotiating the settlement. They will request that whatever fees the Court awards be paid at the same time and in the same manner as the relief afforded to the Settlement Class in this Agreement and the Mt. Gox reorganization plan.

### When will the Court Consider the Proposed Settlement?

The Court will hold the Final Approval Hearing to determine the fairness of the settlement at **[time]** on **[date]** at the Everett McKinley Dirksen U.S. Courthouse, Room 2125, 219 S. Dearborn St., Chicago, IL 60604 before Judge Gary Feinerman. At that hearing, the Court will hear any objections concerning the fairness of the settlement that have been properly raised, as set forth above. The hearing may be postponed to a different date or time without notice. You are not required to come to this hearing.

### How Do I Get More Information?

This notice is intended only as a summary of the lawsuit and proposed settlement. It is not a complete statement of the lawsuit or the proposed settlement. For more information about the proposed settlement and a copy of the full Notice go to www. website.com, contact the Settlement Administrator at [toll free #] or [address]or call Class Counsel at 1-866-354-3015.

By Order of the Court Dated: [Date]

Exhibit C

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

# If you had bitcoins or government currency stored with Mt. Gox on February 24, 2014, a partial class action settlement may affect your rights.

*A Federal Court authorized this notice. You are <u>not</u> being sued. This is <u>not</u> a solicitation from a lawyer.*

- A partial settlement of a class action lawsuit has been reached related to the closure of Bitcoin digital currency exchange Mt. Gox and resulting loss of consumers' bitcoins and currency. The lawsuit is against defendants Mt. Gox KK, MtGox Inc., Tibanne KK, Mark Karpeles, Mizuho Bank Ltd., Jed McCaleb, Mt. Gox North America, Inc., and Gonzague Gay-Bouchery, who plaintiffs claim engaged in wrongdoing resulting in the collapse of Mt. Gox and its later filing for bankruptcy in Japan and the United States. A proposed Settlement has been reached with Jed McCaleb and Gonzague Gay-Bouchery (the "Settling Defendants"), who deny that they engaged in any wrongdoing.

- You are included in the settlement if you live in the United States and had bitcoins or government-issued currency stored with the Mt. Gox Exchange on February 24, 2014 when it stopped all transactions.

- Mt. Gox is set to be liquidated though bankruptcy in Japan. The Settlement requires the Settling Defendants, along with investment group Sunlot Holdings Limited, to take certain steps in an attempt to stop the liquidation and implement a reorganization plan that will: (1) provide for the return of proportional amounts of the 200,000 recovered bitcoins and government-issued currency to affected Mt. Gox account holders' wallets; (2) provide proceeds in proportional amounts from bitcoins or money obtained from further lawsuits; (3) provide proportional payments equivalent to 16.5% on any dividends paid or upon sale; and (4) in the event of an IPO 16.5% of the shares of common stock in the reorganized Mt. Gox (or the cash equivalent) will be distributed in proportion to the amounts lost. Settling Defendants will also cooperate with the investigation into those responsible.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS PARTIAL SETTLEMENT: | |
|---|---|
| **DO NOTHING** | By doing nothing, you automatically receive the benefits of the Settlement with the Settling Defendants resulting from the reorganization of Mt. Gox. But, you give up any rights to separately sue the Settling Defendants and related parties about the legal claims that were brought or could have been brought in this lawsuit. |
| **ASK TO BE EXCLUDED FROM THE SETTLEMENT** | If you ask to be excluded from the Settlement with the Settling Defendants, you will keep any rights you have to separately sue the Settling Defendants at your own expense. |
| **OBJECT TO THE SETTLEMENT** | Write to the Court explaining why you don't like the partial Settlement with the Settling Defendants. |
| **GO TO THE SETTLEMENT HEARING** | Ask to speak in Court about the Settlement. |

These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

## BASIC INFORMATION

**1. Why was this Notice issued?**

A Court authorized this Notice to let you know about a proposed Settlement with certain Settling Defendants. You have legal rights and options that you may act on before the Court decides whether to approve the proposed Settlement. This Notice explains the lawsuit, the Settlement, and your legal rights.

Judge Gary Feinerman of the United States District Court for the Northern District of Illinois is overseeing this class action. The lawsuit is known as *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437. The people who sued are called the Plaintiffs. The companies and individuals they sued, Mt. Gox KK, MtGox Inc., Tibanne KK, Mark Karpeles, Mizuho Bank Ltd., Jed McCaleb, Mt. Gox North America, Inc., and Gonzague Gay-Bouchery, are called the Defendants. Jed McCaleb and Gonzague Gay-Bouchery have agreed to settle the lawsuit. The lawsuit is currently scheduled to proceed against Tibanne KK, Mark Karpeles, and others found to be responsible for the missing/stolen bitcoins and government currency.

**2. What is a class action and who is involved?**

In a class action, one or more people called "Class Representatives" (in this case, Gregory Greene and Joseph Lack) sue on behalf of a group of people who have similar claims. Together, these people are called a "Class" or "Class Members." After the Plaintiffs agreed to settle the case with the Settling Defendants, the Court recognized it as a case that should be treated as a class action for settlement purposes. In a class action, the court resolves the issues for all Class Members, except for those who exclude themselves.

## THE CLAIMS IN THE LAWSUIT AND THE PARTIAL SETTLEMENT

**3. What is the lawsuit about?**

Plaintiffs filed this lawsuit after Mt. Gox stopped all transactions and they were unable to access their bitcoins and government-issued currency held by Mt. Gox. Plaintiffs claim that Defendants breached their contracts—as well as their fiduciary duties and express trust agreements—by failing to safeguard and segregate Class members' bitcoins and government-issued currency being held by Mt. Gox as promised in Mt. Gox's Terms of Use. Plaintiffs also allege that by failing to implement industry-standard protocols to detect and prevent the improper access and misuse of exchange Class Members' bitcoins and government-issued currency held on Mt. Gox, Defendants breached the duty of care owed to Class Members.

Plaintiffs claim Defendants (1) committed for consumer fraud, common law fraud, civil conspiracy, and RICO violations by continuing to accept and deposit wire transfers into Mt. Gox until the exchange shut down, despite their knowledge that Class Members' funds would lost or stolen; (2) acted in together in causing the loss or theft of the bitcoins and government-issued currency of Class members; and (3) misrepresented to Class Members that they could securely trade and withdraw their bitcoins and government-issued currency from Mt. Gox, up until the day it closed. Mt. Gox has filed for bankruptcy in Japan and the United States, which stops the lawsuit from proceeding against it.

The Settling Defendants deny they violated any law. The Court has not decided who is right. Rather the Plaintiffs and Settling Defendants have agreed to settle this lawsuit.

More information about the lawsuit can be found in the "Court Documents" section of this website.

**4. Why is there a Settlement with Some Defendants?**

The Court has not decided whether Plaintiffs or the Settling Defendants should win this lawsuit. Instead, the Class Representative agreed to settle this case with the Settling Defendants in exchange for (a) an agreement with Settling Defendants, along with investment group Sunlot Holdings Limited, to present to Japanese Bankruptcy court a plan to stop the liquidation of Mt. Gox and implement a reorganization plan that will provide more to the members of the Settlement Class than they would have received through the Japanese Bankruptcy, along with the ability to potentially recoup all losses through the continued operation of the Mt. Gox bitcoin exchange. The Settling Defendants have also agreed to provide cooperation that will help Plaintiffs in their case against Tibanne KK, Mark Karpeles, Mizuho Bank Ltd, and others found to be responsible for the missing/stolen bitcoins and government currency.

## WHO IS INCLUDED IN THE PARTIAL SETTLEMENT

You need to determine whether you are affected by the proposed Settlement.

**5. Am I part of the partial Settlement?**

The Court decided that everyone who fits the following description is part of the Settlement Class: all people or entities in the United States and its territories, who had bitcoins or government-issued currency stored with the Mt. Gox Exchange on February 24, 2014.

However, the following people and entities are not included: (1) MTGOX, Inc., Mt. Gox KK, Tibanne KK, Mt. Gox North America, Inc., Mizuho Bank, Ltd., Mark Karpeles, and any entity in which their parent companies have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) Persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims, and (5) the Settling Defendants.

Mt. Gox has provided the names, telephone numbers, mailing addresses, and email addresses of those with affected Mt. Gox accounts. You may have been sent a summary notice of this partial settlement through the mail and email.

## THE SETTLEMENT WITH THE SETTLING DEFENDANTS

### 6. What does the Settlement provide?

The Settlement requires the Settling Defendants, along with investment group Sunlot Holdings Limited, to present to Japanese Bankruptcy court a plan to stop the liquidation of Mt. Gox and implement a reorganization plan that will:

- Hire PricewaterhouseCoopers to perform an accounting of Mt. Gox to determine the amounts lost by each affected Mt. Gox account holder and to further investigate the lost bitcoins and government-issued currency;

- Investigate and seek civil prosecution of anyone (excluding the Settling Defendants) found to be responsible for the missing/stolen bitcoins and government currency will continue here and in Japan. Settling Defendants have agreed to provide cooperation that will help the reorganized Mt. Gox in its case against those found to be responsible for the missing/stolen bitcoins and government currency;

- Return proportional amounts of 200,000 recovered bitcoins and government-issued currency to affected Mt. Gox account holders' wallets;

- Affected account holders will be provided proportional payments equivalent to 16.5% on any dividends paid or proportional payment of 16.5% of the proceeds upon sale; and

- Should the new reorganized Mt. Gox have an IPO, affected Mt. Gox account holders are entitled to a proportional share of 16.5% of the stock in the reorganized new Mt. Gox or the equivalent value (at the IPO price) in cash.

After investigating and prosecuting this action, Class Counsel believe that although the Settlement supporting the reorganization presents risk to the Settlement Class, that the Settlement Class will receive more through this settlement than if Mt. Gox is liquidated through the Japanese Bankruptcy Court. Class Counsel believes this is so because the Japanese Bankruptcy Court would use the 200,000 recovered bitcoins to pay all creditors of Mt. Gox, not just those who lost access to their bitcoins when Mt. Gox closed. Additionally, the distribution of whatever bitcoins remain would likely be substantially delayed by the Bankruptcy process. The Settlement also presents the opportunity for the Settlement Class to recoup more than they lost, which could never happen through liquidation. If the reorganization is not implemented, this Settlement will not take effect.

A copy of the Settlement Agreement, including the reorganization plan, is available in the "Court Documents" Section of the settlement website.

## THE LAWYERS REPRESENTING YOU

### 7. Do I have a lawyer in this case?

Yes, the Court has appointed Jay Edelson of Edelson PC as the lead attorney to represent you and other Class Members as Class Counsel. There are also the following four of committees of attorneys working on your behalf: (1) U.S. Committee led by Robert Clifford of the Clifford Law Offices and Bret Lusskin of Law Office of Bret Lusskin, Esq., (2) the Bankruptcy Committee led by Scott Kitei of Honigman Miller Schwartz and Cohn LLP; (3) the Canadian Committee led by Theodore P. Charney of Charney Lawyers; and (4) the International Committee led by Scott A. Kamber of KamberLaw, LLC.

### 8. Should I get my own lawyer?

You don't need to hire your own lawyer because Class Counsel is working on your behalf. But, if you want your own lawyer, you will have to pay that lawyer. For example, you can ask your lawyer to appear in Court for you if you want someone other than Class Counsel to represent you.

**9. How will the lawyers be paid?**

The Court will determine the proper amount of any attorneys' fees and expenses to award Class Counsel. Class Counsel will seek reimbursement of their fees and expenses in an amount to be determined by the Court and to be paid out of the proceeds going to the Settlement Class. They will request that whatever fees the Court awards be paid at the same time and in the same manner as the relief afforded to the Settlement Class in this Agreement and the Mt. Gox reorganization plan.

# YOUR RIGHTS AND OPTIONS

**11. What happens if I do nothing?**

By doing nothing, you are staying in partial Settlement. But, unless you exclude yourself, you won't be able to start a lawsuit or be part of any other lawsuit against the Settling Defendants or released Mt. Gox entities for the claims being resolved by this Settlement.

**12. What happens if I ask to be excluded?**

If you exclude yourself from the Settlement, you will keep your right to start your own lawsuit against the Settling Defendants and released Mt. Gox entities. You will not be legally bound by the Court's judgments related to the Settlement Class and Settling Defendants in this class action.

**13. How do I ask to be excluded?**

You can ask to be excluded from the Settlement. To do so, you must send a letter stating that you want to be excluded from the Settlement in *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437. Your letter must also include your name and address, provide the username and email associated your Mt. Gox Exchange account, and your signature. You must mail your exclusion request no later than **[objection / exclusion deadline]**, to:

Mt. Gox Settlement Administrator
PO Box 0000
City, ST 90210-0000

You can't exclude yourself on the phone or by fax or email.

**14. If I don't exclude myself, can I sue the Settling Defendants for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue the Settling Defendants and released Mt. Gox entities for the claims that were brought or could have been brought in this lawsuit and resolved by this Settlement and the reorganization of Mt. Gox.

**15. How do I object to the Settlement?**

If you're a Class Member, you can object to the Settlement if you don't like any part of it. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must file a letter or brief with the Court stating that you object to the Settlement in *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437. Your letter or brief must also: (1) identify all of the reasons for your objections (including citations and supporting evidence) and attach any materials you are relying on to make your objections; (2) your name and address, provide the username and email associated your Mt. Gox Exchange account; and (3) indicate whether you want to appear and speak at the final fairness hearing, with or without your own lawyer. Your objection and any supporting papers must be filed with the Court and mailed or delivered to Class Counsel, Sunlot's Counsel, McCaleb's Counsel and Gay-Bouchery's Counsel, at the following addresses, postmarked no later than **[Date], 2014.**

| | |
|---|---|
| **Court** | *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437<br>c/o Clerk of the Court<br>Everett McKinley Dirksen U.S. Courthouse<br>219 South Dearborn Street<br>Chicago, IL 60604 |
| **Class Counsel** | Jay Edelson<br>Edelson PC<br>Suite 1300<br>350 North LaSalle Street<br>Chicago, Illinois 60654 |
| **McCaleb's Counsel** | Stan Roman and Ethan Jacobs<br>Keller, Sloan, Roman & Holland LLP<br>555 Montgomery Street, 17th Floor<br>San Francisco, California 94111 |
| **Gay-Bouchery's Counsel** | Daniel J. Fumagalli<br>Michael Allen Eurich<br>Chuhak & Tecson, P.C.<br>30 South Wacker Drive, Suite 2600<br>Chicago, IL 60606 |
| **Sunlot's Counsel** | Michael G. Rhodes<br>Cooley LLP<br>101 California Street, 5th Floor<br>San Francisco, California 94111-5800 |

Class Counsel will file with the Court and post on the settlement website its request for attorneys' fees two weeks prior to [**objection/opt-out deadline**].

**16. What's the difference between objecting to the Settlement and excluding myself?**

Objecting is simply telling the Court that you don't like something about the Settlement. You can object to the Settlement only if you stay in the Class (i.e. don't exclude yourself from the Settlement). Excluding yourself is telling the Court that you don't want to be part of the Settlement. If you exclude yourself from the Settlement, you have no basis to object because the Settlement no longer affects you.

# THE COURT'S FAIRNESS HEARING

**17. When and where will the Court decide whether to approve the Settlement with Trifecta?**

The Court will hold the Fairness Hearing at __ a.m. on [**date**], 2014 at the Everett McKinley Dirksen U.S. Courthouse, Room 2125, 219 S. Dearborn St., Chicago, IL 60604 before Judge Gary Feinerman. The purpose of this hearing will be for the Court to determine whether to approve the Settlement with the Settling Defendants as fair, reasonable, adequate, and in the best interests of the Class. At that hearing, the Court will listen to any objections and arguments concerning the fairness of the Settlement. The hearing may be postponed to a different date or time without notice, so it is a good idea to check www.website.net or call 1-800-000-0000. If you timely objected to the Settlement and told the Court that you intend to appear and speak at the Fairness Hearing you will receive notice of any change in the date of the Fairness Hearing.

**18. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Court may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you filed and mailed your written objection on time, the Court will consider it. You may also pay another lawyer to attend, but you don't have to.

**19. May I speak at the hearing?**

Yes. You may ask the Court for permission to speak at the Fairness Hearing. To do so, you must include a statement in your letter or brief objecting to the Settlement saying that it is your "Notice of Intent to Appear in *Greene et al v. MTGOX, Inc. et al*, 14-cv-01437." You must also include your name, address, telephone number and signature as well as the name and address of

your lawyer, if one will be appearing for you. Your objection and notice of intent to appear must be filed with the Court and mailed to Class Counsel no later than **[date], 2014**.

## GETTING MORE INFORMATION

| **20. How do I get more information?** |
| --- |

Go to www.website.net for Court Documents and updated information about the lawsuit and the Settlement as it becomes available. You may also write to the Mt. Gox Settlement Administrator, PO Box 0000, City, ST 90210-0000 or call the Mt. Gox Settlement Administrator at [1-000-000-0000] or Class Counsel at 1-866-354-3015.