**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | [Hon. Gary Feinerman] |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | Magistrate Judge Susan Cox |
| *Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MIZUHO BANK, LTD.'S
MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ................................................................................................3

      A.    Mizuho Exclusively Provided Banking Services To Mt. Gox Users
           Located In the United States And Illinois................................................3

      B.    To Force An End To The Banking Relationship, Mizuho Implemented
           New Policies—Which Were Kept Secret From The Public—That
           Were Designed To Disrupt Mt. Gox's Business And Which Injured
           Mt. Gox's Illinois Users ..........................................................................4

      C.    As A Direct Consequence Of Mizuho's Misconduct, Mt. Gox Was
           Forced To Shut Down And Mt. Gox Users Lost Everything ...........................6

ARGUMENT ...........................................................................................................................6

I.     MIZUHO PURPOSEFULLY DIRECTED ITS TORTIOUS CONDUCT
       AT ILLINOIS ...........................................................................................................7

      A.    Plaintiffs Allege That Mizuho's Conduct Was Tortious
           And Intentional ........................................................................................7

      B.    Mizuho's Conduct Was Expressly Aimed At Illinois With Actual
           Knowledge That The Injuries Would Be Felt By Greene And Other
           Users in Illinois. ......................................................................................8

II.    PLAINTIFF GREENE'S INJURIES AROSE OUT OF MIZUHO'S
       ILLINOIS-RELATED CONDUCT ......................................................................12

II.    THIS COURT'S EXERCISE OF JURISDICTION OVER MIZUHO
       COMPORTS WITH NOTIONS OF FAIR PLAY AND
       SUBSTANTIAL JUSTICE ...................................................................................14

CONCLUSION .....................................................................................................................16

## TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,*
326 U.S. 310 (1945)..................................................................................14

**United States Circuit Court of Appeals Cases**

*Abad v. Bayer Corp.,*
563 F.3d 663 (7th Cir. 2009) ..................................................................14

*BPI Energy Holdings, Inc. v. IEC, LLC,*
664 F.3d 131 (7th Cir. 2011) ....................................................................8

*Felland v. Clifton,*
682 F.3d 665 (7th Cir. 2012) ................................................ 7, 8-9, 10, 11, 12, 14

*Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston*
*Metroplex, P.A.,* 623 F.3d 440 (7th Cir. 2010). ...........................................8, 12

*Neogen Corp. v. Neo Gen Screening, Inc.,*
282 F.3d 883 (6th Cir. 2002) ....................................................................3

*Nissan Motor Co. v. Nissan Computer Corp.,*
246 F.3d 675 (9th Cir. 2000) ..................................................................11

*Purdue Research Found. v. Sanofi–Synthelabo, S.A.,*
338 F.3d 773 (7th Cir. 2003) ....................................................................7

*Tamburo v. Dworkin,*
601 F.3d 693 (7th Cir. 2010) ..............................................6, 7, 8, 10, 12, 13, 15

**United States District Court Cases**

*City of Greenville, Ill. v. Syngenta Crop Prot., Inc.,*
830 F. Supp. 2d 550 (S.D. Ill. 2011)..........................................................15

*Dale v. Banque SCS Alliance S.A.,*
No. 02 CIV 3592, 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005)....................9

*Fletcher v. Doig,*
No. 13 C 3270, 2014 WL 4920238 (N.D. Ill. Sept. 30, 2014)........................14

*Horizon Matrix, LLC v. Whalehaven Capital Fund, Ltd.,*
No. 11 C 2655, 2012 WL 379601 (N.D. Ill. Feb. 3, 2012)..............................13

*Luna v. Shac, LLC*,
   No. C14-00607, 2014 WL 3421514 (N.D. Cal. July 14, 2014)......................................11

*Levin v. Posen*,
   No. 13 C 8102, 2015 WL 94230 (N.D. Ill. Jan. 6, 2015) ...........................................10, 15

*Marquette Bank v. Brown*,
   No. 13 C 2620, 2014 WL 1292694 (N.D. Ill. Mar. 31, 2014) ...........................................9

*Medallion Products, Inc. v. H.C.T.V., Inc.*,
   No. 06 C 2597, 2007 WL 3085913 (N.D. Ill. Oct. 18, 2007)...........................................11

*McCluskey v. Belford High Sch.*,
   795 F. Supp. 2d 608 (E.D. Mich. 2010)...........................................................................3

*Payton v. Kale Realty*,
   No. 13 C 8002, 2014 WL 4214917 (N.D. Ill. Aug. 26, 2014)...........................................10

*Peterson v. Islamic Republic of Iran*,
   No. 10 CIV 4518, 2013 WL 2246790 (S.D.N.Y. May 20, 2013)......................................9

*Primack v. Pearl B. Polto, Inc.*,
   649 F. Supp. 2d 884 (N.D. Ill. 2009) ..............................................................................12

*Telemedicine Solutions LLC v. WoundRight Technologies, LLC*,
   27 F. Supp. 3d 883 (N.D. Ill. 2014) .............................................................................8, 11

*Ulico Cas. Co. v. Fleet Nat. Bank*,
   257 F. Supp. 2d 142 (D.D.C. 2003) ..................................................................................9

*United Airlines, Inc. v. Zaman*,
   No. 14 C 9214, 2015 WL 2011720 (N.D. Ill. Apr. 30, 2015)...........................................8

*Valtech v. 18th Ave. Toys*,
   No. 14 C 134, 2015 WL 603854 (N.D. Ill. Feb. 12, 2015).........................................10, 14

**INTRODUCTION**

This lawsuit arises from the collapse of Mt. Gox, formerly the world's largest bitcoin exchange. As the Court well knows by now, when Mt. Gox eventually collapsed in February of 2014, hundreds of millions of dollars worth of its users' bitcoin and cash were lost. Although Defendant Mark Karpeles is the most notorious actor in the collapse, Defendant Mizuho Bank, Ltd. ("Mizuho")—Mt. Gox's exclusive banking partner for its United States users—is also culpable. Indeed, as set forth in the Complaint, beginning in 2013, Mizuho embarked on a campaign designed to make it impossible for Mt. Gox to do business with its users in the United States, so as to induce Mt. Gox into severing its business relationship with Mizuho. Perhaps the most destructive tactic used was to stop processing withdrawals for U.S. users, meaning that they could no longer withdraw money from their Mt. Gox accounts. Mizuho did this with the knowledge that if Mt. Gox could no longer honor user withdrawal requests, it could not continue to operate, and would be forced to find a different bank to service its U.S. users.

Unfortunately for Plaintiffs Gregory Greene and Joseph Lack (and the putative class they seek to represent), the damage inflicted by Mizuho was not limited to Mt. Gox. That's because Mizuho hid what it was doing from the public. And it did so, despite the fact that during this time it continued—quite incredibly—to accept deposits from U.S. users, even though it knew they would never see that money again. The reason: Mizuho got to collect a fee each time it accepted a deposit bound for Mt. Gox. In the end, and as shown herein, Mizuho's conduct contributed to Mt. Gox going out of business, causing all U.S. users to incur significant losses, including Plaintiff Greene (who resides in Illinois). Plaintiffs thus brought the instant putative class action alleging claims of unjust enrichment, fraud, and tortious interference with contract.

Mizuho has moved to dismiss, arguing that the Court lacks specific personal jurisdiction

over it.[1] In cases where tortious conduct is alleged, the Seventh Circuit's test for specific jurisdiction turns on whether the defendant "expressly aimed" its actions at the forum state and whether the injury arose from such conduct. Mizuho argues that this test isn't satisfied because (i) Plaintiffs have supposedly not alleged that it intentionally took any action aimed at injuring Mt. Gox users in Illinois, and (ii) their claims do not arise out of Mizuho's contacts with Illinois because the events giving rise to Plaintiffs' claims occurred in Japan. Both arguments fail.

First, Plaintiffs plainly allege that Mizuho is liable for intentional tortious conduct that targeted Mt. Gox users in the U.S. and was expressly aimed at Illinois, the State that it knew Mt. Gox users resided in and would necessarily feel the resultant injuries. Indeed, Plaintiffs' Complaint explains in detail that Mizuho implemented new banking policies (i.e. the termination of user withdrawals) that were specifically designed to interfere with contracts between Mt. Gox and its Illinois users, and fraudulently concealed such policies so as not to deter those users from depositing more money and paying Mizuho more related transaction fees. In the meantime, Mizuho continued to actively approve and accept (for a profit) wire deposit requests that were sent by Illinois users—requests which contained each user's Illinois address, thereby giving Mizuho actual knowledge of their residency. Thus, Mizuho's argument that Plaintiffs fail to identify intentional conduct aimed at users in Illinois simply ignores the facts and the pleadings.

Second, Mizuho's argument that Plaintiffs' claims do not "arise out of" its contacts with Illinois because the underlying events took place in Japan misunderstands the inquiry. For intentional torts, the relevant question is whether the tortious conduct that the defendant directed at the forum state caused the plaintiff's injury. Here, there can be no real dispute that Mizuho's

---

[1] Although Mizuho also argues that the Court lacks general jurisdiction over it, Plaintiffs have already made clear at the April 16, 2015 hearing that they are not pursuing a general jurisdiction theory. Thus, this brief does not address Mizuho's arguments on that point.

tortious conduct was the cause of Plaintiff Greene's and other Illinois users' injuries. As detailed in the Complaint, Mizuho's policies made it impossible for Mt. Gox to do business—eventually contributing to Mt. Gox's shutdown and bankruptcy—and as a result, Plaintiff Greene and other Illinois users lost access to the bitcoins and cash stored in their accounts. Further, and even before the shutdown and bankruptcy, Mizuho's fraudulent concealment of the fact that it would not allow U.S. withdrawals caused Illinois users who thereafter submitted deposit requests (like putative class member Anthony Motto) to lose all of the money they deposited.[2] These are certainly not random or attenuated injuries—they are the exact injuries that Mizuho intended its new policies to cause when it imposed and concealed its artificial policies in the first place. And the fact that the decision to implement those policies was made in Japan—instead of in Mizuho's branch office in downtown Chicago—is simply not relevant.

For these reasons, Mizuho's Motion to Dismiss should be denied.

## FACTUAL BACKGROUND

**A.      Mizuho Exclusively Provided Banking Services To Mt. Gox Users Located In the United States And Illinois.**

Mizuho is a Japanese bank that conducts business worldwide, including in the United States (where it has twelve offices) and this District (where it has a branch located in Chicago).[3] As Mt. Gox's international banking partner, Mizuho exclusively provided withdrawal and deposit services for the more than 30,000 Mt. Gox users located in the U.S. (including in

---

[2] Although Greene did not deposit money through Mizuho, other Illinois users did, such as putative class member Anthony P. Motto, whose specific experiences are discussed below. Class members testimony may be considered in analyzing a defendant's jurisdictional contacts. *See McCluskey v. Belford High Sch.*, 795 F. Supp. 2d 608 (E.D. Mich. 2010); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002).

[3] *See* Mizuho Bank "Overseas Offices" webpage (last accessed June 11, 2015) located at: http://www.mizuhobank.com/service/global/network/office/americas/index.html

Illinois).[4] (*See* Second Amended Complaint ["Compl."] Dkt. 146 ¶ 25.) This included: (i) approving and accepting international wire transfers of cash sent by users located in Illinois for deposit into their Mt. Gox accounts, and (ii) processing international wire withdrawals from Mt. Gox to the bank accounts of Illinois users. (*Id.* ¶¶ 7, 22.) Mizuho received a service fee from users on each transaction.[5] Mizuho likewise received (as a matter of course) the precise Illinois addresses of those users for whom it was sending and receiving money, as banking regulations require customer addresses to be included on all international wire transfers.[6]

**B.     To Force An End To The Banking Relationship, Mizuho Implemented New Policies—Which Were Kept Secret From The Public—That Were Designed To Disrupt Mt. Gox's Business And Which Injured Mt. Gox's Illinois Users.**

Beginning in 2013, Mizuho became increasingly concerned by Mt. Gox's growing transaction volumes amid reports that U.S. authorities were investigating Mt. Gox for business dealings related to money laundering and sought to end the parties' business relationship. (Compl. ¶¶ 26, 27.) However, rather than terminate the relationship outright (and owing in part or in whole to Japanese custom), Mizuho wanted Mt. Gox to be the one to officially sever the banking relationship, which it refused to do. (*Id.*) To pressure Mt. Gox into rethinking its decision, Mizuho implemented a series of new banking policies that were designed to frustrate Mt. Gox's business and disrupt its relationship and contracts with its customers. (*Id.* ¶ 28.) These

---

[4] As detailed in Mt. Gox's bankruptcy petition, approximately 30,000 out of Mt. Gox's 80,000 identified users were located in the U.S. *See In re: MtGox Co., Ltd.*, Case No. 14-31229-sgj-15 (Bankr. N.D. Tex.), Declaration of Kobayashi in Support of Petition for Recognition, Dkt. 127 at ¶ 24 ("[] I currently have information on the location of approximately 80,000 customers…[o]f that amount, [] approximately 30,701 customers are located in the United States".) A true and accurate excerpt is attached as Exhibit A.

[5] *See* Mizuho Fee Schedule, Dkt. 57-24.

[6] *See e.g.*, U.S. Bank Secrecy Act, 31 CFR 103.33(g)(1). U.S. banks (including the bank used by Motto) likewise transmit the address of the sender on wire transfers as a matter of policy. *See* JP Morgan Global Payments Guide, pp. 78 (describing U.S. payment formatting rules), located at: https://www.jpmorgan.com/pages/cib/treasury-services/global-payments-guide. (Last accessed June 11, 2015.) A true and accurate copy of the guide is attached hereto as Exhibit B.

policies included: (i) drastically raising its banking fees; (ii) limiting the number and amount of withdrawals that it would process, (iii) removing Mt. Gox's access to automated processes and requiring it to submit user withdrawal requests manually (i.e. by paper), and (iv) refusing to process certain wire requests. (*Id.*) In or around mid-2013, Mizuho stopped processing international wire withdrawals altogether, leaving U.S. users without any means of withdrawing money from their accounts. (Compl. ¶ 2, 29.) Nevertheless, so as to maintain public appearances and avoid drawing further scrutiny (as well as to continue profiting from the deposit fees that it collected), Mizuho continued to accept user deposits into the Exchange. (*Id.* ¶¶ 31, 32.)

Further, Mizuho actively concealed its new policies from the public. It prohibited Mt. Gox from revealing that it had terminated withdrawals, instructed its own employees not to reveal its new policies, and knowingly stayed silent while Mt. Gox falsely assured users that withdrawals issues were temporary and being addressed. (*Id.* ¶¶ 35, 36, 123.) Mizuho did so because it knew that if U.S. users found out about its new policies, they would no longer continue making deposits (and paying Mizuho's transaction fees), or worse, that it would be publicly viewed as contributing to Mt. Gox's problems. (*Id.* ¶¶ 122, 123.) By accepting deposits while concealing the above, Mizuho directly contributed to the misplaced belief that Mt. Gox was operating properly and users would still be able to access their funds. (*Id.* ¶ 125.)

Mizuho's new banking policies—and its active concealment of them—directly affected (and injured) Mt. Gox users located in the U.S. and in Illinois. Class member Anthony Motto ("Motto"), for instance, deposited into Mt. Gox after Mizuho had secretly terminated withdrawals. (*See* Declaration of Anthony P. Motto [Motto Decl."] attached hereto as Exhibit C.) On February 15, 2014, Motto wired $1,000 directly to Mizuho from his Chase bank account in Illinois. (*Id.* ¶ 4.) His wire request designated Mt. Gox as the beneficiary, Mizuho as the

beneficiary's bank, and included his name and home address. (*Id.* ¶ 6; *see also* FN 6 *supra*.) Though Motto received confirmation that Mizuho had received his deposit, he was never able to access his deposited funds. (*Id.* ¶¶ 7, 8.) Plaintiff Gregory Greene (another Illinois resident) was likewise injured by Mizuho's interference with Mt. Gox's business, as he was unable to withdraw the $25,000 in bitcoins that were stored in his account before Mt. Gox shut down. (Compl. ¶ 54.) Had Mizuho come clean about its banking policies and plan to disrupt Mt. Gox's business, Plaintiff Greene could have taken steps to withdraw his bitcoins from Mt. Gox before it went bankrupt, as bitcoin withdrawals were possible until early February 2014. (*Id.* ¶¶ 37, 55.)

## C. As A Direct Consequence Of Mizuho's Misconduct, Mt. Gox Was Forced To Shut Down And Mt. Gox Users Lost Everything.

By the end of February 2014, Mt. Gox could no longer stay in business (due to Mizuho's coercive banking policies and other internal factors) and was forced to shut down, taking with it all user assets that had been stored on its servers. (*Id.* ¶¶ 39, 106.) Accordingly, Plaintiffs Greene and Joseph Lack (a California resident) filed suit on behalf of themselves and other users in the United States that had lost money or bitcoins when Mt. Gox shut down. (Dkt. 146.) In their Complaint, Plaintiffs allege that Mizuho tortiously interfered with their contracts with Mt. Gox— which promised users the ability to freely buy, sell, trade, and withdraw their bitcoins and cash— by imposing the coercive policies described above. (*Id.* ¶¶ 100-108.) Plaintiffs further allege that Mizuho fraudulently concealed material facts from Mt. Gox users (i.e. that it had stopped providing withdrawals and users would be unable to access their deposited funds) and otherwise contributed to user misapprehension by continuing to accept deposits. (*Id.* ¶¶ 117-128.)

## ARGUMENT

Where the issue of personal jurisdiction is raised by a motion to dismiss and decided on the basis of written materials, the plaintiff has the burden of making a *prima facie* case of

jurisdictional facts. *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010). Jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by affidavits or exhibits. *Purdue Research Found. v. Sanofi–Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The Court must "take as true all well-pleaded facts alleged in the complaint and resolve any factual disputes in the affidavits in favor of the plaintiff." *Id.* To establish that specific personal jurisdiction is appropriate, the plaintiff must show that (1) the defendant has purposefully directed its activities at the forum state, (2) the alleged injury arises out of the defendant's forum-related activities, and (3) traditional notions of fair play and substantial justice are not offended. *Tamburo*, 601 F.3d at 702. As explained below, each element is satisfied here and the Court has specific personal jurisdiction over Mizuho for its alleged tortious conduct.

## I.  MIZUHO PURPOSEFULLY DIRECTED ITS TORTIOUS CONDUCT AT ILLINOIS.

Where an intentional tort is alleged, the purposeful-direction inquiry "focuses on whether the conduct underlying the claims was purposefully directed at the forum state." *Tamburo*, 601 F.3d at 702. The Seventh Circuit has established a three-part inquiry, known as the "express aiming" test, to determine whether the conduct was "purposefully directed" at the forum state. To satisfy the test, the plaintiff must show that: (1) the defendant is accused of intentional conduct (or intentional and allegedly tortious conduct), (2) that is expressly aimed at the forum state, (3) with the defendant's knowledge that the effects would be felt—i.e., that plaintiff would be injured—in the forum state. *Felland v. Clifton,* 682 F.3d 665, 674-75 (7th Cir. 2012). As explained below, Plaintiffs readily satisfy all three elements of the express aiming test.

## A.  Plaintiffs Allege That Mizuho's Conduct Was Tortious And Intentional.

The first element—that the defendant is accused of intentional and allegedly tortious conduct—is not contested, but nonetheless, is easily satisfied by Plaintiffs' allegations that

7

Mizuho intentionally interfered with their contracts with Mt. Gox and fraudulently concealed its misconduct from users and the public. Both tortious interference with contract and fraudulent concealment are considered to be intentional torts. *See, e.g., United Airlines, Inc. v. Zaman*, 2015 WL 2011720, at *7 (N.D. Ill. Apr. 30, 2015) (finding tortious interference claim to be an "intentional tort claim"); *BPI Energy Holdings, Inc. v. IEC, LLC*, 664 F.3d 131, 138 (7th Cir. 2011) ("fraud is an intentional tort"); *see also Tamburo,* 601 F.3d at 704 (finding the first element of the express aiming test met where plaintiff alleged that defendant's conduct tortiously interfered with his business). As such, the first requirement of the "express aiming" test is met.

**B.     Mizuho's Conduct Was Expressly Aimed At Illinois With Actual Knowledge That The Injuries Would Be Felt By Greene And Other Users in Illinois.**

To satisfy the second and third elements (which overlap and are generally considered together), the plaintiff must establish that the defendant expressly aimed its conduct at the forum state with the knowledge that the injury would be suffered there. *Tamburo*, 601 F.3d at 704. Mere allegations of intentional tortious conduct are not enough—"[s]omething more" is needed. *Id.* at 706. This requirement is not satisfied by "the plaintiff's mere residence in the forum state." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 447 (7th Cir. 2010). Rather, the defendant must have some knowledge that the plaintiff lives or does business in the forum state or act specifically with the purpose of inflicting harm to the forum. *Tamburo,* 601 F.3d at 708. The specific nature and substance of the alleged contacts with the forum is likewise significant, *Telemedicine Solutions LLC v. WoundRight Technologies, LLC*, 27 F. Supp. 3d 883, 898-99 (N.D. Ill. 2014), and ultimately, the bottom line inquiry is whether the nature of the relationship among the defendant, the forum, and the litigation makes it fair to exercise jurisdiction. *Id.* (citations omitted).

The Seventh Circuit's analysis in *Felland v. Clifton* is instructive. In *Felland*, plaintiffs

were Wisconsin residents who entered into a contract in Arizona to purchase property being developed by an Arizona defendant. 682 F.3d at 669. The defendant later made fraudulent statements directed to plaintiffs at their Wisconsin home, falsely assuring them that the project was funded and on time, and inducing plaintiffs to continue making installment payments. *Id*. In applying *Calder*, the Seventh Circuit found that plaintiffs had alleged "something more" than injury in the forum state. Pointing to defendant's communications to plaintiffs in Wisconsin (defendant's sole contact with the state), the court found that express aiming met because defendant's false statements made up part of his scheme to defraud (i.e. by lulling plaintiffs into a false sense of security and inducing additional payments). *Id.* at 675. The court likewise found the third requirement "easily met," as defendant's actual knowledge of plaintiffs' residency left little doubt "that [defendant] knew the alleged harm would be felt in Wisconsin." *Id.* at 675. *See also Marquette Bank v. Brown*, 2014 WL 1292694, at *5 (N.D. Ill. Mar. 31, 2014) (finding defendant had "purposefully directed tortious activity at Illinois [where he knew plaintiff was located]" by sending plaintiff an opinion letter containing misrepresentations and omissions in furtherance of a conspiracy with other defendants to defraud).

Here, Plaintiffs likewise allege "something more" than mere tortious conduct—they allege that Mizuho's contacts with Illinois (i.e. its acceptance of deposits made by users that it knew were located in Illinois through their Illinois banks) were part of Mizuho's larger scheme to defraud.[7] Mizuho continued accepting deposits even after knowing that withdrawals were no

---

[7] A bank's performance of such services (i.e. fund transfers) can be considered as forum state contacts, particularly when the plaintiff's claims arise from such services. *See Peterson v. Islamic Republic of Iran*, 2013 WL 2246790, at *8 (S.D.N.Y. May 20, 2013) (finding foreign bank had directed conduct at New York by transferring assets through its correspondent accounts at New York banks); *Dale v. Banque SCS Alliance S.A.,* 2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005); *Ulico Cas. Co. v. Fleet Nat. Bank*, 257 F. Supp. 2d 142, 146 (D.D.C. 2003) ("In providing banking services to [plaintiff] and its subsidiaries in the District of Columbia, [defendant] had

longer possible and users would thereafter be unable to access their deposited funds. In doing so, Mizuho fraudulently lulled Illinois users into thinking that Mt. Gox was operating normally and contributed to such users' misapprehension regarding their ability to access deposited funds. As a result, Illinois users continued to deposit money through Mizuho (like putative class member Motto) and store their bitcoins with Mt. Gox thinking that they were safe and secure (like Plaintiff Green). This conduct perpetuated Mizuho's ongoing fraud and is "relevant to the evaluation of the defendant's minimum contacts with the forum state for purposes of establishing personal jurisdiction in a case alleging a fraud." *Felland*, 682 F.3d at 675-76; *see also Levin v. Posen*, 2015 WL 94230, at *6-7 (N.D. Ill. Jan. 6, 2015). Plaintiffs likewise allege that Mizuho purposefully targeted users in Illinois (and the U.S.) by implementing banking policies that it knew would interfere with their Mt. Gox contracts (that had been executed by those users in Illinois) and fraudulently concealing those policies. (Compl. ¶¶ 12, 100-108.) Accordingly, Plaintiffs' allegations of tortious conduct directed at Illinois contain "something more" and satisfy the express aiming test.[8]

Further, Mizuho expressly aimed its tortious conduct at Mt. Gox users located in Illinois (and the U.S.) knowing that any resultant injuries would be felt where those users resided. *See Tamburo*, 601 F.3d at 707 ("tortious acts aimed at a target in the forum state and undertaken for

---

deliberate and sufficient "minimum contacts" with the District of Columbia such that it should have "reasonably anticipate[d] being haled into court there.")

[8] The fact that Mizuho directed its tortious conduct at users in other states is of no accord and does not detract from the Court's analysis of its contacts with this forum. *See Payton v. Kale Realty*, 2014 WL 4214917, at *4 (N.D. Ill. Aug. 26, 2014) (noting the fact that defendants aimed their tortious products to residents in all fifty states, and "made [their] services available to anyone by way of [their] website[s]," did not render subsequent sales to Illinois residents to be fortuitous contacts). The number of Illinois residents harmed relative to residents of other states is likewise irrelevant. *See Valtech v. 18th Ave. Toys*, 2015 WL 603854, at *4 (N.D. Ill. Feb. 12, 2015) ("Although Defendants' sales in Illinois are very minimal in comparison to overall sales, these sales to Illinois residents still occurred, each resulting in an alleged intentional tort.")

the express purpose of causing injury there are sufficient to satisfy the express aiming test);
*Telemedicine*, 27 F. Supp. 3d at 898 (express aiming established when defendant acted
"specifically with the purpose of inflicting harm to the forum" or with "knowledge that the
plaintiff lives or does business in the forum state.") Here, it is undisputed that the vast majority
of Mt. Gox users were located in the U.S.[9] Nor can it be disputed that federal regulations and
banking policies require banks to include the sender's name and address on each wire transfer.[10]
Thus, there can be no question that Mizuho was provided with the actual Illinois addresses of
those users who made deposits—such as putative class member Motto—and transmitted money
to Mizuho from their Illinois bank accounts. *See Nissan Motor Co. v. Nissan Computer Corp.*,
246 F.3d 675 (9th Cir. 2000) (finding defendant had knowledge of plaintiff's residency when it
received letter containing plaintiff's address several years before engaging in the tortious conduct
at issue). Accordingly, Mizuho knew or should have known that its conduct would harm users
(like Motto) in Illinois where they resided and where they would suffer the brunt of their
financial injuries. *See Medallion Products, Inc. v. H.C.T.V., Inc.*, 2007 WL 3085913, at *7 (N.D.
Ill. Oct. 18, 2007) (finding defendants "knew or should have known that [plaintiff] was based out
of Illinois" when given documents containing plaintiff's address and receiving a letter from
plaintiff's attorney); *Luna v. Shac, LLC*, 2014 WL 3421514, at *3 (N.D. Cal. July 14, 2014)
(noting "actual knowledge" of plaintiff's residence is not required for "express aiming," and
finding defendant's intentional acts aimed at Washington when defendant "knew *or should have
known*" that [plaintiff] [was] a Washington company") (internal citations omitted, emphasis in
original); *Felland*, 682 F.3d at 675-76.

For these reasons, and given that Mizuho knew and intended for its conduct to harm users

---

[9] *See* FN 4 *supra*.
[10] *See* FN 6 *supra*

in Illinois, its cited authorities are easily distinguishable. *See Mobile Anesthesiologists*, 623 F.3d at 446 (no personal jurisdiction where only contacts alleged were defendant's maintenance of a website that was accessible over the internet, including in Illinois, and its receipt of a cease and desist letter sent from Illinois); *Tamburo*, 601 F.3d at 708 (no allegations that defendant had acted with the knowledge that plaintiff "operated his business in Illinois or with the specific purpose of inflicting injury there."); *Primack v. Pearl B. Polto, Inc.*, 649 F. Supp. 2d 884 (N.D. Ill. 2009) (no allegations that defendants knew plaintiff's location of injury).

Accordingly, because Mizuho expressly aimed its conduct at Illinois with the knowledge that Mt. Gox users would suffer their injuries there, the "express aiming" test is satisfied.

## II. PLAINTIFF GREENE'S INJURIES AROSE OUT OF MIZUHO'S ILLINOIS-RELATED CONDUCT.

In addition to showing that a defendant's conduct is purposefully directed at the forum state, the plaintiff must also show that his injury "arises out of" or "relates to" the conduct that comprises the defendant's contacts. *Felland*, 682 F.3d at 676-77 (citing *Tamburo,* 601 F.3d at 708). Though the Seventh Circuit has declined to impose a specific test for causal connection, it has acknowledged that circuit courts are generally split "as to whether the defendant's contacts must have been the *factual* cause of the plaintiff's injury, the factual *and* proximate cause, or perhaps some intermediate standard between the two." *Id.*

Here, Plaintiffs' allegations are sufficient under even the most stringent of those tests, as the tortious conduct Mizuho directed at the U.S. and Illinois caused (and was intended to cause) Plaintiffs' and the putative class's injuries: (1) Mizuho's tortious interference with users' Mt. Gox contracts in the U.S. and Illinois caused users (like Plaintiff Greene) to lose the money and bitcoins that they were unable to withdraw and (2) Mizuho's fraudulent conduct directed at users in the U.S. and Illinois, including its concealment of material facts and continued acceptance of

deposits, injured users (like Motto) who deposited money after there was no longer a way to cash back out. Accordingly, Plaintiffs easily show that their injuries arise directly from Mizuho's contacts with the forum. *See Tamburo*, 601 F.3d at 709 (finding claims arose directly from defendants' contacts (i.e. online postings and emails identifying plaintiff's Illinois location) with the state when "defendant expressly aimed their allegedly tortious conduct at Tamburo and his Illinois-based business for the purpose of causing him injury there.")

Mizuho argues that Plaintiffs' claims do not "arise of or relate to [its] purported contacts with Illinois" because the acts giving rise "occurred exclusively in Japan" (where it made all of its policies and decisions) and not from its Chicago branch location. (Def. Mot. 6-7.) This argument ignores the actual conduct at issue and misstates the basis for Plaintiffs' injuries. Plaintiffs' claims do not arise from where Mizuho's policies and decisions were made (Japan), but rather, from where its tortious conduct was directed (at the home states of U.S. users, including in Illinois). The injuries at issue arose from the money lost when Mizuho continued accepting deposits from those users and tortiously interfered with their Mt. Gox contracts.

The lone authority that Mizuho cites in support is inapposite. In *Horizon*, the plaintiff alleged injury resulting from the tortious misdirection of proceeds from a sale that had occurred in Illinois. *Horizon Matrix, LLC v. Whalehaven Capital Fund, Ltd.*, 2012 WL 379601, at *4 (N.D. Ill. Feb. 3, 2012). The court found the arising out of requirement was not met because it was "the redirection of the proceeds of that sale [that] was tortious," and thus, the injuries did not arise out of defendant's contacts with the state (i.e. the Illinois sale). *Id.* In contrast, Plaintiffs here allege that Mizuho's contacts with Illinois—i.e. its tortious interference and fraudulent conduct targeted at Illinois residents—are what that caused their injuries. Accordingly, Plaintiffs sufficiently allege injuries "arising out" of Mizuho's contacts with the forum.

13

### III. THIS COURT'S EXERCISE OF JURISDICTION OVER MIZUHO COMPORTS WITH NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE.

Once it is determined that minimum contacts with the forum state exist, courts must consider whether the exercise of personal jurisdiction over the nonresident defendant would offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash., Office of Unemployment Comp. & Placement,* 326 U.S. 310, 316 (1945). The following factors inform the court's analysis: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies."[11] *Felland,* 682 F.3d at 677 (internal citations and quotations omitted). Here, an examination of the relevant factors supports this Court's exercise of jurisdiction.

The first factor considers the burden upon the non-resident defendant. When a "defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Felland,* 682 F.3d at 677 (internal citations omitted). Though foreign defendants may be burdened by having to defend their case in other forums, "out-of-state defendants always face such a burden." *Valtech,* 2015 WL 603854, at *5. Here, Mizuho would suffer no undue burden in Illinois, especially since it has purposefully targeted Illinois residents with its conduct. Further, it is an international corporation with significant resources that regularly conducts business in this country and around the world. It has twelve offices in the U.S.

---

[11] As a private tort action, the fifth factor—which examines states' shared interest in furthering fundamental social policies—is not implicated here. *See Abad v. Bayer Corp.,* 563 F.3d 663, 668 (7th Cir. 2009) ("For this is ordinary private tort litigation that 'implicates,' as some judges like to say, no national interest."); *Fletcher v. Doig,* 2014 WL 4920238 (N.D. Ill. Sept. 30, 2014).

alone (including a branch in Chicago).[12] *See City of Greenville, Ill. v. Syngenta Crop Prot., Inc.*, 830 F. Supp. 2d 550, 565 (S.D. Ill. 2011) ("in light of SAG's vast global presence, global legal department and regular travel to many regions, it would not be unduly burdensome for [the Swiss defendant] to appear in this forum to litigate this case."); *Levin*, 2015 WL 94230, at *7 ("While international travel can be burdensome, it is not sufficient to deny jurisdiction.") As Mizuho would not be unfairly burdened in Illinois, the first factor favors Plaintiffs.

Second, courts consider the forum state's interest in adjudicating the dispute. "Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Tamburo*, 601 F.3d at 709-10. Here, Plaintiffs allege that Illinois residents suffered financial injury tortiously inflicted by Mizuho, a foreign entity. (*See* Motto Decl. ¶ 4; Compl. ¶ 54.) Accordingly, the second factor favors Plaintiffs. The third and fourth factors—Plaintiffs' interest in obtaining efficient and convenient relief and the interstate judicial system's interest in obtaining efficient resolutions of controversies—likewise strongly favor Plaintiffs. Mizuho is a Japanese bank and the cost of litigating in Japan would be prohibitive for injured consumers like Plaintiffs. Should the Court deny jurisdiction, it would be highly unlikely for Plaintiffs (and other U.S. class members) to be able to obtain relief. Further, as there are over 30,000 members of the putative class located in the U.S., the interstate judicial system has a strong interest in promoting efficiency (and minimizing the filing of duplicative lawsuits) by centralizing litigation in the only forum in which U.S. users have presently brought suit—Illinois.

Accordingly, this Court's exercise of personal jurisdiction over Mizuho would not offend traditional notions of fair play and substantial justice.

---

[12] *See* Imaizumi Decl., Dkt. 149-1, at ¶¶ 4, 5 (noting that Mizuho has over 450 domestic branches and 45 branch offices around the world (including in Chicago)*; see also* FN 3 *supra.*

## CONCLUSION

WHEREFORE, Plaintiffs Gregory Greene and Joseph Lack respectfully request that this Court deny Mizuho's Motion in its entirety.

Respectfully submitted,

**GREGORY GREENE and JOSEPH LACK**, individually, and on behalf of a class of similarly situated individuals,

Dated: June 11, 2015

By: /s/Ari J. Scharg
One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Alicia Hwang
ahwang@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Ari J. Scharg, an attorney, hereby certify that I served the above and foregoing ***Plaintiffs' Opposition to Defendant Mizuho Bank Ltd.'s Motion to Dismiss the File Second Amended Complaint***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on June 11, 2015.


<u>/s/ Ari J. Scharg</u>