**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | Hon. Gary Feinerman |
| MTGOX INC., a Delaware corporation, MT. GOX KK, a Japanese corporation, TIBANNE KK, a Japanese corporation, MT. GOX NORTH AMERICA, INC., a New York corporation, MIZUHO BANK, LTD., a Japanese financial institution, MARK KARPELES, an individual, GONZAGUE GAY-BOUCHERY, an individual, JED MCCALEB, an individual, and JOHN DOE DEFENDANTS, | Magistrate Judge Susan Cox |
| *Defendants*. | |

**REPLY MEMORANDUM OF LAW OF DEFENDANT MIZUHO BANK, LTD. IN FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT FOR LACK OF PERSONAL JURISDICTION**

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 2

    I.    THE PLAINTIFFS CANNOT ESTABLISH SPECIFIC PERSONAL JURISDICTION OVER MIZUHO BANK UNDER THE STANDARD ANNOUNCED IN *WALDEN* ................................................................................. 2

    II.    EVEN UNDER THE PRE-*WALDEN* STANDARD, THE COURT HAS NO BASIS TO ASSERT SPECIFIC PERSONAL JURISDICTION OVER MIZUHO BANK ........................................................................................................ 5

        A.    Mizuho Bank Did Not Engage In Any Intentional Or Tortious Conduct ........................................................................................................... 5

        B.    Mizuho Bank Did Not Expressly Aim Its Actions At Illinois With Actual Knowledge That The Injuries Would Be Felt In Illinois ................ 8

    III.    THE PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF MIZUHO BANK'S PURPORTED CONTACTS WITH ILLINOIS .................................... 11

    IV.    EXERCISING SPECIFIC PERSONAL JURISDICTION WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE ......................................................................................................... 13

CONCLUSION ............................................................................................................................. 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
    751 F.3d 796 (7th Cir. 2014) ............................................................................................4, 5, 9

*Barry v. Mort. Servicing Acquisition Corp.*,
    909 F. Supp. 65 (D. R.I. 1995) ..................................................................................................9

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985) ..................................................................................................................8

*Calder v. Jones*,
    465 U.S. 783 (1984) ..................................................................................................................8

*Dale v. Banque SCS Alliance S.A.*,
    2005 WL 2347853 (S.D.N.Y. Sept. 22, 2005) ........................................................................12

*E. Davis Chem. Corp. v. Diasonics, Inc.*,
    826 F.2d 678 (7th Cir. 1987) ....................................................................................................6

*Eco Pro Painting, LLC v. Sherwin-Williams Co.*,
    807 F. Supp. 2d 732 (N.D. Ill. 2011) ......................................................................................13

*Felland v. Clifton*,
    682 F.3d 665 (7th Cir. 2012) .......................................................................................8, 10, 11

*Jung v. Ass'n of Am. Med. Colleges*,
    300 F. Supp. 2d 119 (D.D.C. 2004) ..........................................................................................9

*MidAmerican Energy Co. v. Util. Res. Corp.*,
    2003 WL 22359526 (N.D. Ill. Oct. 15, 2003) ...........................................................................5

*Miller v. Am. Nat'l Bank & Trust Co. of Chicago*,
    4 F.3d 518 (7th Cir. 1993) ........................................................................................................7

*Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*,
    295 Ill. App. 3d 567 (Ill. App. Ct. 1998) ..................................................................................7

*Peterson v. Islamic Republic of Iran*,
    2013 WL 2246790 (S.D.N.Y. May 20, 2013), *aff'd*, 758 F.3d 185 (2d Cir. 2014) .................12

*Philip I. Mappa Interests, Ltd. v. Kendle*,
   196 Ill. App. 3d 703 (Ill. App. Ct. 1990) ..................................................................................6

*Shrum v. Big Lots Stores, Inc.*, 2014
   WL 6888446 (C.D. Ill. Dec. 8, 2014) .....................................................................................5

*Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*,
   2012 WL 4932845 (N.D. Ill. Oct. 16, 2012) ...........................................................................5

*Tamburo v. Dworkin*,
   601 F.3d 693 (7th Cir. 2010) ..................................................................................................8

*TechnoLines, LP v. GST AutoLeather, Inc.*,
   799 F. Supp. 2d 871 (N.D. Ill. 2011) ....................................................................................13

*Ulico Cas. Co. v. Fleet Nat. Bank*,
   257 F. Supp. 2d 142 (D.D.C. 2003) ......................................................................................12

*United Airlines, Inc. v. Zaman*,
   2015 WL 2011720 (N.D. Ill. Apr. 30, 2015) ..........................................................................4

*Walden v. Fiore*,
   134 S. Ct. 1115 (2014) .................................................................................................. *passim*

**Statutes**

810 Ill. Comp. Stat. Ann. 5/4A-209 ...............................................................................................7

810 Ill. Comp. Stat. Ann. 5/4A-404 ...............................................................................................7

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(2) .............................................................................................................1

Defendant Mizuho Bank, Ltd. ("Mizuho Bank") respectfully submits this reply memorandum of law in further support of its motion, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, to dismiss the plaintiffs' Second Amended Class Action Complaint (the "Complaint" or "SAC") for lack of personal jurisdiction.[1]

## PRELIMINARY STATEMENT

The controlling United States Supreme Court decision that governs a court's ability to exercise specific personal jurisdiction over a defendant in a case involving an alleged intentional tort is *Walden v. Fiore*, 134 S. Ct. 1115 (2014). Remarkably, the plaintiffs do not discuss *Walden* in their opposition brief, and they rely instead on a standard for specific personal jurisdiction that the Supreme Court effectively rejected in *Walden*. Throughout their brief, the plaintiffs assert that this Court should exercise personal jurisdiction because Mizuho Bank purportedly committed an intentional tort with actual knowledge that the injury would be felt by the plaintiffs in Illinois. (Opp. Br. at 2, 8-13.) But *Walden* rejected this test because it impermissibly focuses on the defendant's contacts with the plaintiff and the place "where the plaintiff experienced a particular injury or effect." *Walden*, 134 S. Ct. at 1125. The proper analytical focus, the Supreme Court explained, is solely on the defendants' contacts with the forum and the connection of those contacts to the litigation. *Id.* at 1126.

When viewed through the proper lens, it is clear that the Court has no basis to assert specific personal jurisdiction over Mizuho Bank. It is undisputed – based on the declaration of Mr. Imaizumi, which the plaintiffs did not challenge – that Mizuho does not have any jurisdictionally relevant contacts with Illinois. Instead, all of the conduct that gives rise to the

---

[1] The plaintiffs concede in their opposition brief ("Opp. Br.") that the Court has no basis to exercise general personal jurisdiction over Mizuho Bank. (Opp. Br. at 2 n.1.) As a result, this reply brief will focus on the plaintiffs' failure to plead specific personal jurisdiction over Mizuho Bank.

plaintiffs' claims – including the decision to stop processing international wire transfers for Mt. Gox – occurred in Japan. Because the plaintiffs cannot meet the standard articulated in *Walden* and its progeny, Mizuho Bank's motion to dismiss for lack of personal jurisdiction should be granted with prejudice.

## ARGUMENT

### I. THE PLAINTIFFS CANNOT ESTABLISH SPECIFIC PERSONAL JURISDICTION OVER MIZUHO BANK UNDER THE STANDARD ANNOUNCED IN *WALDEN*

The Supreme Court's decision in *Walden* dictates that this Court should dismiss the plaintiffs' case against Mizuho Bank because, under *Walden*, a plaintiff can no longer establish specific personal jurisdiction based on allegations that a defendant directed its conduct at the forum with knowledge that it would affect the plaintiff in the forum. *See Walden*, 134 S. Ct. at 1125.

In *Walden*, a police officer at the Atlanta, Georgia airport stopped the plaintiffs as they were boarding a flight to Las Vegas, Nevada and seized their carry-on bags, which contained approximately $100,000 in cash. *Walden*, 134 S. Ct. at 1119. The police officer informed the plaintiffs that their funds would be returned if they proved that the cash derived from legitimate sources. *Id.* Over the next month, the plaintiffs' attorney in Nevada tried to show the police officer through documentation and in a phone call that the funds were legitimate. *Id.* The police officer nevertheless helped draft an affidavit to show probable cause for the forfeiture of the funds and forwarded the affidavit to the U.S. Attorney's Office in Georgia. *Id.* The plaintiffs alleged that the affidavit was false and misleading because it misrepresented their encounter with the police officer at the airport. *Id.* at 1119-20. In the end, no forfeiture complaint was filed and the funds were returned to the plaintiffs. *Id.* at 1120.

2

The plaintiffs filed suit against the police officer in federal court in Nevada. *Id*. The police officer moved to dismiss for lack of personal jurisdiction, and the district court granted the motion. *Id.* On appeal, the U.S. Court of Appeals for the Ninth Circuit reversed and found the exercise of personal jurisdiction proper because the police officer "'expressly aimed' his submission of the allegedly false affidavit at Nevada by submitting the affidavit with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.*

On appeal to the Supreme Court, the plaintiffs advocated for a standard that is substantively identical to the standard the Seventh Circuit used prior to *Walden* – namely, that specific personal jurisdiction exists when a defendant "(1) intentionally targets (2) a known resident of the forum (3) for imposition of an injury (4) to be suffered by the plaintiff while she is residing in the forum state." *Id.* at 1124 n.8.

The Supreme Court rejected both the Ninth Circuit's standard and the plaintiffs' proposed standard. *Id.* at 1124. The Court explained that the police officer's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections." *Id.* at 1125. In addition, the Court emphasized that the plaintiffs could not establish personal jurisdiction by asserting "that they suffered the 'injury' caused by [the police officer's] allegedly tortious conduct (*i.e.*, the delayed return of their gambling funds) while they were residing in the forum." *Id.* This approach, the Court explained, "impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* "The proper focus of the 'minimum contacts' inquiry in intentional-tort cases is the relationship among the defendant, the forum, and the litigation." *Id.* at 1126. "[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* Based on these principles, the Court ruled that the district court lacked specific

3

personal jurisdiction because the police officer's "relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Id.*

*Walden* dictates the same result in this case. Similar to the plaintiffs in *Walden*, the plaintiffs here assert that they could not gain access to their money because of Mizuho Bank's allegedly tortious conduct. (Opp. Br. at 5.) Also like the plaintiffs in *Walden*, the plaintiffs here argue that Mizuho Bank allegedly "expressly aimed" its allegedly tortious conduct at the plaintiffs with actual knowledge that it would injure the plaintiffs in the forum. (Opp. Br. at 8-11.) After *Walden*, these arguments are no longer valid because they are incorrectly focused on the defendant's contacts with the plaintiffs and the plaintiffs' alleged injury in the forum. *Walden*, 134 S. Ct. at 1122, 1124-25. The contacts that matter for purposes of analyzing specific jurisdiction are "contacts that the defendant *himself* creates with the forum" and "not the defendant's contacts with persons who reside there." *Id.* at 1122 (emphasis in original). It is undisputed – based on the unchallenged declaration of Mr. Imaizumi – that Mizuho Bank did not create any jurisdictionally relevant contacts with Illinois and that all of the conduct that gives rise to the plaintiffs' claims occurred entirely in Japan. (Mizuho Br. at 2; Imaizumi Decl. ¶ 7.) As a result, based on the standard articulated in *Walden* and its progeny, the Court has no basis to assert specific personal jurisdiction over Mizuho Bank, and should therefore grant Mizuho Bank's motion to dismiss. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (reversing the district court and ruling that, after *Walden*, a court can no longer exercise personal jurisdiction based on the defendant's knowledge that the plaintiff resided in the forum and "could foresee that its misleading emails and sales would harm" the plaintiff in the forum); *United Airlines, Inc. v. Zaman*, 2015 WL 2011720, at *6 (N.D.

4

Ill. Apr. 30, 2015) (granting the motion to dismiss and ruling that, after *Walden* and *Advanced Tactical*, "the proper inquiry considers Defendant's ties with the forum – not Defendant's ties with Plaintiff or Plaintiff's ties with the forum"); *Shrum v. Big Lots Stores, Inc.*, 2014 WL 6888446, at *4-6 (C.D. Ill. Dec. 8, 2014) (granting the motion to dismiss based, in part, on the court's assessment that *Walden* and *Advanced Tactical* changed the law of personal jurisdiction).

## II.     EVEN UNDER THE PRE-*WALDEN* STANDARD, THE COURT HAS NO BASIS TO ASSERT SPECIFIC PERSONAL JURISDICTION OVER MIZUHO BANK

In their opposition brief, the plaintiffs argue that, to satisfy the "purposeful availment" requirement in cases involving intentional torts, the plaintiffs must allege, among other things, facts showing (1) "intentional conduct (or intentional and allegedly tortious conduct), (2) that is expressly aimed at the forum state, (3) with the defendant's knowledge that the effects would be felt – *i.e.*, that plaintiff would be injured – in the forum state." (Opp. Br. at 7.)  As explained above, a substantively identical standard was rejected by the Supreme Court in *Walden* and is no longer valid.  *See Walden*, 134 S. Ct. at 1124 n.8.  But even if this standard were still valid, the plaintiffs could not meet its requirements.

### A.     Mizuho Bank Did Not Engage In Any Intentional Or Tortious Conduct

The plaintiffs offer no basis for their conclusory assertion that Mizuho Bank intentionally interfered with their contracts and fraudulently concealed its actions.  (Opp. Br. at 7-8.)  In order to plead tortious interference with contract, a plaintiff must allege, among other things, that the defendant intended to induce a breach between two parties and that the defendant was not justified in taking such action.  *See Sterling Fire Restoration, Ltd. v. Wachovia Bank N.A.*, 2012 WL 4932845, at *5 (N.D. Ill. Oct. 16, 2012) (Feinerman, J.) (holding that one element of a tortious interference with contract claim is the "defendant's intentional and unjustified inducement of a breach"); *MidAmerican Energy Co. v. Util. Res. Corp.*, 2003 WL 22359526, at

5

\*2 (N.D. Ill. Oct. 15, 2003) (holding that "where the conduct of a defendant in an interference with contract action is privileged, it is the plaintiff's burden to plead and prove that the defendant's conduct was unjustified or malicious").

Here, Mizuho Bank was completely justified in stopping the international wire withdrawals. According to the Complaint, Mizuho Bank became concerned by public reports that "U.S. authorities were investigating Mt. Gox for business dealings related to money laundering." (SAC ¶ 26.) Based on these concerns, in mid-2013, Mizuho Bank "stopped processing international wire withdrawals for Mt. Gox." (*Id.* ¶ 29.) Thus, even according to the plaintiffs, it was concerns about violating criminal money laundering laws – and not an effort to interfere with Mt. Gox's contracts with the plaintiffs – that led Mizuho Bank to stop processing international withdrawals for Mt. Gox. As a result, when Mizuho allegedly halted international wire withdrawals for Mt. Gox, it was not tortiously interfering with the plaintiffs' contracts. *See E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 686-87 (7th Cir. 1987) (affirming dismissal of tortious interference claim even though the defendants knew that their conduct was "substantially certain to result in" another party breaking its purchase contract with the plaintiff because the defendants did not "in any way desire[]" that result); *Philip I. Mappa Interests, Ltd. v. Kendle*, 196 Ill. App. 3d 703, 709 (Ill. App. Ct. 1990) (affirming dismissal of tortious interference claim because the plaintiff failed to plead that the defendant's actions were unjustified when the defendant took those actions in order to preserve its protected interests).

In addition, contrary to the plaintiffs' assertion, Mizuho Bank's decision to stop processing withdrawals did not make it "impossible" for Mt. Gox's customers to withdraw money from their Mt. Gox accounts. (Opp. Br. at 1, 3.) According to the declaration of Mr. Imaizumi, "[n]othing in the customer agreement between Mt. Gox and Mizuho Bank prevented

6

or restricted Mt. Gox from opening and maintaining accounts with other banks in order to service its clients." (Imaizumi Decl. ¶ 9.) In other words, Mt. Gox was free to transfer money from its account to another bank and timely respond to its clients' requests to withdraw money. To the extent that Mt. Gox chose not to respond to its customer's withdrawal requests, that decision rests entirely with Mt. Gox and has nothing to do with Mizuho Bank.[2]

The plaintiffs also lack any basis for their contention that Mizuho Bank "fraudulently concealed its misconduct from users and the public." (Opp. Br. at 8.) "[I]n order to prove fraud by the intentional concealment of a material fact, it is necessary to show the existence of a special or fiduciary relationship, which would raise a duty to speak." *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 572-73 (Ill. App. Ct. 1998). In addition, "a bank generally owes no fiduciary duty to its depositors." *See Miller v. Am. Nat'l Bank & Trust Co. of Chicago*, 4 F.3d 518, 520 (7th Cir. 1993). Here, the plaintiffs do not allege – nor could they – that Mizuho Bank had a special or fiduciary relationship with the plaintiffs. After all, the plaintiffs are not even Mizuho Bank's customers. They are further removed (*i.e.*, the customers of Mizuho Bank's customer (Mt. Gox)). Lacking any special or fiduciary relationship between Mizuho Bank and the plaintiffs, Mizuho Bank did not have a "duty to speak" to the plaintiffs, and therefore, could not have fraudulently concealed anything from them.

Because the plaintiffs have failed to allege facts sufficient to plead plausible claims for intentional interference with contract and fraudulent concealment, the plaintiffs cannot satisfy the

---

[2] The rules governing wire deposits make it difficult for a bank, like Mizuho Bank, to reject incoming wire transfers. Under the Uniform Commercial Code as adopted by Illinois (which Mizuho Bank assumes for purposes of this motion, but does not concede, applies), a bank that receives a deposit on behalf of a third-party beneficiary that has an account at the bank (*i.e.*, Mt. Gox) must pass the funds to the third party, except in unusual circumstances that the plaintiffs have not alleged to be the case here. *See* 810 Ill. Comp. Stat. Ann. 5/4A-209, 404 and 5/4A-209, Comments 4, 6, 8.

7

first prong of the now-outdated specific personal jurisdiction test.

### B. Mizuho Bank Did Not Expressly Aim Its Actions At Illinois With Actual Knowledge That The Injuries Would Be Felt In Illinois

The plaintiffs also have not alleged sufficient facts from which to infer that Mizuho Bank "expressly aimed its conduct at the forum state with the knowledge that the injury would be suffered there." (Opp. Br. at 8.) In order to satisfy this test, a plaintiff was required to identify specific conduct by a defendant that was intentionally directed at the forum state. *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012); *Tamburo v. Dworkin*, 601 F.3d 693, 704-5 (7th Cir. 2010). However, an important limitation on this test was that "untargeted" acts by a defendant, *Calder v. Jones*, 465 U.S. 783, 789 (1984), as well as "random, fortuitous, or attenuated contacts" with the forum, *Tamburo*, 601 F.3d at 702 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), were not sufficient.

Here, the plaintiffs cannot satisfy the pre-*Walden* standard because Mizuho Bank's contacts with Illinois (if any) were, at most, "untargeted" and "random." As noted, Mizuho Bank stopped processing international wire withdrawals for Mt. Gox after becoming concerned by public reports that "U.S. authorities were investigating Mt. Gox for business dealings related to money laundering." (SAC ¶ 26.) The plaintiffs do not plead any facts – because there are none – that anyone at Mizuho Bank thought about or targeted Illinois when it made this decision. To the extent that Mizuho Bank's decision affected Mt. Gox users (a premise that Mizuho Bank strongly disputes), the impact would have been felt equally by all Mt. Gox users throughout the world[3] and was not in any way directed at Mt. Gox users in Illinois. In circumstances such as this, where a defendant would be subject impermissibly to "universal jurisdiction," courts

---

[3] According to the declaration of Nobuaki Kobayashi, which the plaintiffs attached as an exhibit to their opposition brief, Mt. Gox had customers in 175 countries globally, and at least 30,701 customers throughout the United States. (Kobayashi Decl. ¶ 24.)

8

routinely rule that the plaintiff has failed to plead specific personal jurisdiction. *See Advanced Tactical*, 751 F.3d at 801-2 ("The creation of such *de facto* universal jurisdiction runs counter to the approach the Court has followed since *International Shoe*, and that it reaffirmed as recently as February 2014 in *Walden*.").

The plaintiffs also cannot support their claim that Mizuho Bank had "actual knowledge that the injuries would be felt by Greene and other users in Illinois." (Opp. Br. at 8.) In support of this assertion, the plaintiffs note that "federal regulations and banking policies require banks to include the sender's name and address on each wire transfer," and therefore, "Mizuho was provided with the actual Illinois addresses of those users who made deposits." (Opp. Br. at 11.) The Complaint, however, contradicts this assertion with regard to plaintiff Gregory Greene (the only plaintiff who allegedly lived in Illinois). According to the Complaint, Mr. Greene funded his Mt. Gox account with bitcoins and not fiat currency. (SAC ¶¶ 46-47.) As a result, Mr. Greene never wired any money to Mizuho Bank, and Mizuho Bank would not have had any information about Mr. Greene or his purported residence in Illinois.

In an effort to address this deficiency, the plaintiffs submitted a declaration from Anthony Motto, a putative class member who purportedly lives in Illinois and wired money into his Mt. Gox account on February 15, 2014. (Motto Decl. ¶ 4.) As a preliminary matter, the acts of non-parties (such as putative class members who are not themselves plaintiffs) are not relevant to the jurisdictional analysis.[4] But even if the Court were to consider the declaration, the timing of Mr. Motto's wire transfer reinforces that Mizuho Bank did not have "actual knowledge" that its

---

[4] *See, e.g., Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 136 n.8 (D.D.C. 2004) ("plaintiffs cannot rely on alleged injury to putative plaintiffs in order to meet the in-District injury requirement"); *Barry v. Mort. Servicing Acquisition Corp.*, 909 F. Supp. 65, 73 (D. R.I. 1995) ("It is the named class representative . . . whose claims must satisfy this test in order for the Court to have personal jurisdiction over TBC in this action.").

9

actions might injure an Illinois resident.  The plaintiffs assert that Mizuho Bank "stopped processing international wire withdrawals for Mt. Gox" in mid-2013 (SAC ¶ 29), but it was not until approximately eight months later, in mid-February 2014, that Mr. Motto wired money into his account at Mt. Gox.  (Motto Decl. ¶ 4.)  Thus, at the time that Mizuho Bank made the decision to stop processing international wire withdrawals, it could not possibly have known that its actions might injure an Illinois resident.

More importantly, Mr. Motto's declaration cannot help the plaintiffs establish specific personal jurisdiction because a plaintiff's contacts with a defendant (or, in this case, a putative class member's contacts with the defendant) are irrelevant to the jurisdictional analysis.  *See Walden*, 134 S. Ct. at 1125 (rejecting an approach that "impermissibly allows a plaintiff's contacts with the defendant . . . to drive the jurisdictional analysis").  The only contacts that matter for purposes of evaluating specific personal jurisdiction are the "contacts that the defendant *himself* creates with the forum."  *Id.* at 1122 (emphasis in original).  As a result, the plaintiffs' shift in focus from Mr. Greene to Mr. Motto does not change the fact that Mizuho Bank did not have any jurisdictionally relevant contacts with the forum.

The plaintiffs cite *Felland v. Clifton* in support of their position (Opp. Br. at 8-9), but the nature of the defendant's contacts with the forum that court identified as critical to its (pre-*Walden*) jurisdictional analysis are completely absent here.  In *Felland*, the plaintiffs signed a contract with the defendant to purchase a condominium in Mexico.  682 F.3d at 669.  When the plaintiffs became concerned about the financing and timeline for the project, the defendant "intentionally misrepresented important information about the progress and financing of the [project]" in order "to keep the installment payments coming and to forestall cancellation and a demand for a refund."  *Id.* at 676.  Significantly, the defendant made the misrepresentations

10

through multiple letters, phone calls, and emails – "all to the [plaintiffs'] home in Wisconsin." *Id.* Based on these facts, the Court ruled that the defendants' "ongoing misrepresentations were 'expressly aimed' at Wisconsin," and the defendant knew that their communications would have their effect in Wisconsin. *Id.*; *Id.* at 676 n.3.

Unlike the defendants in *Felland*, Mizuho Bank did not make any representations to the plaintiffs or anyone else in Illinois about anything related to Mt. Gox, and it did not send emails, letters, or any other information or communications to anyone in Illinois about Mt. Gox. In addition, the plaintiffs have not alleged any facts from which to infer that Mizuho Bank knew that its decision to stop international wire withdrawals for Mt. Gox would affect the plaintiffs or any other Mt. Gox users in Illinois. Under these circumstances, the Court has no basis to find that Mizuho Bank "expressly aimed" any statements or conduct at Illinois with the knowledge that such statements or conduct would injure Illinois residents.

## III. THE PLAINTIFFS' CLAIMS DO NOT ARISE OUT OF MIZUHO BANK'S PURPORTED CONTACTS WITH ILLINOIS

The plaintiffs' argument that their claims arose out of Mizuho Bank's contacts with Illinois fails for the same reason as their other arguments – namely, the plaintiffs have not alleged any facts that Mizuho Bank *itself* created suit-related contacts with Illinois. *See Walden*, 134 S. Ct. at 1122 (stating that a plaintiff's claims "must arise out of contacts that the defendant *himself* creates with the forum State" (emphasis in original) (internal quotation marks omitted)). According to the Complaint, the plaintiffs' injuries allegedly arose out of Mizuho Bank's decision to stop processing international wire withdrawals for Mt. Gox. (SAC ¶¶ 26-29.) And as explained in Mizuho Bank's opening brief, all of the conduct related to Mizuho Bank's decision to stop processing international wire withdrawals occurred in Japan, not Illinois. (Mizuho Br. at 6-7.)

11

The plaintiffs attempt to overcome this hurdle by asserting that "the tortious conduct Mizuho directed at the U.S. and Illinois caused (and was intended to cause) Plaintiffs' and the putative class's injuries." (Opp. Br. at 12.) But, as explained above, *Walden* effectively rejected the concept that a court can exercise specific personal jurisdiction based on conduct that the defendant purportedly "aimed," "targeted," or "directed" at the forum with actual knowledge that it would injure an individual in the forum. *Walden*, 134 S. Ct. at 1120, 1124 n.8.

The plaintiffs try to repackage the same argument by asserting that their injuries "arose from the money lost when Mizuho continued accepting deposits from [Mt. Gox] users and tortiously interfered with their Mt. Gox contracts." (Opp. Br. at 13.) But that argument fails because the focal point of Mizuho Bank's conduct is still Japan and not Illinois: Mizuho Bank "accepted deposits" on behalf of Mt. Gox at its Shibuya Branch in Tokyo, Japan,[5] and any purported "interference" with the plaintiffs' contracts is based on conduct that occurred in Japan, not Illinois. (Mizuho Br. at 6-7.)

Because the plaintiffs' claims do not arise out of or relate to Mizuho Bank's contacts with Illinois, the Court has no basis to exercise specific personal jurisdiction, and should dismiss the plaintiffs' claims against Mizuho Bank with prejudice.

---

[5] The plaintiffs assert that a bank's performance of wire transfer services "can be considered as forum state contacts," (Opp. Br. at 9 n.7), but the cases cited in support of this statement are distinguishable because, in each case, the defendant banks engaged in transactions in the forum state that were directly related to the litigation, whereas here, Mizuho Bank merely accepted wire transfers from banks outside of the forum state on behalf of individuals, some of which were located in the forum state. *See Peterson v. Islamic Republic of Iran*, 2013 WL 2246790, at *8 (S.D.N.Y. May 20, 2013) (defendant bank used correspondent banking relationships in the forum state to carry out fund transfers connected to the litigation), *aff'd*, 758 F.3d 185 (2d Cir. 2014); *Dale v. Banque SCS Alliance S.A.*, 2005 WL 2347853, at *3 (S.D.N.Y. Sept. 22, 2005) (same); *Ulico Cas. Co. v. Fleet Nat. Bank*, 257 F. Supp. 2d 142, 143-44, 146 (D.D.C. 2003) (defendant bank maintained a close working relationship with the plaintiff, visiting and regularly communicating with the plaintiff's in-state offices).

## IV.     EXERCISING SPECIFIC PERSONAL JURISDICTION WOULD OFFEND TRADITIONAL NOTIONS OF FAIR PLAY AND SUBSTANTIAL JUSTICE

As the plaintiffs acknowledge, the court need not address whether exercising specific personal jurisdiction over the defendant would offend "traditional notions of fair play and substantial justice" unless it has already "determined that minimum contacts with the forum state" are otherwise properly pleaded.  (Opp. Br. at 14.)  Because the plaintiffs have not established that Mizuho Bank had sufficient suit-related contacts with Illinois to meet the standard articulated in *Walden*, or that their claims arose out of Mizuho Bank's contacts with Illinois, "traditional notions of fair play and substantial justice" do not provide an independent basis for conferring specific personal jurisdiction over Mizuho Bank.  *See Eco Pro Painting, LLC v. Sherwin-Williams Co.*, 807 F. Supp. 2d 732, 739 (N.D. Ill. 2011) (holding that because the defendant's "contacts with Illinois do not satisfy the first part of the specific jurisdiction test, . . . it [is] unnecessary to assess whether the exercise of jurisdiction would offend 'traditional notions of fair play and substantial justice'"); *TechnoLines, LP v. GST AutoLeather, Inc.*, 799 F. Supp. 2d 871, 879 n.2 (N.D. Ill. 2011) (same).

## CONCLUSION

For the foregoing reasons and the reasons stated in Mizuho Bank's opening brief, this Court should dismiss the Complaint with prejudice against Mizuho Bank.

MIZUHO BANK, LTD.

By: /s/ Jonathan S. Quinn
One of Its Attorneys

Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Suite 1700
Chicago, IL 60602-3801
312-269-8000

-And-

Jerome S. Fortinsky (admitted *Pro Hac Vice*)
jfortinsky@shearman.com
John A. Nathanson (admitted *Pro Hac Vice*)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted *Pro Hac Vice*)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
212-848-4000

*Attorneys for Defendant Mizuho Bank, Ltd.*

Dated: July 1, 2015

## **CERTIFICATE OF SERVICE**

I, Jonathan S. Quinn, an attorney, hereby certify that I caused a true and correct copy of **Defendant Mizuho Bank, Ltd.'s Reply Memorandum Of Law In Further Support Of Its Motion To Dismiss The Second Amended Class Action Complaint For Lack Of Personal Jurisdiction** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 1st day of July, 2015.

/s/ Jonathan S. Quinn