**EXHIBIT A**

```
 1                    IN THE UNITED STATES DISTRICT COURT
                     FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                              EASTERN DIVISION

 3   GREGORY GREENE and JOSEPH    )
     LACK, individually and on    )
 4   behalf of all others         )
     similarly situated,          )
 5                                )
                     Plaintiffs,  )
 6                                )  Case No. 14 C 1437
     -vs-                         )
 7                                )
     MT. GOX, INC., a Delaware    )
 8   corporation; MT. GOX KK, a   )
     Japanese corporation;        )
 9   TIBANNE KK, a Japanese       )
     corporation; MARK KARPELES,  )
10   an individual; MT. GOX NORTH )
     AMERICA, INC., a New York    )
11   corporation; MIZUHO BANK,    )
     LTD., a Japanese financial   )
12   institution; GONZAGUE        )
     GAY-BOUCHERY, an individual; )
13   JED MCCALEB, an individual;  )
     and JOHN DOE DEFENDANTS,     )  Chicago, Illinois
14                                )  April 16, 2015
                     Defendants.  )  9:25 a.m.
15
                         TRANSCRIPT OF PROCEEDINGS
16                 BEFORE THE HONORABLE GARY FEINERMAN

17   APPEARANCES:

18   For the Plaintiffs:     EDELSON, P.C.
                             BY:  MR. ARI J. SCHARG
19                                MS. ALICIA E. HWANG
                             350 North LaSalle Street, Suite 1300
20                           Chicago, Illinois  60654
                             (312) 589-6370
21
     Court Reporter:
22
                       CHARLES R. ZANDI, CSR, RPR, FCRR
23                           Official Court Reporter
                           United States District Court
24                    219 South Dearborn Street, Suite 2128
                            Chicago, Illinois  60604
25                       Telephone:  (312) 435-5387
                    email:  Charles_zandi@ilnd.uscourts.gov
```

```
 1  APPEARANCES: (Continued)

 2  For the Mt. Gox           BROWN RUDNICK, LLP
    Defendants:               BY:  MR. JACOB T. BEISWENGER
 3                            7 Times Square
    (via telephone            New York, New York  10036
 4  conference call)          (212) 209-4822

 5

 6  For Defendant Mizuho      SHEARMAN & STERLING, LLP
    Bank, Ltd.:               BY:  MR. JEROME S. FORTINSKY
 7                                 MR. JEFFREY RESETARITS
    (via telephone            599 Lexington Avenue
 8  conference call)          New York, New York  10022
                              (212) 848-7116
 9
                              NEAL, GERBER & EISENBERG
10                            BY:  MR. JONATHAN S. QUINN
                              Two North LaSalle Street
11                            Suite 1700
                              Chicago, Illinois  60602
12                            (312) 269-8093

13  For Defendant             CHUHAK & TECSON, P.C.
    Gonzague                  BY:  MR. DANIEL J. FUMAGALLI
14  Gay-Bouchery:             30 South Wacker Drive
                              Suite 2600
15                            Chicago, Illinois  60606
                              (312) 855-4330
16

17

18

19

20

21

22

23

24

25
```

| | |
|---|---|
| 1 | (Proceedings heard in open court:) |
| 2 | THE CLERK: 14 C 1437, Greene versus Mt. Gox. |
| 3 | MR. SCHARG: Good morning. Ari Scharg on behalf of |
| 4 | the plaintiffs. |
| 5 | MS. HWANG: Alicia Hwang on behalf of the plaintiffs. |
| 6 | MR. FUMAGALLI: Daniel Fumagalli, Judge, for |
| 7 | defendant Gay-Bouchery. |
| 8 | THE CLERK: And I'll have to get a party on the |
| 9 | phone. One second here. |
| 10 | MR. QUINN: Jonathan Quinn on behalf of defendants |
| 11 | Mizuho Bank. My colleagues will be joining me shortly by |
| 12 | phone. |
| 13 | THE COURT: Do we have two numbers? |
| 14 | THE CLERK: One was for a Jacob Beiswenger, who just |
| 15 | wants to listen in. |
| 16 | THE COURT: Who is that? |
| 17 | MS. HWANG: He is the trustee of Mt. Gox. |
| 18 | THE COURT: And Fortinsky is for Mizuho? |
| 19 | MR. QUINN: Correct. |
| 20 | THE COURT: And we don't have Karpeles, do we? |
| 21 | MR. SCHARG: Not in court, no. |
| 22 | MS. HWANG: Not that we're aware of. |
| 23 | THE COURT: That's K-A-R-P-E-L-E-S. |
| 24 | THE CLERK: I may not be able to connect Jacob, but |
| 25 | we'll see. |

| | |
|---|---|
| 1 | MR. FORTINSKY: Hello. |
| 2 | THE CLERK: Jerome Fortinsky? |
| 3 | MR. FORTINSKY: Speaking, Jerry Fortinsky, and Jeff |
| 4 | Resetarits is with me. |
| 5 | THE CLERK: This is Jackie from Judge Feinerman's |
| 6 | chambers. I'm going to try to connect the Jacob Beiswenger. |
| 7 | Hold on. Okay? |
| 8 | MR. FORTINSKY: Okay. Thanks. |
| 9 | THE CLERK: Hello? |
| 10 | MR. FORTINSKY: Yes. |
| 11 | THE CLERK: Hold on. I don't think I'm able to |
| 12 | connect him. |
| 13 | THE COURT: Okay. Does anybody have a -- he's just |
| 14 | going to be listening in? Does anybody have a phone that we |
| 15 | could just put on speaker so maybe he can hear? |
| 16 | MR. SCHARG: Sure. |
| 17 | MR. FORTINSKY: Yeah. |
| 18 | THE COURT: We're not talking about you, |
| 19 | Mr. Fortinsky. We're talking about somebody else. |
| 20 | MR. FORTINSKY: Okay. Good morning, your Honor. |
| 21 | THE CLERK: Hold on. Okay? |
| 22 | THE COURT: We're going to connect the trustee's |
| 23 | lawyer by a different means. |
| 24 | THE CLERK: Jacob? |
| 25 | MR. BEISWENGER: Yes. |

1    THE CLERK:  Okay.  You need to speak a little loud
2 because you're on the actual phone; and we have the other
3 parties in the courtroom, and we have someone else on a
4 different line.  Okay?
5    MR. BEISWENGER:  Okay.
6    THE CLERK:  Mr. Fortinsky, can you hear him?
7    MR. FORTINSKY:  Yes, I can.  Thank you.
8    THE CLERK:  Okay.  Great.
9    THE COURT:  So, why don't we -- Mr. Fortinsky, if you
10 could introduce yourself and say who you represent.
11    MR. FORTINSKY:  Sure, your Honor.  This is Jerry
12 Fortinsky with Shearman and Sterling.  I'm on the phone in
13 New York.  I represent Mizuho Bank, Ltd.
14    THE COURT:  Okay.  And then we have -- is it the
15 trustee's lawyer on the phone?
16    MR. BEISWENGER:  Yes.  This is Jacob Beiswenger from
17 Brown Rudnick on behalf of Nobuaki Kobayashi, the Mt. Gox
18 bankruptcy trustee.  I'm just listening in.
19    THE COURT:  I'm sorry?
20    MR. BEISWENGER:  I'm just listening in.
21    THE COURT:  Okay.  You'll just be listening in.  And
22 if everybody in the courtroom could again state your names and
23 who you represent.
24    MR. SCHARG:  Ari Scharg on behalf of the plaintiff.
25    MS. HWANG:  Alicia Hwang on behalf of the plaintiffs.

1 MR. FUMAGALLI: Daniel Fumagalli for Gay-Bouchery.

2 MR. QUINN: Jonathan Quinn on behalf of Mizuho Bank.

3 THE COURT: Good morning. We're here for a status

4 hearing, and we also have a motion for leave to file a second

5 amended complaint. I've read the motion and reviewed the

6 second amended complaint. And let me ask Gay-Bouchery, any

7 objection to the motion?

8 MR. FUMAGALLI: No, Judge, no objection.

9 THE COURT: You don't have to explain. I understand

10 why. How about Mizuho Bank, any objection from Mizuho?

11 MR. FORTINSKY: Yes, your Honor, but we have an

12 understanding with the plaintiffs concerning the next steps.

13 I'd be happy to describe that if the Court would like.

14 THE COURT: Go ahead.

15 MR. FORTINSKY: We believe the appropriate next step

16 is for the -- for us, Mizuho, to file a motion to dismiss on

17 personal jurisdiction grounds. We think for reasons -- I

18 won't explain at length right now, but would be happy to if

19 the Court would like. We believe there's a strong personal

20 jurisdiction issue that defendants have.

21 And, therefore, it's in the interests of both the

22 parties and the Court not to engage in briefing that might

23 turn out to be unnecessary. So, we'd like to, with the

24 Court's -- if the Court consents, put that on the schedule

25 first and then deal with the other issues after that.

1    I should add --

2    THE COURT: What other issues?

3    MR. FORTINSKY: Well, the question we sort of left
4 the last time we discussed this was sort of how to coordinate
5 the motion to amend with a motion to dismiss. And, you
6 know --

7    THE COURT: How about this way: I grant the motion
8 to amend, and then you move to dismiss the amended complaint
9 on personal jurisdiction grounds?

10   MR. FORTINSKY: Mizuho's position has to be that we
11 will not consent to an amendment. We do not want our -- we do
12 not want to take any position that could be construed either
13 in this country or later in Japan to be any kind of consent to
14 an amendment, consent to being sued in the United States. So,
15 we do not consent to being sued in the United States.

16   Having said that, our -- we think our opposition to
17 the motion to amend is based on grounds of futility rather
18 than prejudice, which is to say that we think that the grounds
19 for opposing the motion to amend are the same as the grounds
20 for granting the motion to dismiss.

21   THE COURT: Okay. So, let's say I agree with you and
22 that I allow the motion to dismiss to go forward. Wouldn't
23 the plaintiffs then have the ability to amend as of right
24 under 15(a)(1)(B), and then we would just be where we would
25 have been had we done it the easy way?

1  MR. FORTINSKY: I'm sorry, your Honor. I'm not sure
2  I got that. Well, let me say this: I don't think that the --
3  THE COURT: Well, let me explain myself. Under
4  15(a) --
5  MR. FORTINSKY: Once or maybe twice.
6  THE COURT: Under 15(a)(1)(B), it says that, "A party
7  may amend its pleading once as a matter of course, if the
8  pleading is one to which a responsive pleading is required,
9  21 days after service of a responsive pleading or 21 days
10 after service of a Rule 12(b) motion."
11     So, if I put the motion to amend on ice and then you
12 move to dismiss, wouldn't the plaintiffs have the right to
13 amend as of right under 15(a)(1)(B); and then you'd just be
14 moving against the amended complaint, and we'd be where we
15 would have been anyway?
16 MR. FORTINSKY: We have no objection to putting the
17 motion to amend on ice, if that's the proposal. I think --
18 THE COURT: No, that's not -- I'm asking you what
19 sense does that make if they're going to be allowed to amend
20 anyway once you file a motion to dismiss?
21 MR. FORTINSKY: Well, as I was saying, your Honor,
22 they've already amended once as of right, so I'm not sure it's
23 true that they have the right the Court mentioned under
24 Rule 15.
25     But as to the practical side of the question, you

1 know, as I said, we do object to the motion to amend; but we
2 could certainly, I think, combine the motion to amend with a
3 motion to dismiss with no loss in efficiency and first brief
4 the personal jurisdiction motion and then afterwards combine
5 the opposition to the motion to amend with the motion to
6 dismiss.
7      And since, as I said, our grounds for opposing the
8 motion to amend are the same as the grounds for granting the
9 motion to dismiss, there's really no loss of efficiency to do
10 it that way. It's not as though we're briefing additional --
11 additional things multiple times.
12      THE COURT: What do the plaintiffs think?
13      MR. SCHARG: Well, as I -- I spoke with Mizuho's
14 attorneys yesterday, and I told them that anything that they
15 did with respect to the motion for leave, we would certainly
16 not construe in this case as submitting to personal
17 jurisdiction in this court, absolutely not. Them and the
18 Court has our word on that.
19      I think that probably the most efficient way to move
20 forward is just -- if they're concerned that taking a position
21 on the motion for leave would subject them to personal
22 jurisdiction in other cases, just take no position on the
23 motion. I believe the Court should grant the motion. Then we
24 can move forward with briefing personal jurisdiction on the
25 second amended complaint.

Case: 1:14-cv-01437 Document #: 167-1 Filed: 12/01/15 Page 11 of 20 PageID #:1597

10

1           The allegations in that complaint are somewhat
2  different than the first amended complaint with respect to
3  Mizuho's involvement, so I don't even think that submitting
4  briefs with respect to the older allegations would make that
5  much sense.
6           THE COURT: All right. Anything -- any reply from
7  Mizuho to that point?
8           MR. FORTINSKY: I certainly agree it doesn't make
9  sense to brief allegations that are no longer in place. And I
10 appreciate the statement on the record that the plaintiffs
11 will not use the amendment, even if granted over our objection
12 or even if granted in a way that's construed to be without our
13 objection, will not be used against us here or in Japan.
14          We're happy to do whatever the Court thinks is
15 appropriate. I just do want to make it clear that we are not
16 consenting. We're not consenting to any -- we're not
17 consenting to be in this suit.
18          THE COURT: Understood. And my only goal is to make
19 things go as efficiently and as sensibly as possible so we
20 could address the substantive issues, and I'm including
21 personal jurisdiction as a substantive issue, in the most
22 efficient and sensible way possible. And I think the way to
23 do that is to allow the motion to amend -- grant the motion to
24 amend.
25          And so I am going to grant that motion. And the

1  plaintiffs should file their amended complaint or second
2  amended complaint as a separate docket entry.
3      And I'm granting the motion under 15 -- it's either
4  under 15(a)(1) or 15(a)(2).  If you can -- if this -- if their
5  first amendment doesn't count as the first amendment of right
6  or doesn't foreclose them from doing another amendment of
7  right, then it's under 15(a)(1).  If it turns out that they've
8  already had their first amendment of right, I'll grant the
9  motion under 15(a)(2).
10     This case, although it's a year old, is still in its
11 very early stages because we were on hold for several months
12 pending the possible settlement and pending the plaintiffs'
13 decision as to which claims to go forward on and which
14 defendants to keep in the case.
15     And the Seventh Circuit said that amendments ought to
16 be granted -- ought to be allowed when it makes sense to do
17 so, and we're at the stage of the case where it makes sense to
18 do so.
19     And it will also allow the parties to know what --
20 would allow Mizuho to know what it's aiming at in terms of the
21 allegations of contacts with Illinois.  I think it's all laid
22 out in the second amended complaint, and that's going to be at
23 least part of -- it's going to provide some -- at least some,
24 if not all the data points that the Court's going to be using
25 in assessing whether there's personal jurisdiction over

1 Mizuho.
2 So, I'm going to grant that motion. What -- in terms
3 of the Mt. Gox entities, Gay-Bouchery, McCaleb, are they
4 dismissed?
5 MR. SCHARG: Yes.
6 THE COURT: Okay. With or without prejudice?
7 MR. SCHARG: Without.
8 THE COURT: Okay. Anything from Gay-Bouchery on
9 that?
10 MR. FUMAGALLI: I prefer it -- I hadn't talked to
11 counsel, but I prefer it with prejudice; but I don't know --
12 if he said without, we will stick with without, Judge.
13 THE COURT: Okay. I'll dismiss all the others
14 without prejudice. And you haven't answered or moved for
15 summary judgment yet anyway, right?
16 MR. FUMAGALLI: We have not, Judge.
17 THE COURT: Okay. So, they could just do a notice of
18 voluntary dismissal under 41(a)(1)(A)(i) on their own terms,
19 so let's just make it without prejudice.
20 And when -- well first, has anybody heard from
21 Mr. Karpeles?
22 MR. SCHARG: No. After the last -- after the
23 January 8th hearing, we --
24 THE COURT: You're going to have to --
25 MR. SCHARG: I'm sorry. After the January 8th

1 hearing, we served all the documents in the docket on Novack
2 and Macey. We had filed the motion for alternate service, and
3 I think your Honor deferred ruling on that.
4     You know, before that hearing, we had served an
5 agent, I believe, in Texas, one of Mt. Gox -- we served
6 Mt. Gox, Inc.'s, agent -- excuse me, it was Delaware, who was
7 authorized to accept service on behalf of Karpeles and did
8 accept service on behalf of Karpeles; but when Novack and
9 Macey came in, they indicated that they were going to be
10 contesting whether the service was proper. But now that
11 they're out, I don't believe that there is an objection to
12 whether the service was proper, so --
13     THE COURT: I guess we'll see.
14     MR. SCHARG: But given that our motion for
15 alternative service is still pending, I'm just not sure that
16 it's still necessary in light of the fact that we had at least
17 initially served Karpeles in his individual capacity.
18     THE COURT: Okay. But the -- no one's heard from
19 him, and there's no -- he hasn't been communicating with any
20 of the lawyers?
21     MR. SCHARG: Not with us. I can't speak to whether
22 he's been in touch with his -- with his former attorneys at
23 Novack and Macey.
24     THE COURT: Okay. Has he made any -- to the extent
25 you can say, has he made any contact with the lawyers for the

Case: 1:14-cv-01437 Document #: 167-1 Filed: 12/01/15 Page 15 of 20 PageID #:1601

14

1  other parties?
2          MR. SCHARG: I'm unaware.
3          THE COURT: I'm not asking you. I'm asking the other
4  lawyers.
5          MR. FUMAGALLI: None at all, Judge, with us.
6          THE COURT: Okay. Mr. Fortinsky?
7          MR. FORTINSKY: No, your Honor.
8          THE COURT: Okay. So, when -- so, it sounds like
9  you're going to move to dismiss on personal jurisdiction
10 grounds and maybe others. When would you like to file your
11 motion?
12         MR. FORTINSKY: Well, our -- our notion is that we
13 would file a motion to dismiss on personal jurisdiction
14 grounds in four weeks, which is what we discussed yesterday
15 with the plaintiffs' counsel. And they would then get four
16 weeks to respond, and we would get two weeks to reply. And
17 then once the Court decides that motion, if there is a need
18 for briefing on the other issues, then we would work out a
19 briefing schedule as appropriate at the time.
20         THE COURT: What other issues are you referring to?
21         MR. FORTINSKY: Well, we -- if the Court were to rule
22 that it has personal jurisdiction, we would move to dismiss
23 for failure to state a claim. We think that the causes of
24 action -- they don't recite the elements. They don't plead
25 the elements of the causes of action that they are relying on;

1  and on the whole, they simply don't provide a reason to
2  believe that Mizuho did anything wrong.
3      THE COURT: Okay. Why don't you do all the arguments
4  at the same time?
5      MR. FORTINSKY: Well, what we had proposed to the
6  plaintiffs, and the plaintiffs had agreed to, was to do
7  personal jurisdiction first, you know, on the theory that that
8  would be more efficient, because there's, we think, a pretty
9  substantial argument here that the Court simply does not have
10 jurisdiction over this case as pleaded.
11     The Court -- the Supreme Court, as the Court may be
12 aware, has in recent terms narrowed the scope of -- narrowed
13 the grounds on which jurisdiction can be established over a
14 company from out of the country. And here, we believe that
15 there's no jurisdiction over Mizuho because they would have to
16 show that Mizuho is at home in Illinois, that its unique, its
17 principal domicile is here in Illinois.
18     THE COURT: So, you're saying that they're going to
19 be arguing general jurisdiction and not specific jurisdiction,
20 is that right?
21     MR. FORTINSKY: Well, they may be arguing specific
22 jurisdiction as well, but there, too, we think it's pretty
23 clear, this is a -- this is a dispute that arises from
24 Mizuho's relationship with its customer, Mt. Gox, and that
25 relationship was established and served and took place

1 entirely in Japan.

2 And that remains true even if it happens to be true
3 that one of Mt. Gox's customers, one of Mizuho's customer's
4 customers happens to be from the United States. It doesn't
5 change the fact that the -- the question is whether Mizuho did
6 anything wrong or failed to do anything it was supposed to do,
7 was an issue of what it did or didn't do in Japan vis-a-vis a
8 Japanese customer. And, therefore, specific jurisdiction is
9 lacking.

10 THE COURT: Okay. You make a good point about
11 general jurisdiction, and I'd point you to a decision that the
12 Seventh Circuit issued either yesterday or the day before
13 recognizing exactly what you said, Mr. Fortinsky, that the
14 Supreme Court has narrowed the bounds of general jurisdiction.
15 But we still do have specific jurisdiction, and I think that's
16 where the main fight is going to be.

17 So, plaintiff, I ordinarily don't do serial
18 Rule 12(b)(6) motions, and, in fact, arguably, they're not
19 allowed under Rule 12(h). But -- I mean, that's not to say
20 that a court can't say, "Well, I'm going to allow it in this
21 situation if it makes sense." So, let me ask you, do you
22 think that this makes sense?

23 MR. SCHARG: Well, in the context of the proposal
24 was -- I spoke with counsel yesterday. We were talking about
25 the case. He suggested that the successive 12(b) motions was

Case: 1:14-cv-01437 Document #: 167-1 Filed: 12/01/15 Page 18 of 20 PageID #:1604

17

1   his preference, and I said that I didn't mind.  I mean, as
2   long as the Court is comfortable with that, it's fine.  I
3   would generally prefer to do everything all at once, but I'll
4   leave it to the Court's discretion.
5                MR. QUINN:  Your Honor, if I may --
6                THE COURT:  Go ahead.
7                MR. QUINN:  I believe the conversation between
8   plaintiffs' counsel and Mr. Fortinsky was very much in the
9   spirit of the question you began with, which is efficiency.
10  It's our view that because this jurisdictional issue is such a
11  threshold question, that by resolving it and perhaps resolving
12  it on a slightly more expeditious schedule than the otherwise
13  regular, routine 12(b)(6) schedule, we would avoid the fulsome
14  full-blown 12(b)(6) motion practice that we would otherwise
15  engage in.
16               MR. FORTINSKY:  If I may add one thing, thank you,
17  Mr. Quinn.  We had proposed a briefing schedule that we
18  thought was appropriate to a quick and simpler motion, the
19  four weeks that we mentioned a moment ago.  I think if the
20  Court were to conclude that it would be better to do
21  everything at the same time, then we would respectfully ask
22  for a briefing schedule in which we had, let's say, 60 days to
23  brief the motion, and then we would naturally allow the
24  plaintiffs a similar time for opposition.
25               THE COURT:  I think you guys think this case is a lot

1  more complicated than I think it is; but you know the case
2  better than I do, so you could very well be right.
3          Okay.  We'll have it your way.  We'll do the personal
4  jurisdiction first.  The motion should be filed by May 14th,
5  the response on June 11th, the reply on June 27th.  Let's come
6  in -- I want to give you an answer on this sooner rather than
7  later, so let's come in the week of July 20th.  And it will be
8  my goal to either have a decision before then or to give you a
9  decision on the record the week of June 20th.
10         THE CLERK:  July.
11         THE COURT:  I'm sorry.  July 20th.
12         THE CLERK:  July 22nd, 9:00 a.m.
13         THE COURT:  So, that's July 22nd, 9:00 a.m.  Is that
14 all right with everybody?
15         MR. SCHARG:  Yes, your Honor.
16         THE COURT:  Yes?
17         MR. FORTINSKY:  I'm just checking my calendar.  I
18 think that looks fine.
19         THE COURT:  Does that look fine?
20         MR. FORTINSKY:  Yes.  Thank you, your Honor.
21         MR. SCHARG:  I'd just like to flag one more issue.
22 To the extent that we see the motion and we think that we need
23 some personal-jurisdiction-related discovery, I don't know
24 that we'd have to come in to the Court.  We've had a good
25 relationship between counsel.  And to the extent that we can

1 informally obtain the information that we would want, I think
2 we would try to do that first. But if we can't, I just want
3 to flag for your Honor that we might come in and ask for a
4 week or two of jurisdictional discovery, some very minor and
5 very narrow interrogatories.
6   THE COURT: That's fine. If you have to come to me
7 with it, do so. If you can work it out yourselves, that's
8 fine, too.
9   MR. SCHARG: Thank you, your Honor.
10   THE COURT: Anything else?
11   MR. SCHARG: That's it from us.
12   THE COURT: All right. Thank you.
13   MR. FORTINSKY: Thank you, your Honor.
14   MR. FUMAGALLI: Thank you, Judge.
15   MR. QUINN: Thank you, your Honor.
16   (Which were all the proceedings heard.)
17                    CERTIFICATE
18   I certify that the foregoing is a correct transcript from
19 the record of proceedings in the above-entitled matter.
20
21 */s/Charles R. Zandi*                    *May 7, 2015*
22 Charles R. Zandi                         Date
   Official Court Reporter
23
24
25