# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

GREGORY GREENE and JOSEPH LACK,
individually and on behalf of all others
similarly situated,

*Plaintiffs*,

v.

MIZUHO BANK, LTD., a Japanese financial
institution, and MARK KARPELES, an
individual,

*Defendants*.

Case No. 1:14-cv-01437

Hon. Gary Feinerman

Magistrate Judge Susan Cox

## PLAINTIFFS' OPPOSITION TO DEFENDANT MIZUHO BANK, LTD.'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM OR ALTERNATIVELY FOR *FORUM NON CONVENIENS*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................1

BACKGROUND ...........................................................................................................3

I.      Mizuho was Mt. Gox's only Banking Partner Serving Users in the
        United States ...................................................................................................3

II.     To Force an End to the Banking Relationship, Mizuho Implemented New
        Policies—not Disclosed to the Public—Designed to Disrupt Mt. Gox's Business ........4

III.    As a Direct Consequence of Mizuho's Conduct, Mt. Gox was Forced to
        Shut Down and Mt. Gox Users Lost Everything .............................................5

ARGUMENT ...............................................................................................................6

I.      MIZUHO'S RULE 12(B)(6) MOTION SHOULD BE DENIED ...............................6

        A.      Illinois Law Applies to This Dispute ...................................................7

        B.      Plaintiffs Adequately Allege that Mizuho Tortiously Interfered With
                Their Contracts With Mt. Gox .............................................................7

                1.      Plaintiffs sufficiently allege that Mizuho intended to interfere with
                        their contracts with Mt. Gox ....................................................8

                2.      Whether Karpeles's fraud was a superseding cause of Plaintiffs'
                        losses is an affirmative defense ...............................................11

                        a.      Mizuho is liable for losses that resulted when Mizuho
                                made it impossible for Mt. Gox to perform its contracts ...........11

                        b.      Whether Mizuho or Karpeles is more liable for
                                Plaintiffs' losses cannot be resolved at this stage .........13

                3.      Whether Mizuho's actions were justified is an affirmative defense ...........15

        C.      Plaintiffs' Fraudulent-Concealment Claim is More Than Plausible .............17

                1.      Mizuho had a duty to disclose .................................................18

                2.      Mizuho possessed the requisite intent ......................................20

                3.      Plaintiff Lack, and the Deposit Subclass, were harmed by
                        Mizuho's silence .....................................................................21

i

**D.** **Plaintiffs' Unjust Enrichment Claim Stands Alone** ..........................................22

**E.** **Mizuho Should Be Held to Account** ...................................................23

**II.** **MIZUHO'S *FORUM NON CONVENIENS* ARGUMENT SHOULD BE REJECTED** ........................................................................................23

    **A.** **The Private Interest Factors Favor Plaintiffs, Not Mizuho** .........................25

        *1.* *This Court is a more convenient forum for witnesses in this case* ............25

        *2.* *Documentary evidence can easily be produced in this Court* ..................26

    **B.** **The Public Interest Factors Do Not Favor Dismissal** ......................................27

        *1.* *Illinois, not Japanese law, applies here* ...............................................27

        *2.* *America has a substantial interest in this dispute* ...................................28

        *3.* *This Court provides a far more efficient forum in which to litigate this action* ........................................................................................28

**CONCLUSION** ........................................................................................29

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases:**

*Gomez v. Toledo*, 446 U.S. 635 (1980)..................................................................14, 15

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...........................................................23

*Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518 (1947) ................................. 23-24

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235 (1981).......................................................23

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422 (2007)...........23, 24

**United States Circuit Court of Appeals Cases:**

*Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150 (2d Cir. 1968).........................27

*Bausch v. Stryker Corp.*, 630 F.3d 546 (7th Cir. 2010) ...............................................15

*Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502 (7th Cir. 2007) .........................9

*Carlson v. CSX Transp., Inc.*, 758 F.3d 819 (7th Cir. 2014) ......................................7, 8

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*,
    797 F.3d 426 (7th Cir. 2015)................................................................................28

*Clerides v. Boeing Co.*, 534 F.3d 623 (7th Cir. 2008) .............................................23, 24

*Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998)..............................................................9

*Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677 (9th Cir. 2009).....................................22

*Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220 (4th Cir. 2002) ..............................19

*Empress Casino Joliet Corp. v. Johnston*, 763 F.3d 723 (7th Cir. 2014)....................12

*Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015) ..........................24

*Geinosky v. City of Chicago*, 745 F.3d 643 (7th Cir. 2012) ........................................16

*George A. Fuller Co. v. Chi. Coll. of Ostepathic Med.*, 719 F.2d 1326 (7th Cir. 1983) ..............13

*Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332 (7th Cir. 1992)..........13

*In re Air Crash Disaster Near Chicago*, 644 F.2d 694 (7th Cir. 1981)........................27

*In re Ford Motor Co.*, 344 F.3d 648 (7th Cir. 2002) .................................................................24

*Kamel v. Hill-Rom Co.*, 108 F.3d 799 (7th Cir. 1997)...............................................................3

*Kimble v. Donahoe*, 511 F. App'x 573 (7th Cir. 2013) ............................................................4

*Lott v. Levitt*, 556 F.3d 564 (7th Cir. 2009) ...............................................................................7

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ..................................................20

*Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312 (11th Cir. 2004) ..............................27

*Nation v. Am. Capital, Ltd.*, 682 F.3d 648 (7th Cir. 2012) ....................................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ..............................................................................................18

*R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678 (7th Cir. 1987)......................10, 11

*Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510 (7th Cir. 2015)...............16

*Smith v. Dart*, 803 F.3d 304 (7th Cir. 2015) ..............................................................................6

*Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842 (7th Cir. 1999).............................................28

*Spitz v. Proven Winners N. Am. LLC*, 759 F.3d 724 (7th Cir. 2014)......................................7

*Stroitelstvo Bulgaria Ltd. v. Bulgarian-American Enter. Fund*,
    589 F.3d 417 (7th Cir. 2009) ..............................................................................................26

*Swanson v. Citibank, N.A.*, 614 F.3d 400 (7th Cir. 2010).................................................9, 22

*Tamayo v. Blagojevich*, 526 F.3d 1074 (7th Cir. 2008)..........................................................10

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
    475 F.3d 824 (7th Cir. 2007) ..............................................................................................20

*U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365 (7th Cir. 2016) ...........................18

*U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849 (7th Cir. 2009).............................18, 21

*Vincent v. City College of Chi.*, 485 F.3d 919 (7th Cir. 2007) .................................................8

*Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516 (7th Cir. 2003) ......................................8

*Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995) ....................................................7

*Wernsing v. Thompson*, 423 F.3d 732 (7th Cir. 2005)......................................................8

*Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239 (7th Cir. 1990)..................................25, 28

**United States District Court Cases:**

*Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748 (N.D. Ill. 2015)........................................15

*Dollar Tree Stores Inc. v. Toyama Partners, LLC*,
    No. 10-cv-00325, 2010 WL 1688583 (N.D. Cal. Apr. 26, 2010)....................................17

*DSM Desotech, Inc v. 3D Sys. Corp.*,
    No. 08 C 1531, 2013 WL 214677 (N.D. Ill. Jan. 18, 2013) ............................................11

*FE Digital Investments Ltd. v. Hale*, 499 F. Supp. 2d 1054 (N.D. Ill. 2007) ........................ 19-20

*Guerrero v. Piotrowski*, 67 F. Supp. 3d 963 (N.D. Ill. 2014)............................................6

*Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078 (N.D. Ill. 2002)....................................25

*House of Brides, Inc. v. Alfred Angelo, Inc.*,
    No. 11-cv- 07834, 2014 WL 6845862 (N.D. Ill. Dec. 4, 2014)........................................17

*In re: MtGox Co., Ltd.*, No. 14-31229-sgj-15 (Bankr. N.D. Tex.) ..................................3, 4

*Limestone Dev. Corp. v. Village of Lemont*, 473 F. Supp. 2d 858 (N.D. Ill. 2007)......................16

*Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931 (N.D. Ill. 2006)..............................26

*San Francisco Tech., Inc. v. Sunstar Ams., Inc.*,
    No. 10-cv-5000, 2011 WL 291168 (N.D. Ill. Jan. 27, 2011).........................................21

*Shirley v. Jed Capital LLC*, 724 F. Supp. 2d 904 (N.D. Ill. 2010) ................................23

*Simonian v. Maybelline LLC*,
    No. 10-cv-1615, 2011 WL 814988 (N.D. Ill. Mar. 1, 2011) .........................................21

*Tzaras v. Evergreen Int'l Spot Trading, Inc.*,
    No. 01-cv-10726, 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003) .......................................19

**State Court Cases:**

*Bauer v. Giannis*, 834 N.E.2d 952 (Ill. App. Ct. 2005) ................................................17

*Bd. of Trustees of Cmty. Coll. Dist. No. 508 v. Coopers & Lybrand*,
  803 N.E.2d 460 (Ill. 2003) ...................................................................14

*Belden v. InterNorth, Inc.*, 413 N.E.2d 98 (Ill. App. Ct. 1980) ....................................10

*Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,
  10 N.E.3d 902 (Ill. 2014) ...................................................................27

*C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 19 N.E.3d 638 (Ill. App. Ct. 2014) ................22

*Gagnon v. Schickel*, 983 N.E.2d 1044 (Ill. App. Ct. 2012) .........................................22

*Gleim v. Roberts*, 919 N.E.2d 367 (Ill. App. Ct. 2009) ............................................27

*Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805 (Ill. App. Ct. 1993) ......................18

*HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*,
  545 N.E.2d 672 (Ill. 1989) ...................................................11, 15, 22, 23

*JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*,
  9 N.E.3d 104 (Ill. App. Ct. 2014) ........................................................18, 19

*Lagen v. Balcor Co.*, 653 N.E.2d 968 (Ill. App. Ct. 1995) .........................................20

*Langer v. Becker*, 531 N.E.2d 830 (Ill. App. Ct. 1988) ............................................15

*LaRocco v. Bakwin*, 439 N.E.2d 537 (Ill. App. Ct. 1982) ...........................................10

*Meadowmoor Dairies v. Milk Wagon Drivers' Union of Chi.*,
  21 N.E.2d 308 (Ill. 1939) ...................................................................13

*Morrissey v. Arlington Park Racecourse LLC*, 935 N.E.2d 636 (Ill. App. Ct. 2010) ..................13

*Netisingha v. End of the Line, Inc.*, 437 N.E.2d 857 (Ill. App. Ct. 1982)...........................23

*Philip I. Mappa Interests, Ltd. v. Kendle*, 554 N.E.2d 1008 (Ill. App. Ct. 1990)....................17

*Reuben H. Donnelly Corp. v. Brauer*, 655 N.E.2d 1162 (Ill. App. Ct. 1995) ..........................15

*Roy v. Coyne*, 630 N.E.2d 1024 (Ill. App. Ct. 1994) ...............................................15

*Scholwin v. Johnson*, 498 N.E.2d 249 (Ill. App. Ct. 1986)...........................................8

*Schrager v. N. Community Bank*, 767 N.E.2d 376 (Ill. App. Ct. 2002)................................18

*Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1 (Ill. App. Ct. 1995).........................10

*Stewart v. Thrasher*, 610 N.E.2d 799 (Ill. App. Ct. 1993)............................................20

*Swager v. Couri*, 395 N.E.2d 921 (Ill. 1977)................................................................15

*Turcios v. DeBruler Co.*, 32 N.E.3d 1117 (Ill. 2015) ...................................................12

*Warren v. LeMay*, 491 N.E.2d 464 (Ill. App. Ct. 1986) ...............................................10

*Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425 (Ill. App. Ct. 1998)....................................15

**Miscellaneous Authorities**:

Fed. R. Civ. P. 9 .............................................................................................................20

*Joyce v. MtGox, Inc.*, No. CV-14-500253-00CP (Ont. Sup. Ct.) ..................................16

Kengo Nishigaki and Takeshi Yoshida, "The New Class Action Legislation Promulgated in
     Japan," *available at* http://www.bakermckenzie.co.jp/e/material/dl/
     supportingyourbusiness/newsletter/disputeresolution/ClientAlert_201401_DisputeResolut
     ion_E.pdf (January 2014)..........................................................................................28

Michael Madderra, *The New Class Actions in Japan*,
     23 Pac. Rim L. & Pol'y J. 795 (2014) .......................................................................28

RESTATEMENT (SECOND) OF TORTS ....................................................................10, 12, 14

RESTATEMENT (THIRD) OF TORTS .................................................................................12, 14

"The Consumer Contract Act,"
     http://www.consumer.go.jp/english/cca/ (accessed Mar. 11, 2016) ..................................28

## INTRODUCTION

In its motion to dismiss, Defendant Mizuho Bank, Ltd. ("Mizuho") rewrites the complaint to cast itself as an innocent bystander caught in a storm created by its co-defendant Mark Karpeles and the demise of his Mt. Gox bitcoin exchange. It was quite a storm: Mt. Gox's collapse caused its 120,000 customers (of whom some 30,000 are located in the United States) to lose hundreds of millions of dollars in bitcoin and fiat currency. And while there's plenty of blame to be assigned to Karpeles and the entities he controlled, they're certainly not the only bad actors here.

In the months before Mt. Gox's collapse, Mizuho—the sole bank allowing American Mt. Gox users to access funds held by Mt. Gox—determined that it no longer wanted to do business with Mt. Gox and set a plan in motion to force Mt. Gox to sever their business relationship. With its right hand, Mizuho limited customer withdrawals from Mt. Gox, created new and arbitrary documentation requirements, and refused to process international wire transfer requests, all of which made it virtually impossible for Mt. Gox's customers to withdraw their money. With its left, Mizuho kept accepting wire transfers earmarked for deposit into Mt. Gox, skimming healthy transaction fees off the top to keep for itself. Mizuho knew that the consumers making those transfers would never be able to withdraw their money, since Mizuho itself was preventing those withdrawals, but it made sure that this fact remained secret.

That scheme, alleged in detail in the Second Amended Complaint, forms the basis of Plaintiffs Gregory Greene and Joseph Lack's ("Plaintiffs") claims against Mizuho for tortious interference with contract, fraudulent concealment, unjust enrichment, and an accounting. Mizuho now seeks to have all four counts dismissed, either on the basis that Plaintiffs fail to state a claim or on the grounds of *forum non conveniens*.

1

With respect to Plaintiffs' claim for tortious interference, Mizuho starts by offering a series of reasons that it cannot be held liable: that Plaintiffs have not met the required pleading standard, that Karpeles (not Mizuho) caused Plaintiffs' losses, and that Mizuho's actions were justified. But Mizuho misstates and misapplies the relevant pleading standard and its remaining arguments are affirmative defenses that are not supported by the allegations in the complaint. Ultimately, Mizuho's arguments attacking this claim rise and fall on inferences drawn in its favor—something that cannot be done on a motion to dismiss—and, therefore, they all fail.

Second, Mizuho argues that Plaintiffs have not alleged a fraudulent-concealment claim, asserting primarily that it had no duty to Plaintiffs, that it did not intend to defraud anyone, and that its actions did not cause Plaintiffs' losses. But the complaint clearly alleges that Mizuho *did intend* for Mt. Gox users to operate under the misperception that Mt. Gox was a healthy, functioning bitcoin exchange for which Mizuho was handling both deposits and withdrawals. Thus, when Mizuho took affirmative steps to conceal the fact that it wasn't allowing withdrawals from Mt. Gox *while continuing to take deposits*, its silence combined with its deceptive conduct gave rise to a duty to disclose. And as for causation, Plaintiffs would not have invested through Mt. Gox absent Mizuho's fraud. Having lost that money, they may hold Mizuho liable. Mizuho's arguments to the contrary—like those attacking the tortious interference claim—are based on impermissible inferences in its favor.

Next, Mizuho seeks dismissal of Plaintiffs' equitable claims, albeit in a cursory and undeveloped manner. Contrary to Mizuho's suggestion, Plaintiffs' unjust enrichment claim does not necessarily stand or fall with their fraudulent concealment claim: Not only does the unjust enrichment claim seek to recover for different harms (transaction fees rather than the full amount of their investments), but Plaintiffs are entitled to recover under that theory if it would be unjust

2

for Mizuho to keep the money, regardless of whether Plaintiffs otherwise can prove up their fraud claim. Both Illinois and California courts recognize that unjust enrichment is a cause of action, not simply a remedy, and Mizuho's survey of the case law on this point is incomplete and self-serving. And an accounting is necessary to determine where Plaintiffs' money is and how much is left.

Finally, Mizuho also asks the Court to punt this action to Japan on *forum non conveniens* grounds. The bottom-line inquiry here is whether dismissal based on *forum non conveniens* "best serves the convenience of the parties and the ends of justice." *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 802 (7th Cir. 1997). It doesn't. There are over 30,000 United States-based victims of Mizuho's conduct, and much of the documentary evidence supporting their claims is located in the United States. Although Mizuho intimates in its brief that Japanese law applies to this action, that argument is both undeveloped and inconsistent with seeking dismissal under Illinois (or California) law. Given America's substantial interests in adjudicating the claims of its victim-citizens and the fact that this Court (after two years) has the institutional competence to adjudicate this case, there is no reason to force Plaintiffs to abandon their chosen forum and litigate on the other side of the world.

Mizuho's (second) motion to dismiss should thus be denied in its entirety.

## BACKGROUND

### I.      Mizuho was Mt. Gox's Only Banking Partner Serving Users in the United States.

Mizuho, a Japanese bank that conducts business worldwide, including in the United States, was Mt. Gox's international banking partner. (Second Amended Complaint ["Compl."] Dkt. 146, ¶ 7.) Mizuho was indispensable to Mt. Gox's operation and success because Mizuho, and Mizuho alone, provided withdrawal and deposit banking services for Mt. Gox's 30,000

American users. (Compl. ¶¶ 22, 25; *In re: MtGox Co., Ltd.*, No. 14-31229-sgj-15 (Bankr. N.D.

Tex.), Declaration of Kobayashi in Support of Petition for Recognition, Dkt. 127 at ¶ 24 ("I

currently have information on the location of approximately 80,000 customers…approximately

30,701 customers are located in the United States.").)[1] This included: (i) approving and accepting

international wire transfers of cash sent by users located in Illinois for deposit into their Mt. Gox

accounts, and (ii) processing international wire withdrawals from Mt. Gox to the bank accounts

of Illinois users. (*Id.* ¶¶ 7, 22.) Mizuho received a service fee from users on each transaction.

**II.      To Force an End to the Banking Relationship, Mizuho Implemented New Policies—
        Not Disclosed to the Public—Designed to Disrupt Mt. Gox's Business.**

Beginning in 2013, Mizuho became increasingly concerned by Mt. Gox's growing

transaction volumes amid reports that U.S. authorities were investigating Mt. Gox for business

dealings related to money laundering and sought to end the parties' business relationship.

(Compl. ¶¶ 26, 27.) However, rather than terminate the relationship outright, Mizuho wanted Mt.

Gox to be the one to officially sever the banking relationship, but Mt. Gox wouldn't be bullied.

(*Id.*) To force Mt. Gox's hand, Mizuho implemented a series of new banking policies that were

designed to frustrate Mt. Gox's business and disrupt its relationship and contracts with its

customers. (*Id.* ¶ 28.) These policies included: (i) drastically raising its banking fees; (ii) limiting

the number and amount of withdrawals that it would process, (iii) removing Mt. Gox's access to

automated processes and requiring it to submit user withdrawal requests manually (i.e. by paper),

and (iv) refusing to process certain wire requests. (*Id.*) In mid-2013, Mizuho stopped processing

international wire withdrawals altogether, leaving American users high and dry, unable to

withdraw money from their accounts. (Compl. ¶¶ 2, 29.)

---

[1]      The declaration is cited in the Complaint, and documents from Mt. Gox's bankruptcy
proceedings may be judicially noticed. *See Kimble v. Donahoe*, 511 F. App'x 573, 575 n.2 (7th
Cir. 2013).

Nevertheless, to keep up appearances and avoid further scrutiny, Mizuho actively concealed its new, oppressive policies towards Mt. Gox from the public. For instance, it decided not to freeze Mt. Gox's account entirely, continuing to accept deposits into the exchange (and collect the attendant fees). (*Id.* ¶¶ 31, 32.) Further, Mizuho prohibited Mt. Gox from revealing that it had terminated withdrawals, instructed its own employees not to reveal its new policies, and knowingly stayed silent while Mt. Gox falsely assured users that withdrawal issues were temporary and being addressed. (*Id.* ¶¶ 35, 36, 123.) Mizuho did so because it knew that if U.S. users found out about its new policies, they would no longer continue making deposits (and paying Mizuho's transaction fees), or worse, that it would be publicly viewed as contributing to Mt. Gox's problems. (*Id.* ¶¶ 122, 123.) By accepting deposits while concealing the above, Mizuho directly contributed to the mistaken belief that Mt. Gox was operating normally and users would be able to access their funds. (*Id.* ¶ 125.)

Mizuho's new banking policies—and its active concealment of them—directly affected (and injured) Mt. Gox users. Plaintiff Gregory Greene, for instance, was unable to withdraw the $25,000 in bitcoins that were stored in his account before Mt. Gox shut down. (Compl. ¶ 54.) And Plaintiff Lack invested $40,000 through Mt. Gox after Mizuho had ceased processing withdrawals, a sum which was promptly lost when Mt. Gox collapsed. (*Id.* ¶¶ 57, 65.) Had Mizuho come clean about its banking policies and disruption of Mt. Gox's business, Greene could have taken steps to withdraw his bitcoins from Mt. Gox before it went bankrupt, as bitcoin withdrawals were possible until early February 2014, and Lack would have invested his money through other exchanges. (*Id.* ¶¶ 37, 55, 64.)

### III.   As a Direct Consequence of Mizuho's Conduct, Mt. Gox Was Forced to Shut Down and Mt. Gox Users Lost Everything.

By the end of February 2014, Mt. Gox could no longer stay in business (due to Mizuho's

5

coercive banking policies and other internal factors) and was forced to shut down, taking with it all user assets that had been stored on its servers. (*Id.* ¶¶ 39, 106.) Accordingly, Plaintiffs Greene and Joseph Lack filed suit on behalf of themselves and other users in the United States that had lost money or bitcoins when Mt. Gox shut down. (Dkt. 146.) In their Complaint, Plaintiffs allege that Mizuho tortiously interfered with their contracts with Mt. Gox—which promised users the ability to freely buy, sell, trade, and withdraw their bitcoins and cash—by imposing the coercive policies described above. (*Id.* ¶¶ 100-08.) Plaintiffs further allege that Mizuho fraudulently concealed material facts from Mt. Gox users (i.e. that it had stopped providing withdrawals and users would be unable to access their deposited funds) and otherwise contributed to user misapprehension by continuing to accept deposits. (*Id.* ¶¶ 117-128.) Finally, and also on behalf of the depositor subclass, the Second Amended Complaint alleges unjust enrichment and requests an accounting. (*Id.* ¶¶ 110-16; 130-32.)

## ARGUMENT

Mizuho advances a litany of arguments for dismissal either under Rule 12(b)(6) or for *forum non conveniens*. None of Mizuho's arguments justify dismissal.

## I.    MIZUHO'S RULE 12(B)(6) MOTION SHOULD BE DENIED.

In reviewing Mizuho's motion to dismiss under Rule 12(b)(6), the Court assumes the truth of all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiffs. *See Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). To survive a motion to dismiss, those facts and reasonable inferences need only establish a claim to relief that is plausible on its face. *See Guerrero v. Piotrowski*, 67 F. Supp. 3d 963, 967 (N.D. Ill. 2014). Thus, when reviewing the allegations in a complaint, "the proper question to ask is still *could* these things

have happened, not *did* they happen." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 827 (7th Cir. 2014) (quotation omitted) (emphasis in original).

Mizuho violates these fundamental precepts. In its bid for dismissal, Mizuho draws a number of impermissible inferences in its own favor and invokes a series of affirmative defenses. But taking Plaintiffs' allegations as true, Mizuho rendered performance on Mt. Gox's contracts with exchange participants impossible, and defrauded many new (and some existing) users into investing (or reinvesting) their money in the exchange. In this way, Mizuho played a significant role in Mt. Gox's collapse, and should be held liable for Plaintiffs' resulting losses.

### A.    Illinois Law Applies to This Dispute.

The governing law here is the law of Illinois. Although at various points in its brief Mizuho intimates that Japanese law applies (Dkt. 183, at 2, 9 n.5, 16, 28-30), it seeks dismissal only under Illinois (or California) law. But Mizuho "is not entitled to get a free peek at how [their] dispute will shake out under Illinois law and, when things don't go [their] way, ask for a mulligan under the laws of a different jurisdiction." *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). Moreover, Mizuho does not argue that any conflict exists between Illinois and Japanese law (and its failure to do so in its opening brief waives any argument that a conflict exists). *See Vukadinovich v. McCarthy*, 59 F.3d 58, 62 (7th Cir. 1995) (holding choice-of-law issues waivable). Illinois law therefore applies. *See Spitz v. Proven Winners N. Am. LLC*, 759 F.3d 724, 729 (7th Cir. 2014) (concluding that district court was right to apply Illinois law because plaintiff did not identify any material conflict of law).

### B.    Plaintiffs Adequately Allege that Mizuho Tortiously Interfered with Their Contracts with Mt. Gox.

The elements of tortious interference in Illinois are: "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this

contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the

contract; (4) a subsequent breach by the other, caused by defendant's wrongful conduct; and (5)

damages." *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (quoting *HPI*

*Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)). "While this

statement of the necessary elements seems to require inducement of the third party to breach the

contract, we are persuaded that the scope of the cause of action is broader and encompasses the

situation in which the defendant" renders performance impossible. *Scholwin v. Johnson*, 498

N.E.2d 249, 255 (Ill. App. Ct. 1986).

Mizuho argues that Plaintiffs' tortious-interference claim should be dismissed for three

reasons: (1) Plaintiffs do not "plead facts showing" that Mizuho intended to interfere with their

contracts with Mt. Gox; (2) Karpeles caused Plaintiffs' losses, not Mizuho; and (3) Mizuho's

actions were justified. None of Mizuho's arguments warrant dismissal.[2]

### 1. *Plaintiffs sufficiently allege that Mizuho intended to interfere with their contracts with Mt. Gox.*

Mizuho first says Plaintiffs did not "plead facts showing" that Mizuho caused Mt. Gox to

breach its contracts by delaying international wire withdrawals. (Dkt. 183, at 15.) But at this

stage, Plaintiffs need neither "plead facts," *see Vincent v. City College of Chi.*, 485 F.3d 919, 923

(7th Cir. 2007), nor "show" anything, *see Carlson*, 758 F.3d at 827. Mizuho also contends that

this claim needs to be pleaded with particularity under Rule 9(b). (Dkt. 183, at 9 n.4.) That is

---

[2]     As an apparent afterthought, Mizuho briefly contends that Plaintiffs lack standing to
bring their tortious interference claim. (See Dkt. 183, at 17, citing *Simon v. E. Ky. Welfare Rights
Org.*, 426 U.S. 26 (1976).) But both plaintiffs clearly have standing. "Generally, any person
whose injury can be redressed by a favorable judgment has standing to litigate, and injuries
compensable in monetary damages can always be redressed by a court judgment." *Wernsing v.
Thompson*, 423 F.3d 732, 745 (7th Cir. 2005) (internal quotations and citation omitted). Here,
each plaintiff lost money as a result of the actions of Mizuho and Karpeles. That harm can be
redressed by monetary damages, and thus, a court judgment.

incorrect. Rule 9(b) applies to "circumstances constituting fraud," and no such circumstances are alleged in support of Plaintiffs' claims for tortious interference. The merits of this claim do not turn on the separate fraud alleged in the complaint. As such, the general notice-pleading standard applies to this claim. *See Cook v. Winfrey*, 141 F.3d 322, 327 (7th Cir. 1998) (concluding that plaintiff stated a claim under Rule 8 for tortious interference with contract). That means Plaintiffs need only to "give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).[3]

Under the correct standard, Plaintiffs' allegations are clearly sufficient: They allege that Mizuho rendered Mt. Gox completely incapable of performing on its contracts with its users and Mizuho knew that such impossibility of performance was the necessary consequence of its actions. Indeed, that was the point: The more painful Mizuho made it for Mt. Gox's users, the more likely it was that Mt. Gox would be forced to sever the banking relationship. (Compl. ¶¶ 31, 35, 103-06.) If that happened, it would be impossible for Mt. Gox to perform on its contracts with its American customers. While this may not have been Mizuho's ultimate goal, it knew that its actions would necessarily bring about such a result.

Mizuho was, and knew that it was, the only bank that processed cash transactions on behalf of Mt. Gox's American customers. (Compl. ¶ 25.) Thus, when Mizuho pressured Karpeles to close Mt. Gox's account with Mizuho, first by limiting the number of transactions it would process on Mt. Gox's behalf, and then refusing to process withdrawals from Mt. Gox's account altogether, it knew that its conduct necessarily would render Mt. Gox incapable of fulfilling its

---

[3]     *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007), upon which Mizuho relies, is inapposite. There, the defendant conspired with the third-party to interfere with the plaintiff's contractual rights. *Id.* Under Rule 9, that conspiracy needed to be alleged with particularity. Here, Mizuho's fraud has nothing to do with its interference with the contractual relationship between Plaintiffs and Mt. Gox.

contractual obligations to its American users. (Compl. ¶¶ 27-30.) The reasonable inference to be drawn from the Complaint is that Mizuho intended to make it difficult, and then impossible, for Mt. Gox's American users to withdraw their money, so that those users would put pressure on Mt. Gox and force Mt. Gox to find a new international banking partner. (Compl. ¶¶ 27-38, 102-05.) That is more than sufficient to allege intent.

Mizuho's response that any trouble between Mt. Gox and the plaintiffs was a "secondary (unintentional)" effect of its conduct goes nowhere. First, that conclusion relies on factual inferences drawn against Plaintiffs, an impermissible step at this stage. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). But Mizuho's argument also fails as a matter of law. Disruption of Plaintiffs' contractual relationships with Mt. Gox was a necessary consequence of Mizuho's actions, and parties are presumed to intend the necessary consequences of their actions. *See Warren v. LeMay*, 491 N.E.2d 464, 474 (Ill. App. Ct. 1986). In this context then, as the Restatement explains, intentional interference with contract occurs when "the actor does not act for the purpose of interfering with the contract or desire it but knows that the interference is certain or substantially certain to occur as a result of his action. The rule applies, in other words, to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." Restatement (Second) of Torts § 766 cmt. j.[4] This is precisely Plaintiffs' theory. Thus, Plaintiffs' allegations plausibly establish Mizuho's intent to interfere with their relationship with Mt. Gox.[5]

---

[4]     No Illinois case addresses this theory of liability, but Illinois courts regularly rely on the Restatement when adjudicating claims for tortious interference with contract. *See, e.g.*, *Soderlund Bros., Inc. v. Carrier Corp.*, 663 N.E.2d 1, 10-11 (Ill. App. Ct. 1995); *LaRocco v. Bakwin*, 439 N.E.2d 537, 542-43 (Ill. App. Ct. 1982); *Belden v. InterNorth, Inc.*, 413 N.E.2d 98, 102-03 (Ill. App. Ct. 1980).

[5]     Mizuho relies on *R.E. Davis Chem. Corp. v. Diasonics, Inc.*, 826 F.2d 678, 687 (7th Cir. 1987), for the proposition that a party cannot be held liable under Illinois law for negligently

2. *Whether Karpeles's fraud was a superseding cause of Plaintiffs' losses is an affirmative defense.*

Mizuho argues that Plaintiffs' losses cannot be attributed to Mizuho because all the blame lies with Karpeles, and so "[r]egardless of what Mizuho did or did not do in mid-2013, Mt. Gox would have collapsed anyway." (Dkt. 183, at 2, 10-13.) Mizuho also suggests that Mizuho didn't cause Greene or Lack to lose money because neither had any money on deposit at the bank "at the relevant time." (Dkt. 183, at 17-18.) Neither argument withstands scrutiny.

a. Mizuho is liable for losses that resulted when Mizuho made it impossible for Mt. Gox to perform its contracts.

Plaintiffs allege a direct chain of causation from Mizuho's decision to shut off international wire withdrawals to Mt. Gox's collapse and bankruptcy. According to the complaint, Mizuho impeded Mt. Gox's ability to process customer requests from early 2013, until finally shutting off American withdrawals altogether in mid-2013. (Compl. ¶¶ 28-29.) Mt. Gox held on for several months before it finally collapsed in February 2014. (Compl. ¶ 39.) By preventing Mt. Gox users from withdrawing their money, Mizuho essentially caused Mt. Gox's investors to panic, and substantially contributed to its collapse. That was an entirely foreseeable result, and thus, on these allegations, sufficient to state a claim for tortious interference. Indeed, Mizuho essentially concedes foreseeability, asserting that "Mt. Gox did not collapse . . . until

---

inducing a third party to breach a contract with the plaintiff. (Dkt. 183, at 17 & n.11.) *R.E. Davis* holds that improper intent cannot be inferred if the defendant's conduct is "reasonably certain" to cause a third party to breach a contract. *Id.* at 685 (quoting complaint in that case). Plaintiffs do not proceed on a negligence theory: Plaintiffs' theory is that Mizuho knew that its actions would force Mt. Gox to breach its contracts with its American users, i.e., that breach was a necessary consequence. That is consistent with *R.E. Davis*, which appears to endorse the test later adopted in *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989), that "the term 'malicious,' in the context of interference with contractual relations cases, simply means that the interference must have been intentional and without justification." In that context, *R.E. Davis* says that simply because interference with contract is the necessary consequence of a defendant's acts does not make that interference unjustified. *See DSM Desotech, Inc v. 3D Sys. Corp.*, No. 08 C 1531, 2013 WL 214677, at *3 (N.D. Ill. Jan. 18, 2013).

11

after Karpeles halted his customers' ability to withdraw any form of currency from Mt. Gox."
(Dkt. 183, at 12.) Mizuho thus recognizes that Mt. Gox's collapse is connected to the investors'
inability to pull their money out of the exchange. But, as the complaint makes clear, for seven
months that inability was the result of Mizuho's actions, not Karpeles's. (*See* Compl. ¶ 106.)

That should end the matter: In Illinois, an intentional tortfeasor's liability extends to all
foreseeable and proximate consequences. *See Turcios v. DeBruler Co.*, 32 N.E.3d 1117, 1124-26
(Ill. 2015). And *any* actor who substantially contributes to a plaintiff's harm is liable because
"each person who commits a tort that requires intent is jointly and severally liable for any
indivisible injury legally caused by the tortious conduct." Restatement (Third) of Torts:
*Apportionment of Liability* § 12; *see also* Restatement (Second) of Torts §§ 431, 774A(1)(b)
(noting that one who interferes with third-party contracts "is liable for damages for consequential
losses for which the interference is a legal cause"); *Empress Casino Joliet Corp. v. Johnston*, 763
F.3d 723, 732-33 (7th Cir. 2014) (discussing general principles of causation in tort).

Mizuho cannot explain how Greene trading only in bitcoin changes the fact that Mizuho
made it impossible for Mt. Gox to perform on Greene's contract. Had Greene wanted to convert
his bitcoin into fiat currency and withdraw it, as Mt. Gox promised he would be able, he couldn't
have done so. (Compl. ¶ 29.) And Mizuho's suggestion that Lack didn't have any money
deposited in Mizuho is simply incorrect. Lack deposited $40,000 USD in a Mt. Gox account in
January 2014, after Mizuho ceased processing international wire withdrawals for Mt. Gox, but
before the exchange collapsed and was looted. (Compl. ¶ 56-57.)

Mizuho nevertheless suggests that it isn't responsible for Plaintiffs' losses because
neither Greene nor Lack attempted to withdraw any money until late February 2014. (Dkt. 183,
at 12, 17-18.) That argument misunderstands the intentional-interference tort. A successful

tortious-interference claim entitles the plaintiff to all damages resulting from the interference. A party tortiously interferes with a third-party contract if it renders performance on that contract impossible. *See Havoco of Am., Ltd. v. Sumitomo Corp. of Am.*, 971 F.2d 1332, 1344-45 (7th Cir. 1992) (applying Illinois law; affirming jury verdict on tortious-interference claim because defendant's actions had made plaintiff's performance on contract with third-party impossible); *George A. Fuller Co. v. Chi. Coll. of Ostepathic Med.*, 719 F.2d 1326, 1331 (7th Cir. 1983) ("Both the Illinois Supreme Court and the Illinois Appellate Court consistently require more than conduct rendering performance of the contract more burdensome, writing in terms of requiring either a breach of contract, termination of the contractual relations, *or rendering performance impossible*.") (emphasis added); *Meadowmoor Dairies v. Milk Wagon Drivers' Union of Chi.*, 21 N.E.2d 308, 311 (Ill. 1939), *aff'd* 312 U.S. 287 (1941) ("He has a right to enter into lawful contracts and any one who maliciously interferes by inducing such contracts to be broken, or *by doing things which make them impossible of performance*, is likewise liable.") (emphasis added). Once Mizuho completely prevented international Mt. Gox users from withdrawing money, it was impossible for Mt. Gox to perform on its contracts with any American exchange participant and so the exchange collapsed. (Compl. ¶¶ 11, 48, 64.) Mizuho is liable for the resulting harm.

> ### b. Whether Mizuho or Karpeles is more liable for Plaintiffs' losses cannot be resolved at this stage.

Yet Mizuho suggests it should get off scot-free because, it believes, Karpeles's actions caused all of Plaintiffs' losses. This boils down to the contention that Karpeles's actions were a superseding cause of that harm. But whether another's actions are a superseding cause is an affirmative defense. *See Morrissey v. Arlington Park Racecourse LLC*, 935 N.E.2d 636, 639 (Ill. App. Ct. 2010) (noting that defendant pleaded the "affirmative defense" of "intervening/ superceding cause"). Mizuho's argument about its relative liability is immaterial to the question

13

of whether Plaintiffs have stated a claim for relief, because at this stage it is premature to consider affirmative defenses. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980).

Second, Mizuho's causation argument goes to remedy, not liability. Plaintiffs were harmed both by the theft of their bitcoin and the collapse of the exchange. (Compl. ¶¶ 39-40.) Mizuho's argument that Karpeles is *more* liable, therefore, is an argument about how to apportion the remedy between the defendants, and on that point it also bears the burden of proof. Restatement (Second) of Torts § 433B(2); Restatement (Third) of Torts: *Apportionment of Liability* § A18, cmt. a; *see also Bd. of Trustees of Cmty. Coll. Dist. No. 508 v. Coopers & Lybrand*, 803 N.E.2d 460, 471-73 (Ill. 2003) (concluding that two audit firms were jointly liable for plaintiff's losses because both firms had failed to spot problematic investment that eventually resulted in "precipitous losses").

Moreover, Mizuho's comparative-liability argument is built around naked speculation. For instance, Mizuho suggests that Karpeles chose not to close the exchange when Mizuho pressured him to do so because he was, during that entire time, "siphoning off" the deposited funds of Mt. Gox users. (Dkt. 183, at 13.) And Mizuho's theory that Karpeles's fraud fully exculpates them relies on the idea that *all* of the money was stolen and that the fraud was *fait accompli*. These premises cannot be squared with the requirement that the complaint be construed in the light most favorable to the plaintiff. Finally, Mizuho's speculation about how Karpeles might have used the other bank accounts opened in Mt. Gox's name goes nowhere: Only Mizuho processed bank withdrawals for Mt. Gox's American users. (Compl. ¶ 25.) And the complaint contains almost no information about how much money these other accounts held, or how they were used.

3. *Whether Mizuho's actions were justified is an affirmative defense.*

14

Lastly, Mizuho asserts that its actions were justified. (Dkt. 183, at 14-17.) This argument raises a fact-intensive affirmative defense improper for resolution on a motion to dismiss.

In Illinois, justification is an affirmative defense unless the complaint makes clear that the defendant's conduct is privileged. *See Zdeb v. Baxter Int'l, Inc.*, 697 N.E.2d 425, 431 (Ill. App. Ct. 1998) ("Where the conduct of a defendant does not invoke a privilege, the defendant shoulders the burden to plead and prove justification as an affirmative defense."); *Reuben H. Donnelly Corp. v. Brauer*, 655 N.E.2d 1162, 1172 (Ill. App. Ct. 1995); *Roy v. Coyne*, 630 N.E.2d 1024, 1031-32 (Ill. App. Ct. 1994). Here, Mizuho does not invoke any privilege, conditional or otherwise, and instead argues only that its actions were justified. (*See* Dkt. 183, 14-17.) It has thus waived any contention that its actions were privileged. *See Craft v. Health Care Serv. Corp.*, 84 F. Supp. 3d 748, 753-54 (N.D. Ill. 2015) (noting that party waives any issue not raised in its opening brief). Therefore, its contention that its actions were justified constitutes an affirmative defense, and cannot be raised on a motion to dismiss. *See, e.g., Gomez*, 446 U.S. at 640; *Bausch v. Stryker Corp.*, 630 F.3d 546, 561 (7th Cir. 2010).[6]

But even if Greene or Lack *did* need to plead and prove that Mizuho's actions were unjustified, their allegations easily satisfy Rule 8. Mizuho provides a single possible justification

---

[6] Although not raised by Mizuho, the only conceivable privilege that might apply to its actions is the corporate officer's privilege to interfere with contracts in order "to protect an interest which the law deems to be of equal or greater value than the plaintiff's contractual rights." *Nation v. Am. Capital, Ltd.*, 682 F.3d 648, 651-52 (7th Cir. 2012) (quoting *HPI Health Care*, 545 N.E.2d at 677). That privilege does not apply here. First, the privilege attaches to officers and directors, not the corporation itself. *See, e.g., Langer v. Becker*, 531 N.E.2d 830, 833 (Ill. App. Ct. 1988) (discussing which "individuals" could invoke the privilege). Second, as *HPI Health Care* notes, the corporate-officer privilege recognizes "that the duty of corporate officers and directors to the corporations' shareholders outweighs any duty they might owe to the corporations' contract creditors." 545 N.E.2d at 677. In essence, the fiduciary duty owed to shareholders is more important under Illinois law than a generic contractual duty. *See also Swager v. Couri*, 395 N.E.2d 921, 928 (Ill. 1977). But Mizuho Bank is not publicly traded, so there is no competing duty that can justify interfering with contracts.

for its actions: "fear that being associated with Mt. Gox would expose Mizuho to legal liability and reputational harm." (Dkt. 183, at 14.) The problem with that theory is that Mizuho's contract with Mt. Gox allowed it to unilaterally to cancel its contract with Mt. Gox for a number of reasons, including, pertinently, if Mizuho suspected Mt. Gox of "performing illegal transactions" or otherwise violating its Terms of Service. (*See* Exhibit 1 to the Declaration of Alicia E. Hwang ["Hwang Decl."] attached as Exhibit A, ¶ 4.) Indeed, Mizuho attempted to cancel its contract, effective January 2013, before Mt. Gox or Karpeles were criminally charged in any jurisdiction. (*Id*. ¶ 5.) [7] And Mizuho's post hoc explanation rings especially hollow because, as the materials cited in the complaint show, the seizure of Mt Gox's American assets that apparently prompted some of Mizuho's more drastic measures was essentially regulatory, not criminal, in nature. (*See, e.g.*, Dkt. 183-1, Exh. 4.) That is a detail Mizuho should have been aware of, or at least a detail it easily could have verified. Moreover, there is serious doubt as to whether Mt. Gox was engaged in money laundering such that any actions designed to destroy the accounts of its *customers* could be justified. (*See, e.g.,* Dkt. 183-1, Ex. 3 at ¶ 12 (Mt. Gox entity seeking to register with FinCEN), ¶ 18 (Mt. Gox related entity seeking to implement anti-money laundering procedures), ¶ 20 (referring to Mt. Gox's anti-money laundering agreement with English entity), ¶ 53.) It was thus unnecessary for Mizuho to spend almost a year interfering with the contracts between Mt.

---

[7]     The documents attached as Exhibit 1 to the Hwang Declaration may be considered here. The documents were translated by an agent of Mizuho's and filed by Mizuho in litigation (brought on behalf of a class of Mt. Gox's Canadian customers) in the Ontario Superior Court of Justice. *See Joyce v. MtGox, Inc.*, No. CV-14-500253-00CP (Ont. Sup. Ct.). "Generally, court records are appropriate subjects for judicial notice because they are sources whose accuracy cannot reasonably be questioned." *Limestone Dev. Corp. v. Village of Lemont*, 473 F. Supp. 2d 858, 868 (N.D. Ill. 2007). Moreover, the party opposing a motion to dismiss may offer exhibits "to illustrate the facts the party expects to be able to prove." *Geinosky v. City of Chicago*, 745 F.3d 643, 645 n.1 (7th Cir. 2012); *see Runnion ex rel. Runnion v. Girl Scouts of Greater Chi.*, 786 F.3d 510, 528 n.8 (7th Cir. 2015).

Gox and its investors. Given Mizuho's ability to unilaterally to sever the relationship, its proffered justification simply does not hold water.[8]

Mizuho's only response is to suggest that the Plaintiffs pleaded themselves out of court by disclosing a possible reason for Mizuho's actions, relying on a series of cases in which a complete justification appears on the face of the complaint. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, No. 11-cv- 07834, 2014 WL 6845862, at *9 (N.D. Ill. Dec. 4, 2014); *Dollar Tree Stores Inc. v. Toyama Partners, LLC*, No. 10-cv-00325, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010); *Philip I. Mappa Interests, Ltd. v. Kendle*, 554 N.E.2d 1008, 1012 (Ill. App. Ct. 1990). But the complaint here does not disclose such a complete justification, so Mizuho's cases are inapposite.

Because, at this stage, Plaintiffs' allegations establish that the collapse of the Mt. Gox exchange was a foreseeable consequence of Mizuho's efforts to prevent Mt. Gox from performing on its contracts, Plaintiffs have stated a claim for tortious interference with contract.

### C. Plaintiffs' Fraudulent Concealment Claim is More Than Plausible.

To state a claim for fraudulent concealment, a plaintiff must allege that: (1) the defendant concealed a material fact under circumstances that created a duty to speak; (2) the defendant intended to induce a false belief; (3) the plaintiff could not have discovered the truth through reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and justifiably relied upon the defendant's silence as a representation that the fact did not exist; (4) the concealed information was such that the plaintiff would have acted differently

---

[8] Mizuho also spends nearly a page arguing that it was powerless to stop incoming wire transfers. (Dkt. 183, at 16.) That it both incorrect (its counsel did not dispute at the February 9 status hearing that Mizuho could have frozen Mt. Gox's account), and beside the point: Mizuho tortiously interfered with Plaintiffs' contracts by halting *outbound* transfers.

had he or she been aware of it; and (5) the plaintiff's reliance resulted in damages. *Bauer v. Giannis*, 834 N.E.2d 952, 957-58 (Ill. App. Ct. 2005).

Mizuho seeks dismissal on three grounds. First, Mizuho says it did not have a duty to disclose that it had stopped allowing Mt. Gox users to withdraw their money, stating over and over that it does not owe a duty to its "customers' customers." Second, Mizuho suggests it did not intend to defraud any of Mt. Gox's users. Finally, Mizuho again repeats that its fraudulent concealment did not damage any Mt. Gox user. Mizuho's arguments do not hold up to careful analysis.[9]

### 1. *Mizuho had a duty to disclose.*

In general, no actor has a duty to disclose information. But "silence accompanied by deceptive conduct results in an act of concealment, and at that point a duty to disclose arises." *Heider v. Leewards Creative Crafts, Inc.*, 613 N.E.2d 805, 814 (Ill. App. Ct. 1993). That is precisely what Plaintiff Lack alleges occurred here. Mizuho stopped processing international withdrawals but continued accepting deposits, and affirmatively prevented Karpeles, or anyone associated with Mt. Gox, from disclosing Mizuho's new practices. (Compl. ¶¶ 29-38, 121, 125.)[10] Mizuho's deceptive behavior is akin to a misleading partial disclosure, or a false

---

[9]     Defendant assumes that California law applies to this claim because it is made only by Lack, a California resident. (Dkt. 183, at 19 n.13.) As before, Mizuho identifies no conflict that would warrant displacing Illinois law. In any event, as the Court is aware, class member Anthony Motto stands ready and willing to enter this lawsuit, either through intervention or amendment, and represent the Deposit Subclass. Motto is an Illinois resident.

[10]     Paragraphs 32 and 36 of the Second Amended Complaint allege details "upon information and belief." When Rule 9(b) applies, as it does to Lack's fraudulent-concealment claim, allegations made "on information and belief" are generally insufficient. *See U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 370 (7th Cir. 2016). That "general rule . . . is not ironclad, however." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2011). So long as a plaintiff provides plausible grounds for its suspicions, information and belief suffice under Rule 9(b). *Id.* The complaint here provides those grounds, showing "in detail, the nature of the charge," rather than making "vague and

statement of material fact. *See JPMorgan Chase Bank, N.A. v. East-West Logistics, LLC*, 9

N.E.3d 104, 120 (Ill. App. Ct. 2014); *see also Schrager v. N. Community Bank*, 767 N.E.2d 376,

386 (Ill. App. Ct. 2002) (concluding, on review of summary judgment, that factual basis for duty

to disclose existed where defendant bank, who "had a pecuniary interest" in the plaintiff

guaranteeing a construction loan to a third party, failed to disclose what the bank knew about the

third party's financial condition, or the bank's incentive in the plaintiff's guarantee).

That Mizuho's active deception was successful is demonstrated by Lack's behavior. Lack

deposited money into a Mt. Gox account long after Mizuho had ceased operating as a normal

depository institution towards Mt. Gox. Lack invested in bitcoin through Mt. Gox in reliance on

the exchange's representations about its "security, reliability, and ability to withdraw or deposit

bitcoins at any time." (Compl. ¶ 56.) However, Mizuho's silence and its efforts to silence Mt.

Gox, made those representations erroneous from the get go: Lack could not withdraw bitcoin or

cash at any time. Hence, Mizuho was actively deceiving Lack, and other customers, and thus had

a duty to disclose. *See JPMorgan Chase Bank, N.A.*, 9 N.E.3d at 120 ("Intentional concealment

of a material fact is the equivalent of a false statement of material fact.").

Mizuho counters that no duty to speak arose in this case because a bank has no duty to

investigate fraudulent activity. (Dkt. 183, at 21-22.) Mizuho places great weight on two opinions,

*Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220 (4th Cir. 2002), and *Tzaras v. Evergreen Int'l*

*Spot Trading, Inc.*, No. 01-cv-10726, 2003 WL 470611 (S.D.N.Y. Feb. 25, 2003), in which

banks escaped liability for failing to spot the fraudulent activity of a depositor. This line of

argument misses the point. Lack's theory does not turn on any other actor's fraudulent conduct.

---

unsubstantiated assertions." *U.S. ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854-55 (7th
Cir. 2009). "[Lack's] accusations are not vague. [Mizuho] has been told exactly what the fraud
entails." *Id.* at 855. Lack's allegations therefore satisfy Rule 9(b). And, in any case, the
fraudulent-concealment claim does not rely solely on those two paragraphs.

He alleges that Mizuho had a duty to disclose that *it* was no longer allowing Mt. Gox's American users to withdraw their money because (1) that fact was material to the decisions of Mt. Gox users to invest in bitcoin through Mt. Gox, and, thus, through Mizuho, as well, and (2) because Mizuho actively contributed to the misapprehension by continuing to accept deposits and neither disclosing its actions or permitting Mt. Gox to disclose those actions. (Compl. ¶¶ 63-64.) *See FE Digital Investments Ltd. v. Hale*, 499 F. Supp. 2d 1054, 1061 (N.D. Ill. 2007) (applying Illinois law, writing that "a party's duty to speak is triggered when the party's silence is accompanied by deceptive conduct or suppression of material facts resulting in an active deception") (quoting *Lagen v. Balcor Co.*, 653 N.E.2d 968, 973 (Ill. App. Ct. 1995)).[11] Lack's theory does not require Mizuho to have uncovered Karpeles's fraud. And in any case, there is no allegation that the fraud that ultimately felled Mt. Gox occurred before mid-February 2014. Lack does not allege that Mizuho should have uncovered a fraud that was not occurring.

### 2. *Mizuho possessed the requisite intent.*

Mizuho next argues that it did not possess the requisite intent required for fraudulent concealment. (Dkt. 183, at 22-23.) In assessing this argument, it bears remembering that under Rule 9, intent "may be alleged generally." Fed. R. Civ. P. 9(b); *see McCauley v. City of Chicago*, 671 F.3d 611, 622-23 (7th Cir. 2011) (Hamilton, J., concurring in part and dissenting in part) ("In this context, 'generally' means as a conclusion, without specifying underlying facts that would support the inference."); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007) ("[Rule 9's] heightened pleading requirement does not extend to

---

[11]     Mizuho again suggests that it acted as an "ordinary" bank, referring to its purported inability to halt incoming wire transfers. (Dkt. 183, at 22.) But regardless of what Mizuho was permitted to do regarding wire transfers, it nowhere suggests that the banking law of any jurisdiction prevented it from disclosing actions it had taken with respect to an account into which more than 30,000 individuals were depositing money.

'states of mind' [but] the complaint must still afford a basis for believing that plaintiffs could prove scienter.") (quotations omitted).

Mizuho frames this element as whether it had the "intent to harm Mt. Gox's customers." (Dkt. 183, at 23.) That's not quite right. "Intent to defraud" simply means "intent to induce a false belief." *See Stewart v. Thrasher*, 610 N.E.2d 799, 804 (Ill. App. Ct. 1993). The question is simply whether the defendant intended that the plaintiff rely on a misapprehension created by the defendant's misrepresentation.

Here, Lack's allegations easily pass muster under the correct standard. He alleges that Mizuho wanted customers to believe that Mt. Gox remained a going concern, that is, it wanted to induce a false belief. (Compl. ¶¶ 31-32, 36, 124.) As Lack alleges, if Mt. Gox users were aware of how difficult it would be to transact with Mt. Gox because of Mizuho's new policies, they would not invest through the exchange. (Compl. ¶ 31.) If American investors stopped investing in the exchange, then Mizuho would be unable to continue collecting deposit fees, which was one of the chief motivations behind its deceptive conduct. And fresh off a scandal involving an unsavory customer, Mizuho was concerned with its reputation and with attracting regulatory scrutiny. (Compl. ¶¶ 26, 32.) By representing to the world that everything was up to snuff, Mizuho sought to continue making money and to avoid any unwanted attention.

Mizuho does not seriously contest these allegations. Its only substantive rejoinder is that one of Lack's allegations (about Mizuho's desire to avoid further scrutiny) is made on "information and belief." But Rule 9's command to plead fraud with particularity does not apply to intent, so Mizuho's objection is misplaced. *See Simonian v. Maybelline LLC*, No. 10-cv-1615, 2011 WL 814988, at *4 (N.D. Ill. Mar. 1, 2011) (analyzing intent in fraud claim under Rule 8 standard); *San Francisco Tech., Inc. v. Sunstar Ams., Inc.*, No. 10-cv-5000, 2011 WL 291168, at

*4 (N.D. Ill. Jan. 27, 2011) (same). In any event, as explained above, that allegation is well-supported and specific enough to satisfy Rule 9(b). *See Lusby*, 570 F.3d at 854-55.

### 3. *Plaintiff Lack, and the Deposit Subclass, were harmed by Mizuho's silence.*

Mizuho lastly reprises its argument that Lack's loss is solely attributable to Karpeles's actions, so Lack cannot state a claim for fraudulent concealment. (Dkt. 183, at 23-24.) But had Mizuho been forthcoming about what it was doing, Lack, and other members of the deposit subclass, would not have deposited their money into Mt. Gox, and, thus, would not later have lost that money. (Compl. ¶ 128.) *Cf. Swanson*, 614 F.3d at 406 (applying Illinois law and Rule 9(b); "Swanson relied, she says, on that false information when she applied for her home-equity loan. But she never alleged that she lost anything from the process of applying for the loan.").

### D. Plaintiffs' Unjust Enrichment Claim Stands Alone.

Mizuho's only treatment of Plaintiffs' unjust enrichment claim is that it must stand or fall with Plaintiffs' fraudulent-concealment claim. (Dkt. 183, at 24 n.16.) Not so. Illinois recognizes that unjust enrichment is a valid basis for standalone recovery on a theory of quasi-contract. *See HPI Health Care*, 545 N.E.2d at 678-79; *C. Szabo Contracting, Inc. v. Lorig Constr. Co.*, 19 N.E.3d 638, 644 (Ill. App. Ct. 2014).[12] Recovery for unjust enrichment requires a showing that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Gagnon v. Schickel*, 983 N.E.2d 1044, 1052 (Ill. App. Ct. 2012).

---

[12] California law also provides for restitution on a theory of unjust enrichment. *See Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 684 (9th Cir. 2009) ("Unjust enrichment is commonly understood as a theory upon which the remedy of restitution may be granted. California's approach to unjust enrichment is consistent with this general understanding.").

Here, the unjust enrichment claim is not fully derivative of the concealment claim. Although premised on the same wrongful concealment, the two claims seek different categories of relief. (Compare Compl. ¶ 114 with *id.* ¶ 128.) Lack alleges that he, and other members of the deposit subclass, conferred a benefit on Mizuho: money in the form of transaction fees (whether those fees were paid directly to Mizuho, or assessed as a pass-through by Mt. Gox). (Compl. ¶ 110, 114.) Yet that benefit was obtained through fraud. Principles of justice, equity, and good conscience thus require Mizuho to return that benefit to the plaintiff class. *See HPI Health Care*, 545 N.E.2d at 679. (The different remedy also means that Mizuho's causation argument is no defense to this claim: Even if Karpeles were the sole cause of Mt. Gox's collapse, Mizuho is fully responsible for whatever transaction fees the Plaintiffs paid before that point.)

### E.     Mizuho Should Be Held to Account.

Regarding Lack's claim for an accounting, under Illinois law "a court will exercise jurisdiction for purpose of ordering an accounting when discovery is necessary, [or] when complicated or mutual accounts are involved[.]" *Shirley v. Jed Capital LLC*, 724 F. Supp. 2d 904, 916 (N.D. Ill. 2010); *see also Netisingha v. End of the Line, Inc.*, 437 N.E.2d 857, 859 (Ill. App. Ct. 1982). As Lack explains, discovery is necessary because he and other members of the Deposit Subclass cannot determine how much of their money is left or where it is located. (Compl. ¶ 130.) Mizuho is in a superior position to answer at least some of those questions. (*Id.* ¶ 131.) For that reason, the Court should order an accounting.

### II.     MIZUHO'S *FORUM NON CONVENIENS* ARGUMENT SHOULD BE REJECTED.

In a last-ditch effort, Mizuho seeks dismissal on the ground of *forum non conveniens*. In this effort, Mizuho bears "a heavy burden" to overcome the strong presumption in favor of the plaintiff's choice of forum. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422,

23

430 (2007). "As a general rule, a plaintiff's choice of forum should be disturbed only if the balance of public and private interest factors *strongly* favors the defendant." *Clerides v. Boeing Co.*, 534 F.3d 623, 628 (7th Cir. 2008) (emphasis added); *see also Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."). This presumption is particularly forceful if, as here, the plaintiff opts to litigate in his home jurisdiction, because that forum is presumed convenient. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *Koster v. Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 524 (1947).[13] Dismissal on grounds of *forum non conveniens* is warranted only when "trial in the plaintiff's chosen forum would be oppressive and vexatious to the defendant, out of all proportion to the plaintiff's convenience," *In re Ford Motor Co.*, 344 F.3d 648, 651 (7th Cir. 2002), or "creates administrative and legal problems that render it inappropriate." *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015) *cert. denied*, 135 S. Ct. 2817 (2015). Neither is the case here.

## A. The Private Interest Factors Favor Plaintiffs, Not Mizuho.

Although a number of private interests are relevant when deciding whether to disturb a plaintiff's choice of forum, Mizuho invokes only one, which it refers to as "the attendance of witnesses," (Dkt. 183 at 27), but which is more correctly described as "the relative ease of access to sources of proof[.]" *Clerides*, 534 F.3d at 628. Mizuho's only argument that this factor strongly supports it is that certain witnesses, such as Mizuho employees and Karpeles, are in

---

[13]     *Koster* also says that "where there are hundreds of potential plaintiffs . . . the claim of any one plaintiff that a form is appropriate merely because it is his home forum is considerably weakened." 330 U.S. at 524. At least as applied to this action, that statement does not survive the Court's later pronouncement that in federal court the doctrine *forum non conveniens* applies only when the choice is between a forum in America or abroad, not between different American venues, because all potential plaintiffs are American. *See Sinochem Int'l*, 549 U.S. at 430.

Japan, as are certain documents relating to Mizuho and Mt. Gox. This argument isn't persuasive for a number of reasons.

### 1. *This Court is a more convenient forum for witnesses in this case.*

To start, Plaintiffs and all putative class members are located in the United States, as are their banking records. Litigating in Japan would require retrieving that evidence from America. Mizuho does not argue that significantly more of the relevant evidence is located in Japan, is written in Japanese, or is inaccessible to this Court. And although Mizuho's remaining records would need to be translated into English if a trial is held in this district, the plaintiffs' records would need to be translated into Japanese if a trial is held in Japan.

The location of other witnesses doesn't weigh in Mizuho's favor either. For example, Mizuho argues that Mark Karpeles's presence in Japan weighs in favor of dismissal, but the opposite may well be true. The most recent information puts Karpeles in a jail cell in Japan, awaiting trial. Given that Karpeles is a citizen of France, not Japan, there is no guarantee that he will remain in Japan after his legal proceedings there are finished. Deportation is a strong possibility, which would prevent him from testifying at all in Japanese court. At the very least, there is a good chance that by the time his testimony is required, he will be in France, which does not weigh in favor of transferring this case to Japan.

Besides Karpeles and Plaintiffs, Mizuho has thus far identified only three other potentially relevant witnesses, all Mizuho employees. (Hwang Decl. ¶ 6.) It is difficult to characterize obtaining their attendance at depositions or a potential trial as an "extreme" inconvenience. And as before, there is no indication, at this point, that significantly more testimony will come from Japanese witnesses as opposed to American witnesses, that any potential witness would refuse to submit to process in America, or that none of the Japanese

witnesses can testify in English. *See Gupta v. Austrian Airlines*, 211 F. Supp. 2d 1078, 1087

(N.D. Ill. 2002) (rejecting argument that presence abroad of relevant witnesses and documents

required dismissal for *forum non conveniens* where it appeared that any witnesses could come to

America, and there was no indication that significantly more evidence was located abroad than in

America); *see also Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1246 (7th Cir. 1990)

(finding fact that defendant corporation's witnesses were located abroad insufficient to dismiss

case because corporation could obtain cooperation of employees as witnesses). "At most, a move

to an alternate venue in [Japan] would merely transfer the inconvenience from one party to the

other." *Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931, 936 (N.D. Ill. 2006).

Moreover, it would be far more difficult for Plaintiffs to litigate in Japan than for Mizuho

to litigate in America. "The financial hardship of requiring a plaintiff to sue outside of the chosen

forum is relevant to the *forum non conveniens* analysis," *Stroitelstvo Bulgaria Ltd. v. Bulgarian-

American Enter. Fund*, 589 F.3d 417, 424 (7th Cir. 2009), and here it would be prohibitively

expensive for the plaintiff class members to litigate their claims in Japan. In addition to the cost

of trans-Pacific litigation, it appears that every plaintiff would have to bring their claims

individually, exponentially increasing the cost of litigation to the Plaintiff class.

> 2. *Documentary evidence can easily be produced in this Court.*

Finally, even though some relevant documents are located in Japan and written in

Japanese, Mizuho overstates the burden of producing those documents here and in English. First,

in its initial disclosures, Mizuho identified only a single category of documents that will be

relevant to this case. (Hwang Decl. ¶ 6.) And as Counsel for the Plaintiffs recently informed the

Court, Mizuho has been litigating similar claims in Canada and has already undertaken to

produce some documents in that litigation, translated into English. (*Id.* ¶¶ 3-5.)  In an age of

computerization, the remaining records can be transmitted to America with only minimal effort and expense. The only private interest factor that Mizuho cites, therefore, weighs in Plaintiffs' favor, not Mizuho's.

      **B.**     **The Public Interest Factors Do Not Favor Dismissal.**

          *1.*     *Illinois, not Japanese law, applies here.*

Mizuho also argues that several public interest factors support transfer, but careful analysis shows that none of those factors weigh in its favor either. Mizuho's principal argument is that it "would create unnecessary problems" to apply Japanese law in this Court. (Dkt. 183, at 27-29.) However, there is no reason to think that Japanese law would apply to this action. Indeed, Mizuho itself seeks dismissal under Illinois (or California) law, which, as explained above, is fundamentally incompatible with its contention that Japanese law should apply.

In any event, Illinois's choice-of-law rules, which apply in this diversity action, dictate that "in the absence of a conflict in the relevant laws of two states, the law of the forum state applies." *Gleim v. Roberts*, 919 N.E.2d 367, 370 (Ill. App. Ct. 2009). Not only does Mizuho fail to meet its burden to show that a material conflict exists, *see Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014), but it doesn't give any hint as to the substance of Japanese law or the potential effects of applying it. A "district court is not required to conduct its own research into the content of foreign law if the party urging its application declines to do so." *Mut. Serv. Ins. Co. v. Frit Indus., Inc.*, 358 F.3d 1312, 1321 (11th Cir. 2004); *Bartsch v. Metro-Goldwyn-Mayer, Inc.*, 391 F.2d 150, 155 n.3 (2d Cir. 1968) (same). "[W]here either no information, or else insufficient information, has been obtained about the foreign law, the forum will usually decide the case in accordance with its own local law except when to do so would not meet the needs of the case or would not be in the interest of justice." *In*

*re Air Crash Disaster Near Chicago*, 644 F.2d 694, 631 (7th Cir. 1981) (quoting Restatement

(Second) of Conflict of Laws § 136, cmt. h).[14]

> 2. *America has a substantial interest in this dispute.*

Next, Mizuho argues that Japan has a "substantially more local interest." (Dkt. 183, at

27.) To the contrary, because the losses of the American Plaintiffs and putative class were felt in

America and resulted from financial transactions initiated in America, American courts have a

significant interest is adjudicating this dispute. *See Wilson*, 916 F.2d at 1247; *see also Spinozzi v.*

*ITT Sheraton Corp.*, 174 F.3d 842, 844-45 (7th Cir. 1999).

> 3. *This Court provides a far more efficient forum in which to litigate this*
> *action.*

Last, Mizuho argues that the purported efficiency of Japanese courts weighs in favor of

dismissal. (Dkt. 183, at 30.) This argument is flawed: The question is not whether *one* individual

suit could be litigated more efficiently in Japan, but whether 30,000 individual suits could be

litigated more efficiently in Japan than one class action in this Court. Mizuho has not argued that

Japanese law enables the plaintiffs to proceed as a class in Japan, nor could it. True

representative litigation is authorized in Japan only for a limited number of claims, all of which

require a direct contractual relationship between the plaintiff and defendant that does not exist

here.[15] Moreover, consumer class actions may be brought in Japan only by certain, state-

---

[14]     Mizuho suggests that a Japanese court would be preferable because Japanese courts are
more familiar with "Japanese banking law." (Dkt. 183, at 29 n.19.) This is a complete non
sequitur. No banking law of any kind applies here.

[15]     *See* Kengo Nishigaki and Takeshi Yoshida, "The New Class Action Legislation
Promulgated in Japan," at 2, *available at* http://www.bakermckenzie.co.jp/e/material/dl/
supportingyourbusiness/newsletter/disputeresolution/ClientAlert_201401_DisputeResolution_E.
pdf (January 2014) ("The claims subject to the new system are defined as 'Common
Obligations,' which means obligations to make monetary payments which business operators
owe to consumers under the Consumer Contract Act."). *See also* "The Consumer Contract Act,"
http://www.consumer.go.jp/english/cca/ (accessed Mar. 11, 2016).

approved entities; individuals are not authorized to sue on behalf of other injured parties. *See* Michael Madderra, *The New Class Actions in Japan*, 23 Pac. Rim L. & Pol'y J. 795, 810 (2014).

Absent the ability to bring a class action, each class member would have to bring his or her case separately, meaning that there would be up to 30,000 separate court proceedings, each of which would likely require the plaintiff to go to Japan to testify. The American court system has class actions precisely to avoid this inefficiency. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 433 (7th Cir. 2015). In any event, the simple possibility of a speedier resolution in a different court does not mean that litigating in this Court would be oppressive for Mizuho, much less oppressive and vexatious out of all proportion to the Plaintiffs' convenience. Mizuho has not offered any valid reason to disturb Plaintiffs' chosen forum. The motion based on *forum non conveniens* should be denied.

## CONCLUSION

For the foregoing reasons, Mizuho's motion to dismiss should be denied in its entirety.


Respectfully submitted,

**GREGORY GREENE and JOSEPH LACK**,
individually, and on behalf of a class of similarly
situated individuals,

Dated: March 11, 2016

By:/s/ Alicia E. Hwang
One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
Alexander T.H. Nguyen
anguyen@edelson.com
Alicia Hwang
ahwang@edelson.com
J. Aaron Lawson

alawson@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Counsel for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

I, Alicia E. Hwang, an attorney, hereby certify that I served the above and foregoing ***Plaintiffs' Opposition to Defendant Mizuho Bank Ltd.'s Motion to Dismiss the Second Amended Complaint***, by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on March 11, 2016.


/s/ Alicia E. Hwang