**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 14 C 01437 |
| | ) | |
| v. | ) | Judge Gary Feinerman |
| | ) | Magistrate Judge Susan E. Cox |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | ) ) ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

**DEFENDANT MIZUHO BANK, LTD.'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED
CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM
OR ALTERNATIVELY FOR *FORUM NON CONVENIENS***

# <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ......................................................................................................................3

I.     THE PLAINTIFFS APPLY THE WRONG LEGAL STANDARD ..................................3

     A.     Rule 9(b) Applies To The Plaintiffs' Claims .............................................................3

     B.     Japanese Law Applies To The Plaintiffs' Claims .....................................................4

II.     THE PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF ..............................5

     A.     The Plaintiffs Have Not Pleaded A Claim For Tortious Interference ......................5

               1.     The Plaintiffs Have Not Alleged That Mizuho Caused Mt. Gox's Collapse .......................................................................................................5

               2.     The Plaintiffs Have Not Alleged That Mizuho Intended To Cause Mt. Gox To Breach Its Contracts With Its Customers .......................................9

               3.     The Plaintiffs Have Not Alleged That Mizuho's Actions Were Unjustified ..............................................................................................10

     B.     The Plaintiffs Have Not Pleaded A Claim For Fraudulent Concealment ..............11

               1.     The Plaintiffs Have Not Alleged That Mizuho Had A Duty To Disclose ..................................................................................................11

               2.     The Plaintiffs Have Not Alleged Deceptive Conduct By Mizuho ............12

               3.     The Plaintiffs Have Not Alleged That Mizuho Intended To Defraud Them ..........................................................................................13

               4.     Mizuho's Alleged Concealment Did Not Harm Mt. Gox's Customers .....16

     C.     The Plaintiffs Have Not Pleaded A Claim For Unjust Enrichment ......................16

     D.     The Plaintiffs Have Not Pleaded Any Basis For An Accounting ..........................17

III.     THIS ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS* ...........18

CONCLUSION ..................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Aguinda v. Texaco*, 303 F.3d 470 (2d Cir. 2002)...........................................................20

*Apotex v. Istituto Biologico Chemioterapico S.P.A.*, 2003 WL 21780965 (N.D. Ill. July 30, 2003)...................................................................................................................18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. *passim*

*Astiana v. Hain Celestial Grp.*, 783 F.3d 753 (9th Cir. 2015)......................................17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. *passim*

*U.S. ex rel. Bogina v. Medline Indus.*, 809 F.3d 365 (7th Cir. 2016) .............................12

*Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502 (7th Cir. 2007) ...................................3

*Cole-Haddon v. Drew Philips*, 454 F. Supp. 2d 772 (N.D. Ill. 2006) ...........................18

*D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865 ................................................11, 14

*Doe I v. Wal-Mart Stores*, 572 F.3d 677 (9th Cir. 2009)..............................................17

*Dollar Tree Stores v. Toyama Partners*, 2010 WL 1688583 (N.D. Cal. Apr. 26, 2010) ...............................................................................................................................10

*Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847 (7th Cir. 2015) .......................18, 20

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) ...........................................................19

*Haddock v. Countrywide Bank, NA*, 2015 WL 9257316 (C.D. Cal. Oct. 27, 2015).....................17

*Herlehy v. Marie V. Bistersky Trust*, 417 Ill. App. 3d 878 (2010) ..................................8

*House of Brides v. Alfred Angelo*, 2014 WL 6845862 (N.D. Ill. Dec. 4, 2014) ............10

*Kolb v. ACRA Control*, 21 F. Supp. 3d 515 (D. Md. 2014) ............................................4

*L.A. Mem'l Coliseum Comm'n v. Insomniac*, 233 Cal. App. 4th 803 (2015)................11

*Landlock Nat. Paving v. Desin L.P.*, 2013 WL 485361 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.) ........................................................................................3, 12, 17

*Levin v. Citibank, N.A.*, 2009 WL 3008378 (N.D. Cal. Sept. 17, 2009)........................13

*Lott v. Levitt*, 556 F.3d 546 (7th Cir. 2009) ...................................................................4

*U.S. ex rel. Lusby v. Rolls-Royce*, 570 F.3d 849 (7th Cir. 2009) ...................................12

*McCauley v. City of Chicago*, 671 F.3d 611 (7th Cir. 2011) ...........................................6

*Munizza v. City of Chicago*, 222 Ill. App. 3d 50 (1991) ...................................................8

*Nieto v. Perdue Farms*, 2010 WL 1031691 (N.D. Ill. Mar. 17, 2010) ...........................17

*Philip I. Mappa Interests v. Kendle*, 196 Ill. App. 3d 703 (1990) .................................10

*Pirelli Armstrong Tire Ret. Med. Benefits Trust v. Walgreen*, 631 F.3d 436 (7th
      Cir. 2011) ................................................................................................... *passim*

*R.E. Davis Chem. v. Diasonics*, 826 F.2d 678 (7th Cir. 1987) ........................................9

*Riley v. Vilsack*, 665 F. Supp. 2d 994 (W.D. Wis. 2009) .................................................3

*Schrager v. N. Cmty. Bank*, 328 Ill. App. 3d 696 (2002) ...............................................12

*Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724 (7th Cir. 2014) ..............................4

*Staples v. Christiansen*, 2013 WL 6197356 (C.D. Ill. Nov. 22, 2013) ...........................13

*Tricont. Indus. v. PwC*, 475 F.3d 824 (7th Cir. 2007) ...................................................15

*U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749 (7th Cir. 2008) .............................19

*Uni\*Quality v. Infotronx*, 974 F.2d 918 (7th Cir. 1992) ............................................3, 12

*Vincent v. City Colleges of Chicago*, 485 F.3d 919 (7th Cir. 2007) .................................3

*Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995) ..................................................4

*W. Microtech. v. Goold Elecs.*, 1993 WL 424244 (N.D. Ill. Oct. 19, 1993) ....................9

**Other Authorities**

5 Wright & Miller, Fed. Prac. and Proc. §§ 2443-44 (3d ed. 1998) ..................................4

Michael Madderra, New Class Actions in Japan, 23 Pac. Rim L. & Pol'y J. 795
      (2014) ...................................................................................................................20

Defendant Mizuho Bank, Ltd. ("Mizuho") respectfully submits this reply memorandum in further support of its motion to dismiss the Second Amended Complaint (the "SAC") and in response to the plaintiffs' opposition (the "Op.").[1]

## PRELIMINARY STATEMENT

The plaintiffs' opposition brief highlights how thin their factual allegations are against Mizuho. In support of its claims against Mizuho, the plaintiffs have alleged three basic facts: (i) in 2013, Mizuho learned that government authorities were investigating Mt. Gox and its customers for alleged illegal activity, (ii) Mizuho became concerned that its association with Mt. Gox "would expose it to liability and cause significant reputational harm," and (iii) in an effort to protect itself, Mizuho modified its banking relationship with Mt. Gox, whereby it continued to process inbound international wire transfers but stopped processing outbound transfers. (SAC ¶¶ 26-29.) From these factual allegations, the plaintiffs weave an implausible tale in which they layer legal conclusion upon legal conclusion in an effort to state a claim for tortious interference and fraudulent concealment. The plaintiffs insist that the Court must "accept as true" all allegations in the Complaint. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Once the plaintiffs' legal conclusions and conclusory statements are stripped away, there is no factual support for any of plaintiffs' claims.

A few examples illustrate this point. In support of their tortious interference claim, the plaintiffs assert that Mizuho "caused" Mt. Gox's collapse and bankruptcy (Op. at 11), but it is

---

[1] On April 4, 2016, pursuant to the Court's order dated March 14, 2016, the plaintiffs filed the Third Amended Class Action Complaint ("TAC"). (Dkt. 199, 205.) The TAC is materially the same as the SAC for purposes of Mizuho's motion to dismiss, except as noted below. Mizuho therefore requests that the Court construe its pending motion as a motion to dismiss the TAC as well.

implausible that a change in banking policy that allegedly prevented money from leaving Mt. Gox would cause it to go bankrupt. The plaintiffs also assert that Mizuho "knew" that its change in policy would make it "impossible" for Mt. Gox's customers to withdraw funds (Op. at 9-10), but nothing in the contract between Mt. Gox and Mizuho prevented Mt. Gox from sending the plaintiffs their money from another bank or through a refund check, as businesses do every day.

Similarly, in support of their fraudulent concealment claim, the plaintiffs assert that Mizuho "prevented" Karpeles and Mt. Gox from disclosing Mizuho's new banking practices (Op. at 18), but, ignoring Rule 9(b) of the Federal Rules of Civil Procedure, they do not say who at Mizuho prohibited Mt. Gox from speaking, when that allegedly occurred, or even how a bank can "prohibit" a customer from communicating with its own customers. The plaintiffs also assert that Mizuho "knew" that Karpeles's and Mt. Gox's communications with Mt. Gox's customers were false, but Mizuho was not a party to any such communications and the plaintiffs do not say how Mizuho supposedly knew. If the Court disregards the plaintiffs' legal conclusions, as it must, the plaintiffs have not alleged facts sufficient to state a claim for relief.

In the alternative, the Complaint should be dismissed for *forum non conveniens*. The plaintiffs' choice of forum is entitled to little deference where, as here, all of the evidence needed to prove and defend the case is located in Japan and all of the relevant witnesses are located in Japan. The plaintiffs' banking records would likely comprise no more than a handful of pages and pale in comparison to the records that the plaintiffs have already sought from Japan in their extensive document requests. In addition, it is undisputed that Japan has a well-developed legal system and a Japanese court is better equipped to apply Japanese law, which should govern this dispute. The plaintiffs' claims should therefore be dismissed for *forum non conveniens*.

2

## ARGUMENT

## I.   THE PLAINTIFFS APPLY THE WRONG LEGAL STANDARD

### A.   Rule 9(b) Applies To The Plaintiffs' Claims

The plaintiffs do not dispute that Rule 9(b) applies to their fraudulent concealment claim. (Op. at 18.)  In order to satisfy the heightened pleading standard of Rule 9(b), the plaintiffs must explain the "who, what, when, where, and how of the fraud."  *Landlock Nat. Paving v. Desin L.P.*, 2013 WL 485361, at *3 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.).  "Rule 9(b)'s particularity requirement serves an important purpose.  Accusations of fraud can seriously harm a business."  *Uni*Quality v. Infotronx*, 974 F.2d 918, 924 (7th Cir. 1992).

Contrary to plaintiffs' assertion (Op. at 8-9), their tortious interference and unjust enrichment claims should also be governed by Rule 9(b) because they rely on the same underlying facts as the plaintiffs' fraudulent concealment claim.[2]  When a plaintiff's allegations sound in fraud, the Seventh Circuit has ruled that Rule 9(b) applies to these very same causes of action.  *See Borsellino v. Goldman Sachs Grp.*, 477 F.3d 502, 507 (7th Cir. 2007); *Pirelli Armstrong Tire Ret. Med. Benefits Trust v. Walgreen*, 631 F.3d 436, 447-48 (7th Cir. 2011).

Furthermore, to the extent that Rule 8(a) applies to any elements of their claims, the plaintiffs mischaracterize the pleading standard under Rule 8(a).  The plaintiffs state that they "need neither 'plead facts'" nor "'show' anything" to state a claim.  (Op. at 8.)  In support, the plaintiffs rely on outdated cases, including *Vincent v. City Colleges of Chicago*, 485 F.3d 919 (7th Cir. 2007).  But *Vincent* was decided before the Supreme Court's seminal decisions in *Iqbal* and *Twombly* that altered the Rule 8 pleading standard and is no longer good law.  *See Riley v.*

---

[2] The plaintiffs incorporate all of their substantive allegations into their tortious interference and unjust enrichment claims, and further allege that Mizuho knowingly "implemented policies designed to undermine Mt. Gox" and kept these policies "secret from the public."  (SAC ¶¶ 101, 104; *id.* 110, 113.)

*Vilsack*, 665 F. Supp. 2d 994, 1002 (W.D. Wis. 2009) (rejecting *Vincent*'s pleading standard).

Under the correct standard, a plaintiff must plead "sufficient fact[s]" to state a claim "that is plausible on its face." *Iqbal*, 566 U.S. at 678. Importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "conclusory statements." *Id.* In assessing whether a claim is plausible, a court should use "its judicial experience and common sense" and evaluate whether there is an "obvious alternative explanation" for the defendant's conduct. *Id.* at 679. The plaintiffs have not alleged sufficient facts to satisfy these legal requirements, and their claims should be dismissed.

### B. Japanese Law Applies To The Plaintiffs' Claims

The plaintiffs are mistaken that Mizuho has waived its ability to apply Japanese law. (Op. at 7.) Under Rule 44.1 of the Federal Rules of Civil Procedure, a party need only give notice that it intends to raise a foreign country's law at a later stage. *See Kolb v. ACRA Control*, 21 F. Supp. 3d 515, 527-28 (D. Md. 2014) (defendant's reference in prior motion to dismiss to possible applicability of Irish law gave sufficient notice); 5 Wright & Miller, Fed. Prac. and Proc. §§ 2443-44 (3d ed. 1998) (describing flexibility of Rule 44.1, whose "function . . . is not to spell out the precise contents of foreign law"). Mizuho easily met this standard in its opening brief. (*See* Def.'s Mem. Of Law In Supp. Of Its Mot. To Dismiss The Sec. Am. Compl. ("MTD") at 28 & n.18.) The plaintiffs' assertion that Mizuho is asking for a "free peek at how [their] dispute will shake out under Illinois law" (Op. at 7) ignores the clear dictates of Rule 44.1.[3]

---

[3] *Lott v. Levitt*, cited by the plaintiffs, did not address foreign law at all and dealt with a situation where the plaintiff agreed that Illinois law applied until it attempted to raise Virginia law when asking for reconsideration of the Court's decision to dismiss the complaint. 556 F.3d 546 (7th Cir. 2009). *See also Spitz v. Proven Winners N. Am., LLC*, 759 F.3d 724 (7th Cir. 2014) (addressing whether Illinois versus California law applied on summary judgment); *Vukadinovich v. McCarthy*, 59 F.3d 58 (7th Cir. 1995) (noting neither party raised choice-of-law issues in dispute over attorneys' fees).

While Japanese law applies to the plaintiffs' claims – which are centered on events that took place almost entirely in Japan – their claims would be insufficient even under Illinois or California law.  (MTD at 9 n.5, 28-30.)[4]  Mizuho applies Illinois and California law solely for the convenience of efficiently resolving its motion to dismiss while, consistent with the Federal Rules, reserving the right to raise Japanese law at a later stage.

## II.  THE PLAINTIFFS HAVE NOT STATED A CLAIM FOR RELIEF

### A.  The Plaintiffs Have Not Pleaded A Claim For Tortious Interference

The Court should dismiss the plaintiffs' tortious interference claim because the plaintiffs fail to plead sufficient facts – as opposed to legal conclusions – that Mizuho (i) "caused" Mt. Gox to collapse, (ii) "knew" that it would be "impossible" for Mt. Gox to perform its contracts with its customers, or (iii) was unjustified in halting international wire withdrawals.

#### 1.  The Plaintiffs Have Not Alleged That Mizuho Caused Mt. Gox's Collapse

Without any factual support, the plaintiffs assert "a direct chain of causation from Mizuho's decision to shut off international wire withdrawals to Mt. Gox's collapse and bankruptcy."  (Op. at 11.)  This conclusory assertion fails for three reasons.

First, it is implausible that Mizuho's purported decision to stop international wire withdrawals from Mt. Gox's account caused Mt. Gox to go bankrupt.  Companies typically go bankrupt when they cannot pay their debts because they lack sufficient funds.  It cannot be true that a change in policy that allegedly allowed money to flow into, but not out of, Mt. Gox would cause it to go bankrupt.  Under *Iqbal* and *Twombly*, the court is required to use "common sense"

---

[4]  The plaintiffs have not cited any California law even though they previously had only a California plaintiff presenting claims on behalf of the Deposit Subclass.  No choice-of-law analysis was necessary because there was no basis to argue that Illinois law should apply to those claims.  The Court should therefore consider the ample authority that Mizuho has presented under both California and Illinois law.

in determining whether the plaintiffs' allegations are plausible. *Iqbal*, 556 U.S. at 679; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007) (rejecting allegations of antitrust conspiracy based on "an obvious alternative explanation"); *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (allegations must be plausible rather than merely conceivable). Here, they are not.

Second, the plaintiffs assert that (i) Mizuho changed its withdrawal policy and (ii) Mt. Gox collapsed, but they do not provide facts that plausibly show what they allege to be a "direct chain of causation" between these two independent events. Recognizing this problem, the plaintiffs assert for the first time in their opposition brief that Mizuho's purported change in banking policy "essentially caused Mt. Gox's investors to panic, and substantially contributed to its collapse." (Op. at 11.) Notably, however, the plaintiffs never made this allegation in the Complaint, and they are prohibited from amending the Complaint through their opposition brief. *Pirelli*, 631 F.3d at 448 (affirming "axiomatic rule that a plaintiff may not amend his complaint in his response brief").

In addition, the plaintiffs' conclusory assertion is undermined by the very documents they refer to in the Complaint. Many articles were written – by the news media, bitcoin enthusiasts, Mt. Gox's bankruptcy trustee, and even the plaintiffs' own purported expert – about Mt. Gox's collapse and the plaintiffs cannot point to any that attribute the collapse to Mizuho's changed banking policy or "investor panic." (*See* MTD at 11-12 & Exs. 1-6, 11-13.) Instead, these reports consistently point to the same cause – that Karpeles halted all withdrawals from Mt. Gox in early February 2014 because of a "'bug' or 'technical malfunction'" at Mt. Gox and he "secretly controlled the stolen bitcoins." (SAC ¶¶ 37, 40, 42; TAC ¶ 47.) The plaintiffs' assertion of a "direct chain of causation" between Mizuho's banking policy and Mt. Gox's collapse is a bare legal conclusion devoid of factual support. *Iqbal*, 556 U.S. at 678.

Third, the plaintiffs do not deny that the named plaintiffs did not attempt to withdraw any funds until after Karpeles halted all withdrawals. (SAC ¶¶ 37, 61-62; TAC ¶¶ 73-74.) Mizuho thus could not have been the reason they did not get their money back. (MTD at 17-18.)

In an effort to circumvent the absence of any causal link between Mizuho's actions and Mt. Gox's collapse, or any actual plaintiff who was harmed as a result of Mizuho's alleged conduct (as opposed to Karpeles's misconduct), the plaintiffs argue that it is sufficient for them to have pleaded that Mizuho's purported actions made it "impossible" for them to get their fiat currency from the Mt. Gox exchange. But the documents on which the plaintiffs rely demonstrate that it was not "impossible" for Mt. Gox to return money to its customers. For example, an article about delays in obtaining fiat currency from Mt. Gox, cited in the Complaint, states the obvious: "[T]hose looking to withdraw USD from Mt. Gox can easily transfer their [bitcoins] to another exchange and get their cash that way, if they so choose." (MTD Ex. 5.) The plaintiffs simply did not try to retrieve their money until after Mt. Gox halted withdrawals because of a purported "technical malfunction." The plaintiffs' addition of Anthony Motto as a named plaintiff does not salvage their claim, because Motto did not deposit any funds until mid-February 2014 and did not try to withdraw his funds at all. (TAC ¶ 71; MTD at 17-18 n.12.)

The plaintiffs' claim of "impossibility" is premised on the implausible theory that the only way for Mt. Gox to return money to them was through a wire transfer *and* that the only bank in the world that could execute a wire transfer for Mt. Gox was Mizuho. Both theories are contradicted by the documents on which the plaintiffs rely. Nothing in the contract between Mt. Gox and Mizuho (Op. Ex. 1A-B), or Mt. Gox and its customers (which the plaintiffs cite in the Complaint), required Mt. Gox to use international wire transfers to return its customers' funds. Nor have the plaintiffs alleged that Mt. Gox was unable to issue refund checks, just as businesses

do every day. And Mt. Gox was free to transfer funds from its Mizuho account to other banks to service its customers. (Op. Ex. A-1.) As noted in our opening brief – which the plaintiffs do not rebut – the Mt. Gox bankruptcy trustee has stated that Mt. Gox had "43 accounts at 14 different banks and payment service providers" as of February 20, 2014. (MTD at 13; "Mt. Gox CEO Charged With Embezzling" (TAC ¶ 47 n.22) (discussing Karpeles's "transferr[ing] money from [Mt.] Gox's bank account to other accounts in October 2013" for illicit purposes).) Mt. Gox was also free to develop additional banking relationships, as documents cited in the Complaint discuss. (MTD Exs. 1, 6, 14.) Thus, the plaintiffs' conclusory assertion that it was "impossible" for Mt. Gox to return money to its customers is simply not true. Mt. Gox just chose not to. *Twombly*, 550 U.S. at 567 (considering "obvious alternative[s]" to plaintiffs' theory); *Pirelli*, 631 F.3d at 444-45 ("common sense" showed plaintiff's inference was implausible).

Contrary to the plaintiffs' assertion, Mizuho never argued that Karpeles's misconduct is a superseding cause of their loss or that he bears only a proportionate share of responsibility. This is a distortion intended to reposition Mizuho's arguments as affirmative defenses. But courts readily dismiss tort claims where, as here, the allegations in the complaint establish that another action – such as Karpeles's fraud – is the *only* cause of the plaintiff's loss. (MTD at 10-14); *Herlehy v. Marie V. Bistersky Trust*, 417 Ill. App. 3d 878, 897 (2010) (upholding dismissal of tort claims against defendant whose action was not the cause of plaintiffs' damages); *Munizza v. City of Chicago*, 222 Ill. App. 3d 50, 57 (1991) (same). If Mt. Gox had not collapsed from Karpeles's fraud or incompetence (SAC ¶¶ 1, 20-21, 91; TAC ¶ 47), the plaintiffs would have been able to get their money using the mechanisms discussed above. The plaintiffs' inability to obtain their funds is a direct result of Mt. Gox's inaction and Karpeles's fraud – not anything that Mizuho is alleged to have done. (*See* MTD at 10-14.)

2.    The Plaintiffs Have Not Alleged That Mizuho Intended To Cause Mt. Gox
To Breach Its Contracts With Its Customers

The plaintiffs assert in a conclusory manner that Mizuho "knew" its purported decision to stop processing international wire withdrawals "necessarily would render Mt. Gox incapable of fulfilling its contractual obligations to its American users."  (Op. at 9-10.)  But the plaintiffs do not – and cannot – point to a single fact from which to infer such knowledge.[5]

As discussed, the plaintiffs' conclusory allegation is built on the implausible premises that Mizuho was the only bank that could service Mt. Gox's customers and that wire transfers were the only way for Mt. Gox to return money to its customers.  Both theories are contradicted by the documents on which the plaintiffs rely.  First, Mizuho's contract with Mt. Gox does not state that Mizuho is Mt. Gox's exclusive banking partner for American customers.  Second, it was widely reported (in news articles cited in the Complaint) that Mt. Gox had relationships with banks other than Mizuho.  (Op. at 9, 13.)[6]  Third, the plaintiffs offer no reason to doubt that Mt. Gox could have sent a check to any users seeking to withdraw their money.  Finally, documents cited by the plaintiffs show that Mizuho did not know when Mt. Gox's customers requested withdrawals or how Mt. Gox responded to those requests, because they were sent directly to Mt. Gox and not Mizuho.  (Op. Ex. A-1 ¶¶ 12-14.)  As a result, Mizuho did not know whether Mt.

---

[5]  Moreover, even if Mizuho "knew" that its conduct would likely result in Mt. Gox's breaching contracts with its customers, they have not alleged that Mizuho *wanted* to cause that result.  *R.E. Davis Chem. v. Diasonics*, 826 F.2d 678, 686-87 (7th Cir. 1987).  *R.E. Davis* remains good law.  *See, e.g.*, *W. Microtech. v. Goold Elecs.*, 1993 WL 424244, at *2-3 (N.D. Ill. Oct. 19, 1993).

[6]  For example, in the summer of 2013, Tech Crunch reported that Mt. Gox had accounts in the U.S. with Wells Fargo and Dwolla.  (MTD Ex. 4.)  When government regulators seized these accounts because Mt. Gox failed to register with the Treasury Department as a "money transmitting company," the seizure warrant, which was discussed and copied in the Tech Crunch article, said that Sumitomo Mitsui Bank in Japan sent international wires on behalf of Mt. Gox into U.S. bank accounts.  Mt. Gox later remedied the issue that led to the seizure of funds.  (MTD Ex. 5.)  These reports show Mt. Gox had other banks (*e.g.*, Sumitomo) that could wire money into the U.S. on its behalf, and that it had banking relationships in the U.S.

Gox had other banking relationships, what Mt. Gox told its customers, or how Mt. Gox responded to customer requests. In short, the Complaint does not establish any basis to infer that Mizuho "knew" its actions would "force Mt. Gox to breach its contracts." (Op. at 10-11.)

3. The Plaintiffs Have Not Alleged That Mizuho's Actions Were Unjustified

The plaintiffs are mistaken when they argue that "justification" is an affirmative defense. (Op. at 15-17.) One of the elements of a tortious interference claim is that the plaintiff must plead "that the defendant's conduct was unjustified." *House of Brides v. Alfred Angelo*, 2014 WL 6845862, at *9 (N.D. Ill. Dec. 4, 2014); *see also Dollar Tree Stores v. Toyama Partners*, 2010 WL 1688583, at *4 (N.D. Cal. Apr. 26, 2010); (Op. at 10-11 n.5). The plaintiffs here have not pleaded any plausible facts to support this element of their claim.

The court in *House of Brides* stated expressly that "[i]t is the plaintiff's burden to adequately plead that the defendant's conduct was unjustified." 2014 WL 6845862, at *9. The plaintiffs here argue that they have not "pleaded themselves out of court" (Op. at 17), but courts routinely dismiss tortious interference claims on a motion to dismiss when it is readily apparent from the face of the complaint that the defendant's actions were justified according to the plaintiff's theory of the case. *See Dollar Tree*, 2010 WL 1688583, at *4 (dismissing claim where defendant acted "with a legitimate business purpose and was justified in" discontinuing loan); *Philip I. Mappa Interests v. Kendle*, 196 Ill. App. 3d 703, 708-10 (1990) (affirming dismissal because complaint made clear that defendant acted to protect its property). The plaintiffs allege that Mizuho sought to distance itself from Karpeles and Mt. Gox because Mizuho was concerned that they were engaging in illegal activity and that its relationship with Mt. Gox would "expose it to liability and cause it significant reputational harm." (SAC ¶¶ 26-27.) Because the Complaint clearly articulates this legitimate business reason for Mizuho's actions, the plaintiffs not only have failed to meet their burden of alleging that Mizuho's conduct was "unjustified," but have

10

affirmatively pleaded the opposite and provided a basis for dismissing their claims.[7]  That is

what the Court should do here.[8]

### B.    The Plaintiffs Have Not Pleaded A Claim For Fraudulent Concealment

The plaintiffs' claim for fraudulent concealment should be dismissed because the

plaintiffs have not pleaded with particularity under Rule 9(b) that Mizuho's conduct gave rise to

a duty to disclose or that Mizuho engaged in any deceptive conduct, intended to mislead Mt.

Gox's customers, or harmed plaintiffs Joseph Lack and Anthony Motto.

### 1.    The Plaintiffs Have Not Alleged That Mizuho Had A Duty To Disclose

The plaintiffs concede that "[i]n general, no actor has a duty to disclose information."

(Op. at 18.)  They nevertheless assert that "silence accompanied by deceptive conduct" creates a

duty to disclose.  (*Id.*)  But more is required for a party to be required to speak.  Conduct – even

allegedly "deceptive conduct" in connection with a business transaction – cannot give rise to a

duty to disclose unless the defendant has a fiduciary or similar relationship with the plaintiff.

*See D'Attomo v. Baumbeck*, 2015 IL App (2d) 140865 ¶ 60 (holding that, despite allegations of

deceptively concealing a document, the defendant did not have a duty to disclose because the

contracting parties had no fiduciary or confidential relationship); *L.A. Mem'l Coliseum Comm'n

v. Insomniac*, 233 Cal. App. 4th 803, 832 (2015) (a duty to disclose generally arises from

"fiduciary or fiduciary-like relationships" and "a commercial relationship" is insufficient even

---

[7]  The plaintiffs assert incorrectly that Mizuho could have unilaterally canceled its contract with Mt. Gox if Mizuho "suspected" Mt. Gox of illegal activity.  (Op. at 16.)  But the contract provides that Mizuho could terminate it if Mizuho "judges" that Mt. Gox performed illegal transactions.  (Op. Ex. A-1 at 42.)  The term "judges" means to "determine or pronounce after inquiry and deliberation."  Judge, Merriam-Webster (2016).  The plaintiffs, however, allege only that Mizuho was "concerned" about public reports that U.S. authorities were investigating Mt. Gox.  Concern about public reports about which Mizuho has no direct knowledge is insufficient under the plain terms of the contract to unilaterally terminate it.

[8]  The cases the plaintiffs cite (Op. at 15) are not on point because, in each one, the defendant's justification was not apparent from the complaint or the court did not address the issue of justification.

where the plaintiff alleges deceptive conduct); *see also* MTD at 19-20.[9]

Here, there is no dispute that Mizuho did not have a fiduciary or other confidential relationship with Mt. Gox's customers.  (MTD at 19-20; *see also* Op. at 16-18.)  Mizuho therefore did not have a duty to disclose information to them.

### 2.    The Plaintiffs Have Not Alleged Deceptive Conduct By Mizuho

Even if the plaintiffs were correct that allegedly deceptive conduct alone could give rise to a duty to disclose (and it cannot), their fraudulent concealment claim would still collapse for several reasons.  First, the allegation that Mizuho "affirmatively prevented Karpeles [and Mt. Gox] from disclosing Mizuho's new practices" is based on "information and belief."  (Op. 18.) Under Rule 9(b), fraudulent conduct cannot be pleaded on "information and belief" alone. *Pirelli*, 631 F.3d at 443.[10]  Instead, a plaintiff must plead "the 'who, what, when, where, and how' of the fraud."  *Landlock*, 2013 WL 4854361, at *3.  Rule 9(b) requires this level of detail "because a public accusation of fraud can do great damage . . . before the firm is exonerated in litigation."  *Bogina*, 809 F.3d at 370; *Pirelli*, 631 F.3d at 439 (Rule 9(b) "protects defendants from baseless suits that tarnish reputations"); *Uni*Quality*, 974 F.2d at 924 (same).  The plaintiffs, however, do not provide any facts about who at Mizuho prohibited Mt. Gox from speaking, when that occurred, or, more fundamentally, how a bank has the authority to "prohibit"

---

[9]   The cases cited by the plaintiffs support Mizuho's position.  In *Schrager v. N. Cmty. Bank*, the court held that plaintiffs must show "a special or fiduciary relationship giving rise to a duty to convey accurate information."  328 Ill. App. 3d 696, 707 (2002).  Moreover, the plaintiffs' cases – where a defendant makes positive statements in the course of dealings with the plaintiff about the subject of a business transaction while hiding its key negative attributes – highlight how Mizuho's alleged conduct is fundamentally different from the type of activity considered "deceptive conduct."  (Op. at 18-20.)

[10]  The cases the plaintiffs cite do not disagree.  *See U.S. ex rel. Bogina v. Medline Indus.*, 809 F.3d 365, 370 (7th Cir. 2016) (affirming dismissal because "'on information and belief' can mean as little as 'rumor has it that . . . .'"); *cf. U.S. ex rel. Lusby v. Rolls-Royce*, 570 F.3d 849, 854 (7th Cir. 2009) (claim was plausible based on particularized factual allegations not based on information and belief).

its customer from speaking. The lack of factual support for the plaintiffs' conclusory allegations based on "information and belief" is fatal to their claim. *Pirelli*, 631 F.3d at 439.

Second, the plaintiffs' conclusory allegations could not survive even the more lenient standard of Rule 8(a) because they are contradicted by the documents on which the plaintiffs rely and are implausible. The plaintiffs assert (based on "information and belief") that "Mizuho prohibited Mt. Gox from disclosing that withdrawal difficulties were attributable to Mizuho" (SAC ¶ 36), but the plaintiffs' documents show otherwise. For example, Mt. Gox affirmatively told its customers that "Mizuho withdrawals are currently unavailable" and acknowledged that, while customers could deposit funds into their accounts, they were experiencing withdrawal delays. (Decl. In Supp. Of Pls.' Mot. For Prelim. Inj. ("PI Decl.," Dkt. 57), Exs. 13A and 15B.) Moreover, it defies common sense that Mizuho would affirmatively ask Mt. Gox to terminate their contract (MTD Ex. 1), but then would not want Mt. Gox to tell its customers that it was no longer working with Mizuho. Thus, even under a more lenient standard (which does not apply), the plaintiffs still have not asserted a claim. *Iqbal*, 556 U.S. at 679; *Pirelli*, 631 F.3d at 445.[11]

### 3. The Plaintiffs Have Not Alleged That Mizuho Intended To Defraud Them

The plaintiffs' fraudulent concealment claim is also flawed because their assertion that Mizuho intended to deceive them defies "common sense." *Iqbal*, 556 U.S. at 678-79. Claims of fraudulent intent must allege that the defendant "intentionally concealed or suppressed the fact with the intent to defraud the plaintiff." *Levin v. Citibank, N.A.*, 2009 WL 3008378, at *5 (N.D. Cal. Sept. 17, 2009); *Staples v. Christiansen*, 2013 WL 6197356, at *3 (C.D. Ill. Nov. 22, 2013)

---

[11] In addition, the plaintiffs' claim is premised on the idea that Mizuho should have disclosed to them details about its banking relationship with Mt. Gox. But the plaintiffs do not allege what that disclosure would have looked like, how Mizuho could have disclosed information to parties with whom it had no relationship, or anything to suggest that Mizuho had permission from Mt. Gox to disclose to third parties the confidential details of their banking relationship.

(defendant did not "trick" plaintiff into hiring her).  The plaintiffs have not met this standard.

The plaintiffs first assert that Mizuho knew its silence would mislead the plaintiffs because "if Mt. Gox users were aware of how difficult it would be to transact with Mt. Gox because of Mizuho's new policies, they would not invest through the exchange."  (Op. at 21.) That statement is demonstrably false based on the facts alleged in the Complaint, which show that it was widely publicized for months before Lack and Motto deposited money with Mt. Gox in early 2014 that users faced significant delays in withdrawing fiat currency.  (*See* MTD Ex. 5 (noting Mt. Gox users attributing withdrawal delays to "issues with [Mt. Gox's] bankers"); Ex. 6 (describing withdrawal delays of up to 22 months because of problems with Mt. Gox's banks); *see also id.* Ex. 4.) Lack and Motto were thus on notice for months before they invested about "how difficult it would be to transact with Mt. Gox," but still chose to invest through the exchange.  *See D'Attomo*, at ¶ 60 (affirming dismissal because "complaint lacks any allegation that [plaintiffs] could not have discovered the truth through reasonable inquiry").

The plaintiffs next assert that Mizuho "knew" that Karpeles's and Mt. Gox's communications with its customers were false.  (SAC ¶ 34.)  But again, the plaintiffs cite only legal conclusions to support this allegation.  According to the Complaint, Karpeles told Mt. Gox's customers that the delay in processing withdrawal requests was "due to a change in [Mt. Gox's] banking system" and Mt. Gox was "trying to form relationships with several" new banks, which would allow it "to transmit withdrawals going forward."  (*Id.* ¶ 33.)  The plaintiffs offer no basis from which to infer that Mizuho "knew" these statements were false, or that it knew they even existed, because these communications between Mt. Gox and its customers did not involve Mizuho.  And even if Mizuho learned of this information (which is not alleged), it would have made perfect sense to Mizuho.  Mizuho knew it had altered its relationship with Mt. Gox,

and therefore would hardly have been surprised that Mt. Gox was seeking "to form relationships with several new banking partners" to increase the "ability to transmit withdrawals." If Mt. Gox was not actually doing so, Karpeles – and not Mizuho – is the only person who would have known.

Finally, the plaintiffs assert that if U.S. "investors stopped investing in the exchange, then Mizuho would be unable to continue collecting deposit fees, which was one of [its] chief motivations." (Op. at 21.) But the plaintiffs' cases hold that a desire to collect fees does not show fraudulent intent. *Tricont. Indus. v. PwC*, 475 F.3d 824, 841 (7th Cir. 2007) (theory of motive to collect fees "involves too many assumptions and too much speculation to support a *reasonable* inference"). In addition, this argument is not plausible. If Mizuho were motivated by collecting fees, then it would simply have continued processing deposits and withdrawals in order to obtain fees on both transactions. It makes no sense that it would voluntarily terminate half of its fee-generating transactions if fees were its motivation.

In contrast with the plaintiffs' implausible theory, an "obvious alternative" reason for Mizuho's conduct is – as the plaintiffs themselves allege – that Mizuho wanted to end its relationship with Mt. Gox because of reputational concerns based on news reports that regulators were investigating Mt. Gox for illegal activity, including money laundering. (SAC ¶¶ 26-28.) Mizuho was in a "no win" situation, faced with three options: (i) do nothing, even though public reports cast a cloud of suspicion over Mt. Gox and its customers; (ii) terminate its contract with Mt. Gox, but likely get sued by Mt. Gox because it did not have proof of wrongdoing (and Mt. Gox would likely claim that Mizuho damaged its thriving business by halting inbound wire transfers); or (iii) continue to permit inbound transfers to limit Mt. Gox's damage, but terminate outbound transfers with the understanding that Mt. Gox would use other banks to service its

15

customers and gradually move away from Mizuho. While the plaintiffs are free to second-guess Mizuho's decision to select option three, that is not "fraud." And the plaintiffs' theory that one of Japan's largest banks implemented a scheme to silence Mt. Gox about a change in their banking relationship so it could continue to collect $13 fees on wire transfers (PI Decl., Ex. 7C), even as it was pushing to terminate the overall relationship, is simply not plausible and is exactly the type of made-up, conclusory allegation that *Twombly* and *Iqbal* were designed to weed out.

### 4. Mizuho's Alleged Concealment Did Not Harm Mt. Gox's Customers

The plaintiffs assert that if "Mizuho had been forthcoming about what it was doing, Lack, and other[s in] the deposit subclass, would not have deposited their money in Mt. Gox." (Op. at 22.) But, as explained above, Lack and Motto still deposited money in Mt. Gox despite the regular warnings in news reports, bitcoin websites and forums, and Mt. Gox itself announcing for months before their deposits that it was difficult to withdraw fiat currency. (MTD Exs. 4-6.) It is self-serving speculation to say Lack would have acted differently if Mizuho had announced it was not processing outbound wire transfers. *Iqbal*, 556 U.S. at 679; *Twombly*, 550 U.S. at 567.

Moreover, whether Lack or Motto would have deposited their funds with Mt. Gox is the wrong question. What matters is whether Mizuho's alleged concealment "caused" them any harm. (MTD at 23-24.) The plaintiffs offer no reason to doubt that, if Karpeles had not caused Mt. Gox to collapse by stealing or carelessly losing the plaintiffs' property, Mt. Gox could have wired Lack and Motto their money through another bank or just sent it by check, or Lack and Motto could have transferred their bitcoins to another exchange to withdraw their money. Because Mizuho had nothing to do with Mt. Gox's collapse and loss of customer funds, Mizuho did not cause Lack or Motto any harm. (*id.* at 10-14, 23-24; *supra* 5-8.)

### C. The Plaintiffs Have Not Pleaded A Claim For Unjust Enrichment

The plaintiffs cannot refute the argument that California law – the only law that applies to

16

this claim in the Second Amended Complaint – does not recognize an independent cause of action for unjust enrichment.  The only case the plaintiffs cite, *Doe I v. Wal-Mart Stores*, 572 F.3d 677 (9th Cir. 2009), was decided before the Ninth Circuit clarified that "California does not have a stand-alone unjust enrichment claim."  *Haddock v. Countrywide Bank, NA*, 2015 WL 9257316, at *17 (C.D. Cal. Oct. 27, 2015) (citing *Astiana v. Hain Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015)); *see also Nieto v. Perdue Farms*, 2010 WL 1031691, at *4 (N.D. Ill. Mar. 17, 2010) (unjust enrichment "is not a self-sufficient claim").

The plaintiffs' unjust enrichment claim also fails under Illinois law because, as they concede, the claim is "premised on the same wrongful concealment" alleged in their fraudulent concealment claim.  (Op. at 23; MTD at 24 n.16.)  The fact that they seek far less in damages for their unjust enrichment claim is legally irrelevant.  When an unjust enrichment claim "rests on the same improper conduct alleged in another claim" – regardless of whether the two claims seek different damages – they are tied together "and, of course, unjust enrichment will stand or fall with the related claim."  *Landlock*, 2013 WL 4854361, at *5; (MTD at 24 n.16).

Moreover, even if the plaintiffs' unjust enrichment claim could stand alone after their other claims are dismissed, the plaintiffs still have not alleged with the specificity required under Rule 9(b) that Mizuho unjustly earned fees from them.  *Nieto*, 2010 WL 1031691, at *3, 5 (dismissing unjust enrichment claim under Rule 9(b)).  Instead, the plaintiffs acknowledge that Mizuho may have charged its contractual counterparty, Mt. Gox, a fee for processing wire transfers and then Mt. Gox may have assessed a "pass-through" to the plaintiffs.  (Op. at 23.) Because the plaintiffs have not pleaded with particularity that Mizuho unjustly earned fees directly from the plaintiffs, their unjust enrichment claims must be dismissed.

### D.  The Plaintiffs Have Not Pleaded Any Basis For An Accounting

The plaintiffs do not dispute that, under both Illinois and California law, a claim for

17

accounting is not warranted where a plaintiff seeks an accounting for a readily ascertainable sum. (MTD at 25 n.17); *see also Cole-Haddon v. Drew Philips*, 454 F. Supp. 2d 772, 778 (N.D. Ill. 2006). Here, the plaintiffs have pleaded that Lack and Motto each deposited a sum certain into their Mt. Gox accounts. (SAC ¶ 57; TAC ¶ 70.) As a result, an accounting is not warranted.

## III.     THIS ACTION SHOULD BE DISMISSED FOR *FORUM NON CONVENIENS*

The plaintiffs do not dispute that a case should be dismissed for *forum non conveniens* where (i) there is an adequate alternative forum and (ii) the plaintiff's desired forum is more burdensome to the defendant than convenient to the plaintiff or (iii) there are administrative or legal efficiencies associated with the alternative forum. *Fischer v. Magyar Államvasutak Zrt.*, 777 F.3d 847, 866 (7th Cir. 2015). The plaintiffs also do not dispute that Japan's well-developed legal system provides an adequate alternative forum. The plaintiffs' main argument is that there is a "forceful presumption" in favor of litigating in their home jurisdiction. (Op. at 24.) But the presence of a U.S. plaintiff does not prevent courts from regularly dismissing claims for *forum non conveniens*, particularly claims related to investments in foreign jurisdictions. (MTD at 28); *Fischer*, at 871 (other factors outweighed convenience to plaintiff); *Apotex v. Istituto Biologico Chemioterapico S.P.A.*, 2003 WL 21780965, at *8-9 (N.D. Ill. July 30, 2003) (same).

The plaintiffs attempt to draw a false equivalence between the fact that evidence related to Mizuho – not to mention Mt. Gox and Karpeles, whom the plaintiffs do not address – is located in Japan and the fact that some limited evidence relating to the plaintiffs might be in the U.S. It is beyond dispute that this case centers on Mizuho's relationship with Mt. Gox and Karpeles, and on Mt. Gox's collapse as a result of Karpeles's fraud – events that took place entirely in Japan. The only evidence possibly located in the U.S. is a few documents relating to the plaintiffs' standing (*i.e.*, whether they actually deposited money with Mt. Gox). These documents are unlikely to shed any light on the plaintiffs' claims against Mizuho – *i.e.*, whether

18

Mizuho tortiously interfered with their contracts with Mt. Gox and fraudulently concealed changes in Mt. Gox's banking relationship.  All of the documents and witnesses related to those events are in Japan and are in (or speak) Japanese.  Translating documents and traveling to Japan to interview witnesses and take depositions with translators will be enormously expensive.  The fact that Mizuho's counsel in Canada translated one document (at a cost of approximately $8,000) does not diminish the burden on the parties (and the Court).  When the evidence needed to resolve a claim is so heavily concentrated in a foreign country and is in a foreign language, courts regularly dismiss the matter for *forum non conveniens*.  (MTD at 26-27); *see also U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008) ("[d]ragging all those witnesses and documents from Japan to Chicago," and dealing with evidence in Japanese, "would impose unreasonable burdens").[12]

Furthermore, because the events at issue here took place in Japan, Illinois choice of law rules unambiguously provide that Japanese law governs this matter, which should therefore take place in a Japanese court familiar with that body of law.  (MTD at 28-30.)  The plaintiffs confuse the choice of law between different U.S. jurisdictions with the choice between the U.S. and a foreign jurisdiction by arguing that Mizuho has not shown at this preliminary stage how Japanese law conflicts with Illinois law.  (Op. at 27-28.)  But one of the purposes of filing a motion to dismiss for *forum non conveniens* is to avoid the investment of time and resources "untangl[ing] problems in conflict of laws, and in [foreign law] itself."  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947).  The plaintiffs' cases are not relevant because they do not address the application of foreign law in the context of *forum non conveniens*.  (Op. at 27-28.)

_____

[12] The plaintiffs' cases dealt with different situations, where substantial evidence was in the U.S., no language issues arose, or the forum had an interest beyond the plaintiff being from the U.S.  (Op. at 26.)

Lastly, the plaintiffs argue that Japan would not provide an efficient forum because it does not offer U.S.-style class actions. (Op. at 28-29.) But even the articles that the plaintiffs cite discuss alternatives by which many parties can join in the same action in Japan. *See* Michael Madderra, New Class Actions in Japan, 23 Pac. Rim L. & Pol'y J. 795, 810 (2014) (discussing ways for parties with similar claims to act as co-litigants or authorize a representative to pursue an action whose resolution will be binding on all).[13] The law is clear that the absence of class actions in another country is not a reason not to dismiss a case for *forum non conveniens*, particularly where, as with Japan, the foreign country allows for alternative mechanisms that allow parties to achieve similar results. *See Fischer*, 777 F.3d at 861-62 (holding that despite "additional burdens on plaintiffs, the equivalent mechanism in Hungary does not . . . deprive plaintiffs of an effective remedy"); *Aguinda v. Texaco*, 303 F.3d 470, 478 (2d Cir. 2002) (Ecuador's requirement that thousands of "plaintiffs [ ] authorize the action in their names" did not prevent dismissal). The plaintiffs' claims should therefore be dismissed so they can bring their action in Japan, where the required evidence sits and the underlying facts occurred.

## **CONCLUSION**

For the foregoing reasons, and those set forth in our opening brief, this Court should dismiss the Complaint with prejudice.

---

[13] *See also* Kengo Nishigaki and Takeshi Yoshida, The New Class Action Legislation Promulgated in Japan, January 2014 (discussing mechanisms for group litigation, including representative parties and consolidation of claims). (Op. at 28 n.2)

MIZUHO BANK, LTD.


By:    _/s/_ Jason A. Frye_____
                    One of Its Attorneys



Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL  60602-3801
(312) 269-8000

Jerome S. Fortinsky (admitted *pro hac vice*)
jfortinsky@shearman.com
John A. Nathanson (admitted *pro hac vice*)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted *pro hac vice*)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000


Dated:  April 20, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Jason A, Frye, an attorney, hereby certify that I caused a true and correct copy of **Defendant Mizuho Bank, Ltd.'s Reply Memorandum Of Law In Further Support Of Its Motion To Dismiss The Second Amended Class Action Complaint For Failure To State A Claim Or Alternatively For *Forum Non Conveniens*** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 20th day of April, 2016.


      /s/ Jason A. Frye