# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 14 Civ. 1437 |
| v. | Judge Gary Feinerman |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | Magistrate Judge Susan E. Cox |
| *Defendants*. | |

## DEFENDANT MIZUHO BANK, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL

## **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ....................................................................................................................4

I.     THE COURT'S ORDER RAISES CONTROLLING QUESTIONS OF LAW ................5

II.    THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION AS
TO WHETHER THIS COURT HAS SPECIFIC PERSONAL JURISDICTION
OVER MIZUHO..........................................................................................................6

       A.    The Seventh Circuit Has Not Decided Whether A Defendant's
Silence or Inaction Can Constitute Intentional Contact With The
Forum State Sufficient To Support Personal Jurisdiction......................................7

       B.    There Is Substantial Ground For A Difference Of Opinion As To
Whether Adoption Of A Policy That Equally Affects Thousands Of
Individuals Around the World, Or Failure To Disclose Such A Policy,
Subjects A Defendant To Personal Jurisdiction In Each Forum State Where
One Of Those Individuals May Be Located .........................................................10

III.   A REVERSAL BY THE SEVENTH CIRCUIT WOULD TERMINATE THIS
LITIGATION...........................................................................................................13

IV.   THIS MOTION IS TIMELY .....................................................................................14

CONCLUSION...................................................................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Page**

**Cases**

*Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 2016 WL 1077048 (Fed. Cir. Mar. 18, 2016).................................................................................................................5

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014)..........................................................................................8, 10, 12

*Ainsworth v. Cargotec USA, Inc.*, 2011 WL 6291812 (S.D. Miss. Dec. 15, 2011).........................6

*Armstrong v. La Salle Bank, N.A.*, 2007 WL 704531 (N.D. Ill. Mar. 2, 2007), *aff'd*, 552 F.3d 613 (7th Cir. 2007)................................................................................4, 5, 6

*Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1007 (7th Cir. 2002), *denying motion to stay mandate*, 297 F.3d 542 (7th Cir. 2002).........................................................................................4, 13, 14

*Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998 (N.D. Ill. 2014) ............................4, 5, 7

*Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) ..............................................................................9

*Gullen v. Facebook.com*, 2016 WL 245910 (N.D. Ill. Jan. 21, 2016) ...............................11, 12, 13

*Int'l Shoe Co. v. State of Wash., Office of Unemp't Comp. and Placement*, 326 U.S. 310 (1945).........................................................................................................10, 11

*Klump v. Duffus*, 71 F.3d 1368 (7th Cir. 1995) ..............................................................................5

*People ex rel. Madigan v. Hemi Grp.*, 2008 WL 5383354 (C.D. Ill. Dec. 19, 2008).....................6

*Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353 (7th Cir. 1996) .................................................................................................................................5

*Noboa v. Barceló Corporación Empresarial, S.A.*, 812 F.3d 571 (7th Cir. 2016) ........................8

*Ogden Eng'g Corp. v. St. Louis Ship, Div. of Pott Indus., Inc.*, 568 F. Supp. 49 (N.D. Ind. 1983).............................................................................................................7

*Philos Techs. v. Philos & D, Inc.*, 802 F.3d 905 (7th Cir. 2015)...................................................9

*SEC v. Buntrock*, 2003 WL 260711 (N.D. Ill. Feb. 3, 2003).....................................................7, 13

*In re Text Messaging Antitrust Litig.*, 630 F.3d 622 (7th Cir. 2011) ......................................4, 5, 6

*Vance v. Rumsfeld*, 2010 WL 2136657 (N.D. Ill. May 26, 2010) ...................................................6

*Walden v. Fiore*, 134 S. Ct. 1115 (2014) ................................................................................ *passim*

**Other Authorities**

Charles Alan Wright & Arthur R. Miller, 16 FED. PRAC. & PROC. JURIS. § 3930
(3d. ed. 2015) ..................................................................................................................... 13

Defendant Mizuho Bank, Ltd. ("Mizuho") respectfully submits this memorandum of law in support of its motion, pursuant to 28 U.S.C. § 1292(b), for certification for interlocutory appeal of the Court's March 14, 2016 Order (the "Order") denying Mizuho's motion to dismiss for lack of personal jurisdiction.

## PRELIMINARY STATEMENT

This Court's Order denying Mizuho's motion to dismiss for lack of personal jurisdiction is apparently the first reported opinion to address a novel question:  whether a foreign defendant's alleged silence or inaction (in this case, when accepting funds for deposit) can constitute intentional contact with a forum state sufficient by itself to support personal jurisdiction.  Because this is (i) a "controlling question of law," (ii) as to which there is a "substantial ground for difference of opinion," and (iii) resolving this issue would "materially advance the ultimate termination of the litigation," it satisfies the requirements for certification under Section 1292(b).

In deciding Mizuho's personal jurisdiction motion, this Court confronted a unique combination of factors that make the Order particularly appropriate for certification, including (i) the need to interpret and apply a relatively new Supreme Court decision on specific personal jurisdiction (*Walden v. Fiore*, 134 S. Ct. 1115 (2014)), (ii) a foreign defendant whose only "contact" with the forum state was "remain[ing] silent when knowingly accepting [the plaintiff's] deposits" (Order at 10), and (iii) an unusual factual scenario in which the defendant's only contact with the plaintiff consisted of an electronic communication between two banks' computers (*i.e.*, a wire transfer).  We respectfully suggest (for the reasons discussed below) that this Court applied *Walden* incorrectly to the facts of this case.  At a minimum, the Seventh Circuit may well have a different view, and, if so, it would be important to learn its view sooner rather than later.

As the Court is aware, Mizuho is a Japanese financial institution in which Mt. Gox, a Japanese corporation, had an account and that, like any bank, processed inbound and outbound wire transfers for its customers. (Dkt. 146, Second Amended Class Action Complaint ¶ 22.) In mid-2013, according to the Complaint, Mizuho became concerned that government authorities were investigating Mt. Gox for illegal activity and sought to terminate its contract with Mt. Gox.[1] (Order at 2-3.) When Mt. Gox refused to terminate the contract voluntarily, Mizuho modified its business relationship with Mt. Gox and stopped processing outbound international wire transfers for Mt. Gox but continued to accept inbound international wire transfers from Mt. Gox's customers. (*Id.* at 3-4.) It is undisputed that, when Mizuho implemented this policy, it was not directed specifically at anyone in California. It is also undisputed that Mizuho's alleged failure to publicly disclose its change in policy with Mt. Gox (assuming that such disclosure would have been feasible and would have been permissible under Japanese law) was not directed specifically at anyone in California. In January 2014 (approximately six months after Mizuho implemented its policy), Joseph Lack, a California resident, transmitted money to Mt. Gox by wiring funds from his own bank account to Mt. Gox's bank account at Mizuho. (*Id.* at 4.) When the sending bank electronically transmitted the funds, Mizuho electronically received certain information about Lack, including his address in California. (*Id.*) According to the plaintiffs, Mizuho did not inform Lack that it had altered its banking relationship with Mt. Gox and was no longer processing outbound international wire transfers for Mt. Gox customers. (*Id.*)

Based on these facts, the Court stated that Mizuho had "purposefully directed its conduct to California" when it received a wire transfer for Mt. Gox's account from a California resident (Lack) without disclosing its decision to stop processing outbound international wire

---

[1] Unless otherwise specified, all facts recounted in the motion are assumed to be true for purposes of this motion, but not necessarily for other purposes.

2

withdrawals for Mt. Gox. (*Id.* at 10-11.) Accordingly, the Court ruled that "Mizuho [was] subject to personal jurisdiction in California, where Lack resides."[2] (*Id.* at 8.)

We respectfully submit that the Court viewed the facts of this case through the wrong analytical lens. *See Walden*, 134 S. Ct. at 1124 (the lower court reached the wrong result because it "shift[ed] the analytical focus from [defendant's] contacts with the forum to his contacts with [plaintiff]"). The actions that give rise to the plaintiffs' claims are (i) Mizuho's decision to stop outbound international wire transfers for Mt. Gox while it continued to accept inbound international wire transfers and (ii) its alleged failure to inform Mt. Gox's customers of this decision. Those actions did not occur in California, and they were not purposefully directed at California. The only connection that Mizuho allegedly had with California occurred months later when Mizuho (or more precisely, its computers) received information that Lack, a California resident, had wired money to Mt. Gox's account, and Mizuho allegedly failed to inform him that it was no longer providing outbound international wire transfers. But, as discussed below, it is by no means clear that an out-of-state defendant purposefully directs its activity to the forum state when it (i) implements a policy that affects all users equally and is not directed at any one person and (ii) does not inform any user around the world (including users located in the forum state) of that policy after it (or its computers) learn of an individual's

---

[2] In the same order, the Court ruled that "personal jurisdiction lies over Mizuho in California but not Illinois" (Order at 17) and gave the plaintiffs leave to amend their complaint to name an Illinois plaintiff to avoid transfer of the case to California. (*Id.* at 1, 18-19.) The plaintiffs subsequently filed a new complaint with an additional plaintiff who purports to be a member of the putative class (and a member of the proposed "Deposit Subclass") from Illinois. The issue is not moot, however, because, for the reasons set forth herein and in Mizuho's papers in support of its motion to dismiss for lack of personal jurisdiction (Dkt. 149, 155), it is no more subject to jurisdiction in Illinois that it is in California. Just as no party has suggested that the plaintiffs' amendment of their complaint to add a new Illinois plaintiff requires that the defendants file a new motion to dismiss, the insertion of a new Illinois plaintiff should not affect whether the Order should be certified for appellate review.

3

residence.  While Mizuho recognizes that the Court has closely and conscientiously examined these issues, it believes there is substantial ground for a difference of opinion.

Mizuho therefore respectfully requests that the Court certify the following questions of law for immediate appellate review:

> (1) May a foreign defendant's alleged silence or inaction (in this case, when accepting funds for deposit) constitute intentional contact with a forum state sufficient by itself to support personal jurisdiction consistent with the requirements of the Due Process Clause of the United States Constitution?

> (2) May a foreign defendant's adoption of a policy that equally affects thousands of individuals around the world, or its failure to disclose such a policy to those individuals, subject it to personal jurisdiction in each forum state where any of those individuals may be located consistent with the requirements of the Due Process Clause of the United States Constitution?

## **ARGUMENT**

Certification for immediate appellate review is appropriate under 28 U.S.C. § 1292(b) where (1) the appeal presents a controlling question of law, (2) that is contestable, and (3) that will expedite the litigation, provided that the petition to appeal is filed within a reasonable amount of time after entry of the order sought to be appealed.  *See Boim v. Quranic Literacy Inst. and Holy Land Found. for Relief and Dev.*, 291 F.3d 1000, 1007 (7th Cir. 2002), *denying motion to stay mandate*, 297 F.3d 542 (7th Cir. 2002); *Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1001 (N.D. Ill. 2014).  Where a movant demonstrates that these criteria are satisfied, it is "the *duty* of the district court . . . to allow an immediate appeal to be taken." *Armstrong v. La Salle Bank, N.A.*, 2007 WL 704531, at *2 (N.D. Ill. Mar. 2, 2007) (emphasis added; internal quotations omitted), *aff'd*, 552 F.3d 613 (7th Cir. 2007); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2011) (where the reversal of a decision would result in dismissal, "the concerns underlying that decision argue for empowering the district court and the court of appeals to authorize an interlocutory appeal").

## I.   THE COURT'S ORDER RAISES CONTROLLING QUESTIONS OF LAW

Mizuho's motion presents novel and controlling questions of law that are appropriate for appeal under § 1292(b).  In general, an appeal that seeks to clarify the meaning of a "statutory or constitutional provision, regulation, or common law doctrine" presents a controlling question of law.  *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 624 (noting with approval the district court's decision to grant interlocutory appeal where the "contours of the Supreme Court's ruling, and particularly its application in the present context, remain unclear"); *see also Armstrong*, 2007 WL 704531, at *2 (concluding that a request for "clarification of the legal standard to be applied" presents a question of law).  Here, certification is appropriate because, as explained below, Mizuho's motion seeks to clarify the contours of specific personal jurisdiction after the Supreme Court's recent decision in *Walden*.  *See Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1358 (7th Cir. 1996) ("The determination of personal jurisdiction is a question of law . . . ."); *Klump v. Duffus*, 71 F.3d 1368, 1371 (7th Cir. 1995) (same); *see also Acorda Therapeutics Inc. v. Mylan Pharm. Inc.*, 2016 WL 1077048, at *2 (Fed. Cir. Mar. 18, 2016) (granting interlocutory appeal on the question whether the defendants' contacts with the forum were sufficient to support specific personal jurisdiction).  Certification is also appropriate because Mizuho's questions are narrow ones that the Seventh Circuit can "decide quickly and cleanly without having to study the record."  *See Dahlstrom*, 39 F. Supp. 3d at 1003 (internal quotations and citation omitted); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d at 625 (granting interlocutory appeal where "the question presented by the appeal . . . require[d] the interpretation, and not merely the application, of a legal standard").

The question whether the Court possesses personal jurisdiction over Mizuho is not just a question of law.  It is a *controlling* question of law for purposes of Section 1292(b), because a reversal of this Court's Order would be almost certain to end the litigation.  *See People ex rel.*

5

*Madigan v. Hemi Grp.*, 2008 WL 5383354, at *1 (C.D. Ill. Dec. 19, 2008) (granting leave to appeal under Section 1292(b) and remarking that whether "[d]efendant's Internet activities provided a basis for specific jurisdiction . . . involved a controlling question of law"); *Armstrong*, 2007 WL 704531, at *3 ("A question of law is 'controlling' under 28 U.S.C. § 1292(b) if 'its resolution is quite likely to affect the further course of litigation, even if not certain to do so.'") (internal citation omitted); *see also Ainsworth v. Cargotec USA, Inc.*, 2011 WL 6291812, at *3 (S.D. Miss. Dec. 15, 2011) (granting a request for interlocutory appeal where petitioner asserted that the court's finding of personal jurisdiction was inconsistent with a recent decision by the U.S. Supreme Court, noting that this was "plainly" a controlling question of law). A decision now by the Seventh Circuit on the issue of specific personal jurisdiction would ensure that neither this Court nor the parties spend substantial time and resources on this litigation unless it is necessary and appropriate.

## II. THERE IS SUBSTANTIAL GROUND FOR A DIFFERENCE OF OPINION AS TO WHETHER THIS COURT HAS SPECIFIC PERSONAL JURISDICTION OVER MIZUHO

The Court's conclusion that it has personal jurisdiction over Mizuho raises issues of law as to which courts may reasonably differ. *See Armstrong*, 2007 WL 704531, at *3 (finding a question contestable where the court's order turned on a narrow interpretation of Seventh Circuit precedent "over which parties and courts may reasonably differ"). The Seventh Circuit and other courts in the Northern District of Illinois have found that questions of law are contestable for purposes of Section 1292(b) where they address novel interpretations of law or where they concern recent and "unsettled" opinions of higher courts. *See In re Text Messaging Antitrust Litig.*, 630 F.3d at 626 (granting a request for interlocutory appeal where it involved the interpretation of "a recent decision," the scope of which was "unsettled"); *Vance v. Rumsfeld*, 2010 WL 2136657, at *2 (N.D. Ill. May 26, 2010) (noting that an issue was contestable where

6

"case law [was] sparse concerning the scope of [the relevant provision]"); *SEC v. Buntrock*, 2003 WL 260711, at *3 (N.D. Ill. Feb. 3, 2003) (determining that there were "substantial ground for a difference of opinion" where, among other factors, there was "a dearth of caselaw addressing" the question being appealed).  Moreover, case law from within this Circuit suggests that interlocutory appeal is appropriate where (1) the movant offers a defensible, competing interpretation, *see Dahlstrom*, 39 F. Supp. 3d at 1002, or (2) the court, in reaching its decision, notes the closeness of the issue.  *See Ogden Eng'g Corp. v. St. Louis Ship, Div. of Pott Indus., Inc.*, 568 F. Supp. 49, 56 (N.D. Ind. 1983) (granting leave to appeal under § 1292(b) where the defendant's position opposing personal jurisdiction was "well reasoned and well briefed, and it [was] obvious to the court that this [was] an extremely close question").  Both of these factors are present here.[3]

### A. The Seventh Circuit Has Not Decided Whether A Defendant's Silence or Inaction Can Constitute Intentional Contact With The Forum State Sufficient To Support Personal Jurisdiction

At the heart of the Court's analysis of personal jurisdiction is the idea that Mizuho harmed Lack, the California plaintiff, by "remaining silent and thereby concealing the truth about Mizuho's . . . policy regarding its Mt. Gox bank account . . . and then by accepting his deposit (and reaping the associated service fee) with the knowledge of the deposit's California origin and Lack's presence in California."  (Order at 10.)  Both parts of that description involve inaction by Mizuho.  To remain silent is to say (and do) nothing.  To accept a wire transfer is also passive, especially because, by its nature, a wire transfer is not a communication between people, but just a transmittal of information electronically from one machine to another.  The

---

[3]  The closeness of the present questions is further underscored by the Court's own comment before issuing the Order that the "Seventh Circuit hasn't spoken very extensively about *Walden*."  Transcript of Proceedings at 4:5, *Greene v. Mt. Gox*, No. 1:14-cv-01437 (N.D. Ill. Feb. 9, 2016).  In view of the undeveloped legal landscape, an interlocutory appeal is warranted.

plaintiffs do not allege that "accepting [Lack's] deposit" involved any affirmative conduct by Mizuho: no solicitation by Mizuho, no subsequent confirmation, no communication with him in any way, and indeed nothing more than a failure to return funds that Lack's bank sent for deposit in Mt. Gox's account.

The Supreme Court has held that "[a] forum [s]tate's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 134 S. Ct. at 1123; *see also Noboa v. Barceló Corporación Empresarial, S.A.*, 812 F.3d 571, 572 (7th Cir. 2016) (specific personal jurisdiction must be based on "intentional contacts by the defendant with the forum jurisdiction"); *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802-03 (7th Cir. 2014) ("beyond simply operating an interactive website accessible in the forum state," the defendant must have "targeted [the forum state] somehow"). In the Order, the Court noted that the "specific jurisdiction analysis must account for the nature of the torts alleged" and found that the silence and passive acceptance alleged by the plaintiffs here were "sufficient to establish that Mizuho purposefully directed its conduct to California, given that the torts were completed only when Mizuho knowingly accepted a deposit" from California. (Order at 10-11.) Although the Court explained its reasoning, it did not cite any cases, either from this Circuit or elsewhere, in which any court has held that a defendant's silence or inaction, even if sufficient to establish liability, was enough to constitute "intentional conduct . . . that creates the necessary contacts with the forum." *Walden*, 134 S. Ct. at 1123. Presumably the reason the Court did not cite such authority is that there is none, because this is a rapidly developing area of the law. That is also why there is "substantial ground for a difference of opinion" here, and why certification is appropriate.

8

Because the Supreme Court and Seventh Circuit have emphasized that the exercise of jurisdiction requires *intentional* contacts with the forum by the defendant, and because the Supreme Court has said that jurisdiction depends on the contacts that the "defendant *himself* creates with the forum" (*Id.* at 1122 (internal quotations omitted)), silence and inaction—and the passive receipt of information by electronic means—are not enough.  Indeed, the Seventh Circuit, in a recent case, found that even though an out-of-state defendant had entered into a contract with an Illinois company and had some preliminary discussions about it in Illinois, those factors did "not outweigh the fact that they neither solicited the Illinois company to enter into an agreement nor travelled to the state for the purpose of conducting business with that company." *Philos Techs. v. Philos & D, Inc.*, 802 F.3d 905, 915 (7th Cir. 2015).  Mizuho had far less contact with the forum:  not only did it not solicit any transaction from Lack or travel to his home forum to conduct business with him, but it had no discussions with him in California of any kind, preliminary or otherwise.[4]  Similarly, Mizuho's alleged conduct is far different from the defendant's conduct in *Felland v. Clifton*, on which the Court relies for the proposition that "'lulling communications . . . are relevant to the evaluation of the defendant's minimum contacts with the forum state,'" because the defendant in *Felland* affirmatively and repeatedly made misleading communications to the plaintiff's home in the forum state.  (Order at 9-10 (quoting *Felland v. Clifton*, 682 F.3d 665, 675-76 (7th Cir. 2012)).)

In short, the Court's ruling on personal jurisdiction goes a step beyond what prior courts have said and raises an issue that the Supreme Court and the Seventh Circuit have not yet addressed.  The novelty of the issue creates substantial ground for a difference of opinion.

---

[4]  The fact that the claims in *Philos Technologies* were contract claims, rather than tort claims (as they are here), is of no consequence.  *See Philos Techs.*, 802 F.3d at 915 (noting that the court's holding would be the same even if the plaintiffs had asserted a tort claim instead of a contract claim).

**B.      There Is Substantial Ground For A Difference Of Opinion As To Whether Adoption Of A Policy That Equally Affects Thousands Of Individuals Around the World, Or Failure To Disclose Such A Policy, Subjects A Defendant To Personal Jurisdiction In Each Forum State Where One Of Those Individuals May Be Located**

Members of the Mt. Gox exchange reside in 175 countries, and at least 30,000 members live in the United States.  (Dkt. 197, Pl. Opp. to Motion to Dismiss, Ex. 1 ¶ 24.)  Although some members of the exchange invested bitcoins rather than cash, and some presumably sent checks instead of wire transfers (or wired money to banks other than Mizuho), Mizuho undoubtedly received wires from hundreds or perhaps thousands of members in innumerable jurisdictions in the United States and throughout the world.  If a court in California or Illinois may exercise personal jurisdiction over Mizuho based solely on Mizuho's receipt of wire transfers without disclosing to the sender the alleged change in Mizuho's relationship with Mt. Gox, then so can courts in all those other jurisdictions.  But if so, then Mizuho's conduct here in effect subjects it to what the Seventh Circuit recently criticized as "*de facto* universal jurisdiction," which the Circuit said "runs counter to the . . . approach the [Supreme] Court has followed since *International Shoe* [*Co. v. State of Washington, Office of Unemployment Compensation and Placement*, 326 U.S. 310 (1945)], and that it reaffirmed as recently as February 2014 in *Walden.*"  *Advanced Tactical*, 751 F.3d at 801-02.  At a minimum, the Order is in tension with the Seventh Circuit's decision in *Advanced Tactical*.  Accordingly, there is substantial ground for difference of opinion as to whether Mizuho's failure to disclose the policy it adopted—which equally affected all Mt. Gox members that wired funds to Mizuho—is sufficient to subject Mizuho to personal jurisdiction in a forum state simply because a member of the Mt. Gox exchange wired money from that location.

The question of whether specific personal jurisdiction can be based on activities directed generally at all users of a defendant's service implicates the bedrock principle that an out-of-state

defendant must have sufficient "minimum contacts" with the forum before a court can exercise personal jurisdiction consistent with the Due Process Clause. *See International Shoe*, 326 U.S. at 316. In *Walden*, for example, the Court rejected the standard for specific personal jurisdiction previously applied by the Ninth Circuit, which suggested that a court might have personal jurisdiction over a defendant "simply because he allegedly directed his conduct at plaintiffs [who] he knew had [forum state] connections." *Walden*, 134 S. Ct. at 1125. In so doing, the Supreme Court reiterated that the focus of the minimum contacts analysis is whether the "*defendant's* actions connect him to the *forum*." *See id.* at 1124. Applying this standard, the Court in *Walden* determined that the defendant lacked sufficient contacts with the forum state of Nevada, in circumstances where the plaintiffs' injuries would have been the same "in California, Mississippi, or wherever else [the plaintiffs] might have traveled and found themselves wanting more money than they had." *Id.* at 1125. *Walden* thus reinforced the principle that conduct aimed at the general public does not become directed at a specific forum by virtue of the fact that a plaintiff within the forum is injured; rather, the "proper question is . . . whether the defendant's conduct connects him to the forum in a meaningful way." *Id.* (finding that the Ninth Circuit's standard "obscure[d] the reality that none of petitioner's challenged conduct had anything to do with Nevada itself").

Another court in this District recently issued a decision anchored in these considerations. In *Gullen v. Facebook.com*, the defendant, Facebook, had a practice of scanning every user-uploaded photo on its site and extracting biometric identifiers of each face. 2016 WL 245910, at *1 (N.D. Ill. Jan. 21, 2016). After a third party uploaded a photograph of the plaintiff's face, Facebook scanned the photograph and used the biometric identifiers to create a template of his face. *Id.* The court declined to exercise personal jurisdiction over Facebook because its

11

practices affected "every user-uploaded photo" and not just those uploaded by residents in

Illinois. *Id.* In support, the district court noted that the Seventh Circuit in *Advanced Tactical*

"rejected the notion that an online merchant's operation of an interactive site is sufficient to

confer specific jurisdiction on it in every state from which the site can be accessed." *Id.* at *2;

*see also Advanced Tactical*, 751 F.3d at 803 ("Having an 'interactive website' (which hardly

rules out anything in 2014) should not open a defendant up to personal jurisdiction in every spot

on the planet where that interactive website is accessible."). *Gullen,* like *Advanced Tactical,* thus

confirms that allegedly improper conduct that is not directed at a particular forum, but which

affects a segment of the public generally, does not provide a basis for the exercise of specific

personal jurisdiction.

Here, all of the conduct relevant to the plaintiffs' claims (including Mizuho's decision to

halt international wire withdrawals from Mt. Gox's account) occurred in Japan—not California

or Illinois. (Dkt. 149, Declaration of Yasuo Imaizumi, ¶ 7.) Moreover, Mizuho's decision was

made months before Lack wired money into the Mt. Gox account and therefore could not have

been purposefully directed at Lack in California because Mizuho did not have information about

Lack's residence, and apparently did not even know who Lack was or that he had any intention

to invest in Mt. Gox, when the decision was made. If Mizuho's activities were directed at

anyone, they were directed at Mt. Gox—a Japanese company. To the extent that Mizuho's

decision had an incidental impact on Lack, that impact was no different from the impact it had on

any other Mt. Gox customer from any other jurisdiction who wired money to the Mt. Gox

account at Mizuho.

Like Facebook in *Gullen*, Mizuho implemented a practice that affected its users equally.

As in *Gullen*, months after the defendant implemented the relevant practice, a forum resident

engaged with the defendant through its computers and was allegedly affected by the new practice. As in *Gullen*, specific personal jurisdiction was lacking, because the defendant's practice affected all users equally (not just those in California). *See Gullen*, 2016 WL 245910, at *3. Even if the Court disagrees with this analysis, there is substantial ground for a difference of opinion on this question.

## III.     A REVERSAL BY THE SEVENTH CIRCUIT WOULD TERMINATE THIS LITIGATION

An interlocutory appeal is further warranted because a ruling in Mizuho's favor would end the case.[5] *See, e.g.*, *Buntrock*, 2003 WL 260711, at *3 (finding that an interlocutory appeal would advance the litigation because a reversal by the Seventh Circuit would result in dismissal of the case). Permitting an appeal now rather than litigating the case through trial and allowing an appeal only then would avoid a potentially colossal waste of the Court's and the parties' resources. These factors further support certifying the Court's Order for an interlocutory appeal. *See Boim*, 291 F.3d at 1007-08 (remarking that the resolution of a novel question of law would facilitate the conclusion of the litigation); *Buntrock*, 2003 WL 260711, at *3 ("It would be a substantial waste of not only this Court's judicial resources but also the personal funds of the defendants if this case were to proceed forward and then ultimately be reversed because the Seventh Circuit determined we did not possess subject matter jurisdiction over the lawsuit in the first place."); *see also* Charles Alan Wright & Arthur R. Miller, 16 FED. PRAC. & PROC. JURIS. § 3930 (3d. ed. 2015) ("§ 1292(b) is designed to . . . minimiz[e] the total burdens of litigation on parties and the judicial system by accelerating or at least simplifying trial court proceedings").

---

[5] Mizuho is one of two defendants. The other defendant, Mark Karpeles, has not responded to the complaint and has been reported to be incarcerated in Japan.

13

## IV.     <u>THIS MOTION IS TIMELY</u>

This motion for interlocutory appeal is timely.  Although Section 1292(b) does not set a time period for a party to file a petition for leave to appeal, courts have found that such petitions are timely as long as they are filed "within a reasonable amount of time after entry of the district court order being appealed." *See, e.g.*, *Boim*, 291 F.3d at 1007-08 (finding a motion timely where it was made approximately five weeks after the Court's order was docketed).  The Court's order on Mizuho's motion to dismiss was docketed on March 14, 2016.  This motion is made within approximately the same time span as the comparable motion in *Boim* and is therefore submitted within a reasonable time after the entry of the order that Mizuho seeks to appeal.

## CONCLUSION

For the foregoing reasons, Mizuho Bank respectfully requests that the Court certify its

March 14, 2016 Order for interlocutory appeal to the United States Court of Appeals for the

Seventh Circuit.

MIZUHO BANK, LTD.

By:   /s/ Jason A. Frye
                          One of Its Attorneys


Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

Jerome S. Fortinsky (admitted *pro hac vice*)
jfortinsky@shearman.com
John A. Nathanson (admitted *pro hac vice*)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted *pro hac vice*)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Dated:  April 21, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Jason A, Frye, an attorney, hereby certify that I caused a true and correct copy of **Defendant Mizuho Bank, Ltd.'s Memorandum Of Law In Support Of Its Motion For Certification For Interlocutory Appeal** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 21st day of April, 2016.


                                             /s/ Jason A. Frye