# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| *Plaintiffs*, | ) Case No. 14 C 01437<br>) |
| v. | ) Judge Gary Feinerman<br>) Magistrate Judge Susan E. Cox |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | )<br>)<br>)<br>) |
| *Defendants*. | )<br>) |

**SUPPLEMENTAL MEMORANDUM OF LAW OF DEFENDANT MIZUHO BANK, LTD. IN SUPPORT OF ITS MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT FOR FAILURE TO STATE A CLAIM OR ALTERNATIVELY FOR *FORUM NON CONVENIENS***

At the April 27, 2016 hearing on the motion to dismiss filed by Mizuho Bank, Ltd. ("Mizuho"), the Court, for purposes of evaluating Mizuho's request for dismissal on *forum non conveniens* grounds, asked whether there is any difference between Japanese law and Illinois law as to the elements of the causes of action asserted by the plaintiffs in the Second Amended Class Action Complaint (the "Complaint"). (*See* Apr. 27, 2016 Tr. at 13:24-14:5; 17:22-18:19; 20:10-14; 21:20-22:18, attached as Exhibit A.) In order to more fully respond to the Court's questions on this subject, Mizuho submits this supplemental memorandum of law and the accompanying declaration of Hirotaka Uranaka ("Uranaka Decl."), who is admitted to practice law in both Japan and New York. (Uranaka Decl. ¶¶ 1, 3, attached as Exhibit B.)

Japanese law provides a means of redress for plaintiffs that prove tortious interference with contract, unjust enrichment or fraudulent concealment, which are the three causes of action that the plaintiffs assert in the Complaint. (*Id.* ¶ 9.) In each instance, however, the formulation of the

cause of action under Japanese law is different from the formulation under Illinois law. (*Id.*)

For tortious interference with contract, as for other torts, a plaintiff must satisfy the four elements set forth in Article 709 of the Civil Code for a "general tort": (i) the infringement of a right or legally protected interest; (ii) the defendant's intent or negligence; (iii) damages; and (iv) a causal relationship between the infringement and the damages. (*Id.* ¶¶ 10-11.) In order to determine whether the infringement of the right constitutes a tort, judges in Japan must make a determination on a case by case basis taking into consideration the nature and features of the specific contract at issue and the manner of the infringement. (*Id.* ¶ 12.) That determination is based on an accumulation of scholarly theories and judicial precedent on how the elements of the tort are to be interpreted and how the principles are to be applied to different types of disputes. (*Id.*) By comparison, under Illinois law, a plaintiff, as noted in Mizuho's motion to dismiss[1], must prove "(1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 154-55 (1989) (internal quotation marks omitted).

To recover for unjust enrichment under Japanese law, a plaintiff must prove the four elements set forth in Article 703 of the Civil Code: (i) loss on the part of the plaintiff; (ii) benefit on the part of the defendant; (iii) a causal relationship between the loss and the benefit; and (iv) a lack of legal cause for the benefit. (Uranaka Decl. ¶ 14.) A defendant who is unaware of the "lack of a legal cause" owes a duty to return the benefit "to the extent such benefit exists," whereas a defendant who is aware of the "lack of a legal cause" must return the benefit with interest and is

---

[1] Memorandum of Law of Defendant Mizuho Bank, Ltd. in Support of Its Motion to Dismiss the Second Amended Class Action Complaint for Failure to State a Claim or Alternatively for *Forum Non Conveniens* ("MTD") (ECF. No. 183.)

obligated to compensate any damages. (*Id.* ¶ 15.) As with the elements of a tort claim, the elements of unjust enrichment are open to interpretation. In addition, a consensus has not yet been reached as to all aspects of the law on unjust enrichment, including, for instance, whether the "causal relationship" must be direct or may be indirect, and the scope of the "to the extent such benefit exists" language. (*Id.* ¶ 16.) In reality, as noted above, judges take into consideration the applicable scholarly theories and judicial precedents on a case by case basis to reach a substantively reasonable conclusion. (*Id.*) By comparison, under Illinois law, a plaintiff must show that the defendant "unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Landlock Natural Paving, Inc. v. Desin L.P.*, 2013 WL 4854361, at *5 (N.D. Ill. Sept. 11, 2013) (Feinerman, J.) (internal quotation marks omitted).

Finally, under Japanese law, the concept of fraudulent concealment can constitute either a tort (for parties not in a contractual relationship) or a breach of contract (for parties in a contractual relationship). (Uranaka Decl. ¶ 17.) Here, the plaintiffs have not asserted any contractual relationship with Mizuho, so the analysis of fraudulent concealment as a tort would be more relevant. To prove the tort of fraudulent concealment, the plaintiffs would have to satisfy the four elements of a general tort set forth in Article 709 of the Civil Code and quoted above. By comparison, under Illinois law, a plaintiff asserting fraudulent concealment must prove: (1) that "the defendant concealed a material fact under circumstances that created a duty to speak"; (2) that "the defendant intended to induce a false belief"; (3) that "the plaintiff could not have discovered the truth through reasonable inquiry or inspection" (or was prevented from doing so); (4) justifiable reliance by the plaintiff; (5) that the plaintiff would have acted differently if he or she was aware of the hidden information; and (6) damages. *D'Attomo v. Baumbeck*, 2015 IL App (2d)

140865 ¶ 57. To show circumstances creating a duty to speak, a fraudulent concealment plaintiff must show a fiduciary or confidential relationship with the defendant, either as a matter of law or based on the nature of their relationship. *Id.* ¶¶ 59-60.

In sum, although Illinois law on the causes of action in question has some similarities to Japanese law, it is not the same. The Court therefore cannot avoid the problems of applying Japanese law in a U.S. court merely by assuming that the applicable law is the same in both jurisdictions or by relying on the absence of any demonstration on the record that the laws of the two jurisdictions diverge. On the other hand, as noted in Mizuho's motion to dismiss[2] and discussed at the hearing on April 27, 2016, the Court need not reach the request for dismissal on *forum non conveniens* grounds at all if the Court agrees that, even under the law that the plaintiffs invoke (the law of Illinois), they have—for any of the various independent reasons set forth in the motion to dismiss for each cause of action—failed to even state a claim.

Litigating this case under Japanese law in this Court would pose substantial difficulties. For one thing, as explained by Mr. Uranaka, the application of the general principles of tort and unjust enrichment to the specific claims made by the plaintiffs here would require the Court to locate, analyze and apply the various "scholarly theories and judicial precedents" that courts in Japan use to reach their determination as to a "substantively reasonable conclusion." As a practical matter, that might well mean that the parties would have to submit additional briefing and expert declarations on specific issues throughout the case (and certainly in connection with summary judgment, the jury charge and post-trial motions).

In addition, the Court potentially would have to rely on other Japanese statutes in addition to those that provide the elements of each cause of action. In order to apply the principles set forth above—to determine whether Mizuho, a commercial bank licensed and headquartered in Japan,

---

[2] (MTD at 2-3.)

violated the plaintiffs' "legally protected interest" for purposes of the tort statute, for example, or whether the plaintiffs have shown a "lack of a legal cause" for purposes of the unjust enrichment law—the Court would need to be familiar with and take into consideration the applicable Japanese banking regulations. (Uranaka Decl. ¶ 23.) Moreover, in order to understand the "manner of the infringement" for purposes of analyzing the tortious interference claim, the Court potentially would need to look to the Japanese criminal law, administrative law and rules as to "public order and good morals." (*Id.* ¶ 12.) In order to grapple with the duty-to-disclose question for purposes of the fraudulent concealment claim, the Court potentially would need to look to other statutes that might provide the source of such a duty (such as the Act on Sales . . . of Financial Instruments, the Financial Instruments and Exchange Act, or the Building Lots and Buildings Transaction Business Act). (*Id.* ¶ 20.)

To delve into a multiplicity of Japanese statutes would require this Court to venture far beyond the role that United States courts typically play, even in cases where one party invokes Rule 44.1 of the Federal Rules of Civil Procedure ("Determining Foreign Law"). Even though courts sometimes must consider foreign law on a specific question arising in U.S. litigation, the scope of the issues requiring the invocation of Japanese law here would be much wider than is commonly seen in U.S. courts, precisely because, as previously noted, Japanese law properly governs the claims at issue here. (MTD at 26, 28-30; Reply Mem.[3] at 19.) The plaintiffs' claims arise out of conduct that occurred entirely in Japan, including an alleged fraud by Mark Karpeles and Mt. Gox in Japan, a contract between two Japanese corporations (Mt. Gox and Mizuho) that is governed by Japanese law and establishes the terms of their business relationship, and contracts between Mt. Gox (a Japanese corporation) and its users, which also ought to be governed by

---

[3] Defendant Mizuho Bank, Ltd.'s Reply Memorandum of Law in Further Support of Its Motion to Dismiss the Second Amended Class Action Complaint for Failure to State a Claim or Alternatively for *Forum Non Conveniens* (ECF. No. 207).

5

Japanese law. (*Id.*) The need for this Court to "delve into the tenets of an unfamiliar legal system" and make "an expenditure of considerable resources" weighs heavily in favor of dismissal for *forum non conveniens*. *Fischer v. Magyar Allamvasutak Zrt.*, 777 F.3d 847, 871 (7th Cir. 2015) ("the application of foreign law—particularly that of a civil law system—favors dismissal in favor of a [foreign] forum"); *Apotex Corp. v. Istituto Biologico Chemioterapico S.p.a.*, 2003 WL 21780965, at *8, *10 (N.D. Ill. July 30, 2003).

The holding in *Fischer*, as well as a long line of similar rulings within the Seventh Circuit, is based on the Supreme Court's explanation that one of the purposes of the *forum non conveniens* doctrine is "to help courts avoid conducting complex exercises in comparative law" such as "hav[ing] to compare the rights, remedies, and procedures available under the law that would be applied in each forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 251 (1981); *see Fischer*, 777 F.3d at 871 (because it was merely "likely" that Hungarian law would apply and "a Hungarian court would be far better able to apply its own law than any United States court would be," dismissal was justified in order to avoid the need for a court to "untangle problems in conflict of laws, and in law foreign to itself"); *U.S.O. Corp. v. Mizuho Holding Co.*, 547 F.3d 749, 751 (7th Cir. 2008) (dismissing case because the applicable law was "almost certainly Japanese law, with which American judges have little familiarity"); *Kamel v. Hill-Rom Co.*, 108 F.3d 799, 805 (7th Cir. 1997) (district court was "justifiably concerned with presiding over a trial in which it would have to delve into the tenets of an unfamiliar legal system" concerning claims of tortious interference with business relations and fraud); *GoldenTree Asset Mgmt. LP v. BNP Paribas S.A.*, 64 F. Supp. 3d 1179, 1197 (N.D. Ill 2014) (same as to German law); *Wozniak v. Wyndham Hotels and Resorts, LLC*, 2009 WL 901134, at*7-*8 (N.D. Ill. Mar. 31, 2009) (dismissing case because of "Mexico's interests in determining its own tort policy" and "not only would a Mexican court be

6

more familiar with the relevant Mexican laws, but it would also not require the translation of those laws"); *Apotex Corp.*, 2003 WL 21780965, at *10 (dismissing case for *forum non conveniens* because it was "possible" that Italian law would apply to plaintiffs' claims, including claims for tortious interference with contract, and "[t]he court has an interest in not having to delve into the tenets of an unfamiliar legal system" (internal quotation marks omitted)); *Capital Mkts. Int'l, Ltd. v. Gelderman*, *Inc.*, 1998 WL 473468, at *6 (N.D. Ill. Aug. 7, 1998) (dismissing claims for fraud and tortious interference with prospective economic advantage because "this court is unfamiliar with and has fewer resources to thoroughly research English law"). This Court, in other words, need not make a definitive ruling that Japanese law applies in order to weigh the foreign law concerns here in favor of dismissal for *forum non conveniens*.[4]

For these reasons, and for the reasons set forth in Mizuho's previous submissions, the Court should dismiss the case against Mizuho with prejudice.[5]

---

[4] Separately, at the April 27, 2016 hearing, counsel for the plaintiffs claimed incorrectly that, in *JPMorgan Chase Bank, N.A. v. E.-W. Logistics, L.L.C.*, 9 N.E.3d 104 (Ill. App. Ct. 2014), "it was the bank itself . . . that had the duty to disclose because it was the fraudulent actor." (Ex. A, Apr. 27, 2016 Tr. at 57:25-58:2.) In fact, the court in *JPMorgan Chase* held just the opposite—"under the guaranty, Chase Bank owed no duty to speak"—and dismissed the fraud claims against it. *JPMorgan Chase Bank, N.A.*, 9 N.E.3d at 120.

[5] Because the plaintiffs have in the past brought the pendency of parallel proceedings in Canada to the attention of this Court (*see, e.g.,* Feb. 9, 2016 Tr. at 21:20-25), we note that the plaintiffs in the Canadian action earlier this month voluntarily dismissed their case. In an affidavit in support of dismissal, the plaintiffs' counsel acknowledged as to the claims against Mizuho that approximately 90 percent of the plaintiffs' losses consisted of only bitcoins rather than fiat currency, that Mizuho did not have "any role in storing, transferring or tracing Bitcoins," that Mizuho may not be held liable for the value of lost bitcoins," that "the recoverable damages . . . appear to be too small to warrant the continuation of the proceeding" and that Mizuho had raised a "significant" challenge to the court's jurisdiction to hear the case. (Notice of Motion and Aff. of Brendan O'Grady ¶¶ 17-18, 23, 27-28, *Joyce v. MtGox Inc.*, No. CV-14-500253 (Can. Ont. Sup. Ct. J. May 4, 2016); Decision Granting Motion for Dismissal, *Joyce v. MtGox Inc.*, No. CV-14-500253 (Can. Ont. Sup. Ct. J. May 10, 2016), attached as Exhibit C.)

MIZUHO BANK, LTD.

By:    */s/* Jason A. Frye
               One of Its Attorneys

Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

Jerome S. Fortinsky (admitted *pro hac vice*)
jfortinsky@shearman.com
John A. Nathanson (admitted *pro hac vice*)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted *pro hac vice*)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Dated: May 25, 2016