IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, JOSEPH LACK, and ANTHONY MOTTO, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 1:14-cv-01437 |
| v. | Hon. Gary Feinerman |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | Magistrate Judge Susan Cox |
| *Defendants*. | |

**PLAINTIFFS' RENEWED MOTION TO
APPROVE ALTERNATIVE SERVICE ON DEFENDANT MARK KARPELES**

As the Court well knows, for the last two and a half years Plaintiffs in this case have sought redress for the loss of bitcoin resulting from the malfeasance of Defendants Mark Karpeles ("Karpeles") and Mizuho Bank, Ltd (collectively, "Defendants"). Karpeles, however, has evaded service from the outset. Counsel for Plaintiffs made numerous attempts to serve Karpeles, whether to Karpeles himself (via mail, email, and through an international process server), through his registered agent, or through his attorneys. Early on in the case, Karpeles—through his attorneys at the law firm Novack and Macey LLP—announced his intention to object to jurisdiction and service. He never formally objected and, in fact, has not participated in the litigation since then.

On April 7, 2014—three days after his attorneys filed their appearances in this case—Plaintiffs moved the Court to approve alternative service on Karpeles through service made on his attorneys. (Dkt. 54.) The motion was entered and continued and, after a status hearing in

1

January 2015 but before those same attorneys withdrew from the case, Plaintiffs served the First Amended Complaint, among many other documents, on Karpeles' attorneys by email and hand delivery.[1] (Thomassen Decl.; Dkt. 129.) Because no formal ruling on the motion was entered—and in accordance with the Court's minute order of August 30, 2016, (dkt. 231)—Plaintiffs now renew their motion.

Such relief is appropriate for numerous reasons. Foremost, there is little doubt that Karpeles has notice of the lawsuit. Not only did his attorneys appear in the case, but Karpeles filed a bankruptcy petition on behalf of Mt. Gox KK in order to get this litigation stayed. Moreover, there is every reason to believe that Karpeles was on notice of the nature of the claims raised by Plaintiffs, and of the damages they sought (and still seek). Finally, given the circumstances, Plaintiffs were not required to serve their subsequent complaints on Karpeles, so their failure to do so is immaterial. Stated simply, Karpeles had both the opportunity and the means to respond to the complaint, but chose not to do so. Given these circumstances, the Court should grant Plaintiffs' renewed motion for alternative service.

## BACKGROUND

### *The Coinlab Action and Bankruptcy Petition*

Before addressing the relevant background in this action, Plaintiffs must discuss two other matters that are relevant to the instant motion, given that both involve the Mt. Gox Exchange and Karpeles's direct participation, and evidence that Karpeles has actively communicated with individuals through the same avenues that Plaintiffs have sought to serve Karpeles here. First, *Coinlab, Inc. v. Mt. Gox KK, et al.* (the "Coinlab Action"), No. 13-cv-00777

---

[1] The served documents included the summons for Karpeles and Tibanne KK along with every filing made or entered in this case through January 12, 2015, (dkts. 1-129). (Declaration of Benjamin S. Thomassen ("Thomassen Decl."), a true and accurate copy of which is attached hereto as Exhibit A, ¶ 2.)

(W.D. Wash.)—a breach of contract action—was filed on May 2, 2013. On May 20, 2014, the attorneys for Tibanne KK sought leave to withdraw as counsel and, in their certificate of service, certified that they emailed and caused the motion to be hand-delivered to Mark Karpeles at Tibanne KK, Mark Karpeles -- mark@tibanne.com,11-5, Shibuya 2-chome, Shibuya-ku, Tokyo, Japan. *Coinlab, Inc. v. Mt. Gox KK, et al.*, No. 13-cv-00777, Dkt. 39 at 3 (W.D. Wash. Mar. 20, 2014). Later, the plaintiff in the Coinlab Action moved for a temporary restraining order against Tibanne KK and—contemporaneous with that filing—emailed "mark@tibanne.com" on July 22, 2014. *Coinlab, Inc. v. Mt. Gox KK, et al.*, No. 13-cv-00777, Dkt. 73, ¶ 3 (W.D. Wash. Aug. 4, 2014). Counsel averred that he received an immediate response from Mark Karpeles (which he attached to a declaration) asking, "Isn't that whole action stayed?" *Id.*

Second, a bankruptcy petition was filed on behalf of Mt. Gox KK under Chapter 15 of the bankruptcy code. *See In re MtGox Inc.*, No. 14-31229-sgj15 (Bankr. N.D. Tex. *filed* Mar. 9, 2014). Chapter 15 permits foreign debtors to have foreign bankruptcy proceedings recognized in U.S. courts in order to stay litigation or protect assets. *See* 11 U.S.C. § 1507. Through the petition, Karpeles, as representative debtor for Mt. Gox, sought domestic recognition of the Japanese bankruptcy proceedings in order to prevent Mt. Gox's assets from being exhausted both in this litigation and the Coinlab Action. (Dkt. 54-1, Declaration of Steven Woodrow, attachments 7 & 8; *see also In re MtGox Inc.*, No. 14-31229-sgj15, Dkt. 3, ¶ 14 (Bankr. N.D. Tex. Mar. 9, 2014) (Declaration of Mark Karpeles) (asserting that recognition of the Japanese proceeding was sought in light of "certain litigation currently pending in the United States").) As a result, this Court stayed litigation in this case as to Mt. Gox KK on March 11, 2014. (Dkt. 31.)

*This Litigation and Plaintiffs' Initial Attempts at Service*

On February 27, 2014—three days after the Mt. Gox Exchange went dark—Plaintiff Gregory Greene ("Greene") sued Karpeles and the three companies for which he served as CEO, including (i) Tibanne KK, which owns (ii) Mt. Gox KK, which owns (iii) MtGox Inc. (Dkt. 1.) In his complaint, Greene asserted, against all defendants, claims for fraud (one styled as "consumer fraud" and another for fraud in the inducement) (*id.* ¶¶ 44-70), negligence for implementing insufficient security on the Mt. Gox exchange (*id.* ¶¶ 71-78), and conversion (*id.* ¶¶ 132-138). Greene asserted those claims on behalf of two classes, one of which was defined to include everyone who had bitcoin or fiat currency stored with Mt. Gox on February 7, 2014. (*Id.* ¶ 37.) The lawsuit sought the return of all bitcoin and fiat currency belonging to the class. (*See, e.g., id.* ¶ 154.) An amended complaint was filed on March 14, 2014, through which Greene pursued the same relief—i.e., through claims for fraud, negligence, and conversion—against Karpeles and the entities he controlled. (Dkt. 36, ¶¶ 78-114, 166-171.)

Around this time, Counsel for Plaintiffs attempted to serve papers from this case on Karpeles. First, Counsel attempted to serve the original complaint and summons on Karpeles through his registered agent and the registered agent of MtGox Inc., National Corporate Research, Ltd.[2] (Dkt. 54-1, ¶ 3.) National Corporate Research accepted service on Karpeles's behalf on March 4, 2014. (*Id.*)

Second, Counsel attempted service of the amended complaint through the process mandated by *The Hague Convention on the Service Abroad of Judicial and Extra Judicial Documents in Civil or Commercial Matters*. (*Id.* ¶ 9.) As Plaintiffs indicated at the time of their original motion to approve service by alternative means, Plaintiffs expected that they would not

---

[2]  Karpeles is CEO of MtGox Inc. (Dkt. 36, ¶ 13.)

receive confirmation of service for months. (*Id.*) On August 11, 2014, however, an international process server notified Plaintiffs' counsel that attempted service on Mark Karpeles in Japan under the Hague Convention was unsuccessful. (Thomassen Decl. ¶ 3.)

Third, Plaintiffs attempted to serve copies of the Court's Temporary Restraining Order (dkt. 33) on Karpeles by (i) sending a hard copy to Karpeles's and Tibanne KK's addresses in Japan via International Express Mail, (ii) emailing a copy to six different email addresses believed to be associated with Karpeles, including "mark@tibanne.com" (i.e., an address that—as discussed above—Karpeles monitored and used), and (iii) hand delivering a copy by process server on Karpeles's registered agent, National Corporate Research, Ltd., on March 12, 2014. (Dkt. 54-1, ¶¶ 11-12.)

Fourth, Plaintiffs sent discovery requests made under the Temporary Restraining Order, as well as a copy of the First Amended Complaint, to Karpeles through (i) International Express Mail to Tibanne KK's Japan address, (ii) the six email addresses noted above, and (iii) Karpeles's registered agent in Delaware on March 14, 2014. (*Id.* ¶ 14.)

***Plaintiffs' Original Motion to Approve Alternative Service.***

On April 4, 2014, three attorneys from the Chicago law firm Novack and Macey LLP appeared in this matter on behalf of Karpeles and Tibanne KK (one of the entities Karpeles controlled), and announced their intention to contest jurisdiction and service.[3] (Dkts. 51-53, 54 at 4, 54-1, ¶ 22.) They also indicated they were in communication with Karpeles and could follow up with him regarding issues relating to this case. (Dkt. 54-1, ¶ 22.)

On April 7, 2014, Plaintiffs moved the Court to approve alternative service on both Karpeles and Tibanne KK through their attorneys. (Dkt. 54.) Before Karpeles's attorneys filed a

---

[3]   This was, however, the last time the issue was raised: Karpeles's attorneys made no formal objection to service.

response, however, Plaintiffs and certain defendants reached a settlement. (*See* Dkt. 79.) Proceedings were thereafter stayed, (dkt. 94), until the noncooperation of the bankruptcy trustee in Japan forced the parties to scuttle the settlement and resume litigation, (*see* dkt. 128.)

In late December 2014, Karpeles's attorneys moved for leave to withdraw from the case, citing that they had not been paid. (Dkt. 121.) One of the attorneys certified that the motion to withdraw had been served on Karpeles via his email address, "mark@tibanne.com"—the same address the attorneys in the Coinlab Action had given and the same one previously used by Plaintiffs. (*Id.*) The Court granted that motion, but did not authorize counsel to withdraw until January 16, 2015. (Dkt. 129.) Before the Novack and Macey attorneys exited the case, the Court directed Plaintiffs to "serve the necessary papers on counsel for Defendants Tibanne KK and Mark Karpeles before 1/16/2015, with the understanding that if the motion to approve alternative service is denied, such service will be ineffective." (*Id.*) Pursuant to that instruction, Plaintiffs' counsel served summons and all other papers that had been filed or entered in the case on Karpeles's Novack and Macey attorneys on January 15, 2015. (Thomassen Decl. ¶ 2.)

***The Current Pleadings***

Since their service of papers on January 15, 2015, Plaintiffs have filed two amended complaints. (Dkts. 146, 205.) As against Karpeles, however, the claims have remained the same. The operative complaint asserts three claims against Karpeles: conversion of bitcoin and fiat currency (dkt. 205, ¶¶ 84-90), negligence for implementing insufficient security on the Mt. Gox exchange (*id.* ¶¶ 91-98), and fraud, styled as "consumer fraud" (*id.* ¶¶ 99-110). (The same claims were asserted in the second amended complaint, which was further amended only to add Anthony Motto as a named plaintiff. (Dkt. 205.)) Plaintiffs' demand for relief also was consistent with the earlier complaints. (*See*, *e.g.*, *id.* ¶ 90.)

**ARGUMENT**

The Court should approve alternative service on Karpeles. Karpeles has been on notice of the litigation and the claims against him from the outset, and had the opportunity to make a reasoned decision about whether or not to participate. Moreover, alternative service is effective despite the second and third amended complaints. Because the claims raised and damages sought have remained consistent, there are no notice problems with deeming Karpeles served via alternative means, namely, through his former counsel.

**I.      SERVICE BY ALTERNATIVE MEANS IS APPROPRIATE HERE.**

Fed. R. Civ. P. 4 permits service on individuals abroad by "means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). Whether to approve service by alternative means is a decision committed to the sound discretion of the Court. *See In re Potash Antitrust Litig.*, 667 F. Supp. 2d 907, 929 (N.D. Ill. 2009). As a prerequisite for invoking a court's authority to approve alternative service, courts generally require a plaintiff to make reasonable efforts to serve a defendant by traditional means. *See, e.g.*, *Flava Works, Inc. v. Does 1-26*, 2013 WL 1751468, at *6 (N.D. Ill. Apr. 19, 2013) (collecting cases); *see also* Fed. R. Civ. P. 4 Advisory Notes on 1993 Amendment ("Use of the Convention procedures, when available, is mandatory if documents must be transmitted abroad to effect service."). But when a plaintiff is unable to effect service of process by those means, the Court may approve service in any matter consistent with due process and not prohibited by the Hague Convention. *See, e.g*, *Gurung v. Malhotra*, 279 F.R.D. 215, 220-21 (S.D.N.Y. 2011) (approving service by publication because it gave defendants notice of the lawsuit and was not prohibited by the Hague Convention).

Given the circumstances at issue here, alternative service via local counsel is appropriate. Plaintiffs have made reasonable efforts to serve Karpeles by traditional means and, moreover,

7

allowing for service on Karpeles's former attorneys comports with due process and does not run afoul of the Hague Convention. As such, the motion should be granted.

### A. Plaintiffs' attempts at traditional service were reasonable.

Here, Plaintiffs diligently attempted to serve Karpeles by traditional means. As set forth above and in Plaintiffs original Motion to Approve Service by Alternative Means, Plaintiffs served both the original and first amended complaints on National Corporate Research, which was authorized to—and did—accept service on Karpeles's behalf. They also mailed and emailed copies of all relevant case documents to Karpeles's physical and electronic mailing addresses, including to the addresses used by his own counsel for service (i.e., in this and other cases). Plaintiffs also attempted service via the Hague Convention, by submitting multiple translated copies of the Complaint and Summons to Japan's Central Authority, the Ministry of Foreign Affairs. *See* "Japan – Central Authority & practical information," Hague Conference on Private International Law, https://www.hcch.net/en/states/authorities/details3/?aid=261 (accessed Sept. 13, 2016). As explained, however, service via this avenue failed, evidently because Karpeles simply refused to retrieve the service packet from the post office. (Thomassen Decl. ¶ 3.)

Plaintiffs initially sought to serve Karpeles by alternative means for two reasons. First, a court order would cure any defect in service, thus preempting Karpeles's promised motion contesting service.[4] Second, time was of the essence: Plaintiffs justifiably believed that Karpeles was actively seeking to dissipate the assets needed to finance a judgment. While the Court had issued a temporary restraining order, the order would be effective only if Karpeles had knowledge of it. Later, Karpeles's clear intention to evade service through the Hague Convention

---

[4] Arguably, because Karpeles has failed formally to object to the sufficiency of service on his registered agent, he has waived any argument that service was insufficient. *See O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399 (7th Cir. 1993) (noting that a party may waive objections to the sufficiency of service).

added a third reason to attempt service by alternative means: he would continue to intentionally avoid service through traditional means, which would only result in more wasted time and resources (for the Court and the parties).[5]

### B. Alternative service here comports with due process and is not prohibited by the Hague Convention.

The proposed service through alternative means also comports with due process. Courts have recognized that alternative service need not guarantee that a defendant is on actual notice of a lawsuit, but need only be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Gurung*, 279 F.R.D. at 220 (quotation omitted); *see also BP Prods. N. Am. v. Dagra*, 236 F.R.D. 270, 271-72 (E.D. Va. 2006); *CFTC v. Aliaga*, 272 F.R.D. 617, 620 (S.D. Fla. 2011). Service through counsel comports with due process. As the Court in *Aliaga* recognized, when counsel appears on behalf of a party in a lawsuit, and then acts on behalf of that party, this is a strong indication that counsel "continues to have some relationship" with the defendant. 272 F.R.D. at 620; *see also Jian Zhang v. Baidu.com Inc.*, 293 F.R.D. 508, 515 (S.D.N.Y. 2013) (observing that service on local counsel "is a common form of service under Rule 4(f)(3)"); *In re Potash Antitrust Litig.*, 667 F. Supp. 2d at 931 (approving substitute service upon domestic counsel of Russian defendant). Another court has recognized that service upon local counsel is particularly appropriate when the defendant has already availed itself of the American legal

---

[5] In February of this year, counsel for Plaintiffs also attempted to contact Karpeles through the attorneys he retained to represent him in an action proceeding in Canada arising out of the same events, *Joyce v. MtGox Inc.*, filed in the Ontario Superior Court of Justice. (Thomassen Decl. ¶ 4.) Those attorneys, from the Canadian firm Lenczner Slaght Royce Smith Griffin LLP, declined to help counsel contact Karpeles. (*Id.*) In response to counsel's initial inquiry, a Lenczner Slaght attorney responded, "I don't have instructions to assist you with connecting with Mr. Karpeles." When asked to clarify the attorney wrote, "We are his counsel. I am not able to assist you further." (*Id.*, Ex. 2.)

system. *Bazarian Int'l Fin. Assocs., LLC v. Desarollos Aerohotelco, CA*, __ F. Supp. 3d __, 2016 WL 471273, at *9-*10 (D.D.C. Feb. 7, 2016).

Under these principles, service through counsel—made pursuant to the Court's order on January 12, 2015—reasonably apprised Karpeles of this lawsuit. There can be no doubt that, in 2014, the attorneys from Novack and Macey were in contact with Karpeles. Their motion for leave to withdraw specifically mentions that Karpeles and Tibanne KK contacted them in December 2014. (Dkt. 121, p. 2.) Karpeles's Novack and Macey attorneys also were authorized to contest jurisdiction and service in this Court and otherwise indicated they were in communication with Karpeles. (Dkt. 54-1, ¶ 22.) The attorneys, therefore, had a continuing relationship with Karpeles, which demonstrates that service upon them was reasonably calculated to apprise Karpeles of the action and allow him to present his objections, in the event he wished to do so. Moreover, like the defendant in *Bazarian*, Karpeles initiated an action in the U.S. courts specifically to protect assets from this specific lawsuit. *Cf. Bazarian*, 2016 WL 471273, at *10. Although unlike Karpeles the defendants in *Bazarian* employed the same counsel for all lawsuits, Karpeles's actions demonstrates both that (i) he maintains contact with attorneys and (ii) that he is aware of this case. *See United States v. Lebanese Canadian Bank SAL*, 285 F.R.D. 262, 266-67 (S.D.N.Y. 2012) (approving service on local counsel when counsel had appeared to contest similar allegations in a different case and because counsel had clearly consulted with the foreign client on "the extent of counsel's authority in this case").[6]

---

[6] Karpeles's actions also provide solid evidence that he is on actual notice of this lawsuit. As the responsible debtor of Mt. Gox KK, he initiated a Chapter 15 bankruptcy proceeding in America precisely so that he could obtain a stay of the lawsuit. (*See supra* p. 2-3.) He was also, as explained, served with the Court's TRO at the same email address used by his attorneys in this litigation, by Tibanne's attorneys in the Washington action, and at which he corresponded with an attorney in the Washington action. (*See supra* p. 2-3.)

In fact, service on Karpeles's former attorneys here is a far more direct means of alternative service than courts have approved in similar situations. For instance, courts have concluded that publication service comports with due process when a case's high profile means that it is likely that a defendant has notice of a lawsuit prior to service. *See SEC v. Tome*, 833 F.2d 1086, 1093 (2d Cir. 1987) (approving service by publication in the *International Herald Tribune* in case involving high-profile SEC investigation). For the bitcoin-investing community, this case fits that bill: Mt. Gox's collapse was a significantly newsworthy event, as evidenced by the volume of articles written about the exchange's troubles (many of which are attached to the complaint). Because service by publication alone likely comports with due process in these circumstances, service upon local counsel easily passes muster under the Due Process Clause.

Finally, Plaintiffs' proposed means of alternative service comports with applicable law. Since Plaintiffs' proposed alternative service was on a domestic agent, the Hague Convention does not apply. *See Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd.*, 2012 WL 4801452, at *11-*12 (S.D.N.Y. Oct. 5, 2012); *FMAC Loan Receivables v. Dagra*, 228 F.R.D. 531, 534 (E.D. Va. 2005).

In sum, because the proposed alternative service—on Karpeles's former attorneys—comports with due process and is not prohibited by the Hague Convention, it should be approved under Rule 4(f)(3).

## II. PLAINTIFFS' FAILURE TO SERVE KARPELES WITH THE SECOND AND THIRD AMENDED COMPLAINTS IS IMMATERIAL.

Finally, it bears noting that even though Plaintiffs previously served the First Amended Complaint (among other documents) through Karpeles's attorneys, that service is effective as to the operative complaint as well. As recounted above, Plaintiffs' allegations against Karpeles

have remained substantially the same since the outset of this case. Indeed, if anything they have narrowed. (*Compare* Dkt. 1 *with* Dkt. 205.)

Under Rule 5(a)(2), service of an amended complaint is unnecessary on a party "who is in default for failing to appear" unless the new complaint asserts new claims against that defendant. "A court need not have adjudicated a party as being 'in default' in order to trigger the applicability of Rule 5(a)(2)." *Bricklayers & Allied Craftworkers Local Union No. 3 v. Palomino*, 2010 WL 2219595, at *3 (N.D. Cal. June 2, 2010). A party is "in default" under Rule 5(a) if he "do[es] not appear and answer within the required period." *Cutting v. Town of Allenstown*, 936 F.2d 18, 21 n.1 (1st Cir. 1991); *accord Central Illinois Carpenters Health & Welfare Trust Fund v. Con-Tech Carpentry, LLC*, 806 F.3d 935 (7th Cir. 2015). Thus, the rule applies in any case in which a party has yet to appear before the Court and answer or otherwise participate in the proceedings.

That is the situation we have here. Three attorneys appeared on Karpeles's behalf but, beyond seeking one extension of time, they never participated in the litigation. Neither has Karpeles followed up since they withdrew. At the time proceedings were stayed, Karpeles had four days remaining in which to answer the first amended complaint. *See* Dkts. 86, 94. Once the litigation resumed on December 10, 2014, (dkt. 120), Plaintiffs did not seek leave to file an amended complaint for 120 days, i.e., until April 4, 2015. (Dkt. 143). Thus, even if Karpeles had thirty days from the moment proceedings resumed, or thirty days from when his counsel withdrew (on January 16, 2015) to answer, that time had lapsed before the Second Amended Complaint was filed.

Thus, for the purposes of Rule 5(a)(2), Karpeles was "in default for failing to appear" before the Second Amended Complaint was filed. *See In re Chinese Manufactured Drywall*

*Prods. Liab. Litig.*, 742 F.3d 576, 593-94 (5th Cir. 2014) (concluding that second amended complaint need not have been served on defendant who was already in default for failing to appear because the only relevant change was an expansion of the proposed class definition).[7] As such, service was unnecessary.

## CONCLUSION

Mark Karpeles has known about—but chosen not to participate in—this case since its inception. Thus, and because Plaintiffs made every reasonable effort to serve Karpeles, their renewed motion to approve alternative service on Mark Karpeles should be granted.

                                        Respectfully submitted,

                                        **GREGORY GREENE, JOSEPH LACK, and ANTHONY MOTTO**, individually, and on behalf of a class of similarly situated individuals,

Dated: September 13, 2016          By: /s/ Benjamin S. Thomassen

                                        Benjamin S. Thomassen
                                        bthomassen@edelson.com
                                        J. Aaron Lawson
                                        alawson@edelson.com
                                        EDELSON PC
                                        350 North LaSalle Street,
                                        13th Floor Chicago, Illinois 60654
                                        Tel: 312.589.6370
                                        Fax: 312.589.6378

                                        *Counsel for Plaintiffs and the Putative Class*

---

[7] Moreover, even if the Court determines that Karpeles was only in default with respect to the First Amended Complaint, Karpeles will be deemed to have admitted the allegations in that complaint. *See Wehrs v. Wells*, 688 F.3d 886, 892 (7th Cir. 2012) ("A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint.") (quotation marks omitted). Because those allegations continue to form the basis for Greene's claims against Karpeles, the later amendments are immaterial. *See, e.g.*, *IBEW Local 595 Health & Welfare Trust Fund v. Givens Elec., Inc.*, 2011 WL 2414346, at *2 (N.D. Cal. June 15, 2011) (ordering entry of default as to original complaint, and deeming new allegations in unserved amended complaint "immaterial" because they related only to damages and did not alter the claims asserted).

13

**CERTIFICATE OF SERVICE**

  I, Benjamin S. Thomassen, an attorney, hereby certify that I served the foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system on September 13, 2016.

                /s/ Benjamin S. Thomassen