# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE and JOSEPH LACK, individually and on behalf of all others similarly situated, | ) ) ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 14 C 01437 |
| | ) | |
| v. | ) ) | Judge Gary Feinerman Magistrate Judge Susan E. Cox |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | ) ) ) | |
| | ) | |
| *Defendants*. | ) ) | |

## DEFENDANT MIZUHO BANK, LTD.'S AMENDED ANSWER AND AFFIRMATIVE DEFENSES TO THE PLAINTIFFS' THIRD AMENDED CLASS ACTION COMPLAINT AND CROSSCLAIMS AGAINST DEFENDANT MARK KARPELES

Defendant Mizuho Bank, Ltd. ("Mizuho"), by and through its undersigned attorneys, hereby answers the Third Amended Complaint, dated April 4, 2016 (the "Complaint"). Terms used in this Amended Answer shall have the meanings assigned to them in the Complaint unless otherwise defined herein. The term "Mt. Gox" shall mean "Mt. Gox Co., Ltd." Mizuho denies the allegations contained in the headings and subheadings in the Complaint, even if not repeated in this Amended Answer.

## NATURE OF THE ACTION

1.      This case involves the demise of the Mt. Gox Bitcoin Exchange ("Mt. Gox" or the "Exchange") and the loss of hundreds of millions of dollars worth of its users' bitcoins and cash ("Fiat") Currency. Defendant Mark Karpeles, who owned and ran Mt. Gox, was responsible for the loss of more than $400 million from users on the Exchange through either gross negligence or outright theft. Plaintiffs bring suit on behalf of a class of similarly situated individuals to recover their resulting losses from Karpeles.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 1.

2.      Although Karpeles is the most notorious actor in the Mt. Gox collapse, Mt. Gox's banking partner, Defendant Mizuho Bank, bears significant responsibility as well. As discussed below, in mid-2013, Mizuho created a number of artificial hurdles in hopes of forcing Mt. Gox to sever relations with it. The most significant of these hurdles was to stop processing any withdrawal requests made by Mt. Gox users in the United States, thus making it impossible for United States users to withdraw any money from their Mt. Gox accounts. In this sense, Mizuho was like the famous Hotel California, money could check into the bank at any time, but once there, it could never leave.

ANSWER: Mizuho denies the allegations contained in Paragraph 2, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as to Defendant Mark Karpeles ("Karpeles").

3.      Mizuho actively hid what it was doing from consumers, knowing that if they knew how broken the banking relationship with Mt. Gox was—and that they would be unable to withdraw their money—no United States user would deposit money into Mt. Gox and Mizuho would be deprived of the transaction fees associated with such deposits. Plaintiffs thus also bring suit on behalf of a subclass of similarly situated individuals who were duped into depositing money into Mt. Gox after Mizuho made the decision to stop allowing withdrawals.

ANSWER: Mizuho denies the allegations contained in Paragraph 3.

## PARTIES

4.      Plaintiff Gregory Greene is a natural person and citizen of the State of Illinois.

ANSWER: The allegations contained in Paragraph 4 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 4.

5.      Plaintiff Joseph Lack is a natural person and citizen of the State of California.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 5.

6.      Plaintiff Motto is a natural person and citizen of the State of Illinois.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 6.

7.      Defendant Mark Karpeles is a natural person and citizen of the country of France. During the events alleged in this Third Amended Complaint, Karpeles served as the Chief Executive Officer of both Mt. Gox KK and its parent company, Tibanne KK. Additionally, Karpeles is the sole shareholder of Tibanne KK. Based on Mt. Gox's own statements, "Mark Karpeles is the President and CEO of both MtGox and Tibanne. Mark providers [sic] overall direction, responsible for supervising main operations and steering the company according to his vision."[1] Through Tibanne KK and the Mt. Gox Exchange, Karpeles conducted business throughout this District, the State of Illinois, and the United States.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 and the footnote contained therein, except refers to the documents cited therein for their true and complete contents.

---

[1]      Business Plan MtGox 2014-2017, http://www.scribd.com/doc/209535200/Business-Plan- MtGox-2014-2017 (last accessed March 31, 2016).

8.      Defendant Mizuho Bank is a Japanese financial institution with its principal headquarters located at 1-3-3, Marunouchi, Chiyoda-ku, Tokyo, Japan 100-8210.  Mizuho Bank conducts business worldwide, including throughout in this District (where it has branch offices), the State of Illinois, and the United States.  Mizuho Bank has received and processed wire money deposits and withdrawals for Mt. Gox customers in this District, the State of Illinois, and the United States.

ANSWER:  Mizuho denies the allegations contained in Paragraph 8, except admits that it

is a Japanese financial institution headquartered in Tokyo, Japan, and that it operates one branch

office in Chicago, Illinois.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2) because (i) at least one member of the Classes is a citizen of a different state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under that subsection apply to this action.

ANSWER:  The allegations contained in Paragraph 9 state legal conclusions as to which

no response is required.  To the extent that a response is required, Mizuho denies knowledge or

information sufficient to form a belief as to the truth or falsity of the allegations contained in

Paragraph 9, except refers to the statute cited therein for its true and complete contents.

10.     This Court has personal jurisdiction over Defendants because they conduct business in this District and the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

ANSWER:  The allegations contained in Paragraph 10 state legal conclusions as to which

no response is required.  To the extent that a response is required, Mizuho denies the allegations

contained in Paragraph 10.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the unlawful conduct alleged in the Complaint occurred in, was directed to, and/or emanated from this District.

ANSWER:  The allegations contained in Paragraph 11 state legal conclusions as to which

no response is required.  To the extent that a response is required, Mizuho denies the allegations

contained in Paragraph 11.

## COMMON FACTUAL ALLEGATIONS

### *The Mt. Gox Bitcoin Exchange.*

12.     Founded in 2009, Mt. Gox at one time claimed to be the "world's most established Bitcoin exchange."[2]  In addition to buying and selling bitcoins, Mt. Gox promised its customers "the ability to securely store Bitcoin in a virtual 'vault' for safe keeping"[3] on its servers.  It further promised that its website would be "always on" so that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most sophisticated trading platform."[4]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 12 and the footnotes contained therein,

except refers to the documents cited therein for their true and complete contents.

13.     To use Mt. Gox's service, customers were required to sign up for an account at www.mtgox.com and agree to Mt. Gox's Terms of Use, which expressly stated that "MtGox represents and warrants that . . . it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf."[5]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 13 and the footnote contained therein,

except refers to the document cited therein for its true and complete contents.

14.     Customers were also asked to verify their accounts by providing Mt. Gox with detailed information, such as their full name, date of birth, country of birth, physical address, and proof of identity (such as a state issued identification card).

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 14.

15.     To make purchases and trades on the Exchange, users could transfer bitcoins directly into their Mt. Gox accounts or deposit cash into their accounts by wiring money to Mt. Gox's banking partner—Defendant Mizuho Bank.  After receiving the funds, Mizuho Bank would transfer the money into an account that it held on behalf of Mt. Gox.

---

[2]     Archive of Mt. Gox's homepage, http://xena.ww7.be/wsj/Mt.Gox%20-%20Bitcoin%20Exchange.html (last accessed March 31, 2016).
[3]     Archive of Mt. Gox "About Us" page, http://archive.today/8LhUJ (last accessed March 31, 2016).
[4]     *Supra* note 2.
[5]     *See* Terms of Use, Dkt. 11-2 at 3-4.

ANSWER: Mizuho denies the allegations contained in Paragraph 15, except denies knowledge or information sufficient to form a belief as to whether users could transfer bitcoins directly into their Mt. Gox accounts, and admits that Mt. Gox had an account at Mizuho and received cash wire transfers where the party initiating the wire transfer designated Mt. Gox as the beneficiary and identified Mizuho as the beneficiary's bank.

16. Mt. Gox received a transaction fee for each trade made on the Exchange. Upon information and belief, Mt. Gox made tens of thousands of dollars per day in transaction fees from customers on its site.[6]

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 16 and the footnote contained therein, except refers to the document cited therein for its true and complete contents.

17. Mizuho likewise received transaction fees—likely of more than $30—on every wire deposit that it processed into the Exchange.

ANSWER: Mizuho denies the allegations contained in Paragraph 17, except admits that it charged its customer Mt. Gox a transaction fee for certain deposits by wire transfer into Mt. Gox's account.

### Mark Karpeles—The Mastermind Behind Mt. Gox.

18. As President, CEO, and majority shareholder of Mt. Gox, Karpeles controlled all aspects of Mt. Gox's business from the ground up. In fact, Karpeles was involved in nearly every detail of the Exchange, from the technical (Karpeles wrote and designed the software used to run Mt. Gox) to the operational (Karpeles handled all of Mt. Gox's third party negotiations and contracts).

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 18.

19. Karpeles likewise directed the drafting and dissemination of Mt. Gox's public statements and representations (including those made through its Terms of Use), as well the

---

[6] *Mt. Gox kept the exchange open despite knowledge of large-scale theft*, http://www.computerworld.com/s/article/9246921/Mt._Gox_kept_exchange_open_despite_kno wledge_of_large_scale_theft?taxonomyId=144&pageNumber=2 (last accessed March 31, 2016).

statements made through Mt. Gox's customer service department. In addition, Karpeles handled all aspects of Mt. Gox's accounting (including its maintenance of user and operational accounts) and banking affairs—personally representing Mt. Gox in its negotiations and discussions with banks and third-party payment processers.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 19.

20. As the sole controlling force behind Mt. Gox and the designer of its software, Karpeles was aware that there were security "bugs" in the system in as early as 2011.[7]

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 and the footnote contained therein, except refers to the document cited therein for its true and complete contents.

21. On information and belief, Karpeles exploited the security bugs on the Exchange to steal his users' bitcoins.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 21.

22. In the alternative, rather than correcting the security bugs (or informing users of their existence), Karpeles knowingly concealed the defects from the public and falsely assured users that their bitcoins and money were safe in their accounts.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 22.

***Mizuho Bank's Banking Relationship With Mt. Gox.***

23. Defendant Mizuho Bank was Mt. Gox's bank partner in Japan and maintained Mt. Gox's operating accounts. In that capacity, Mizuho Bank facilitated all international cash wire transfers into the Exchange and processed user requests to withdraw cash from the Exchange to their outside banks accounts.

ANSWER: Mizuho denies the allegations contained in Paragraph 23, except admits that Mt. Gox had an account at Mizuho and received cash wire transfers where the party initiating the

---

[7] See Civil Rehabilitation Commencement Application, Dkt. 57-3 at p. 10 (noting that "[t]he existence of this bug was known since May 2011").

wire transfer designated Mt. Gox as the beneficiary and identified Mizuho as the beneficiary's

bank.

24.     To facilitate wire transfers into the Exchange, Mizuho accepted payments that had
been wired by users through their outside banks (e.g. Bank of America).  Such wire transfers
designated Mt. Gox as the beneficiary of the wire and Mizuho as the beneficiary's bank, and
included the Mt. Gox user's account number to which the funds were to be directed.  After
accepting the wire payment, Mizuho thereafter deposited the funds into its account for Mt. Gox
with the funds marked on behalf of the specific depositing Mt. Gox user.

ANSWER:  Mizuho denies the allegations contained in Paragraph 24, except admits that

Mt. Gox had an account at Mizuho and received cash wire transfers where the party initiating the

wire transfer designated Mt. Gox as the beneficiary and identified Mizuho as the beneficiary's

bank.

25.     To withdraw cash from the Exchange, Mt. Gox users submitted requests online
through their Mt. Gox account.  Mt. Gox would compile the requests it received—which
included such information as the user's banking details and the amount to be transferred—and
provide the requests to Mizuho for processing.  After receiving the requests, Mizuho would then
transfer out the requested amounts to the user's bank.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 25, except admits that Mizuho processed

wire transfer requests based on instructions from its customer Mt. Gox.

26.     Mizuho Bank exclusively processed all bank deposits and withdrawals made by
Mt. Gox users located in the United States.

ANSWER:  Mizuho denies the allegations contained in Paragraph 26.

***Mizuho Bank Became Concerned With Karpeles' Business and Implemented New Banking
Policies Designed to Coerce Karpeles Into Dissolving Their Partnership.***

27.     Beginning in 2013, Mizuho Bank became increasingly concerned by Mt. Gox's
growing transaction volumes amid reports that U.S. authorities were investigating Mt. Gox for
business dealings related to money laundering.[8]  At the same time, Mizuho Bank faced its own

---

[8]     Recording Shows Mizuho Pushed to End Dealings With Mt. Gox,
        http://online.wsj.com/news/articles/SB10001424052702304732804579420791991665968 (last accessed March
        31, 2016); Feds Seize Another 2.1 Million From Mt. Gox, http://techcrunch.com/2013/08/23/feds-seize-
        another-2-1-million-from-mt-gox-adding-up-to-5- million/ (last accessed March 31, 2016).

legal troubles at home, with reports surfacing that the bank had knowingly loaned money to organized crime syndicates and was under investigation by Japan's Financial Services Agency.[9]

ANSWER: Mizuho denies the allegations contained in Paragraph 27 and the footnotes contained therein, except admits that Mizuho was concerned about reports that U.S. authorities were investigating Mt. Gox for business dealings related to money laundering, admits that it was under investigation by Japan's Financial Services Agency in connection with an issue unrelated to the allegations in the Complaint, and refers to the documents cited therein for their true and complete contents.

28     Accordingly, due to fears that the partnership would expose it to liability and cause significant reputational harm, Mizuho Bank decided that it wanted to distance itself from Karpeles and Mt. Gox. However, for its own purposes (apparently owing, in part or in whole, to the culture of its home country), Mizuho Bank wanted Karpeles to be the one to officially sever the banking relationship. To that end, Mizuho asked Karpeles to end the relationship. He refused.[10]

ANSWER: Mizuho denies the allegations contained in Paragraph 28 and the footnote contained therein, except admits that it was concerned that its banking relationship with Mt. Gox would expose it to liability and cause significant reputational harm, and refers to the document cited therein for its true and complete contents.

29     In order to pressure Karpeles into rethinking his decision and force an end to the banking relationship, Mizuho began implementing a series of new policies in the beginning of 2013. These new policies—all of which were kept secret from the public—were meant to frustrate and disrupt Mt. Gox's business and relationship with its customers, and included: (i) limiting the number and amount of Mt. Gox customer withdrawals that it would process on a weekly or monthly basis, (ii) removing Mt. Gox's access to Mizuho's automated withdrawal processes and requiring it to submit user withdrawal requests manually (i.e. by paper), and (iii) refusing to process certain international wire transfer requests. Mizuho likewise drastically raised its banking fees (in some cases, more than tripling its original fees).

---

[9]     Mizuho Bank's Yakuza Scandal: More than 30 Execs to be Punished, http://thediplomat.com/2013/10/mizuho-banks-yakuza-scandal-more-than-30-execs-to-be- punished/ (last accessed March 31, 2016).

[10]    In an audio recording leaked to the press (purportedly of a conversation held between Mark Karpeles and an unnamed Mizuho bank official), Mizuho is heard demanding that Karpeles close Mt. Gox's accounts with Mizuho, stating: "closing the account is actually our demand. We made various judgments and also have a certain policy. It's possible we will forcibly ask you to close your account." See Mizuho to Mt. Gox: 'Close Your Account', http://blogs.wsj.com/moneybeat/2014/03/05/mizuho-to-mt-gox-close-your-account/ (last accessed March 31, 2016).

ANSWER:  Mizuho denies the allegations contained in Paragraph 29.

30.    Ultimately, in or around mid-2013, Mizuho stopped processing international wire withdrawals for Mt. Gox altogether.

ANSWER:  Mizuho denies the allegations contained in Paragraph 30, except admits that in June 2013, Mizuho stopped processing outbound wire transfers for its customer Mt. Gox.

31.    Accordingly, in early to mid 2013, Mt. Gox users began to report substantial difficulties in withdrawing cash from their Mt. Gox accounts—wondering online about the source of the delays.[11]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 31 and the footnote contained therein, except refers to the documents cited therein for their true and complete contents.

32.    Mizuho knew that if US customers found out about its new unreasonable banking policies (especially, the fact that withdrawals were no longer allowed), they would no longer continue making deposits into the Exchange and it would cease collecting the associated fees. Nevertheless, Mizuho continued to accept user deposits into the Mt. Gox Exchange (for which it collected fees on each transaction) through its collapse in February 2014.

ANSWER:  Mizuho denies the allegations contained in Paragraph 32, except admits that until February 2014, Mt. Gox received cash wire transfers where the party initiating the wire transfer designated Mt. Gox as the beneficiary and identified Mizuho as the beneficiary's bank and admits that Mizuho charged Mt. Gox transaction fees for certain wire transfers.

33.    On information and belief, Mizuho continued accepting customer deposits so as to avoid drawing public criticism and further scrutiny from regulatory authorities, as well as to continue profiting from the deposit fees that it collected.

ANSWER:  Mizuho denies the allegations contained in Paragraph 33.

---

[11]  *Withdrawals from Mt. Gox:  Growing Pains or Banking Bottleneck?*, http://www.coindesk.com/withdrawals-from-mt-gox-growing-pains-or-banking-bottleneck/ (last accessed March 31, 2016); Mt. Gox USD Withdrawals To Take Up To 22 Months, https://bitcoinmagazine.com/7064/with-current-processes-mt-gox-usd-withdrawals-could-take-22-months/ (last accessed March 31, 2016).

***Defendants Concealed Mt. Gox's Operational Difficulties and Continued Accepting Cash Deposits.***

34.     In February 2014, Karpeles made numerous representations to the public and to Mt. Gox users that the withdrawal issues were only temporary and that user assets were safe. Karpeles also assured users through the Mt. Gox online Support Desk (which he directed and controlled) that any problems were being dealt with and that there was no cause for alarm.[12] Likewise, users who inquired about withdrawal delays were informed that any withdrawal issues were only temporary and that delays in transaction speeds were merely "due to a change in [Mt. Gox's] banking systems" which had resulted in a "back-log" of requests that needed to be processed."[13]  Karpeles even claimed that Mt. Gox was "trying to form relationships with several new banking partners both in Japan and around the world" and "in the process of finalizing even more," meaning that it would "have increased stability and ability to transmit withdrawals going forward."[14]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 34 and the footnotes contained therein, except refers to the documents cited therein for their true and complete contents.

35.     Both Karpeles and Mizuho knew that these statements were false—withdrawal delays were not due to any "backlog" in the system; they were not minor issues and they were not temporary.  Rather, withdrawal delays were due to Mizuho's refusal to process international withdrawal requests and its broader efforts to undermine the banking relationship between it and Mt. Gox.

ANSWER:  Mizuho denies the allegations contained in Paragraph 35, except denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 35 as to Karpeles.

36.     Although Mizuho knew that Karpeles was making these false and misleading statements to the public and to his Mt. Gox users, it took no action to correct them.  Instead, Mizuho concealed that it was the cause of the Mt. Gox withdrawal delays, concealed the fact that it had implemented banking policies designed to disrupt Mt. Gox's business and relationship with its users, and stood silent while allowing the public to continue being duped.

ANSWER:  Mizuho denies the allegations contained in Paragraph 36.

37.     Upon information and belief, Mizuho prohibited Mt. Gox from disclosing that withdrawal difficulties were attributable to Mizuho, or that Mizuho wanted to terminate its

---

[12]   *See* Support Desk Updates, Dkt. 11-3.
[13]   *See* Declaration of Andrew Van Almen, Dkt. 18, Exs. B-D.
[14]   *Id.* at Ex. D.

banking relationship with Mt. Gox.  By continuing to accept deposits, Mizuho further contributed to the false narrative that the Mt. Gox Exchange was operating properly and that problems with withdrawals were not serious.

ANSWER:  Mizuho denies the allegations contained in Paragraph 37.

38.     On February 7, 2014, Karpeles halted his customers' ability to withdraw any form of currency from the Mt. Gox website, stating that he was purportedly investigating a "bug" or "technical malfunction" in the Bitcoin network.[15]  A few days later, on February 10, 2014, Karpeles claimed that he had supposedly detected "unusual activity" with respect to the Mt. Gox Bitcoin wallets and was investigating a technical issue, called "transaction malleability," which he said involved the ability of third parties to manipulate certain transactions.  Karpeles nonetheless assured his customers that "MtGox will resume bitcoin withdrawals to outside wallets once the issue" had been addressed.[16] This statement was also knowingly false, and beyond that, Karpeles concealed the fact that he had been aware of the supposed security "bug" since in 2011.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 38 and the footnotes contained therein, except refers to the documents cited therein for their true and complete contents.

39.     However, despite that the fact that users were now unable to withdraw any bitcoins or Fiat Currency from their accounts, and even though both Karpeles and Mizuho knew that the withdrawal service would never be restored, both Defendants nonetheless continued to accept and profit from more user deposits.

ANSWER:  Mizuho denies the allegations contained in Paragraph 39, except admits that until February 2014, Mt. Gox received cash wire transfers where the party initiating the wire transfer designated Mt. Gox as the beneficiary and identified Mizuho as the beneficiary's bank and admits that Mizuho charged Mt. Gox transaction fees for certain wire transfers.

***Karpeles Shut Down Mt. Gox and Declared Bankruptcy.***

40.     On February 24, 2014, the Mt. Gox website "went dark."  Customers who visited the site found nothing but a blank page and were unable to view or access their accounts.  A message on the Mt. Gox website later notified members that a "decision was taken to close all transactions *for the time being.*"[17]  That statement was not true because, at that time, Karpeles

---

[15]     *See* Support Desk Updates, Dkt. 11-3 at 2.
[16]     *Id.* at 7-8.
[17]     *Is it the beginning of the end for Bitcoin? Virtual currency in turmoil as rumored $375m theft closes major exchange,"* http://www.thisismoney.co.uk/money/news/article-2567436/Bitcoin-turmoil-rumoured-375mtheft-closes-major-exchange.html (last accessed March 31, 2016).

was already planning on seeking bankruptcy protection and, on information and belief, was in the process of preparing Mt. Gox's bankruptcy filing.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 40 and the footnote contained therein,

except refers to the document cited therein for its true and complete contents.

41.     A few days later, on February 28, 2014, Mt. Gox filed for bankruptcy protection in Japan.  In its petition (supported by a declaration from Karpeles), Karpeles revealed that he had known about the security "bug" since May 2011 but that it was not purportedly known "until the end of January 2014 that [the bug] could lead to a large number of unconfirmed transactions and to a risk of illicit withdrawals."[18] The petition further stated that Mt. Gox had discovered "a large discrepancy in the total of deposit balances at those financial institutions which managed said deposits compared to the total amount actually deposited by users and that there was a large shortfall of deposit balances."

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 41 and the footnote contained therein,

except refers to the document cited therein for its true and complete contents.

42.     During a press conference, Karpeles revealed that Mt. Gox had assets of over $20 million (USD) and liabilities in excess of $65 million (USD)—not including the over $450 million worth of bitcoins it had lost through its supposed security breach.[19]

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 42 and the footnote contained therein,

except refers to the document cited therein for its true and complete contents.

43.     In the days that followed, rumors likewise circulated that the supposed "hack" of Mt. Gox was an inside job orchestrated by Karpeles, who secretly controlled the stolen bitcoins.[20]

---

[18]   *See* Civil Rehabilitation Commencement Application, Dkt. 57-3 at 10.

[19]   Mt. Gox files bankruptcy, says hackers stole all its bitcoins, http://articles.chicagotribune.com/2014-02-28/news/sns-mt-gox-bankruptcy-bitcoins-20140228_1_gox-bitcoin-market-bitcoin-community (last accessed March 31, 2016).

[20]   *Hackers call Mt. Gox CEO a liar, say he still controls 'stolen' bitcoin*, http://bgr.com/2014/03/10/mt-gox-fraud-accusations-hackers/ (last accessed March 31, 2016); Police:  Unlikely Hackers Stole Mt. Gox Bitcoins, http://bitcoinist.net/police-unlikely-hackers-stole-mt-gox-bitcoins/ (last accessed March 31, 2016).

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 43 and the footnote contained therein, except refers to the documents cited therein for their true and complete contents.

44.     Reports also emerged suggesting that Karpeles grossly mismanaged the Mt. Gox Exchange by ignoring known security flaws and user reports of hacking, failing to segregate customer and operational funds in Mt. Gox's account, failing to periodically balance and/or reconcile customer and operational funds, and losing user bitcoins that were purportedly stored in its offline storage.[21]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 44 and the footnote contained therein, except refers to the document cited therein for its true and complete contents.

45.     On June 18, 2014, the Bankruptcy Court in the Northern District of Texas officially recognized Mt. Gox's Japanese bankruptcy proceedings as a foreign main proceeding under Chapter 15 of the U.S. Bankruptcy Code, effectively staying all pending litigation against it in the United States.  *See In re MtGox*, Case No. 14-31229-sgj15 (Bankr. N.D. Tex.).

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 45, except refers to the proceedings cited therein for their true and complete contents.

46.     Tibanne KK likewise declared bankruptcy in Japan in February 2015, with recognition as a Chapter 15 foreign main proceeding being granted on April 2, 2015.  *See In re: Tibanne Co., Ltd., a/k/a KK,* Case No. 15-10255 (REG) (Bankr. S.D.N.Y.).

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 46, except refers to the proceedings cited therein for their true and complete contents.

---

[21] *Lost in translation:  The tangled tale of Mt. Gox's missing millions*, http://www.pcworld.com/article/2105920/lost-in-translation-the-tangled-tale-of-mt-goxs- missing-millions.html (last accessed March 31, 2016).

47.     In September 2015, Karpeles was arrested by Tokyo police and formally charged with fraud and embezzlement in connection to his management of Mt. Gox.[22]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 47 and the footnote contained therein, except refers to the document cited therein for its true and complete contents.

## PLAINTIFFS' FACTUAL ALLEGATIONS

### Facts Relating to Plaintiff Gregory Greene

48.     In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff Greene navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements about its service, including its representations about the Exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time—substantially similar to the advertisements and representations described in Paragraphs 12-13 above.

ANSWER:  The allegations contained in Paragraph 48 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 48.

49.     Relying upon these representations made by Mt. Gox—namely, that it would allow him to "quickly and securely trade bitcoins with other people around the world" and give him "the ability to securely store [his] Bitcoins in a virtual 'vault' for safe keeping"—Greene signed up for an account on Mt. Gox's website in 2012 and began trading and selling Bitcoin.

ANSWER:  The allegations contained in Paragraph 49 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 49.

---

[22] *Mt. Gox CEO charged with embezzling £1.7m worth of bitcoin*, http://www.theguardian.com/technology/2015/sep/14/bitcoin-mt-gox-ceo-mark-karpeles-charged-embezzling (last accessed March 31, 2016).

50.     As a member of Mt. Gox, Greene paid transaction fees to Mt. Gox on every trade that he made, in part, to be able to buy, sell, trade, and withdraw bitcoins, and also, in part, to maintain and protect his bitcoins and Fiat Currency in compliance with industry standards.

ANSWER:  The allegations contained in Paragraph 50 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 50.

51.     In November 2013, Greene began experiencing delays with his bitcoin transactions and complained to Mt. Gox customer service (which was directly controlled by Karpeles).  Although customer service helped to resolve his issues, they did not inform Greene that the security of the Mt. Gox system had been compromised or that Karpeles was preparing to shut down the Exchange and file for bankruptcy.  Accordingly, in light of the representations that were made to him through the Mt. Gox website and in its Terms of Use and Privacy Policy (and because he had no reason to think otherwise), Greene continued to believe that his bitcoins were stored safely and securely on Mt. Gox's system and permitted them to remain in his account.

ANSWER:  The allegations contained in Paragraph 51 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 51.

52.     On February 5, 2014, Greene logged onto his Mt. Gox account and discovered that certain previously available functions, such as the simple withdrawal of bitcoins, had been restricted or were otherwise inaccessible.  He immediately contacted customer service for further information.

ANSWER:  The allegations contained in Paragraph 52 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 52.

53.     On February 10, 2014, customer service—at Karpeles' direction—responded to his inquiry and informed Greene that he was now required to verify his Mt. Gox account by submitting further proof of identification to the site.  At Karpeles' direction, customer service concealed the fact that the security of the Mt. Gox system had been compromised and that Karpeles was preparing to shut down the Exchange and file for bankruptcy.  Accordingly, Greene promptly submitted the documents requested, including a copy of his driver's license and proof of address, and on February 24, 2014, was notified that his account had been verified.

ANSWER:  The allegations contained in Paragraph 53 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 53.

54.     After being notified of his verification, Greene logged onto his account and tried to make a withdrawal.  The transaction did not go through.  Rather, and despite not showing any sort of error message, the page simply cleared the inputs.

ANSWER:  The allegations contained in Paragraph 54 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 54.

55.     A few hours later, Greene attempted to log onto his account and discovered that Mt. Gox had gone offline, blocking all account access.

ANSWER:  The allegations contained in Paragraph 55 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 55.

56.     At the time Mt. Gox shut down, Greene's account contained approximately $25,000 dollars in bitcoins, which he had been unable to withdraw.

ANSWER: The allegations contained in Paragraph 56 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 56.

57.     Had Greene known that Mizuho was interfering with Mt. Gox's ability to service its users, that the security of Mt. Gox had been compromised, or that Karpeles was preparing to go offline and declare bankruptcy, he would not have opened an account with Mt. Gox, would not have deposited or stored his bitcoins on the Mt. Gox Exchange, and/or would have taken immediate steps to withdraw his bitcoins from the Exchange before it went down.

ANSWER: The allegations contained in Paragraph 57 relate to Gregory Greene, whose claims against Mizuho have been dismissed from this case, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 57.

### Facts Relating to Plaintiff Joseph Lack

58.     Plaintiff Lack joined Mt. Gox in early 2014 after reading Mt. Gox's representations about the Exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time (substantially similar to the advertisements and representations described in Paragraphs 12-13 above). To activate his account, he was required to (and did) accept Mt. Gox's Terms of Use, and provided all requested documentation.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 58.

59.     Upon joining, on January 22, 2014, Lack wire-transferred $40,000 USD to his account at Mt. Gox. To do so, Lack was directed by Defendants to wire the money directly from his local Wells Fargo bank branch to the account that Mizuho held on behalf of Mt. Gox or its owners. Lack was also directed to list his individual Mt. Gox account number on the wire transfer instructions ostensibly so Mizuho and Mt. Gox could identify the deposit as belonging specifically to him.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 59, except denies that it provided any direction to Lack.

60.     Following the transfer, Lack waited several weeks for the money to appear in his Mt. Gox account and for Mt. Gox to acknowledge receipt of his funds.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 60.

61.     On February 11, 2014, Lack contacted Mt. Gox regarding his $40,000 and when he would be able to access his money.  Mt. Gox responded on February 14, 2014, stating that "withdrawal delays does [sic] not affect transferring funds to your Mtgox [sic] account."  It did not answer his specific question regarding the status of his deposit but instead asked for a scanned copy of his wire transfer form.  Lack provided this information on February 15, 2014.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 61.

62.     Lack continued to wait for the funds to appear in his Mt. Gox account.  On February 19, 2014, he contacted Mt. Gox again for a status update, only to be informed, "We continue to check the status of the deposit with our banking team.  We will let you know once the funds reaches [sic] your account."  Lack responded on February 20, 2014, complaining of these non-responsive emails and demanding to know the location of his money.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 62.

63.     Mt. Gox responded on February 20, 2014 stating, "We are yet to receive your deposit.  We are facing Bank delays on international deposit and we will surely keep you updated once we receive your deposit."

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 63.

64.     Upon receiving this message, Lack immediately went to his bank to trace the wire transfer and recall the money.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 64.

65.     At no time prior to or during the deposit of his funds, did Mt. Gox or Mizuho notify him that Mt. Gox had suffered any type of "bug," that Mizuho was no longer providing withdrawal services to Mt. Gox users (and thus, there would be no way for him to make wire withdrawals from the Exchange), or that his money would thereafter be permanently inaccessible.

ANSWER:  Mizuho denies the allegations contained in Paragraph 65, except admits that

it did not communicate directly with Lack, and denies knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in Paragraph 65 as to Mt. Gox.

66.     Had Lack known that Mizuho was interfering with Mt. Gox's ability to service users, that he would not be able to make any cash withdrawals from the Exchange, that the security of Mt. Gox had been compromised, or that Mt. Gox intended to go offline and declare bankruptcy, he would not have opened his account with Mt. Gox or attempted to deposit funds into his Mt. Gox account.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 66, except denies that Mizuho was

interfering with Mt. Gox's ability to service users.

67.     On March 3, 2014, Lack's bank informed him that they were unable to recall the funds since they had already transferred to Mt. Gox on February 3, 2014.  His bank provided all the documentation showing that his funds did indeed transfer on February 3, 2014, through Mizuho Bank.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 67.

68.     Following bankruptcy, the Mt. Gox website continued to reflect a balance of $0.00 in Lack's Mt. Gox account.[23]

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 68 and the footnote contained therein.

---

[23]    Although the Mt. Gox Exchange no longer functions, the Mt. Gox website (www.mtgox.com) previously permitted users to input their account numbers to verify their account balances for purposes of submitting creditor claims in the bankruptcy.  On information and belief (including based on Plaintiff Lack's and Plaintiff Motto's experience), certain user accounts reflect inaccurate account balances.

*Facts Relating to Plaintiff Anthony Motto*

69.     Plaintiff Motto joined Mt. Gox in early 2014 after reading Mt. Gox's representations about the Exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time (substantially similar to the advertisements and representations described in Paragraphs 12-13 above).  To activate his account, he was required to (and did) accept Mt. Gox's Terms of Use, and provided all requested documentation.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 69.

70.     On February 15, 2014, Motto wire-transferred $1,000 USD to his account at Mt. Gox.  To do so, Motto was directed by Defendants to wire the money directly from his local J.P. Morgan Chase Bank, N.A. ("Chase") bank account to the account that Mizuho held on behalf of Mt. Gox or its owners.  Motto was also directed to list his individual Mt. Gox account number on the wire transfer instructions, which notified Mizuho and Mt. Gox that the deposit belonged specifically to him.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 70, except denies that it provided any direction to Motto.

71.     Motto's Chase bank account was opened under his name and registered to his home address in Illinois.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 71.

72.     On February 18, 2014, Motto received confirmation from Chase that Mizuho accepted his deposit.  However, though Mizuho accepted and received the deposit, the money did not appear in his Mt. Gox account.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 72.

73.     On February 19, 2014, Motto contacted Mt. Gox regarding his $1,000 deposit and asked how long it would take for the funds to reach his account.  In response, Mt. Gox indicated that it had not yet received the deposit from Mizuho, and asked Motto to confirm that the correct bank name—"Mizuho"—was listed on the wire transfer.  Motto confirmed that the information was included and that the wire transaction from his Chase bank account had gone through to Mizuho, and asked that Mt. Gox ensure that the amount be applied to his account.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 73.

74.     On February 24, 2016, Mt. Gox informed Motto that it would "check with the banking team" regarding his deposit and "let [him] know as soon as possible." Later that day, the Exchange went dark and Motto was no longer able to access his Mt. Gox account.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 74.

75.     At no time prior to or during the deposit of his funds, did Mt. Gox or Mizuho notify him that Mt. Gox had suffered any type of "bug," that Mizuho was no longer providing withdrawal services to Mt. Gox users (and thus, there would be no way for him to make wire withdrawals from the Exchange), or that his money would thereafter be permanently inaccessible.

ANSWER: Mizuho denies the allegations contained in Paragraph 75, except admits that

it did not communicate directly with Motto, and denies knowledge or information sufficient to

form a belief as to the truth or falsity of the allegations contained in Paragraph 75 as to Mt. Gox.

76.     Had Motto known that Mizuho was interfering with Mt. Gox's ability to service users, that he would not be able to make any cash withdrawals from the Exchange, that the security of Mt. Gox had been compromised, or that Mt. Gox intended to go offline and declare bankruptcy, he would not have opened his account with Mt. Gox or attempted to deposit funds into his Mt. Gox account.

ANSWER: Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 76, except denies that it was interfering

with Mt. Gox's ability to service users.

77.     Following bankruptcy, the Mt. Gox website continued to reflect a balance of $0.00 in Motto's Mt. Gox account. Upon information and belief, Defendants never deposited the funds into Motto's Mt. Gox account.

ANSWER: Mizuho denies the allegations contained in Paragraph 77, except denies

knowledge or information sufficient to form a belief as to the truth or falsity of the allegations as

to other Defendants.

## CLASS ALLEGATIONS

78.     Class Definition:  Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of themselves and a Class of similarly situated individuals, defined as follows:

Mt. Gox Class:  All persons in the United States who had bitcoins or money stored with Mt. Gox on February 24, 2014.

Plaintiffs Lack and Motto further bring this action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of themselves and a Subclass of similarly situated individuals, defined as follows:

Deposit Subclass:  All members of the Mt. Gox Class who deposited money into their Mt. Gox account through Mizuho Bank after the date in which Mizuho Bank stopped processing withdrawals.

The Class and Subclass are referred to herein as the "Classes".)  Excluded from the Classes are (1) Defendants, Defendants' agents, subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) all persons who have previously had claims similar to those alleged herein finally adjudicated or who have released their claims against Defendants, and (5) the legal representatives, successors, or assigns of any such excluded person.

ANSWER:  The allegations contained in Paragraph 78 state legal conclusions as to which no response is required.  To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 78, except refers to the rule cited therein for its true and complete contents.

79.     Numerosity:  The exact number of the members of the Classes is unknown and not available to Plaintiffs at this time, but it is clear that individual joinder is impracticable.  On information and belief, and according to documents filed by Mt. Gox in support of their bankruptcy petition,[24] there are likely over 1,000 members in each of the respective Classes. Members of the Classes can be identified through Defendants' records.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 79 and the footnote contained therein, except refers to the documents cited therein for their true and complete contents.

---

[24]     *See In re MtGox*, Case No. 14-31229-sgj15, Dkt. 127 at 10-11 (Bankr. N.D. Tex.).

80. Commonality and Predominance: There are many questions of law and fact common to the claims of Plaintiffs and the members of the putative Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Karpeles adequately managed and safeguarded Plaintiffs' and the members of the Classes' bitcoins and Fiat Currency;

(b) whether Karpeles' conduct constitutes conversion;

(c) whether Karpeles' conduct constitutes negligence;

(d) whether Karpeles' conduct constitutes consumer fraud;

(e) whether Mizuho's conduct constituted fraudulent concealment;

(f) whether Mizuho's conduct constituted tortious interference; and

(g) whether Mizuho was unjustly enriched by its conduct.

ANSWER: The allegations contained in Paragraph 80 state legal conclusions as to which no response is required. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 80, except denies the allegations contained in Paragraph 80 as to Mizuho.

81. Typicality: Plaintiffs' claims are typical of the claims of other members of the Classes, in that Plaintiffs and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct.

ANSWER: Mizuho denies the allegations contained in Paragraph 81.

82. Adequate Representation: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiffs.

ANSWER: The allegations contained in Paragraph 82 state legal conclusions as to which no response is required. To the extent that a response is required, Mizuho denies the allegations contained in Paragraph 82.

83. Superiority: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the

individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

ANSWER: The allegations contained in Paragraph 83 state legal conclusions as to which no response is required. To the extent that a response is required, Mizuho denies the allegations contained in Paragraph 83.

### FIRST CAUSE OF ACTION
### Conversion/Trespass to Chattels Against Mark Karpeles
### (On Behalf of Plaintiffs and the Mt. Gox Class)

84.     Plaintiffs incorporate all allegations as if fully set forth herein.

ANSWER: Mizuho repeats and realleges each and every response set forth in this Amended Answer as if fully set forth herein.

85.     Plaintiffs and the Mt. Gox Class transferred, maintained, and stored actual bitcoins and Fiat Currency on the Mt. Gox exchange.

ANSWER: The allegations contained in Paragraph 85 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 85.

86.     Plaintiffs' and the Mt. Gox Class's bitcoins and Fiat Currency are protected property interests.

ANSWER: The allegations contained in Paragraph 86 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 86.

87.     Karpeles intentionally (or in the alternative, through gross recklessness or negligence) and without authorization or consent, stole, gained accessed to, used, exercised control, dominion, or ownership over, and/or dispossessed Plaintiffs' and the Mt. Gox Class's bitcoins and Fiat Currency.

ANSWER:  The allegations contained in Paragraph 87 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 87.

88.     In doing so, Karpeles intentionally (or, alternatively, through gross recklessness or negligence) intermeddled with, damaged, and/or deprived Plaintiffs and the other members of the Mt. Gox Class of the use of their bitcoins and Fiat Currency.

ANSWER:  The allegations contained in Paragraph 88 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 88.

89.     As a result of Karpeles' interference with Plaintiffs' and the other Mt. Gox Class's use of their bitcoins and Fiat Currency, Plaintiffs and the other members of the Mt. Gox Class have suffered, and will continue to suffer, damages, including in the form of the lost value of their bitcoins and currency.

ANSWER:  The allegations contained in Paragraph 89 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 89.

90.     Plaintiffs and the Mt. Gox Class seek to recover the economic injury and other damages suffered as a result of Karpeles' unlawful conduct, including in the form of the price of the bitcoins and Fiat Currency that were in their Mt. Gox accounts at the time it went dark that is not recoverable under the liquidation proceedings in Mt. Gox's Japanese bankruptcy.

ANSWER: The allegations contained in Paragraph 90 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 90.

## SECOND CAUSE OF ACTION
### Negligence Against Mark Karpeles (in the alternative to Conversion)
### <u>(On behalf of Plaintiffs and the Mt. Gox Class)</u>

91. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

ANSWER: Mizuho repeats and realleges each and every response set forth in this Amended Answer as if fully set forth herein.

92. Karpeles owed Plaintiffs and the Mt. Gox Class a duty of reasonable care to employ procedures to detect and prevent the improper access and misuse of Plaintiffs' and the Class's bitcoins and Fiat Currency and also to allow them complete access to the same. This duty arose from the legal and industry standards discussed above and Karpeles' relationship with Plaintiffs and the Mt. Gox Class.

ANSWER: The allegations contained in Paragraph 92 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 92.

93. Karpeles breached his duty to the Plaintiffs and the Mt. Gox Class by failing to implement industry-standard protocols and exercise reasonable care in maintaining, protecting, accounting for, and safeguarding the Plaintiffs' and the Mt. Gox Class' bitcoins and Fiat Currency within Mt. Gox's control. This included the failure to implement industry-standard accounting procedures or to segregate user accounts from operational funds, as well as the failure to correct security bugs or other vulnerabilities on the Exchange.

ANSWER: The allegations contained in Paragraph 93 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 93.

94.     Karpeles further acted negligently by failing to implement security procedures to detect and prevent unauthorized access to Plaintiffs' and the Mt. Gox Class' bitcoins and Fiat Currency.

ANSWER:  The allegations contained in Paragraph 94 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 94.

95.     As a result of Karpeles' conduct, Plaintiffs and the Mt. Gox Class suffered economic injury and other damages, in the form of the price of their bitcoins and Fiat Currency that were accessed, frozen, stolen, and/or misused or that are present in their Mt. Gox accounts and which they cannot access.

ANSWER:  The allegations contained in Paragraph 95 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 95.

96.     But for Karpeles' negligence and breach of the duty of reasonable care, Plaintiffs' and the Mt. Gox Class' bitcoins and Fiat Currency would not have been compromised and/or lost.  The Plaintiffs' and Class' bitcoins and Fiat Currency were accessed, frozen, stolen, and/or misused as the proximate result of Karpeles' failure to exercise reasonable care in safeguarding such information by adopting, implementing, and maintaining appropriate data management, accounting, and security measures.

ANSWER:  The allegations contained in Paragraph 96 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 96.

97.     The injuries to Plaintiffs and the Mt. Gox Class resulting from Karpeles' negligence were reasonably foreseeable, particularly in light of his grossly inadequate accounting, data management, and security processes.

ANSWER:  The allegations contained in Paragraph 97 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 97.

98. Plaintiffs and the Mt. Gox Class seek to recover the economic injury and other damages suffered as a result of Karpeles' unlawful conduct, including in the form of the price of the bitcoins and Fiat Currency that were in their Mt. Gox accounts at the time it went dark that is not recoverable under the liquidation proceedings in Mt. Gox's Japanese bankruptcy.

ANSWER: The allegations contained in Paragraph 98 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations. To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 98.

### THIRD CAUSE OF ACTION
### Consumer Fraud Against Mark Karpeles
### (On behalf of Plaintiffs and the Mt. Gox Class)

99. Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

ANSWER: Mizuho repeats and realleges each and every response set forth in this

Amended Answer as if fully set forth herein.

100. As described herein, Karpeles engaged in unlawful, deceptive, and unfair conduct.

ANSWER: The allegations contained in Paragraph 100 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations. To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 100.

101. Through Mt. Gox's online marketing materials and advertisements, including its Terms of Use, Karpeles represented to Plaintiffs and the Mt. Gox Class that Mt. Gox would, *inter alia*, protect their bitcoins and Fiat Currency, and safely and quickly allow them to buy, sell, trade, or withdraw the same.

ANSWER: The allegations contained in Paragraph 101 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations. To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 101.

102.　　However, as discussed above, Karpeles did not—and never had any intention to—safeguard or protects his users' bitcoins and Fiat Currency or allow Plaintiffs and the members of the Class to buy, sell, and otherwise trade or withdraw the same, and instead, had since 2011, secretly siphoned—or allowed others to siphon—Plaintiffs' and the Class's bitcoins and money from their accounts for his own personal gain.

ANSWER:  The allegations contained in Paragraph 102 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 102.

103.　　Thus, Karpeles' representations to Plaintiffs and the members of the Mt. Gox Class were knowingly and intentionally false.

ANSWER:  The allegations contained in Paragraph 103 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 103.

104.　　Knowing that consumers are less likely to do business with companies that fail to adequately safeguard and hold their bitcoins and Fiat Currency or allow them to buy, sell, trade, or withdraw the same, Karpeles made these false representations with the intention that Plaintiffs and the members of the Class would rely on them in contracting with Mt. Gox and transferring money and Bitcoin into their accounts.

ANSWER:  The allegations contained in Paragraph 104 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 104.

105.　　Karpeles additionally made false representations to Plaintiffs and the members of the Class through Mt. Gox's online Support Desk and in its customer service correspondence, which he controlled and directed, as described in Paragraphs 18, 33, and 37 supra.  In particular, Karpeles falsely claimed that Mt. Gox's withdrawal and deposit issues were only temporary, that

withdrawals would soon resume, that he was developing new business relationships with other banks for improved transaction capabilities, and that a security "bug" in Mt. Gox's system was the cause of its suspended withdrawals.

ANSWER: The allegations contained in Paragraph 105 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 105.

106. Karpeles further concealed the fact that (i) Mizuho was no longer providing international withdrawal services, and thus, U.S. customers had no means to withdraw deposited cash from the Exchange, (ii) that thousands of user bitcoins had been lost or stolen, and (iii) that he was preparing to shut down the Exchange and file for bankruptcy.

ANSWER: The allegations contained in Paragraph 106 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 106.

107. Knowing that users would stop depositing bitcoins and funds in their accounts, and rather, would attempt to withdraw funds or close accounts if made aware of any large-scale loss/theft of coins, Karpeles made the false representations and omissions with the intent that Plaintiffs and the members of the Class would rely on them and continue to deposit money and bitcoins into their Mt. Gox accounts and not attempt to withdraw funds and/or close accounts.

ANSWER: The allegations contained in Paragraph 107 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 107.

108. Had Karpeles disclosed Mt. Gox's true practices and intentions, Plaintiffs and the members of the Class would have stopped depositing cash and/or bitcoins into their Mt. Gox accounts, immediately taken all available steps to remove their assets from the Exchange, or would not have maintained accounts with Mt. Gox at all.

ANSWER: The allegations contained in Paragraph 108 are not directed to Mizuho, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 108.

109.    Accordingly, Karpeles' fraudulent conduct caused Plaintiffs and the Class to suffer actual harm in the amount of the difference between the bitcoins or Fiat Currency that was in their Mt. Gox accounts at the time it went dark and the amount that will be actually returned to them under the liquidation proceedings in Mt. Gox's Japanese bankruptcy.

ANSWER:  The allegations contained in Paragraph 109 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 109.

110.    Plaintiffs and the Class seek to recover the economic injury and other damages suffered as a result of Defendant Karpeles' unlawful conduct in the form of the price of the bitcoins and Fiat Currency in their Mt. Gox accounts that cannot be recovered.

ANSWER:  The allegations contained in Paragraph 110 are not directed to Mizuho, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 110.

## FOURTH CAUSE OF ACTION
### Tortious Interference With Contract Against Defendant Mizuho Bank
### (On behalf of Plaintiffs and the Classes)

111.    Plaintiffs hereby incorporate all allegations as if fully set forth herein.

ANSWER:  Mizuho repeats and realleges each and every response set forth in this

Amended Answer as if fully set forth herein.

112.    Plaintiffs each entered into consumer agreements with Mt. Gox wherein Mt. Gox agreed to hold their bitcoins and Fiat Currency in the consumer's account, in the consumer's name, and on the consumer's behalf, and to allow the consumer to safely and quickly buy, sell, trade, or withdraw the same.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 112.

113.    Defendant Mizuho had actual knowledge of such customer agreements.

ANSWER:  Mizuho denies the allegations contained in Paragraph 113.

114.    Notwithstanding its knowledge, beginning in early 2013, Mizuho implemented policies designed to undermine Mt. Gox's ability to do business.  These policies—which Mizuho kept secret from the public—included (i) limiting the number and amount of user withdrawals that it would process, (ii) refusing access to Mizuho's automated withdrawal processes and requiring Mt. Gox to submit manual withdrawal requests (i.e. by paper), (iii) exponentially increasing its banking fees.

ANSWER:  Mizuho denies the allegations contained in Paragraph 114.

115.    Then, in mid-2013, Mizuho went a step further and decided to stop processing all withdrawal requests made by any Mt. Gox user in the United States.

ANSWER:  Mizuho denies the allegations contained in Paragraph 115, except admits that

it changed the terms of its relationship with Mt. Gox in mid-2013.

116.    Mizuho had actual knowledge that its new policies made it impossible for Mt. Gox to fulfill its contractual obligations to Plaintiffs and the Classes, and directly caused Mt. Gox to breach said contracts.

ANSWER:  Mizuho denies the allegations contained in Paragraph 116.

117.    Further, as a direct consequence of Mizuho Bank's conduct, Karpeles was forced to shut down the Exchange and file for bankruptcy.

ANSWER:  Mizuho denies the allegations contained in Paragraph 117.

118.    Mizuho did not have authority or justification to interfere with Plaintiffs' and the Classes' contracts with Mt. Gox and/or their abilities to enjoy the benefits of their agreements. Rather, as explained in Paragraphs 27-33 *supra*, Mizuho Bank purposefully implemented such policies so as to pressure Mark Karpeles into closing Mt. Gox's account with Mizuho and terminating their business relationship.

ANSWER:  Mizuho denies the allegations contained in Paragraph 118.

119.    As a result of Mizuho's conduct, Plaintiffs and the Classes have suffered damages in the form of the price of the bitcoins and Fiat Currency that were stolen, lost, or misused by Mt. Gox.

ANSWER:  Mizuho denies the allegations contained in Paragraph 119.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment Against Mizuho**
**(On Behalf of Plaintiff Lack, Plaintiff Motto, and the Deposit Class)**

120.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

ANSWER:  Mizuho repeats and realleges each and every response set forth in this

Amended Answer as if fully set forth herein.

121.     Plaintiff Lack, Plaintiff Motto, and the Deposit Class conferred a monetary
benefit on Mizuho in the form of fees paid for its deposit services.

ANSWER:  Mizuho denies the allegations contained in Paragraph 121.

122.     Mizuho appreciates or has knowledge of the benefits conferred upon them by
Plaintiff Lack, Plaintiff Motto, and the Deposit Class.

ANSWER:  Mizuho denies the allegations contained in Paragraph 122.

123.     Under principles of equity and good conscience, Mizuho should not be permitted
to retain the transactions fees paid by Plaintiff Lack, Plaintiff Motto, and the Deposit Class,
because it knowingly concealed material information from them regarding their transaction
deposits (i.e., that they would be unable to thereafter withdraw such money from Mt. Gox),
which directly resulted in the loss of their monies that they wired to Mt. Gox through Mizuho.

ANSWER:  Mizuho denies the allegations contained in Paragraph 123.

124.     Mizuho had a duty to disclose such material information once it stopped
processing customer withdrawals.

ANSWER:  Mizuho denies the allegations contained in Paragraph 124.

125.     As a result of Mizuho's conduct, Plaintiff Lack, Plaintiff Motto, and the Deposit
Class suffered damages in the form of the transaction fees they paid for Mizuho Bank's wire
services.

ANSWER:  Mizuho denies the allegations contained in Paragraph 125.

126.     Plaintiff Lack, Plaintiff Motto, and the Deposit Class Members have no other
adequate remedy at law.

ANSWER:  The allegations contained in Paragraph 126 state legal conclusions as to

which no response is required.  To the extent that a response is required, Mizuho denies the

allegations contained in Paragraph 126.

127.    Plaintiffs Lack and Motto, individually and on behalf of the Deposit Class, seek restitution of all monies Mizuho has unjustly received as a result of its conduct alleged herein, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems necessary to make them whole.

ANSWER:  Mizuho denies the allegations contained in Paragraph 127.

## SIXTH CAUSE OF ACTION
### Fraudulent Concealment Against Mizuho Bank
### (On Behalf of Plaintiff Lack, Plaintiff Motto, and the Deposit Class)

128.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

ANSWER:  Mizuho repeats and realleges each and every response set forth in this

Amended Answer as if fully set forth herein.

129.    Defendant Mizuho Bank concealed from and/or failed to disclose to Plaintiff Lack, Plaintiff Motto, and the Deposit Class Members that it had stopped providing cash wire withdrawal services to Mt. Gox and that Deposit Class Members would thereafter be unable to make cash withdrawals from the Exchange.

ANSWER:  Mizuho denies the allegations contained in Paragraph 129.

130.    These omitted and concealed facts were material because a reasonable consumer would have considered them to be important in deciding whether or not to deposit money through Mizuho Bank into the Mt. Gox Exchange.

ANSWER:  Mizuho denies the allegations contained in Paragraph 130.

131.    Mizuho Bank had a duty to disclose such facts because (i) it contributed to Plaintiff Lack, Plaintiff Motto, and Deposit Class Members' misapprehension of material facts relating to their ability to make cash withdrawals from the Mt. Gox Exchange, (ii) it was in a superior position and had exclusive knowledge of the fact that Plaintiff Lack, Plaintiff Motto, and the Deposit Class Members would be unable to withdraw their money from the Mt. Gox Exchange, and (iii) Plaintiff Lack, Plaintiff Motto, and Deposit Class Members could not have reasonably been expected to learn or discover the fact that Mizuho Bank had secretly stopped providing withdrawal services to Mt. Gox and that they would thereafter be unable to make cash withdrawals from the Mt. Gox Exchange.

ANSWER:  Mizuho denies the allegations contained in Paragraph 131.

132.    By continuing to facilitate cash deposits into the Exchange even after knowing that it had terminated its withdrawal services to Mt. Gox (and that consumers would thereafter be unable to make cash withdrawals from the Exchange), Mizuho contributed to Plaintiff Lack, Plaintiff Motto, and the Deposit Class's misapprehension regarding their ability to access their

deposited money, thus giving rise to a duty to disclose material facts that would correct their misapprehension.

ANSWER: Mizuho denies the allegations contained in Paragraph 132.

133.　Mizuho knew that if United States customers found out about its new unreasonable banking policies (especially, the fact that withdrawals were no longer allowed), they would no longer continue making deposits into the Exchange and Mizuho would cease collecting the associated fees. Despite this knowledge, Mizuho continued to accept user deposits into the Mt. Gox Exchange (for which it collected fees on each transaction) and conceal the truth about its withdrawal policies from Plaintiff Lack, Plaintiff Motto, and the Deposit Class through Mt. Gox's collapse in February 2014.

ANSWER: Mizuho denies the allegations contained in Paragraph 133.

134.　On information and belief, Mizuho instructed its own employees not to reveal that it had stopped processing withdrawal requests for users in the United States so as to perpetuate the false impression that Mt. Gox was operating normally. Mizuho did this to protect its reputation so it would not be publicly viewed as contributing to the collapse of Mt. Gox.

ANSWER: Mizuho denies the allegations contained in Paragraph 134.

135.　Although Mizuho knew that Karpeles was making false and misleading statements to the public and to his Mt. Gox users, see Paragraphs 34-39 supra, it took no action to correct them. Instead, Mizuho concealed that it was the cause of the Mt. Gox withdrawal delays, concealed the fact that it had implemented banking policies designed to disrupt Mt. Gox's business and relationship with its users, and stood silent while allowing the public to continue being duped.

ANSWER: Mizuho denies the allegations contained in Paragraph 135.

136.　Upon information and belief, Mizuho prohibited Mt. Gox from disclosing that withdrawal difficulties were attributable to Mizuho, or that Mizuho wanted to terminate its banking relationship with Mt. Gox. By continuing to accept deposits, Mizuho further contributed to the false narrative that the Mt. Gox Exchange was operating properly and that problems with withdrawals were not serious.

ANSWER: Mizuho denies the allegations contained in Paragraph 136.

137.　Plaintiff Lack, Plaintiff Motto, and the Deposit Class did not know that Mizuho had terminated its provision of withdrawal services to Mt. Gox or that Mt. Gox customers would thereafter be unable to make cash withdrawals from the Mt. Gox Exchange. Had Plaintiff Lack, Plaintiff Motto, and the Deposit Class known the above facts, they would not have wired (or continued to wire) money to Mizuho for deposit into the Mt. Gox Exchange.

ANSWER:  Mizuho denies knowledge or information sufficient to form a belief as to the

truth or falsity of the allegations contained in Paragraph 136.

138.    Plaintiff Lack, Plaintiff Motto, and the Deposit Class justifiably relied on the omissions of Mizuho to their detriment.  This detriment is evident from the monies lost by Plaintiff Lack, Plaintiff Motto, and the Deposit Class after being deposited into the Mt. Gox Exchange.

ANSWER:  Mizuho denies the allegations contained in Paragraph 138.

139.    As a direct and proximate result of Mizuho's concealment and omission of material facts, Plaintiff Lack, Plaintiff Motto, and the Deposit Class have suffered actual damages in the amount of deposited Fiat Currency that was thereafter misplaced, stolen, lost, or misused by Mt. Gox.

ANSWER:  Mizuho denies the allegations contained in Paragraph 139.

### SEVENTH CAUSE OF ACTION
### Accounting Against Defendant Mizuho
### (On Behalf of Plaintiff Lack, Plaintiff Motto, and the Deposit Class)

140.    Plaintiffs incorporate all allegations as if fully set forth herein.

ANSWER:  Mizuho repeats and realleges each and every response set forth in this

Amended Answer as if fully set forth herein.

141.    In early February 2014, Mt. Gox halted all transactions on its website and subsequently shut down its service.  As a result, Plaintiff Lack, Plaintiff Motto, and the Deposit Class cannot access, view, withdraw, or locate their Fiat Currency.

ANSWER:  The allegations contained in Paragraph 141 are intended to set forth a cause

of action seeking an accounting, but that cause of action has been dismissed from this case, and

therefore, Mizuho is not required to answer such allegations.  To the extent that a response is

required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or

falsity of the allegations contained in Paragraph 141.

142.    Because all transaction records relating to the deposits of Plaintiff Lack, Plaintiff Motto, and the Deposit Class's Fiat Currency are exclusively within the control of Mizuho, Plaintiff Lack, Plaintiff Motto, and the Deposit Class have an inadequate legal remedy in that they cannot determine the precise amount of damage that they have suffered as a result of Mt. Gox and Mizuho's conduct or which entity is in possession of their transferred funds.  Although

there are postings on the Internet of potential holdings, such postings contain inaccuracies and do not reflect the amounts transferred by the Deposit Class through Mizuho. Mizuho is in the best position to confirm the actual amounts deposited.

ANSWER: The allegations contained in Paragraph 142 are intended to set forth a cause of action seeking an accounting, but that cause of action has been dismissed from this case, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies the allegations contained in Paragraph 142.

143.    As a result, Plaintiff Lack, Plaintiff Motto, and the Deposit Class seek an order requiring Mizuho to provide a full and complete accounting of all transactions or records relating to the deposit, transfer, and processing of Plaintiffs' and the Deposit Class' Fiat Currency so they may discern and calculate their damages and the party in possession of their Fiat Currency.

ANSWER: The allegations contained in Paragraph 143 are intended to set forth a cause of action seeking an accounting, but that cause of action has been dismissed from this case, and therefore, Mizuho is not required to answer such allegations. To the extent that a response is required, Mizuho denies knowledge or information sufficient to form a belief as to the truth or falsity of the allegations contained in Paragraph 143.

## PRAYER FOR RELIEF

Mizuho denies the allegations contained in the prayer for relief, except admits that the plaintiffs purport to seek relief as described therein.

## DEMAND FOR A JURY TRIAL

Mizuho avers that no response to the Complaint's demand for a jury trial is required or appropriate.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any element of the plaintiff's claims, Mizuho asserts the following affirmative defenses:

### FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because this Court lacks general or specific personal jurisdiction over Mizuho.

### SECOND AFFIRMATIVE DEFENSE

The conduct of Mt. Gox, Mt. Gox KK, Tibanne KK (and their respective affiliates or subsidiaries) and Karpeles was a superseding or intervening cause of any damage, loss, or injury suffered by the plaintiffs.

### THIRD AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief may be granted.

### FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the alleged losses were not actually or proximately caused by Mizuho.

### FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, by the comparative fault of third parties, and Mizuho reserves the right to join responsible parties or file claims against responsible parties.

### SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the alleged damages were caused solely by the acts or omissions of Karpeles, Mt. Gox, Mt. Gox KK, Tibanne KK, or other individuals or entities over which Mizuho has no control.

## SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred because the plaintiffs failed to make reasonable efforts to mitigate, minimize, or avoid any losses or damages alleged in the Complaint.

## EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs did not have a valid and enforceable contract with Mt. Gox.

## NINTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was not aware of any alleged contractual relationship between the plaintiffs and Mt. Gox.

## TENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho did not intend to induce or in fact induce, any breach of contract between Mt. Gox and the plaintiffs.

## ELEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho's conduct was justified by a legitimate business purpose.

## TWELFTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was, under Japanese law, required to process inbound wire transfers, including inbound wire transfers that designated Mt. Gox as the beneficiary.

### THIRTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was prohibited by contract from rejecting inbound wire transfers, including inbound wire transfers that designated Mt. Gox as the beneficiary.

### FOURTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was prohibited by applicable state law from rejecting inbound wire transfers, including inbound wire transfers that designated Mt. Gox as the beneficiary.

### FIFTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho, when acting to enhance its own business interests, has a privilege to take steps that have the effect of disrupting or interfering with others' contracts.

### SIXTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was not the actual or proximate cause of any breach of contract between Mt. Gox and the plaintiffs or of the plaintiffs' injury.

### SEVENTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the conduct of persons and/or entities other than Mizuho was a superseding or intervening cause of any breach of contract between Mt. Gox and the plaintiffs.

### EIGHTEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho did not conceal any material fact from Mt. Gox's customers, and did not ask or require any other individual or entity to conceal any material facts from Mt. Gox's customers.

41

## NINETEENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was prohibited by Japanese law from disclosing information concerning its banking relationship with Mt. Gox, including without limitation any restrictions imposed on outbound wire transfers from the Mt. Gox account.

## TWENTIETH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was prohibited by contract from disclosing information concerning its banking relationship with Mt. Gox, including without limitation any restrictions imposed on outbound wire transfers from the Mt. Gox account.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho was prohibited by applicable state law from disclosing information concerning its banking relationship with Mt. Gox, including without limitation any restrictions imposed on outbound wire transfers from the Mt. Gox account.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho did not intend to induce any false belief in the plaintiffs.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho did not owe any duty to disclose to the plaintiffs.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs could have discovered, through a reasonable inquiry or inspection, any information that was allegedly concealed.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs did not rely upon any alleged silence by Mizuho.

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs would not have acted differently had they been aware of the facts allegedly concealed by Mizuho.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho's alleged concealment, and the plaintiffs' reliance on that alleged concealment, were not the actual or proximate cause of the plaintiffs' injury.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho did not unjustly retain any benefit to the plaintiffs' detriment.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho's alleged retention of a benefit did not violate any fundamental principles of justice, equity or good conscience.

### THIRTIETH AFFIRMATIVE DEFENSE

Mizuho is not liable for the conduct of any employee or agent to the extent that the employee or agent was acting outside the scope of his or her authority.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs would be unjustly enriched if they were allowed to recover any part of the damages alleged in the complaint.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the alleged damages sought are too speculative and uncertain, and because of the impossibility of the ascertainment and allocation of such alleged damages.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

This action cannot be maintained as a class action as a matter of law and fact.

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because Mizuho is not liable for the acts of Karpeles or any other actor.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

The plaintiffs are not entitled to recover attorneys' fees, experts' fees, or other costs and disbursements.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, based on the doctrine of *forum non conveniens*.

## THIRTY-SEVENTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, by the doctrines of laches, acquiescence, waiver, ratification, estoppel, or any other related equitable doctrine.

## THIRTY-EIGHTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs and members of the putative class have unclean hands.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, under applicable statutes of limitations and/or statutes of repose.

## FORTIETH AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs have not suffered actual, cognizable injuries.

## FORTY-FIRST AFFIRMATIVE DEFENSE

The claims asserted in the Complaint against Mizuho are barred, in whole or in part, because the plaintiffs lack standing to assert claims individually or as a class.

## FORTY-SECOND AFFIRMATIVE DEFENSE

Mizuho is not subject to liability because it reasonably relied upon the advice, guidance, statements, and/or comments of its counsel.

## <u>RESERVATION OF RIGHTS</u>

Mizuho has not knowingly or intentionally waived any applicable defenses. Mizuho expressly reserves the right to amend or supplement this Amended Answer and the Affirmative Defenses. Mizuho reserves the right to assert other and additional defenses, crossclaims, and

third-party claims not asserted herein to which it becomes aware through discovery or other investigation.

**DEFENDANT/CROSS-PLAINTIFF MIZUHO BANK, LTD.'S
<u>CROSSCLAIMS AGAINST DEFENDANT/CROSS-DEFENDANT MARK KARPELES</u>**

Defendant/Cross-Plaintiff Mizuho Bank, Ltd. ("Mizuho"), by and through its undersigned attorneys, for its crossclaims against Defendant/Cross-Defendant Mark Karpeles ("Karpeles"), states as follows:

1. On April 4, 2016, Plaintiffs Gregory Greene, Joseph Lack, and Anthony Motto filed a Third Amended Complaint (the "Complaint") against Defendants Mizuho and Karpeles, seeking recovery on behalf of a class of similarly situated individuals for their losses related to the collapse of Mt. Gox.

2. These crossclaims seek to hold Cross-Defendant Karpeles accountable for the damages that Mizuho suffered as a result of Karpeles's conduct in connection with the matters described in the Complaint and these crossclaims.

## PARTIES

3. Defendant/Cross-Plaintiff Mizuho is a Japanese financial institution headquartered in Tokyo, Japan.

4. Defendant/Cross-Defendant Karpeles is a natural person and citizen of the country of France.

5. Mizuho and Karpeles are "coparties" to this action within the meaning of Rule 13 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

6. While Mizuho denies that it is subject to personal jurisdiction in this action, or that this is the appropriate venue for this action, jurisdiction and venue are proper for these crossclaims to the extent they are proper in the main action.

7.     In addition, this Court has supplemental jurisdiction over these crossclaims pursuant to 28 U.S.C. § 1367(a) because all of the parties to these crossclaims are defendants in the Complaint, and because these claims are so related to the claims asserted in the Complaint that they form part of the same case or controversy.

## FACTUAL ALLEGATIONS

8.     Mizuho alleges and incorporates by reference the allegations in the Complaint concerning the conduct of Karpeles.  Nothing in this paragraph is intended to, or shall be construed to, admit any allegation in the Complaint, except insofar as it is admitted in the Amended Answer to the Complaint.

9.     On information and belief, Karpeles, as President, CEO, and majority shareholder of Mt. Gox, controlled all aspects of Mt. Gox's business, including writing and designing the software used to run Mt. Gox, and handling all of Mt. Gox's third-party negotiations and contracts.

10.     On information and belief, Karpeles was also responsible for directing the drafting and dissemination of Mt. Gox's public statements and representations, as well as the statements made through Mt. Gox's customer service department.

11.     On information and belief, Karpeles was aware that there were security "bugs" in the Mt. Gox system as early as 2011.

12.     On information and belief, Karpeles stole Mt. Gox users' bitcoins, either by exploiting the security "bugs" or otherwise.

13.     On information and belief, Karpeles lied about and misrepresented the nature of Mt. Gox's business to Mizuho and Mt. Gox users.

14.     Karpeles made numerous representations to the public and to Mt. Gox users that the withdrawal issues were only temporary and that user assets were safe.  Karpeles also assured

2

users through the Mt. Gox online Support Desk that any problems were being dealt with and that there was no cause for alarm.

15.     Karpeles lied about and misrepresented, publicly and to Mt. Gox users, the reason for any delays that Mt. Gox users were experiencing in withdrawing cash from, or depositing cash into, their Mt. Gox accounts.

16.     When Mt. Gox filed for bankruptcy on February 28, 2014, it disclosed in its petition, which named Karpeles as its sole Representative Director, that it had known about the security "bug" since May 2011 but alleged that it did not know "until the end of January 2014 that [the bug] could lead to a large number of unconfirmed transactions and to a risk of illicit withdrawals." The petition further disclosed that Mt. Gox had discovered "a large discrepancy in the total of deposit balances at those financial institutions which managed said deposits compared to the total amount actually deposited by users and that there was a large shortfall of deposit balances."[1]

17.     Over the next few days, rumors circulated that the supposed "hack" of Mt. Gox was an inside job orchestrated by Karpeles, who secretly controlled the stolen bitcoins.

18.     The Plaintiffs have alleged that Mt. Gox users lost more than $400 million as a result of the conduct of Karpeles, Mt. Gox, and Mt. Gox's affiliates.

19.     But for Karpeles's fraud (and other wrongdoing), Mt. Gox users, including the Plaintiffs, would not have suffered these losses.

20.     But for Karpeles's fraud (and other wrongdoing), the conduct of Mizuho that is alleged in the Complaint would not have caused any harm to the Plaintiffs.

---

[1]     Civil Rehabilitation Commencement Application, Dkt. 57-3 at 10.

21.     But for Karpeles's fraud (and other wrongdoing), Mizuho would not have been sued, and would not have incurred any losses relating to this action, including but not limited to legal fees and expenses.

22.     It was reasonably foreseeable that Mizuho would suffer these damages as a result of Karpeles's fraud.

23.     Karpeles is the actual and proximate cause of any damages suffered by the Plaintiffs.

## FIRST CAUSE OF ACTION
### (General Tort Under Article 709 Of Japan's Civil Code Or Other Applicable Law)

24.     Mizuho alleges and incorporates by reference the allegations in these crossclaims.

25.     Karpeles owed Mizuho a duty of reasonable care to avoid violating Mizuho's rights or legally protected interests.

26.     The foregoing statements and other conduct by Karpeles were, at a minimum, negligent and done without reasonable care for the truth or the consequences of these statements. Karpeles's statements and other conduct, including but not limited to statements to and about Mizuho, violated Mizuho's rights or legally protected interests.

27.     Mizuho suffered damages as a result of Karpeles's statements and other conduct, including but not limited to legal fees and expenses that resulted from claims being brought by Mt. Gox users.

28.     Mizuho's damages were proximately caused by Karpeles's false statements.

29.     Mizuho's damages were a reasonably foreseeable result of Karpeles's false statements.

## SECOND CAUSE OF ACTION
### (Contribution)

30.     Mizuho alleges and incorporates by reference the allegations in the crossclaims above.

31.     Mizuho denies all liability alleged against it by Plaintiffs.  However, pursuant to Japanese law, the Illinois Joint Tortfeasor Contribution Act, 740 ILCS 100/1 *et seq.*, and/or other applicable law, in the event Mizuho is found liable in any respect, Mizuho is entitled to recover from Karpeles the proportion of Plaintiffs' alleged damages, if any, that were caused by Karpeles's unlawful conduct, as described above.

## PRAYER FOR RELIEF

WHEREFORE, Defendant/Cross-Plaintiff Mizuho respectfully requests that this Court enter judgment in its favor and against Defendant/Cross-Defendant Karpeles for:

(1) An award of actual damages;

(2) An award of reasonable attorneys' fees and costs in defense of Plaintiffs' claims against Mizuho;

(3) An award of reasonable attorneys' fees and costs incurred in the crossclaims against Karpeles; and

(4) Such other and further relief as this Court deems proper.

In the alternative, in the event the trier of fact renders a verdict against Defendant/Cross-Plaintiff Mizuho, Mizuho respectfully requests that this Court enter judgment against Karpeles in an amount commensurate with the pro rata share of liability attributable to Karpeles.

Respectfully submitted,

MIZUHO BANK, LTD.


By:                /s/ Jason A. Frye
                         One of Its Attorneys


Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

Jerome S. Fortinsky (admitted *pro hac vice*)
jfortinsky@shearman.com
John A. Nathanson (admitted *pro hac vice*)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted *pro hac vice*)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000


Dated: February 24, 2017

## <u>CERTIFICATE OF SERVICE</u>

I, Jason A. Frye, an attorney, hereby certify that I caused a true and correct copy of **Defendant Mizuho Bank, Ltd.'s Amended Answer And Affirmative Defenses To The Plaintiffs' Third Amended Class Action Complaint And Crossclaims Against Defendant Mark Karpeles** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 24th day of February, 2017.


         /s/ Jason A. Frye