**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE, individually and on behalf of all others similarly situated,

*Plaintiffs*,

v.

MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual,

*Defendants*.

Case No. 14 C 01437

Judge Gary Feinerman

Magistrate Judge Susan E. Cox

# DEFENDANT MIZUHO BANK, LTD.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SANCTIONS UNDER RULE 11

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1

BACKGROUND ........................................ 2

I. The Plaintiffs Allege That Mizuho Made It "Impossible" For Mt. Gox's U.S. Customers To Withdraw Fiat Currency From Mt. Gox ........................................ 2

[REDACTED] ........................................ 4

III. Edelson Continues To Advance The Impossibility Allegation In The Fourth Amended Complaint ........................................ 5

ARGUMENT ........................................ 6

I. Edelson Has Violated Rule 11 By Filing A Complaint That Included Factual Allegations That Edelson Knew Were Not True ........................................ 7

II. The Court Should Order Edelson To Remove The Untrue Allegations From The Complaint ........................................ 9

CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chambers v. NASCO, Inc.*,
501 U.S. 32 (1991) ....................................................... 6

*CUNA Mut. Ins. Soc. v. Office and Prof'l Emps. Intern. Union, Local 39*,
443 F.3d 556 (7th Cir. 2006) ....................................................... 6

*Divane v. Krull Elec. Co., Inc.*,
200 F.3d 1020 (7th Cir. 1999) ....................................................... 8, 9

*Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*,
952 F. Supp. 2d 1373 (N.D. Ga. 2013)....................................................... 9, 10

*Lord v. High Voltage Software, Inc.*,
No. 09-CV-04469, 2017 WL 1178147 (N.D. Ill. Mar. 30, 2017)....................................... 6

*In re Meier*,
223 F.R.D. 514 (W.D. Wis. 2004) ....................................................... 6

*Miccosukee Tribe of Indians of Florida v. Cypress*,
No. 15-112233, 2017 WL 1521735 (11th Cir. Apr. 28, 2017)....................................... 7

*Raziev v. Compass Truck Sales, LLC*,
No. 13 C 00737, 2016 WL 3165733 (N.D. Ill. June 7, 2016) ....................................... 8

*Sansone v. Kormex Metal Craft, Inc.*,
No. 14 C 8418, 2016 WL 1529900 (N.D. Ill. Apr. 14, 2016) ....................................... 8

**Statutes**

28 U.S.C. § 1927....................................................... 10

**Other Authorities**

5A Charles Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1336
(3d ed. 1998) ....................................................... 10

Fed. R. Civ. P. 11 ....................................................... *passim*

Defendant Mizuho Bank, Ltd. ("Mizuho") submits this memorandum of law in support of its motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

A central theme that Edelson PC ("Edelson") has advanced throughout this litigation is that Mizuho's decision to halt outbound international wire transfers in June 2013 made it "impossible" for Mt. Gox's customers in the U.S. to withdraw fiat currency from their Mt. Gox accounts. Through discovery, Edelson has learned that this allegation is not true, but it has nevertheless continued to include it in pleadings. [REDACTED] Even though Edelson thus knew by October 2016 that Mt. Gox was using Japan Post Bank to send money to customers in the United States, Edelson filed the Fourth Amended Complaint ("FAC") in February 2017 that continued to allege that it was "impossible" for U.S. customers to withdraw fiat currency from Mt. Gox.

Under Rule 11 of the Federal Rules of Civil Procedure, an attorney that signs a pleading certifies that to the best of the person's knowledge, after reasonable inquiry, the factual contentions in the pleading have evidentiary support. Here, Edelson was presented with clear evidence that it was not impossible for Mt. Gox's U.S. customers to withdraw fiat currency from Mt. Gox after June 2013. Despite this evidence, Edelson continued to assert in the FAC that it was impossible. In similar situations, courts have found that such pleadings violate Rule 11 and

ordered the party to refile its complaint and delete all unsupported allegations. The Court should do the same here.

## BACKGROUND

### I. The Plaintiffs Allege That Mizuho Made It "Impossible" For Mt. Gox's U.S. Customers To Withdraw Fiat Currency From Mt. Gox

On April 17, 2015, the plaintiffs filed their Second Amended Complaint ("SAC"), which alleged for the first time that Mizuho's decision to halt outbound international wire transfers in June 2013 made it impossible for Mt. Gox's customers in the U.S. to withdraw fiat currency from their Mt. Gox accounts. For example, the SAC alleged that:

- Mizuho's decision to "stop processing any withdrawal requests made by Mt. Gox users in the United States" "ma[de] it impossible for United States users to withdraw any money from their Mt. Gox accounts." (SAC ¶ 2.)
- Mizuho was "like the famous Hotel California, money could check into the bank at any time, but once there, it could never leave." (SAC ¶ 2.)
- After Mizuho stopped processing outbound wire transfers, Mt. Gox's customers "would be unable to withdraw their money" from Mt. Gox. (SAC ¶ 3.)
- Mizuho "was in a superior position and had exclusive knowledge of the fact that . . . the Deposit Class Members would be unable to withdraw their money from" Mt. Gox. (SAC ¶ 120.) Mizuho also allegedly "continu[ed] to facilitate cash deposits into the Exchange even after knowing that it had terminated its withdrawal services to Mt. Gox (and that consumers would thereafter be unable to make cash withdrawals from the Exchange)." (SAC ¶ 121.)
- Mizuho failed to notify plaintiff Joseph Lack that "there would be no way for him to make wire withdrawals from the Exchange[], or that his money would thereafter be permanently inaccessible." (SAC ¶ 63.) The complaint further alleges that "[h]ad Lack known that . . . he would not be able to make any cash withdrawals from the Exchange, . . . he would not have opened his account with Mt. Gox or attempted to deposit funds into his Mt. Gox account." (SAC ¶ 64.)

These allegations were repeated throughout the SAC and went to the heart of the plaintiffs' three legal claims against Mizuho:

- **Tortious Interference With Contract:** The plaintiffs alleged that "Mizuho had actual knowledge that its new policies made it *impossible* for Mt. Gox to fulfill its

contractual obligations to Plaintiffs and the Classes, and directly caused Mt. Gox to breach said contracts." (SAC ¶ 105 (emphasis added).)

- **Fraudulent Concealment:** The plaintiffs alleged that Mizuho concealed or failed to disclose "that it had stopped providing cash wire withdrawal services to Mt. Gox and that Deposit Class Members would thereafter be unable to make cash withdrawals from the Exchange" (SAC ¶ 118); that Mizuho had a duty to disclose such facts in part because the Deposit Class "could not have reasonably been expected to learn or discover the fact that . . . they would thereafter be unable to make cash withdrawals from the Mt. Gox Exchange" (SAC ¶ 120); and that "Mizuho knew that if United States customers found out . . . that withdrawals were no longer allowed[], they would no longer continue making deposits into the Exchange" (SAC ¶ 122).

- **Unjust Enrichment:** Mizuho's concealment of the fact that the Deposit Class "would be unable to thereafter withdraw [their] money from Mt. Gox . . . directly resulted in the loss of their monies that they wired to Mt. Gox through Mizuho." (SAC ¶ 112.)

These allegations also played a central role in the Court's denial of Mizuho's motion to dismiss the SAC.[1] Mizuho argued that Mt. Gox (like any other functioning business) could have used other banks to send fiat currency to its customers. (Dkt. 183 at 13-14.) The Court, however, rejected this argument and stated that "accepting at the pleading stage that Mt. Gox could have serviced Lack and Motto through those other accounts, *even though nothing in the complaint suggests that it could have*, would require drawing factual inferences against Plaintiffs." (Memorandum Opinion and Order (Dkt. 230.) at 8 (emphasis added).) In denying Mizuho's motion to dismiss, the Court repeatedly came back to the "impossibility" allegation to support its decision:

- "[F]or several months between its mid-2013 decision to bar outgoing withdrawals from its Mt. Gox bank account and Mt. Gox's February 2014 collapse, Mizuho made it impossible for Mt. Gox to perform on its contracts with its U.S.-based users because, with Mizuho refusing to process outbound wire transfers, U.S. users could not withdraw fiat currency from Mt. Gox." (Dkt. 230 at 8.)

[1] While Mizuho's motion to dismiss was pending, the plaintiffs filed the Third Amended Complaint, on April 4, 2016, which was nearly identical to the SAC, other than the addition of Anthony Motto as a named plaintiff. (Dkt. 205.)

- Mizuho's alleged conduct was "inherently wrongful, as it was founded on a tort: fraudulently concealing the fact that Plaintiffs' money, once deposited, could not be recovered." (Dkt. 230 at 11.)

- Mizuho should have disclosed that it had halted outbound wire transfers because "press reports discussed delays of, but not absolute bars to, withdrawals of fiat currency from Mt. Gox's accounts." (Dkt. 230 at 15 (emphasis added).) The Court thus reasoned that the information available to Mt. Gox's customers was "at best incomplete" and "more accurately characterized as misinformation" because "none of the articles . . . mention Mizuho or the total inability of Mt. Gox users to withdraw fiat currency." (*Id.*)

[redacted]

[redacted]

[redacted]

## III. Edelson Continues To Advance The Impossibility Allegation In The Fourth Amended Complaint

On February 24, 2017—over four months after learning [redacted] that it was not impossible for U.S. customers to withdraw fiat currency from Mt. Gox—Edelson signed and filed the FAC, which continued to allege that it was impossible for Mt. Gox's customers to withdraw fiat currency from Mt. Gox.[2] In fact, all of the references to the impossibility allegation in the SAC were repeated *verbatim* in the FAC. (*Compare* SAC ¶ 2 *to* FAC ¶ 2; *compare* SAC ¶ 3 *to* FAC ¶ 3; *compare* SAC ¶ 63 *to* FAC ¶ 66; *compare* SAC ¶ 64 *to* FAC ¶ 67; *compare* SAC ¶ 105 *to* FAC ¶ 127; *compare* SAC ¶ 112 *to* FAC ¶ 134; *compare* SAC ¶ 118 *to* FAC ¶ 140; *compare* SAC ¶ 120 *to* FAC ¶ 142; *compare* SAC ¶ 121 *to* FAC ¶ 143; and *compare* SAC ¶ 122 *to* FAC ¶ 144.)

The FAC goes even further and adds a new named plaintiff (Gregory Pearce) and a new subclass (*i.e.*, the "Withdrawal Subclass") whose claim is premised on the idea that it was impossible to withdraw fiat currency after Mizuho stopped outbound wire transfers.[3] (FAC ¶ 89.) Specifically, Edelson alleged that because "Mizuho was no longer providing withdrawal services to Mt. Gox users," there would be "no way for [Pearce] to make Fiat Currency

---

[2] Edelson initially filed the signed FAC as an exhibit to Plaintiffs' Motion for Leave to Amend Their Third Amended Complaint and replace it with the FAC. (Dkt. 242-43.) After that motion was granted on March 6, 2017, Edelson filed the FAC as a standalone document on March 7, 2017. (Dkt. 244-45.)

[3] The FAC defines the Withdrawal Subclass as including "[a]ll members of the Mt. Gox Class who initiated a request to withdrawal [sic] Fiat Currency from their Mt. Gox account after the date in which Mizuho Bank stopped processing withdrawals, and whose withdrawal request was not fulfilled." (FAC ¶ 89.)

withdrawals from the Exchange" and that Pearce's "funds within the Exchange (bitcoin or Fiat Currency) would be permanently inaccessible." (FAC ¶ 87.) Edelson added these assertions even though [redacted] flatly contradicted these allegations.

## ARGUMENT

Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). And that rule has teeth: "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c)(1).

Whether an attorney has violated Rule 11 is determined based on "an objective inquiry into whether the party or his counsel should have known that his position is groundless." *CUNA Mut. Ins. Soc. v. Office and Prof'l Emps. Intern. Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (internal quotation marks omitted). Because this determination is based on an objective standard, an attorney can violate Rule 11 without acting in bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 47 (1991); *In re Meier*, 223 F.R.D. 514, 517 (W.D. Wis. 2004). Once the moving party has made a prima facie showing of sanctionable conduct, the burden of proof is on the opponent of a Rule 11 motion to establish the objective reasonableness of his or her conduct. *Lord v. High Voltage Software, Inc.*, 09-CV-04469, 2017 WL 1178147 (N.D. Ill. Mar. 30, 2017).

Mizuho served this motion on Edelson on June 12, 2017—that is, consistent with the requirements of Rule 11(c)(2), at least 21 days prior to filing it with the Court. Mizuho is now

filing this motion with the Court because Edelson has refused to withdraw the FAC or amend it to delete the factual allegations described above. Fed. R. Civ. P. 11(c)(2).

## I. Edelson Has Violated Rule 11 By Filing A Complaint That Included Factual Allegations That Edelson Knew Were Not True

Edelson violated Rule 11 when it filed a complaint with allegations that it knew or should have known lacked evidentiary support. As described above, the SAC repeatedly alleged that it was impossible for Mt. Gox's U.S. customers to withdraw fiat currency from Mt. Gox after June 2013. (*See supra* 2-3.) After filing the SAC, [REDACTED] thus directly contradicted the plaintiffs' allegation that Mizuho's decision to stop outbound wire transfers made it impossible for Mt. Gox's U.S. customers to withdraw fiat currency.

Despite this knowledge, when Edelson filed the FAC on February 24, 2017, Edelson repeated, *word for word*, its many prior allegations that Mizuho made it impossible for U.S. customers to make withdrawals from the Mt. Gox exchange. (*See supra* 5.) Indeed, Edelson

even added to these allegations. (*See supra* 5-6.) Signing a pleading that contains untrue allegations—as Edelson did with the FAC—is a violation of Rule 11(b)(3). The Edelson attorneys cannot escape this violation by arguing that at some point earlier in the case they reasonably believed that the allegations were true. By signing the FAC, the Edelson attorneys affirmatively certified under Rule 11 that, at the time they signed the pleading, all of the allegations contained in that document—including the "impossibility" allegations—"to the best of [their] knowledge, information and belief, formed after an inquiry reasonable under the circumstances . . . have evidentiary support." Edelson knew, however, at the time it filed the FAC, that the impossibility allegations lacked evidentiary support in violation of Rule 11(b)(3). *See*, *e.g.*, *Raziev v. Compass Truck Sales, LLC*, No. 13 C 00737, 2016 WL 3165733, at *9 (N.D. Ill. June 7, 2016) (awarding Rule 11 sanctions because plaintiff's counsel alleged certain facts in the Amended Complaint that he "knew or should have known" were not true by the time he filed that pleading); *Miccosukee Tribe of Indians of Florida v. Cypress*, No. 15-112233, 2017 WL 1521735, at *2 (11th Cir. Apr. 28, 2017) (awarding sanctions against party who "conducted an investigation that led to results differing from his suspicions of wrongdoing … and then willfully abused the judicial process by filing the second amended complaint that contained false and unsupported allegations" that he knew to be untrue at the time he filed the pleading) (emphasis in original) (internal quotation marks omitted); *see also Divane v. Krull Elec. Co., Inc.*, 200 F.3d 1020, 1029 (7th Cir. 1999) (affirming Rule 11 sanctions where a party failed to withdraw his counterclaim after "the counterclaim's lack of factual foundation became apparent to all parties involved"); *Sansone v. Kormex Metal Craft, Inc.*, No. 14 C 8418, 2016 WL 1529900, at *7 (N.D. Ill. Apr. 14, 2016) (granting defendant's motion for sanctions where "the evidence produced during discovery demonstrated that . . . plaintiff's belief [was] unsupported").

## II. The Court Should Order Edelson To Remove The Untrue Allegations From The Complaint

Where a litigant violates Rule 11, the particular sanction that is appropriate will depend on several factors, including the impact that the violation has on the litigation. *See* Fed. R. Civ. P. 11, Advisory Committee Notes (1993 Amendments) ("Advisory Committee Notes"). Nonmonetary sanctions, including an order that the offending language be removed from the complaint, are one way to remedy a Rule 11 violation. *See* Rule 11(c)(4) (stating that sanctions may include "nonmonetary directives"); Advisory Committee Notes (explaining that sanctions may include "striking the offending paper"); *Divane*, 200 F.3d at 1029 (stating that the "[f]ailure to withdraw or amend a counterclaim that [a party] knew lacked any factual basis demonstrates that [the party] never performed a reasonable inquiry into [the] counterclaim before presenting it to the court at trial"); *Homecare CRM, LLC v. Adam Grp., Inc. of Middle Tenn.*, 952 F. Supp. 2d 1373, 1385-86 (N.D. Ga. 2013) (ordering as a sanction the removal of a claim "and its supporting factual allegations").

Consistent with this guidance, the Court should grant Mizuho's motion and order Edelson to remove from the complaint all allegations that lack factual support, including all allegations that Mizuho's decision to stop outbound wire transfers made it impossible for Mt. Gox's U.S. customers to withdraw fiat currency from Mt. Gox. As this Court knows, Rule 12(b)(6) requires courts to accept factual allegations as true at the pleading stage. Rule 11 serves as a counterbalance to that deference by requiring counsel to certify, after a reasonable inquiry, that all factual contentions have evidentiary support. *See Homecare CRM*, 952 F. Supp. 2d at 1384 (explaining that "Rule 11's primary objective is to give a litigant pause to stop, think, and investigate more carefully before filing papers, thereby streamlining the administration and procedure of the federal courts" (internal quotation marks omitted)). Here, Edelson, in filing the

FAC, included allegations that lacked evidentiary support. Those allegations should be removed from the complaint. *Id.* at 1385-86 (requiring the plaintiff to file an amended complaint with the offending claim "and its supporting factual allegations . . . removed").[4] Exhibit B to the Declaration of Michael Grunfeld contains a version of the FAC that shows all of the allegations that Edelson should be required to remove because they are based on the unfounded "impossibility" claim.

## CONCLUSION

For the foregoing reasons, this Court should order Edelson to remove from the complaint all allegations that it was impossible for Mt. Gox users to make withdrawals from their Mt. Gox accounts (as reflected in Exhibit B to the Declaration of Michael Grunfeld).[5]

MIZUHO BANK, LTD.

By: /s/ Jonathan S. Quinn
One of Its Attorneys

Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

[4] This same relief is also warranted by the Court's inherent power to impose sanctions. *See* 5A Charles Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1336 (3d ed. 1998) ("Given this broad range of authority, federal courts invariably find a source of power for imposing sanctions on an attorney when that is warranted.").

[5] On May 14, 2015, Mizuho moved to dismiss this case for lack of personal jurisdiction. (Dkt. 148.) On March 14, 2016, the Court denied Mizuho's motion. (Dkt. 199.) Mizuho continues to contest this Court's personal jurisdiction over it in this litigation.

Jerome S. Fortinsky (admitted pro hac vice)
jfortinsky@shearman.com
John A. Nathanson (admitted pro hac vice)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted pro hac vice)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Dated: July 7, 2017

## CERTIFICATE OF SERVICE

The undersigned attorneys hereby certify that on the 7th day of July, 2017, they caused **Defendant Mizuho Bank, Ltd.'s Memorandum of Law In Support Of Its Motion for Sanctions Under Rule 11** to be served by causing true and accurate copies of such paper to be transmitted via ECF to all counsel of record,

/s/ Jonathan S. Quinn

and via electronic mail to Mark Karpeles.

/s/ Michael Grunfeld