# Exhibit A

**Edelson PC**

350 North LaSalle Street, 13th Floor, Chicago, Illinois 60654
t 312.589.6370 | f 312.589.6378 | www.edelson.com

**VIA EMAIL**

Jeffrey J. Resetarits
Shearman & Sterling LLP
599 Lexington Avenue
New York, NY 10022
Jeffrey.resetarits@shearman.com

***Re:*** ***Greene, et al. v. Mizuho Bank, Ltd., et al*** **(Case No. 14-cv-01437)**

Dear Jeff:

We are in receipt of your letter of June 12, 2017, and proposed motion for Rule 11 sanctions (the "Motion"). According to your Motion, you believe that, based on the body of a single email we received from your co-defendant Mark Karpeles, we "knew" that certain allegations re-alleged in the Fourth Amended Complaint ("Complaint") were "not true"—specifically, our allegations that, thanks to Mizuho's conduct, it was "impossible" for American investors in the Mt. Gox exchange to withdraw currency, dkt. 245 ¶ 127, and that they were "unable" to withdraw their money as a result, *e.g.*, *id.* ¶ 134.

The arguments you make in your Motion fail for several reasons:

- First, the Motion on its face does not set out any basis for sanctions. Indeed, the Motion seems to be based on an unduly limited understanding of two commonplace words – "impossible" and "unable." Luckily, words have definitions and those definitions are found in dictionaries. Even under your factual narrative, our complaint is consistent with the objectively defined meanings of these words.

- Second, even under a narrow reading of these two words, at best you are claiming that we have "overstated" certain facts, something you are free to argue to a jury, but that, as the courts have made clear, cannot be a basis for sanctions.

- Third, as a factual matter, your motion is predicated on a single email from your co-defendant who is being accused of massive fraud. We are not, of course, required to accept every statement made by the defendants (or even third parties) as gospel. Indeed, your own discovery responses take issue with many things that Mr. Karpeles claims.

- Fourth, as you know we have undertaken a much more extensive investigation into the facts than what is required by law. We went as far as to share with you what we learned over a multi-month period and provide you with an

> opportunity to correct any misimpressions we had. We credit you with engaging with us in good faith and, as a result, we significantly narrowed our claims where we felt we did not have a basis to proceed otherwise. On the ability to take money out of Mt. Gox during the relevant time, our allegations are informed by communications with many class members and other interested individuals. Additional investigation by us, including some of what is contained in the email thread you point to, further confirms our investigation. We thus stand by our allegations.

**A. The Motion Fails to Make a Prima Facie Showing of Sanctionable Conduct.**

Our burden to demonstrate that we conducted an adequate investigation and acted in an objectively reasonable manner is only triggered if you meet your initial burden to demonstrate a prima facie case of sanctionable conduct. *See Vandeventer v. Wabash Nat'l Corp.*, 893 F. Supp. 827 (N.D. Ind. 1995) (citing *Shrock v. Altru Nurses Registry*, 810 F.2d 658 (7th Cir. 1987)) (A non-movant's duty "to establish objective reasonableness and adequate pre-filing investigation" in response to a Rule 11 motion is triggered only "once a prima facie showing of sanctionable conduct has occurred."); *see Lord v. High Voltage Software, Inc.*, 2017 WL 1178147, at *5 (N.D. Ill Mar. 30, 2017) (same).

Your proposed motion, however, fails to meet this threshold showing.

**1. You misunderstand the definitions of the words to which you object.**

Your Motion argues that the Complaint falsely alleges that it was "impossible" for class members to withdraw fiat currency from their accounts following Mizuho's refusal to process outbound international transfers in June 2013 and that we improperly allege that class members were "unable" to withdraw such currency during this time period. As we understand it, your contention is that because Karpeles's October 12, 2016, email states that Mt. Gox transferred "in very limited quantity" an unspecified amount of money to US customers after June 2013, through a process that Karpeles claims involved multiple currency conversations, required handwritten transfer requests, and "was not practical," the "impossible" and "unable" allegations overstate the facts.

You appear to be operating under an overly constrained definition of the two words in question. To wit:

The word "impossible" does not necessarily mean that there is no Earthly way for an act to occur. Rather, Webster's explains that something is "impossible" if it is "felt to be incapable of being done, attained, or fulfilled **:** insuperably difficult." *See also* http://www.dictionary.com/browse/impossible ("impossible" defined as "utterly impracticable") Similarly, the Restatement of Contracts understands that the term "impossibility":

> means not only strict impossibility but impracticability because of extreme and unreasonable difficulty, expense, injury or loss involved. As elaborated in the comment, 'impossible' must be

> given a practical rather than a scientifically exact meaning. Impracticability rather than absolute impossibility is enough.

*City of Littleton v. Employers Fire Ins. Co.*, 169 Colo. 104, 108, 453 P.2d 810, 812 (1969) (discussing Restatement (First) of Contracts § 454); *see* Restatement (Second) of Contracts § 261 cmt. d. (same). This makes sense. In common parlance, if you asked me to come to meet with you later today in a remote area of Alaska, I would be correct in saying that this would be "impossible" for me to do, because I would have to rearrange a number of hard to rearrange things, and figure out complicated travel plans in a short period of time. Even though it may be true that, for example, I could charter a plane at great expense and simply ignore my outstanding obligations, under the common understanding of the word, such a meeting would be "impossible." This is just as true as me correctly proclaiming to you that it is "impossible" for me to beat Steph Curry in a game of HORSE. In theory I certainly have a chance,[1] but, in reality, it ain't happening.

Your understanding of the word "unable" is similarly too narrow. *See* http://www.dictionary.com/browse/unable ("unable" defined as "lacking the necessary power, competence, etc., to accomplish some specified act: *He was unable to swim.*"). *See also Gross v. UnumProvident Life Ins. Co.*, 319 F. Supp. 2d 1129, 1152 (C.D. Cal. 2004) (Concluding that disability policy term "unable to perform," did not mean a court must embrace a "nitpicking approach" and "consider[] each and every sub-duty and allow[] a finding of total disability only if Plaintiff is unable to perform each and every one of those duties[.]") (citing *Erreca v. W. States Life Ins. Co.*, 19 Cal. 2d 388, 396, 121 P.2d 689, 695 (1942)). Thus, again, I would not be lying by telling you that I am unable to meet you in Alaska later today or that I am unable to beat the greatest basketball shooter in the world in a shooting competition.

As such, under the dictionary-endorsed understandings of the words, the Motion fails to identify any sanctionable conduct in our latest pleading.[2] If every word of Mr. Karpeles's email is true (and we'll return to that point in a bit), then although the email demonstrates that it was not "absolute[ly] impossibl[e]" for American customers to remove currency from the exchange, he certainly confirmed that it was *virtually* or *practically* or *nearly* impossible for them to do so—which is, as noted, literally consistent with the challenged allegations.

---

1 To the extent this makes it into the record, I do need to point out that I played a lot of informal basketball as a young adult and, for a period of 18 months, it was impossible for my friends to beat me in a game of HORSE.

2 Your interpretation of our "Hotel California" analogy is misguided in much the same way. As you'll recall, the infamous night man confirms that, as a guest, "You can check out any time you like, but you can never leave." The night man isn't saying that it's literally impossible to leave the hotel, just that once you'd checked in, you won't "find the passage back to the place [you] were before." Our clients' money was in much the same predicament.

**2. Even under your cramped reading of the words, we have not engaged in sanctionable conduct.**

Even if we embrace your understanding of "impossible and "unable," the Motion fares no better. For the moment we will assume that "impossible" means, as you think, that there is absolutely no chance for something to occur, and "unable" means something is "impossible." Even then, we would be guilty of – at most – overstating our case, which is not sanctionable conduct. "Rule 11 neither penalizes overstatement nor authorizes an overly literal reading of each factual statement." *Navarro-Ayala v. Hernandez-Colon*, 3 F.3d 464, 467 (1st Cir. 1993) (reversing order imposing Rule 11 sanctions). If that were not the situation, the courts would face an endless siege of sanctions motions. You are of course entitled to present your case in a manner that you believe is favorable to your clients—as are we—even if, in so doing, we could argue that you are overstating the evidence.

**3. Your own "evidence" is far from conclusive and actually supports Plaintiffs' allegations.**

There is a final reason your motion fails even to make a prima facie showing of sanctionable conduct: it conflicts with evidence included in the same communication. Your Motion rests entirely on an email chain from Mark Karpeles, but you selectively pull from that chain and, in so doing, ignore evidence that supports our allegations. For example, and as you must have known when you wrote the Motion,[3] on October 18, 2016, Mr. Karpeles attached to the same email communication chain a PDF copy of an email he had received from Gonzague Gay-Bouchery that *corroborates* the version of events set forth in the pleadings (i.e., that US customers *could not* receive currency due to Mizuho's conduct) and which, unlike the email your motion relies upon, was created during the period encompassing the events at issue in the litigation.[4] (Indeed, we reached out to Mr. Karpeles specifically to acquire such contemporaneous documentary evidence.) In that email (written to Jean-Denis Marx, Mt. Gox's counsel at Baker McKenzie), Mr. Gay-Bouchery explains that, "Shimizu San [from Mizuho] told us that from today onward **we are no longer allowed to send ANY kind of currencies out of Japan**. However we are still able to accept international deposits ... ." (Edelson007136 (emphasis added).) Mr. Gay-Bouchery's statement is fully consistent with the experiences of putative class members and our allegations. Given that Mr. Karpeles attached this email to his communication, the rule of completeness would require the court to consider the email when evaluating whether you have set forth a prima facie showing of sanctionable conduct.[5] And

---

[3] We are confident you have reviewed this document because in an email dated May 16, 2017 you asked us to confirm that we had produced it, and we did so by return email dated May 18.

[4] Moreover, many aspects of Mr. Karpeles's email *do* line up with our understanding of the events at hand. This includes, for example, Mr. Karpeles's account of Mizuho's unilateral decision to cut off class member withdrawals and the repercussions that decision had on the Mt. Gox exchange and its US clientele. We notice you omit from your Motion any discussion of these assertions.

[5] We must also respond briefly to a red herring your Motion introduces, i.e., that class members could withdraw "fiat currency" by "converting their holdings to bitcoin and attempting to move bitcoin out of the exchange." We, of course, have never suggested that Mizuho's conduct had a direct effect on users' ability to move bitcoin in or out of the Exchange (although the evidence we've seen has suggested

because the evidence you offer in support of your Motion *supports* the challenged allegations, it fails to stake out a prima facie case. *See Ins. Benefit Administrators Inc. v. Martin*, 1989 WL 157722, at *3 (N.D. Ill. Dec. 18, 1989) (Under Rule 11, "[t]he attorney's conduct is evaluated at the time the pleading, motion or other paper is signed, and all doubt must be resolved in favor of the signer.").

In short, we do not (and did not) see in Mr. Karpeles's email anything that establishes that our factual contentions lack sufficient evidentiary support.

**B. The Motion Does Not Seriously Challenge Whether Edelson Conducted a Reasonable Investigation in Connection with the Complaint.**

But even assuming that the motion states a prima facie case for sanctionable conduct, your proposed motion fails to demonstrate that our allegations were objectively unreasonable or that we failed to conduct an adequate pre-filing investigation. Simply put, Karpeles's email cannot negate the entirety of our factual investigation, as you suggest.

**1. Our investigation leading up to the filing of the Complaint was extensive, more than supports the allegations, and—as you know—was shared with Mizuho.**

To start, we find it significant that your Motion does not suggest that we lacked an objective or good faith basis for the subject allegations as asserted in the Third Amended Complaint (which, as you note, are word-for-word identical to those that were later alleged). Indeed, your proposed Motion appears to concede that our investigation prior to filing that document supported the allegations contained therein. *See* Proposed Mot. at 7. This implicit concession is sound: prior to our interactions with Mr. Karpeles, as you partially recount, our investigation had turned up numerous instances of individuals complaining that they were unable to retrieve their money from Mt. Gox *at all*. That is, for instance, the experience of Gregory Pearce, whose addition to the lawsuit prompted the at-issue pleading. Dkt. 245, ¶¶ 79-88. Many other members of the putative class also have come forward and attested—*uniformly*—to their unsuccessful attempts to withdraw currency from Mt. Gox. *See* Dkt. 57, Exh. 15 ¶¶ 6-7; Dkt. 20 ¶ 5; Dkt. 18 ¶¶ 3-7; Dkt. 16 ¶¶ 6-7. What's more, publicly available information, as well as conversations with other relevant parties, led us to believe—reasonably, as you concede—that MtGox users could not withdraw their money from the exchange by virtue, at least in part, of Mizuho's actions. *See, e.g.*, Dkt. 245, ¶ 28 n.8 (WSJ report on audio recording of Mizuho executives "pressuring" Karpeles to end the banking relationship); Dkt. 57, Exh. 17, at 15 (discussing "banking challenges in Japan").

The fact that you did not raise a challenge of this sort is hardly surprising. You'll recall that before we moved forward with the current iteration of the pleadings—i.e., where the claims

---

that was at least a side effect of Mizuho's conduct). *See* Dkt. 197, at 5 (acknowledging that "bitcoin withdrawals were possible until early February 2014"). In any event, this point has nothing to do with whether class members could or could not withdraw *currency* and, as such, provides no support for your position.

focus only on Mizuho's and Karpeles's conduct, as first set out in the Second Amended Complaint—we met with you extensively and candidly about the results of our investigation. As a result of that dialogue and exchange of information (a process that continued over the course of months), you'll also recall that our position shifted significantly and we agreed to *not* pursue several theories of recovery.[6] And in terms of the claims we did pursue (i.e., those set out in the Second through Fourth Amended Complaints), we long ago explained to you our factual bases underlying our conclusions and encouraged you to come forward "if you feel that we're misapprehending the facts or the law" in any respect.[7] The fact that you did not—until now—speaks volumes.

**2. Karpeles's email, standing alone, cannot negate the vast body of evidence supporting Plaintiffs' allegations.**

Finally, and even if your Motion presented a prima facie case of sanctionable conduct, it would fail for the simple reason that it rests entirely on a single piece of evidence: the text of Mr. Karpeles's email. For the reasons noted below, Mr. Karpeles's after-the-fact summary of events cannot negate the entirety of our prior—and unchallenged—investigations.

First, the entire premise of your Motion—i.e., that we were required to accept Mr. Karpeles' after-the-fact email as entirely true and sufficient to nullify our investigation to date—is faulty. To start, Mr. Karpeles is, as you know, also alleged to have committed fraud. While we would await corroboration before placing our trust in the story of *any* witness, with Mr. Karpeles in particular a healthy measure of skepticism is in order. We feel confident you agree: your own discovery responses suggest – contrary to Mr. Karpeles's emails, which you seem to believe are controlling – that Mizuho did not unilaterally halt international withdrawals as of June 2013 but, rather, simply "requested" that Mt. Gox "stop asking Mizuho to process outbound cash transfers" and that Mt. Gox readily "complied" with that request. *See* Mizuho 2d Suppl. Resp. to Lack Interrog. No. 8. We know of no authority that requires us to put our shared doubts about the credibility of a witness to one side while drafting a complaint. Moreover, as the Seventh Circuit has recognized, "memory ... is fallible." *Specht v. Google Inc.*, 747 F.3d 929, 933 (7th Cir. 2014). We see no reason to privilege Mr. Karpeles's after-the-fact recollection over the contemporaneous documentary and testimonial evidence that we had already collected. *See, e.g.*, *Lord*, 2017 WL 1178147, at *3 ("a lawyer should not be sanctioned for using discovery to investigate all the circumstances (which may themselves be susceptible to multiple interpretations)"); *Lotocky v. Elmira City Sch. Dist.*, 102 F. Supp. 3d 455, 457 (W.D.N.Y. 2016) (denying Rule 11 motion because even though a portion of the plaintiff's deposition testimony undercut his claims, other portions could be used to support successful claim); *Aronson v. Advanced Cell Tech., Inc.*, 972 F. Supp. 2d 123, 138 (D. Mass. 2013) (denying Rule 11 motion because, although some documentary evidence directly contradicted plaintiff's claim, other evidence supported it). Our decision to rely on the evidence we had already collected in drafting

---

6 *See*, *e.g.*, March 11, 2015 email from Ari Scharg to Jeffery Resetarias ("We appreciate the frank and open discussion that we've had over the past two months. At this point, based on our discussions, we are ready to abandon the vast majority of claims that we anticipated bringing against Mizuho in January.").

7 *See* March 24, 2015 email from Ari Scharg to Jeffrey Resetarias.

our pleadings, rather than accepting and prioritizing Mr. Karpeles's uncorroborated story, does not violate Rule 11.

Second, we don't see how Mr. Karpeles's email would—even if accepted as absolutely true and prioritized above the rest of our investigation—question whether we had conducted a reasonable investigation sufficient to support the at-issue allegations. The email itself provides at best uncertain support for your apparent assumption that it completely undermined and nullified our prior investigation. Mr. Karpeles for instance discussed that "Mizuho blocked [Mt. Gox's] ability to send wire transfers" and that "transfers were fully stopped in July 2013"—two assertions fully consistent with the Fourth Amended Complaint. He also, as discussed above, attached a contemporaneous email from Mr. Gay-Bouchery, which described that Mizuho prevented Mt. Gox from "send[ing] ANY kind of currencies out of Japan" and, thus, is fully supportive of our allegations. Given Mr. Karpeles's inclusion of these explanations and primary evidence, we don't see how his vague explanation of a complex *transfer* (not "withdrawal") pathway undercuts our allegations. Indeed, we remain unaware of a single U.S. Mt. Gox customer that successfully "withdrew" funds from the Exchange after June 2013—which is unsurprising, given that Mizuho was the only avenue through which such withdrawals could be made. Stated plainly, even if we had been convinced, at the time we filed the Complaint, that a handful of U.S. customers were able to transfer money out of the Exchange through the pathway Karpeles describes (or moved bitcoin out of the Exchange, converted it to cash elsewhere, and then made a withdrawal through a different bitcoin exchange), we would not have changed the allegations.

**3. The few cases cited in your Motion do not support your bid for Rule 11 sanctions.**

Finally, we note that none of the cases you cite in your proposed motion even remotely deals with a situation like the one we have here. Insofar as *Raziev v. Compass Truck Sales, LLC*, for instance, is concerned with the acts of counsel rather than the fraud perpetrated by the party, it involved an affidavit revealing that the lawyer had not conducted a sufficient investigation, and allegations of damages even though a reasonable investigation into basic facts about the claim would have revealed that the plaintiff had been made whole. 2016 WL 3165733, at *8-*9 (N.D. Ill. June 7, 2016). *Miccosukee Tribe of Indiana of Fla. v. Cypress* dealt with a related concern: a lawyer predetermining the findings of his investigation. *See* 2017 WL 1521735, at *2 (11th Cir. Apr. 28, 2017). Your motion, by contrast, relies upon a single piece of evidence that may, but ultimately may not, shed new light on evidence accumulated in a multi-year investigation. Our decision not to alter our allegations in these circumstances is not sanctionable. *See, e.g.*, *G-I Holdings, Inc. v. Baron & Budd*, 2002 WL 1934004, at *14 (S.D.N.Y. Aug. 21, 2002) (denying motion for sanctions under Rule 11(b)(3) even though counsel was aware of potentially adverse evidence that had not been corroborated and was contradicted by counsel's otherwise thorough investigation). *Miccosukee Tribe* is thus inapposite. The sanctioned lawyer in your next case, *Divane v. Krull Elec. Co., Inc.*, abandoned the *only* piece of evidence that provided the factual basis for a challenged claim and never conducted any investigation to supply any new support, despite refusing to withdraw the claim and thus duplicating the proceedings. *See* 200 F.3d 1020, 1028-29 (7th Cir. 1999). Here, as discussed, we have other evidence supporting our claims, so *Divane* is not on point. *Sansone v. Kormex Metal Craft, Inc.*, your final case, is inapposite for

similar reasons: the sanctionable conduct was the lawyer's decision to oppose summary judgment was, "ostrich-like," in the face of "undisputed evidence." 2016 WL 1529900, at *7 (N.D. Ill. Apr. 14, 2016). The evidence here cannot credibly be called "undisputed" and neither have we buried our head in the sand nor ignored Mr. Karpeles's email. Indeed, as you know, we followed up. *See* Edelson007193. Instead, our case is more readily described by a different observation made by the *Sansone* court: "a mere disagreement about the facts is not on its own grounds for sanctions under Rule 11." 2016 WL 1529900, at *7.[8]

In short, for these and a host of other reasons, we are fully confident that the pleadings—as alleged—were supported by a reasonable investigation and, thus, comport with Rule 11.

* * * *

Your proposed motion lacks any legal or factual basis. We understand that litigation of any kind can be contentious but we are disappointed you have chosen to coarsen the discourse in this way. Given the near-total lack of support for your motion, we reserve our rights to seek the fees and costs required to litigate your motion should you choose to file it. *See* Fed. R. Civ. P. 11(c)(2).

We ask that you withdraw your letter and Motion by July 1st. If you are unable to attend to this during that timeframe, please let us know when you expect to respond.

Sincerely,

EDELSON PC

Jay Edelson

[8] Finally, we disagree with your suggestion that altering the at-issue terms in the way you have proposed would have a material affect on the litigation. Putting to one side our "Hotel California" analogy, the "impossibility" allegation that you are at pains to highlight appears in the section of our complaint discussing the tortious interference. Dkt. 245, ¶ 127. But the intentional-interference claims of Lack and Motto survived dismissal because they attempted to retrieve their money but were unable to. *See* 206 F. Supp. 3d 1362, 1374 (N.D. Ill. 2016). That same theory undergirds Pearce's allegations. Dkt. 245, ¶ 83; Dkt. 242, at 5. Indeed, the court *rejected* our contention that impossibility by itself rendered Mizuho liable for interference with contract. *Compare* Dkt. 197, at 13 *with* 206 F. Supp. 3d at 1373 (dismissing Greene's claim for interference with contract). And your point that customers could withdraw bitcoin (Proposed Mot. at 4-5) is irrelevant: The issue is ability to withdraw currency.

What's more, in referencing your argument about Mt. Gox's "other accounts," the court actually assumed that such accounts existed, but noted that the complaint did not "suggest[] that [Mt. Gox] could have serviced" Lack and Motto through these accounts—i.e., that it would have been able to return them their money using any other account even if one or more existed. 206 F. Supp. 3d at 1371. Mr. Karpeles's email, as discussed above, is not inconsistent with that conclusion. Your argument, once again, "require[s] drawing factual inferences against Plaintiffs." 206 F. Supp. 3d at 1371.