**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No. 14 C 01437 |
| v. | Judge Gary Feinerman |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | Magistrate Judge Susan E. Cox |
| *Defendants*. | |

**DEFENDANT MIZUHO BANK, LTD.'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION FOR SANCTIONS UNDER RULE 11**

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I.    The Court Should Reject The Plaintiffs' Attempt To Redefine The Word "Impossible" .................................................................................................................. 2

    II.    The Plaintiffs Have Not Offered Any Support For Their Impossibility Allegation ........ 5

    III.    Mizuho Complied With The Requirements Of Rule 11 ..................................................... 9

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Lord v. High Voltage Software, Inc.*,
 2017 WL 1178147 (N.D. Ill. March 30, 2017) ........................................................................8

*Matrix IV, Inc. v. American National Bank & Trust Co. of Chicago*,
 649 F.3d 539 (7th Cir. 2011) .................................................................................................10

*N. Illinois Telecom, Inc. v. PNC Bank, N.A.*,
 850 F.3d 880 (7th Cir. 2017) ...................................................................................................9

*Nisenbaum v. Milwaukee County*,
 333 F. 3d 804 (7th Cir. 2003) ...........................................................................................9, 10

*Sansone v. Kormex Metal Craft, Inc.*,
 No. 14 C 8418, 2016 WL 1529900 ..........................................................................................8


**Other Authorities**

Fed. R. Civ. P. 11 .............................................................................................................. *passim*

Cambridge Dictionary, Cambridge University Press (2017) ............................................................3

Dictionary.com (2017) ......................................................................................................................3

Merriam-Webster (2017) ..................................................................................................................3

Oxford English Dictionary, Oxford University Press (2017) ...........................................................3

Defendant Mizuho Bank, Ltd. ("Mizuho") submits this reply memorandum of law in further support of its motion for sanctions under Rule 11 of the Federal Rules of Civil Procedure (the "Motion").

## **PRELIMINARY STATEMENT**

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████ This information directly contradicted the plaintiffs' allegation that it was "impossible" for Mt. Gox's U.S. customers to withdraw money from the exchange. Edelson's decision to file the Fourth Amended Complaint ("FAC")—even though it knew that one of its key allegations lacked factual support—violated Rule 11's requirement that "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3).

The plaintiffs' main rebuttal to this simple point involves a linguistic exercise over the meaning of the word "impossible." (Plaintiffs' June 28, 2017 Letter; Dkt. 277-1 ("Plaintiffs' Letter").) Edelson's citations to various dictionaries misleadingly skip over the primary definition for the word, which is exactly what an ordinary person would say if asked what "impossible" means—namely, that it is "not possible." More importantly, during the briefing on the motion to dismiss, the plaintiffs made it perfectly clear what they meant by the word "impossible" when they repeatedly argued that, after Mizuho stopped processing international outbound wire transfers, Mt. Gox's customers "would never be able to withdraw their money." (Dkt. 197 ("MTD Opp'n.") at 1.) The Court should reject the plaintiffs' effort to change course and now claim that when they asserted in the FAC and in opposition to the motion to dismiss that withdrawals were "impossible," they really meant that withdrawals were difficult.

The plaintiffs also claim that, even if their impossibility allegation is understood according to its ordinary meaning, a "vast body of evidence" supports it. (Plaintiffs' Letter at 6.) But the only evidence that the plaintiffs identify are emails that say that Mizuho stopped international outbound wire transfers in June 2013. The plaintiffs miss the point of this Motion. Mizuho does not contest here that it stopped making international outbound wire transfers for Mt. Gox at that time. The point is that Mt. Gox, like any other functioning business, was always free to transfer money to other banks and service its customers. ▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Edelson violated Rule 11 by continuing to allege in the FAC that it was impossible for Mt. Gox's U.S. customers to withdraw fiat currency when both the documentary evidence and common sense directly contradict this allegation. Accordingly, the Court should require the plaintiffs to file an amended complaint that removes all allegations that it was impossible for Mt. Gox users to make withdrawals from their Mt. Gox accounts (as reflected in Exhibit B to the Declaration of Michael Grunfeld; Dkt. 269-2 ("Grunfeld Decl.")).

## ARGUMENT

### I. The Court Should Reject The Plaintiffs' Attempt To Redefine The Word "Impossible"

The plaintiffs' primary argument in response to Mizuho's Motion is that the word "impossible" does not in fact mean "not possible." (Plaintiffs' Letter at 2-3.) According to the plaintiffs, when the FAC alleged that Mizuho's actions made it "impossible" for Mt. Gox to make payments to its customers in the U.S., they actually meant that Mizuho's actions only made it more difficult for Mt. Gox to do so. (*Id.*) The Court should reject the plaintiffs' after-the-fact effort to redefine how the Court and parties have understood the word "impossible" throughout this litigation.

2

The plaintiffs assert that Webster's dictionary defines the word "impossible" to mean "felt to be incapable of being done, attained, or fulfilled: insuperably difficult." (Plaintiffs' Letter at 2.) The plaintiffs fail to inform the Court that the definition they cite is the second definition that Webster's provides for the word "impossible." The first definition is "incapable of being or of occurring."[1] Likewise, in Dictionary.com, the plaintiffs' other source, the plaintiffs' definition of "impossible" is the fifth definition listed, while the first two definitions of "impossible" are "not possible; unable to be, exist, happen, etc." and "unable to be done, performed, effected, etc."[2] Other dictionaries reinforce that the primary definition of the word "impossible" is "not possible."[3]

More importantly, the plaintiffs themselves have used the word "impossible" throughout this case to mean that withdrawals from Mt. Gox were not possible.[4] For example, the plaintiffs argued repeatedly in opposition to Mizuho's motion to dismiss that, because of Mizuho's actions, Mt. Gox's customers making deposits into their Mt. Gox accounts "would never be able to withdraw their money." (Dkt. 197 (MTD Opp'n) at 1; *see also id.* at 9 (claiming that if Mt. Gox severed its banking relationship with Mizuho, "it would be impossible for Mt. Gox to perform on its contracts . . . [Mizuho] knew that its conduct necessarily would render Mt. Gox

---

[1] Merriam Webster (2017), available at https://www.merriam-webster.com/dictionary/impossible (last accessed July 3, 2017).

[2] Dictionary.com LLC (2017), available at http://www.dictionary.com/browse/impossible?s=t (last accessed July 3, 2017).

[3] *See, e.g.*, Oxford English Dictionary, Oxford Univ. Press (2017) ("Not possible; that cannot be done or effected; that cannot exist or come into being; that cannot be, in existing or specified circumstances"); Cambridge Dictionary, Cambridge Univ. Press (2017) ("unable to exist, happen, or to be achieved; not possible"), available at http://dictionary.cambridge.org/us/dictionary/english/impossible (last accessed July 6, 2017).

[4] The plaintiffs used the word "unable" in the FAC to be synonymous with the primary definition of "impossible" – *i.e.*, that withdrawals from Mt. Gox were not possible. (*See* Dkt. 274 (Mizuho's Memorandum of Law In Support Of Its Motion For Sanctions Under Rule 11) at 2-3.)

3

incapable of fulfilling its contractual obligations to its American users"), *see also id.* at 11 (arguing that Mizuho "prevent[ed] Mt. Gox users from withdrawing their money" (emphasis added)), *id.* at 12 ("Mt. Gox's collapse is connected to the investors' inability to pull their money out of the exchange . . . . Had Greene wanted to convert his bitcoin into fiat currency and withdraw it, as Mt. Gox promised he would be able, he couldn't have done so."). In fact, the plaintiffs specifically distinguished between the two definitions that they now conflate when they argued that Mizuho first "intended to make it difficult, and then impossible, for Mt. Gox's American users to withdraw their money." (*Id.* at 10.) In other words, the plaintiffs themselves have made it clear that, when they alleged that withdrawals were "impossible," they did not just mean that withdrawals were difficult.[5]

Moreover, contrary to how the plaintiffs describe their impossibility allegation in response to the Motion, the Court appears to have understood the word "impossible" to mean "not possible" when ruling on Mizuho's motion to dismiss for failure to state a claim. For example, the Court described the plaintiffs' impossibility allegation as asserting that "Mizuho made it impossible for Mt. Gox to perform on its contracts with its U.S.-based users because, with Mizuho refusing to process outbound wire transfers, U.S. users could not withdraw fiat currency from Mt. Gox." (Dkt. 230 (MTD Decision) at 11.) Similarly, the Court described the

---

[5] The plaintiffs likewise try to reinterpret the importance and meaning of their "'Hotel California' analogy." (Plaintiffs' Letter at 3 n.2.) The plaintiffs claim that, "putting to one side our 'Hotel California' analogy,'" their impossibility allegation is not very important to their claims. (*Id.* at 8 n.8.) But they cannot walk away from the Hotel California analogy, which has been central to their argument, and indeed appears in the second paragraph of the FAC. (FAC ¶ 2 ("money could check into the bank at any time, but once there, it could never leave").) In addition, just as they try to reinterpret the meaning of the word "impossible," they now try to rewrite the lyrics of the song when they claim that the "night man [in the Hotel California] isn't saying that it's literally impossible to leave the hotel, just that . . . you won't 'find the passage back to the place [you] were before'." (Plaintiffs' Letter at 3 n.2.) That is not what the lyrics say. The narrator in the song first talks about trying to find a "passage back to the place [he was] before." But the night man then explains to the narrator that "[y]ou can check out any time you like, but you can never leave!" (*Id.*)

4

plaintiffs as alleging that Mizuho concealed "the fact that Plaintiffs' money, once deposited, could not be recovered." (*Id.* at 11.) The Court also noted that, although press reports discussed Mt. Gox withdrawal delays, none of those articles mentioned "absolute bars to[] withdrawals of fiat currency" or "the total inability of Mt. Gox users to withdraw fiat currency." (*Id.* at 15.) Similarly, when ruling on Mizuho's motion to dismiss for lack of personal jurisdiction, the Court described the plaintiffs' allegations as asserting that "Mizuho knowingly accepted a deposit from a California branch from somebody it knew to be a California resident and placed that deposit into the financial equivalent of a black hole." (Dkt. 200 (PJ Decision) at 10-11.) The plaintiffs should not now be allowed to rely on a secondary or tertiary meaning of the word "impossible" that is at odds with how both the parties and the Court have read and used that word in this case to date.

**II.     The Plaintiffs Have Not Offered Any Support For Their Impossibility Allegation**

The plaintiffs also claim that, even if their impossibility allegation is understood according to the ordinary meaning of the word "impossible," a "vast body of evidence" supports their claim. (Plaintiffs' Letter at 6.) In particular, the plaintiffs cite to "Plaintiffs' own experiences; the experiences of hundreds of putative class members; public media reports; first hand and contemporaneous accounts from former-defendant Mr. Gay-Bouchery . . . ; and the rest of Plaintiffs' counsel investigation." (Plaintiffs' Response To Mizuho's Motion For Sanctions Under Fed. R. Civ. P. 11; Dkt. 276 ("Plaintiffs' Response") at 2.) None of these sources support the plaintiffs' impossibility allegation.

First, the plaintiffs are incorrect when they assert that their own experiences support the impossibility allegation. According to the FAC, plaintiff Greene attempted to make a withdrawal on February 24, 2014—the same day that Mt. Gox "went dark" (FAC ¶ 41)—but the transaction "did not go through." (*Id.* ¶ 55.) Plaintiffs Lack and Motto deposited money into

5

their Mt. Gox accounts days before Mt. Gox collapsed, but their money never showed up in the accounts and they never made a withdrawal request. (*Id.* ¶¶ 60-65, 71-75.) And plaintiff Pearce made a withdrawal request on January 29, 2014, but was told by Mt. Gox that the withdrawal was "delayed." (*Id.* ¶¶ 83-84.) In response, plaintiff Pearce cancelled his withdrawal request and attempted to move "his entire Bitcoin balance out of Mt. Gox." (*Id.* ¶ 85.) The named plaintiffs' allegations, at most, support the assertion that, in the month leading up to its collapse, Mt. Gox was not functioning properly (as described elsewhere in the Complaint (*id.* ¶ 39)) and was experiencing delays in processing withdrawal requests. The allegations do not in any way support the assertion that, once Mizuho stopped processing outbound international wire transfers for Mt. Gox in June 2013, it was "impossible" to withdraw fiat currency.

Second, the plaintiffs are also incorrect when they assert that "public media reports" support their impossibility allegation. (Plaintiffs' Response at 2.) In fact, the media reports that the plaintiffs cite in the FAC only discuss withdrawal delays, but do not say that it was impossible for Mt. Gox customers to retrieve their money from the exchange.[6] In addition, in response to Mizuho's argument in its motion to dismiss that the named plaintiffs were fully informed of problems with Mt. Gox before they invested, the Court noted that news articles only discussed withdrawal delays and did not mention "absolute bars to[] withdrawals of fiat currency" or "the total inability of Mt. Gox users to withdraw fiat currency." (Dkt. 230 (MTD Decision) at 15.) ███████████████████████████████████████████████████████████████████████████████████████████████████████

Third, the plaintiffs' reliance on the purported "experience of hundreds of putative class members" also does not support their impossibility allegation. (Plaintiffs' Response at 2;

---

[6] *See, e.g.*, FAC ¶ 32 (citing media reports that discuss "delays" and "difficulties in withdrawing cash from their Mt. Gox accounts.")

Plaintiffs' Letter at 4.) Edelson's reference to the "experience of hundreds of putative class members" is completely unsupported. More importantly, it is common sense that customers who were able to withdraw their money from Mt. Gox would be far less likely to contact Edelson and share their experiences with the exchange. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Edelson failed to take that step prior to filing the FAC and thereby violated Rule 11.

Fourth, the plaintiffs are incorrect when they argue that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. (Plaintiffs' Letter at 4; Plaintiffs' Response at 2.) Those emails merely confirm that Mizuho stopped processing outbound international wire transfers for Mt. Gox in June 2013—a point that Mizuho does not contest in this Motion. It does not logically follow, however, that Mizuho's decision to stop processing outbound international wire transfers made it "impossible" for Mt. Gox to send money to its U.S. customers. The only way the plaintiffs' allegation could possibly be true is if (i) Mizuho was the only bank in the world, or (ii) Mizuho had an exclusivity agreement with Mt. Gox that prohibited Mt. Gox from using other banks. Neither of these things is true, ▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mt. Gox was always free to take the money in its account at Mizuho and transfer it to another bank to service its customers. Not surprisingly, that is exactly what Mt. Gox did. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

(Grunfeld Decl., Ex. A.)

7

Fifth, unable to identify any evidentiary support for their impossibility allegation, Edelson tries to confuse the issue by discussing the alleged reasonableness of its investigation. (Plaintiffs' Letter at 5; Plaintiffs' Response at 2.) But the investigation that Edelson conducted at the beginning of the case is irrelevant, because the obligations of Rule 11 apply to each pleading at the time it is filed. The issue here is whether, ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬ it had evidentiary support for the impossibility allegation (as required by Rule 11) when it filed the FAC in February 2017. The plaintiffs have not identified any such support.

Finally, as a last ditch effort, the plaintiffs ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Rule 11, however, requires more. Once Edelson was confronted with evidence that undermined one of their key allegations, they had a duty under Rule 11 to investigate that evidence and not "assum[e] the posture of an ostrich and firmly plac[e their] head in the sand." *Sansone v. Kormex Metal Craft, Inc.*, No. 14 C 8418, 2016 WL 1529900, at *7.[7]

---

[7] Edelson's attempt to explain away the cases cited in Mizuho's Motion are dependent on the plaintiffs' contention that they have "other evidence supporting" the impossibility allegation. (Plaintiffs' Letter at

8

### III.     Mizuho Complied With The Requirements Of Rule 11

Without citing any authority, the plaintiffs assert in a footnote that Mizuho's Motion is improper because Mizuho deleted a request that Edelson pay for the expenses associated with litigating this Motion. (Plaintiffs' Response at 1 n. 1.) Edelson's argument is contrary to Rule 11 and established Seventh Circuit law. The purpose of Rule 11(c)(2)'s notice requirement is to give the opposing party the chance "to withdraw or correct the challenged pleading." *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 888 (7th Cir. 2017). The Advisory Committee Notes to the 1993 amendment state that Rule 11(c)(2) "is intended to provide a type of 'safe harbor' . . . in that a party will be subject to sanctions . . . unless, after receiving the motion, it refuses to . . . acknowledge candidly that it does not currently have evidence to support a specified allegation." *Id.* at 886 (emphasis omitted). In evaluating the safe harbor requirement, the Seventh Circuit has rejected a hypertechnical interpretation in favor of one that merely requires "substantial compliance" with the Rule. *Id.* at 887; *see also Nisenbaum v. Milwaukee County*, 333 F. 3d 804, 808 (7th Cir. 2003). In fact, contrary to the plaintiffs' assertion, the Seventh Circuit does not even require a moving party to serve a formal motion on the opposing party, but instead has ruled that it is sufficient for the moving party to send a letter that explains the grounds for the sanctions. *Id.* According to the Seventh Circuit, "[i]nsisting on a formal motion seemed unduly formalistic." *N. Illinois Telecom*, 850 F.3d at 887.

---

6.) As discussed above, the plaintiffs have not actually pointed to any such countervailing evidence. Similarly, none of the cases that the plaintiffs affirmatively cite in their response support their position because, unlike the plaintiffs here, the party opposing Rule 11 sanctions in those cases identified actual evidence that supported their claims. (Plaintiffs' Response at 2.) Where, as here, the party opposing sanctions "presented no evidence that there was a good faith basis to pursue" a particular claim, the court readily imposed sanctions under Rule 11. *See Lord v. High Voltage Software, Inc.*, 2017 WL 1178147, at *5 (N.D. Ill. March 30, 2017) (imposing Rule 11 sanctions because the plaintiff and his lawyer presented no evidence to support a retaliation claim under the Americans with Disabilities Act).

9

Mizuho easily meets the Seventh Circuit's standard. On June 12, 2017, Mizuho's counsel served Edelson with the Rule 11 motion, which requested that (i) the plaintiffs file a new complaint that deletes all allegations that lack factual support (which Mizuho identified in an accompanying exhibit) and (ii) pay Mizuho Bank's reasonable expenses associated with litigating the motion. After Edelson notified Mizuho that it would not file a new complaint and delete the impossibility allegations, Mizuho waited until the 21-day waiting period expired and then filed its Motion with the Court on July 7, 2017. Prior to filing the Motion, Mizuho deleted two paragraphs at the end of the Motion, which requested that Edelson pay the costs associated with litigating the Motion. Mizuho deleted that request because, as it explained to Edelson, the Motion has always been about requiring Edelson to correct unsupported allegations and has never been about obtaining money from Edelson. Notably, Mizuho did not add anything to the Motion it filed with the Court, so the Motion contains no arguments that the plaintiffs did not have an opportunity to address. This process, in which Mizuho notified the plaintiffs of its intent to seek sanctions and the basis for doing so, easily satisfies the safe harbor requirement of Rule 11 and the Seventh Circuit's "substantial compliance" requirement. *See Nisenbaum*, 333 F.3d at 808 (ruling that a letter informing the opposing party of the intent to seek sanctions and the basis for doing so is sufficient for Rule 11); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago*, 649 F.3d 539, 552-53 (7th Cir. 2011) (same). Edelson's assertion that Mizuho's deletion of two paragraphs from the motion it served on the plaintiffs somehow ran afoul of the safe harbor provision should be rejected.[8]

---

[8] We are puzzled by the plaintiffs' insistence that we should have filed their letter for them, even though it required redactions. (Plaintiffs' Response at 1.) The Stipulated Protective Order, dated January 26, 2016 (the "Protective Order") clearly states that "[a]ny Discovery Material designated "Confidential" or "Attorneys' Eyes Only" submitted to the Court (including documents or materials containing information therefrom) . . . shall be filed under seal." (Protective Order ¶ 18; Dkt. 178.) The Plaintiffs' Letter quotes directly from two documents designated as "Confidential." (Plaintiffs' Letter at 4, 7). The

10

**CONCLUSION**

For the foregoing reasons, this Court should order Edelson to remove from the complaint all allegations that it was impossible for Mt. Gox users to make withdrawals from their Mt. Gox accounts (as reflected in Exhibit B to the Declaration of Michael Grunfeld).[9]

MIZUHO BANK, LTD.

By: /s/ Jason A. Frye
One of Its Attorneys

Jonathan S. Quinn (#6200495)
jquinn@ngelaw.com
Jason A. Frye (#6292848)
jfrye@ngelaw.com
NEAL, GERBER & EISENBERG LLP
Two North LaSalle Street
Chicago, IL 60602-3801
(312) 269-8000

Jerome S. Fortinsky (admitted pro hac vice)
jfortinsky@shearman.com
John A. Nathanson (admitted pro hac vice)
john.nathanson@shearman.com
Jeffrey J. Resetarits (admitted pro hac vice)
jeffrey.resetarits@shearman.com
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
(212) 848-4000

Dated: July 20, 2017

---

Plaintiffs' Response then attaches those two documents as Exhibit C. (Dkt. 277-3). It is out of the ordinary for one party to submit its adversary's papers; it is downright odd for the adversary to insist that the first party had some kind of obligation to do so, particularly where doing so would have required determinations as to what needed to be redacted or filed under seal.

[9] On May 14, 2015, Mizuho moved to dismiss this case for lack of personal jurisdiction. (Dkt. 148.) On March 14, 2016, the Court denied Mizuho's motion. (Dkt. 199.) Mizuho continues to contest this Court's personal jurisdiction over it in this litigation.

## **CERTIFICATE OF SERVICE**

I, Jason A. Frye, an attorney, hereby certify that I caused a true and correct copy of **Defendant Mizuho Bank, Ltd.'s Reply Memorandum of Law in Further Support of Motion For Sanctions Under Rule 11** to be served upon all counsel of record using the Court's CM/ECF electronic filing system on the 20th day of July, 2017.

       /s/ Jason A. Frye