**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE individually and on behalf of all others similarly situated, <br><br> *Plaintiffs*, <br><br> v. <br><br> MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, <br><br> *Defendants*. | Case No. 1:14-cv-01437 <br><br> Hon. Gary Feinerman <br><br> Magistrate Judge Susan Cox |

**OPPOSITION TO MOTION FOR PARTIAL RECONSIDERATION**

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................1

I.    **Mizuho has waived the argument it presses here**................................................3

II.   **Because Mizuho is properly before this Court on Motto's claims, the Court has
      authority to resolve Lack's and Pearce's claims, as well**................................4

      A.    ***Phillips Petroleum***.................................................................................5

      B.    **Pendent personal jurisdiction** ........................................................11

CONCLUSION ......................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Adam v. Saenger*,
  303 U.S. 59 (1967)....................................................................................9

*Adelson v. Ocwen Fin. Corp.*,
  621 F. App'x 348 (7th Cir. 2015) .......................................................4

*Am. Pipe & Const. Co. v. Utah*,
  414 U.S. 538 (1974)..............................................................................10

*Apostolou v. Mann Bracken, LLC*,
  2009 WL 1312927 (D.N.J. May 1, 2009) .........................................12

*Bally Export Corp. v. Balicar, Ltd.*,
  804 F.2d 398 (7th Cir. 1986) ...............................................................4

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  137 S. Ct. 1773 (2017).................................................................. *passim*

*Broomfield v. Craft Brew Alliance, Inc.*,
  2017 WL 3838453 (N.D. Cal. Sept. 1, 2017) ..................................11

*Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*,
  90 F.3d 1264 (7th Cir. 1996) ...............................................................4

*Citizens Cmty. Federal v. Silver, Freedman & Taff LLP*,
  2014 WL 345261 (W.D. Wis. Jan. 30, 2014) ..................................15

*CollegeSource, Inc. v. AcademyOne, Inc.*,
  653 F.3d 1066 (9th Cir. 2011) .............................................................13

*Demaria v. Nissan N. Am., Inc.*,
  2016 WL 347145 (N.D. Ill. Feb. 1, 2016)................................10, 11

*Demedicis v. CVS Health Corp.*,
  2017 WL 569157 (N.D. Ill. Feb. 13, 2017)..............................10, 11

*Executone of Columbus, Inc. v. Inter-Tel, Inc.*,
  2006 WL 3043115 (S.D. Ohio Oct. 4, 2006) ....................................4

*Garbie v. DaimlerChrysler Corp.*,
  211 F.3d 407 (7th Cir. 2000) ..............................................................11

*Gen. Elec. Capital Corp. v. Mackilla, LLC*,
    2016 WL 1509529 (S.D. Tex. Mar. 17, 2016) .................................................................13

*Glidden v. Chromalloy Am. Corp.*,
    808 F.2d 621 (7th Cir. 1986) .........................................................................................10

*Hansberry v. Lee*,
    311 U.S. 32 (1940) ...........................................................................................................6

*Hargrave v. Oki Nursery, Inc.*,
    646 F.2d 716 (2d Cir. 1980) ................................................................................12, 13, 14

*Hill v. Eli, Lilly & Co.*,
    2015 WL 5714647 (S.D. Ind. Sept. 29, 2015) ..........................................................8, 14

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 145 (2d Cir. 1987) ...........................................................................................14

*In re Mexico Money Transfer Litig.*,
    267 F.3d 743 (7th Cir. 2001) ............................................................................................7

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    335 F. Supp. 2d 126 (D. Me. 2004) ................................................................................12

*In re Real Estate Title & Settlement Servs. Antitrust Litig.*,
    869 F.2d 760 (3d Cir. 1989) .........................................................................................7, 9

*Int'l Med. Grp. v. Am. Arb. Ass'n, Inc.*,
    312 F.3d 833 (7th Cir. 2002) ..........................................................................................12

*Jackson v. N'Genuity Enters. Co.*,
    2010 WL 3025015 (N.D. Ill. Aug. 2, 2010) ...................................................................13

*Judge v. First Nat'l Bank of Williamson*,
    259 F. Supp. 2d 586 (E.D. Ky. 2003) .............................................................................13

*Keeton v. Hustler Magazine, Inc.*,
    465 U.S. 770 (1984) ........................................................................................................14

*Long v. Parry*,
    921 F. Supp. 2d 269 (D. Vt. 2013) .................................................................................13

*Martin v. C.D. Gray, Inc.*,
    110 F.R.D. 398 (N.D. Ill. 1986) .....................................................................................14

*MaxLite, Inc. v. ATG Elec., Inc.*,
    193 F. Supp. 3d 371 (D.N.J. 2016) ...................................................................12

*MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*,
    2017 WL 3070848 (N.D. Ill. July 19, 2017) .......................................................4

*Miner v. Gillette Co.*,
    411 N.E.2d 1092 (Ill. App. Ct. 1980) ..................................................................7

*Miner v. Gillette Co.*,
    428 N.E.2d 478 (Ill. 1981) ...............................................................................6, 7

*Morrison v. YTB Int'l, Inc.*,
    649 F.3d 533 (7th Cir. 2011) ...........................................................................7, 11

*Pabst Brewing Co., Inc. v. Carrao*,
    161 F.3d 434 (7th Cir. 1998) ................................................................................9

*Phillps Exeter Acad. v. Howard Phillips Fund*,
    196 F.3d 284 (1st Cir. 1999) ................................................................................4

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ................................................................................... *passim*

*Rice v. Nova Biomedical Corp.*,
    763 F. Supp. 961 (N.D. Ill. 1991) ..................................................................12, 13

*Robinson Eng'g Co Pension Plan & Trust v. George*,
    223 F.3d 445 (7th Cir. 2000) ...........................................................................2, 12

*Sawyer v. Atlas Heating & Metal Works*,
    642 F.3d 560 (7th Cir. 2011) ................................................................................9

*Seiferth v. Helicopteros Atuneros, Inc.*,
    472 F.3d 266 (5th Cir. 2006) ................................................................................4

*Shutts v. Phillips Petroleum Co.*,
    567 P.2d 1292 (Kan. 1977) ..................................................................................6

*Simon v. Philip Morris, Inc.*,
    86 F. Supp. 2d 95 (E.D.N.Y. 2000) ...........................................................8, 12, 14

*Stewart v. Dunham*,
    115 U.S. 61 (1885) ..............................................................................................14

*Stromberg Metal Works, Inc. v. Press Mechancial, Inc.*,
  77 F.3d 928 (7th Cir. 1996) ............................................................12

*Supreme Tribe of Ben Hur v. Cauble*,
  255 U.S. 356 (1921) .................................................................9, 10

*Trans States Airlines v. Pratt & Whitney Canada, Inc.*,
  86 F.3d 725 (7th Cir. 1996) ..............................................................3

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966) .........................................................................2

*United States v. Botefuhr*,
  309 F.3d 1263 (10th Cir. 2002) .........................................................2

*Williams v. Gen. Elec. Capital Auto Lease, Inc.*,
  159 F.3d 266 (7th Cir. 1998) ........................................................8, 10

*Wilson v. DeLuca*,
  2014 WL 991862 (N.D.N.Y. Mar. 13, 2014) ....................................15

**Statutes and Rules**

28 U.S.C. § 1367 ........................................................................12

Fed. R. Civ. P. 12 ..............................................................*passim*

Fed. R. Civ. P. 23 ..............................................................*passim*

**Secondary Sources**

Diane P. Wood, *Adjudicatory Jurisdiction and Class Actions*,
  62 Ind. L.J. 597 (1987) .................................................................8

Note, *Multistate Class Actions: Jurisdiction & Certification*,
  92 Harv. L. Rev. 718 (1979) ..........................................................6

Note, *Personal Jurisdiction and Multistate Class Actions: The Impact of* World-Wide
  Volkswagen Co. v. Woodson, 32 Drake L. Rev. 441 (1982) ................9

## INTRODUCTION

Earlier in this litigation, Defendant Mizuho Bank Ltd. moved to dismiss the claims against it on the ground that no claim authorized this Court to exercise personal jurisdiction over it. (Dkt. 149.) Mizuho did not argue that personal jurisdiction should be analyzed plaintiff-by-plaintiff, such that the Court might be able to exercise specific personal jurisdiction over Mizuho with respect to only some plaintiffs' claims. (*See* Dkt. 149, at 6-10.) In fact, Mizuho's argument assumed that jurisdiction to resolve all claims against it would be proper if Gregory Greene could hale Mizuho into Illinois court. (*See* Dkt. 149, at 7-9.)

This Court ultimately declined to dismiss the litigation on the condition that a member of the putative Deposit Subclass with Illinois citizenship step forward to represent that Subclass. (Dkt. 200.) The Deposit Subclass alleges to have been defrauded by Mizuho, and a Subclass Representative from Illinois would empower this Court with the authority it needed to adjudicate the Subclass's claims. Anthony Motto, an Illinois resident, joined the lawsuit shortly thereafter. The Court also declined to dismiss any other claims arising out of the same nucleus of operative fact as the Deposit Subclass's fraud claims. (Dkts. 200, 206.)

Mizuho now seeks partial reconsideration, arguing that the decision in *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017), constitutes an intervening change in law that requires the Court to rethink its earlier approach to personal jurisdiction with respect to the claims of Joseph Lack and Gregory Pearce, two plaintiffs who seek to represent subclasses with claims against Mizuho. *Bristol-Myers*, Mizuho contends, requires the Court to assess personal jurisdiction on a plaintiff-by-plaintiff basis. (Dkt. 283.) But *Bristol-Myers* is not so limiting, and the Court should reject Mizuho's argument for at least two reasons.

First, Mizuho's citation to *Bristol-Myers* is a transparent attempt to avoid the

1

consequences of its earlier decision not to ask the Court to assess personal jurisdiction plaintiff-by-plaintiff. Notwithstanding the fact that *Bristol-Myers* does not address any issues related to class actions and purports to apply settled principles of personal jurisdiction, there existed ample authority supporting the proposition that Mizuho now advances at the time it moved to dismiss under Fed. R. Civ. P. 12(b)(2). That Mizuho failed to comprehensively survey the law is not grounds for reconsideration.

Second, Mizuho fails to demonstrate that *Bristol-Myers* changes the law in any way that undermines the Court's previous order. As it relates to Lack, Mizuho's motion fails to grapple with *Phillips Petroleum v. Shutts*, which permits the exercise of personal jurisdiction in order to resolve the claims of out-of-state class members. 472 U.S. 797 (1985). Mizuho's argument requires limiting *Phillips Petroleum*, but Mizuho provides no reason or authority to do so.

And *Phillips Petroleum* to one side, the Court's earlier decision builds on a solid foundation: "Every circuit court of appeals to consider the question" has concluded that when a particular claim gives a federal district court authority to exercise jurisdiction over a defendant, that authority also renders the court competent to resolve any other claims arising out of the same nucleus of operative fact. *United States v. Botefuhr*, 309 F.3d 1263, 1272 (10th Cir. 2002); *see Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000). In other words, the court is competent to resolve all other claims within the same "constitutional case." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). *Bristol-Myers* did not deal with the exercise of this authority, and leaves decisions approving of this authority untouched.

Mizuho's Motion for Partial Reconsideration misconstrues the Court's previous decision in order to ignore this adverse authority and force the Court's previous decision within the ambit of *Bristol-Myers*. In that case, the Court, applying "settled principles regarding personal

2

jurisdiction," 137 S. Ct. at 1783, concluded that the presence of a products-liability suit in California state court involving a California resident could not justify the exercise of jurisdiction over a factually similar products-liability suit brought by an out-of-state plaintiff, *id.* at 1783-84. The decision is neither remarkable nor ground-breaking, and, more importantly, does not even purport to touch on several personal-jurisdiction issues pertinent to this case.

Indeed, the jurisdiction exercised by the Court here is nothing like the claim of jurisdiction rejected by *Bristol-Myers*. Courts consistently have concluded that products-liability claims, even if factually similar, do not form a single constitutional case, but claims like those alleged here by Motto, Lack, and Pearce, which all challenge the same course of conduct, certainly *do* comprise a single constitutional case. Mizuho's surface-level reading of both *Bristol-Myers* and the Court's earlier orders simply misses the point. In the end, because Mizuho concedes that it can be haled into this Court on account of Motto's claims, the Court can therefore resolve the claims of Lack and Pearce arising out of the same nucleus of operative fact. The Motion for Partial Reconsideration should be denied.

I.    **Mizuho has waived the argument it presses here.**

Because no judgment has been entered in this lawsuit, Mizuho's motion necessarily seeks "to alter the law of the case." *Trans States Airlines v. Pratt & Whitney Canada, Inc.*, 86 F.3d 725, 728 (7th Cir. 1996). It appears that Mizuho believes *Bristol-Myers* renders inappropriate the Court's earlier focus on whether the claims of any plaintiff provided the Court with authority over Mizuho, and instead compels a plaintiff-by-plaintiff analysis. As discussed below, Mizuho overreads *Bristol-Myers*, and the merits of its new jurisdictional argument are flawed.

But an initial problem with the motion is that Mizuho now advances a theory of personal jurisdiction that was absent from its initial submissions. Mizuho's original Rule 12(b)(2) motion

sought to dismiss the action in its entirety, declined to address the then-extant plaintiffs

separately, and even assumed that the case could proceed in this Court if the Court otherwise

could exercise personal jurisdiction for the purposes of resolving Greene's claim. But authority

for the proposition Mizuho now seeks to press predated Mizuho's original motion to dismiss. *See*

*Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 n.6 (5th Cir. 2006); *Philips Exeter*

*Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999); *Executone of Columbus, Inc.*

*v. Inter-Tel, Inc.*, 2006 WL 3043115, at *6 (S.D. Ohio Oct. 4, 2006). While Plaintiffs find these

cases unavailing for the reasons stated below, they nevertheless were available to Mizuho when

it first moved to dismiss under Rule 12(b)(2). "Reconsideration is not an appropriate forum for ...

arguing matters that could have been heard during the pendency of the previous motion." *Caisse*

*Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). The

Seventh Circuit has held that theories regarding personal jurisdiction advanced for the first time

on a motion for reconsideration are waived. *See Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d

398, 404 (7th Cir. 1986). The Court should deny Mizuho's motion on this basis alone.[1]

## II.     Because Mizuho is properly before this Court on Motto's claims, the Court has authority to resolve Lack's and Pearce's claims, as well.

In addition to its procedural infirmities, Mizuho's reconsideration motion is premised on

a flawed interpretation of the Court's previous order. In its motion, Mizuho asserts that "this

Court held that it had specific personal jurisdiction [over] nonresident plaintiff Joseph Lack's

---

[1]     *MG Design Assocs., Corp. v. CoStar Realty Info., Inc.*, 2017 WL 3070848 (N.D. Ill. July 19, 2017), does not counsel in favor of setting aside the ordinary rules regarding reconsiderations motions. First, Mizuho explicitly argues for treating its motion as one to reconsider; not only has it therefore waived any argument for a different standard, but the Seventh Circuit has observed that it is best to take movants at their word. *See Adelson v. Ocwen Fin. Corp.*, 621 F. App'x 348, 351 (7th Cir. 2015) (treating motion filed under Fed. R. Civ. P. 60(b) as a Rule 60(b) motion even though there was reason to doubt that was the correct form). Second, the amended complaint here contains no new allegations that would alter Mizuho's personal-jurisdiction argument, by contrast to the amended pleading in *MG Design. See* 2017 WL 3070848, at *5.

claims against Mizuho, a nonresident defendant, because an Illinois resident (Anthony Motto) was asserting the same claims." (Dkt. 283 at 4.) But Mizuho's retelling is incomplete in crucial respects. For instance, in the March 14, 2016, order to which Mizuho points, the Court held that Lack's claim did not give the Court jurisdiction over Mizuho. A later order confirmed that Motto's claims gave the Court personal jurisdiction over Mizuho for the purposes of resolving the claims of the "Deposit Subclass." (Dkt. 206.) The Court also implicitly concluded that other intentional tort theories premised upon the same facts as the fraud claim could proceed as well.

As explained below, Mizuho's motion thus runs headlong into two obstacles, neither of which is addressed in its motion: (1) *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), which holds that a trial court can resolve the claims of out-of-state class members, and (2) the doctrine of pendent personal jurisdiction, which recognizes that once a federal court can exercise personal jurisdiction with respect to a given claim, it can resolve all claims deriving from the same nucleus of operative fact. Mizuho ignores this authority so that it can force the Court's previous order under *Bristol-Myers*'s umbrella. But that characterization is off base. Instead, the Court's order hews to well-established authority that is undisturbed by *Bristol-Myers*.

### A. *Phillips Petroleum.*

In *Phillips Petroleum Co. v. Shutts*, an Oklahoma defendant, though conceding that the Kansas court could exercise jurisdiction over it in order to resolve the claims of the named plaintiff and other members of the class from Kansas, challenged the authority of a Kansas state court to exercise personal jurisdiction in order to resolve the claims of out-of-state class members who had not affirmatively consented to jurisdiction in Kansas. 472 U.S. 797, 806 (1985). The trial court rejected the defendant's argument that the claims of out-of-state class members should be dismissed because the jurisdiction exercised by virtue of the class representative's claim could

not authorize the Court to exercise jurisdiction over of the claims of out-of-state class members against the defendant, and the Kansas Supreme Court affirmed. *Shutts v. Phillips Petroleum Co.*, 567 P.2d 1292, 1308 (Kan. 1977). The Supreme Court agreed with the Kansas courts, concluding that so long as the class was adequately represented and class members were provided with the opportunity to opt out, due process was not offended. 472 U.S. at 808-14. The Court relied on *Hansberry v. Lee*, 311 U.S. 32 (1940), the last in a line of "common fund" cases that approved of jurisdiction within a single state over all parties to a litigation (regardless of domicile) for the purposes of resolving claims related to a common fund. *See id.* at 40-41 (discussed in *Phillips Petroleum* at page 808). By extending the common-fund cases to the spurious class-action context, the Court held that the contacts created by the named plaintiff's claims sufficed to authorize jurisdiction over the claims of every class member. *See* Note, *Multistate Plaintiff Class Actions: Jurisdiction & Certification*, 92 Harv. L. Rev. 718, 729 (1979) ("While 'minimum contacts' are required for jurisdiction over defendants [and supplied by the named plaintiff's claim], procedural due process is sufficient for jurisdiction over plaintiff classes.").

The questions presented in *Phillips Petroleum* (the Court went on to hold that due process might require the application of home-state law to each class member's claim) had been percolating in the courts for years, and the Court had taken an appeal from Illinois just three years earlier in an ultimately aborted attempt to resolve the issues. *See Miner v. Gillette Co.*, 428 N.E.2d 478 (Ill. 1981), *cert. dismissed* 459 U.S. 86 (1982). In *Miner*, the Illinois Supreme Court had reversed the decision of the trial court granting the defendant's motion to dismiss the claims of out-of-state absent class members in a proposed, and later certified, nationwide class on personal-jurisdiction grounds. The Supreme Court held that these decisions understood personal jurisdiction correctly, but clarified that due process also required the application of home-state

law, which made certification more difficult but still preserved the availability of nationwide

class actions. *See generally* 472 U.S. 797; *Miner v. Gillette Co.*, 411 N.E.2d 1092, 1096 (Ill.

App. Ct. 1980), *rev'd* 428 N.E.2d 478 (1981) (holding that nationwide certification was improper

because under the facts of the case a class-action under the laws of 50 states failed to meet the

requirements for certification). Thus, state and federal courts may adjudicate claims alleged on

behalf of multistate classes, *see In re Mexico Money Transfer Litig.*, 267 F.3d 743, 746 (7th Cir.

2001) (noting federal authority to entertain multistate class actions), and the principal hurdle to

multistate adjudication is satisfying the requirements of Rule 23, not personal jurisdiction. *See*

*Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011); *In re Real Estate Title &*

*Settlement Servs. Antitrust Litig.*, 869 F.2d 760, 766 (3d Cir. 1989) ("The procedural protections

of Fed. R. Civ. P. 23 replace the rigid rules of personal jurisdiction in this context.").

 The first question presented by Mizuho's motion, then, is whether *Bristol-Myers* permits

an out-of-state class member alleging to share a common interest with an in-state class

representative to proceed in that forum as a named plaintiff, or whether he is limited to recovery

as an absent class member on the condition that the in-state plaintiff ultimately demonstrate that

the proposed class meets the requirements of Rule 23.

 For present purposes, the dispositive point is that *Bristol-Myers* wasn't a class action,

under Rule 23 or its California equivalent, and so is silent on this issue, dooming Mizuho's

motion with respect to Lack. The presence or absence of class allegations is the key difference

between *Bristol-Myers*, *Shutts*, and *Miner*, and explains the disparate outcomes in nearly

identical motions to dismiss the claims of out-of-state plaintiffs. The plaintiffs in *Bristol-Myers*

proposed a mass action for efficiency's sake, but the products-liability claims at issue are

understood to arise from different nuclei of operative fact and the 678 plaintiffs lacked the

common interest that is the touchstone of a class action. *See Hill v. Eli, Lilly & Co.*, 2015 WL
5714647, at *7 (S.D. Ind. Sept. 29, 2015) (observing that courts have consistently refused "to
treat products liability claims [like those alleged in *Bristol-Myers*] as arising from the same
transaction or occurrence merely because they relate to the same medicine or medical device").
Because the plaintiffs in *Bristol-Myers* didn't propose a class action, the claims of the non-
California plaintiffs sought to bring an out-of-state plaintiff and an out-of-state defendant into a
forum with no connection to either party or the claim. But in representative litigation, the named
plaintiff brings the defendant into the forum, and the other class members follow the
representative's lead. *See Phillips Petroleum*, 472 U.S. at 809; *Williams v. Gen. Elec. Capital
Auto Lease, Inc.*, 159 F.3d 266, 269 (7th Cir. 1998) (holding that named class representatives
may make jurisdictional decisions). As Chief Judge Wood has put it, "if a small-stakes money
damage class action is properly treated as a pure representational action, which the theory of
public law litigation suggests it is, then the contacts supporting the individual's claim against the
defendants should support the entire class's claims." *Adjudicatory Jurisdiction and Class
Actions*, 62 Ind. L.J. 597, 616 (1987); *see Simon v. Philip Morris, Inc.*, 86 F. Supp. 2d 95, 124
(E.D.N.Y. 2000) (permitting out-of-state class members to "rely on the factual and jurisdictional
links of proposed class members who were injured" in New York). This distinction alone dooms
Mizuho's motion with respect to Lack.[2]

     Moreover, the merits of Mizuho's argument can't be squared with *Phillips Petroleum*.
Mizuho concedes that the Court can exercise personal jurisdiction over it to resolve the claims of

---

[2]     *Bristol-Myers* distinguished *Phillips Petroleum* on the ground that the latter case involved
the due-process rights of plaintiffs. 137 S. Ct. at 1783. Because the plaintiffs in *Bristol-Myers*
had consented to the forum's jurisdiction and there was no prospect of certification, that sufficed
to distinguish *Phillips Petroleum* in that instance. But because the full lesson of *Phillips
Petroleum* is that the jurisdictional contacts of the named plaintiff also authorize a court to
resolve the claims of properly represented absent class members, it remains relevant here.

one Deposit Subclass representative, but contends that the Court cannot exercise jurisdiction over it to resolve the claims of an alleged class member from a different state. But, according to *Phillips Petroleum*, the Court *can* exercise jurisdiction over Mizuho in order to determine who may be represented by the plaintiff(s) who can properly hale Mizuho into this forum, and to resolve the claims of anyone in that class. *Cf. Supreme Tribe of Ben Hur v. Cauble*, 255 U.S. 356, 367 (1921); *In re Real Estate Title*, 869 F.2d at 766.

At bottom, then, Mizuho's contention as it relates to Lack is either that (1) *Phillips Petroleum* is no longer good law, or (2) *Bristol-Myers* limits the holding of *Phillips Petroleum* to absent class members, and different rules apply once an absent class member steps forward to attempt to represent a class. But *Bristol-Myers* does not purport to overrule *Phillips Petroleum*, and there is no reason to anticipate that the Court will do so. And a rule limiting *Phillips Petroleum* to absent class members is inconsistent with the settled proposition that "nonresident class members may always intervene and consent to the court's *in personam* jurisdiction." Note, *Personal Jurisdiction and Multistate Class Actions: The Impact of* World-Wide Volkswagen Co. v. Woodson, 32 Drake L. Rev. 441, 451 (1982) (reasoning that multistate class actions should be permissible on this basis); *see Adam v. Saenger*, 303 U.S. 59, 67 (1938). And for these purposes it is immaterial that a class hasn't been certified. Lack would be entitled to rely on the existence of the lawsuit to protect his rights, *Sawyer v. Atlas Heating & Metal Works*, 642 F.3d 560, 562 (7th Cir. 2011), and the only party with something to lose if Lack joins the lawsuit is Lack himself, who may now be bound to a judgment regardless whether a class is certified, *Pabst Brewing Co., Inc. v. Carrao*, 161 F.3d 434, 439 (7th Cir. 1998). And from Mizuho's point of view the filing of a class-action complaint "notifies the defendants ... [of] the generic identities of the potential plaintiffs who may participate in the judgment" and that "the filing of a timely class

9

action complaint commences the action for all members of the class *as subsequently determined.*" *Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 550, 555 (1974) (emphasis added). It draws a bizarre line to suggest that Lack's explicit choice to participate in an action that already has in some sense "commence[d]" as to him somehow prevents him from actively participating in that same action. *Cf. Glidden v. Chromalloy Am. Corp.*, 808 F.2d 621, 626 (7th Cir. 1986) ("The Supreme Court has treated actions filed as class suits as having class properties in advance of certification."). Indeed, that line can't be reconciled with *Phillips Petroleum*: If the Court can exercise personal jurisdiction over absent class members without their affirmative consent, surely it can exercise personal jurisdiction over class members who *do* provide affirmative consent. *See Williams*, 159 F.3d at 269 (recognizing that absent class member who wishes to help direct the litigation must join as a named plaintiff); *cf. Supreme Tribe of Ben Hur*, 255 U.S. at 366 (intervention of absent class members "would not have defeated the jurisdiction already acquired" by the trial court).

*Phillips Petroleum* notwithstanding, a handful of district court cases do dismiss, on personal-jurisdiction grounds, out-of-state state-law claims purported to be litigated on behalf of absent class members on the ground that the in-state named plaintiff's claim cannot establish personal jurisdiction over the defendant with respect to those claims. *See, e.g.*, *Demedicis v. CVS Health Corp.*, 2017 WL 569157, at *4-*5 (N.D. Ill. Feb. 13, 2017); *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *8 (N.D. Ill. Feb. 1, 2016). Somewhat inexplicably, however, these cases do not even attempt to distinguish *Phillips Petroleum*. In *Demedicis*, for instance, an Illinois plaintiff alleged a state-law consumer fraud claim, and noted in his complaint his intention to represent a class of plaintiffs from several states with, he believed, consumer fraud laws similar enough to render class treatment appropriate. *See* 2017 WL 569157, at *3. The court

dismissed those counts, reasoning that it has "no jurisdiction over claims based on out-of-state consumer fraud laws." *Id.* at *4. Yet the Court in *Phillips Petroleum*, after concluding that the Kansas court *could* exercise personal jurisdiction over out-of-state class members, went on to conclude that the Kansas Supreme Court had not appropriately analyzed whether Kansas law, as opposed to the law of the state of the individual absent class members, could govern the claims of each class member. *See* 472 U.S. at 814-23. Insofar as the court in *Demedicis* thought the presence of other state-law claims was a problem, it was an issue for class certification, not a motion to dismiss. *See Morrison*, 649 F.3d at 536; *Garbie v. DaimlerChrysler Corp.*, 211 F.3d 407, 410 (7th Cir. 2000) ("No rule of law bars a class action that includes representatives from other states.") (citing *Phillips Petroleum*). *Demedicis'* failure to grapple with these principles robs it of persuasive value. (*Demaria* (which predates the Court's earlier order and thus wouldn't provide a basis for reconsideration anyway) suffers the same defect.)

Particularly insofar as it relates to Lack, Mizuho's motion presents a choice-of-law or manageability argument cloaked in the garb of personal jurisdiction. In truth Mizuho's arguments are more properly directed to the propriety of certifying a multi-state class. *Cf. Broomfield v. Craft Brew Alliance, Inc.*, 2017 WL 3838453, *15 (N.D. Cal. Sept. 1, 2017) (deferring, until class certification, briefing on personal jurisdiction over defendant for the purposes of resolving the claims of out-of-state class members). More immediately, though, *Phillips Petroleum*'s continuing vitality shows that the law hasn't changed in any way that would warrant reconsidering the law of the case as it relates to Lack and the Deposit Subclass.

### B. Pendent personal jurisdiction.

The Court's earlier order also may easily be sustained in its entirety under the doctrine of pendent personal jurisdiction. Under that doctrine, "a court may exercise its discretion to hear

claims as to which personal jurisdiction may otherwise be lacking if those claims arise out of a common nucleus of facts with claims as to which personal jurisdiction exists." *Rice v. Nova Biomedical Corp.*, 763 F. Supp. 961, 966 (N.D. Ill. 1991), *aff'd* 38 F.3d 909 (7th Cir. 1994); *see also, e.g.*, *MaxLite, Inc .v. ATG Elec., Inc.*, 193 F. Supp. 3d 371, 390 (D.N.J. 2016). As the cases recognize, specific personal jurisdiction provides a court with "jurisdiction over the person for a *case* arising from" that party's forum contacts. *See Int'l Med. Grp. LLC v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 846 (7th Cir. 2002) (emphasis added).

The Seventh Circuit has approved the exercise of pendent personal jurisdiction along the same lines as the authority granted by 28 U.S.C. § 1367. *See Robinson Eng'g Co. Pension Plan & Trust v. George*, 223 F.3d 445, 449-50 (7th Cir. 2000); *see also Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719-20 (2d Cir. 1980). And it is well-settled that "§ 1367(b) does not block adding an additional plaintiff with a closely related claim against the defendants who are already in the federal forum." *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 932 (7th Cir. 1996). By the same logic, courts may exercise personal jurisdiction over defendants to adjudicate the claims of out-of-state plaintiffs so long as they arise out of the same nucleus of operative fact as the claim that permits the exercise of personal jurisdiction in the first place. Indeed, courts applying the doctrine have exercised authority both over claims that would, on their own, be jurisdictionally insufficient, as in *Robinson*, 223 F.3d at 450, and over parties who could not independently bring suit in the particular forum. *See, e.g.*, *Apostolou v. Mann Bracken, LLC*, 2009 WL 1312927, at *3, *7 (D.N.J. May 1, 2009) (exercising personal jurisdiction over claims of out-of-state plaintiffs because they arose out of the same nucleus of operative fact as claims of in-state plaintiff); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 335 F. Supp. 2d 126, 128-30 (D. Me. 2004); *Simon*, 86 F. Supp. 2d at 134 ("New Yorkers and other

12

Americans should not be forced to sue some defendants in the United States and then sue others in England, repeating the same evidence and theories at great expense and inconvenience.").

The Court's previous order is consistent with this authority. The claims of Lack and Motto seek to determine Mizuho's liability for the same alleged fraud. And as the Court noted in its order denying Mizuho's motion to dismiss under Rule 12(b)(6), the tort that underlies the extant claims for tortious interference is that same fraud. *See* 206 F. Supp. 3d 1362, 1373 (N.D. Ill. 2016). Indeed, the claims of Lack, Motto, and Pearce all seek to determine Mizuho's liability related to the same basic set of facts, a situation canonically appropriate for the exercise of pendent personal jurisdiction. *See Hargrave*, 646 F.2d at 719-21 (concluding that the district court had authority to adjudicate "as applicable to the same basic facts various legal theories in addition to the fraud theory on which service was based").[3]

*Hargrave* also notes that a contrary rule likely would make little sense in terms of judicial administration. *See* 646 F.2d at 720-21. In *Hargrave* the plaintiffs could have commenced their non-fraud claims in California federal court and then sought to consolidate them in New York. Since that result was permissible, it was unduly formalistic, the court thought, to prevent the plaintiffs from simply suing in New York in the first place. *Id.* The same concerns are present for

---

[3]     Some decisions purport to limit this authority to suits in which the anchoring claim contains a nationwide service provision. But Judge Aspen has observed that the reasoning behind the exercise of pendent personal jurisdiction "applies with equal, or perhaps even greater, force" in the diversity context. *Rice*, 763 F. Supp. at 966. And several decisions, like *Hargrave*, apply the doctrine in diversity cases, or cases otherwise governed by state long-arm statutes. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1080 (9th Cir. 2011) (approving exercise of pendent personal jurisdiction over claims governed by California's long-arm statute); *Gen. Elec. Capital Corp. v. Mackzilla, LLC*, 2016 WL 1059529, at *6-*7 (S.D. Tex. Mar. 17, 2016) (explicitly agreeing with *Rice* and exercising pendent personal jurisdiction in a diversity case because "all of the claims clearly relate to the same course of dealing"); *Long v. Parry*, 921 F. Supp. 2d 269, 274 (D. Vt. 2013) (applying the doctrine in a diversity case); *Jackson v. N'Genuity Enters. Co.*, 2010 WL 3025015, at *6 (N.D. Ill. Aug. 2, 2010) (same); *Judge v. First Nat'l Bank of Williamson*, 259 F. Supp. 2d 586, 596-97 (E.D. Ky. 2003) (applying doctrine in case in which Kentucky's long-arm statute controlled).

the Deposit Subclass. Mizuho's logic would allow for 50 claims to be brought in federal courts scattered throughout the country, which could then be consolidated in Illinois. Since that end result is permissible, *see In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 145, 163 (2d Cir. 1987), due process should permit the claims to be litigated in a single forum, subject to Rule 23's strictures. *See, e.g.*, *Stewart v. Dunham*, 115 U.S. 61, 64 (1885) (rejecting argument that joinder of co-claimants was jurisdictionally impermissible on the ground that the co-claimants could seek to recover at the end of the suit in a proceeding before a special master and "the adoption of the alternative is, in substance, the same thing"); *Martin v. C.D. Gray, Inc.*, 110 F.R.D. 398, 401 (N.D. Ill. 1986) (noting the "federal courts' disinclination to elevate form over substance").

*Hargrave*'s focus on efficiency in adjudicating a multistate complaint aligns with the Supreme Court's decision in *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984). *Keeton* held that New Hampshire could exercise personal jurisdiction over defendant with respect to a multi-state libel claim in part because it would "provide a forum efficiently litigating all issues and damage claims arising out of a libel in a unitary proceeding." *Id.* at 777. So long, *Keeton* says, as part of the alleged damages were suffered in the forum state, the forum state's exercise of personal jurisdiction over a multistate claim may comport with due process.[4]

And, crucially for present purposes, this authority survives *Bristol-Myers*. As discussed above, the at-issue claims in *Bristol-Myers* arose from different nuclei of operative fact. *See Hill*,

---

[4]     *Bristol-Myers* distinguished *Keeton* on the ground that the non-California plaintiffs hadn't suffered any injury in California. 137 S. Ct. at 1782. Again, the class device matters. As discussed, the products-liability claims in *Bristol-Myers* did not form a single constitutional case, and so for personal-jurisdiction purposes had to be considered separately. Here, the single alleged course of fraud injured class members in several states, including Illinois, in the exact same way. If we take seriously the extension of common-fund principles to money-damages class actions, *see Phillips Petroleum*, 472 U.S. at 808, then by analogy *Keeton* provides extra support for resolving the Deposit Subclass's claims, *see Simon*, 86 F. Supp. 2d at 124, and *Hargrave* extends that analogy to the claims of the Withdrawal Subclass.

2015 WL 5714647, at *7. Thus, the out-of-state plaintiffs couldn't "append" their claims to the claims of California plaintiffs properly in California state court, and could rest only on the similarity of the claims. The Supreme Court, applying "settled principles regarding personal jurisdiction," rejected similarity as a basis for personal jurisdiction. 137 S. Ct. at 1783-84. The inapplicability of pendent personal jurisdiction means that *Bristol-Myers* could have nothing to say about it. Indeed, the *Bristol-Myers* plaintiffs would have needed the Court to *extend* the doctrine in order to prevail. The Supreme Court's refusal to do so in the context of a state-court, mass-tort action cannot be taken as a sign that federal courts cannot exercise pendent personal jurisdiction as it is presently understood (i.e., over the whole constitutional case). *Bristol-Myers* thus isn't an intervening *change* in the law sufficient to alter the law of the case and dismiss either Lack or Pearce.[5]

**CONCLUSION**

For the foregoing reasons, Mizuho's Motion for Partial Reconsideration should be denied.

---

[5]     Regardless, Mizuho has forfeited its personal jurisdiction defense against Pearce (who arguably isn't covered by the Court's earlier order) through its conduct in this litigation. Mizuho's motion comes at the tail end of fact discovery, after, for instance, Mizuho had taken Pearce's deposition, issued several document subpoenas to both the plaintiffs and third parties, after significant efforts were devoted to resolving discovery disputes without need for Court intervention, after Mizuho had sought sanctions against Plaintiffs' counsel on a matter related to the merits of Plaintiffs' claims, and after Pearce's counsel had begun the process of expert discovery and preparing for class-certification and summary-judgment motion practice. *See Citizens Cmty. Federal v. Silver, Freedman & Taff LLP*, 2014 WL 345261, at *4 (W.D. Wis. Jan. 30, 2014) (concluding that defendant waived personal-jurisdiction defense by waiting to reassert it by motion at the end of discovery because "Defendants did not need to obtain voluminous discovery to determine personal jurisdiction"); *Wilson v. DeLuca*, 2014 WL 991862, at *6 (N.D.N.Y. Mar. 13, 2014) (defense forfeited even if raised in responsive pleading due to participation in discovery of pro se prisoner retaliation claim).

Respectfully submitted,

**GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO,** and **GREGORY PEARCE** individually and on behalf of all others similarly situated,

Dated: September 20, 2017       By: /s/ Ben Thomassen           
                                   One of Plaintiffs' Attorneys

Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
J. Aaron Lawson*
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495
*admitted only in Illinois, supervised by members of the California Bar

Counsel for Plaintiffs and the Putative Classes

16

**CERTIFICATE OF SERVICE**

I, J. Aaron Lawson, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, and via electronic mail to Mark Karpeles, on September 20, 2017.


/s/ J. Aaron Lawson