IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE individually and on behalf of all others similarly situated,<br><br>    *Plaintiffs*,<br><br>v.<br><br>MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual,<br><br>    *Defendants*. | Case No. 1:14-cv-01437<br><br>Hon. Gary Feinerman<br><br>Magistrate Judge Susan Cox |

**PLAINTIFFS' RESPONSE TO MIZUHO BANK, LTD.'S SUPPLEMENT**

  At the recent October 17, 2017, status hearing, the Court invited supplemental briefing on two issues: (1) Whether any Seventh Circuit precedent foreclosed Defendant Mizuho Bank, Ltd. from pressing the theory of personal jurisdiction contained in its motion for partial reconsideration or whether the argument was otherwise available to Mizuho in 2015; and (2) what, if any, statute-of-limitations related prejudice Plaintiff Gregory Pearce and other members of the putative Withdrawal Class might suffer if Mizuho's apparent forfeiture were overlooked. Mizuho's supplemental brief (Dkt. 305) makes clear that (1) its new personal-jurisdiction argument was certainly available to it in 2015, as it was not foreclosed by any Seventh Circuit precedent and there existed precedent from other circuits supporting the argument, and (2) Gregory Pearce will be prejudiced and absent members of the putative Withdrawal Class are at substantial risk of prejudice if Mizuho's forfeiture is overlooked.

Regarding its new theory of personal jurisdiction, Mizuho identifies no Seventh Circuit authority rejecting or even expressing doubt about this theory. What's more, as Plaintiffs pointed out in the briefing on the motion to reconsider, decisions dating back more than a decade seem to support Mizuho's new theory. (Dkt. 291, at 4.) That alone establishes that the argument was available to Mizuho in 2015.

Mizuho implicitly concedes this, which is why it now asserts that its new theory was somehow raised by implication within its initial motion to dismiss. Not so. Mizuho initially asserted that it lacked the necessary minimum contacts with Illinois by virtue of any plaintiff's claim, but conceded that any suit-related contacts would allow the Court to adjudicate all contacts against it. (Dkt. 149, at 7-9.) Whether tactically or by oversight, Mizuho chose not to also argue, following cases such as *Seiferth v. Helicopteros Atuneros*, 472 F.3d 266 (5th Cir. 2006), that it might have minimum contacts for some aspects of the case but not others. Plaintiffs' opposition followed Mizuho's lead, focusing on whether *any* suit-related activity on Mizuho's part created minimum contacts with Illinois. (Dkt. 151, at 8-14.) The Court's order follows directly from that presentation of the case, identifying the ways in which Mizuho might have minimum contacts with Illinois, and declining to dismiss any part of the case once those contacts were established. (Dkt. 200, at 15-16, 18.) (And it is telling that Mizuho never points to *anything* in its previous briefing that it suggests raised this specific argument and yet was overlooked by the Court.)

Mizuho's new argument, that, regardless of whether some plaintiffs can hale Mizuho into Illinois, out-of-state plaintiffs cannot rely on those minimum contacts (unless they are absent class members), is fundamentally different. This is most apparent when viewed in light of Mizuho's current concession that it has sufficient suit-related contacts to allow the Court to

2

resolve Motto's claims, but not Pearce's or Lack's claims. Had Mizuho raised that argument previously, the briefing on its first motion to dismiss would have followed a very different path. But Mizuho instead chose to rely on different authority and a different theory of personal jurisdiction.

Because this argument was neither raised by implication in Mizuho's earlier motion nor foreclosed by pre-*Bristol-Myers* Seventh Circuit or Supreme Court authority, Mizuho's motion for partial reconsideration must be denied. Mizuho's repeated observation that no Seventh Circuit authority explicitly *approved* this argument before it moved to dismiss (e.g., Dkt. 292, at 6 n.4) is irrelevant. *See also Bennett v. City of Holyoke*, 362 F.3d 1, 6-7 (1st Cir. 2004) (assertion of defense in particular way did not preserve defense as a general matter, and "the absence of precedent directly on point does not excuse" that forfeiture). As this Court's questions at the status hearing made clear, the right question to ask is whether the argument was *available*. *See, e.g.*, *Bally Export Corp. v. Balicar Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("A motion for reconsideration is an improper vehicle to … tender new legal theories."); *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 796 (N.D. Ill. 2007) ("Reconsideration … is an inappropriate vehicle for asserting arguments that were not made by a party to which the arguments were then available."). As stated above, there can be no serious dispute that the argument Mizuho now presses was available in 2015. As Plaintiffs pointed out, though they disagree with it, authority for this argument in fact existed well before 2015. (Dkt. 291, at 3-4.) Indeed, other litigants *were* making the argument Mizuho now makes. Bristol-Myers itself, for instance, prevailed on a similar argument in Cook County Circuit Court in 2014. *See In re Plavix Related Cases*, No. 2012 L 5688, 2014 WL 3928240 (Cir. Ct. Cook Cnty. Aug. 11, 2014); *see also* Motion to Dismiss and Motion to Sever, *Dysart v. Johnson & Johnson, Inc.*, No. 1522-

CC00167 (Cir. Ct. City of St. Louis filed Apr. 24, 2015) (Johnson & Johnson making the same argument asserted by Bristol-Myers at the Supreme Court; document available at ECF entry 26 in No. 15-cv-1221 (E.D. Mo.)). And although Mizuho suggests that the authority cited by Plaintiffs somehow doesn't support Mizuho's new theory of personal jurisdiction, other litigants, in briefs filed before the *Bristol-Myers* decision, cited the *Seiferth* decision in support of the argument Mizuho makes on reconsideration. *See, e.g.*, *Liggins v. Abbvie Inc.*, No. 15 C 11058, Dkt. 7, at 3-6 (N.D. Ill. filed Sept. 9, 2015) (opposing motion to remand case related to *In re Testosterone Drugs*). For its own reasons, Mizuho chose not to make this argument, even to preserve the theory. The decision results in forfeiture. *See Bally Export*, 804 F.2d at 404; *see also Am. Fid. Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1242 n.4 (10th Cir. 2016) (concluding that defendant forfeited its opportunity to rely on the Supreme Court's decision in *Daimler AG v. Bauman* by failing to preserve the argument pre-*Daimler* because the circuit's pre-*Daimler* case law was consistent with the Supreme Court's later holding); *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1399-1400 (7th Cir. 1993) (concluding that "motion failed to raise the personal jurisdiction issue" because litigant did not set forth specific bases on which jurisdiction was lacking).

Finally, Mizuho's eleventh-hour plea about the supposed novelty of *Bristol-Myers* changes nothing. (Dkt. 305, at 3 & n.4.) As the Court observed at the last hearing, the case itself disclaims any innovation. *See Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S Ct. 1773, 1781, 1783 (2017). It thus isn't the kind of "significant change in law" that merits reconsideration. *See Finnsugar Bioprods. Inc. v. Amalgamated Sugar Co., LLC*, 244 F. Supp. 2d 890, 891-92 (N.D. Ill. 2002) (rejecting argument that new controlling case from appellate court constituted a "significant change in law" when the appellate opinion itself "recognized that its

holding was based on precedent" and the principles articulated in the decision had already been expressed in other case law).

Regarding prejudice, Plaintiffs' counsel stated at the status hearing our belief that, as a general matter, the tolling principles articulated in *American Pipe and Construction Co. v. Utah*, 414 U.S 538 (1974), should permit members of the putative Withdrawal Class to proceed in another forum. For its part, although it recognizes application of the general rule of *American Pipe* to Pearce's claim, Mizuho neither concedes that *American Pipe* tolling would allow Pearce or other members of the Withdrawal Class to proceed in class actions in any particular forum nor commits to not contesting the applicability of that doctrine in subsequent proceedings. Those omissions are significant because it is far from clear that the position advocated by Plaintiffs would actually prevail in different fora (either for Pearce or the putative members of the Withdrawal Class).

As it relates to Pearce specifically, the Third Circuit, albeit in an unpublished decision, has held that named plaintiffs cannot avail themselves of the tolling principles articulated in *American Pipe* in subsequent class actions. *See Leyse v. Bank of Am., N.A.*, 538 F. App'x 156, 162 (3d Cir. 2013) ("Thus, we agree that the Supreme Court did not intend for *American Pipe* tolling to protect individuals like Leyse, who initiated the prior class action and was a named plaintiff in that prior suit."); *Weitzner v. Sanofi Pasteur, Inc.*, 2017 WL 3894888, at *13 (M.D. Pa. Sept. 6, 2017) (dismissing class action based on *Leyse*). And if Pearce cannot take advantage of *American Pipe* tolling for any class claims, then any tolling under *American Pipe*, a federal decision, is irrelevant because Pearce would be forced to litigate his claim in Pennsylvania state court, which has rejected the notion that class actions filed in a different jurisdiction can toll claims pursued in subsequent class actions in Pennsylvania state court. *Ravitch v.*

*Pricewaterhouse*, 793 A.2d 939, 944 (Pa. Super. 2002). Without tolling, Pearce's claim is time-barred. A dismissal, therefore, will significantly prejudice Pearce.

And if Pearce's claim is dismissed, that leaves absent class members in a bind, a topic on which Mizuho's supplemental submission is silent. Only in a handful of circuits can absent class members step forward and attempt to revive dismissed *class* claims while still taking advantage of *American Pipe* tolling. Compare, *e.g.*, *Resh v. China Agritech, Inc.*, 857 F.3d 994, 1004-05 (9th Cir. 2017) (collecting conflicting cases and holding that absent class members to bring class actions asserting claims identical to previously dismissed class actions based on *American Pipe*), with *Griffin v. Singletary*, 17 F.3d 356, 359 (11th Cir. 1994) (holding that *American Pipe* allows only untimely *individual* suits). The ability to bring the claims asserted in this action on behalf of a class is critical because of the expense of litigating against Mizuho. *See Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 334 n.6 (1980). Absent a new class representative from one of the handful of circuits that allows plaintiffs to "stack" class actions (and, though a number of individuals have contacted Plaintiffs' counsel, few have expressed interest in serving as a class representative) many absent class members would be forced to seek relief on an individual basis. That raises two issues. First, the expense of litigation will for many people overwhelm the relief they seek, making individual litigation impractical. Second, many if not most of the claims asserted by absent class members place less than $75,000 in controversy, so they would need to be litigated in state court. *See* 28 U.S.C. § 1332(a). Many of those claims are likely to be time barred because some states (like Pennsylvania) have rejected cross-jurisdictional tolling (i.e., allowing the filing of a class action in one jurisdiction to toll the statute of limitations for claims in a later-filed action in a different jurisdiction). *See Ravitch*, 793 A.2d 943-44 (surveying

6

different state's approaches to cross-jurisdictional tolling). Thus, many absent class members will be prejudiced if Pearce's claim is dismissed, as well.

                                                      Respectfully submitted,

                                                      **ANTHONY MOTTO, JOSEPH LACK,**
                                                      and **GREGORY PEARCE** individually and on behalf of all others similarly situated,

Dated: October 31, 2017                          By: /s/ Benjamin S. Thomassen
                                                                 One of Plaintiffs' Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

Counsel for Plaintiffs and the Putative Classes

7

8

**CERTIFICATE OF SERVICE**

    I, J. Aaron Lawson, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, and via electronic mail to Mark Karpeles, on October 31, 2017.

                                                    /s/ J. Aaron Lawson