UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) | 14 C 1437 |
| Plaintiffs, | )<br>) | Judge Gary Feinerman |
| vs. | )<br>) | |
| MIZUHO BANK, LTD. and MARK KARPELES, | )<br>) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this putative class action, Gregory Greene, Joseph Lack, Anthony Motto, and Gregory Pearce allege that Mizuho Bank, Ltd. and Mark Karpeles are liable for financial losses arising from the demise of the Mt. Gox bitcoin exchange. Doc. 245. Plaintiffs bring only state law claims, and subject matter jurisdiction lies under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Earlier in the litigation—when Greene, an Illinois citizen, and Lack, a California citizen, were the only named plaintiffs—the court issued an opinion, familiarity with which is assumed, denying Mizuho Bank's motion under Federal Rule of Civil Procedure 12(b)(2) to dismiss the claims against it for lack of personal jurisdiction. Docs. 199-200 (reported at 169 F. Supp. 3d 855 (N.D. Ill. 2016)). For complicated reasons explained in the opinion, the denial was conditioned on putative class counsel's adding as a named plaintiff an Illinois resident alleged to be a member of the Deposit Subclass. The third amended complaint met that condition by adding Anthony Motto, an Illinois citizen, as a named plaintiff and class representative of the putative Deposit Subclass. Docs. 205-206. In February 2017, putative class counsel moved for leave to file a fourth amended complaint adding Gregory Pearce, a

1

Pennsylvania citizen, as a named plaintiff.  Doc. 242.  After Mizuho informed the court that it did not oppose the amendment, the motion was granted, Doc. 244, and the fourth amended complaint, now the operative complaint, was filed, Doc. 245.

The complaint names Motto, Greene, Lack, and Pearce as representatives of the putative Mt. Gox Class, defined as "[a]ll persons in the United States who had bitcoins or money stored with Mt. Gox on February 24, 2014." *Id*. at ¶ 89.  The complaint names Motto and Lack as representatives of the putative Deposit Subclass, defined as those members of the putative Mt. Gox Class "who deposited money into their Mt. Gox account through Mizuho Bank after the date [when] Mizuho Bank stopped processing withdrawals." *Ibid*.  The complaint names Pearce as the sole representative of the putative Withdrawal Subclass, defined as those members of the putative Mt. Gox Class "who initiated a request to withdraw[] Fiat Currency from their Mt. Gox account after the date [when] Mizuho Bank stopped processing withdrawals, and whose withdrawal request was not fulfilled." *Ibid*.

Three months after the operative complaint's filing, the Supreme Court issued *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773 (2017).  *Bristol-Myers* holds that specific personal jurisdiction does not lie over a nonresident plaintiff's claim against a defendant not subject to general personal jurisdiction solely because the nonresident plaintiff's claim is similar, or even identical, to a resident plaintiff's claim in the same suit.  *Id*. at 1780-82.  Citing *Bristol-Myers*, Mizuho moves under Rule 54(b) for partial reconsideration, as to Lack and Pearce, of the court's denial of its Rule 12(b)(2) motion.  Doc. 282.  At argument on the motion, Doc. 304, Plaintiffs agreed to the dismissal of Lack's claims as a named plaintiff against Mizuho; they did so because putative Deposit Subclass, of which Lack can be an absent member, may proceed with Motto as its representative.  Plaintiffs oppose the dismissal of Pearce's claims

as a named plaintiff against Mizuho; they do so because Pearce is the only representative of the putative Withdrawal Subclass. The motion is granted as to Pearce's claims against Mizuho.

## Background

Much of the relevant background is set forth in the court's opinion denying Mizuho's Rule 12(b)(2) motion and also the court's opinion resolving Mizuho's Rule 12(b)(6) motion. Docs. 229-230 (reported at 206 F. Supp. 3d 1362 (N.D. Ill. 2016)). As noted in the personal jurisdiction opinion, the relevant background on a Rule 12(b)(2) motion includes the complaint's well-pleaded allegations and the evidentiary materials submitted by both sides. No party has requested an evidentiary hearing, so the court must accept Plaintiffs' factual averments and resolve all genuine factual disputes in their favor. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012) ("[W]here, as here, the issue [of personal jurisdiction] is raised on a motion to dismiss, the plaintiff need only make a prima facie showing of jurisdictional facts. We therefore accept as true all well-pleaded facts alleged in the complaint and resolve any factual disputes … in favor of the plaintiff.") (citation omitted); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Plaintiffs' brief, so long as those facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (citation and internal quotation marks omitted); *see also Defender Sec. Co. v. First Mercury Ins. Co.*, 803 F.3d 327, 335 (7th Cir. 2015). The facts are set forth as favorably to Plaintiffs as those materials allow. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014). In so doing, the court does not

vouch for their accuracy. *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010).

Mizuho is a Japanese financial institution headquartered in Tokyo, Japan. Doc. 245 at ¶ 9. Mizuho received and processed deposits and withdrawals of fiat currency for customers of the now-defunct Mt. Gox bitcoin exchange. *Ibid*.

Greene lives in Illinois. *Id*. at ¶ 4. Beginning in 2012, Greene sold and traded bitcoins on the Mt. Gox exchange. *Id*. at ¶ 50. In November 2013, Greene began experiencing delays with his bitcoin transactions. *Id*. at ¶ 52. On February 5, 2014, Greene discovered that he was unable to execute withdrawal and other previously available functions on the exchange, and on February 24, 2014, he lost all access to his Mt. Gox account. *Id*. at ¶¶ 53-56. At that point, his account contained approximately $25,000 in bitcoins. *Id*. at ¶ 57. Greene's claims are against Karpeles only; he has no claims against Mizuho. *Id*. at ¶¶ 95-150.

Motto lives in Illinois. *Id*. at ¶ 6. Motto joined Mt. Gox in early 2014, wiring $1,000 in fiat currency from his Illinois-registered JPMorgan Chase Bank account to Mt. Gox's account at Mizuho. *Id*. at ¶¶ 71-72. Motto listed his individual Mt. Gox account number on the wire transfer instructions. *Ibid*. On February 18, 2014, Chase confirmed that Mizuho had accepted and received Motto's deposit, but the $1,000 did not appear in his Mt. Gox account. *Id*. at ¶ 73. On February 24, 2014, Motto lost access to his Mt. Gox account. *Id*. at ¶ 75.

Pearce lives in Pennsylvania. *Id*. at ¶ 7. Pearce opened his Mt. Gox account in November 2013, and began selling and trading bitcoins. *Id*. at ¶¶ 79-80. In January 2014, he converted some of his bitcoins to fiat currency, intending to withdraw $5,900 in fiat currency from his Mt. Gox account. *Id*. at ¶ 82. On January 29, 2014, Pearce submitted a withdrawal request in the amount of $5,900 to Mt. Gox, with instructions to deposit those funds in his

personal bank account. *Id*. at ¶ 83. Although Pearce received an email from Mt. Gox confirming the withdrawal, he never received the withdrawn funds. *Id*. at ¶¶ 83, 85-86.

The complaint states a tortious interference claim against Mizuho on behalf of Motto, Pearce, the Deposit Subclass, and the Withdrawal Subclass, *id*. at ¶¶ 122-130, and unjust enrichment and fraudulent concealment claims against Mizuho on behalf of Motto and the Deposit Subclass, *id*. at ¶¶ 131-150. The complaint's other claims, brought by Plaintiffs on behalf of themselves and the Mt. Gox Class, are against Karpeles only. *Id*. at ¶¶ 95-121.

**Discussion**

Rule 54(b) provides that "non-final orders 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Galvan v. Norberg*, 678 F.3d 581, 587 (7th Cir. 2012) (quoting Fed. R. Civ. P. 54(b)); *see also id*. at 587 n.3 ("Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of judgment."). "Unlike the case in which a judgment is sought to be vacated … a motion to reconsider a ruling is constrained only by the doctrine of the law of the case. And that doctrine is highly flexible, especially when a judge is being asked to reconsider his own ruling." *Pickett v. Prince*, 207 F.3d 402, 407 (7th Cir. 2000) (emphases omitted). Specifically, "the law of the case doctrine permits 'a court to revisit an issue if an intervening change in the law, or some other special circumstance, warrants reexamining the claim.'" *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 796 (7th Cir. 2005) (quoting *United States v. Thomas*, 11 F.3d 732, 736 (7th Cir. 1993)); *see also Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 571-72 (7th Cir. 2006) ("The authority of a district judge to reconsider a previous ruling in the same litigation … is governed by the doctrine of the law of the case, which authorizes such reconsideration if there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier

5

ruling was erroneous."); *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (noting that a "basis for a motion to reconsider [is] a controlling or significant change in the law or facts since the submission of the issue to the [c]ourt") (citation omitted).

*Bristol-Myers* represents just such a circumstance. Although styled as a "straightforward application … of settled principles of personal jurisdiction," 137 S. Ct. at 1783, *Bristol-Myers* resolved an open question on which lower courts had split: whether, absent a "connection between [a state] and the specific claims" brought by a nonresident plaintiff against a defendant not subject to general jurisdiction in that state, a court may nevertheless exercise specific personal jurisdiction over those claims because they are similar or identical to claims brought in the same case by a resident plaintiff against the same defendant. *Compare*, *e.g.*, *Bristol-Myers Squibb Co. v. Super. Ct.*, 377 P.3d 874, 890-91 (Cal. 2016) (answering yes); *with*, *e.g.*, *Executone of Columbus, Inc. v. Inter-Tel, Inc.*, 2006 WL 3043115, at *6 (S.D. Ohio Oct. 4, 2006) (answering no).

*Bristol-Myers* considered a suit (actually eight suits, but that detail is immaterial) jointly brought in California by numerous plaintiffs, some from California and the rest from other States, against a pharmaceutical manufacturer not subject to general jurisdiction in California, alleging that they suffered harm from Plavix, one of the manufacturer's drugs. 137 S. Ct. at 1778. "The nonresident plaintiffs did not allege that they obtained Plavix through California physicians or from any other California source; nor did they claim that they were injured by Plavix or were treated for their injuries in California." *Ibid*. The manufacturer moved to dismiss the nonresidents' claims for want of personal jurisdiction, and the California Supreme Court held that there was specific jurisdiction over those claims because they were "similar in several ways to the claims of the California residents (as to which specific jurisdiction was uncontested)." *Id*.

6

at 1779. The United States Supreme Court reversed, holding that there was no "adequate link between [California] and the nonresidents' claims" given that the nonresidents "were not prescribed Plavix in California, did not purchase Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California." *Id*. at 1781. The Court explained that "[t]he mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California—and allegedly sustained the same injuries as did the nonresidents—does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Ibid*. And because the nonresident plaintiffs did not "claim to have suffered harm in" California and the "conduct giving rise to [their] claims occurred elsewhere," the Court ruled that "the California courts cannot claim specific jurisdiction" over those claims. *Id*. at 1782.

Mizuho contends that because Pearce is not an Illinois resident and was not injured in Illinois, and because the operative complaint does not allege that Mizuho had any contacts with Illinois in connection with Pearce's claims, *Bristol-Myers* requires dismissal for lack of personal jurisdiction of his claims against Mizuho despite the close relationship between his claims and those of Illinois residents Greene and Motto. Mizuho is right, as there is no meaningful difference between *Bristol-Myers* and this case. *See Jinright v. Johnson & Johnson, Inc.*, 2017 WL 3731317, at *4-5 (E.D. Mo. Aug. 30, 2017) (applying *Bristol-Myers* to dismiss for lack of personal jurisdiction the claims of nonresident plaintiffs against a pharmaceutical manufacturer on the grounds that there were "simply no facts connecting [them]" to the forum state); *Jordan v. Bayer Corp.*, 2017 WL 3006993, at *4 (E.D. Mo. July 14, 2017) (same).

Emphasizing that *Bristol-Myers* was a mass action, not a class action, Plaintiffs insist that this suit's status as a putative class action distinguishes *Bristol-Myers*. Doc. 291 at 13. Plaintiffs are mistaken. Nothing in *Bristol-Myers* suggests that it does not apply to named plaintiffs in a

putative class action; rather, the Court announced a general principle—that due process requires a "connection between the forum and the specific claims at issue." 137 S. Ct. at 1781. That principle applies with equal force whether or not the plaintiff is a putative class representative. *See In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) ("The constitutional requirements of due process do[] not wax and wane when the complaint is individual or on behalf of a class. Personal jurisdiction in class actions must comport with due process just the same as any other case."); 2 Newberg on Class Actions § 6:25 (5th ed.) ("A putative class representative seeking to hale a defendant into court … must have personal jurisdiction over that defendant just like any individual litigant must … .").

Plaintiffs next suggest that reading *Bristol-Myers* to require dismissal of Pearce would be inconsistent with *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985). Doc. 291 at 14-15. That is wrong as well. As *Bristol-Myers* itself notes, "[t]he Kansas court [in *Shutts*] exercised personal jurisdiction over the claims of nonresident class members, and the defendant … argued that this violated the due process rights of these class members because they lacked minimum contacts with the State." 137 S. Ct. at 1782. Significantly for present purposes, the defendant in *Shutts* did not argue that "Kansas improperly exercised personal jurisdiction over it, and [*Shutts*] did not address that issue." *Id*. at 1783. Thus, all *Shutts* holds is that once a court properly asserts personal jurisdiction over the putative class representative's claims, it also has jurisdiction over the claims of nonresident absent class members. *See* 472 U.S. at 811 ("[W]e hold that a forum State may exercise jurisdiction over the claim of an absent class-action plaintiff, even though that plaintiff may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant."). Because *Shutts* does not speak to the propriety of asserting personal jurisdiction over a defendant, it cannot assist Plaintiffs in

8

establishing jurisdiction over Pearce's claims against Mizuho.  *See Bristol-Myers*, 137 S. Ct. at 1783 ("Since *Shutts* concerned the due process rights of *plaintiffs*, it has no bearing on the question presented here.") (emphasis in original).

Plaintiffs next contend that the pendent personal jurisdiction doctrine permits Illinois to exercise specific personal jurisdiction over Pearce's claims.  Doc. 291 at 17-21.  Plaintiffs are mistaken for two reasons.  First, even if the doctrine at one time permitted the court to exercise personal jurisdiction over a claim like Pearce's, it no longer does in light of *Bristol-Myers*.  Second, and even putting aside *Bristol-Myers*, the authorities cited by Plaintiffs, including *Robinson Engineering Co. Pension Plan & Trust v. George*, 223 F.3d 445 (7th Cir. 2000), and *Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928 (7th Cir. 1996), do not support the exercise of pendent personal jurisdiction here.

*Robinson* addressed an entirely different issue—whether, once a court has personal jurisdiction over a defendant as to *one* claim brought by the plaintiff, the court may assert jurisdiction over *additional* claims brought by that plaintiff.  223 F.3d at 449-50.  *Robinson* answered that question in the affirmative, holding that because the defendant was "amenable to the jurisdiction of" an Illinois federal court as to the plaintiff's federal claim, the defendant was also so amenable as to the plaintiff's state law claims even if those claims, standing alone, could not have supported personal jurisdiction in Illinois.  *Ibid.*; *see also Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 719-20 (2d Cir. 1980) (same).  And *Stromberg Metal Works* concerned not personal jurisdiction, but subject matter jurisdiction, holding that 28 U.S.C. § 1367(b) "does not block adding an additional plaintiff with a closely related claim against the defendants who are already in the forum," even if the additional plaintiff's claim does not independently satisfy the amount-in-controversy requirement of 28 U.S.C. § 1332.  77 F.3d at 931-32.  Neither decision

9

supports the notion, squarely rejected by *Bristol-Myers*, that a court has personal jurisdiction over a plaintiff's claims that lack a sufficient nexus to the forum state just because those claims are closely related to another plaintiff's claims that do have that nexus.

Finally, Plaintiffs contend that Mizuho forfeited the personal jurisdiction argument pressed in its reconsideration motion by not raising it until after *Bristol-Myers* was handed down. Doc. 291 at 9-10. This argument has force. *Bristol-Myers* did not appear out of thin air. Federal appeals courts had long held that "if a plaintiff's claims relate to different forum contacts of the defendant, specific jurisdiction must be established for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006); *see also Philips Exeter Acad. v. Howard Phillips Fund*, 196 F.3d 284, 289 (1st Cir. 1999) (same). Mizuho certainly could have employed those decisions to argue that personal jurisdiction did not lie over Pearce's (and Lack's) claims against Mizuho simply because those claims are closely related to Motto's claims, over which there is specific jurisdiction. Indeed, several pre-*Bristol-Myers* decisions held, in circumstances materially identical to those here, that specific personal jurisdiction does not lie over a nonresident plaintiff's claim against a defendant not subject to general jurisdiction based solely on the close relationship between that claim and a claim brought in the same case by a resident plaintiff. *See*, *e.g.*, *Prime Healthcare Centinela, LLC v. Kimberly-Clark Corp.*, 2016 WL 7177532, at *1 (C.D. Cal. May 26, 2016) (agreeing with the defendants that, "because the non-California Plaintiffs' claims did not arise out of or relate to Defendants' contacts in California, the non-California Plaintiffs have not met their burden of establishing specific jurisdiction over Defendants"); *Demaria v. Nissan N. Am., Inc.*, 2016 WL 374145, at *7 (N.D. Ill. Feb. 1, 2016) ("The [complaint] does not allege that anything [the defendant] did in Illinois had anything to do with any of the other plaintiffs' claims, or that any of their claims arose out of activities by [the

defendant] tied to Illinois. Thus, at most … personal jurisdiction would exist only as to [the Illinois plaintiff]."); *Executone of Columbus, Inc.*, 2006 WL 3043115, at *6.

Mizuho had two prior opportunities to make that argument in this case. The first arose when Mizuho filed its Rule 12(b)(2) motion in May 2015. Doc. 148. At that time, the First and Fifth Circuits had issued *Philips Exeter Academy* and *Seiferth*, and the Southern District of Ohio has issued the directly on-point *Executone of Columbus*. Yet despite making other arguments against personal jurisdiction, Mizuho did not press that theory, resulting in a forfeiture. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument … .").

The second and more significant opportunity arose in late February 2017, when Plaintiffs moved to add Pearce as a named plaintiff. The Supreme Court had granted certiorari in *Bristol-Myers* on January 19, 2017, more than a month earlier, *see* 137 S. Ct. 827 (2017), putting front and center the theory that Mizuho now presses on reconsideration. Yet instead of opposing Plaintiffs' motion on the ground—clearly teed up in *Bristol-Myers*—that specific jurisdiction does not lie over Pearce's claims, Mizuho consented to the amendment. Doc. 244. And because, as Mizuho admits, pre-*Bristol-Myers* Seventh Circuit precedent did not foreclose it from pressing that theory, Doc. 305 at 7 n.3, Mizuho could have raised that theory before *Bristol-Myers* was issued, and it therefore forfeited any argument based on that theory. *See Gilmore v. Palestinian Interim Self-Gov't Auth.*, 843 F.3d 958, 964 (D.C. Cir. 2016) ("A defense is available unless its legal basis did not exist at the time of the answer or pre-answer motion, or the complaint does not contain facts sufficient to indicate that a defense was possible.") (citation and internal quotation marks omitted); *Hickory Farms, Inc. v. Snackmasters, Inc.*, 500 F. Supp. 2d 789, 796

11

(N.D. Ill. 2007) (emphasizing that a motion for reconsideration "is an inappropriate vehicle for asserting arguments that were not made by a party to which the arguments were then available").

Nevertheless, the court will excuse the forfeiture under the circumstances of this case. "[T]he court … retains the independent power to identify and apply the proper construction of governing law," even where the parties "fail[] to advert" to the applicable rule in their own briefing. *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991); *see also ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 551 (7th Cir. 2001) (excusing forfeiture and reasoning that "[f]ederal courts are entitled to apply the right body of law, whether the parties name it or not"). Given the Supreme Court's clear holding in *Bristol-Myers* concerning the proper framework for analyzing personal jurisdiction in cases like this one, exercising the court's discretion to excuse the forfeiture is warranted here.

The court would not have excused the forfeiture if doing so would materially prejudice Pearce and the putative Withdrawal Subclass, but there is no such prejudice here. As far as personal jurisdiction is concerned, Pearce is free under *Bristol-Myers* to pursue its claim against Mizuho in Pennsylvania. True enough, there appears to be a two-year limitations period on that claim. *See* 42 Pa. Stat. § 5524(7) (establishing a two-year limitations period for claims "founded on negligent, intentional, or otherwise tortious conduct or any other action or proceeding sounding in trespass, including deceit or fraud"). But Mizuho concedes that *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 553-54 (1974), tolled the limitations period from March 14, 2014, when Plaintiffs first named Mizuho as a defendant, Doc. 36, through March 7, 2017, when Pearce was added as a named plaintiff, Doc. 245, meaning that the statute of limitations has not expired. Doc. 305 at 10. And should a Pennsylvania court, despite Mizuho's concession here, dismiss Pearce's claim on limitations grounds, this court would entertain a motion to add

Pearce back into this case on the ground that excusing Mizuho's forfeiture turned out to materially prejudice him and the Withdrawal Subclass.

The court recognizes, as Plaintiffs observe, Doc. 291 at 20-21, that having Pearce and the Withdrawal Subclass proceed in Pennsylvania while the rest of the case proceeds in Illinois is sub-optimal from an efficiency standpoint. But *Bristol-Myers* teaches that such "practical problems" must yield to the "more abstract matter" of whether it is legitimate to submit Mizuho to personal jurisdiction in an Illinois court for a nonresident's claims that have no tie to this forum. 137 S. Ct. at 1780.

## Conclusion

For the foregoing reasons, Mizuho's reconsideration motion is granted. The claims of Lack and Pearce against Mizuho are dismissed for want of personal jurisdiction.

December 11, 2017

United States District Judge