# Exhibit 1

1   RAFEY S. BALABANIAN (SBN – 315962)
    rbalabanian@edelson.com
2   J. AARON LAWSON (SBN – 319306)
    alawson@edelson.com
3   EDELSON PC
    123 Townsend Street, Suite 100
4   San Francisco, California 94107
    Telephone: (415) 212-9300
5   Facsimile: (415) 373-9435

6   *Attorneys for Plaintiff*

7              **UNITED STATES DISTRICT COURT**

8           **CENTRAL DISTRICT OF CALIFORNIA**

9                    **WESTERN DIVISION**

10

11  JOESPH LACK, individually and on          Case No.
    behalf of all others similarly situated,

12              *Plaintiff,*                  **COMPLAINT**

13         v.

14  MIZUHO BANK, LTD., a Japanese            DEMAND FOR JURY TRIAL
    financial institution, and MARK
15  KARPELES, an individual,                 **CLASS ACTION**

16              *Defendants.*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

1          Plaintiff, Joseph Lack ("Plaintiff") brings this Class Action Complaint and

2    Demand for Jury Trial against Defendants Mark Karpeles ("Karpeles") and Mizuho

3    Bank, Ltd. ("Mizuho"). Plaintiff alleges as follows upon personal knowledge as to

4    himself and his own acts and experiences, and, as to all other matters, upon

5    information and belief, including investigation conducted by his attorneys.

6    **NATURE OF THE ACTION**

7          1.    This case involves the demise of the Mt. Gox Bitcoin Exchange ("Mt.

8    Gox" or the "Exchange") and the loss of hundreds of millions of dollars worth of its

9    users' bitcoins and cash ("Fiat") Currency. Defendant Mark Karpeles, who owned

10   and ran Mt. Gox, was responsible for the loss of more than $400 million from users

11   on the Exchange through either gross negligence or outright theft. Plaintiff brings suit

12   on behalf of a class of similarly situated individuals to recover their resulting losses

13   from Karpeles.

14         2.    Although Karpeles is the most notorious actor in the Mt. Gox collapse,

15   Mt. Gox's banking partner, Defendant Mizuho Bank, bears significant responsibility

16   as well. As discussed below, in mid-2013, Mizuho created a number of artificial

17   hurdles in hopes of forcing Mt. Gox to sever relations with it. The most significant of

18   these hurdles was to stop processing any withdrawal requests made by Mt. Gox users

19   in the United States, thus making it virtually impossible for United States users to

20   withdraw any money from their Mt. Gox accounts. In this sense, Mizuho was akin to

21   the famous Hotel California, money could check into the bank at any time, but once

22   there, it could never leave.

23         3.    Mizuho actively worked to hide what it was doing from Mt. Gox's

24   consumers, knowing both that its actions exposed it to reputation harm and that if Mt.

25   Gox's customers knew how broken Mizuho's relationship with Mt. Gox was—and

26   that they would be essentially unable to withdraw their money—no United States

27   user would deposit money into Mt. Gox and Mizuho would be deprived of the

28

COMPLAINT                          1

1  transaction fees associated with such deposits. Plaintiff thus also brings suit on behalf

2  of a subclass of similarly situated individuals who were duped into depositing money

3  into Mt. Gox after Mizuho made the decision to stop allowing withdrawals.

**PARTIES**

4       4.      Plaintiff Joseph Lack is a natural person and citizen of the State of

5  California.

6

7       5.      Defendant Mark Karpeles is a natural person and citizen of the country

8  of France. During the events alleged in this Complaint, Karpeles served as the Chief

9  Executive Officer of both Mt. Gox KK and its parent company, Tibanne KK.

10  Additionally, Karpeles is the sole shareholder of Tibanne KK. Based on Mt. Gox's

11  own statements, "Mark Karpeles is the President and CEO of both MtGox and

12  Tibanne. Mark providers [sic] overall direction, responsible for supervising main

13  operations and steering the company according to his vision." Through Tibanne KK

14  and the Mt. Gox Exchange, Karpeles conducted business throughout this District, the

15  State of California, and the United States.

16      6.      Defendant Mizuho Bank is a Japanese financial institution with its

17  principal headquarters located at 1-3-3, Marunouchi, Chiyoda-ku, Tokyo, Japan 100-

18  8210. Mizuho Bank conducts business worldwide, including throughout in this

19  District (where it has a branch office), the State of California, and the United States.

20  Mizuho Bank has received and processed wire money deposits and withdrawals for

21  Mt. Gox customers residing in this District, the State of California, and the United

22  States.

**JURISDICTION AND VENUE**

23

24      7.      This Court has jurisdiction over this action pursuant to 28 U.S.C.

25  § 1332(d)(2) because (i) at least one member of the Classes is a citizen of a different

26  state than Defendants, (ii) the amount in controversy exceeds $5,000,000, exclusive

27  of interest and costs, and (iii) none of the exceptions under that subsection apply to

28

1   this action.

2       8.    This Court has personal jurisdiction over Defendants because they

3   conduct business in this District and the unlawful conduct alleged in the Complaint

4   occurred in, was directed to, and/or emanated from this District.

5       9.    Venue is proper in this District under 28 U.S.C. § 1391(b) because a

6   substantial part of the events or omissions giving rise to the unlawful conduct alleged

7   in the Complaint occurred in, was directed to, and/or emanated from this District.

8                    **COMMON FACTUAL ALLEGATIONS**

9   *The Mt. Gox Bitcoin Exchange.*

10       10.    Founded in 2009, Mt. Gox at one time claimed to be the "world's most

11   established Bitcoin exchange." In addition to buying and selling bitcoins, Mt. Gox

12   promised its customers "the ability to securely store Bitcoin in a virtual 'vault' for

13   safe keeping" on its servers. It further promised that its website would be "always

14   on" so that users could "[b]uy and sell Bitcoin 24/7/365 with the world's most

15   sophisticated trading platform."

16       11.    To use Mt. Gox's service, customers were required to sign up for an

17   account at www.mtgox.com and agree to Mt. Gox's Terms of Use, which expressly

18   stated that "MtGox represents and warrants that . . . it will hold all monetary sums

19   and all Bitcoins deposited by each Member in its Account, in that Member's name as

20   registered in their Account details, and on such Member's behalf."

21       12.    Customers were also asked to verify their accounts by providing Mt.

22   Gox with detailed information, such as their full name, date of birth, country of birth,

23   physical address, and proof of identity (such as a state issued identification card).

24       13.    To make purchases and trades on the Exchange, users could transfer

25   bitcoins directly into their Mt. Gox accounts or deposit cash into their accounts by

26   wiring money to Mt. Gox's banking partner—Defendant Mizuho Bank. After

27   receiving the funds, Mizuho Bank would transfer the money into an account that it

28

Complaint                       3

1   held on behalf of Mt. Gox.

2       14.    Mt. Gox received a transaction fee for each trade made on the Exchange.

3   Upon information and belief, Mt. Gox made tens of thousands of dollars per day in

4   transaction fees from customers on its site.

5       15.    Mizuho likewise received transaction fees on every wire deposit that it

6   processed into the Exchange.

7   ***Mark Karpeles—The Mastermind Behind Mt. Gox.***

8       16.    As President, CEO, and majority shareholder of Mt. Gox, Karpeles

9   controlled all aspects of Mt. Gox's business from the ground up. In fact, Karpeles

10   was involved in nearly every detail of the Exchange, from the technical (Karpeles

11   wrote and designed the software used to run Mt. Gox) to the operational (Karpeles

12   handled all of Mt. Gox's third party negotiations and contracts).

13       17.    Karpeles likewise directed the drafting and dissemination of Mt. Gox's

14   public statements and representations (including those made through its Terms of

15   Use), as well the statements made through Mt. Gox's customer service department. In

16   addition, Karpeles handled all aspects of Mt. Gox's accounting (including its

17   maintenance of user and operational accounts) and banking affairs—personally

18   representing Mt. Gox in its negotiations and discussions with banks and third-party

19   payment processors.

20       18.    As the sole controlling force behind Mt. Gox and the designer of its

21   software, Karpeles was aware that there were security "bugs" in the system in as

22   early as 2011.

23       19.    Rather than correcting the security bugs (or informing users of their

24   existence), Karpeles knowingly concealed the defects from the public and falsely

25   assured users that their bitcoins and money were safe in their accounts.

26   ***Mizuho Bank's Banking Relationship With Mt. Gox.***

27       20.    Defendant Mizuho Bank was Mt. Gox's banking partner in Japan and

28

1    maintained Mt. Gox's operating accounts. In that capacity, Mizuho Bank facilitated

2    international cash wire transfers into the Exchange and processed user requests to

3    withdraw cash from the Exchange to their outside banks accounts.

4        21.    To facilitate wire transfers into the Exchange, Mizuho accepted

5    payments that had been wired by users through their outside banks (e.g. Bank of

6    America). Such wire transfers designated Mt. Gox as the beneficiary of the wire and

7    Mizuho as the beneficiary's bank, and included the Mt. Gox user's account number

8    to which the funds were to be directed. After accepting the wire payment, Mizuho

9    thereafter deposited the funds into its account for Mt. Gox with the funds marked on

10    behalf of the specific depositing Mt. Gox user.

11        22.    To withdraw cash from the Exchange, Mt. Gox users submitted requests

12    online through their Mt. Gox account. Mt. Gox would compile the requests it

13    received—which included such information as the user's banking details and the

14    amount to be transferred—and provide the requests to Mizuho for processing. After

15    receiving the requests, Mizuho would then transfer out the requested amounts to the

16    user's bank.

17        23.    In mid-2013, Mizuho Bank was the exclusive processor of all bank

18    deposits and withdrawals made by Mt. Gox users located in the United States.

19    ***Mizuho Bank Became Concerned With Karpeles' Business and Implemented New***

20    ***Banking Policies Designed to Coerce Karpeles Into Dissolving Their Partnership.***

21        24.    Beginning in 2013, Mizuho Bank became increasingly concerned by Mt.

22    Gox's growing transaction volumes amid reports that U.S. authorities were

23    investigating Mt. Gox for business dealings related to money laundering. At the same

24    time, Mizuho Bank faced its own legal troubles at home, with reports surfacing that

25    the bank had knowingly loaned money to organized crime syndicates and was under

26    investigation by Japan's Financial Services Agency.

27        25.    Accordingly, fearing that the partnership would expose it to further

28

COMPLAINT              5

1   regulatory scrutiny and cause significant reputational harm, Mizuho Bank decided

2   that it wanted to distance itself from Karpeles and Mt. Gox. However, for its own

3   purposes, Mizuho Bank wanted Karpeles to be the one to officially sever the banking

4   relationship. To that end, Mizuho asked Karpeles to close Mt. Gox's account at

5   Mizuho. He refused.

6       26.   In order to pressure Karpeles into rethinking his decision and force an

7   end to the banking relationship, Mizuho began implementing a series of new policies

8   in the beginning of 2013. These new policies—all of which were kept secret from the

9   public—were meant to frustrate and disrupt Mt. Gox's business and relationship with

10  its customers.

11      27.   Ultimately, in June 2013, Mizuho stopped processing international wire

12  withdrawals for Mt. Gox altogether.

13      28.   Accordingly, in June 2013, Mt. Gox users began to report substantial

14  difficulties in withdrawing cash from their Mt. Gox accounts—wondering online

15  about the source of the delays.

16      29.   Mizuho knew that if US customers found out about its new,

17  unreasonable banking policies (especially the fact that withdrawals were no longer

18  allowed), they would no longer continue making deposits into the Exchange and it

19  would cease collecting the associated fees. Mizuho also harbored concerns that if its

20  banking policies became publicly known, it could suffer reputational damage or

21  potentially be blamed for losses. Nevertheless, Mizuho continued to accept user

22  deposits into the Mt. Gox Exchange (for which it collected fees on each transaction)

23  through its collapse in February 2014.

24      30.   On information and belief, Mizuho continued accepting customer

25  deposits in order to further the impression that any withdrawal difficulties were solely

26  attributable to Mt. Gox, so as to avoid drawing public criticism and further scrutiny

27  from regulatory authorities, as well as to continue profiting from the deposit fees that

28

COMPLAINT                              6

1    it collected.

2    ***Defendants Concealed Mt. Gox's Operational Difficulties and Continued***

3    ***Accepting Cash Deposits.***

4         31.    In February 2014, Karpeles made numerous representations to the public

5    and to Mt. Gox users that the withdrawal issues were only temporary and that user

6    assets were safe.

7         32.    Karpeles also assured users through the Mt. Gox online Support Desk

8    (which he directed and controlled) that any problems were being dealt with and that

9    there was no cause for alarm. Likewise, users who inquired about withdrawal delays

10   were informed that any withdrawal issues were only temporary and that delays in

11   transaction speeds were merely "due to a change in [Mt. Gox's] banking systems"

12   which had resulted in a "back-log" of requests that needed to be processed." Karpeles

13   even claimed that Mt. Gox was "trying to form relationships with several new

14   banking partners both in Japan and around the world" and "in the process of

15   finalizing even more," meaning that it would "have increased stability and ability to

16   transmit withdrawals going forward."

17        33.    Both Karpeles and Mizuho knew that these statements were false—

18   withdrawal delays were not due to any "backlog" in the system; they were not minor

19   issues and they were not temporary. Rather, withdrawal delays were due to Mizuho's

20   refusal to process international withdrawal requests and its broader efforts to

21   undermine the banking relationship between it and Mt. Gox.

22        34.    Although Mizuho knew that Karpeles was making these false and

23   misleading statements to the public and to his Mt. Gox users, it took no action to

24   correct them. Instead, Mizuho concealed that it was the cause of the Mt. Gox

25   withdrawal delays, concealed the fact that it had implemented banking policies

26   designed to disrupt Mt. Gox's business and relationship with its users, and stood

27   silent while allowing the public to continue being duped.

28

1       35.    Upon information and belief, Mizuho prohibited Mt. Gox from

2   disclosing that withdrawal difficulties were attributable to Mizuho, or that Mizuho

3   wanted to terminate its banking relationship with Mt. Gox. By continuing to accept

4   deposits, Mizuho further contributed to the false narrative that the Mt. Gox Exchange

5   was operating properly and that problems with withdrawals were not serious or

6   attributable in any way to Mizuho.

7       36.    On February 7, 2014, Karpeles halted his customers' ability to withdraw

8   bitcoin from Mt. Gox, stating that he was purportedly investigating a "bug" or

9   "technical malfunction" in the Bitcoin network. A few days later, on February 10,

10  2014, Karpeles claimed that he had supposedly detected "unusual activity" with

11  respect to the Mt. Gox Bitcoin wallets and was investigating a technical issue, called

12  "transaction malleability," which he said involved the ability of third parties to

13  manipulate certain transactions. Karpeles nonetheless assured his customers that

14  "MtGox will resume bitcoin withdrawals to outside wallets once the issue" had been

15  addressed. This statement was also knowingly false, and beyond that, Karpeles

16  concealed the fact that he had been aware of the supposed security "bug" since in

17  2011.

18      37.    However, despite that the fact that most users were now unable to

19  withdraw any bitcoins or Fiat Currency from their accounts, and even though both

20  Karpeles and Mizuho knew that full withdrawal functionality (which had been made

21  available to Mt. Gox users prior to Mizuho's decision to halt withdrawals) would

22  never be restored, both Defendants nonetheless continued to accept and profit from

23  more user deposits.

24  ***Karpeles Shut Down Mt. Gox and Declared Bankruptcy.***

25      38.    On February 24, 2014, the Mt. Gox website "went dark." Customers

26  who visited the site found nothing but a blank page and were unable to view or access

27  their accounts. A message on the Mt. Gox website later notified members that a

28

1   "decision was taken to close all transactions *for the time being*." That statement was

2   not true because, at that time, Karpeles was already planning on seeking bankruptcy

3   protection and, on information and belief, was in the process of preparing Mt. Gox's

4   bankruptcy filing.

5       39.     A few days later, on February 28, 2014, Mt. Gox filed for bankruptcy

6   protection in Japan. In its petition (supported by a declaration from Karpeles),

7   Karpeles revealed that he had known about the security "bug" since May 2011 but

8   that it was not purportedly known "until the end of January 2014 that [the bug] could

9   lead to a large number of unconfirmed transactions and to a risk of illicit

10  withdrawals." The petition further stated that Mt. Gox had discovered "a large

11  discrepancy in the total of deposit balances at those financial institutions which

12  managed said deposits compared to the total amount actually deposited by users and

13  that there was a large shortfall of deposit balances."

14      40.     During a press conference, Karpeles revealed that Mt. Gox had assets of

15  over $20 million (USD) and liabilities in excess of $65 million (USD)—not including

16  the over $450 million worth of bitcoins it had lost through its supposed security

17  breach. In later bankruptcy filings, he revised those figures to $37.7 million (USD) in

18  assets and $63.9 million (USD) in liabilities. *See* Declaration of Robert Marie Mark

19  Karpeles, ¶ 7, ECF No. 3, No. 14-31229-sgj15 (Bankr. N.D. Tex. Mar. 9, 2014).

20      41.     In the days that followed, reports emerged suggesting that Karpeles had

21  grossly mismanaged the Mt. Gox Exchange by ignoring known security flaws and

22  user reports of hacking, failing to segregate customer and operational funds in Mt.

23  Gox's account, failing to periodically balance and/or reconcile customer and

24  operational funds, and losing user bitcoins that were purportedly stored in its offline

25  storage.

26      42.     On June 18, 2014, the Bankruptcy Court in the Northern District of

27  Texas officially recognized Mt. Gox's Japanese bankruptcy proceedings as a foreign

28

COMPLAINT                                            9

1    main proceeding under Chapter 15 of the U.S. Bankruptcy Code, effectively staying

2    all pending litigation against it in the United States. *See In re MtGox*, Case No. 14-

3    31229-sgj15 (Bankr. N.D. Tex.).

4        43.    Tibanne KK likewise declared bankruptcy in Japan in February 2015,

5    with recognition as a Chapter 15 foreign main proceeding being granted on April 2,

6    2015. *See In re: Tibanne Co., Ltd., a/k/a KK,* Case No. 15-10255 (REG) (Bankr.

7    S.D.N.Y.).

8        44.    In September 2015, Karpeles was arrested by Tokyo police and formally

9    charged with fraud and embezzlement in connection to his management of Mt. Gox.

10   To date he has not been convicted or acquitted.

11                     **PLAINTIFF'S FACTUAL ALLEGATIONS**

12   ***Facts Relating to Plaintiff Joseph Lack***

13       45.    Plaintiff joined Mt. Gox in early 2014 after reading Mt. Gox's

14   representations about the Exchange's security, reliability, and ability to withdraw or

15   deposit bitcoins at any time (substantially similar to the advertisements and

16   representations described in Paragraphs 10-11 above). He was particularly impressed

17   by Mt. Gox's use of two-factor authentication and YubiKeys to ensure account

18   security. To activate his account, he was required to (and did) accept Mt. Gox's

19   Terms of Use, and provide all requested documentation, including government-issued

20   identification.

21       46.    Upon joining, on January 22, 2014, Plaintiff wire-transferred $40,000

22   USD to his account at Mt. Gox. To do so, Plaintiff was directed by Mt. Gox to wire

23   the money directly from his local Wells Fargo bank branch to the account that

24   Mizuho held on behalf of Mt. Gox or its owners. Plaintiff was also directed to list his

25   individual Mt. Gox account number on the wire transfer instructions ostensibly so

26   Mizuho and Mt. Gox could identify the deposit as belonging specifically to him.

27       47.    Following the transfer, Plaintiff waited several weeks for the money to

28

1    appear in his Mt. Gox account and for Mt. Gox to acknowledge receipt of his funds.

2        48.    On February 11, 2014, Plaintiff contacted Mt. Gox regarding his

3    $40,000 and when he would be able to access his money. Mt. Gox responded on

4    February 14, 2014, stating that "withdrawal delays does [sic] not affect transferring

5    funds to your Mtgox [sic] account." It did not answer his specific question regarding

6    the status of his deposit but instead asked for a scanned copy of his wire transfer

7    form. Plaintiff provided this information on February 15, 2014.

8        49.    Plaintiff continued to wait for the funds to appear in his Mt. Gox

9    account. On February 19, 2014, he contacted Mt. Gox again for a status update, only

10    to be informed, "We continue to check the status of the deposit with our banking

11    team. We will let you know once the funds reaches [sic] your account." Lack

12    responded on February 20, 2014, complaining about these non-responsive emails and

13    demanding to know the location of his money.

14        50.    Mt. Gox responded on February 20, 2014 stating, "We are yet to receive

15    your deposit. We are facing Bank delays on international deposit and we will surely

16    keep you updated once we receive your deposit."

17        51.    Upon receiving this message, Plaintiff immediately went to his bank to

18    trace the wire transfer and recall the money.

19        52.    At no time prior to or during the deposit of his funds, did Mt. Gox or

20    Mizuho notify him that Mt. Gox had suffered any type of "bug," that Mizuho was no

21    longer providing withdrawal services to Mt. Gox users (and thus, there would be no

22    way for him to make wire withdrawals from the Exchange), or that his money would

23    thereafter be permanently inaccessible.

24        53.    Had Plaintiff known that Mizuho was interfering with Mt. Gox's ability

25    to service users, that he would be effectively unable to make any cash withdrawals

26    from the Exchange, that the security of Mt. Gox had been compromised, or that Mt.

27    Gox intended to go offline and declare bankruptcy, he would not have opened his

28

COMPLAINT                 11

1   account with Mt. Gox or attempted to deposit funds into his Mt. Gox account.

2       54.   On March 3, 2014, Plaintiff's bank informed him that they were unable

3   to recall the funds since they had already been transferred to Mt. Gox's account at

4   Mizuho on February 3, 2014. His bank provided all the documentation showing that

5   his funds did indeed transfer on February 3, 2014, through Mizuho Bank.

6       55.   Following bankruptcy, the Mt. Gox website continued to reflect a

7   balance of $0.00 in Lack's Mt. Gox account. The bankruptcy trustee established a

8   process for Mt. Gox customers to submit claims on the bankruptcy estate, but that

9   process required users to submit screenshots of their Mt. Gox accounts reflecting the

10   balance of bitcoin and fiat currency held in their name on the Exchange. He explained

11   his predicament over the phone to individuals purporting to provide customer service

12   to creditors, and they informed him that they would pass his information along to the

13   bankruptcy trustee. Although Lack followed up on this phone call, he was never

14   contacted by anyone affiliated with the bankruptcy trustee.

### CLASS ALLEGATIONS

16       56.   **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of

17   Civil Procedure 23(b)(3) on behalf of himself and a Class of similarly situated

18   individuals, defined as follows:

19       **Mt. Gox Class**: All persons in the United States who had bitcoins or money

20       stored with Mt. Gox on February 24, 2014.

21

22   Plaintiff further brings this action pursuant to Federal Rule of Civil Procedure

23   23(b)(3) on behalf of himself and a Subclass of similarly situated individuals, defined

24   as follows:

25       **Deposit Subclass**: All members of the Mt. Gox Class who deposited money

26       into their Mt. Gox account through Mizuho Bank after the date on which

27       Mizuho Bank stopped processing withdrawals.

28

1

2   (The Class and Subclasses are referred to herein as the "Classes".) Excluded from the

3   Classes are (1) Defendants, Defendants' agents, subsidiaries, parents, successors,

4   predecessors, and any entity in which the Defendants or their parents have a

5   controlling interest and their current and former employees, officers, and directors,

6   (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or

7   Magistrate Judge's immediate family, (3) persons who execute and file a timely

8   request for exclusion, (4) all persons who have previously had claims similar to those

9   alleged herein finally adjudicated or who have released their claims against

10   Defendants, and (5) the legal representatives, successors, or assigns of any such

11   excluded person.

12        57.   **Numerosity**: The exact number of the members of the Classes is

13   unknown and not available to Plaintiff at this time, but it is clear that individual

14   joinder is impracticable. On information and belief, and according to documents filed

15   by Mt. Gox in support of their bankruptcy petition,[1] there are likely over 1,000

16   members in each of the respective Classes. Members of the Classes can be identified

17   through Defendants' records.

18        58.   **Commonality and Predominance**: There are many questions of law

19   and fact common to the claims of Plaintiff and the members of the putative Classes,

20   and those questions predominate over any questions that may affect individual

21   members of the Classes. Common questions for the Classes include, but are not

22   necessarily limited to the following:

23             (a)   whether Karpeles adequately managed and safeguarded Plaintiff's

24                   and the members of the Classes' bitcoins and Fiat Currency;

25             (b)   whether Karpeles' conduct constitutes fraud;

26

27   [1]   *See In re MtGox*, Case No. 14-31229-sgj15, Dkt. 127 at 10-11 (Bankr. N.D. Tex.).

28

COMPLAINT                                    13

(c)     whether Mizuho's conduct constituted fraud by omission;

(d)     whether Mizuho's conduct constituted fraudulent concealment; and

(e)     whether Mizuho was unjustly enriched by its conduct.

59.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Classes, in that Plaintiff and the members of the Classes sustained damages arising out of Defendants' uniform wrongful conduct.

60.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendants have no defenses unique to Plaintiff.

61.     **Superiority**: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**

1

### Negligence Against Mark Karpeles

### (On behalf of Plaintiff and the Mt. Gox Class)

62.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

63.     Karpeles owed Plaintiff and the Mt. Gox Class a duty of reasonable care to employ procedures to detect and prevent the improper access and misuse of Plaintiff's and the Class's bitcoins and Fiat Currency and also to allow them complete access to the same. This duty arose from Karpeles' relationship with Plaintiff and the Mt. Gox Class.

64.     Karpeles breached his duty to the Plaintiff and the Mt. Gox Class by failing to exercise reasonable care in maintaining, protecting, accounting for, and safeguarding the Plaintiff's and the Mt. Gox Class' bitcoins and Fiat Currency within Mt. Gox's control. This included the failure to implement industry-standard accounting procedures or to segregate user accounts from operational funds, as well as the failure to correct security bugs or other vulnerabilities on the Exchange.

65.     Karpeles further acted negligently by failing to implement security procedures to detect and prevent unauthorized access to Plaintiff's and the Mt. Gox Class' bitcoins and Fiat Currency.

66.     As a result of Karpeles' conduct, Plaintiff and the Mt. Gox Class suffered economic injury and other damages, in the form of the price of their bitcoins and Fiat Currency that were accessed, frozen, stolen, and/or misused or that are present in their Mt. Gox accounts and which they cannot access.

67.     But for Karpeles' negligence, Plaintiff's and the Mt. Gox Class' bitcoins and Fiat Currency would not have been compromised and/or lost. The Plaintiff's and Class' bitcoins and Fiat Currency were accessed, frozen, stolen, and/or misused as a result of Karpeles' failure to exercise reasonable care in safeguarding such

1   information by adopting, implementing, and maintaining appropriate data

2   management, accounting, and security measures.

3       68.    The injuries to Plaintiff and the Mt. Gox Class resulting from Karpeles'

4   negligence were reasonably foreseeable, particularly in light of his grossly inadequate

5   accounting, data management, and security processes.

6       69.    Plaintiff and the Mt. Gox Class seek to recover the economic injury and

7   other damages suffered as a result of Karpeles' unlawful conduct, including in the

8   form of the price of the bitcoins and Fiat Currency that were in their Mt. Gox

9   accounts at the time it went dark that is not recoverable under the liquidation

10  proceedings in Mt. Gox's Japanese bankruptcy.

**SECOND CAUSE OF ACTION**

**Fraud Against Mark Karpeles**

**(On behalf of Plaintiff and the Mt. Gox Class)**

11

12

13

14

15      70.    Plaintiff incorporates the foregoing allegations as if fully set forth

16  herein.

17      71.    As described herein, Karpeles engaged in unlawful, deceptive, and

18  unfair conduct.

19      72.    Through Mt. Gox's online marketing materials and advertisements,

20  including its Terms of Use, Karpeles represented to Plaintiff and the Mt. Gox Class

21  that Mt. Gox would, *inter alia*, protect their bitcoins and Fiat Currency, and safely

22  and quickly allow them to buy, sell, trade, or withdraw the same.

23      73.    However, as discussed above, Karpeles did not—and never had any

24  intention to—safeguard or protects his users' bitcoins and Fiat Currency.

25      74.    Thus, Karpeles' representations to Plaintiff and the members of the Mt.

26  Gox Class were knowingly and intentionally false.

27      75.    Knowing that consumers are less likely to do business with companies

28

1  that fail to adequately safeguard and hold their bitcoins and Fiat Currency or allow

2  them to buy, sell, trade, or withdraw the same, Karpeles made these false

3  representations with the intention that Plaintiff and the members of the Class would

4  rely on them in contracting with Mt. Gox and transferring money and Bitcoin into

5  their accounts.

6       76.    Karpeles additionally made false representations to Plaintiff and the

7  members of the Class through Mt. Gox's online Support Desk and in its customer

8  service correspondence, which he controlled and directed, as described in Paragraphs

9  10, 32, and 36, *supra*. In particular, Karpeles falsely claimed that Mt. Gox's

10  withdrawal and deposit issues were only temporary, that withdrawals would soon

11  resume, that he was developing new business relationships with other banks for

12  improved transaction capabilities, and that a security "bug" in Mt. Gox's system was

13  the cause of its suspended withdrawals.

14       77.    Karpeles further concealed the fact that Mizuho was no longer providing

15  international withdrawal services, and thus, U.S. customers had effectively no means

16  to withdraw deposited cash from the Exchange, and that thousands of user bitcoins

17  had been lost or stolen.

18       78.    Knowing that users would stop depositing bitcoins and funds in their

19  accounts, and rather, would attempt to withdraw funds or close accounts if made

20  aware of any large-scale loss/theft of coins, Karpeles made the false representations

21  and omissions with the intent that Plaintiff and the members of the Class would rely

22  on them and continue to deposit money and bitcoins into their Mt. Gox accounts and

23  not attempt to withdraw funds and/or close accounts.

24       79.    Had Karpeles disclosed Mt. Gox's true practices and intentions, Plaintiff

25  and the members of the Class would have stopped depositing cash and/or bitcoins

26  into their Mt. Gox accounts, immediately taken any available steps to remove their

27  assets from the Exchange, or would not have maintained accounts with Mt. Gox at

28

COMPLAINT            17

1   all.

2       80.    Accordingly, Karpeles' fraudulent conduct caused Plaintiff and the Class

3   to suffer actual harm in the amount of the difference between the bitcoins or Fiat

4   Currency that was in their Mt. Gox accounts at the time it went dark and the amount

5   that will be actually returned to them under the liquidation proceedings in Mt. Gox's

6   Japanese bankruptcy.

7       81.    Plaintiff and the Class seek to recover the economic injury and other

8   damages suffered as a result of Defendant Karpeles' unlawful conduct in the form of

9   the price of the bitcoins and Fiat Currency in their Mt. Gox accounts that cannot be

10   recovered.

11   **THIRD CAUSE OF ACTION**

12   **Unjust Enrichment Against Mizuho**

13   **<u>(On Behalf of Plaintiff and the Deposit Class)</u>**

14       82.    Plaintiff incorporates the foregoing allegations as if fully set forth

15   herein.

16       83.    Plaintiff and the Deposit Class conferred a monetary benefit on Mizuho

17   in the form of fees paid for its deposit services.

18       84.    Mizuho appreciates or has knowledge of the benefits conferred upon

19   them by Plaintiff and the Deposit Class.

20       85.    Under principles of equity and good conscience, Mizuho should not be

21   permitted to retain the transactions fees paid by Plaintiff and the Deposit Class,

22   because it knowingly concealed material information from them regarding their

23   transaction deposits (i.e., that they would be unable to thereafter withdraw such

24   money from Mt. Gox's account at Mizuho), which directly resulted in the loss of

25   their monies that they wired to Mt. Gox through Mizuho.

26       86.    Mizuho had a duty to disclose such material information once it stopped

27   processing customer withdrawals.

28

87.     As a result of Mizuho's conduct, Plaintiff and the Deposit Class suffered damages in the form of the transaction fees they paid for Mizuho Bank's wire services.

88.     Plaintiff and the Deposit Class Members have no other adequate remedy at law.

89.     Plaintiff, individually and on behalf of the Deposit Class, seek restitution of all monies Mizuho has unjustly received as a result of its conduct alleged herein, as well as interest, reasonable attorneys' fees, expenses, and costs to the extent allowable, as well as all other relief the Court deems necessary to make them whole.

## FOURTH CAUSE OF ACTION
### Fraud Against Mizuho Bank
### (On Behalf of Plaintiff and the Deposit Class)

90.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

91.     Defendant Mizuho Bank concealed from and/or failed to disclose to Plaintiff and the Deposit Class Members that it had stopped providing cash wire withdrawal services to Mt. Gox and that Deposit Class Members would thereafter be virtually unable to make cash withdrawals from the Exchange.

92.     These omitted and concealed facts were material because a reasonable consumer would have considered them to be important in deciding whether or not to deposit money into the Mt. Gox Exchange.

93.     Mizuho Bank had a duty to disclose such facts because (i) it contributed to Plaintiff and Deposit Class Members' misapprehension of material facts relating to their ability to make cash withdrawals from the Mt. Gox Exchange, (ii) it was in a position to correct these misapprehensions and had knowledge of the fact that Plaintiff and the Deposit Class Members would be unable to withdraw their money from the Mt. Gox Exchange, and (iii) it knew or should have known that Plaintiff and

1    Deposit Class Members could not have reasonably been expected to learn or discover

2    the fact that Mizuho Bank had secretly stopped providing withdrawal services to Mt.

3    Gox and that they would thereafter be virtually unable to make cash withdrawals

4    from the Mt. Gox Exchange.

5         94.   By continuing to facilitate cash deposits into the Exchange even after

6    knowing that it had terminated its withdrawal services to Mt. Gox (and that

7    consumers would thereafter be effectively unable to make cash withdrawals from the

8    Exchange), Mizuho contributed to Plaintiff and the Deposit Class's misapprehension

9    regarding their ability to access their deposited money, thus giving rise to a duty to

10   disclose material facts that would correct their misapprehension.

11        95.   Mizuho knew that if United States customers found out about its new,

12   unreasonable banking policies (especially, the fact that withdrawals were no longer

13   allowed), they would no longer continue making deposits into the Exchange and

14   Mizuho would cease collecting the associated fees. Despite this knowledge, Mizuho

15   continued to accept user deposits into the Mt. Gox Exchange (for which it collected

16   fees on each transaction) and conceal the truth about its withdrawal policies from

17   Plaintiff and the Deposit Class through Mt. Gox's collapse in February 2014.

18        96.   On information and belief, Mizuho instructed its own employees not to

19   reveal that it had stopped processing withdrawal requests for users in the United

20   States so as to perpetuate the false impression that Mt. Gox was operating normally.

21   Mizuho did this to protect its reputation so it would not be publicly viewed as

22   contributing to the collapse of Mt. Gox.

23        97.   Although Mizuho knew that Karpeles was making false and misleading

24   statements to the public and to his Mt. Gox users, *see* Paragraphs 32-37, *supra*, it

25   took no action to correct them. Instead, Mizuho concealed that it was the cause of the

26   Mt. Gox withdrawal delays, concealed the fact that it had implemented banking

27   policies designed to disrupt Mt. Gox's business and relationship with its users, and

28

---

1    stood silent while allowing the public to continue being duped.

2        98.    Upon information and belief, Mizuho prohibited Mt. Gox from

3    disclosing that withdrawal difficulties were attributable to Mizuho, or that Mizuho

4    wanted to terminate its banking relationship with Mt. Gox. By continuing to accept

5    deposits, Mizuho further contributed to the false narrative that the Mt. Gox Exchange

6    was operating properly and that problems with withdrawals were not serious.

7        99.    Plaintiff and the Deposit Class did not know that Mizuho had terminated

8    its provision of withdrawal services to Mt. Gox or that Mt. Gox customers would

9    thereafter be virtually unable to make cash withdrawals from the Mt. Gox Exchange.

10   Had Plaintiff and the Deposit Class known the above facts, they would not have

11   wired (or continued to wire) money to Mizuho for deposit into the Mt. Gox

12   Exchange.

13       100.   Plaintiff and the Deposit Class justifiably relied on the omissions of

14   Mizuho to their detriment. This detriment is evident from the monies lost by Plaintiff

15   and the Deposit Class after being deposited into the Mt. Gox Exchange.

16       101.   As a direct and proximate result of Mizuho's concealment and omission

17   of material facts, Plaintiff and the Deposit Class have suffered actual damages in the

18   form of currency deposited into Mt. Gox's account at Mizuho after Mizuho's

19   decision to cease processing international withdrawals.

20                              **PRAYER FOR RELIEF**

21       **WHEREFORE**, Plaintiff, Joseph Lack, individually and on behalf of the

22   Classes, pray for the following relief:

23       (a)    An order certifying the Classes as defined above, appointing Plaintiff as

24   representatives of the Classes, and appointing his counsel as Class Counsel;

25       (b)    An award of actual damages;

26       (c)    An award of restitution for Defendants' wrongful conduct;

27       (d)    An award of reasonable attorneys' fees and costs;

28

COMPLAINT                                   21

1    (e)    An award of punitive or exemplary damages;

2    (f)    An award of interest;

3    (g)    Such other and further relief that the Court deems reasonable and just.

4                                **JURY DEMAND**

5    Plaintiff requests a trial by jury of all claims that can be so tried.

6                                Respectfully submitted,

7

8                                **JOSEPH LACK,** individually and on behalf

9                                of all others similarly situated,

10   Dated: January 24, 2018          By:/s/Rafey S. Balabanian

11                                One of Plaintiffs' Attorneys

12                                RAFEY S. BALABANIAN (SBN – 315962)

13                                rbalabanian@edelson.com

                                 J. AARON LAWSON (SBN – 319306)
14
                                 alawson@edelson.com
15                                Edelson PC

16                                123 Townsend Street, Suite 100

                                 San Francisco, California 94107
17                                Telephone:  (415) 212-9300

18                                Facsimile:  (415) 373-9435

19                                *Counsel for Plaintiff and the Putative Classes*

20

21

22

23

24

25

26

27

28

COMPLAINT                                22