# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, JOSEPH LACK, ANTHONY MOTTO, and GREGORY PEARCE, individually and on behalf of all others similarly situated, | Case No. 1:14-cv-01437 |
| *Plaintiffs*, | Hon. Gary Feinerman |
| *v.* | Mag. Judge Susan Cox |
| MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual, | |
| *Defendants*. | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT MIZUHO BANK, LTD.'S MOTION TO EXCLUDE THE REPORT AND TESTIMONY OF M. TODD HENDERSON

## TABLE OF CONTENTS

I.     INTRODUCTION...........................................................................................1

II.    FACTUAL BACKGROUND .......................................................................2

III.   ARGUMENT ...............................................................................................5

      A.    Henderson Offers Expert Analysis And Background Facts Regarding Mizuho Bank's Role In The Mt. Gox Exchange ................................................5

      B.    Professor Henderson Has Expertise Over The Subjects Of His Testimony.................................................................9

      C.    Henderson Followed A Simple, Reliable Analytic Method ...........................11

      D.    Henderson's Opinions Are Based On "Facts Or Data," As Used By Rule 702 ...........................................................14

IV.   CONCLUSION ........................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**United States Supreme Court Cases**

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999)..................................................................................5, 11, 12

**United States Circuit Court of Appeals Cases**

*Gayton v. McCoy*,
   593 F.3d 610 (7th Cir. 2010) ..................................................................10, 11

*Harmon v. Gordon*,
   712 F.3d 1044 (7th Cir. 2013) ........................................................................8

*In re James Wilson Assocs.*,
   965 F.2d 160 (7th Cir. 1992) ........................................................................15

*Manpower, Inc. v. Ins. Co. of Penn.*,
   732 F.3d 796 (7th Cir. 2013) ....................................................................... 11

*Smith v. Ford Motor Co.*,
   215 F.3d 713 (7th Cir. 2000) ....................................................................... 14

*Stollings v. Ryobi Techs., Inc.*,
   725 F.3d 753 (7th Cir. 2013) ....................................................................... 15

*Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*,
   223 F.3d 585 (7th Cir. 2000) ....................................................................... 10

*United States v. Blount*,
   502 F.3d 674 (7th Cir. 2007) .......................................................................6, 7

*United States v. Brown*,
   7 F.3d 648 (7th Cir. 1993) ...........................................................................12

*United States v. Hill*,
   818 F.3d 289 (7th Cir. 2016) ..........................................................................5

*United States v. Romero*,
   189 F.3d 576 (7th Cir. 1999) ..........................................................................5

**United States District Court Cases**

*Angelopoulos v. Keystone Orthopedic Specialists, S.C.*,
   No. 12-CV-5836, 2017 WL 2178504 (N.D. Ill. May 16, 2017)........................15

*Anwar v. Fairfield Greenwich Ltd.*,

306 F.R.D. 134 (S.D.N.Y. 2015) ....................................................................8, 9

*Artunduaga v. Univ. of Chicago Med. Ctr.*,
    No. 12 C 8733, 2016 WL 7384432 (N.D. Ill. Dec. 21, 2016) ...........................11

*Dolmage v. Combined Ins. Co. of Am.*
    No. 14 C 3809, 2017 WL 1754772 (N.D. Ill. May 3, 2017) .............................8

*Fletcher v. Doig*,
    196 F. Supp. 3d 817 (N.D. Ill. 2016) .........................................................9, 10

*Indiaweekly.com, LLC v. Nehaflix.com, Inc.*,
    No. 07-CV-0194 (TLM), 2011 WL 13228320 (D. Conn. Feb. 3, 2011) ........................8, 9

*In re Actiq Sales & Mktg. Practices Litig.*,
    No. CIV.A. 07-4492, 2014 WL 3572932 (E.D. Pa. July 21, 2014)............................13, 14

*In re Guidant Corp. S'holders. Derivative Litig.*,
    No. 1:03 CV 955 SEB WTL, 2006 WL 290524 (S.D. Ind. Feb. 6, 2006)........................14

*In re Matter of the Complaint of Ingram Barge Co.*,
    No. CV 13 C 3453, 2016 WL 3763423 (N.D. Ill. July 14, 2016).................................. 7, 8

*Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*,.
    No. 1:09-CV-1685, 2013 WL 6036029 (M.D. Pa. Nov. 13, 2013) ...................................8

*Levin v. Grecian*,
    No. 12 C 767, 2013 WL 3669742 (N.D. Ill. July 12, 2013) .................................7

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    874 F. Supp. 2d 169 (S.D.N.Y. 2012).................................................................14

*Loeffel Steel Products Inc. v. Delta Brands, Inc.*,
    387 F. Supp. 2d 794 (N.D. Ill. 2005) .........................................................15

*Raab v. Wendel*,
    No. 16-CV-1396, 2017 WL 7371180 (E.D. Wis. Dec. 18, 2017) ....................................15

*Richman v. Sheahan*,
    415 F. Supp. 2d 929 (N.D. Ill. 2006) .........................................................11

*Smith v. I-Flow Corp.*,
    No. 09 C 3908, 2011 WL 12556366 (N.D. Ill. May 3, 2011) ...........................7

*United States v. Birks*,
    No. CRIM 07-153, 2009 WL 1702030 (D.N.J. June 16, 2009).......................10

*United States v. Neushwander*,

No. 15 CR 542-1, 2017 WL 4572212 (N.D. Ill. Oct. 14, 2017) ................................. 5, 12

*United States v. Schultz*,
  No. 14-CR-467-3, 2016 WL 7409911 (N.D. Ill. Dec. 22, 2016) ...................................... 14

## Statutory Provisions

Fed. R. Evid. 702 ..................................................................................................... *passim*

Fed. R. Evid. 704 ....................................................................................................... 1, 5

## Other Authorities

Kate Rooney, *SEC Charges Former Bitcoin Exchange And Its Founder With Fraud*,
  CNBC (Feb. 21, 2018), *available at* http://cnb.cx/2CqCjgb ............................................... 9

M. Todd Henderson, *Insider Trading and CEO Pay*,
  64 Vanderbilt L. Rev. 505 (2011) ...................................................................................... 4

M. Todd Henderson, *Taking Systemic Risk Seriously in Financial Regulation*,
  Ind. Law J. (forthcoming) ...................................................................................................4

M. Todd Henderson & Douglas Baird, *Other People's Money*,
  60 Stanford L. Rev. 1309 (2010) .........................................................................................4

M. Todd Henderson & William A. Birdthistle, *Becoming the Fifth Branch*,
  99 Cornell L. Rev. 1 (2012) ............................................................................................... 4

*Virtual Currencies: The Oversight Role of the U.S. Securities and Exchange Commission and
  the U.S. Commodity futures Trading Commission Before the Sen. Cmte. on Banking, Housing,
  & Urb. Affairs*,
    115th Cong. 6–8, *available at* http://bit.ly/2s9bTel .......................................................... 9

## I.     INTRODUCTION

In this fraud action alleging defendants withheld critical information related to the decision to invest and trade on a bitcoin exchange, the factfinder must confront this question: What role do intermediaries play in facilitating transactions to and from exchanges? Anthony Motto alleges that he and others would have never sent money to the online bitcoin exchange Mt. Gox had they known that ███████████████████████████████, Defendant Mizuho Bank, Ltd., ██████████████████ was refusing to process outbound international wires, including dollar-denominated remittances to the United States.

To demonstrate that Mizuho's actions were problematic and establish the merits of his request to represent a similarly-situated class of bitcoin investors, Motto submitted the expert report of University of Chicago Professor M. Todd Henderson. Using his experience as a legal scholar, adjudicator for the Financial Industry Regulatory Authority (FINRA), and frequently published author on securities and law-and-economics related topics, ████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████

Invoking Federal Rules of Evidence 702 and 704, Mizuho seeks to disqualify Professor Henderson and exclude his testimony. The motion should be denied. Seizing on stray and isolated statements, Mizuho first argues that Professor Henderson offers only legal conclusions unhelpful to the trier of fact. But when his testimony is viewed in context, it is clear Henderson

simply explains relevant legal concepts and provides information against which to measure those concepts—that is, quintessential expert testimony. Second, Mizuho suggests that Professor Henderson lacks relevant expertise because he is not a *bitcoin* expert. ███████████████ ████████████████████████████████████████████████████ These opinions apply equally to bitcoin exchanges, and Mizuho provides no reason to think more particularized expertise is required for an expert to provide useful testimony in this case. Third, Mizuho says Henderson's report lacks a methodology. But like other parts of its brief, Mizuho relies on cherry-picked terminology and simply ignores the driving points of Henderson's opinion, which are based on a clear and testable framework. Last, Mizuho takes Henderson to task for relying, in part, on the facts alleged in the operative complaint. But experts frequently assume certain facts as true for purposes of forming their opinions. Mizuho essentially asks for a ruling on the facts of this case in the context of a *Daubert* motion, which is inappropriate and should be rejected.

## II.     FACTUAL BACKGROUND

As the Court is well aware, the claims in this action arise from the collapse of the Mt. Gox Bitcoin Exchange. (Dkt. 245 ¶¶ 1, 41–42.) Beginning in 2012, Mt. Gox contracted with Mizuho Bank to provide banking services, including processing deposits of U.S. dollars into the Exchange's bank account (which could be used to buy bitcoin on the Exchange), as well as international wire transfers out of the Exchange's account (following a sale of bitcoin). (*Id.* ¶¶ 24–27.) Mizuho processed the lion's share of dollar-denominated deposits and withdrawals into and out of Mt. Gox's deposit accounts. But on the basis of nebulous concerns about potential liability, Mizuho attempted to sever the banking relationship in mid-2013. (*Id.* ¶¶ 28–30.)

The first step in this severance was a halting of outbound wire transfers, including to the

United States, from Mt. Gox's account at Mizuho Bank. (*Id.* ¶¶ 30–31.) ████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████ What matters for present purposes is that investors were not told Mizuho would stop processing outbound international wires for Mt. Gox, and that American investors experienced (at best) substantial delays in the processing of requests to withdraw currency from the Exchange. (*Id.* ¶¶ 32–33, 35–38.) As a result, thousands of people had withdrawal requests go unfulfilled prior to the Exchange's collapse. (*Id.* ¶¶ 130, 134, 150.) Motto alleges that Mizuho's decision not to reveal it had stopped processing wires out of the Exchange's bank accounts defrauded those who deposited money into the account. (*Id.* ¶¶ 139–50.) To prove his claim, Motto must adduce evidence that the omitted information was material to his investing decision, such that the law required disclosure to individuals wiring money to the Exchange's account at Mizuho. A similar showing is needed to prevail on the motion for class certification.

To these ends, Plaintiff retained Professor M. Todd Henderson to ████████████

███████████████████████████████████████████████████████████████

████████████████.[1] Henderson is a professor at the University of Chicago Law School, where he teaches (among other things) courses on Securities Regulation, Derivatives, Banking, and Regulation of Financial Markets. (Henderson Report, (Exhibit A) (all Exhibits are attached to the Thomassen Declaration, filed herewith), at 2, 5–7.) He has written numerous articles on these

---

[1] Mizuho insinuates that loose connections to Motto's lawyers biases Henderson. The extent of this relationship is, Henderson stated, knowing attorney Jay Edelson through their children's school and possibly knowing attorney Rafey Balabanian through their children's little league. Henderson also testified he had never been to either lawyer's home, specifically described Edelson as an "acquaintance," and did not remember Mr. Balabanian's last name. (Henderson Deposition Excerpts, attached hereto as Exhibit C, at 29:5–30:25.) In any event, this "bias" is merely fodder for cross-examination, not grounds for exclusion.

topics and applies his expertise in similar settings, such as his work as a referee for the Journal of Law and Economics.[2] (*Id.*) Finally, Henderson has helped resolve problems regarding exchanges and intermediaries through his work as an adjudicator for FINRA, the primary regulator of stock exchange intermediaries in the United States. (Ex. A, at 3.) Henderson's report was based on this deep well of experience, as well as case-related documents and evidence including bank records, Mizuho's corporate deposition, the expert report of Andrew J. Rasmussen, and the operative complaint. (*See* Letter from Benjamin S. Thomassen to Jeffrey J. Resetarits, (Exhibit B).)

Professor Henderson's report draws a series of related conclusions:



---

[2] *See, e.g.*, M. Todd Henderson, *Taking Systemic Risk Seriously in Financial Regulation*, Ind. Law J. (forthcoming); M. Todd Henderson & William A. Birdthistle, *Becoming the Fifth Branch*, 99 Cornell L. Rev. 1 (2012); M. Todd Henderson, *Insider Trading and CEO Pay*, 64 Vanderbilt L. Rev. 505 (2011); M. Todd Henderson & Douglas Baird, *Other People's Money*, 60 Stanford L. Rev. 1309 (2010).

███████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████

## III. ARGUMENT

Federal Rule of Evidence 702 requires courts to serve a gatekeeping function by excluding irrelevant or unreliable expert opinions. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Rule 702 provides: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." "[T]he test for reliability for nonscientific experts is flexible," *United States v. Romero*, 189 F.3d 576, 584 (7th Cir. 1999), and courts have "broad latitude to determine how to evaluate expert testimony," *United States v. Hill*, 818 F.3d 289, 297 (7th Cir. 2016) (internal quotation omitted). Questions as to the credibility and correctness of an expert's theories are reserved for the jury. *See United States v. Neushwander*, No. 15 CR 542-1, 2017 WL 4572212, at *2 (N.D. Ill. Oct. 14, 2017).

### A. Henderson Offers Expert Analysis And Background Facts Regarding Mizuho Bank's Role In The Mt. Gox Exchange.

Mizuho first argues that Henderson's testimony should be excluded because, in Mizuho's view, he offers only legal conclusions. (Dkt. 321, at 4–7.) The argument is constructed around stray comments made by Professor Henderson in his deposition. And, of course, Plaintiffs recognize that an expert is not permitted to state bare legal conclusions. Fed. R. Evid. 704.

But Mizuho's argument badly misreads and mischaracterizes Henderson's testimony. █

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████. Far from providing bare legal

conclusions, Professor Henderson offers useful testimony contextualizing Anthony Motto's

experience, and his contentions for why Mizuho's actions constitute actionable fraud.

While an expert is not permitted to offer legal conclusions that, in essence, tell the jury

what result to reach, an expert is permitted to "provid[e] concrete information against which to

measure abstract legal concepts." *United States v. Blount*, 502 F.3d 674, 680 (7th Cir. 2007).[3]

That is precisely what Professor Henderson does here. Henderson essentially offers five broad

opinions that he develops in his report (introduced above and repeated here):



(Ex. A, at 9–10; Ex. C, 85:20–22.) None of these opinions constitute excludable legal

conclusions. Henderson offers quintessential expert testimony: █████████████████████

██████████████████████████████████████████████████

---

[3]     A healthy portion of Professor Henderson's report also is useful for evaluating Motto's
claim at class-certification that the withheld information was so basic to the investment decision
that the same evidence about that information can support the claim of every proposed Deposit
Class member. Motto understands Mizuho only to be challenging Professor Henderson's
testimony insofar as it is intended for the jury, not for purposes of class certification.

██████████████████████████████████. *See, e.g.*, *Blount*, 502 F.3d at 680; *Levin v. Grecian*, No. 12 C 767, 2013 WL 3669742, at *1 (N.D. Ill. July 12, 2013) (expert may offer opinion on "custom and practice of literary 'co-agent' arrangements and on whether" the parties fit within this arrangement). ████████████████████████████████

█████████████████████████████████ which contextualizes the assumptions Mizuho, Mt. Gox, and Mt. Gox's customers would have made about their relationship, and does not touch on an ultimate issue in this case. *Blount*, 502 F.3d at 680; *see Smith v. I-Flow Corp.*, No. 09 C 3908, 2011 WL 12556366, at *6 (N.D. Ill. May 3, 2011) (party may offer testimony regarding "complex federal regulations" for medical device approval).

As Henderson repeatedly stated in his ████████████████████████████████████



█████████████████████████████████████ Henderson's description and application of these background concepts does not involve drawing legal conclusions. It provides a basis against which the *jury* may judge Mizuho's conduct. *See Blount*, 502 F.3d at 680. And to the extent Henderson used terms with independent legal meaning, such usage was "merely descriptive," as he stated in his deposition. *In re Matter of the Complaint of Ingram Barge Co.*, No. CV 13 C 3453, 2016 WL 3763423, at *8 (N.D. Ill. July 14, 2016) (expert

may testify conduct was "negligent" based on view of evidence "as informed ... by his own expertise"); (Ex. C, 84:9–20, 85:20–24, 86:21–87:9, 122:5–11.) None of this testimony is outcome-determinative. Thus, Professor Henderson offers admissible expert opinions.[4]

Mizuho offers two arguments in an apparent attempt to confuse the issues. First, Mizuho argues, without elaboration, that Professor Henderson's ███████████████████████ ████████████████████████████████████████████████ excludable because they are not "at stake in the litigation." (Dkt. 321, at 7.) This argument refuses to take Motto's legal theory seriously. ███████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Mizuho also claims in a footnote that Henderson cannot testify to issues relating to Mt. Gox customers' states of mind because he lacks personal knowledge. To the extent this is even before the Court, *see Harmon v. Gordon*, 712 F.3d 1044, 1053 (7th Cir. 2013), it should be rejected. ██████████████████████████████████████████████████████

██████████████████████████████████ (*See* Ex. A, at 27–33; Ex. C, at 171:2–13, 194:1–20; *see also Kimberly-Clark Worldwide, Inc. v. First Quality Baby Prods., LLC*, No. 1:09-CV-1685, 2013 WL 6036029, at *3 (M.D. Pa. Nov. 13, 2013) (expert may analyze and testify to expected behavior of economically rational actors); *Indiaweekly.com, LLC v. Nehaflix.com, Inc.*, No. 07-CV-0194 (TLM), 2011 WL 13228320, at *2 (D. Conn. Feb. 3, 2011) (acceptable to assume how a "rational investor" would react to facts); *Anwar v. Fairfield Greenwich Ltd.*, 306 F.R.D. 134,

---

[4] To the extent this Court excludes any individual statements as legal conclusions, Plaintiffs reject the notion that an individually flawed statement automatically disqualifies Professor Henderson's report altogether. *See Dolmage v. Combined Ins. Co. of Am.*, No. 14 C 3809, 2017 WL 1754772, at *5 (N.D. Ill. May 3, 2017) (existence of legal conclusions not grounds to disqualify an entire expert report).

145 (S.D.N.Y. 2015) (same).) This does not speak to any investor's mental state.

Because Henderson's report is rooted in helpful, admissible contextual information about a subject area esoteric to most lay jurors, and does not merely draw determinative legal conclusions, Mizuho's request to exclude it on this basis should be rejected.

### B.    Professor Henderson Has Expertise Over The Subjects Of His Testimony.

Mizuho next argues that Professor Henderson cannot testify regarding the role of intermediaries on exchanges like Mt. Gox because Mt. Gox was a bitcoin exchange, and Henderson's expertise does not specifically extend to bitcoin exchanges. (Dkt. 321, at 8.) But Mizuho assumes that bitcoin exchanges are different from traditional securities or commodities exchanges in kind, not simply degree, and offers no evidence (or argument) to support this view.

This is no surprise: the assumption is unsound. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮ (Ex. A, at 22–24; Ex. C, at 13:15–14:21, 17:12–22.) ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Expert

Report of Mark T. Williams, (Exhibit D), at 21–26.) Even the federal government conceives of cryptocurrency exchanges like Mt. Gox as securities exchanges.[5] This alone undermines Mizuho's argument. And to the extent Mt. Gox was different *in degree* from the exchanges Henderson's academic work frequently deals with, this is merely a subject for cross-examination. *Fletcher v. Doig*, 196 F. Supp. 3d 817, 821–22 (N.D. Ill. 2016) (Feinerman, J.) (specificity of expert's acknowledged experience bears on testimony's weight, not admissibility), *appeal filed*,

---

[5] *See, e.g.*, *Virtual Currencies: The Oversight Role of the U.S. Securities and Exchange Commission and the U.S. Commodity futures Trading Commission Before the Sen. Cmte. on Banking, Housing, & Urb. Affairs*, 115th Cong. 6–8 (statement of Jay Clayton, Chairman, U.S. Securities and Exchange Commission), *available at* http://bit.ly/2s9bTeI; Kate Rooney, *SEC Charges Former Bitcoin Exchange And Its Founder With Fraud*, CNBC (Feb. 21, 2018), *available at* http://cnb.cx/2CqCjgb (SEC says bitcoin exchange was an "unregistered securities exchange").

*Fletcher, et al. v. Doig*, (7th Cir. Sept. 23, 2016); *Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[C]ourts often find … a physician in general practice is competent to testify about problems that a medical specialist typically treats"); *United States v. Birks*, No. CRIM 07-153, 2009 WL 1702030, at \*3 (D.N.J. June 16, 2009) (may not exclude testimony if "the proposed expert does not have the specialization that the court considers most appropriate").

When assessing a proposed expert's qualifications, courts must consider "the proposed expert's full range of experience." *Gayton*, 593 F.3d at 616. Indeed, experience may be "the predominant, if not the sole basis for a great deal" of admissible expert testimony. Adv. Cmte. Notes to Rule 702. An expert is not required to have the best qualifications, or most precise specialization—the question is whether his experience, knowledge, and skill are adequate to justify the conclusions he draws. *See Tuf Racing Prod., Inc. v. Am. Suzuki Motor Corp.*, 223 F.3d 585, 591 (7th Cir. 2000) ("radically unsound" to claim *Daubert* "requires particular credentials for an expert witness"); *see also Gayton*, 593 F.3d at 616; *Doig*, 196 F. Supp. 3d at 822.

 All of this work—and more—has provided Henderson with an ample basis to provide the proffered testimony.

Henderson also reviewed sufficient materials to become familiar with key facts about bitcoin and the operation of the Mt. Gox exchange, including Plaintiffs' Fourth Amended Complaint, relevant discovery from this case, and Andrew J. Rasmussen's expert report on

bitcoin exchanges. (Ex. A, at 9; Expert Report of Andrew J. Rasmussen (Exhibit E).) Mizuho takes issue with the fact that Henderson assumed certain facts to be true as he formulated his opinion, but "it is proper for counsel to furnish factual assumptions to experts as long as the factual assumptions are supported by the record." *Artunduaga v. Univ. of Chicago Med. Ctr.*, No. 12 C 8733, 2016 WL 7384432, at *5 (N.D. Ill. Dec. 21, 2016) (collecting cases). And "the reliability of the data itself is not the object of a *Daubert* inquiry." *Manpower, Inc. v. Ins. Co. of Penn.*, 732 F.3d 796, 808 (7th Cir. 2013). Mizuho also takes issue with the assumptions supplied by Motto's counsel, but "experts routinely base their opinions on assumptions that are necessarily at odds with their adversary's view of the evidence." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). Choosing one view of the evidence over another is not the office of a *Daubert* analysis because "determinations on admissibility should not supplant the adversarial process." *Gayton*, 593 F.3d at 616.

In any event, Mizuho's initial premise is faulty: Henderson familiarized himself with relevant information beyond the assumptions counsel provided. ███████████████

████████████████████████████████████████████████████████

████████████████████████████████ Relying on such materials and his vast experience enabled Henderson to use his opinions about exchanges and intermediaries to form specific opinions relevant to this case. As such, Henderson's opinion has a sufficient foundation.

### C.     Henderson Followed A Simple, Reliable Analytic Method.

Mizuho next argues that Professor Henderson has not used a reliable method of analysis rooted in "objective criteria" to draw his conclusions. (Dkt. 321, at 9–13.) This argument ignores unfavorable portions of Henderson's deposition and report, and fails as a result.

The core case for assessing the reliability of experiential expert testimony is *Kumho Tire*, which notes that only *relevant* factors should apply to evaluations of expert testimony. 526 U.S.

at 150 ("much depends upon the particular circumstances" of a case in deciding which factors apply). In this case, those factors are whether Henderson's method (1) is capable of testing; (2) involves an unjustifiable extrapolation from an accepted premise to an unfounded conclusion, (3) accounts for alternative explanations; and (4) is generally accepted. *See* Adv. Cmte. Notes to Rule 702; *Neushwander*, 2017 WL 4572212, at *2. In addition, it must be kept in mind that "the touchstone of admissibility under Rule 702 is helpfulness to the jury." *Id.* at *3.

██████████████████████████████████████████

████████████████████████████████████████

█████████████████████████████████████████████

████ Such contextual information is not only a proper subject of expert testimony, *see, e.g.*, *United States v. Brown*, 7 F.3d 648, 652 (7th Cir. 1993), but is not subject to a reliability challenge of the type Mizuho contemplates—it is not clear how background information can be produced through a method or principle, rather than the expert's expertise and knowledge itself.

Mizuho's assertion that Professor Henderson applied no methodology nor provided "objective criteria" against which to measure his opinions is not credible. ████████████████

██████████████████████████████████████████

██████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████████

███████████████████████████

Ignoring this and instead focusing on an out-of-context quote, █████████████████████



This methodology, and Henderson's report, satisfies Rule 702. First, it is capable of testing:

Next, the report is not unwarranted extrapolation or a failure to account for other explanations—

Finally, Henderson's testimony is grounded in his academic training in the subfield of law and economics. The practical application of principles accepted in that subfield is routinely deemed by courts to be an appropriate methodology for expert analysis. *See, e.g.*, *In re Actiq Sales & Mktg. Practices Litig.*, No. CIV.A. 07-4492, 2014 WL 3572932, at *8 (E.D. Pa. July 21, 2014) (damages calculations based on law and economics principles is acceptable expert methodology); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 874 F. Supp. 2d 169, 175 (S.D.N.Y. 2012) (law and economics professor could testify about risk-allocation

13

purposes of a clause in a merger agreement); *In re Guidant Corp. S'holders. Derivative Litig.*,

No. 1:03 CV 955 SEB WTL, 2006 WL 290524, at *10 (S.D. Ind. Feb. 6, 2006) (law and

economics expert testified to practical rationale for termination fees in large merger transaction).

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ First, it is proper for an expert to

assume facts as true—including Plaintiff's allegations that "Mizuho … was Mt. Gox's bank

partner in Japan … [and] facilitated international cash wire transfers into the Exchange and

processed user requests to withdraw cash from the Exchange." (Dkt. 245 ¶ 24; *United States v.*

*Schultz*, No. 14-CR-467-3, 2016 WL 7409911, at *5 (N.D. Ill. Dec. 22, 2016) ("routine" for

expert to assume facts)). ████████████████████████████████████████████

████████████████████████████████████████████████████. Mizuho has admitted

that it "processed wire transfer requests based on instructions from its customer Mt. Gox." (Dkt.

246 ¶ 26). ████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████ This testimony is relevant in numerous ways to Motto's theory of fraud.

Mizuho's challenge is an attack on his theories' correctness—a judgment reserved for the

jury. *Smith v. Ford Motor Co.*, 215 F.3d 713, 719 (7th Cir. 2000). It should be rejected.

### D. Henderson's Opinions Are Based On "Facts Or Data," As Used By Rule 702.

Finally Mizuho says Henderson is the "mouthpiece of the plaintiff" for relying on a

handful of assumptions from counsel. (Dkt. 321, at 13–15.) This is wrong as a factual matter.

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████ And besides, there is nothing problematic about

an expert relying on counsel-supplied assumptions. *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 768 (7th Cir. 2013) ("vulnerable assumptions" in expert testimony "does not make [it] irrelevant or inadmissible"); *Angelopoulos v. Keystone Orthopedic Specialists, S.C.*, No. 12-CV-5836, 2017 WL 2178504, at *10 (N.D. Ill. May 16, 2017) (expert may "testify about disputed facts in order to provide the factual assumptions on which he relies"); *Raab v. Wendel*, No. 16-CV-1396, 2017 WL 7371180, at *3 (E.D. Wis. Dec. 18, 2017) ("[C]ounsel-provided assumptions [are] an appropriate and efficient means of narrowing the scope of the expert's analysis"). Mizuho doesn't like the assumptions, but it is unsurprising that it takes a divergent view of the facts. The time to litigate its contentions is at summary judgment or a trial, not a *Daubert* motion.

Mizuho's principal case, *Loeffel Steel Products Inc. v. Delta Brands, Inc.*, 387 F. Supp. 2d 794 (N.D. Ill. 2005), shows how off-base the argument is. In disqualifying an expert as a "mouthpiece of the plaintiff," the *Loeffel Steel* court essentially faulted the plaintiff for attempting to skirt hearsay rules by laundering inadmissible evidence through an expert opinion. *Id.* at 808-09. The court relied on a Seventh Circuit comment that a plaintiff could not prove a fact by asking the expert to assume the truth of that fact. *Id.* at 809 (citing *In re James Wilson Assocs.*, 965 F.2d 160, 173 (7th Cir. 1992)). But this conclusion has little to do with the practice of asking an expert to assume the truth of certain facts to develop an opinion. Mizuho provides no reason to think that Motto does not stand ready to offer evidence that would permit a jury to find the facts that Henderson assumes, and then find Henderson's report credible, too.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Exclude the expert testimony of Professor Henderson should be denied in its entirety.

15

Dated: March 2, 2018

Respectfully submitted,

/s/  Benjamin S. Thomassen

Jay Edelson
jedelson@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
J. Aaron Lawson*
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Admitted only in Illinois, supervised by
members of the California Bar

Counsel for Plaintiffs and the Putative
Classes

**CERTIFICATE OF SERVICE**

I hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system, and via electronic mail to Mark Karpeles, on March 2, 2018.

/s/ Benjamin S. Thomassen

17