## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE and ANTHONY MOTTO, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| | ) | Hon. Gary Feinerman |
| Plaintiffs, | ) | |
| | ) | Magistrate Judge Susan Cox |
| v. | ) | |
| | ) | |
| MARK KARPELES, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT MARK KARPELES' MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Dated:  September 25, 2018

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

Defendant Mark Karpeles, by and through his undersigned counsel, hereby submits his memorandum in support of his Motion to Dismiss the Fourth Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2).

## BACKGROUND[1]

Mt. Gox Bitcoin Exchange ("Mt. Gox") was a bitcoin exchange located in Tokyo, Japan that operated from 2009-2014. (Fourth Am. Compl. ¶¶ 1, 13, 33.) Customers could sign up for an account with Mt. Gox that allowed them to buy, sell, and store bitcoins. (*Id.* ¶ 13, 14.) Customers were asked to verify their accounts by providing Mt. Gox with information such as name, country of birth, physical address, and proof of identity. (*Id.* ¶ 15.) Users of Mt. Gox could transfer bitcoins directly into their accounts or deposit cash into their accounts by wiring money to Mizuho Bank. (*Id.* ¶ 16.) Mt. Gox charged a transaction fee for each trade made on the exchange. (*Id.* ¶ 17.) In order to withdraw cash from the exchange, Mt. Gox users submitted requests through their Mt. Gox accounts. (*Id.* at ¶ 26.) Those requests were sent to Mizuho Bank in Japan for processing. (*Id.*) In or around mid-2013, Mizuho Bank stopped processing international wire withdrawals for Mt. Gox. (*Id.* ¶ 31.) On February 7, 2014, customers were no longer able to withdraw any form of currency from the Mt. Gox website. (*Id.* ¶ 39.) On February 24, 2014, the Mt. Gox website went offline. (*Id.* ¶ 41.) On February 28, 2014, Mt. Gox filed for bankruptcy protection in Japan. (*Id.*)

Mr. Karpeles was the President and CEO of Mt. Gox. (Declaration of Mark Karpeles, ("Karpeles Decl.") at ¶ 7, attached hereto as Exhibit A.) Mr. Karpeles was also the sole shareholder and CEO of Tibanne KK, the parent company of Mt. Gox. (Fourth Am. Compl. ¶ 8.) Tibanne KK owned eighty-eight percent of the shares of Mt. Gox. (Karpeles Decl. at ¶ 6.)

---

[1] The following allegations are taken from Plaintiffs' Fourth Amended Complaint, are included solely for purposes of this motion and should not be deemed an admission of any of them.

Plaintiffs assert that "[t]hrough Tibanne KK and the Mt. Gox Exchange, Karpeles conducted business throughout this District, the State of Illinois, and the United States." (Fourth Am. Compl. ¶ 8.) Count I is a claim for conversion/trespass to chattels, alleging that Mr. Karpeles intentionally, with gross recklessness, or negligently stole Plaintiffs' bitcoins and fiat currency. (*See id.* ¶¶ 95-101.) Count II is a claim for negligence, alleging that Mr. Karpeles owed Plaintiffs a duty of reasonable care to prevent improper access and misuse of Plaintiffs' bitcoins and fiat currency and to allow authorized users complete access to the same and breached those duties. (*See id.* ¶¶ 102-109.) In Count III, Plaintiffs claim consumer fraud, alleging that Mr. Karpeles represented that he would protect their bitcoins and fiat currency and allow them to buy, sell, trade, and withdraw those funds, while siphoning, or allowing others to siphon, funds from Mt. Gox customers' accounts. (*See id.* ¶¶ 110-116.) Plaintiffs also allege that Mr. Karpeles concealed that Mizuho Bank was no longer providing international withdrawal services, that thousands of bitcoins had been lost or stolen, and that he was shutting down the exchange and filing for bankruptcy. (*See id.* ¶¶ 117-120.)

## ARGUMENT

A motion brought pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges whether the court has personal jurisdiction over a defendant. *See* Fed. R. Civ. P. 12(b)(2). Plaintiffs bear the burden of establishing personal jurisdiction. *Advanced Tactical Ordinance Sys., LLC v. Real Actional Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). When a rule 12(b)(2) motion is decided based on written materials without holding an evidentiary hearing, the plaintiff must make a *prima facie* case for personal jurisdiction. *See uBID, Inc. v. GoDaddy Group, Inc.*, 523 F.3d 421, 423 (7th Cir. 2010). The court may consider affidavits and other written materials submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*,

338 F.3d 773, 782 (7th Cir. 2003). When a defendant submits "affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).

## I. The Complaint Should be Dismissed as to Mr. Karpeles Because This Court Lacks Personal Jurisdiction Over Him and Finding Personal Jurisdiction Would Offend Traditional Notions of Fair Play and Substantial Justice.

When exercising diversity jurisdiction, district courts "apply the personal jurisdiction rules of the state in which they are located." *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 912 (7th Cir. 2015). The Illinois long-arm statute permits the exercise of "jurisdiction to the limit set by the Due Process Clauses of the Constitution." *Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016); *see also* 735 ILCS 5/2-209(c) ("A court may . . . exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States.").

"Under the Fourteenth Amendment's Due Process Clause, a court may exercise personal jurisdiction over an out-of-state defendant when that defendant has 'minimum contacts with the [forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Philos*, 802 F.3d at 912-13 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (alteration in original) (internal quotation marks omitted). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled into court there. This purposeful-availment requirement ensures that a defendant's amenability to jurisdiction is not based on 'random, fortuitous, or attenuated contacts,' but on contacts that demonstrate a real relationship with the state with respect to the transaction at issue." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492-93 (7th Cir. 2014) (quoting *Burger King Corp. v. Rudzewicz*, 471

3

U.S. 462, 475 (1985)) (internal quotation marks omitted). Neither general nor specific jurisdiction exists in this case. In addition, any exercise of personal jurisdiction over Mr. Karpeles would offend traditional notions of fair play and substantial justice.

### A. The Court Indisputably Does Not Have General Jurisdiction over Mr. Karpeles.

Plaintiffs do not appear to allege that this Court has general jurisdiction over Mr. Karpeles, nor could they. General personal jurisdiction allows for suits against an individual or entity for any purpose; and exists only "when the [party's] affiliations with the State in which suit is brought are so constant and pervasive as to render it essentially at home in the forum State." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697-98 (7th Cir. 2015) (quoting *Daimler AG v. Bauman*, 134 S. Ct. 746, 751 (2014)). "The Due Process Clauses of the Fifth and Fourteenth Amendments permit courts, federal and state, to exercise general jurisdiction only when 'the continuous . . . operations within a state [are] so substantial and of such a nature as to justify suit . . . on causes of action arising from dealings entirely distinct from those activities.'" *Id.* (quoting *Daimler*, 134 S. Ct. at 762.) Plaintiffs do not allege any operations by Mt. Gox or Mr. Karpeles within Illinois aside from a single, general allegation that, "[t]hrough Tibanne KK and the Mt. Gox Exchange" Mr. Karpeles "conducted business throughout this District, the State of Illinois, and the United States." (Fourth Amend. Compl, ¶ 8.) Mt. Gox was never registered to do business in Illinois, did not maintain an office in Illinois, and had no employees in Illinois. (Karpeles Decl. at ¶ 9). Mr. Karpeles has never resided in Illinois, owned property in Illinois, or paid taxes in Illinois. (*Id.* at ¶ 4.) Nor has Mr. Karpeles ever maintained an office in Illinois or had any employees in Illinois. (*Id.* at ¶ 5.) There are no specific allegations showing such constant and pervasive affiliations with Illinois that Mt. Gox or Mr. Karpeles are subject to general jurisdiction and may be haled into Illinois' courts for any reason.

4

### B. The Court Cannot Exercise Specific Jurisdiction Over Mr. Karpeles.

"For a court to exercise specific jurisdiction, the lawsuit must 'result[] from alleged injuries that arise out of or relation to' the defendant's contacts with the forum." *Philos*, 802 F.3d at 913 (quoting *Burger King*, 471 U.S. at 472-73) (alteration in original) (internal quotation marks omitted). A defendant's contacts with the forum jurisdiction must be intentional to support specific jurisdiction. *See Walden v. Fiore*, 571 U.S. 277, 286 (2014); *see also Noboa v. Barcelo Corporacion Empresarial, SA*, 812 F.3d 571, 572 (7th Cir. 2016).

"The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Advanced Tactical*, 751 F.3d at 801 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 775 (1984)). "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 802 (internal quotation marks omitted). "The mere fact that [a defendant's] conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction." *Walden*, 571 U.S. at 291. The relationship with a forum State "must arise out of contacts that the defendant himself creates with the forum State." *Id.* at 284.

"Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain*, 743 F.3d at 492. Specific jurisdiction for intentionally tortious conduct requires "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012). There is no specific jurisdiction over Mr. Karpeles here.

1. **Mr. Karpeles has not purposefully and expressly directed any activities at Illinois or purposefully availed himself of the privilege of conducting business in Illinois.**

Mr. Karpeles has not "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state" nor does the "alleged injury [arise] out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King*, 471 U.S. at 472). Mr. Karpeles is a citizen of France who currently resides in Japan. (Karpeles Decl. at ¶¶ 2-3). Mr. Karpeles has never resided in Illinois, owned property in Illinois or paid taxes in Illinois. (*Id.* at ¶ 4.) Mr. Karpeles has never been involved in litigation in Illinois and was unaware of the current lawsuit until seeing a news item far after it had started. (*Id.* at ¶ 25.) The only arguable contact Mr. Karpeles had with Illinois was through the Mt. Gox website.

A defendant's running "a passive website does not support the exercise of personal jurisdiction over that defendant in a particular forum just because the website can be accessed there." *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004). The Seventh Circuit has warned that "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'" *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) (citing *Illinois v. Hemi Grp., LLC*, 622 F.3d 754, 760 (7th Cir. 2010)). This is because "[t]he interactivity of a website is . . . a poor proxy for adequate in-state contacts." *Advanced Tactical*, 751 F.3d at 803. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." *be2 LLC*, 642 F.3d at 559.

A defendant must target the forum state for a court to exercise personal jurisdiction. Personal jurisdiction was found in *Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010) where the defendant "maintained commercial websites through which customers could purchase cigarettes, calculate their shipping charges using their zip codes, and create accounts." *Hemi Grp. LLC*, 622 F.3d 757-58. The most important factor was that the defendant "expressly elected to do business with the residents of forty-nine states" by stating that "it would ship to any state in the country except New York." *Id.* at 758. The defendant, "in fact, knowingly did do business with Illinois residents." *Id.* Similarly, the Seventh Circuit found specific personal jurisdiction where a defendant directed a national advertising campaign in the United States and there was evidence that defendant placed physical ads in Illinois venues. *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 428 (7th Cir. 2010). In *Tamburo*, the defendants were alleged to have used their websites "to defame and tortiously generate a consumer boycott against [plaintiff], knowing that he lived and operated his software business in Illinois and would be injured there." *Tamburo*, 601 F.3d at 697. In that case, "some of the messages specifically listed [plaintiff's] Illinois address and urged readers to harass him." *Id.* These cases show the type of targeted conduct required for specific jurisdiction.

In contrast, no personal jurisdiction exists where the evidence does not show that the defendant "deliberately targeted or exploited the Illinois market." *be2 LLC*, 642 F.3d at 559. In *be2 LLC*, the defendant, a resident of New Jersey, was alleged to be the co-founder of the defendant and "responsible for the majority of business transactions" on the dating website sladurana.com. *Id.* at 556. The Seventh Circuit found that the defendant did not have sufficient contacts with Illinois despite the fact that twenty people created accounts on defendant's dating website showing "the nickname and age of each user, the city the user then called home, and the

type of relationship the user was seeking." *Id.* at 559. The "constitutional requirement of minimum contacts is not satisfied simply because a few residents have registered accounts." *Id.* Those were "attenuated contacts that could not give rise to personal jurisdiction without offending traditional notions of fair play and substantial justice." *Id.*

Plaintiffs have not alleged any conduct purposefully directed towards Illinois. Plaintiffs do not allege that Mt. Gox or Mr. Karpeles engaged in any advertising targeted at Illinois or any national advertising campaign. In fact, neither did. (Karpeles Decl. ¶¶ 10-11, 16.) Further Mr. Karpeles was not personally responsible for any advertising done by Mt. Gox. (*Id.* ¶ 16.) While Plaintiffs allege that they relied on Mt. Gox advertisements, those advertisements are in actuality statements on Mt. Gox's homepage and from Mt. Gox's Terms of Use. (Fourth Amend. Compl. ¶¶ 13, 14, and at 4 n.2-5.) Plaintiffs do not allege that they saw any advertisements or any advertising campaign outside of those on the Mt. Gox website, which they chose to visit.

Further, the two Illinois-based Plaintiffs have listed only three total communications alleged sent by Mr. Karpeles and/or Mt. Gox. Gregory Greene only alleges that Mt. Gox customer service sent him one communication. [Dkt. 10 ¶ 6.] Anthony Motto alleges only two communications with Mt. Gox. One was on or around February 19, 2014 regarding his deposit with Mizuho Bank, and one was on February 24, 2014[2] where Mt. Gox informed Mr. Motto that it would "check with the banking team" regarding his deposit and "let [him] know as soon as possible." (Fourth Amend. Compl. ¶¶ 75.) This is unlike *Felland*, in which the Seventh Circuit found personal jurisdiction where defendants sent "myriad additional communications" to a forum address as "part of a comprehensive and ongoing scheme to perpetuate . . . fraud." *Felland*, 682 F.3d at 678 (7th Cir. 2012). The *Felland* plaintiff alleged "an ongoing fraudulent scheme that included several letters, multiple phone calls, and almost two dozen emails, all to the

---

[2] The Fourth Amended Complaint alleges this date as February 24, 2016, which is presumably a typographical error.

[plaintiff's] home in [the forum state]." *Id.* at 676. Three e-mail responses to Plaintiffs are not sufficient to confer personal jurisdiction over Mr. Karpeles.

Nor have Plaintiffs shown that Mt. Gox or Mr. Karpeles expressly aimed any intentional conduct at Illinois. The "'express aiming' inquiry overlaps with the question whether the defendant knew the plaintiff would suffer the injury in the forum state" and the two are considered together. *Tamburo*, 601 F.3d at 704. "There is an important distinction between intentional activity which foreseeably causes injury in the forum and intentional acts specifically targeted at the forum." *TechnoLines, LP v. GST AutoLeather, Inc.*, 799 F. Supp. 2d 871, 878 (N.D. Ill. 2011). Only an estimated 1.5% of Mt. Gox's over 450,000 accounts were from Illinois. (Karpeles Decl. ¶ 13.) Nor is there evidence that Mr. Karpeles or Mt. Gox was aware that the named Plaintiffs resided in Illinois at the time of the alleged conduct. Mr. Greene specifically stated that he "chose" not to verify his account by submitting his personal information to Mt. Gox. (Dkt. 10 ¶ 2.) Only after the alleged tortious conduct did Mr. Greene submit his information to Mt. Gox, on February 10, 2014. (Dkt. 10 ¶ 6.) The Fourth Amended Complaint alleges that Anthony Motto joined Mt. Gox in early 2014. (Fourth Amend. Compl. ¶ 70.) There is no allegation that Mr. Motto provided information that he resided in Illinois when creating the account. Additionally, the Terms of Use were not directed at Illinois but were located on the Mt. Gox website with no geographic limitations on where they could be observed. (Fourth Amend. Compl. ¶ 52.)

Plaintiffs have not demonstrated that Mt. Gox or Mr. Karpeles purposefully directed any activities at Illinois or purposefully availed themselves of the privilege of doing business Illinois. Nor can they. Merely running a website is insufficient to confer personal jurisdiction.

### 2. None of the alleged injuries arise out of Mr. Karpeles's forum-related activities.

None of the allegedly unlawful conduct alleged in the Fourth Amended Complaint occurred in Illinois or was directed at Illinois. Plaintiffs merely assert the legal conclusion that "[t]hrough Tibanne KK and the Mt. Gox Exchange, Karpeles conducted business throughout this District, the State of Illinois, and the United States." (Fourth Amend. Compl. ¶ 8.) Plaintiffs do not allege any personal activities of Mr. Karpeles or any specific activities of Mr. Karpeles in this District, the State of Illinois, or the United States. Even the alleged wrongful conduct took place in Japan, not in Illinois. (*See generally* Fourth Amend. Compl.) Nor is there any allegation that Mt. Gox or Mr. Karpeles "holds itself out as open to do business with" Illinois residents. *Hemi Group, LLC* 622 F.3d at 758. There was no decision by Mr. Karpeles or Mt. Gox to operate or conduct business in Illinois. (Karpeles Decl. ¶ 12.) Additionally, unlike Mizuho Bank, Plaintiffs have not shown knowing acceptance of funds from Illinois by Mt. Gox or Mr. Karpeles during the time of the alleged wrongful conduct. Customers directly deposited funds to an account at Mizuho Bank in Japan. (Karpeles Decl. ¶ 19.) Mt. Gox had a total of over 1,000,000 accounts, with approximately 1.5% of the 450,000 associated addresses located in Illinois. (Karpeles Decl. ¶ 13.) Mr. Karpeles himself did not have personal knowledge of whether or how many account-holders were located in Illinois. (*Id.* ¶ 14.)

This case is most similar to *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711, 716 (N.D. Ill. 2011). In *Original Creations*, the plaintiff claimed a patent violation against defendant Life+Gear, which was incorporated in Delaware with its principal place of business in California. *Original Creations*, 836 F. Supp. 2d at 713. Life+Gear was dismissed as a defendant because the plaintiff did not show that it advertised to or targeted Illinois residents on its website or that it held itself out as open to do business with Illinois residents. *Id.* at 716. The court found

10

that, while one documented sale through the Life+Gear website to an Illinois resident was purposeful, it "was an insufficient bases upon which to find personal jurisdiction." *Id.* Mt. Gox had approximately 1.5% of its addresses affiliated with over 1,000,000 accounts located in Illinois. (Karpeles Decl. ¶ 13.) And, as discussed above, there was no advertising to or targeting of Illinois residents.

Mr. Karpeles did not purposefully direct his activities at Illinois or avail himself of the privilege of doing business Illinois, nor did Plaintiffs' alleged injuries arise out of Mr. Karpeles' non-existent Illinois-related activities. There is no alleged intentional conduct expressly aimed at Illinois or any knowledge on the part of Mr. Karpeles that the effects of any allegedly injurious conduct would be felt in Illinois. Nor could they. (*See generally* Karpeles Decl.)

### C. Forcing Mr. Karpeles to Defend This Suit in Illinois Offends Traditional Notions of Fair Play and Substantial Justice.

Even if Plaintiffs satisfied these initial requirements for exercising personal jurisdiction, doing so would offend traditional notions of fair play and substantial justice. The following factors are relevant in making this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477).

The burden on the defendant here is significant as Mr. Karpeles currently resides in Japan and the Japanese Government has forbidden him from leaving. (Karpeles Decl. ¶¶ 3, 25.) Illinois has no particular interest in adjudicating a dispute involving a French national living in Japan for transactions occurring in Japan. There is also a much more efficient resolution of the controversies in this matter. Plaintiffs "seek to recover the economic injury and other damages

suffered as a result of Karpeles' unlawful conduct, including in the form of the price of the bitcoins and Fiat Currency that were in their Mt. Gox accounts at the time it went dark that is not recoverable under the liquidation proceedings in Mt. Gox's Japanese bankruptcy." (Fourth Amend. Compl. ¶¶ 101, 109.) But the total value of the bitcoins and fiat currency are now recoverable in the Japanese proceedings. All individuals who lost their funds may submit a claim to the proceeding in Japan. (Karpeles Decl. ¶ 27.) As that proceeding is now a civil rehabilitation, all claimants are likely to be reimbursed their funds in bitcoin and bitcoin cash. (*Id.*) This means that the claimants are highly likely to be fully compensated for their losses *and* the subsequent rise in the value of bitcoin. As Plaintiffs are likely to be fully compensated by the Japanese civil rehabilitation proceeding without further cost to any party, this class action suit is not the most efficient resolution of the controversies. This full compensation also satisfies Plaintiffs' interest in obtaining convenient and effective relief. There is no shared interest of the States in any substantive social policy to allow this case to proceed in this forum. For all of these reasons, maintenance of this suit offends traditional notions of fair play and substantial justice.

## II. Mr. Karpeles is Protected by Illinois' Fiduciary Shield Doctrine.

Even if this Court finds that the factors required for specific jurisdiction are present, and that maintenance of this suit does not offend traditional notions of fair play and substantial justice, jurisdiction is barred under Illinois' fiduciary shield doctrine. The fiduciary shield doctrine "prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Levin v. Posen Found*, 62 F. Supp. 3d 733, 741 (N.D. Ill. 2014) (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1306 (Ill. 1990)). The fiduciary shield does not apply "if the agent was acting also or instead on his own behalf--to 'serve his personal interests'" or "was on a frolic of his own." *Rice v. Nova*

*Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (citing *Rollins*, 565 N.E.2d at 1318). "In evaluating whether it is equitable to apply the doctrine in the circumstances of a particular case, courts consider whether (i) the individual's personal interests motivated his actions and presence in the state and (ii) the individual's actions were discretionary." *Sommese v. Am. Bank & Tr. Co., N.A.*, No. 11-CV-2827, 2012 U.S. Dist. LEXIS 101716, at *9 (N.D. Ill. July 23, 2012) (citing *C.S.B. Commodities, Inc. v. Urban Trend (HK) Ltd.*, 626 F. Supp. 2d 837, 847 (N.D. Ill. 2009); *Consumer Benefit Servs., Inc. v. Encore Mktg. Int'l, Inc.*, 2002 U.S. Dist. LEXIS 20884, at *7 (N.D. Ill. Oct. 30, 2002)).

Mr. Karpeles was, at all relevant times, acting in his capacity as President and CEO of Mt. Gox. The mere fact that he was the sole shareholder of an entity owning 88% of Mt. Gox is not enough to prevent the application of the fiduciary shield rule. Merely being in a position of authority does not mean that one has discretion to carry out actions in a forum state. *See Maxwell v. Vertical Networks, Inc.*, No. 03 C 5715, 2005 U.S. Dist. LEXIS 7619, 2005 WL 950634, at **15-16 (N.D. Ill. Mar. 18, 2005). Even being physically present in Illinois and targeting communications at Illinois is not sufficient for personal jurisdiction where a defendant is acting within the scope of his or her employment. *See Glass v. Kemper Corp.*, 930 F. Supp. 332, 341 (N.D. Ill. 1996) (fiduciary shield protected supervisor where his letters and phone calls to Illinois were "necessary, strictly job-related, and within the scope of [his] employment"). Plaintiffs have not demonstrated that Mr. Karpeles was acting for his personal gain, and not for the gain of Mt. Gox, or that he was "on a frolic of his own."

Courts may decline to apply the fiduciary shield where "the defendant is the alter ego of the entity for which he is a fiduciary." *Clipp Designs, Inc. v Tag Bags, Inc.*, 996 F. Supp. 766, 768 (N.D. Ill. 1998). Being the dominant shareholder is insufficient for showing that a defendant

was the alter ego of the corporation. *See Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 381 (7th Cir. 2008) (citing *Melko v. Dionisio*, 580 N.E.2d 586, 595 (Ill. App. Ct. 1991) (noting that "the mere allegation that [defendant] was a dominant or sole shareholder is insufficient to enable a court to disregard the separate corporate existence")). Not even having one, single shareholder is proof that the corporation is the alter ego of the shareholder. *Id.* (citing *Plastic Film Corp. of Am., Inc. v. Unipac, Inc.*, 128 F. Supp. 2d 1143, 1147 (N.D. Ill. 2001) ("[T]he fact that a corporation has only one single shareholder is not proof that the corporation is the 'alter ego' of that shareholder.")).

In order to show that an individual is the alter ego of a corporate entity, a plaintiff must demonstrate two things: "first, there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and second, circumstances must be such that an adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1345 (7th Cir. 1987) (quoting *Gallagher v. Reconco Builders, Inc.*, 415 N.E.2d 560, 563-64 (Ill. App. Ct. 1980)). Illinois courts consider several factors including: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere façade for the operation of the dominant stockholders." *Steiner Elec. Co. v. Maniscalco*, 51 N.E.3d 45, 57 (Ill. App. Ct. 2016).

The Court should apply the fiduciary shield doctrine here. Mt. Gox was not the alter ego of Mr. Karpeles. Mt. Gox observed corporate formalities and kept corporate records. (Karpeles Decl. ¶ 20.) Mt. Gox issued shares of stock, of which Tibanne KK owned eighty-eight percent. (*Id.* at ¶ 6.) Mr. Karpeles never commingled funds, assets or identities with Mt. Gox. (*Id.* at ¶¶ 18, 22.) Mr. Karpeles never diverted assets from Mt. Gox to himself or any other person. Mt. Gox was not undercapitalized. (*Id.* at ¶ 21.) All Plaintiffs have alleged is that "[*t*]*hrough Tibanne KK and the Mt. Gox Exchange*, Karpeles conducted business throughout this District, the State of Illinois, and the United States." (Fourth Amend. Compl. ¶ 8) (emphasis added). This is not enough. The fiduciary shield doctrine is an independent basis precluding the exercise of personal jurisdiction over Mr. Karpeles in this case.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court grant this Motion and: (i) dismiss these proceedings against him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; and (ii) grant all other just relief.

Dated: September 25, 2018

Respectfully submitted,

Mark Karpeles

By:    /s/ Bevin Brennan
          One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*