# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and ANTHONY MOTTO, individually and on behalf of all others similarly situated, | Case No. 14-cv-01437 |
| Plaintiffs, | Hon. Gary Feinerman |
| v. | Magistrate Judge Susan Cox |
| MARK KARPELES, an individual, | |
| Defendant. | |

## DEFENDANT MARK KARPELES' REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO DISMISS THE FOURTH AMENDED COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(2)

Dated: October 30, 2018

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

The myriad deficiencies in Plaintiffs' Opposition to Defendant Mark Karpeles' Motion to Dismiss the Fourth Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(2) confirm that this Court lacks personal jurisdiction over Mr. Karpeles:

- Despite their obligation to "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction," Plaintiffs have failed to submit any such affirmative evidence, relying almost exclusively on their allegations in the Complaint.

- Plaintiffs' response fails to address the majority of the Seventh Circuit authority on exercising personal jurisdiction. Plaintiffs' argument instead is based primarily on this Court's ruling regarding Mizuho Bank's contacts, which are completely different.

- Plaintiffs falsely minimize the burden defending this suit would place on Mr. Karpeles and the existence of a more convenient and efficient forum to gain relief.

- Plaintiffs incorrectly focus on discretion as a bar to the fiduciary shield doctrine, while this Court has recognized that the proper focus of the inquiry is whether Mr. Karpeles was acting in his own personal interests.

- Finally, recent Seventh Circuit precedent directly contradicts Plaintiffs' argument that Mr. Karpeles has somehow waived his personal jurisdiction defense.

Under binding Seventh Circuit law and the evidence submitted to this Court, this Court lacks personal jurisdiction over Mr. Karpeles, and the case against him must be dismissed.

## I. Plaintiffs Have Failed to Submit Affirmative Evidence Supporting the Exercise of Jurisdiction, Necessitating Dismissal.

Mr. Karpeles submitted an affidavit with his Memorandum in support of his Motion to Dismiss. [Dkt. No. 392-1.] Because Mr. Karpeles submitted an "[a]ffidavit or other evidence in opposition to the exercise of jurisdiction," the Seventh Circuit requires Plaintiffs to "go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." (Mem. at 3, quoting *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 783 (7th Cir. 2003).) Plaintiffs completely ignored this requirement. This alone warrants dismissal.

With rare exception, Plaintiffs only cite the allegations in the Fourth Amended Complaint to contend that this Court can exercise jurisdiction over Mr. Karpeles. (*See* Opp. at 2-4, 6, 8-9,

11.) Merely citing the operative complaint is insufficient to support jurisdiction over Mr. Karpeles as a matter of law due to Mr. Karpeles' affidavit. *Purdue Research*, 338 F.3d at 783.

The few additional citations to the record do not cure this problem. Plaintiffs first cite two parts of their expert report provided in support of their motion for class certification. (Opp. at 3 and 6 (citing Dkt. 295 Ex. 1 at 16 n. 38); *id.* at 6 (citing Dkt. 295 Ex. 1 at 14).) To the extent that citing an expert without any personal knowledge constitutes providing "evidence" to support the exercise of personal jurisdiction over a defendant at all, the first citation to the report has nothing whatsoever to do with the question at hand, as it states in full:

> I have reviewed Gox's Terms of Use, as they were submitted in this case. In those terms, Gox represents that "it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf." This language would be understood to refer to this internal accounting scheme. (Opp. at 3 and 6 (citing Dkt. 295 Ex. 1 at 16 n. 38).)

This has nothing whatsoever to do with whether Mr. Karpeles has "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state" or if the "alleged injury [arises] out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). It does not even support the statements in the Opposition for which it is provided, namely as a supporting citation about the security of an account supposedly made at Mr. Karpeles' direction. (Opp. at 3 and 6.)

The only other citation to the expert report is a gross mischaracterization and ignores Plaintiffs' own contradictory allegations. While the expert opined that "individual members registering at Gox were <u>expected</u> to provide a valid copy of a government issued photo ID and proof of residence (less than 6 months old) to attain *verified* status (required for raising withdrawal limitations or performing banking actions associated with conventional fiat money),"

Plaintiffs have contorted that statement in the Opposition into an unsupported assertion that Mr. Karpeles (not Mt. Gox) "began insisting that exchange users 'verify' their accounts by providing documentation regarding their identity and location." (Opp. at 6 (citing Dkt. 295 Ex. at 1 at 14) (emphasis in italics original, underlined emphasis added.)) That is absolutely not what the expert stated; Plaintiffs blatantly and grossly mischaracterize the term "verified" as used by the expert. The citation to the expert report does not provide any evidence that all users were required to verify their location, and in fact, these Plaintiffs did not do so when registering their accounts.

Plaintiff Greene admits that he did not provide any location information when he registered his account; instead, he "chose" not to verify his account by submitting his personal information to Mt. Gox. [Dkt. 10 ¶ 2.] Mr. Greene only submitted his information to Mt. Gox on February 10, 2014, *after* the alleged tortious conduct occurred. [Dkt. 10 ¶ 6.] Defendant Motto only attempted to open his account on February 15, 2014, *after* the alleged tortious conduct occurred. (Fourth Amend. Compl. ¶¶ 70-71.) Mr. Motto never contends in the complaint or in the Opposition that he ever submitted details about his residence to Mt. Gox.

The final two citations to deposition testimony are also totally irrelevant to the inquiry regarding personal jurisdiction. Plaintiffs only reference portions of two depositions, one in which Mr. Motto notes that Mr. Gox "appeared 'regulated'" and another deposition of a former plaintiff who opines that Mt. Gox "appeared 'professional.'" (Opp. at 3 (citing Dkt. 295 Ex. 3 at 196:4-15 and Dkt. 295 Ex. 5 at 30:5).) This testimony has no impact on the question at hand.

That is all that Plaintiffs cite affirmatively in their Opposition. The complaint does not suffice, and the few additional citations are woefully deficient. Failing to "submit affirmative evidence supporting the exercise of jurisdiction," this Court has no basis to exercise jurisdiction over Mr. Karpeles. This is reason alone to grant the Motion to Dismiss.

**II.     This Court Lacks Jurisdiction Over Mr. Karpeles Because Neither He Nor Mt. Gox Purposefully and Expressly Directed Any Activities at Illinois or Purposefully Availed Themselves of the Privilege of Conducting Business in Illinois.**

Plaintiffs concede that this Court does not have general jurisdiction over Mr. Karpeles, as they only argue that this Court can exercise specific personal jurisdiction over him. (Mem. at 4; Opp. at 5-8.) Plaintiffs never mention, and therefore abandon, the unfounded claim that "Karpeles conducted business throughout this District, the State of Illinois, and the United States." (Fourth Amend. Compl. ¶ 8.) Even the alleged wrongful conduct took place in Japan, not in Illinois. (*See generally* Fourth Amend. Compl.)

The analysis is then whether the Court can exercise specific personal jurisdiction over Mr. Karpeles, and the answer is a resounding no. Mr. Karpeles has not "purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state" nor does the "alleged injury [arise] out of the defendant's forum-related activities." *Tamburo*, 601 F.3d at 702 (citing *Burger King*, 471 U.S. at 472). Plaintiffs fail to address the litany of Seventh Circuit authority addressing specific jurisdiction over defendants that run websites, the precise question at issue here. (Mem. at 5-7 and 9, citing *Advanced Tactical Ordinance Sys., LLC v. Real Actional Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014); *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011); *Illinois v. Hemi Grp., LLC*, 622 F.3d 754 (7th Cir. 2010); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421 (7th Cir. 2010); *Tamburo*, 601 F.3d 693; *Jennings v. AC Hydraulic A/S*, 383 F.3d 546, 550 (7th Cir. 2004).) Ignoring these cases, Plaintiffs rely heavily on this Court's previous decision in *Lack v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016). (Opp. at 1, 5, 7-9.) But Mr. Karpeles and Mizuho Bank are in entirely different positions. Plaintiffs make great unsupported leaps in order to try to equate Mr. Karpeles to Mizuho Bank. There is no reason to believe these stretches of the facts, which are also unsupported by any evidence that would allow the Court to believe them.

### A. Mr. Karpeles lacked knowledge that Plaintiffs were located in Illinois, which is very different from Mizuho Bank.

What Mizuho Bank knew and what Mr. Karpeles knew about these Plaintiffs is very different and compels a different result in this case for Mr. Karpeles. Mizuho Bank had what Mt. Gox and Mr. Karpeles clearly lacked: knowledge of Plaintiffs' location. This Court's decision as to Mizuho Bank stated that the bank remained silent and accepted deposits "with the *knowledge* of the deposit's California origin and Lack's presence in California." *Lack v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 862 (N.D. Ill. 2016) (emphasis added). Mizuho Bank "created the necessary relationship with California by accepting Lack's deposit, *knowing* that it arrived from a California branch and a California resident, and profiting from the associated fees." *Id.* at 863 (emphasis added).

Unlike Mizuho Bank, Plaintiffs fail to show that Mr. Karpeles or Mt. Gox was aware that the named Plaintiffs resided in Illinois at the time of the alleged conduct. In fact, both Plaintiffs did not provide the information to Mt. Gox when opening their accounts. There are no allegations that Mr. Motto ever provided information about his location, and Mr. Greene did so only at the eleventh hour *after* the alleged tortious conduct occurred, months after he "chose" not to provide this personal information. [Dkt. 10 ¶¶ 2, 6.] Mr. Motto admits that he attempted to open his account on February 15, 2014, *after* the alleged tortious conduct occurred. (Fourth Am. Compl. at ¶ 71.) There is no allegation that Mt. Gox was ever aware that Mr. Motto resided in Illinois or that his funds originated from there. In fact, the Complaint alleges that the funds were never received by Mt. Gox. (*Id.* at ¶¶ 73, 74.)

Plaintiffs attempt to get around this fatal defect by stating that the wire transfer to Mizuho Bank notified the *bank* that the funds originated in Illinois and that somehow information that Mizuho Bank received can be imputed to Mr. Karpeles personally. (Opp. at 6.) Under United

States banking regulations, Mizuho Bank was *required* to have knowledge of the international wire transfer originator's address. *Lack*, 169 F. Supp. 3d at 861. Without any supporting evidence whatsoever, Plaintiffs now argue that "[t]hrough Mt. Gox, Karpeles controlled the account with Mizuho -- the route through which all incoming deposits traveled -- and any itemized statement would have information about incoming deposits." (Opp. at 6.) There is no particular allegation or evidence to suggest that an accountholder in a bank would receive notice of the address of each and every depositor on a deposit statement (nor does experience bear that out). Lacking any support, Plaintiffs then have to make the next unsupported leap, namely that Mr. Motto's residence "attached to the deposit he wired to Mt. Gox's bank account" at *Mizuho Bank* would have somehow informed *Mr. Karpeles* of Mr. Motto's location. (*Id.*) This is many steps too far. Plaintiffs do not even make this specious argument regarding Mr. Greene to somehow tie Mr. Karpeles to this forum for his claim. (Opp. at 6.) There is no reason to believe that Mt. Gox or Mr. Karpeles were given any information on where wire transfers to Mizuho Bank originated.

Plaintiffs' claim that Mt. Gox "began insisting that exchange users 'verify' their accounts," including a user's location, is not even what their own expert states. (Opp. at 6; *supra* at 2-3.) This generic statement cannot override that these two particular defendants did not provide their location when registering at Mt. Gox. They cannot try to hale Mr. Karpeles into this Court by stating that Mr. Karpeles is somehow at fault for not trying to find their addresses some other way (through the bank), out of some 450,000 accounts. This is ludicrous.

Plaintiffs ignore all of the binding Seventh Circuit case law Mr. Karpeles cited on this point except for one, *Felland v. Clifton*, 682 F.3d 665, 670 (7th Cir. 2012). Plaintiffs mischaracterize Mr. Karpeles' argument in contending that affirmative misrepresentations and

knowing silence should be treated in the same manner. (Opp. at 7-8.) The key point is whether a defendant knows where the plaintiff is located. Plaintiffs even admit this, arguing that the *Felland* applies to "individuals *known* to reside in particular states." (Opp. at 8 (emphasis added).) The defendant in *Felland* had multiple contacts with the plaintiff, and the defendant knew the plaintiff lived in the forum state. *Felland*, 682 F.3d at 670. This Court held that *Felland* was not distinguishable as to Mizuho Bank: "this suit differs from *Felland* in that Clifton directed communications to Felland in Wisconsin, while Mizuho remained silent *when knowingly accepting Lack's deposits from California*, but that distinction does not warrant a different result." *Lack*, 169 F. Supp. 3d at 862 (emphasis added). That is, the Court found that Mizuho Bank *knew* that a then-plaintiff resided in the forum state of California. This comports with other Seventh Circuit case law that found personal jurisdiction existed only where a defendant conducted activities knowingly against Illinois residents. *See, e.g., Tamburo*, 601 F.3d at 697 (finding that the defendant knew that the plaintiff lived and worked in Illinois, even listing the plaintiff's Illinois address when urging readers to harass him); *Hemi Grp.,* 622 F.3d at 758 (holding that the defendant, "in fact, *knowingly* did do business with Illinois residents") (emphasis added).

Plaintiffs cannot find refuge in whether other consumers could access Mt. Gox's website or conducted business with it. (Opp. at 6-7.) As this Court recognized, "[s]pecific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members." *Lack*, 169 F. Supp. 3d at 866 (citing *Senne v. Kan. City Royals Baseball Corp*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) ("In a purported class action, specific jurisdiction must be demonstrated by the named plaintiffs."); *Sinohui v. CEC Entm't, Inc.*, No. EDCV 14-2516-JLS (KKx), 2015 U.S. Dist. LEXIS 23599, at *4 (C.D. Cal. Feb. 26, 2015); *AM Trust v. UBS AG*, 78

F. Supp. 3d 977, 986 (N.D. Cal. 2015) ("[C]laims of unnamed class members are irrelevant to the question of specific jurisdiction."); *Ambriz v. Coca Cola Co.*, No. 13-cv-03539-JST, 2014 U.S. Dist. LEXIS 9870, at *15-18 (N.D. Cal. Jan. 27, 2014); *cf.* 7A Charles Alan Wright *et al.*, Federal Practice and Procedure § 1757 (3d ed. 1998) ("The general rule is that only the residence of the named parties is relevant for determining when venue is proper.")). The Court's focus must be on Mr. Greene and Mr. Motto only for purposes of establishing specific personal jurisdiction. Whether other users registered their accounts using an Illinois address is irrelevant to this analysis. (Opp. at 6-7.)[1]

The only other case Plaintiffs cites is a First Circuit case that conflicts with the binding Seventh Circuit authority. The First Circuit Court of Appeals held that exercising personal jurisdiction over a defendant was proper where the website involved did not impose any geographic limitations. (Opp. at 7-8, citing *Plixer Int'l. Inc. v. Scrutinizer GmbH*, -- F.3d ---, No. 18-1194, 2018 U.S. App. LEXIS 25981 (1st Cir. September 13, 2018).) This Court, however, must follow the Seventh Circuit, not the First Circuit, and Plaintiffs' need to look to other circuits to find support for their position while ignoring the Seventh Circuit case law is telling. The settled, binding precedent in the Seventh Circuit is that merely operating an interactive website that is accessible in the forum State *cannot* serve as the basis for personal jurisdiction: "[c]ourts should be careful in resolving questions about personal jurisdiction involving online contacts *to ensure that a defendant is not haled into court simply because the defendant owns or operates a website that is accessible in the forum state, even if that site is 'interactive.'*" *be2 LLC*, 642 F.3d at 558 (citing *Hemi Grp.*, 622 F.3d at 760) (emphasis added); *see id.* at 559

---

[1] Even if non-named class members or other consumers could be considered, the "constitutional requirement of minimum contacts is not satisfied simply because a few residents have registered accounts." *be2 LLC*, 642 F.3d at 559.

8

(holding that operating a website that does not target the forum state does not allow for the exercise of personal jurisdiction over that party without offending the Constitution).

In their Opposition, Plaintiffs fail to address the other factors that the Seventh Circuit has used to determine whether a defendant has purposefully and knowingly directed its activities towards the forum state through a website, thereby conceding that none of them support the exercise of personal jurisdiction over Mr. Karpeles. Plaintiffs have not alleged: (1) any conduct purposefully or knowingly directed towards Illinois or a purposeful availment of the privilege of conducting business in Illinois; (2) that Mt. Gox or Mr. Karpeles "deliberately targeted or exploited the Illinois market"; (3) that Mt. Gox or Mr. Karpeles engaged in any advertising targeted at Illinois or any national advertising campaign; or (4) that Mt. Gox or Mr. Karpeles "holds itself out as open to do business with" Illinois residents. *See Tamburo*, 601 F.3d at 702; *be2 LLC*, 642 F.3d at 559; *uBID*, 623 F.3d at 428; *Hemi Grp.,* 622 F.3d at 758; *Original Creations, Inc. v. Ready Am., Inc.*, 836 F. Supp. 2d 711 (N.D. Ill. 2011).

Plaintiffs have failed to satisfy their burden to show that this Court can exercise personal jurisdiction over Mr. Karpeles under the binding law of the Supreme Court and the Seventh Circuit. Mr. Karpeles did not purposefully direct his activities at Illinois or avail himself of the privilege of doing business Illinois, nor did Plaintiffs' alleged injuries arise out of Mr. Karpeles' non-existent Illinois-related activities. The Court does not have specific personal jurisdiction over Mr. Karpeles, and the case against him should be dismissed with prejudice.

### III. Forcing Mr. Karpeles to Defend This Suit in Illinois Offends Traditional Notions of Fair Play and Substantial Justice.

Plaintiffs' discussion of the traditional notions of fair play and substantial justice ignores the heavy burden litigating in this forum imposes on Mr. Karpeles, who cannot leave Japan, and misleads the Court about the availability of a more convenient and efficient forum for their

claims. (Opp. at 8-11.) Plaintiffs do not even recount the factors considered in determining whether personal jurisdiction offends traditional notions of fair play and substantial justice, which include: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Felland*, 682 F.3d at 677 (quoting *Burger King*, 471 U.S. at 477). "Of these factors, the burden on the defendant forced to litigate in a foreign forum is still the primary concern." *Leibovitch v. Islamic Republic of Iran*, 188 F. Supp. 3d 734, 755 (N.D. Ill. 2016) (citing, *inter alia*, *Asahi Metal Indus. Co. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987) ("The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders.")).

The Court made no ruling whatsoever regarding Mr. Karpeles in its determination of whether it can exercise personal jurisdiction over Mizuho Bank. (Opp. at 8-9, citing *Lack*, 169 F. Supp. 3d at 863.) This Court looked to the very different circumstances regarding the bank's knowledge and actions in its short discussion of the prong, an argument that Mizuho had forfeited in any event by not making it in its opening brief. *Lack*, 169 F. Supp. 3d at 863. Mr. Karpeles' situation is markedly different, and exercising personal jurisdiction over him would offend traditional notions of fair play and substantial justice.

Plaintiffs' efforts to downplay the burden and interests involved with having a foreign national living abroad in a country he is forbidden to leave defend a lawsuit in this forum ring hollow. (Opp. at 9-11.) The Japanese Government has forbidden Mr. Karpeles from leaving Japan, imposing a significant burden not present for Mizuho Bank. (Karpeles Decl. ¶¶ 3, 25;

*Lack*, 169 F. Supp. 3d at 865.) Additionally, discovery would be extremely difficult, despite Plaintiffs' non-specific claims of purported "accommodations" that could be made. (Opp. at 10-11.) To the contrary, such accommodations may not be possible. "Because Japan is not a party to the Hague Evidence Convention, compelling evidence, whether testimonial or documentary, from a third-party witness in Japan for a case litigated in an American court is extremely burdensome and sometimes impossible." *U.S.O. Corp. v. Mizuho Holding Co.*, No. 06 C 0459, 2007 U.S. Dist. LEXIS 71924, at *17 (N.D. Ill. Sep. 27, 2007). Mr. Karpeles' counsel does not pretend to be an expert in Japanese law, but the Court cannot accept Plaintiffs' claims about accommodations in light of known obstacles. This issue alone carries "significant weight" in whether the Court can exercise jurisdiction over Mr. Karpeles.

Plaintiffs' point regarding the fact that Mt. Gox filed for bankruptcy before Mizuho Bank filed its motion to dismiss for lack of personal jurisdiction is murky at best. (Opp. at 9.) Mizuho Bank did not initially raise an argument about the exercise of jurisdiction offending fair play and substantial justice in this case and apparently gave it only the most cursory treatment. *Lack*, 169 F. Supp. 3d at 863-64. Whether Plaintiffs have access to a more efficient and convenient forum for their claims remains a factor for this Court's consideration in the full analysis here.

The Japanese bankruptcy proceedings were converted into rehabilitation proceedings in which Plaintiffs may be made whole for all of their claims. (Mem. at 11-12.) While Plaintiffs claim that the possibility that creditors may be made whole in those proceedings "should be viewed with skepticism," their counsel did not have that skepticism in another District Court. (Opp. at 9.) Their counsel thought highly enough of that possibility to seek a stay in another similar case:

> On June 22, 2018, the Tokyo District Court converted the Japanese bankruptcy to a new civil rehabilitation proceeding. *The effect of this new Japanese proceeding*

11

*is potentially significant to claims asserted in this case, particularly because the appointed rehabilitation trustee announced that the Mt. Gox estate may have sufficient assets (following the sale of a sum of bitcoins held by the estate, which has left the estate with cash assets greater than $617M in USD, along with over 143,000 in bitcoin) to pay in full the claims of Mt. Gox users who lost money or bitcoin when Mt. Gox collapsed, including Lack and potential members of the putative class alleged here. …*

*In light of the unique posture of this case and to best conserve the Court's limited resources, the Parties recommend that the case against Mizuho be stayed until February 28, 2019.*

(*Lack v. Mizuho et al.*, District Court for the Central District of California, Case No. 2:18-cv-00617-RGK-GJS [Dkt. 88] at 2-3, a copy of which is attached hereto as Exhibit A) (emphasis added). Plaintiffs should not be allowed to knowingly forego this efficient and convenient method of recovery.

At least four of the five factors weigh heavily in finding that maintaining personal jurisdiction over Mr. Karpeles would offend traditional notions of fair play and substantial justice. The mere fact that Messrs. Greene and Motto reside in Illinois is insufficient to hold otherwise. The Court cannot exercise jurisdiction over Mr. Karpeles for this additional reason.

## IV. Mr. Karpeles is Protected by Illinois' Fiduciary Shield Doctrine.

Plaintiffs' argument against the fiduciary shield doctrine relies on the wrong standard. (Opp. at 11-12.) The fiduciary shield doctrine "prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Levin v. Posen Found*, 62 F. Supp. 3d 733, 741 (N.D. Ill. 2014) (quoting *Rollins v. Ellwood*, 565 N.E.2d 1302, 1306 (Ill. 1990)). Plaintiffs do not argue that Mt. Gox was the alter ego of Mr. Karpeles; therefore they have waived that argument. *A.C. v. Standard Bank & Trust Co.*, No. 15 C 7693, 2016 U.S. Dist. LEXIS 48513, at *4 (N.D. Ill. Apr. 11, 2016) (holding that a party waives a claim or argument by failing to respond to arguments made in a motion to

dismiss); *see also Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041, 1043 (7th Cir. 1999).

Plaintiffs' argument that Mr. Karpeles controlled Mt. Gox is insufficient to preclude application of the fiduciary shield doctrine. (Opp. at 11.) As this Court has recognized, discretion is not enough to exercise personal jurisdiction; the central concern of the fiduciary shield doctrine is "whether a defendant's conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests." *Fletcher v. Doig*, 125 F. Supp. 3d 697, 718 (N.D. Ill. 2014) (quoting *Femal v. Square D Co.*, 903 N.E.2d 32, 38 (Ill. App. Ct. 2009)). The fiduciary shield doctrine does not apply if the individual "was acting also or instead on his own behalf--to 'serve his personal interests'" or "was on a frolic of his own." *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994) (citing *Rollins*, 565 N.E.2d at 1318). Even Plaintiffs' cited authority recognizes that the fiduciary shield doctrine does not apply if that party is "act[ing] in his own personal interest." (Opp. at 11, citing *Mission Measurement Corp. v. Blackbaud, Inc.*, 287 F. Supp. 3d 691, 709 (N.D. Ill. 2017).)

Mr. Karpeles was, at all relevant times, acting in his capacity as President and CEO of Mt. Gox. Plaintiffs have not demonstrated that Mr. Karpeles was acting for his personal gain, and not for the gain of Mt. Gox, or that he was "on a frolic of his own." (*See* Mem. at 12-15 and cases cited therein.) Plaintiffs concede that Mt. Gox was not the alter ego of Mr. Karpeles. (Opp. at 11.) The fiduciary shield doctrine applies here and is yet another basis that precludes the exercise of personal jurisdiction over Mr. Karpeles in this forum.

## V.   Mr. Karpeles Has Not Waived His Personal Jurisdiction Objection.

Mr. Karpeles has not waived his jurisdictional arguments and has contested personal jurisdiction throughout these proceedings. (Opp. at 12.) Counsel for Mr. Karpeles filed their appearances on April 4, 2014. [Dkts. 51-53.] "During court proceedings on April 7, 2014,

counsel for Karpeles and Tibanne informed the Court and Plaintiffs that they filed their appearance in the case in order to assert Karpeles' and Tibanne's defenses of lack of personal jurisdiction and improper service of process." [Dkt. 77, ¶ 3.] There is no time limit on asserting a personal jurisdiction defense. *See Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 905-06 (7th Cir. 2016) (holding a defendant does not waive their personal jurisdiction defense by failing to assert it within the 21-day period for responding to a complaint); *see also Swanson v. City of Hammond*, 411 F. App'x 913, 915 (7th Cir. 2011) ("As long as defendants comply with the rules by raising their defenses in their first responsive pleading or consolidate their defenses in a pre-pleading motion under Fed. R. Civ. P. 12(b), they do not waive their Rule 12(b) defenses.").

Plaintiffs state that "Karpeles admittedly has not attempted to defend the claims against him on the merits." (Opp.at 12.) In order to "waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Mobile Anesthesiologists Chi., Ltd. Liab. Co. v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010). Waiver is found in situations where a defendant "fully participated in litigation of the merits for over two-and-a-half years without actively contesting personal jurisdiction . . . [and] participated in lengthy discovery, filed various motions and opposed a number of motions." *Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993). The cases cited by Plaintiffs hold the same. (Opp. at 12 citing *Lowe v. CVS Pharmacy*, 233 F. Supp. 3d 636, 641-42 (N.D. Ill. 2017) (finding waiver of personal jurisdiction objection by engaging in "extensive discovery" for almost two years, filing or joining in "multiple motions," and responding to "many others"); *Pierson v. Nat'l Inst. For Labor Rels. Research*, No. 15 C 11049, 2016 U.S. Dist. LEXIS 144002, at *8-11 (N.D. Ill. Oct. 17, 2016)

14

(finding no waiver based on removal, "by engaging in litigation" that was "still in its early stages," and exhausting settlement possibilities before filing other pleadings).)

Mr. Karpeles has consistently asserted his personal jurisdiction defense, and the limited actions of previous counsel did not waive it. Mr. Karpeles' conduct in defending this case rises nowhere near the level of participation in cases where defendants have been found to have waived the objection. Plaintiffs do not even contend that they had any "reasonable expectation that Mr. Karpeles [would] defend the suit on the merits" or "cause[d] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." Under Seventh Circuit law, Mr. Karpeles did not waive this objection.

## PRAYER FOR RELIEF

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court grant his Motion to Dismiss and: (i) dismiss these proceedings against him with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction; and (ii) grant all other just relief.

Dated: October 30, 2018

Respectfully submitted,

Mark Karpeles

By: /s/ Bevin Brennan
      One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*