UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE and ANTHONY MOTTO, individually and on behalf of all others similarly situated, | ) ) ) ) | Case No. 14-cv-01437 |
| | ) | Hon. Gary Feinerman |
| Plaintiffs, | ) ) | |
| | ) | Magistrate Judge Susan Cox |
| v. | ) ) | |
| MARK KARPELES, an individual, | ) ) | |
| Defendant. | ) | |

**DEFENDANT MARK KARPELES' MEMORANDUM IN SUPPORT
OF HIS MOTION TO STAY THE CASE BASED ON IMPENDING MOOTNESS,
<u>OR IN THE ALTERNATIVE TO STRIKE CLASS ALLEGATIONS</u>**

Dated: February 25, 2019

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Defendant Mark Karpeles*

Defendant Mark Karpeles, by and through his undersigned counsel, hereby submits his memorandum in support of his Motion to Stay the Case Based on Impending Mootness, or in the Alternative to Strike the Class Allegations.

## INTRODUCTION

A lot has happened in the five years after this case was filed involving the cryptocurrency exchange Mt. Gox. Plaintiffs Gregory Greene and Anthony Motto seek to hold Mr. Karpeles personally liable for any losses they sustained from their investments in bitcoin on the Mt. Gox exchange that they could not recover as claimants in Mt. Gox's bankruptcy proceedings.

But through a series of events, notably the recovery of a significant amount of lost bitcoins and the rise in the value of bitcoins, the likelihood that Plaintiffs and others will obtain a full recovery in Mt. Gox's Japanese legal proceedings is high. Whether that will happen should be known within a matter of months. In light of the status of the Japanese proceedings, this case should be stayed in order to conserve judicial resources and to preclude unnecessary legal expenses.[1] In the alternative, the Court should strike the class allegations, as a class action is not the superior method to adjudicate this controversy.

## BACKGROUND

The issues raised in this Motion are limited, and Mr. Karpeles provides a short recitation of the points relevant to this Motion. In this lawsuit, Plaintiffs seek to represent a class to try to recover amounts lost in the demise of a cryptocurrency bitcoin exchange Mt. Gox, which is currently in civil rehabilitation proceedings in Japan. Plaintiffs do not seek recovery in this

---

[1] The parties await the Court's ruling on Mr. Karpeles' Motion to Dismiss for Lack of Personal Jurisdiction. By submitting this Motion, Mr. Karpeles does not waive his right to contest that this Court lacks personal jurisdiction over him and expressly maintains his objection to the personal jurisdiction of this Court over him. As ordered by the Court, Mr. Karpeles is "proceed[ing] on the assumption that [his] motion to dismiss will be denied." [Dkt. No. 401.] Mr. Karpeles also reserves his right to seek further relief based on the Court's forthcoming ruling on that motion to dismiss, including but not limiting to seeking to certify the issue for interlocutory appeal and/or a stay pending appeal.

lawsuit against Mt. Gox but only against an individual, Mark Karpeles. Plaintiffs assert three counts against Mr. Karpeles based on the general theory that Mr. Karpeles is liable for the loss of their bitcoins and fiat currency: Count I for conversion/trespass to chattels (*see* Fourth Am. Compl. ¶¶ 95-101), Count II for negligence (*see id.* ¶¶ 102-109), and Count III for consumer fraud (*see id.* ¶¶ 110-116). In each of the counts against Mr. Karpeles, Plaintiffs seek actual damages only in the amount that is not recoverable in Mt. Gox's Japanese bankruptcy proceedings. (*Id.* ¶¶ 101, 109, 121.)

Since the filing of this lawsuit, the Japanese proceedings have changed from liquidation-style bankruptcy proceedings to a civil rehabilitation proceeding. After Mt. Gox initially filed bankruptcy due to the loss of bitcoins, it was later able to recover a substantial number of bitcoins which were then sold at far higher prices than what customers like Plaintiffs paid. The trustee in the Japanese bankruptcy proceedings was able to sell bitcoins at a price that yielded a sum that is expected to compensate Plaintiffs and other Mt. Gox customers in full by merely filing a simple claims form in the Japanese proceedings. The initial deadline of October 22, 2018 for claims to be submitted was subsequently extended to December 26, 2018. The trustee in the Japanese proceedings intends to complete the review of all exchange-related claims by March 15, 2019 with a further review period of March 22-29, 2019. (Exhibit A, January 24, 2019 Civil Rehabilitation Proceedings Order). A civil rehabilitation plan is due by April 26, 2019. (*Id.*) From the commencement of a rehabilitation plan to confirmation of a plan usually takes approximately five months. (*See, e.g.,* "An introduction to court procedures for insolvency in Japan" at 9 (a copy of the document (*https://www.jurists.co.jp/sites/default/ files/tractate_pdf/en/An%20introduction%20of%20insolvency%20in%20Japan_final_20110401. pdf*) is attached hereto as Exhibit B) The Tokyo District Court has included this five-month

2

period as part of "the indicative procedures timelines." (*See* "Restructuring and insolvency in Japan: overview" at 7, a copy of which is attached as Exhibit C.) A short stay is warranted in light of the likelihood of full recovery in the proceedings in Japan.

Not only are claimants in the Japanese proceedings taking full advantage of a comprehensive recovery method, the organization of creditors and existence of different views among them shows that former Mt. Gox customers are fully engaged, willing to protect their own interests, and do not need two self-appointed representatives to advocate for them or seek to recover on their behalf. A class action is not a superior method to adjudicate these claims. In the alternative to a stay, Plaintiff's class allegations should be stricken.

**I.     THIS COURT SHOULD STAY THE PROCEEDINGS PENDING THE OUTCOME OF THE JAPANESE REHABILITATION PROCEEDINGS WHICH WILL LIKELY RESULT IN FULL RECOVERY TO PLAINTIFFS.**

This matter should be stayed because Plaintiffs' claims are expected soon to be mooted by the Japanese rehabilitation proceedings.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005), quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). Courts must "balance the competing interests of the parties and the interest of the judicial system," *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011), and consider the following factors when deciding whether to enter a stay: "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court," *Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill.

3

2009). "The parties and issues in two suits need not be identical for a court to stay proceedings in one suit pending a decision in another." *Leung v. Xpo Logistics, Inc.*, No. 15 C 03877, 2015 U.S. Dist. LEXIS 184207, at *3 (N.D. Ill. Aug. 12, 2015) (citing *Landis*, 299 U.S. at 254); *see also In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1049 (N.D. Ill. 2012). While the parties to the Japanese rehabilitation proceedings and the parties to this suit are not identical, the key issue, whether Plaintiffs have recoverable damages, is identical.

Staying this case would not prejudice Plaintiffs or cause them a tactical disadvantage. Any prejudice caused by a delay "can be minimized . . . by periodically evaluating the status of the two cases and determining whether a stay is still warranted." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d at 1052. There is no risk of indefinite delay as the Japanese Trustee is scheduled to review proofs of rehabilitation claims from Mar 22, 2019 to March 29, 2019 and submit his proposed rehabilitation plan by April 26, 2019. (Ex. A at 2). There is a clear case of hardship or inequity to Mr. Karpeles if the case goes forward. As discussed more fully below, Plaintiffs have recently served voluminous discovery requests on Mr. Karpeles and "[r]equiring Defendant to submit to voluminous, potentially unnecessary discovery would be inequitable and a waste of time and resources." *Kotlyar v. Univ. of Chi. Med. Ctr.*, No. 17 C 4729, 2017 U.S. Dist. LEXIS 197167, at *9 (N.D. Ill. Nov. 30, 2017). Mr. Karpeles would likely have to engage in unnecessary, extensive and expensive discovery absent a stay.

A stay would also simplify the issues in question by mooting Plaintiffs' requested relief. See *Yusuf Asad Madyun v. Thompson*, 657 F.2d 868, 872 (7th Cir. 1981) ("Allegations are moot when a plaintiff has already been made whole for damage it claims to have suffered.") (internal citation and quotations omitted). Plaintiffs "seek to recover the economic injury and other damages suffered as a result of Karpeles' unlawful conduct, including in the form of the price of

4

the bitcoins and Fiat Currency that were in their Mt. Gox accounts at the time it went dark that is not recoverable under the liquidation proceedings in Mt. Gox's Japanese bankruptcy." (Fourth Am. Compl. ¶¶ 101, 109). According to recent reporting, the Japanese rehabilitation Trustee has liquidated approximately $312,000,000 worth of Bitcoin in order to repay claimants in the rehabilitation proceedings. (https://cointelegraph.com/news/mtgox-leaked-info-purportedly-shows-318-billion-cryptocurrency-sell-offs-on-bitpoint, a copy of which is attached hereto as Exhibit D.) This means that the claimants are highly likely to be fully compensated for their losses *and* quite possibly the subsequent rise in the value of bitcoin. Plaintiffs' receipt of their funds from the rehabilitation proceedings is likely to moot their claimed damages, and thus, end this case entirely: "the ultimate simplification of issues." *Trading Techs. Int'l, Inc v. BCG Partners, Inc.*, 186 F. Supp. 3d 870, 875 (N.D. Ill. 2016) (quoting *VirtualAgility Inc. v. Salesforce.com*, 759 F.3d 1307, 1314 (Fed. Cir. 2014)).

While not causing any prejudice to Plaintiffs and ultimately simplifying the issues, a stay would also greatly reduce the burden of litigation on the parties and the court. The Japanese Government has forbidden Mr. Karpeles from leaving Japan, and a verdict is not expected in Mr. Karpeles' criminal trial until March 13, 2019. (https://www.coindesk.com/former-mt-gox-ceo-mark-karpeles-claims-innocence-as-trial-nears-end, a copy of which is attached hereto as Exhibit E.) Additionally, discovery is likely to be extremely difficult and expensive: "[b]ecause Japan is not a party to the Hague Evidence Convention, compelling evidence, whether testimonial or documentary, from a third-party witness in Japan for a case litigated in an American court is extremely burdensome and sometimes impossible." *U.S.O. Corp. v. Mizuho Holding Co.*, No. 06 C 0459, 2007 U.S. Dist. LEXIS 71924, at *17 (N.D. Ill. Sep. 27, 2007) *aff'd*, 547 F.3d 749 (7th Cir. 2008). Plaintiffs recently served voluminous and potentially unnecessary discovery requests

on Mr. Karpeles. For example, Plaintiff's Requests for Production of Documents seek "[d]ocuments sufficient to identify all class members, including documents sufficient to identify each user's name, last known mailing address, and last known e-mail address" and "all documents submitted by class members to verify their Mt. Gox accounts." (Plaintiff's Request for Production, a copy of which is attached hereto as Exhibit F.) The requests define class members as "all persons in the United States who had bitcoins or money stored with Mr. Gox on February 24, 2014." (*Id.* at 1). While it is unknown precisely how many individuals are in the alleged class, which has not yet been certified, it could be thousands of people. Discovery will be burdensome and expensive for both parties, as well as potentially entirely unnecessary.

Under its inherent authority to stay cases, this Court should stay this case pending the outcome of the Japanese rehabilitation proceedings because a stay would not result in prejudice to the Plaintiffs, would moot the case if Plaintiffs' claimed damages are made whole, and would greatly reduce the burden of litigation on the parties and the court.

In addition to their inherent authority to stay cases, courts have the discretion to stay cases while litigation takes place in a foreign jurisdiction under the *Colorado River* doctrine (*Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976)): "[T]his approach protects the substantial rights of the parties while permitting the district court to manage its time effectively. . . . Such a common sense approach is clearly within the sound discretion of the trial court." *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 686 (7th Cir. 1987). While the Japanese rehabilitation proceedings are not litigation, the logic of staying this cause for the rehabilitation proceedings is equally compelling. In considering whether to stay litigation, the court should consider factors such "as the inconvenience of the federal forum; the desirability of avoiding piecemeal litigation; and the order in which jurisdiction was obtained

by the concurrent forums." *Id.* at 685 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15-16 (1983)). "No one factor is necessarily determinative." *Medema v. Medema Builders, Inc.*, 854 F.2d 210, 213 (7th Cir. 1988) (citing *Colo. River*, 424 U.S. at 818).

The analysis under the *Colorado* River doctrine is largely co-extensive to the analysis under the court's inherent authority. The federal forum is inconvenient due to the discovery issues discussed above and the desirability of avoiding piecemeal proceedings is high as distributions from the Japanese rehabilitation proceedings may entirely moot Plaintiffs' claims. As to the final factor, the order in which jurisdiction was obtained by the concurrent forums, the current suit and the Japanese bankruptcy proceedings began at essentially the same time. Mt. Gox instituted Japanese Bankruptcy proceedings on February 28, 2014 and Plaintiffs filed the current suit in Chicago on February 27, 2014.[2]

Regardless of the mode of analysis, the outcome is the same: this case should at least be stayed until the Japanese proceedings progress to a point where Plaintiffs know whether they will be fully compensated for their alleged damages.

## II. IN THE ALTERNATIVE, THE CLASS CLAIMS SHOULD BE STRICKEN AS A CLASS ACTION IS NOT THE SUPERIOR METHOD TO RESOLVE THIS CONTROVERSY.

If the Court does not grant the motion to stay, in the alternative, the class allegations should be stricken. Unlike most cases seeking to strike class allegations in the early stages of litigation, Mr. Karpeles does not seek to strike class allegations by arguing more routine issues such as individual issues prelude a finding of commonality, typicality or predominance, or that somehow the proposed plaintiffs will not be adequate class representatives. Should this Motion be denied, Mr. Karpeles reserves his right to make such arguments in the future. This case is

---

[2] Japan is fourteen hours ahead of Chicago so it is likely that, while the date is different, both were initiated at approximately the same time.

7

unique, and Mr. Karpeles moves now on very limited grounds: a class action is not the superior method to resolve this controversy in light of the extensive civil rehabilitation proceedings of Mt. Gox taking place in Japan. In light of those proceedings, Plaintiffs cannot satisfy the requirement of Rule 23(b)(3) that a class is the superior method to resolve this controversy. That standing alone requires that the class allegations be stricken.

"Courts in this District [ ] evaluate motions to strike class allegations under Rule 23, not Rule 12(f)." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014). Rule 23(c)(1)(A) provides that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). "Failing to meet any one of [Rule 23's] requirements precludes class certification." *Buonomo*, 301 F.R.D. at 296, quoting *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009).

A plaintiff seeking to certify a class must establish that the proposed class satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) as well as satisfying one of the subparts of Rule 23(b). Fed. R. Civ. P. 23(a)-(b). Plaintiffs here have brought their class allegations pursuant to Rule 23(b)(3). (Fourth Amend. Compl. ¶ 89.) One of the requirements of Rule 23(b)(3) is "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In determining whether a class action is the superior method for resolving this controversy, Rule 23(b)(3) includes the following list of factors to consider: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of

8

concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A)-(D).

Motions to strike allegations are not disfavored in this District; rather, "a motion to strike class allegations, made pursuant to these provisions [of Rule 23], is an appropriate device to determine whether the case will proceed as a class action." *Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 U.S. Dist. LEXIS 145787, at \*2-3 (N.D. Ill. Oct. 8, 2014); *see also Huddleston v. Am. Airlines, Inc.*, No. 16-cv-09100, 2018 U.S. Dist. LEXIS 169962, at \*5-6 (N.D. Ill. Oct. 2, 2018). As this Court has recognized, "the court may decide to reject a plaintiff's attempt to represent a class as soon as it becomes obvious that the plaintiff will be unable to satisfy Rule 23." *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (Feinerman, J.). A "'court may deny class certification even before the plaintiff files a motion request certification' and … a court 'need not delay a ruling on certification if it thinks that additional discovery would not be useful in resolving the class determination.'" *Id.* at 830, quoting *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011).

"[W]hen considering class certification under Rule 23, a district may look beneath the surface of a complaint." *Lee*, 2014 U.S. Dist. LEXIS 145787 at \*4. "Because a defendant's motion to strike class allegations is a vehicle for analyzing the appropriateness of class certification, … the court is not limited to the face of plaintiff's complaint when considering the motion." *Id.* at \*4-5. Not only can the Court look beneath the surface of the complaint, the Court does not presume that all well-pleaded allegations in the complaint are true. *Huddleston*, 2018 U.S. Dist. LEXIS 169962, at \*6-7. While there is a disagreement in this District over which party bears the burden of persuasion on motion to strike class allegations, the result here is

9

the same regardless of which party bears this burden. *Huddleston*, 2018 U.S. Dist. LEXIS 169962, at *7.

The Japanese proceedings belie Plaintiffs' conclusory and generic assertion that a class is the superior method, which is in its entirety:

> **Superiority:** This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

(Fourth Amend. Compl. ¶ 94 (emphasis original).)

There is not a single statement in this allegation that suggests it is tailored for this case whatsoever; it can be inserted into any class action complaint. This generic allegation is valueless. The reality is that there is a much simpler, easier forum "for the individual members of the Classes to obtain effective relief from Defendants' misconduct." (*Id.* at ¶ 94.) That is by filing a claim in the Japanese civil rehabilitation proceedings, which is exactly what many customers of Mt. Gox have done. Not only that, creditors with accounts at Mt. Gox have shown that they are active and quite capable of protecting their own interests and directing their own desired approach.

In October 2017 (the same month that Plaintiffs filed their Fourth Amended Complaint), a group calling themselves "Mtgoxlegal" began posting on a website. (*See* https://www.mtgoxlegal.com/2017/10/, attached hereto as Exhibit G.) In November 2017, some

10

creditors petitioned the court in Japan to commence civil rehabilitation proceedings, thereby changing the bankruptcy proceedings into rehabilitation proceedings. (https://www.mtgox.com/img/pdf/20171129_annoucement.pdf, attached hereto as Exhibit H.) The Tokyo District Court agreed and commenced rehabilitation proceedings on June 22, 2018. (https://www.mtgox.com/img/pdf/20180622_announcement_en.pdf, attached hereto as Exhibit I.) Creditors then went about submitting proofs of claims and engaging in the process to be repaid.

Importantly, creditors have organized in the Japanese proceedings to participate in obtaining the relief they desire. The group called Mt. Gox Creditors was the entity that "filed an involuntary case to commence civil rehabilitation proceedings of Mt. Gox by representing some creditors," changing the proceeding from bankruptcy to civil rehabilitation. (*See* https://mtgox-creditors.com/involuntary-filing-for-commencement-of-civil-rehabilitation-proceedings-regarding-mt-gox/, attached hereto as Exhibit J.) These creditors are represented by the law firm of Nishimura & Asahi, which bills itself as "Japan's largest law firm." (*See* https://www.jurists.co.jp/en/firm/index.html at 2, attached hereto as Exhibit K.)

Calling itself a "co-operative," the separate entity Mtgoxlegal recently stated as follows:

We are currently over 1000 creditors. Each has contributed $100. We represent an estimated claim size of over 140kBTC, making us the largest body of creditors. We've hired a lawyer from a top-4 Japanese law firm. We have a paid administrator employed by this group and a team of 10 volunteers. And we are growing. If you are a Mt Gox creditor, please join us to share the costs and the advice of our lawyer.

(https://www.mtgoxlegal.com/, attached hereto as Exhibit L.) Mtgoxlegal further states, "In the last months, the value has increased significantly. As a result, the bankruptcy trustee now controls more assets than liabilities." (*Id.*)

11

Addressing the factors delineated in Rule 23(b)(3) for determining the superiority of a class action in light of these facts, not a single factor would allow for class certification.

**FACTOR 1:** (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

The creditors of Mt. Gox are well-organized. They have views on what the proper relief is for them. Individual creditors have submitted claims. Contrary to Plaintiffs' allegations, the claims process undertaken by groups of creditors is far easier than litigation in this forum, whether done on an individual or class basis. Submitting a claim is a minimal burden, and getting paid for that claim is even easier. Litigation in this forum would needlessly increase the costs to individuals, who have shown that they are more than capable than protecting their own interests in the Japanese proceedings. Some have retained their own counsel. These two Plaintiffs cannot be allowed to usurp the rights of all of those individual creditors.

**FACTOR 2:** (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

The Japanese Civil Rehabilitation proceedings are well underway, with claims already having been submitted and decisions on those claims coming in a matter of months. (Ex. A.) Creditors have participated and organized to protect their own interests. There is no need for separate litigation here.

**FACTOR 3:** (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum;

There is no basis to concentrate litigation in this forum. Aside from these two Plaintiffs who happen to live in Illinois, there is no connection to this State. Nor is there a reason to have this forum exist in addition to the Japanese proceedings. Creditors expect full recovery. They are being provided a forum to support their claims. Even if a creditor's claim were rejected in

Japan, it would be incongruous for this Court to somehow overrule that finding of the trustee that a claim was not proper.

**FACTOR 4:** (D) the likely difficulties in managing a class action.

Given the competing views of creditors, managing a class action is likely to be difficult. A creditor in the Japanese proceedings could accept some form of a monetary recovery coupled with some other right or compensation to be deemed made whole. Yet that same creditor could show this Court that it did not receive a complete financial recovery and obtain a second, unwarranted payout. Some parties appear to have sold their claims, and tying claims back to individual investors could be difficult.

In addition to the application of these four factors, the Japanese proceedings undermine all of the reasons that Plaintiffs allege in the operative complaint as the basis for the superiority of a class action here:

- Allegation: "joinder of all parties is impracticable"

    o Response: The claims process in Japan provides a forum for all, and creditors have shown a capability to protect themselves and participate.

- Allegation: "The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions":

    o Response: The claims process in Japan provides a faster and cheaper forum for recovery than this Court.

- Allegation: "It would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendants' misconduct":

    o Response: This is demonstrably not true given the existence of the Japanese civil rehabilitation proceedings

- Allegation: "Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint":

13

- - o   Response:  Again, this is not true, as the Japanese rehabilitation proceedings cut down on delay and expense and many former Mt. Gox account-holders have organized with funding.

- <u>Allegation: "a class action presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court"</u>:

  - o   Response:  The trustee in the Japanese civil rehabilitation proceedings is already examining and determining recovery of claims.

- <u>Allegation: "Economies of time, effort and expense will be fostered and uniformity of decisions ensured"</u>:

  - o   The Japanese trustee expects to be done with his review of all exchange-related claims by the end of March 2019 with all claims reviewed and a civil rehabilitation plan completed by the end of April 2019.

(Underlined portions from Fourth Amend Compl. ¶ 94.)

Other individuals are active participants in Mt. Gox's civil rehabilitation proceedings taking place in Tokyo.  One group of over 900 members has formed a co-operative, which it started almost a year and a half ago, another was instrumental in changing the Japanese proceedings from bankruptcy to civil rehabilitation proceedings.  All creditors can have their voices heard in structuring a rehabilitation plan.

The factors delineated in Rule 23(b)(3), the applicable case law, the indisputable existence of rehabilitation proceedings pending in Japan for which creditors expect full recoveries, and the active participation of creditor groups in those proceeds all confirm that a class action is not the superior method to resolve this controversy.  In fact, all it would do is add unnecessary, duplicative litigation.  The two named Plaintiffs cannot overrun the rights of all of these other creditors by merely filing a lawsuit and naming themselves everybody's representatives.  The creditors are well-represented.  No discovery will alter these points.  Claimants have options to protect their interests, which they have readily exercised.  For all of

these reasons, in the alternative to a stay, the class allegations should be stricken because a class action is not the superior method of adjudication, and Plaintiffs cannot satisfy Rule 23(b)(3).

## PRAYER FOR RELIEF

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court grant this Motion and: (i) stay the proceedings pending the resolution of exchange-related claims pursuant to the civil rehabilitation plan in the Japanese proceedings; (2) in the alternative, strike the class claims; and (iii) grant all other just relief.


Dated:  February 25, 2019                                   Respectfully submitted,

                                                            Mark Karpeles

                                                            By:   /s/   Bevin Brennan
                                                                  One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*