

# NISHIMURA&ASAHI

# An introduction to court procedures for insolvency in Japan

April 1, 2011

### 1. An introduction to court procedures for insolvency in Japan

This document is an introduction to court procedures for insolvency in Japan, which contains FAQ about restructuring/insolvency in Japan.

### 2. Nishimura & Asahi's Restructuring and Insolvency Group

Nishimura & Asahi's restructuring and insolvency group consists of approximately 60 lawyers, making it one of the largest and most experienced practice groups of its kind in Japan. We provide a full range of Japanese legal services relating to (i) legal rehabilitation proceedings, such as Civil Rehabilitation proceedings (minji-saisei) and Corporate Reorganization proceedings (kaisha-kosei), (ii) legal liquidation proceedings, such as Special Liquidation proceedings (tokubetsu-seisan) and bankruptcy proceedings (hasan), and (iii) voluntary insolvency procedures utilizing various laws and legal systems/institutions, such as the Turnaround ADR Proceedings, Guideline for Voluntary Debt Adjustment, Specific Conciliation proceedings (tokutei-choutei), the Resolution and Collection Corporation and the Small and Medium Enterprise Agency.

Leveraging the assets of Nishimura & Asahi, the largest law firm in Japan, allows our group to assemble and lead customized teams consisting of lawyers organized to respond to most any aspect of a transaction. This broad bench of services also enables our group to evaluate and propose the most suitable restructuring package to our clients. Our unparalleled size and vast experience also permits us to add value to any component of a financial restructuring, be it to the company in question, creditors, sponsors, investors or financial institutions that provide new financing.

Many of our firm's lawyers have also served as trustees, supervisor of civil rehabilitation proceedings and other constituent members of various bodies assigned by the courts and government organizations, as well as advisors in voluntary liquidations. In addition to legal services for domestic cases, our services extend to overseas restructuring/insolvency cases (in particular, the U.S. and China).

NISHIMURA
& ASAHI

For more information about Nishimura & Asahi's restructuring and insolvency group, please contact:

**Shintaro Miyazaki**          **s_miyazaki@jurists.co.jp**
**Shinnosuke Fukuoka**          **s_fukuoka@jurists.co.jp**
**Yusuke Yukawa**          **y_yukawa@jurists.co.jp**

**3.    Waiver**

This article was written by its author and does not reflect the views or opinion of Nishimura & Asahi.   In addition, this article is not intended create an attorney-client relationship or to be legal advice and should not be considered to be a substitute for legal advice.   Individual legal and factual circumstances should be taken into consideration in consultation with professional counsel prior to taking any action related to the subject matter of this article.

**NISHIMURA & ASAHI**

**An Introduction to Court Procedures for Insolvency in Japan**

Q1.    What is the outline of court procedures for insolvency in Japan?.............................................4

Q2.    What is the outline of bankruptcy proceedings?.......................................................................6

Q3.    What is the outline of civil rehabilitation proceedings?............................................................8

Q4.    What is the outline of corporate reorganization proceedings?.................................................11

Q5.    What are the effects of the petition and the commencement of court procedures for insolvency? .........................................................................................................................15

Q6.    What is the position and power of a court-appointed trustee/supervisor in insolvency procedures? ........................................................................................................................17

Q7.    What are the classifications of claims and their order of priority? .........................................19

Q8.    What is a creditors' committee?.............................................................................................21

Q9.    How are security interests handled in court procedures for insolvency?.................................22

Q10.   What are the procedures for the investigation and determination of claims? .........................24

Q11.   How are debtor's assets disposed of and converted into money in court procedures for insolvency? .........................................................................................................................25

Q12.   What kinds of acts conducted by the debtor before the commencement of insolvency procedures may be deemed invalid after the commencement order is given, and thus shall be avoided in court?..................................................................................................................26

Q13.   What points should one pay attention to when one asserts set-offs? .....................................27

Q14.   How is an Executory Contract treated in court procedures for insolvency?.........................29

Q15.   If a clause, which gives a counterparty of a debtor the right to terminate a contract where the debtor files for a petition for commencement of court procedures for insolvency, is prescribed by the contract, is it possible to terminate the said contract? ...............................30

Q16.   What will happen to a debtor if a proposed rehabilitation plan or reorganization plan is rejected by creditors? ..........................................................................................................31

Q17.   Is it possible for the effect of foreign insolvency proceedings to have influence over the proceedings in Japan? .........................................................................................................32

Q18.   What is the outline of "Turnaround ADR"? ........................................................................33

NISHIMURA
& ASAHI

Q1. What is the outline of court procedures for insolvency in Japan?

A.

Court procedures for insolvency in Japan are categorized into liquidation procedures, including bankruptcy and special liquidation proceedings, and restructuring procedures, including civil rehabilitation and corporate reorganization proceedings. These four proceedings are promulgated by separate acts; bankruptcy proceedings by the Bankruptcy Act, special liquidation by a part of the Companies Act, civil rehabilitation proceedings by the Civil Rehabilitation Act, and corporate reorganization proceedings by the Corporate Reorganization Act.

| In-court Liquidation Procedure | Bankruptcy Proceedings under the Bankruptcy Act |
| | Special Liquidation under the Companies Act |
| In-court Restructuring Procedure | Civil Rehabilitation Proceedings under the Civil Rehabilitation Act |
| | Corporate Reorganization Proceedings under the Corporate Reorganization Act |

Bankruptcy proceedings are similar to the proceedings prescribed in Chapter 7 of the US Bankruptcy Code. In this procedure, a court-appointed trustee disposes of the assets of the debtor and builds up a bankruptcy estate. The trustee makes distributions to creditors according to the priority order prescribed by law during the final stage of the proceedings, and approval by creditors is not needed for the said distribution.

Special liquidation is a procedure whereby insolvent stock companies can liquidate. Compared to bankruptcy proceedings, a debtor continues to have the power to dispose of its assets in the special liquidation and the competent court does not appoint a trustee to the debtor who filed for special liquidation. The debtor will make distributions to creditors according to the plan approved by the creditors on a two-thirds majority basis at the creditors' meeting and confirmed by the court.

Both civil rehabilitation proceedings and corporate reorganization proceedings are similar to the proceedings prescribed in Chapter 11 of the US Bankruptcy Code. In civil rehabilitation proceedings, as a general rule, a debtor continues to have the power to manage its business and dispose of its assets even after an order for rehabilitation proceedings has commenced ("DIP").

On the other hand, in corporate reorganization proceedings, as a general rule, the debtor's business is managed by a court-appointed trustee instead of the debtor. This is a procedure to impair not only the claims of unsecured creditors, but also the claims of secured creditors.

NISHIMURA
& ASAHI

In both procedures, distributions to creditors will be made after the rehabilitation plan or the reorganization plan is approved by a statutory majority at the creditors' meeting, and the plan is confirmed by the court.

With regard to English translations by the Japanese government of provisions of the Bankruptcy Act, Civil Rehabilitation Act, and Companies Act, please refer to the Following URLs:

(Bankruptcy Act)
http://www.japaneselawtranslation.go.jp/law/detail/?id=1887&vm=04&re=01&new=1

(Civil Rehabilitation Act)
http://www.japaneselawtranslation.go.jp/law/detail/?id=125&vm=04&re=01&new=1

(Companies Act)
http://www.japaneselawtranslation.go.jp/law/detail/?id=1961&vm=04&re=01&new=1
http://www.japaneselawtranslation.go.jp/law/detail/?id=149&vm=04&re=01&new=1

NISHIMURA
& ASAHI

Q2. What is the outline of bankruptcy proceedings?

A.

Bankruptcy (*hasan*) is a procedure to liquidate the business of a debtor who is unable to pay all debts by disposing of all of their assets and making distributions to creditors. This procedure is applicable to both individuals and corporations.

Bankruptcy procedures can be filed by both debtors and creditors. In the later case, which is called an "involuntary petition", the petitioner is not required to have a substantial portion of the claims, and may file such petition regardless of the amount of claims.

After a petition for commencement of bankruptcy proceedings for a corporation is filed with the court, the court orders the commencement if; (1) a debtor is generally and continuously unable to pay their debts already due because of the lack of ability to pay, or (2) a debtor's debts exceed its assets.

Once the bankruptcy proceedings have commenced by the court, the debtor is prohibited from paying any debts to the creditors. Instead, payments to creditors are made by the trustee only through distribution proceedings, as provided for by the Bankruptcy Act.

The court appoints a trustee simultaneously with the order of commencement of the bankruptcy proceedings, and specifies the period within which the claim should be filed by creditors and the date of the creditors' meeting. The duties of the trustee are to convert the assets of the debtor into cash so that distributions to creditors can be made, and to also examine proofs of claims which creditors file to the court, and to object to the allowance of any claims that are improper. A creditors' meeting is held on a date decided by the court, and the financial status of the estate of the debtor and the activities conducted by the trustee are reported to the creditors by the trustee. Then, if the bankruptcy estate is large enough for distributions to be made, distributions are made in the order of priority described in the Bankruptcy Act.

**NISHIMURA & ASAHI**

**Flow Chart of Bankruptcy Proceedings**



Q3. What is the outline of civil rehabilitation proceedings?

A.

The purpose of the civil rehabilitation (*minji-saisei*) proceedings is to enable a distressed debtor to rehabilitate, and this procedure is applicable to both individuals and corporations.

When a petition for commencement of civil rehabilitation proceedings is filed, the court orders a preservation order which prohibits the debtor from paying any debts to the creditors as a general rule. However, exercising any security interest is not prohibited by the Civil Rehabilitation Act, and thus secured creditors may collect their claims by exercising their security interests regardless of the filing of the civil rehabilitation proceedings.

Under the civil rehabilitation proceedings, the court does not appoint a trustee as a rule, and the debtor remains in control and has the power to manage its business. However, in most cases, a supervisor is appointed by the court to monitor the debtor's activities. The debtor is required to obtain approval from the supervisor in order to conduct actions other than in the ordinary course of business.

The court shall order commencement of the civil rehabilitation proceedings in the following cases, if (1) there is a risk that a debtor will not be able to pay its debts as they become due, or that a debtor's debts exceed its assets, or (2) the debtor is unable to pay its debts already due without causing significant hindrance to the continuation of their business. However the petition for the commencement is dismissed if the court finds that, (i) the debtor is unlikely to prepare a rehabilitation plan, (ii) the said plan is unlikely to be approved by the creditors, or (iii) the said plan is unlikely to be confirmed by the court. A commencement order will normally be issued within a week after the filing. In addition, before the commencement order is given, an explanatory meeting for the creditors is usually held by the debtor to explain (a) how and why the petition was filed with the court, and (b) the outline of the civil rehabilitation proceedings.

Once the civil rehabilitation proceedings have commenced by the court, unsecured creditors (including secured creditors with a claim that will exceed the value of security interests that the secured creditors have, meaning the amount which cannot be collected by exercising the security interest), should file their proofs of claim with the court by the court-specified date. The debtor will then examine the amount of each unsecured claim in order to prepare and submit to the court a list of claim holders, in which the debtor expresses their opinion as to whether to approve or object to the proofs of claim. Additionally, for submission to the court, the debtor evaluates the assets and debts based upon a price which assumes that they are disposed of immediately as of the time the

**NISHIMURA**
**& ASAHI**

rehabilitation proceedings commence, and prepares a balance sheet based on the above evaluation accordingly. The debtor will also prepare a report for the court containing information such as reasons for the petition and the circumstances of the debtor's business.

The debtor prepares a civil rehabilitation plan, which provides for impairment of the unsecured creditor's rights, the amount and timing of the payment, etc., and the unsecured creditors determine whether or not to approve the proposed plan at the creditors' meeting. The rehabilitation plan will be approved when it obtains (1) the consent from the majority of voting right holders who are in attendance at the creditors' meeting (including creditors who have voted in advance by completing the necessary form), and (2) the consent of creditors who hold voting rights that account for not less than one-half of the total amount of voting rights, and will become effective if the court confirms the plan. Subsequently, the debtor pays off its debts according to the plan, and will be discharged from the rest of its debts.

The process usually takes approximately five months from the time of petition for the commencement to the time the plan is confirmed.

**Flow Chart of Civil Rehabilitation Proceedings**

Filing for a civil rehabilitation proceedings

↓

Preservation order/Appointment of a supervisor

↓

Explanatory meeting for creditors

↓

Commencement of civil rehabilitation proceedings

↓

The due date for filing of proofs of claims

↓

Submission of list of claim holders/appraisal report of property/report regarding the status of the debtor's business

↓

Submission of the rehabilitation plan

↓

Creditors' meeting/Approval and confirmation of the plan

↓

Execution of the plan

↓

Order closing the case

Q4. What is the outline of corporate reorganization proceedings?

A.

The purpose of the corporate reorganization (*kaisha-kosei*) proceedings is to enable a distressed debtor to reorganize its business, and it is only applicable to stock companies. In practice, it tends to apply only to large-scale stock companies.

A petition for commencement of corporate reorganization proceedings may be filed not only by the debtor, but also by creditors and shareholders. If the petition is filed by a creditor, they are required to have an amount of claim which accounts for not less than one-tenth of the amount of stated capital of the debtor. On the other hand, if the petition is filed by a shareholder, the shareholder is required to hold voting rights that account for not less than one-tenth of the total voting rights held by shareholders.

Once the petition for corporate reorganization proceedings is filed, the court will make a provisional administration order which prohibits the debtor from paying any debts to the creditors as a general rule. The court will also make an order staying the exercise of security interests in some cases.

The court appoints a provisional administrator in the provisional administration order. The provisional administrator has the sole authority to administer and dispose of the debtor's assets from the time the petition is filed until the commencement of the proceedings is ordered, but needs the approval of the court to conduct actions other than the debtor's ordinary course of business.

After the petition for commencement of the corporate reorganization proceedings is filed with the court, an explanatory meeting for creditors is held voluntarily by the debtor in most cases before the court orders the proceedings to commence.

The court shall order the corporate reorganization proceedings to commence in the following cases, if (1) there is a risk that the debtor will not be able to pay its debts as they become due, or that the debtor's debts exceed its assets, or (2) the debtor is unable to pay its debts already due without causing significant hindrance to the continuation of its business. However the petition is dismissed if (i) it is obvious that the debtor is unlikely to prepare a reorganization plan, (ii) the said plan is unlikely to be approved by the creditors, or (iii) the said plan is unlikely to be confirmed by the court. It generally requires approximately a month from the time of the petition for the commencement order to be issued.

**NISHIMURA & ASAHI**

Once the court orders the corporate reorganization proceedings to commence, in principle, the debtor is prohibited from paying the unsecured claims, priority claims and secured claims, but instead, distribution payments to the creditors are made by the trustee according to the reorganization plan. The exercise of security interests are also prohibited in corporate reorganization proceedings, while they are allowed in civil rehabilitation and bankruptcy proceedings.

The court appoints a trustee simultaneously with the order to commence the corporate reorganization proceedings. The trustee has the sole authority to administer, and dispose of the assets of the debtor and its estate. In most cases, the court appoints the provisional administrator as the trustee. The trustee is required to be obtain court approval to do certain important actions which do not fall within the ordinary course of business.

Creditors may file a proof of claim by the date specified by the court, and the trustee will then examine the amount of each claim in order to prepare and submit to the court a list of claim holders, in which the trustee expresses their opinion whether to approve or object to the proofs of claim. The trustee evaluates the assets and the debts based upon the market price as of the date the reorganization proceedings commence in order to prepare and submit a balance sheet based on the above evaluation to the court.

The trustee prepares a corporate reorganization plan, describing the distribution percentage to the creditors, etc., and each class of creditors determines whether or not to approve the proposed plan. Under the corporate reorganization proceedings, the creditors' claims are generally divided into two classes: unsecured claims/priority claims, and secured claims, and the requirements for the approval of the proposed reorganization plan differ with each class.

With respect to unsecured creditors, the reorganization plan must obtain the consent of persons who hold voting rights that account for more than one half of the total voting rights held by unsecured claim holders.

On the other hand, with regard to secured creditors, in order to extend the due date of the payment of secured claims, the consent of persons who hold voting rights that account for not less than two-thirds of the total voting rights held by secured claim holders is required. Also, in order to write off secured claims to some extent, the consent of persons who hold voting rights that account for not less than three-quarters of the total voting rights held by secured claimholders is required.

Shareholders do not have the right to vote where the debtor's debts exceed its assets.

NISHIMURA & ASAHI

(Therefore, in practice, shareholders do not have voting rights in most cases.)

After the plan is approved by creditors, the plan will become effective if the court confirms the plan.   Subsequently, the debtor pays off its debts according to the plan, and the rest of its debts will be discharged.

Altogether, the process normally takes approximately a year from the time of the petition to when the plan is approved.

Although the management of the debtor's business is generally replaced by a court-appointed trustee who is a well experienced insolvency lawyer without any interests in the debtor, under the corporate reorganization proceedings, these days there are cases where a person who is in charge of the debtor's business before the petition is appointed by the court as a trustee, and the said individual continues to manage the business even after the reorganization proceedings have commenced.   In such case, the court appoints a third party as an examiner or a supervisor who oversees the management personnel.

**NISHIMURA & ASAHI**

**Flow Chart of Corporate Reorganization Proceedings**



Q5. What are the effects of the petition and the commencement of court procedures for insolvency?

A.

1.    The Petition and the Commencement

In Japan, court procedures for insolvency are not commenced automatically by the filing. More specifically, the said procedures are commenced by the court's order, which is made if the court examines and finds facts constituting grounds for the commencement of each procedure such as the debtor's insolvency, risk of insolvency, possibility of rehabilitation, etc.   Therefore, it takes a certain amount of time for the commencement of each procedure to be ordered, and the timing of the commencement varies depending on each case.   However, in cases where the proceedings are filed by the debtor, the commencement order is generally given on the same day or within a few days in bankruptcy proceedings, within about a week in civil rehabilitation proceedings, and within about a month in corporate reorganization proceedings.   On the other hand, in involuntary petitions where a creditor files proceedings, though the timing of the commencement of procedures varies depending on the case, it is not uncommon for the commencement to take several weeks or several months. This is because, in most cases, the debtor usually asserts that they are not insolvent.

2.    The Effect of the Petition

Contrary to the proceedings in the United States where an "automatic stay" is provided for, collection of debts by creditors is not automatically prohibited as an effect of the filing for court insolvency procedures by a debtor or a creditor in Japan.   However, in in-court restructuring procedures, the court commonly prohibits actions to collect debts by creditors until the order for commencement is given.

When a petition for commencement of civil rehabilitation proceedings is filed with the court, the court generally appoints a supervisor, and the debtor is required to obtain consent from the supervisor in order to engage in certain important conduct.   On the other hand, in general, the court orders a provisional administration order and appoints a provisional administrator, to whom the sole authorization to administer and dispose of the debtor's property belongs in the case of corporate reorganization proceedings.

3.    The Effect of the Commencement

Once the court orders the commencement of court procedures for insolvency, any actions by creditors to collect debts from a debtor are prohibited, and any ongoing judicial procedures including litigations and execution proceedings will be suspended.   In addition, security interests can be exercised even after the court procedure for insolvency have commenced under the civil

**NISHIMURA & ASAHI**

rehabilitation proceedings, bankruptcy proceedings, and special liquidation, while it is prohibited in corporate reorganization proceedings.

Simultaneously with the commencement order, the court also specifies the period within which creditors may submit their proofs of claims to the court. Therefore, at the time of the commencement, the creditors are given information about the date by which they may submit their proofs of claim.

Moreover, the trustee, the supervisor, and the debtor who is under court procedures for insolvency may use their powers vested by the law, such as the power of avoidance (please refer to the answer on Q12), and the power to terminate executory contracts (please refer to the answer on Q14).

NISHIMURA
& ASAHI

Q6. What is the position and power of a court-appointed trustee/supervisor in insolvency procedures?

A.

In Japan, the court generally appoints attorneys with broad experience in the field of insolvency proceedings as trustees and supervisors.

1.  A Supervisor in Civil Rehabilitation Proceedings

A court-appointed supervisor oversees the conduct of the debtor under the Civil Rehabilitation Proceedings.   As described in Q1, in civil rehabilitation proceedings, the debtor in possession (the rehabilitation debtor) generally remains in control, and has the power to manage its business and dispose of its assets even after the commencement of the rehabilitation proceedings.   After the court appoints a supervisor, any actions that the court designate in the commencement order will require the supervisor's consent.   The court-appointed supervisor monitors the rehabilitation debtor's conduct by examining each application for consent.   The ordinary course of business of the rehabilitation debtor is generally excluded from the actions that need the supervisor's consent.

The supervisor also has a duty and power to express their opinion in regards to the report prepared by the rehabilitation debtor concerning the financial status of the debtor and the investigation of liabilities associated with its managements' misconduct.   In addition, the supervisor is also required to express an opinion to the court regarding the debtor's proposed rehabilitation plan. Upon considering the supervisor's opinions, the court then decides whether the proposed rehabilitation plan is adequate and legitimate.   After the rehabilitation plan is approved according to the Civil Rehabilitation Act, the supervisor will oversee the implementation of the rehabilitation plan.

In civil rehabilitation proceedings, acts prejudicial to the rehabilitation creditors are avoided, and the supervisor has power to avoid such acts ("the right of avoidance".   For details on the right of avoidance, please refer to Q12.).   The debtor, on the other hand, does not have such power.

2.  A Trustee in Bankruptcy Proceedings and Corporate Reorganization Proceedings

A court-appointed trustee in the bankruptcy proceedings and the corporate reorganization proceedings has the sole authority to administer and dispose of the assets of the debtor and its estate. (On the other hand, in civil rehabilitation proceedings, the court appoints a trustee only in rare cases such as when the property management by the debtor is inadequate.)   The trustee also has the right of avoidance, and the right to cancel executory contracts (For details on executory contracts, please refer to Q14.)   In bankruptcy proceedings, the trustee makes distributions to the creditors, whereas

**NISHIMURA & ASAHI**

in corporate reorganization proceedings, the trustee prepares and implements a reorganization plan. A single trustee is generally appointed in bankruptcy proceedings, while it is usual that two trustees (one in charge of the legal aspects of the proceeding, and the other in charge of the business aspect) are appointed in corporate reorganization proceedings. In this case, an attorney-at-law is usually appointed as the "legal trustee", and a business person from a company sponsoring the debtor is dispatched as the "business trustee".

A provisional administrator is appointed, mainly in corporate reorganization proceedings, to secure the debtor's properties and estate from the time of petition for commencement of corporate reorganization proceedings up until the order for commencement of the proceedings is given. The provisional administrator has the sole power to administer and dispose of the debtor's property during such term. In most cases, the provisional administrator becomes the court-appointed corporate reorganization trustee after the order for commencement of the proceedings.

NISHIMURA
& ASAHI

Q7.  What are the classifications of claims and their order of priority?

A.

The classifications of claims vary between bankruptcy/civil rehabilitation proceedings, and corporate reorganization proceedings.  The difference is that in corporate reorganization proceedings, secured claims and priority claims may also be impaired under the plan.

In general, claims are classified as follows: (1) administrative expenses, (2) priority claims, (3) secured claims, (4) unsecured claims, and (5) post-commencement claims.

Administrative expenses are the highest-priority claims in all court procedures for insolvency, and the payment of administrative expenses may not be impaired.  In other words, even after insolvency proceedings are filed, the payment of administrative expenses is given top priority compared to the payment of other claims.  Administrative expenses are fully paid as long as the debtor's estate has sufficient cash to pay, but partially paid if the amount of the debtor's estate is insufficient.  Administrative expenses include remunerations for trustees, fees necessary to conduct the proceedings, and expenses incurred after the commencement order of the proceedings is given. In bankruptcy proceedings, some taxes and labor claims are also deemed to be administrative expenses.

Priority claims are claims given priority by law, and are given preference subsequent to administrative expenses.  Priority claims may not be impaired in bankruptcy and civil rehabilitation proceedings.  Priority claims are also fully paid as long as the debtor's estate has sufficient cash to pay in those proceedings.  However, in corporate reorganization proceedings, the impairment of priority claims is allowed.  Priority claims in civil rehabilitation and corporate reorganization proceedings include labor claims and claims for tax.

Secured claims are claims that allow the holder of such claims to receive payments from collateral preferentially.  In bankruptcy and civil rehabilitation proceedings, secured creditors are allowed to foreclose collateral and receive preferential payments without going through the proceedings, even after a petition for commencement of the proceedings is filed.  See Q9 for further details.

On the other hand, the amount of the claim which exceeds the value of the security (the amount for which payment is not expected to be received by exercising the security interest), is treated as an unsecured claim, and payment will be made according to the rehabilitation/reorganization plan both in civil rehabilitation and corporate reorganization proceedings.

**NISHIMURA & ASAHI**

Unsecured claims are ordinary claims without priorities or securities. After the commencement of court procedures for insolvency, holders of unsecured claims in civil rehabilitation and corporate reorganization proceedings may only receive payments from the debtor/trustee under the rehabilitation/reorganization plan where the unsecured claims have probably been impaired. In bankruptcy proceedings, unsecured claimholders must wait until a liquidating distribution is made by the trustee in order to receive payments.

Unsecured bondholders are generally treated as unsecured claimholders, and are not given priority to other claims. Also, in cases when the debtor issued bonds appointing bond administrators (indenture trustees), certain restrictions are placed on the exercise of voting rights.

Post-commencement claims are claims that arise from a cause that has occurred after the commencement of insolvency proceedings, which do not fall under administrative expenses, priority claims, or unsecured claims. Payments of post-commencement claims may not be made until the termination of insolvency proceedings.

NISHIMURA
& ASAHI

Q8.  What is a creditors' committee?


A.

In bankruptcy, civil rehabilitation, and corporate reorganization proceedings, if there is a voluntary committee consisting of creditors, the court may approve the participation of the said committee in the proceedings.  A creditors' committee is voluntary and does not have to be established in those proceedings.   In practice, it is rare for such committees to be established.


In order to receive approval from the court for the participation of the creditors' committee, certain requirements must be fulfilled, such as meeting the minimum requirement for the number of committee members, and consent from the majority of the creditors regarding the committee's participation in the insolvency proceedings.


After the participation of a creditors' committee is approved, the committee may state its opinions to the court, the debtor, the trustee, the supervisor, etc., in each proceedings.  The committee may also petition for the convocation of a creditors' meeting, and request a report on certain matters from the debtor and the trustee.


The court may rescind the approval for the participation of the creditors' committee in the proceedings at any time.


**NISHIMURA & ASAHI**

Q9. How are security interests handled in court procedures for insolvency?

A.

   Security interests are handled differently in bankruptcy/civil rehabilitation proceedings, and corporate reorganization proceedings.

   In bankruptcy and civil rehabilitation proceedings, security holders with mortgages, liens, and pledges may foreclose collateral and receive a preferred payment from the proceeds, even after the commencement of the proceedings.   However, in civil rehabilitation proceedings, when a collateral is indispensable for the debtor to continue its business, the debtor and the security holder may enter, upon obtaining consent from the court-appointed supervisor, into an agreement regarding the value of the collateral and the extinguishment of the security interest by means of the debtor paying the security holder the amount agreed.   In practice, this method is rather frequently used.   In addition, collateral generally sells for more through a private contract compared to an auction held by the court.   Therefore, a method frequently used in bankruptcy and civil rehabilitation proceedings is for the debtor to extinguish the security interest upon receiving consent from the security holder, and to sell the collateral by a private contract instead of putting it up for auction.

   On the other hand, the foreclosure of the collateral by the security holder is prohibited in corporate reorganization proceedings, and the creditors may only receive payment by means of a distribution according to the reorganization plan.   In addition, secured claims may be impaired based on the said plan.   However, a reorganization plan that provides for a discharge of secured claims must obtain the consent of security holders who hold voting rights that account for not less than three-fourths of the total amount held by the holders of voting rights.   A plan that provides for the extension of the term for debts must obtain the consent of not less than two-thirds of the security holders in the same manner.   However, as gaining consent for such reorganization plan is difficult, security holders receive a full payment in most cases.   It is not rare for the security holder and the debtor to fall into disagreement over the value of security interests, and this may escalate into a dispute.   When the security holder and the debtor are in dispute over the value of security interests, the security holder may file a petition for determination of the price, and the value will be determined by the court.

   In both civil rehabilitation and corporate reorganization proceedings, if a security interest exists on an asset, the debtor may file a petition to the court for permission to have all security interests extinguished by paying the amount equivalent to the value of the said asset.   Such extinguishment of the security interest is permitted by the court if the court finds that the assets are indispensable for the continuation of the debtor's business.

**NISHIMURA & ASAHI**

The debtor in bankruptcy proceedings is also allowed to demand that the court extinguish security interests. However, the purpose of such claim differs in the case of bankruptcy proceedings, as the extinguishment of security interests in the said proceeding is to stimulate the sale of property through a private contract by eliminating security holders who are refusing to release the security interests without reasonable grounds.

**NISHIMURA & ASAHI**

Q10.    What are the procedures for the investigation and determination of claims?

A.

When a court procedure for insolvency is commenced, the court sends out Proof of Claim forms to the creditors.    On the Proof of Claim, information such as the creditor's name and address, types of claim (such as loan receivable, trade account receivable, etc.), accrual date of the claim, amount of claim, the existence or nonexistence of security interests and its apprised amount, and the amount of interest and damages for late payment is to be filled in.    Evidentiary documents to verify the accrual of the claim (such as indentures and contract documents) are not needed (except in bankruptcy proceedings), unless otherwise requested by the trustee or the debtor.

Contacting the debtor or the trustee promptly is recommended if those who have claims against the debtor have not received a notice of the commencement of the proceeding and a Proof of Claim form.

If the Proof of Claim is not filed within the fixed deadline, the claim will generally be forfeited, unless the filing of the claim is delayed due to circumstances beyond the creditor's control.    In civil rehabilitation proceedings, even when the claim is not filed by the deadline, credits that the debtor recognizes as such shall be acknowledged in the full amount and treated as an approved claim. However, in such cases, although the creditor is enabled to receive the payment according to the rehabilitation plan, voting rights for the approval or disapproval of the said plan are not granted.

After the claims are filed, the trustee/debtor shall investigate their contents, and shall prepare and submit a list of claim holders, in which the debtor/trustee expresses their opinion as to whether or not to approve or object to the claims, to the court.

When the debtor, the trustee, or other holders of filed claims disapprove of the content of a claim filed by a creditor, the creditor who holds the claim in question may file a petition for assessment with the court in order to determine the existence and allowance of the disputed claim. Such petition must be filed within a month from the last day of the period of investigation of the filed claims.    The court shall make an assessment specifying the existence or nonexistence of the disputed claim and its content, based on the results of the hearing with the person who disapproved the claim.

Creditors who are dissatisfied with the judicial decision may file an appeal within a month after the day on which the creditor in question receives the decision.

**NISHIMURA & ASAHI**

Q11.    How are debtor's assets disposed of and converted into money in court procedures for insolvency?

A.

A trustee in corporate reorganization proceedings or a debtor in civil rehabilitation proceedings may dispose of its asset or enter into transactions without the approval of a competent court or other officials if such transactions fall within the scope of the ordinary course of business (for example, purchasing of materials and selling of products).

However, for transactions which do not fall within the ordinary course of business, such as selling real property by private contract, it is necessary for the debtor in civil rehabilitation proceedings to receive the consent of a court-appointed supervisor, while the approval of the court is required for the trustee in corporate reorganization proceedings.   In applying for the supervisor's consent or the court's approval to sell the debtor's assets, the debtor or the trustee is required to explain that the disposal price is reasonable, and the supervisor or the court shall give their consent or its approval after examining this point.   Although private auction is not a compulsory step by law, it is conducted in many cases along with sales by private contracts.   The purpose of a private auction is to sell the assets at the highest possible price and to give a reasonable explanation of the disposal price.

In order to sell the entire or significant part of the debtor's business before submitting the rehabilitation/reorganization plan, the debtor/trustee needs to obtain permission from the court, and the court shall hear opinions of creditors before granting the said permission.   Hearing creditors' opinions is done through a voluntary creditors' meeting or by inquiry to creditors in writing.   For stock companies to sell their business, approval by resolution at a shareholders' meeting is required, but in the case of insolvency, the permission of the court may be substituted for the approval of shareholders.

In bankruptcy proceedings, a trustee shall obtain permission from the court only if important transactions (such as selling real property), or other acts which will result in the disposal of more than 1,000,000 yen, are conducted.

**NISHIMURA & ASAHI**

Q12.    What kinds of acts conducted by the debtor before the commencement of insolvency procedures may be deemed invalid after the commencement order is given, and thus shall be avoided in court?

A.

    A court-appointed trustee (in bankruptcy proceedings and corporate rehabilitation proceedings) or a court-appointed supervisor (in civil rehabilitation proceedings) has the power to invalidate (avoid) acts taken by the debtor before the commencement of relevant insolvency procedures which are deemed to impair equality among the creditors and/or are against the concept of the insolvency proceedings.    The outline of the trustee's/supervisor's power to invalidate (avoid) such acts is as follows.

    First, any acts conducted by the debtor while knowing that it will prejudice its creditors, in other words, acts which reduce the debtor's assets, may be avoided.    A typical example of this is the transfer of property with the aim of concealing or disposing of an asset at a low price. However, if the beneficiary of such acts did not know, at the time of the act, that it would prejudice the creditors, the said act will not be avoided.    In that case, the beneficiary must prove that they had no knowledge of the possibility that such actions may be prejudicial to the creditor's interests.

    Second, any gratuitous acts conducted by the debtor within six months prior to their becoming insolvent may be avoided.

    Third, any payment or provision of security interest to an existing creditor by the debtor after their becoming insolvent may avoided.    In other words, after becoming insolvent or the petition for commencement of insolvency procedures is filed, any payment or provision of security interest to an existing creditor by the debtor may be avoided if the creditor knew of the debtor's insolvency at the time of the payment, or the provision of security interest.    In addition, any payment or provision of security interest to an existing creditor by the debtor within thirty days before their becoming insolvent may be avoided if the act is not a legal obligation at the time of the action.

    Where an act is avoided, the person who benefited from the act shall restore the assets of the debtor to its original state in principal, and their damage as a result of the avoidance shall be treated as an unsecured claim.    However, a right to claim for the counter-performance received by the debtor shall be paid prior to unsecured claims as administrative expenses.

**NISHIMURA & ASAHI**

Q13.    What points should one pay attention to when one asserts set-offs?


A.

The rules on set-offs are handled differently between restructuring procedures (civil rehabilitation proceedings and corporate reorganization proceedings) and liquidation procedures (bankruptcy proceedings and special liquidation).


1.    General Set-off Rules in Restructuring Procedures

In restructuring procedures, a creditor may assert set-offs on the condition that the requirements for set-offs prescribed in the Civil Code have been fulfilled, and the creditor's intention to set-off has been conveyed to a trustee/debtor by the due date for filing a proof of claim.


For example, even when a debtor has a claim against a creditor, and the creditor has the same kind of claim against the debtor, if the said claim is not due and payable by the due date of filing the proof of claim, the creditor may not assert a set-off as the requirements for set-offs prescribed in the Civil Code have not been fulfilled.   In addition, even if the aforesaid creditor's claim was due and payable at the date of the commencement of court procedures for insolvency, if the creditor fails to convey the intention to set-off by the due date for filing a proof of claim, the set-off by the creditor will not become effective.


In civil rehabilitation and corporate reorganization proceedings, before the commencement order for these procedures, the court often issues a preservation order prohibiting the debtor's payment, but set-offs are not prohibited by the said order.


2.    General Set-off Rules in Liquidation Procedures

On the other hand, in liquidation procedures, creditors may assert set-offs at any time as long as the procedures are in continuation.   However, in bankruptcy proceedings, in order to avoid this instability, a trustee may set a period and make a demand to the creditor for a definitive answer within the set period regarding whether or not they will assert set-offs.   If the creditor does not make a definitive assertion of set-off within the period, the creditor may not assert set-offs from then on.


3.    Limitation of Set-offs in Both Procedures

Asserting set-offs in the following cases is not allowed as it may harm the equality of creditors in both restructuring and liquidation procedures:


(1)    Set-offs of claims which the creditor obtained from a third party, or with counter claims which

**NISHIMURA & ASAHI**

the creditor owes to the debtor, after the commencement of court procedures for insolvency;

(2)   Set-offs of claims which the creditor, with knowledge of the debtor's insolvency, obtained from a third party, or with counter claims which the creditor owes to the debtor, after the debtor became insolvent; or

(3)   Set-offs of claims which the creditor obtained from a third party, or with counter claims which the creditor owes to the debtor after the filing of court procedures for insolvency.   However, this does not apply if acquiring the claims or owing the counter claims occured based upon a cause (i) which exists not less than one year before the filing for commencement of court procedures for insolvency, (ii) which exists before the creditor knows the debtor's insolvency or filing for insolvency proceedings, or (iii) which arises under law.

Q14.    How is an Executory Contract treated in court procedures for insolvency?

A.

     An "Executory Contract" is a bilateral contract under which the main obligations have not been completely performed by both the debtor and the creditor at the time the court procedures for insolvency commence.   In the said proceedings (excluding special liquidation), a trustee/debtor may terminate the Executory Contract.    A trustee/deboor usually terminates the Executory Contract when he/she believes that maintaining such contract could become disadvantageous or unnecessary. When the trustee/debtor determines that continuing the Executory Contract is advantageous or necessary even after the procedure commences, they may continue the contract.   In such case, they may request that the counter-party perform its obligation, and the trustee/debtor shall perform their counter-obligation as administrative expenses.   By contrast, the counter-party may not terminate the Executory Contract and is bound by it.

     With the aforesaid right, the trustee/debtor may terminate an Executory Contract.   As situations in which the trustee/debtor may terminate an Executory Contract are not prescribed in the Acts, they have an option to terminate the contract at their discretion.   However, there is judicial precedent which ruled that the cancellation by the trustee/debtor is invalid where the termination will harm significantly the counter-party, and will lead to an extremely unfair result.

     An Executory Contract may not be terminated by the counter-party.   As shown above, since the situation may be overturned by the debtor/trustee's termination of the contract at any time, the position of the counter-party is quite unstable.   Therefore, the counter-party may specify a reasonable period and make a demand that the debtor/trustee provide a definite answer within a set period with regard to whether the debtor/trustee will terminate the Executory Contract or not.

     In civil rehabilitation proceedings and corporate reorganization proceedings, when the debtor/trustee does not give a definitive answer to the counter-party within the set period, it shall be deemed that the debtor/trustee has waived the option to terminate the contract (consequently, the contract will be maintained).   On the other hand, in bankruptcy proceedings, when the trustee does not give a definitive answer to the counter-party within the set period, it shall be deemed that a trustee has terminated the contract.

**NISHIMURA & ASAHI**

Q15.    If a clause, which gives a counterparty of a debtor the right to terminate a contract where the debtor files for a petition for commencement of court procedures for insolvency, is prescribed by the contract, is it possible to terminate the said contract?

A.

As previously described in Q14, if both the debtor and their counterparty under a bilateral contract have not yet completely performed their obligations by the time insolvency proceedings commence ("Executory Contracts"), the counterparty of the debtor who has filed a petition to commence court procedures for insolvency may not terminate the Executory Contracts.    However, in some cases, a clause which gives the counterparty the right to terminate the contract when the debtor files a petition to commence court procedures for insolvency (hereinafter referred to as the "Ipso Facto Clause") is prescribed in the contracts.    Therefore, whether or not the counterparty may terminate the contract based upon the Ipso Facto Clause becomes a controversial point.

Contrary to Section 365(e)(2) of the U.S. Bankruptcy Code, which provides for inefficiency of the Ipso Facto Clause in specific terms, the insolvency laws in Japan do not provide for such specific provision.    However, in some cases, the Supreme Court held that the Ipso Facto Clause was invalid as such clause reduces the debtor's assets, which should be maintained under the court procedure. Therefore, the Ipso Facto Clause is generally considered to be invalid in Japan as well, at least under restructuring procedures.

However, an acceleration clause forfeiting the debtor's benefit of time if the debtor files a petition to commence court procedure for insolvency is considered to be valid.

**NISHIMURA & ASAHI**

Q16.    What will happen to a debtor if a proposed rehabilitation plan or reorganization plan is rejected by creditors?

A.

In order for the proposed rehabilitation plan or reorganization plan to be approved, the consent of the statutory majority of the creditors is required under the civil rehabilitation proceedings or corporate reorganization proceedings, respectively.   Unless such consent is obtained, the proposed plan will be rejected

In that case, if certain requirements are met, the court may convene a creditors' meeting again and give the debtor/trustee a chance to obtain consent from creditors again.

However, when the proposed rehabilitation or reorganization plan is ultimately rejected by the creditors, the court will make an order to discontinue the civil rehabilitation proceedings or corporate reorganization proceedings, and these restructuring proceedings shall be transferred to bankruptcy proceedings.

Nevertheless, under corporate reorganization proceedings, if one or more classes of creditors vote to approve the proposed reorganization plan, the court may make an order confirming the said plan by specifying a clause to protect the interests of dissenting creditors ("cram down").

Even after the civil rehabilitation or the corporate reorganization proceedings are transferred to bankruptcy proceedings by the court's order, administrative expenses, which have arisen under the above-mentioned proceedings, shall be paid in preference to the other claims under the bankruptcy proceedings.

**NISHIMURA & ASAHI**

Q17.　　Is it possible for the effect of foreign insolvency proceedings to have influence over the proceedings in Japan?

A.

　　The "Act on Recognition and Assistance for Foreign Insolvency Proceedings" was enacted in Japan by adopting a model law on recognition and assistance for foreign insolvency proceedings, which was formulated by United Nations Commission on International Trade Law ("UNCITRAL"). The proceedings to recognize foreign insolvency proceedings and to give them effect in Japan is provided for in this Act.

　　Foreign trustees may file a petition with the Tokyo District Court for recognition of the foreign insolvency proceedings, and if certain requirements are met under the act, the court shall issue an order recognizing the foreign insolvency proceedings.　　If the order of recognition is made, the court may, upon the petition of the parties concerned, give an order such as a stay on procedures for debt-collection and court proceedings regarding the debtor's property.　　It is sensible, however, to consult with the court in advance when one intends to file a petition for recognition, as cases of filings for such petition are still too rare to have established a standard practice in Japan.

　　With regard to the English translation for provisions of the Act on Recognition and Assistance for Foreign Insolvency Proceedings, please refer to the following URL: [http://www.japaneselawtranslation.go.jp/law/detail/?id=1935&vm=04&re=01]

**NISHIMURA & ASAHI**

Q18.     What is the outline of "Turnaround ADR"?


A.

        The alternative dispute resolution procedure to turnaround a business (herein referred to as the "Turnaround ADR") is a specialized procedure for out-of-court debt adjustment.   In the Turnaround ADR, turnaround professionals, from a fair and neutral standpoint, provide mediation services in order to facilitate an agreement between a debtor and its creditors who are generally financial institutions.


        While the procedure for the Turnaround ADR is provided by law, the nature thereof is an out-of-court debt adjustment.   Therefore, in order to validate the turnaround plan to reduce or reschedule the debts, a unanimous consent by creditors to approve the plan is required.


        The Turnaround ADR has the following advantages:

(1)     Smooth commercial transactions between suppliers or customers and the debtor will remain unaffected, as the Turnaround ADR is designed primarily for creditors who are financial institutions.

(2)     Transparency and fairness of the procedures are secured, as the publicly certified ADR institution is engaged in the Turnaround ADR procedure in compliance with the applicable laws.   Therefore, the Turnaround ADR is reliable for the creditors.

(3)     Mediation provided by a disinterested third party, a publicly certified ADR institution, facilitates the out-of-court debt adjustment.

(4)     There are certain tax advantages for both creditors and the debtor.

NISHIMURA
& ASAHI

**Flow Chart of Turnaround ADR Proceedings**



For details of the Turnaround ADR, please refer to the following URL:

http://www.turnaround.jp/adr/pdf/100325_2.pdf

NISHIMURA
& ASAHI