Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 1 of 21 PageID #:6623

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

# Restructuring and insolvency in Japan: overview

by *Yoshihito Shibata*, *Yuri Ide* and *Zentaro Nihei*, Anderson Mori & Tomotsune

Country Q&A | Law stated as at 01-Apr-2018 | Japan

A Q&A guide to restructuring and insolvency law in Japan.

The Q&A gives a high level overview of the most common forms of security granted over immovable and movable property; creditors' and shareholders' ranking on a company's insolvency; mechanisms to secure unpaid debts; mandatory set-off of mutual debts on insolvency; state support for distressed businesses; rescue and insolvency procedures; stakeholders' roles; liability for an insolvent company's debts; setting aside an insolvent company's pre-insolvency transactions; carrying on business during insolvency; additional finance; multinational cases; and proposals for reform.

To compare answers across multiple jurisdictions, visit the *Restructuring and insolvency Country Q&A tool*.

This Q&A is part of the global guide to restructuring and insolvency law. For a full list of jurisdictional Q&As visit *www.practicallaw.com/restructure-guide*.

## Forms of security

---

1. What are the most common forms of security granted over immovable and movable property? What formalities must the security documents, the secured creditor or the debtor comply with? What is the effect of non-compliance with these formalities?

---

**Immovable property**

**Common forms of security and formalities.** Common forms of security over immovable property include, among others:

- Mortgage (Teito-ken). This is the most common form of security over immovable property. Under a mortgage, ownership of the relevant property is not transferred to the mortgagee. Rather, the mortgagee has the right to receive preferential payments in a judicial foreclosure on the debtor's default. A revolving mortgage (Ne-teito-ken) is also available to creditors wishing to secure unspecified claims arising from certain continuing transactions, up to the amount permitted under the relevant mortgage agreement.

- Pledge (Shichi-ken). A pledge involves the transfer of possession of the pledged property to the pledgee without a transfer of ownership. The pledgee has the right to use or profit from the property, as well as receive, preferential payment in a judicial foreclosure on the debtor's default.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 2 of 21 PageID #:6624

Restructuring and Insolvency in Japan: overview, Practical Law Country Q&A...

- Security interests created by way of provisional registration (Kari-toki-tampo). Such security interests give the secured creditor a preferential right to the value of the secured property and to take ownership of such property on the debtor's default.

- Assignment (Joto-tampo). Under an assignment, ownership (but not possession, which remains with the assignor) of the secured property is transferred to the assignee until the debt is repaid in full. Where the debtor defaults in its payment obligations, the assignee can dispose of or take ownership of the secured property.

Security interests are generally created by way of an agreement (written or otherwise) between the creditor and property owner, except in the case of pledges, which are created through an agreement and physical delivery of the secured property. For security over immovable property to be perfected, registration of the security is necessary.

**Effects of non-compliance.** Security interests that are not registered will be void against third parties. Where insolvency proceedings are involved, unregistered security interests will also be void against the insolvency trustee or debtor-in-possession.

**Movable property**
**Common forms of security and formalities.** Common forms of security over movable property include, among others:

- Pledge (Shichi-ken). For information on the nature of a pledge, *see above, Immovable property*. A pledge is created through an agreement and physical delivery of the secured property. To perfect a pledge over movable property, the pledgee must retain possession of the pledged property.

- Assignment (Joto-tampo). For information on the nature of an assignment, *see above, Immovable property*. Assignments are typically used to create security interests over inventories and machinery, which debtors would typically continue to use in their business operations despite such properties having been assigned. To perfect such security, delivery of the secured property (including constructive delivery) is required. The security can also be perfected by way of registration if the property owner is a corporation.

As a general matter, mortgages cannot be created over movable property except in certain circumstances, where the mortgages for such properties can be registered. Such properties include cars, ships, aircraft, construction machinery, and so on.

**Effects of non-compliance.** Security interests that are not perfected are void against third parties. Where insolvency proceedings are involved, unperfected security interests will also be void against the insolvency trustee or debtor-in-possession.

# Creditor and contributory ranking

2. Where do creditors and contributories rank on a debtor's insolvency?

© 2019 Thomson Reuters. All rights reserved.

Restructuring and Insolvency in Japan: overview, Practical Law Country Q&A...

In bankruptcy proceedings (*hasan*) for the liquidation, secured claims are enforceable outside the proceedings and administrative claims have the highest priority among the remaining claims. The claims rank as follows:

- **Secured claims.** Excess proceeds (if any) from the sale of the secured assets are distributed to other creditors in accordance with the priority of their claims. Where the sale proceeds are insufficient to satisfy secured claims, the deficiency will be treated as an ordinary bankruptcy claim.

- **Administrative claims.** Payment of administrative claims can be made when and as they arise and become due without the need to go through claim distribution procedures. Where there are insufficient funds to satisfy all administrative claims, such claims will be paid on a pro rata basis, provided that claims for expenses necessarily incurred for the conduct of the proceedings must first be satisfied. Administrative claims include, among others:

  - expenses directly related to the conduct of the proceedings (such as the remuneration of the bankruptcy trustee appointed for the proceedings);

  - unpaid employee salaries accrued within the three months prior to the date of the order for commencement of bankruptcy proceedings, and severance payments (subject to a maximum of three months of the relevant employee's salary); and

  - tax claims that have arisen before the commencement of the bankruptcy proceedings (excluding tax claims that have been due for more than a year prior to the date of the order for commencement of bankruptcy proceedings).

The following claims must be pursued under the bankruptcy proceedings, but are accorded priority:

- Priority bankruptcy claims. These include, among others:

  - employee claims incurred prior to the date of the order for commencement of bankruptcy proceedings (excluding those treated as administrative claims); and

  - tax claims that have arisen before the commencement of bankruptcy proceedings (excluding those treated as administrative claims).

- Ordinary bankruptcy claims. Borrowing, trade and other claims without priority are classified under this category of claims.

- Subordinated bankruptcy claims. These include, among others:

  - interest, default interest and penalties incurred after the date of the order for commencement of bankruptcy proceedings; and

  - overdue tax incurred after the date of the order for commencement of bankruptcy proceedings.

- Contractual subordinated bankruptcy claims. Claims that are contractually agreed to be subordinated to the subordinated bankruptcy claims referred to above will only be paid after all subordinated bankruptcy claims have been satisfied.

Funds remaining after all creditors have been paid in full will be distributed to shareholders.

© 2019 Thomson Reuters. All rights reserved.

Civil rehabilitation proceedings (*minji saisei*) and corporate reorganisation proceedings (*kaish kosei*) are available for the rehabilitation of a debtor. The claims have similar priorities as in the bankruptcy proceedings (*hasan*), while an enforcement of security interest is stayed after the commencement of corporate reorganisation proceedings.

# Unpaid debts and recovery

3. Can trade creditors use any mechanisms to secure unpaid debts? Are there any legal or practical limits on the operation of these mechanisms?

**Right of retention under the Companies Act**

Trade creditors have the right to retain possession of debtors' properties (including properties that are not necessarily related to the unpaid debts) until their unpaid debts are paid in full. In insolvency proceedings, such debts are deemed secured claims.

**Retention of title**

If the relevant contract contains a retention of title clause that provides that the titles in goods do not return from the trade creditor to the debtor until the relevant debt is repaid in full, a trade creditor may be able to assert ownership over the goods against a trustee or a debtor-in-possession in insolvency proceedings if such retention of title is properly perfected.

**Statutory liens**

Trade creditors have the right to assert statutory liens on the goods they sell to debtors to secure payment for those goods. If the goods have already been resold to a third party, the trade creditors can also assert security interests on the sale proceeds. In insolvency proceedings, their claims are treated as secured claims. In practice, however, there will often be difficulties in enforcing such statutory liens. For example, if the trustee or the debtor-in-possession receives payment from the sale of such goods before the trade creditors obtain an attachment order from the court, the trade creditors will be precluded from asserting their security interests over the sale proceeds. As a practical matter, therefore, a trustee or a debtor-in-possession will try to sell the goods and collect payment for such sale as quickly as they can. Another difficulty faced by trade creditors is the need to submit evidence that the goods have been resold (such as the relevant contract, purchase order or invoice in respect of the sale) before they can file a petition for an attachment order in respect of the sale proceeds. This requirement is difficult to satisfy because such documentary evidence is usually difficult to obtain.

**Convenience claims**

In civil rehabilitation or corporate reorganisation proceedings, trade creditors can receive payment for unsecured claims only under the rehabilitation or reorganisation plan. However, trade creditors with small claims may, under certain conditions, receive the full repayment amount of their claims outside the plans. Specifically, the court may permit the repayment of such claims when petitioned to do so by the trustee or debtor-in-possession if the court believes that:

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 5 of 21 PageID #:6627

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

- The prompt payment of small claims would facilitate smooth proceedings.

- Delayed payment of such small claims would significantly hinder the rehabilitation of a debtor's business.

---

4. Can creditors invoke any procedures (other than the formal rescue or insolvency procedures described in *Questions 6* and *7*) to recover their debt? Is there a mandatory set-off of mutual debts on insolvency?

---

Creditors have the right to bring lawsuits against debtors, and are able to enforce the judgments issued in respect of such lawsuits. However, once an order for commencement of insolvency proceedings has been issued in respect of a debtor, actions that are pending against the debtor would generally be automatically stayed.

There is no mandatory set-off of mutual debts in insolvency proceedings. Creditors can exercise the right of set-off at their option. In a typical set-off, it is necessary for the obligations of each of the relevant parties to be due and owing. On the commencement of bankruptcy proceedings, the obligations of the debtor can be set off. However, in civil rehabilitation, corporate reorganisation and special liquidation proceedings, creditors have no right to set off the obligations of debtors until such obligations are due. Further, in civil rehabilitation proceedings and corporate reorganisation proceedings, creditors can only exercise the right of set-off before the expiration of the filing period for their claims.

# State support

---

5. Is state support for distressed businesses available?

---

Under the Industrial Competitiveness Enhancement Act (ICEA), tax incentives may be offered to debtor companies submitting plans to improve their profitability to restructure its business.

The ICEA also provides a regime for out-of-court work-outs which are called "turnaround ADR" (*Jigyo saisei* ADR). In the turnaround ADR, settlements among the financial creditors are facilitated by a mediator specialising in company turnarounds. The Ministry of Economy, Trade and Industry gives authorisation to private organisations operating the turnaround ADR procedures.

There are some other schemes for out-of-court work-outs supported by the government. For example, the Regional Economy Vitalisation Corporation of Japan (REVIC) (*Chiiki Keizai kasseika shien kikou*), a state-owned

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 6 of 21 PageID #:6628

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

organisation, facilitates work-outs by co-ordinating the procedures applicable to lenders and providing financing to debtors.

# Rescue and insolvency procedures

---

6. What are the main rescue/reorganisation procedures in your jurisdiction?

---

**Civil Rehabilitation Proceedings (Minji Saisei)**
**Objective.** Civil rehabilitation proceedings are intended to enable a debtor to rehabilitate its business operations or reconstruct its economic activities in accordance with a rehabilitation plan approved by a certain majority of its creditors. The distribution made to its creditors must be no less than what they receive in the event of the debtor's bankruptcy.

**Initiation.** Civil rehabilitation proceedings are used for the rehabilitation of companies of almost any size and type, and for the rehabilitation of individuals. In principle, either a debtor or a creditor can file a petition to court for the commencement of civil rehabilitation proceedings.

The directors of a company have no obligation to initiate such proceedings when the company faces financial difficulty. However, the company's creditors can institute personal claims against the directors if the creditors believe that the directors had permitted the company to enter into transactions that they knew (or should have known) would result in the company subsequently being unable to perform due to the financial difficulties.

**Substantive tests.** Civil rehabilitation proceedings can be commenced in respect of a debtor when:

• It is likely that the grounds for commencement of bankruptcy proceedings (such as the inability of the debtor to pay its debts or the insolvency of the debtor on a balance sheet basis) will materialise with respect to a debtor (*see Question 7*).

• A debtor is unable to pay its debts when due and payable without causing significant hindrance to the continuation of its business operations. Only the debtor can file a petition on this ground.

**Consent and approvals.** As secured creditors have the right to enforce their security interests outside the proceedings, they can only vote with the expected or fixed deficiency claims. The following consents are required for a proposed rehabilitation plan to be approved:

• Consent of more than 50% of creditors voting at the relevant creditors' meeting by headcount.

• Consent of creditors whose voting rights account for at least half of the total amount of voting rights held by all creditors.

© 2019 Thomson Reuters. All rights reserved.

**Supervision and control.** In principle, the debtor's existing management will retain the right to carry out the debtor's business operations and to administer and dispose of the debtor's property. The court will generally appoint a supervisor (*kantoku- iin*) to supervise the proceedings. The court will also prohibit the debtor from engaging in certain activities without the supervisor's consent, such as disposing of its property outside the ordinary course of business, incurring borrowings and waiving of certain contractual rights.

However, the court can appoint a trustee (*kanzainin*) if the debtor administers and disposes of its property in an inappropriate manner or if the court finds a trustee particularly necessary for the rehabilitation of the debtor's business. In such case the appointed trustee will have the right to carry out the debtor's business operations and administer and dispose of the debtor's property.

**Protection from creditors.** When a petition for the commencement of rehabilitation proceedings is filed, the court will usually issue an injunction to stay all payments to the pre-petition claims by the debtor. After commencement of the proceedings, creditors will, in principle, only have the right to enforce their claims under the proceedings. However, the following claims can be enforced outside the proceedings:

- Secured claims (betsujyoken).

- Common benefit claims (kyoeki saiken), that is, claims for expenses necessary for the conduct of the proceedings (such as the remuneration of a supervisor).

- General priority claims (ippan yusen saiken), that is, employee and tax claims (excluding those treated as common benefit claims).

Although some contracts contain provisions permitting the contract to be terminated in the event of an insolvency petition being filed in respect of a party to the contract, (an *ipso facto* clause), such provisions are not always enforceable, especially when they are deemed to violate the public policies that the Civil Rehabilitation Act is intended to promote.

**Length of procedure.** Based on the indicative procedure timelines published by the Tokyo District Court, plans of rehabilitation will be finalised and confirmed within five months from the date of filing.

**Conclusion.** Generally, unsecured debts will be reduced in accordance with the confirmed rehabilitation plan. Secured debts cannot be reduced through the rehabilitation plan since secured creditors are generally free to foreclose on their secured claims. To continue to use the collaterals, the debtor must settle with the secured creditors.

If a new sponsor purchases the debtor's business on a going concern basis, the consideration for such sale is distributed to the creditors and the debtor is liquidated under the rehabilitation plan. If the sponsor is willing to subscribe for new shares in the debtor, the debtor acquires its existing shares without compensation, reduces the current amount of its stated capital and thereafter issues new shares to the sponsor without shareholders' approval (that is otherwise required under the Companies Act), if the debtor's total liabilities exceed the total value of its assets. If the debtor takes such steps, the rights of its existing shareholders will be forcibly eliminated.

Rehabilitation proceedings will terminate if:

- A supervisor has been appointed on either:

  - the implementation in full of the rehabilitation plan; or

© 2019 Thomson Reuters. All rights reserved.

Restructuring and Insolvency in Japan: overview, Practical Law Country Q&A...

- the expiration of three years from the date of confirmation of the rehabilitation plan (whichever is earlier).

- A trustee has been appointed when the rehabilitation plan has been fully implemented or when the court is substantially assured that the plan will be implemented without continuation of the proceedings.

**Corporate Reorganisation Proceedings (Kaisha Kosei)**

**Objective.** Corporate reorganisation proceedings are intended to enable a stock company to rehabilitate its business operations in accordance with the reorganisation plan approved by a certain majority of its creditors. Such proceedings are more rigid than civil rehabilitation proceedings. Specifically, the claims of both secured and unsecured creditors are subject to the stay and are amended by the plan of reorganisation. Such proceedings are typically used for the rehabilitation of large corporate debtors or for complex reorganisation cases. Distribution made to creditors under such proceedings must not be less than what they would receive in bankruptcy proceedings.

**Initiation.** Only a stock company can be a debtor. Any of the following may file a petition for commencement of the proceedings:

- A debtor.

- A creditor (or creditors) holding aggregate claims equal to 10% or more of the paid-in capital of the debtor.

- A shareholder (or shareholders) holding 10% or more of the voting rights in the debtor.

The directors of a stock company have no obligation to initiate corporate reorganisation proceedings when the company faces financial difficulties (*see above, Civil Rehabilitation Proceedings*).

**Substantive tests.** The substantive tests applicable to corporate reorganisation proceedings are equally applicable to civil rehabilitation proceedings.

**Consent and approvals.** Creditors are categorised into secured and unsecured creditors for the purposes of voting. A corporate reorganisation plan will be approved if the following conditions are met:

- For unsecured creditors, approval by unsecured creditors holding a majority of the aggregate amount of unsecured claims.

- For secured creditors:

  - approval by secured creditors holding two-thirds or more of the aggregate amount of secured claims, if the maturity dates of their claims will be modified by the plan;

  - approval by secured creditors holding three-quarters or more of the aggregate amount of secured claims, if the full, or part of the amount of secured claims will be discharged by the plan; or

  - approval by secured creditors holding nine-tenths or more of the aggregate secured claims, if the plan contemplates liquidation of the debtor; and

  - approval by a majority of the debtor's shareholders, if such approval is not required where the debtor's total debts exceed the total value of its assets. Since almost all debtors' liabilities exceed their assets in practice, shareholders are typically ineligible to vote for or against the institution of corporate reorganisation proceedings.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 9 of 21 PageID #:6631

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

**Supervision and control.** When a petition for the commencement of proceedings is filed, the court will in principle appoint a third party lawyer with substantial experience in corporate restructuring as an interim trustee (*hozen kanrinin*), thereby divesting the directors of the debtor of their authority to administer and dispose of the debtor's property. After the commencement of proceedings, the court will appoint a trustee, who is usually the same person as the interim trustee, to take over the authority of the interim trustee. The court will supervise the activities of the interim trustee, who must obtain the court's approval before engaging in certain actions, such as selling the debtor's property outside the ordinary course of business, or incurring borrowings on behalf of the debtor.

In 2009, the Tokyo District Court introduced the "quasi-DIP" (debtor-in-possession) type practice, under which the debtor's director or counsel (if applicable) is appointed as trustee. In quasi-DIP proceedings, the court appoints a supervisor and examiner (*kantokuiin/chosaiin*) instead of an interim trustee to supervise the debtor's business management, administration and disposition of assets.

**Protection from creditors.** When a petition for the commencement of proceedings is filed, the interim trustee or debtor will usually be required by a stay order to obtain the court's approval before paying off the pre-filing claims. After proceedings have commenced, the enforcement of secured and unsecured claims will be automatically stayed. Unlike civil rehabilitation proceedings, secured claims and tax claims are subject to the stays.

*Ipso facto* clauses are generally deemed not enforceable by case laws, as they are deemed to violate the public policies that the Corporate Reorganisation Act is intended to promote.

**Length of procedure.** Under the indicative procedure timelines published by the Tokyo District Court, the court will finalise and confirm the plan of reorganisation within 12 months from the date of filing. In quasi-DIP type corporate reorganisation proceedings, the court could finalise and confirm the plan of reorganisation as early as within six months from the date of filing.

**Conclusion.** Similarly to the civil rehabilitation proceeding, if a new sponsor is found, the sponsor purchases the debtor's business on a going concern basis or subscribes for new shares in the debtor after the cancellation of all of the existing shares. The rights of secured and unsecured creditors and the shareholders will be modified in accordance with the reorganisation plan.

Corporate reorganisation proceedings will terminate:

- On the full implementation of the reorganisation plan.

- When the court is substantially assured that the reorganisation plan will be implemented without continuation of the proceedings.

- Two-thirds or more of the claims against the debtor have been paid under the reorganisation plan, unless the court is of the view that termination of the plan could result in an incomplete implementation of the plan.

---

7. What are the main insolvency procedures in your jurisdiction?

---

**Bankruptcy proceedings (Hasan)**

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 10 of 21 PageID #:6632

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

**Objective.** Bankruptcy proceedings are proceedings for the winding-up of a debtor in financial difficulty. In principle, all of the assets of the debtor will be sold, converted into cash, and then distributed to creditors, depending on the amount of their claims.

**Initiation.** Bankruptcy proceedings are applicable not only to legal persons but also to natural persons. In principle, either a debtor or a creditor can file a petition. In addition, a representative of a legal person such as a director of a stock company can file a petition.

**Substantive tests.** Bankruptcy proceedings can be commenced in respect of a debtor when either:

- The debtor is generally, and on a continuing basis, unable to pay its debts as they become due.

- The debtor's total liabilities exceed the total value of its assets, if the debtor is not a legal person. This applies to legal persons other than a general partnership company (gomei kaisha) and limited partnership company (goushi kaisha).

**Consent and approvals.** No consent is required from creditors for the commencement of bankruptcy proceedings in respect of a debtor. The bankruptcy estate of a debtor must be distributed in strict compliance with the priority rules stipulated under the Bankruptcy Act.

**Supervision and control.** On the commencement of proceedings, the court will appoint a trustee, who can administer and dispose of the debtor's property. The trustee is supervised by the court and must obtain the court's approval before engaging in certain actions, such as selling the debtor's property or incurring borrowings on behalf of the debtor.

**Protection from creditors.** After commencement of proceedings, creditors would, in principle, only be able to enforce their claims under the bankruptcy proceedings. However, secured claims can be enforced outside the proceedings, and administrative claims (*zaidan saikn*) have the highest priority among the claims other than secured claims (*see Question 2*). In the period between the filing and commencement of proceedings, the court will, if necessary, by its own authority or on the filing of a petition by an interested person, issue an injunction to stay the making of payments by the debtor and/or the enforcement of rights by creditors.

**Length of procedure.** Proceedings that do not involve any realisation of assets or complex legal issues will often conclude between three to six months after commencement. However, the length of proceedings will differ on a case-by-case basis, depending on the debtor's specific circumstances. It is not uncommon for complex cases to last more than a year.

**Conclusion.** On the liquidation of the assets of the estate into an appropriate amount of cash for distribution, dividends will be paid to creditors in accordance with the priority provided under law. A secured creditor will have no right to participate in such distribution, unless it can prove the existence of a shortfall between the amount of its claim and the amount it obtained after exercising its security interests.

Bankruptcy proceedings will terminate when:

- The court issues an order for the termination of the proceedings after final distribution has been made and a creditors' meeting to report on the debtor's accounts has been concluded.

- The court is assured that the value of the bankruptcy estate is smaller than the administrative *claims*.

- All creditors who have filed claims agree to the termination of the proceedings.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 11 of 21 PageID #:6633

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

On the termination of bankruptcy proceedings, a corporate debtor will be dissolved. An individual debtor may, on filling a motion, be discharged from antecedent debts and start afresh, unless it is restricted from doing so under certain prescribed legal exceptions.

**Special liquidation proceedings (Tokubetsu Seisan)**

**Objective.** Special liquidation proceedings are proceedings for the winding-up of a debtor in financial difficulty. Special liquidation is typically used when the debtor's shareholders are confident of obtaining creditors' cooperation in the liquidation process and wish to control such process without the involvement of a trustee.

**Initiation.** Special liquidation proceedings are only available to stock companies. For a debtor to undergo such proceedings, the shareholders of the debtor must first pass a resolution to dissolve the debtor. The resolution requires the affirmative vote of two-thirds or more of the shares, at a meeting where a majority of the debtor's issued and outstanding shares are represented. The corporation must then appoint a liquidator (*seisannin*). Special liquidation proceedings can be commenced by the petition of a creditor, liquidator, corporate auditor or shareholder. If a debtor is suspected to be insolvent, the liquidator must file a petition for the commencement of special liquidation proceedings.

**Substantive tests.** Special liquidation proceedings can be commenced in respect of a debtor when:

- There are circumstances that are prejudicial to the implementation of the debtor's liquidation.

- The debtor's total liabilities are suspected to exceed the total value of its assets.

**Consent and approvals.** The following consents are required for a proposed special liquidation agreement (*kyoutei*) detailing the plan of special liquidation agreement to be adopted at a creditors' meeting (that is, for a debtor to undergo special liquidation proceedings):

- Consent of the majority of creditors holding voting rights by headcount, and voting in person or in writing, at the relevant creditors' meeting.

- Consent of creditors with an aggregate claim amount that is not less than two-thirds of the total amount of claims held by all creditors with voting rights.

However, in some cases (especially those involving only one or two creditors), the extent of debt forgiveness and method of satisfying claims are provided under the provisions of a court-approved settlement agreement between the debtor and its creditors, such that no plan is submitted.

**Supervision and control.** On the commencement of special liquidation proceedings, the liquidator will ordinarily be appointed as the special liquidator (*tokubetsu seisannin*) responsible for conducting the special liquidation procedures. The special liquidator, who is supervised by the court, can administer the debtor's property, but must obtain the court's approval before engaging in certain actions, such as disposing of the debtor's property or incurring borrowings on behalf of the debtor.

**Protection from creditors.** After the commencement of proceedings, creditors would, in principle, only be able to enforce their claims under the special liquidation proceedings. However, secured claims, claim for expenses necessary for the conduct of, or relating to, the proceedings, and claims with statutory priority (such as employee and tax claims) can be enforced outside the proceedings. However, debtors undergoing special liquidation proceedings are prohibited from paying any debt without the court's permission during the period in which the debtor requests for its creditors to file their claims (such period must be at least two months).

© 2019 Thomson Reuters. All rights reserved.

**Length of procedure.** An agreement is usually confirmed by the court within five months of the issuance of the commencement order for special liquidation proceedings, although such period may be extended.

**Conclusion.** When an order confirming the agreement becomes final and binding, the rights of creditors will be modified in accordance with the terms of the agreement. The agreement will not affect secured creditors.

The court will terminate the proceedings on which the debtor will be dissolved:

- On the complete implementation of the special liquidation plan.

- Once the debtor's obligations under all independent settlements with creditors have been performed or discharged.

- When the total liabilities of the debtor no longer exceed the total value of its assets.

# Stakeholders' roles

> 8. Which stakeholders have the most significant role in the outcome of a restructuring or insolvency procedure? Can stakeholders or commercial/policy issues influence the outcome of the procedure?

**Stakeholders**
The debtor plays the most significant role in civil rehabilitation proceedings because it will generally continue to manage its business and administer the proceedings as the debtor-in-possession. In other types of proceedings, the trustee, or the liquidator, who administers the proceedings, plays the most significant role.

**Influence on outcome of procedure**
Formal insolvency proceedings heavily rely on court-appointed professionals (such as trustees, examiners, supervisors and others) to drive the process. The Japanese system's lack of required notice, disclosure and hearings makes it difficult for smaller creditors (even financial creditors) to play an active role. However, in recent cases where active international creditors control the majority of creditors whose consent is necessary to approve insolvency or restructuring plans, the voices of creditors were reflected through the activities of the creditors' committee or a competing plan submitted by the creditors.

Before a petition for special liquidation proceedings can be filed in respect of a debtor, the shareholders of the debtor must first pass a resolution for the debtor's dissolution (*see Question 7*). In contrast, other types of restructuring or insolvency proceedings can be instituted without the approval of creditors or shareholders.

Tax claims and employee claims are creditors accorded a high level of protection (*see Question 2*).

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 13 of 21 PageID #:6635

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

# Liability

9. Can a director, partner, parent entity (domestic or foreign) or other party be held liable for an insolvent debtor's debts?

**Director**
The directors of a debtor company could be liable to the debtor's creditors if the directors had permitted the company to enter into a transaction that they knew (or should have known) would result in the company subsequently being unable to perform due to the financial difficulties.

**Partner**
Partners' liability for an insolvent debtor's debts varies depending on the type of partnership:

- General partnership (Nini Kumiai). All partners will be liable for the debts of a partnership pursuant to the partnership agreement. A creditor of a partnership that had no knowledge of the proportion of the respective partners' share of losses at the time the creditor's claims had arisen may exercise its rights against each of the partners in equal proportion.

- Limited liability partnership (Yugen Sekinin Jigyo Kumiai). The liability of a partner is limited to the extent of its capital contribution.

- Investment limited partnership (Toshi Jigyo Yugen Sekinin Kumiai). Investment limited partnerships consist of general partners and limited partners. General partners are responsible for managing the operations of the partnership and have unlimited liability. Limited partners are liable for the debts of the partnership only to the extent of its capital contribution.

- Silent partnership (Tokumei Kumiai). A silent partnership is a contractual agreement between two parties, an investor (or the silent partner) and a business operator, under which the investor agrees to invest in the business of the business operator in return for the profits of the business. A silent partner is, in principle, liable for the business operator's actions only to the extent of its capital contribution.

**Parent entity (domestic or foreign)**
A parent entity is generally not liable for the debts of an insolvent subsidiary unless the corporate veil is pierced. The corporate veil will be pierced if the subsidiary exists only as a matter of formality and does not have substantial activities of its own, or if the subsidiary is completely controlled by the parent entity such that there has been an abuse of the corporate form.

**Other party**
Not applicable.

© 2019 Thomson Reuters. All rights reserved.

# Setting aside transactions

10. Can an insolvent debtor's pre-insolvency transactions be set aside? If so, who can challenge these transactions, when and in what circumstances? Are third parties' rights affected?

An insolvency trustee or supervisor has the right to void an insolvent debtor's pre-insolvency transactions under the following circumstances:

- Avoidance of fraudulent transfers. Typically, transactions that are detrimental to creditors can be avoided if the debtor and the counterparty to the transaction had known that the transaction would be harmful to the debtor's creditors. Additionally, a transaction that had taken place within six months of the debtor's insolvency and was one for which the debtor had obtained no consideration is voidable regardless of whether the debtor and the counterparty had known that the transaction would be harmful to creditors.

- Avoidance of preferences. Preferential payments and provisions of collateral for existing obligations are typically voidable. Specifically, preferential payments and provisions of collateral are generally voidable if:

  - the relevant transaction had taken place after the filing of insolvency proceedings in respect of the debtor or after the debtor becomes cash flow insolvent; and

  - the creditor had been aware that insolvency proceedings had been filed in respect of the debtor or that the debtor was already cash flow insolvent at the time of the transaction.

In addition, transactions involving preferential payments or provisions of collateral by a debtor without any obligation on the part of the debtor are voidable if such transactions had taken place within 30 days before the debtor became cash flow insolvent, unless the counterparty to the transaction can prove that it was unaware that the transaction would be detrimental to other creditors.

It is generally difficult for insolvency trustees or supervisors to void a transaction against a secondary transferee if such transferee had not been aware of the grounds on which the relevant transfer is voidable.

This is only a brief description of typical cases and general principles. The power of insolvency trustees and supervisors are more complex in reality and differ depending on the type of insolvency laws involved.

# Carrying on business during insolvency

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 15 of 21 PageID #:6637

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

> 11. In what circumstances can a debtor continue to carry on business during rescue or insolvency proceedings? In particular, who has the authority to supervise or carry on the debtor's business during the process and what restrictions apply?

Under civil rehabilitation proceedings, the existing management members of the debtor will generally remain to run the debtor's business under the supervision of a court-appointed supervisor.

Under quasi-DIP (debtor-in-possession) corporate reorganisation proceedings, the former management members of the debtor will be appointed as trustee by the court to run the debtor's business under the court's supervision. In general, quasi-DIP proceedings are available only if all of the following requirements are satisfied:

- There is no issue concerning the former management members' liability for any failure in managing the debtor.

- The debtor's major creditors do not object to the former management members' continued involvement in the management of the debtor.

- The potential sponsor of the debtor (if any) agrees to the former management members' continued involvement in the management of the debtor.

- No circumstances exist to indicate that the former management members' continued involvement in the management of the debtor will adversely affect the proper conduct of the corporate reorganisation proceedings.

The debtor or trustee must obtain the consent of the insolvency supervisor or court before engaging in certain significant activities, such as the disposition of the debtor's property, incurring borrowings on behalf of the debtor, or waiving of certain contractual rights of the debtor.

Contracts entered into by a debtor will not, in principle, be automatically terminated solely by virtue of the commencement of insolvency proceedings in respect of the debtor. Where neither the debtor nor its counterparty under a bilateral contract have completely performed its obligations at the time of commencement of the proceedings, the debtor or trustee can terminate the contract, or confirm the validity of the contract and require the counterparty to perform its obligations.

## Additional finance

> 12. Can a debtor that is subject to insolvency proceedings obtain additional finance both as a legal and as a practical matter (for example, debtor-in-possession financing or equivalent)? Is special priority given to the repayment of this finance?

© 2019 Thomson Reuters. All rights reserved.

In civil rehabilitation proceedings or corporate reorganisation proceedings, a debtor may obtain debtor-in-possession financing with the consent of the insolvency supervisor or court. Post-petition credits qualify as administrative claims that must be paid in full in accordance with the relevant contractual terms. However, where proceedings transition from corporate reorganisation or civil rehabilitation to bankruptcy, administrative claims can only be paid on a pro rata basis if the estate does not have enough funds to satisfy all administrative claims. There is no equivalent of the US Chapter 11 priming lien or super priority systems in Japan.

# Multinational cases

13. What are the rules that govern a local court's recognition of concurrent foreign restructuring or insolvency procedures for a local debtor? Are there any international treaties or EU legislation governing this situation? What are the procedures for foreign creditors to submit claims in a local restructuring or insolvency process?

### Recognition

Under the Act on Recognition of and Assistance in Foreign Insolvency Proceedings (*Shonin Enjo Ho*), the Tokyo District Court can recognise foreign bankruptcy and reorganisation proceedings, and provide assistance if certain conditions are satisfied. These conditions include the applicability of a universality principle to the foreign insolvency proceedings and the necessity of the Tokyo District Court's assistance.

### Concurrent proceedings

The Bankruptcy Act, Civil Rehabilitation Act and Corporate Reorganisation Act set out the following rules for concurrent proceedings:

- The trustee or the debtor-in-possession must make an effort to co-operate with foreign trustees.

- The grounds for commencement of local insolvency proceedings are presumed where similar insolvency proceeding are pending in a foreign country.

- Foreign trustees can file a petition for local insolvency proceedings and attend creditors' meetings to express their opinion in local insolvency proceedings.

- Local trustees can participate in foreign insolvency proceedings on behalf of creditors participating in local insolvency proceedings, and vice versa.

- Amounts recovered by a creditor, through the exercise of its rights, from the debtor's assets located outside Japan must be credited against payments made to that creditor under local proceedings.

### International treaties

Japan is not a party to any international insolvency treaty. However, the Act on Recognition of and Assistance in Foreign Insolvency Proceedings is modelled on the United Nations Commission on International Trade Law (UNCITRAL) Model Law.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 17 of 21 PageID #:6639

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

**Procedures for foreign creditors**

Foreign creditors are treated in the same manner as local creditors. Foreign trustees can submit claims in local insolvency proceedings on behalf of creditors participating in foreign insolvency proceedings.

# Reform

14. Are there any proposals for reform?

The National Diet approved significant amendment to the Civil Code in May 2017 to update the Civil Code which is approximately 120 years old. Some general rules and many provisions regarding contracts were amended. The amended Civil Code will be enacted sometime before June 2020.

## Online resources

**e-Gov**
W *http://law.e-gov.go.jp/cgi-bin/idxsearch.cgi*

**Description.** This website is maintained by the Ministry of Internal Affairs and Communication, and provides links to Japanese legislation.

**Japanese Law Translation**
W *www.japaneselawtranslation.go.jp/?re=02*

**Description.** This website is maintained by the Ministry of Justice, and provides links to English translations of Japanese legislation. The translations are for guidance purposes only.

## Contributor profiles

**Yoshihito Shibata, Partner**

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 18 of 21 PageID #:6640

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

**Anderson Mori & Tomotsune**



**T** +81-3-6894-1033
**F** +81-3-6894-1034
**E** *yoshihito.shibata@amt-law.com*
**W** *http://www.amt-law.com/en/*

**Professional qualifications.** Admitted to the bar in Japan and New York, passed CPA exam in Illinois

**Areas of practice.** Insolvency and restructuring; corporate crisis management; M&A; anti-trust.

**Non-professional qualifications.** LLB, Keio University, Japan; LLM, Duke University, US

**Recent transactions**

- Appointed by the court as bankruptcy trustees in various bankruptcy proceedings in 2016.

- Appointed by the court as supervisors in civil rehabilitation proceedings in 2016.

- Represented foreign and domestic creditors in major bankruptcy and out-of-court proceedings in 2016.

- Represented strategic and financial investors in major civil rehabilitation proceedings and out-of-court proceedings in 2015.

- Acted as deputy reorganisation trustees in major corporate reorganisation proceedings in 2013.

**Languages.** Japanese; English

**Professional associations/memberships.** Daini Tokyo Bar Association; INSOL International; American Bar Association; Japanese Association for Business Restructuring; Japan Law Foundation

**Recent publications.**

- "Accounting Fraud and Criminal Punishment", Corporate Crime and Compliance, 2016.

- Commentaries of Bankruptcy Code, (co-editor, co-author), 2015.

- "Monetization of Corporate Value and Creditors' Right", The Lawyers, 2015.

- Basic M&A Practice, (co-editor and co-author), 2015.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 19 of 21 PageID #:6641

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

- Bankruptcy Practice Q&A 200, (co-editor, co-author), 2012.

- Right of Offset in Bankruptcy Proceedings, Bankruptcy, Collateral, and Guarantee, 2015.

**Yuri Ide, Partner**

**Anderson Mori & Tomotsune**



**T** +81-3-6894-1075
**F** +81-3-6894-1076
**E** *yuri.ide@amt-law.com*
**W** *http://www.amt-law.com/en/*

**Professional qualifications**. Lawyer, Japan

**Areas of practice.** Insolvency and restructuring; M&A; crisis management; international litigation.

**Non-professional qualifications.** LLB in Keio University, Japan; LLM in Duke University.

**Recent transactions**

- Served as the counsel for the debtors in various industries (including shipping and construction).

- Represented international and Japanese creditors in various cross-border restructuring cases.

- Represented strategic and financial buyers of distressed companies in Japan.

**Languages.** Japanese, English

**Professional associations/memberships.** Tokyo Bar Association; INSOL International; Japanese Association for Business Recovery (JABR); International Women's Insolvency and Restructuring Confederation (IWIRC)

**Publications.**

- "Japan Chapter: Insolvency and Corporate Reorganisation 2017", IFLR website, 2017.

- Co-author, "Business Turnaround and M&A – Structuring Points –" Japan Buy-out Market Review, 2016.

© 2019 Thomson Reuters. All rights reserved.

Case: 1:14-cv-01437 Document #: 405-3 Filed: 02/25/19 Page 20 of 21 PageID #:6642

Restructuring and insolvency in Japan: overview, Practical Law Country Q&A...

- "Cross Border Business Restructuring", Shoji Homu, 2015.
- "Business Restructuring and Corporate Bonds", Shoji Homu, 2012.

**Zentaro Nihei, Partner**

**Anderson Mori & Tomotsune**



**T** +81-3-6894-2003
**F** +81-3-6894-2004
**E** *zentaro.nihei@amt-law.com*
**W** *http://www.amt-law.com/en/*

**Professional qualifications.** Qualified in Japan and New York

**Areas of practice.** Insolvency and restructuring; M&A; dispute resolution; litigation.

**Non-professional qualifications.** LLB, Kyoto University, Japan; LLM, Duke University, US.

**Recent transactions**

- Advised on financial restructuring and workouts.
- Represented a wide range of creditors and distressed investors globally.
- Served as bankruptcy trustee appointed by the Tokyo District Court in several bankruptcy cases.
- Represented secured lenders in a cross-border restructuring case.
- Represented international companies in cross-border M&A transactions.

**Languages.** Japanese, English

**Professional associations/memberships.** Japanese Association for Business Recovery; Japanese Association of Turnaround Professionals; INSOL International; NextGen Leadership Program, International Insolvency Institute

**Publications.**

© 2019 Thomson Reuters. All rights reserved.

- Co-author, Japan Chapter: Insolvency and Corporate Reorganisation 2017, IFLR Insolvency and Corporate Reorganisation Report 2017.

- Author, The Role of Japanese Government-Backed Funds in Financial Restructurings, Norton Journal of Bankruptcy Law and Practice Volume 25, Number 5, Thomson Reuters, 2016.

- Author, Japan's Government-Backed Rehabilitation / Funds Taking Stock of Over a Decade of Company Restructurings, International Insolvency Institute NextGen Program, 2016.

END OF DOCUMENT

© 2019 Thomson Reuters. All rights reserved.