UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK KARPELES, an individual,<br><br>*Defendant*. | No. 1:14-cv-01437<br><br>Hon. Gary Feinerman<br><br>Magistrate Judge Susan Cox |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR DOCUMENTS**

Plaintiff Gregory Greene ("Plaintiff"), by and through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 37(a), hereby respectfully moves the Court for an Order compelling Defendant Mark Karpeles ("Defendant") to produce documents responsive to Plaintiff Gregory Greene's First Set of Requests for the Production of Documents to Defendant Mark Karpeles. In support of this motion, Plaintiff states as follows:

**I.      INTRODUCTION**

This case is about Mark Karpeles's management and control over virtually every aspect of the Mt. Gox bitcoin exchange. Karpeles has acknowledged that he has access to documents and communications relevant to that management and control but, to date, has not produced even a single document in discovery. Through the meet and confer process, Karpeles has explained that his decision to not produce turns on his attorneys' interpretation of two provisions of the Japanese Code of Criminal Procedure, which (he contends) preclude him from disclosing any

1

information relating to the Mt. Gox exchange because that information overlaps with his criminal case in Japan.

Karpeles's objection lacks any merit whatsoever. By their terms, Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure only prevent a Japanese criminal defendant from disclosing information that "the public prosecutor has given [the accused or his lawyer] the opportunity to inspect or copy." (Declaration of Matt Wilson ("Wilson Decl."), attached to the Declaration of Benjamin Thomassen ("Thomassen Decl.") as Exhibit A, at ¶¶ 12-14, 16.) They do not prevent an individual from disclosing information otherwise in his or her possession. They therefore do not prevent Karpeles from producing such information—*e.g.*, communications and other documents relating to the Mt. Gox exchange—in this case. (*Id.* ¶¶ 10-11, 15-18.)

Because Karpeles asserts no other objections that resulted in his withholding of documents, his refusal to produce materials in this case violates Federal Rules of Civil Procedure 26 and 34. An order compelling Karpeles's production is therefore appropriate.[1]

## II. BACKGROUND

### A. Factual Background

Plaintiff seeks to hold Karpeles accountable for conduct that led to the loss of more than $400 million from U.S. users of the Mt. Gox bitcoin exchange on theories of negligence, conversion, and fraud. By now, the Court is well-aware of the general facts and allegations

---

[1] For ease of reference, Plaintiff seeks a compelling order specific with regards to Plaintiff's Requests to Produce Nos. 4, 5, 10, 11, 12, 13, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 28, 29, 30, 31, 33, and 35. Because the record is unclear about the status of Karpeles's access to documents (i.e., given his counsel's conflicting explanations as to whether her client does or does not have access to case materials), Plaintiff reserves the right to seek or compel responses to those requests to which Karpeles claimed he has no responsive documents. (*See, e.g.*, Ex. D at Response to Req. No. 1 (stating without objection that "Karpeles has no documents responsive to this request.").)

2

underlying these theories. Plaintiff alleges that, as the CEO of Mt. Gox, Karpeles controlled all aspects of the exchange: He was responsible for the code underlying the exchange, knew of bugs and other security issues affecting the exchange, and controlled what information was disclosed to Mt. Gox's customers. (Dkt. 245 at ¶¶ 19-23, 39.) As a result of this access and control, Plaintiff seeks to hold Karpeles accountable on theories of negligence (by failing to protect class members' holdings using reasonable security measures), fraud (by misrepresenting or concealing the health or stability of the Mt. Gox exchange for the purpose of inducing class members to invest or keep investments on the exchange), and conversion (by abusing his access to Mt. Gox's systems or enabling third parties to infiltrate such systems and move bitcoin off the exchange without authorization). (*See generally id.* ¶¶ 95-121.)

B.  **Plaintiff's Documents Requests**

Plaintiff Greene propounded interrogatories and document requests on Karpeles on February 11, 2019. (Exhibit B to Thomassen Decl. (interrogatories), Exhibit C to Thomassen Decl. (document requests).) As to the document requests, Plaintiff seeks information unquestionably relevant to this case, all of which falls under a handful of categories:

- Documents sufficient to identify witnesses relating to Karpeles's operation of the Mt. Gox exchange;

- Documents relating to Class members' interactions with the exchange, along with their bitcoin and fiat currency holdings;

- Documents relating to Karpeles's ability to access and/or control Mt. Gox's systems or user accounts, including his use of "bots" on the exchange; and

- Documents relating to unauthorized exchange activity, whether resulting from "bugs" or "hacks," (*See generally* Ex. C).

Generally speaking, each of these topics bear on the manner in which Karpeles, as the acting Mt. Gox CEO from 2011 until 2014, operated the exchange and interacted with actual and potential Mt. Gox customers. The topics will inform whether, as described above, Karpeles acted

3

negligently, acted fraudulently, or stole class members' investments.

### C. Karpeles's Refusal to Produce Documents

On May 29, 2019, Karpeles replied with written responses and objections. (Exhibit D to Thomassen Decl.) While Karpeles's written responses to Plaintiff's document requests assert a number of objections, nowhere did he indicate that "responsive materials [were] being withheld on the basis of [any] objection." Fed. R. Civ. P. 34(b)(2)(C). Substantively, Karpeles's written responses also indicate—with very few exceptions—that he did not have any responsive documents to any of Plaintiff's requests. (Ex. D.)

In the following weeks, counsel began the meet and confer process. (Thomassen Decl. ¶ 12.) Initially, Karpeles claimed that he did not have access to any documents at all, because they had either been provided to the trustee(s) appointed over the Japanese bankruptcy and civil rehabilitation proceedings relating to Mt. Gox (i.e., in or around the first half of 2014), or had been seized by the Japanese authorities once Karpeles was arrested on August 1, 2015. (*Id.*) The claim didn't make sense. As Plaintiff's counsel pointed out, and as the Court may recall, Karpeles had directly emailed, or promised to email, documents relating to the Mt. Gox exchange to attorneys at Edelson PC in October and November 2016, and then again in May and July of 2017, *years* after Mt. Gox entered bankruptcy proceedings and Karpeles's arrest. (Exhibit H to Thomassen Decl.) These forwarded materials included, for example, emails from Karpeles's "mark@tibanne.com" email address (which Karpeles used to conduct exchange-related business) that had been accessed on October 11, 2016. (Thomassen Decl. ¶ 12.) Likewise, in May 2017, Karpeles also promised to forward around 20,000 pages of documents that he had identified relating to the exchange, but then decided not to disclose any additional documents once his criminal trial in Japan started. (*Id.*) In short, any contention that Karpeles lost access to

4

documents relevant to this case in 2014 (when the bankruptcy proceedings kicked off) or 2015 (when he was arrested) is demonstrably false.

Eventually, Karpeles shifted position. In August 2019, Karpeles's attorneys explained that he did, in fact, have access to information about the Mt. Gox exchange, including the "Mt. Gox database (including some emails and other data)." (Exhibit E to Thomassen Decl.) But despite this access, Karpeles still insisted that he couldn't produce anything due to the criminal penalties associated with Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure. (Exhibit G to Thomassen Decl.) To support his non-production, Karpeles provided Plaintiff with translated versions of those Articles, which (according to Karpeles's counsel) stated that an accused "shall not deliver . . . copies and other materials which the public prosecutor *was given the opportunity to inspect or copy*. . . ." (*Id*. (emphasis added).) Because the Japanese criminal proceedings against Karpeles overlapped factually with this case (i.e., they both concern his position at Mt. Gox), he claimed that he could not produce any documents that were in any way related to the Mt. Gox exchange. (*Id*.)

Karpeles's translation, however, is incorrect. According to the Japanese Ministry of Justice's website, which provides an English translation of the Japanese Code of Criminal Procedure (that, according to the website, was last translated in 2011), Article 281-4 reads:

> The accused or the defense counsel (including the defense counsel provided for in Article 440) or those who were formerly in such position must not deliver, present or send by telecommunication lines to others copies and other materials which the public prosecutor *has given the opportunity to inspect or copy* for the preparation of the proceedings of a case charged to the court[.]

(Exhibit G to Thomassen Decl. (emphasis added); *see also* Wilson Decl. ¶ 18.) This official translation of Article 281-5 also contains the "has given the opportunity to inspect or copy" language as does other areas of the Criminal Code. (Exhibit G to Thomassen Decl. (emphasis added); *see also* Wilson Decl. ¶ 18.) Counsel for Plaintiff provided this translation to Karpeles's

5

counsel, and also noted that other sources discussing Japanese law consistently explained that Articles 281-4 and 281-5 were designed not to make all evidence related to every single criminal trial completely secret and confidential (as Karpeles's translation seemed to suggest), but, rather, to narrowly protect against the further disclosure of information disclosed by a prosecutor to a criminal defendant or his counsel. (Ex. H.)

While counsel for Karpeles acknowledged the conflicting translation (which she contended had been changed on the Ministry of Justice website in between the time she emailed the translation to Plaintiff's counsel (July 9, 2019) and Plaintiff's follow up email (August 14, 2019)), Karpeles stood on his decision not to produce any documents. (Exhibits I and J to Thomassen Decl.) He did not provide any justification for this continued non-disclosure, but simply stated the parties were at an impasse. (Ex. J.)

### III. ARGUMENT

A party is entitled to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Requests for discovery are relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." *Clark v. Ruck*, No. 13-CV-03747, 2014 WL 1477925, at *2 (N.D. Ill. Apr. 15, 2014) (quoting *Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004)). Courts "consistently adopt[] a liberal interpretation of the discovery rules," *Wilstein v. San Tropai Condo. Master Assoc.*, 189 F.R.D. 371, 375 (N.D. Ill. 1999), and "[t]he burden rests upon the objecting party to show why a [] request is improper." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006).

Karpeles cannot carry this burden. His only identified basis for withholding documents

relies on an incorrect translation of Japanese law and none of his remaining objections warrant his refusal to produce any documents in this case. An order compelling Karpeles to search for and produce responsive documents is necessary.

      A.      **The Court Should Overrule Karpeles's Objection Concerning the Japanese Code of Civil Procedure.**

Karpeles's only identified basis for withholding documents is his "belie[f] [that] Japanese law bars him from producing such responsive documents."[2] (Ex. D; Ex. F.) The objection fails because it relies on a mistranslation of Articles 281-4 and 281-5 of the Japanese Code of Civil Procedure. Correctly translated, those Articles do not prevent Karpeles from producing information in this case.

Resolution of this issue is straightforward. As explained in the attached Declaration of Matthew J. Wilson, a professor and practitioner of Japanese law (and fluent speaker and writer of Japanese), Article 281-4 of the Japanese Code of Criminal Procedure *only* prohibits criminal defendants and their lawyers from disclosing evidence made available to them by the prosecution. (Wilson Decl. ¶ 12.) Article 281-5, in turn, provides criminal penalties for a criminal defendant's disclosure of information provided by a Japanese prosecutor over the course of his criminal proceeding. (*Id.* ¶ 13.) These prohibitions and penalties stem directly from the Articles' plain text, which—as accurately indicated on the Japanese Ministry of Justice's

---

[2]     In fact, nowhere does Karpeles's written discovery responses indicate that he is withholding documents based on any objection, despite his admission that he does, in fact, have access to such documents. (*See* generally Ex. D.) Courts have noted that this position amounts to a "misrepresentation by omission by [a] responding party." *3D Sys. Corp. v. Miller*, No. 117CV03252RLYMJD, 2018 WL 7350943, at *1 n.1 (S.D. Ind. Jan. 31, 2018) ("In light of Rule 34(b)(2)(C), the failure to provide such information leads to a reasonable inference by the requesting party that *no* documents have been withheld on the basis of the objection, which would constitute a misrepresentation by omission by the responding party if such was not the case.") (emphasis in original).

7

website[3]—concern the disclosure of information that "the public prosecutor *has* given [the accused or his lawyer] the opportunity to inspect or copy." (*Id.* ¶ 16.) They are also consistent with the Articles' purpose, which is "to prevent defendants from misusing prosecutorial files and dossiers . . . and [a]lso . . . to protect the privacy interests of unrelated third parties who are mentioned in the government's files." (*Id.* ¶ 14.) *See also* Kingston, J. (2017), Press Freedom in Contemporary Japan, pp. 101-102, Routledge 2017 (noting that Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure are designed to protect against further disclosure of information disclosed by the prosecutor to the defendant).

Karpeles's refusal to produce, in contrast, lacks justification. As noted above, Karpeles relies on a mistranslation of Articles 281-4 and 281-5, which Karpeles says restricts his ability to disclose any information that the Japanese prosecutor "*was given* the opportunity to inspect or copy" in connection with his criminal trial. While his translation would dramatically broaden Article 281-4's and 281-5's scope (i.e., to shield all information in any way connected with a criminal defendant's case, effectively protecting a criminal defendant from having to participate in any overlapping civil suits), it is neither reflected in the Ministry of Justice's translation, nor the translation provided by Professor Wilson. (Wilson Decl. ¶ 15 (observing that Karpeles's translation is incorrect.)) This makes perfect sense, given the above-stated purpose of Article 281-4 and 281-5, which serves to protect information originating from the government's files, rather than, as Karpeles contends, shield criminal defendants from the burden of participating in civil cases with overlapping facts. (*Id.* ¶ 14.)

Here, Plaintiff does not seek information that Japanese prosecutors disclosed to Mark

---

[3] The relevant translations (along with the original Japanese) are reproduced in Paragraph 18 of the Wilson Declaration.

Karpeles for the purposes of his criminal trial in Japan. Rather, he seeks information naturally in Karpeles's possession, such as emails he and others sent relating to the Mt. Gox exchange (some of which Karpeles voluntarily provided to Plaintiff's counsel earlier in the case), information concerning exchange members' holdings and losses, and activity Karpeles took with respect to the exchange while he served as CEO. *Supra* §§ II.B–C. Accordingly, and as Professor Wilson also concluded, Articles 281-4 and 281-5 do not support Karpeles's refusal to produce documents responsive to Plaintiff's requests. (Wilson Decl. ¶ 11 ("It is my opinion that Articles 281-4 and 281-5 do not prevent or otherwise limit Mr. Karpeles from producing information in this case, so long as such information was not originally made available to him by the Japanese public prosecutors in connection with his criminal case.").)

### B. The Court Should Overrule Karpeles's Non-Specific, Boilerplate Objections.

Karpeles also raises a serving of boilerplate objections, asserting that most of the requests are vague, overbroad, unduly burdensome, and not relevant to this case.[4] Putting aside that Karpeles nowhere indicates that he is withholding (or declined to search for) documents on the basis of these objections, as is required under Rule 34, none justify his failure to produce documents.

Karpeles's generic objections are improper and cannot support a decision to withhold documents. Courts in this district routinely characterize boilerplate objections—i.e., a party's

---

[4] Karpeles makes two other objections. First, he objects to the production of documents that are privileged. Plaintiff presently has no issue with this, so long as any withheld documents are logged so that any claim of privilege can be reviewed. (To date, no log has been produced, nor has Karpeles indicated that he has actually withheld any documents on the basis of privilege.) Second, he objects to certain requests "to the extent [they] impl[y] a class has been certified in this case." (Ex. D at Nos. 4, 7, 8, 9.) It's not clear what this objection is supposed to accomplish. (Perhaps the avoidance of an admission that a class has been certified?) In any event, there has been no bifurcation between merits and class issues in this case, so to the extent Karpeles is implying that class discovery is inappropriate at this juncture, he is wrong.

9

"invocation of 'the same baseless, often abused litany' that the requested discovery is 'vague, ambiguous, overly broad, unduly burdensome,' or that it is 'not reasonably calculated to lead to the discovery of admissible evidence'"—as wholly ineffectual and "tantamount to not making any objection at all." *BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, No. 15 C 10340, 2017 WL 5890923, at *2 (N.D. Ill. Nov. 29, 2017) (quoting *Swift v. First USA Bank*, No. 98-cv-8239, 1999 WL 1212561, at *7 (N.D. Ill. Dec. 15, 1999) and *RealPage, Inc. v. Enter. Risk Control, LLC*, No. 4:16-CV-00737, 2017 WL 1165688, at *3 (E.D. Tex. 2017)). That is because Rule 34 requires that a party identify *reasons* why a given request is objectionable, rather than just assert that it is so. *Id.* (citing collected cases). Because Karpeles provides no explanations or detail here, he cannot base his refusal to produce on boilerplate objections.

  Further, and even if the Court were to consider Karpeles's boilerplate objections, they fail the merits because the Requests directly seek information relevant to this case through tailored discovery requests. As explained above, all of Plaintiff's claims turn on Karpeles's conduct with respect to the Mt. Gox exchange. The claim of negligence requires evidence that Karpeles did not reasonably protect Class members' holdings. The claim of fraud requires evidence that Karpeles engaged in conduct on the exchange that was concealed or misrepresented to its customers. And the claim of conversion requires evidence that Karpeles orchestrated the disappearance of bitcoins from the exchange. In other words, Plaintiff and other class members must prove their case by pointing to what Karpeles did on the exchange: the access he had, the control he exercised, and the actions he took. That—in addition to information relevant to the various factors under Rule 23—is precisely what Plaintiff seeks in discovery. *Supra* §§ II.A–B. To the extent Karpeles has access to documents pertaining to these topics, they must be produced.

**IV.    LOCAL RULE 37.2 STATEMENT**

I, Benjamin S. Thomassen, certify that counsel for Plaintiff and counsel for Defendant met and conferred on Plaintiff's First Set of Document Requests by telephone on or around Monday, July 8, 2019. I participated on the call for Plaintiff and Bevin Brennan participated on that call for Karpeles. I and Ms. Brennan thereafter followed up by email on several of the points raised during that meet and confer conference, including on the issues underlying Karpeles's decision to withhold documents. (The majority of these emails are attached as exhibits to the Thomassen Decl.) Despite these communications, the parties were unable to reach an accord on whether Karpeles would produce documents in response to Plaintiff's First Set of Document Requests.

**V.    CONCLUSION**

There is no justification for Karpeles's decision to not produce documents in this case. Karpeles's baseless objections should be overruled and the Court should compel his production of all documents responsive to Plaintiff's Requests.[5]

Dated: September 18, 2019

By: /s/ Benjamin S. Thomassen
    One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com

---

[5] While he is presumptively entitled to them, Plaintiff does not seek fees or costs in connection with this motion. Fed. R. Civ. P. 37(a)(5)(A).

J. Aaron Lawson
alawson@edelson.com
EDELSON PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

Counsel for Plaintiff and the Putative Class

**CERTIFICATE OF SERVICE**

   I, Benjamin S. Thomassen, an attorney, hereby certify that on September 18, 2019, I caused to be served the above and foregoing ***Plaintiff's Motion to Compel Production*** by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

                /s/ Benjamin S. Thomassen