# Exhibit C

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE and ANTHONY MOTTO, individually and on behalf of all others similarly situated,<br><br>  *Plaintiffs*,<br><br>v.<br><br>MARK KARPELES, an individual,<br><br>  *Defendant*. | No. 1:14-cv-01437<br><br>Hon. Gary Feinerman<br><br>Magistrate Judge Susan Cox |

**PLAINTIFF GREGORY GREENE'S FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANT MARK KARPELES**

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, Plaintiff Gregory Greene requests that Defendant Mark Karpeles produce the following documents for inspection and copying at the officers of Edelson PC, 350 North LaSalle Street, Suite 1400, Chicago, Illinois 60654, under oath within thirty (30) days of service hereof.

**DEFINITIONS**

1. "Class" or "class members" means all persons in the United States who had bitcoins or money stored with Mt. Gox on February 24, 2014.

2. "Communication" means the transmittal of information expressed by any means.

3. "Document" or "documents" includes all documents, communications, information, or tangible things within the scope of Federal Rules of Civil Procedure 26 and 34, including ESI, and all versions and drafts of documents.

4. "ESI" or "electronically stored information" means information that is stored in electronic media, regardless of the media or whether it is in the original format in which it is

created, and that is retrievable in perceivable form and includes metadata, system data, deleted data, and fragmented data.

5. "Including" means "including, but not limited to;" "Includes" means "includes, but not limited to."

6. "Mt. Gox" or "exchange" means the Mt. Gox bitcoin exchange.

7. "Person" or "persons" means or refers to any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature, including any business governmental entity of association.

8. "Plaintiffs" means Gregory Greene and Anthony Motto.

9. "Relevant time period" means or refers to February 27, 2010 through the present.

10. "User" means persons that used Mt. Gox, including persons that opened accounts on Mt. Gox, deposited (or attempted to deposit) fiat currency or bitcoin to their Mt. Gox accounts, transferred (or attempted to transfer) fiat currency or bitcoin to or from their Mt. Gox accounts, or withdrew (or attempted to withdraw) fiat currency or bitcoin from their Mt. Gox accounts

11. "You," "Your," "Defendant," or "Karpeles" means or refers to Defendant Mark Karpeles.

**INSTRUCTIONS**

1. Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific custom and usage definition in a particular trade or industry, in which case they shall be interpreted in accordance with such usual custom and usage definition of which you are aware.

2. "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information which might otherwise be construed to be outside of their scope. Singular and plural words should be read so as to bring within the scope of these requests any information that might otherwise be construed to be outside their scope. "Each" shall encompass "every."

3. In responding to these requests, furnish all information, however obtained, including hearsay that is available to you and any information known by you, in your possession, or appearing in your records.

4. These are intended as continuing requests having within them a duty to timely supplement the answers until and during the course of trial.

5. Information sought by these requests that you obtain after you serve your answers must be disclosed to the plaintiffs by supplementary answers.

6. It is intended by this set of requests to elicit information not merely within your knowledge, but obtainable by you or on your behalf.

7. If you cannot respond to a request in full after exercising due diligence to secure the full information needed to do so, so state and respond to the extent possible, specifying your inability to respond to the remainder, stating whatever information or knowledge you have concerning the unresponded portion and detailing what you did in attempting to secure the unknown information.

8. If any request is objected to on the basis that the time period covered by the request is irrelevant, burdensome, or otherwise inappropriate, state what time period you consider proper for that request and answer the request for that time period, preserving your objection to the remainder of the time period.

9. Upon producing any document requested, you are instructed to indicate to which

of the numbered requests is being produced in response. You may do so by referencing document numbers (i.e., Bates numbers).

10. If any document requested has been lost or destroyed since its creation, identify the nature of the document (e.g., letter, email, etc.), the date of the document, the persons who sent and received the original and any copy of the document, a summary of the contents of the document and describe when, where, how, and by whom said document was lost or destroyed, and state the name of the person(s) who last had custody thereof.

11. If, in responding to these requests, you encounter any ambiguity in construing either the request or any instruction relevant to the request, you should nonetheless respond to the request, set forth the matter deemed ambiguous, and set forth the construction used in responding to the request.

12. If you claim privilege as grounds for failing to produce any document requested, provide a privilege log that:

- Identifies the author or originator of the document, the date authored or originated, the identity of each person to whom an original or a copy was addressed or delivered, the identity of each person known or reasonably believed by you to have present possession, custody or control thereof;

- Discusses the factual basis for your claim of privilege in sufficient detail to permit the Court to adjudicate the validity of that claim; and

- Produces so much of each such document that does not contain privileged information or communications.

13. All documents must be assigned a Bates/control number that shall always: (1) be unique across the entire document production, (2) maintain a constant length (zero/0-padded) across the entire production, (3) contain no special characters or embedded spaces, and (4) be sequential within a given document. If a Bates number or set of Bates numbers is skipped in a production, the producing party will disclose the Bates numbers or ranges in a cover letter accompanying the production.

14. Documents amenable to being imaged will be produced as images on optical disks (i.e., CDs or DVDs) or external hard drives accompanied by TIFF Image (DII) Load Files. Documents produced in this manner will be accompanied by load files with searchable text (including OCR text). Any ESI produced in this manner shall also include, to the extent available:

- Unitization (including the production number of the first and last page of each file);

- Attachments (including information sufficient to identify the parent and child relationships of all documents and ESI that are or have attachments);

- Source information (including the identity of the custodian, or, if none, a generalized location); and

- Metadata (including author, file type, date created, data modified, title, FilePath, PathToNative, sender ("from"), primary recipient ("to"), courtesy or carbon copy ("cc"), blind courtesy or carbon copy ("bcc"), subject, sent time/date, received time/data, and MD5 hash value).

15. To the extent that spreadsheets, executable files, videos, animations, audio files, and presentations that include video, animation, or audio shall be produced, these items shall be produced where practical in native format. To the extent that documents produced in native format cannot be rendered or viewed without the use of propriety software, the parties shall meet and confer to minimize any expense or burden associated with the review of such documents, including issues that may arise with respect to obtaining access to any such software or operating manuals. All documents produced as native files shall be produced along with a spacer image sheet that: (i) is in the format for static images explained above; (ii) indicates that the file was produced as a native file; and (iii) is marked with a production number. That production number will be the production number of the corresponding native file. The native file shall be named according to this production number.

16. Unless otherwise stated, all requests pertain to the relevant time period.

## REQUESTS FOR PRODUCTION

**DOCUMENT REQUEST NO. 1.**

Documents sufficient to identify all former employees and agents of Mt. Gox, including documents sufficient to identify each individual's name, job title at Mt. Gox (e.g., "President and CEO"), last known mailing address, and last known email address.

**DOCUMENT REQUEST NO. 2.**

Documents sufficient to identify all former employees and agents of Tibanne KK that were in any way associated with or performed work in connection with Mt. Gox, including documents sufficient to identify each individual's name, job title (e.g., "President and CEO"), last known mailing address, and last known email address.

**DOCUMENT REQUEST NO. 3.**

All documents referencing Plaintiffs.

**DOCUMENT REQUEST NO. 4.**

All communications between you and any class member.

**DOCUMENT REQUEST NO. 5.**

All communications to, from, or concerning any former Defendant named in this case (including Jed McCaleb, Gonzague Gay Bouchery, and Mizuho Bank, Ltd.) related to Mt. Gox, including all audio records of oral communications.

**DOCUMENT REQUEST NO. 6.**

All communications relating to this or any other judicial proceeding or dispute concerning Mt. Gox, including those concerning CoinLab, Inc., Marko Simovic, or the Mt. Gox bankruptcy and civil rehabilitation procedures.

**DOCUMENT REQUEST NO. 7.**

Documents sufficient to identify all class members, including documents sufficient to identity each user's name, last known mailing address, and last known email address.

**DOCUMENT REQUEST NO. 8.**

All documents submitted by class members to verify their Mt. Gox accounts, as described in paragraph 15 of the Fourth Amended Complaint, including documents submitted as proofs of identity (e.g., state issued identification cards, utility bills, etc.).

**DOCUMENT REQUEST NO. 9.**

Documents sufficient to identify all class members' bitcoin and fiat currency balances on Mt. Gox when the exchange went offline.

**DOCUMENT REQUEST NO. 10.**

Documents sufficient to identify all attempted but unsuccessful withdrawals of fiat currency or bitcoin made by class members, including documents sufficient to identify the user, dates, and amount associated with each attempted withdrawal.

**DOCUMENT REQUEST NO. 11.**

All documents relating to your ability to access Mt. Gox's systems, accounts, user information, platform, or website.

**DOCUMENT REQUEST NO. 12.**

All documents evidencing security audits, reviews, or investigations of Mt. Gox's systems, accounts, user information, platform, or website.

**DOCUMENT REQUEST NO. 13.**

All access logs or other documents evidencing instances where Mt. Gox user accounts or bitcoin/fiat currency balances were accessed, or potentially accessed, by individuals other than the user him or herself.

**DOCUMENT REQUEST NO. 14.**

All documents evidencing access credentials (e.g., usernames) that you used, or could have used, to access Mt. Gox's systems, accounts, user information, platform, or website.

**DOCUMENT REQUEST NO. 15.**

All documents relating to:

- bitcoin withdrawal delays on Mt. Gox;
- fiat currency withdrawal delays on Mt. Gox;
- "unusual activity" concerning Mt. Gox's systems or accounts;
- issues of "transaction malleability" concerning Mt. Gox's systems or accounts;
- "bugs" concerning Mt. Gox's systems or accounts; and
- "hacks," whether actual or attempted, of Mt. Gox's systems or accounts.

**DOCUMENT REQUEST NO. 16.**

All documents relating the suspension of user activity on Mt. Gox, including documents relating to the decision to take the Mt. Gox website offline in February 2014.

**DOCUMENT REQUEST NO. 17.**

Documents sufficient to identify all bitcoin wallets controlled or accessible by you.

**DOCUMENT REQUEST NO. 18.**

Documents sufficient to identify all transfers into or out of bitcoin wallets controlled or accessible by you.

**DOCUMENT REQUEST NO. 19.**

All documents related to the use of bots, or the decision to use bots, to purchase or sell bitcoin on Mt. Gox.

**DOCUMENT REQUEST NO. 20.**

All documents related to the use of a "Willy Bot" or "obligation exchange" on Mt. Gox.

**DOCUMENT REQUEST NO. 21.**

All documents evidencing Mt. Gox's procedures for protecting, safeguarding, and segregating user accounts, including users' bitcoin and fiat currency balances.

**DOCUMENT REQUEST NO. 22.**

All contracts, agreements, and written and oral understandings between you and Mt. Gox.

**DOCUMENT REQUEST NO. 23.**

All contracts, agreements, and written and oral understandings between you and/or Mt. Gox, on the one hand, and any financial institution, on the other, concerning users' ability to deposit or withdraw fiat currency from the exchange.

**DOCUMENT REQUEST NO. 24.**

All documents relating to your acquisition of Jed McCaleb's interest in Mt. Gox, including documents sufficient to identity any benefits received or consideration given by you relating to such acquisition.

**DOCUMENT REQUEST NO. 25.**

Documents sufficient to identity any financial benefit (commissions, fees, salaries, payments, etc.) you received as a result of your relationship with Mt. Gox.

**DOCUMENT REQUEST NO. 26.**

All communications between you and Baker McKenzie (including Jean-Denis Marx) relating to:

- your or Mt. Gox's relationship with Mizuho Bank, Ltd.;
- your or Mt. Gox's relationship with Citibank;
- your or Mt. Gox's decision to not publicly disclose information related to transfer limitations on the exchange.

**DOCUMENT REQUEST NO. 27.**

All documents evidencing "Mizuho efforts to get MtGox to close its account (which also included but not limited to and not at the same timing: delaying deposits, requiring deposits to be processed by hand, and possibly more)," as referenced by you in the following statement from your October 12, 2016 email to bthomassen@edelson.com

**DOCUMENT REQUEST NO. 28.**

Documents sufficient to identify all "third parties" referenced by you in the following statement from your October 12, 2016 email to bthomassen@edelson.com: "8. Based on recent investigation results in cooperation with third parties we have found the following."

**DOCUMENT REQUEST NO. 29.**

All documents relating to any "investigations" referenced by you in your October 12, 2016 email to bthomassen@edelson.com, including investigations relating to Mt. Gox, the theft of bitcoin on the Mt. Gox Exchange, evidence of a "third party acting in the theft" of bitcoins on Mt. Gox, and Jed McCaleb.

**DOCUMENT REQUEST NO. 30.**

All documents relating to fiat currency "allegedly stolen by an individual known as 'baron' by exploiting a security vulnerability in MtGox in January 2011," as referenced by you in your October 12, 2016 email to bthomassen@edelson.com.

**DOCUMENT REQUEST NO. 31.**

Documents evidencing "Jed's code," including any documents concerning your review or analysis of such code, as referenced by you in your October 12, 2016 email to bthomassen@edelson.com.

**DOCUMENT REQUEST NO. 32.**

All contracts or other written understandings that you contend govern Plaintiffs' or class members' relationship with Mt. Gox.

**DOCUMENT REQUEST NO. 33.**

All documents relating to any government and/or regulatory investigations related to you, Mt. Gox, and/or any class member.

**DOCUMENT REQUEST NO. 34.**

All documents that you contend support any affirmative defenses you have raised or intend to raise in this case.

**DOCUMENT REQUEST NO. 35.**

All documents that you contend support the statements made in your September 25, 2018 declaration (dkt. 392-1).

**DOCUMENT REQUEST NO. 36.**

All documents that you used, referenced, or relied upon in drafting your answers to plaintiff Greene's First Set of Interrogatories and First Set of Requests for the Production of Documents.

**DOCUMENT REQUEST NO. 37.**

All documents relating to your data destruction, disposal, and/or preservation policies.

**DOCUMENT REQUEST NO. 38.**

All documents relating to any insurance agreements or policies under which any person carrying on as an insurance business may be liable to satisfy part or all of a judgment which may be entered in this action or to indemnify or reimburse for payments made to satisfy the judgment, or that may provide, or upon which you may make claims for coverage relating to the subject matter of this lawsuit, including all such policies themselves.

**GREGORY GREENE and ANTHONY MOTTO**
individually and on behalf of all others similarly situated,

Dated: February 12, 2019          By: _____
                                      One of Plaintiffs' Attorneys

Benjamin S. Thomassen
bthomassen@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

Counsel for Plaintiffs and the Putative Classes

14

## CERTIFICATE OF SERVICE

      I, Benjamin S. Thomassen, hereby certify that I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to the following individuals via email on February 12, 2019:

Bevin Brennan (bbrennan@pedersenhoupt.com)
Matthew Schmidt (mschmidt@pedersenhoupt.com)
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601

_____