UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| Plaintiff, | ) ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Susan Cox |
| MARK KARPELES, an individual, | ) ) ) | |
| Defendant. | ) | |

### DEFENDANT MARK KARPELES' RESPONSE TO PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS RESPONSIVE TO PLAINTIFF'S FIRST SET OF REQUESTS FOR DOCUMENTS

Defendant Mark Karpeles, by and through his undersigned counsel, hereby submits his response to Plaintiff Gregory Greene's ("Plaintiff" or "Greene") Motion to Compel Production of Documents Responsive to Plaintiff's First Set of Requests for Documents.

### BACKGROUND

The Court is doubtlessly familiar with the background of the case and the Plaintiff's claims regarding Mr. Karpeles and Mt. Gox. As such, Mr. Karpeles will only set forth the facts forming the basis of his inability to produce documents for fear of criminal liability in Japan. Mt. Gox went into Japanese bankruptcy in early 2013. In early 2015, Tibanne KK, which is the majority shareholder of Mt. Gox, also entered into Japanese bankruptcy proceedings. In early 2014, the trustee for Mt. Gox's Japanese bankruptcy told Mr. Karpeles, and all other Mt. Gox employees, to confirm that he had sent the trustee all relevant data, to provide the trustee with any remaining documents, and to erase any remaining data. (Ex. A, Direction to Delete Mt. Gox Data.) Mr. Karpeles complied with those instructions. As of today, the Mt. Gox exchange database is in the possession of the Mt. Gox trustee and Japanese law enforcement, e-mails

related to Mt. Gox are also in the possession of the Mt. Gox trustee and Japanese law enforcement, and e-mails related to Tibanne KK are in the possession of the Tibanne KK trustee and Japanese law enforcement. At the time of Mr. Karpeles arrest on August 1, 2015, he did not have any documents or materials related to Mt. Gox or Tibanne KK in his possession. Japanese prosecutors provided him with certain of those documents and materials in order to put on his defense in his criminal trial. Any documents or materials related to Mt. Gox that are currently in Mr. Karpeles' possession were provided to him by the Japanese authorities in that context.

## STANDARD

Under Federal Rule of Civil Procedure 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *Baxter Int'l, Inc. v. AXA Versicherung*, 320 F.R.D. 158, 162 (N.D. Ill. 2017), quoting Fed. R. Civ. P. 26(b)(1). The objecting party must show "why a particular discovery request is improper." *Charvat v. Valente*, 82 F. Supp. 3d 713, 717 (N.D. Ill. 2015).

## ARGUMENT

Plaintiff's Motion to Compel should be denied because Mr. Karpeles cannot produce the requested documents and communications without subjecting himself to criminal liability under Japanese law. Plaintiff's request to strike Mr. Karpeles' objections should similarly be denied as Plaintiff uses many of the same objections in his own responses and does not identify a single request where Mr. Karpeles' "boilerplate" objections have prevented Plaintiff from receiving relevant materials.

I. **Plaintiff's motion to compel must be denied because producing the requested documents and materials would potentially subject Mr. Karpeles to criminal liability in Japan.**

Mr. Karpeles was provided all documents and materials currently in his possession that relate to Mt. Gox by the Japanese prosecutors in order to defend himself against the criminal charges brought against him. Because producing those materials would subject Mr. Karpeles to criminal liability in Japan, Plaintiff's Motion to Compel should be denied.

"American courts should . . . take care to demonstrate due respect for any special problem confronted by the foreign litigant on account of its nationality or the location of its operations, and for any sovereign interest expressed by a foreign state." *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for S. Dist.*, 482 U.S. 522, 546 (1987). The United States Supreme Court has directed "district courts to the comity factors from the Restatement (Third) of the Law of Foreign Relations § 442 (Am. Law Inst. 1987) as relevant to the resolution of conflicts between laws of foreign nations and broad U.S. discovery rules." *Motorola Sols., Inc. v. Hytera Communs. Corp.*, 365 F. Supp. 3d 916, 928-29 (N.D. Ill. 2019), citing *Societe Nationale*, 482 U.S. at 544 n.28. These factors are: "(1) the importance to the . . . litigation of the documents or other information requested; (2) the degree of specificity of the request; (3) whether the information originated in the United States; (4) the availability of alternative means of securing the information; and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located." *Id.* Most relevant here, in cases where disclosure of information is prohibited by a law in the country where the information is located:

> (a) a court or agency in the United States may require the person to whom the order is directed to make a good faith effort to secure permission from the foreign authorities to make the information available;
>
> (b) a court or agency should not ordinarily impose sanctions of contempt, dismissal, or default on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information or of failure to make a good faith effort in accordance with paragraph (a).

Restat 3d of the Foreign Relations Law of the U.S., § 442(2)(a)-(b) (3rd 1987).

Under the Japanese Code of Criminal Procedure, Mr. Karpeles is precluded from producing materials given to him by the Japanese prosecution for his defense. The Japanese Law Translation Database System, provided by Japan's Ministry of Justice, translates the relevant portion of the Code of Criminal Procedure, Article 281-4 as "The accused or the defense counsel (including the defense counsel provided for in Article 440) or those who were formerly in such position must not deliver, present or send by telecommunication lines to others copies and other materials which the public prosecutor *has given the opportunity to inspect or copy* for the preparation of the proceedings of a case charged to the court, unless for the intention of use in the following procedures or for the preparation thereof: . . . ." (Ex. B, at ps. 49-50 http://www.japaneselawtranslation.go.jp/law/detail/?printID=&ft=2&re=2&dn=1&yo=code+of+criminal+procedure&x=0&y=0&ia=03&ph=&ky=&page=1&vm=02.)

Previously the translation on that same website stated: "The accused and his/her counsel (including the counsel provided for in Article 440) or those who were formerly in such position shall not deliver, present or send by telecommunication lines to others *copies* and other materials which the public prosecutor *was given the opportunity to inspect or copy* unless for the intention of use in the following procedures or for the preparation thereof: . . . ." This translation is also on the copy of the Japanese Code of Criminal Procedure located on the Organisation for Economic Co-operation and Development ("OECD") webpage for its anti-corruption initiative. (*See* Ex. C, at

4

ps. 65-66, https://www.oecd.org/site/adboecdanti-corruptioninitiative/46814489.pdf.) Under either translation, Article 281-5 provides for up to one year in jail a fine of up to 500,000 yen for violating Article 281-4.

Additionally, Mr. Karpeles criminal defense attorney in Japan has provided an opinion letter stating that disclosing the information that Plaintiff seeks "is strictly prohibited under risk of legal penalty." (Ex. D, Nobuyasu Ogata Letter.) With due respect to the qualifications of the opinion that the Plaintiff submitted by Mr. Wilson, Mr. Ogata has far more experience with Japanese criminal proceedings and is a native Japanese speaker. Mr. Ogata's opinion should hold more weight. Regardless, given the fact that all relevant materials in his possession were provided to Mr. Karpeles by the Japanese prosecutors for his defense, even Mr. Wilson agrees that producing those materials would subject Mr. Karpeles to criminal liability. In his affidavit, Mr. Wilson states that Article 281-4 "prohibits criminal defendants and their lawyers from disclosing evidence made available to them by the prosecution" and that Article 281-5 "provides criminal penalties for disclosure of information provided by a Japanese prosecutor during a criminal proceeding to a criminal defendant." [Dkt 438-1, ¶¶ 12-13.] As stated above, the only reason that Mr. Karpeles has any materials relevant to Plaintiff's discovery requests is because copies of those materials were provided to Mr. Karpeles by Japanese prosecutors in order to put on his defense. When Mr. Karpeles previously sent e-mails and other documents to Edelson PC, he was not aware that doing could be a crime under Japanese law.

A consideration of the relevant factors under the Restatement shows that Mr. Karpeles should not be forced to produce the requested documents and subject himself to criminal liability. As to the first two factors, importance to the litigation and degree of specificity in the request, the documents are admittedly relevant to the litigation and the requests are sufficiently

5

specific, but these factors are far outweighed by the severity of the remaining factors. The third factor, whether the information originated in the United States, weighs towards non-disclosure as the information is in Japan and Mr. Karpeles could be subject to the penalties in Japan. *See White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 369, 375 (N.D. Ill. 2001) (holding facts that requested documents originated in England and parties subjected to penalties were also in England weighed towards non-disclosure). For the fourth factor, the availability of alternate means, all documents and materials are in the possession of the bankruptcy trustees and Plaintiff could seek the materials from the bankruptcy trustees, which weighs in favor of non-disclosure.

For the final factor, the comparison of national interests, the Seventh Circuit has "appropriately noted the courts lack of expertise in evaluating a foreign nations economic and social policy and the, 'ridiculous assignment of determining which competing national interest is more vital.'" *White*, 203 F.R.D. at 375, quoting *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275, 1280 (7th Cir. 1990). Courts have usually held that interests such as "national security, tax and patent laws, and antitrust laws" are compelling American national interests that could outweigh another country's national interest. *White*, 203 F.R.D. at 375. The interests presented here do not rise to that level and are most similar to *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, 902 F.2d 1275 (7th Cir. 1990).

In *Reinsurance Co. of Am., Inc. v. Administratia Asigurarilor de Stat*, the plaintiff, an American insurance company, and the defendant, a state-owned Romanian insurance company, were disputing certain agreements. The court entered summary judgment against defendant but refused to order post-judgment interrogatories due to the potential penalties of Romanian secrecy laws. *Reinsurance Co. of Am., Inc.*, 902 F.2d at 1278-81. The Seventh Circuit focused on the

strictness of the penalties and that the law was directed towards domestic affairs rather than protecting companies from foreign discovery requests and upheld the district court's ruling. *Id.* at 1280-81. Here the dispute is between individuals in a commercial context and the Japanese law at issue is clearly not intended to protect companies or individuals from foreign discovery. As Plaintiff's expert states, the purpose of the Articles is "to prevent defendants from misusing prosecutorial files and dossiers . . . [and] [a]lso to protect the privacy interests of unrelated third parties who are mentioned in the government's files." [Dkt. 438-1, ¶¶ 12-13.]

Most importantly, there is a very real risk of prosecution under Japanese criminal law in this situation. Mr. Karpeles was previously arrested three times by the Japanese authorities and spent almost a year in jail. (Ex. E, "Mt. Gox Bitcoin Trader Extraordinaire Mark Karpeles Goes Free At Last" at 2; Ex. F, "Mt. Gox and the Surprising Redemption of Bitcoin's Biggest Villain," at 3.) During that time, Mr. Karpeles spent most of his time in solitary confinement and lost seventy pounds. (Ex. G, "Cryptocurrency 'Villain' Tells His Side of the Story" at 1.) The conviction rate for Japan is ninety-nine percent. (Ex. D, "Mt. Gox Bitcoin Trader Extraordinaire Mark Karpeles Goes Free At Last" at 2.)

In addition, while Mr. Karpeles was not convicted on the most serious criminal charges brought against him in Japan (charges of embezzlement or abuse of his position at Mt. Gox for personal gain), he was convicted of a lesser charge that imposed a 30-month suspended prison sentence. (Ex. H, Mar. 15, 2019 Wall Street Journal article "Former Mt. Gox Bitcoin Bigwig Unlikely to Do More Jail Time After Beating Embezzlement Charges.") Mr. Karpeles, however, remains on probation for four years instead of serving time in prison. (*Id.*) Any violation of a Japanese criminal statute -- such as wrongfully turning over documents -- could put Mr. Karpeles in immediate jeopardy of imprisonment for violation of his probation terms.

7

The risks to Mr. Karpeles are real. This is not a routine discovery dispute, but one that could land Mr. Karpeles again in a Japanese jail or prison, a harrowing experience for him in the past. In light of Mr. Karpeles' previous interactions with Japanese law enforcement, counsel for Mr. Karpeles cannot, in good faith, advise him to engage in conduct that may subject him to criminal liability under Japanese law.

The Supreme Court has recognized that "[i]t is hardly debatable that fear of criminal prosecution constitutes a weighty excuse for nonproduction, and this excuse is not weakened because the laws preventing compliance are those of a foreign sovereign." *Societe Internationale v. Rogers*, 357 U.S. 197, 211-12 (1958). Here, under either translation of the statute, and according to Mr. Karpeles' criminal attorney in Japan, Mr. Karpeles would be subjecting himself to potential criminal liability in a country that has already proven all too eager to find him guilty. Where production of documents is forbidden by criminal sanctions in a foreign country, "a court or agency should not ordinarily impose sanctions of contempt, dismissal, or default on a party that has failed to comply with the order for production, except in cases of deliberate concealment or removal of information." Restat 3d of the Foreign Relations Law of the U.S., § 442 (3rd 1987). Mr. Karpeles has not deliberately concealed the requested documents or removed the documents to Japan and this Court should not force him to incur criminal liability.

For all of these reasons, this Court should deny Plaintiff's Motion to Compel.

**II. Mr. Karpeles' "boilerplate" objections should not be stricken where Plaintiff has made similar objections to the majority of Mr. Karpeles' requests and Plaintiff has not claimed that the objections prevented him from receiving relevant materials.**

Plaintiff asks that the Court strike Mr. Karpeles' "boilerplate" objections to some of Plaintiff's requests for production. (Mot. at 9-10.) Plaintiff's request is particularly rich

8

considering that the Plaintiff responded with similar objections (and far more) to a majority of Mr. Karpeles' Requests for Production. More importantly, Mr. Karpeles has not included boilerplate objections. For each and every response, Mr. Karpeles considered the request and determined what portions were objectionable, if any. Plaintiff's blanket calling of all objections "boilerplate" is not correct and is no reason to overrule all of Mr. Karpeles' proper objections. Additionally, Plaintiff has not claimed that any of Mr. Karpeles' objections have prevented him from receiving relevant materials.

Plaintiff fails to identify a single request where Mr. Karpeles's objections wrongfully denied Plaintiff any documents or which specific objection he contests. Mr. Karpeles invites the Court to compare his objections to Plaintiffs' Request for Production of Documents. Virtually every single one of Plaintiff's responses starts with a half-page litany of boilerplate objections. Unlike Plaintiff, Mr. Karpeles made short objections tailored for the particular request. Plaintiff has engaged in the use of boilerplate objections, not Mr. Karpeles

Plaintiff made boilerplate objections to eighteen out of twenty-four of Mr. Karpeles' requests for production. (See Ex. I, Plaintiff Gregory Greene's First Answers to Defendant Mark Karpeles's First Set of Requests for Production.) For example, Plaintiff responded to Mr. Karpeles's Requests for Production Numbers 1-5, 7-12, 16, 18-22 with objections regarding documents covered by the attorney-client privilege or attorney work product: "Plaintiff objects to the extent that this Request calls for the production of attorney-client communications or attorney work product. Plaintiff will not produce these documents." Nowhere does Plaintiff offer to maintain a privilege log for any of these materials.

Moreover, Plaintiff's request for a privilege log is not proper. (Mot. at 9, n.4.) Counsel for the parties specifically discussed the need for a privilege log during its efforts to resolve

9

discovery issues without Court intervention, and that issue was resolved with no additional request for such a log.  Plaintiff cannot meet-and-confer, resolve an issue, and then decide to seek the relief anyway from the Court.  If the Court orders a privilege log, it should be an obligation required of both parties.

Similarly, Plaintiff responded to Mr. Karpeles's Requests for Production Numbers 1-5, 7-11 and 18-23 with objections that the requests are overbroad and unduly burdensome: "Plaintiff objects to this request as overbroad and unduly burdensome, in as much as it seeks 'All Documents related to' the described subject matter without any limitation whatsoever, and therefore would sweep in any number of documents unrelated to any claim or defense in this matter. Plaintiff will limit his production to documents within the scope of Fed. R. Civ. P. 26(b)(1)."  Aside from the limitation regarding Rule 26 (which when asked, Plaintiff could not explain what it meant), Plaintiff claims the same objections should be overruled in the limited instance that Mr. Karpeles included them.  There is no basis for this Court to do so, as Mr. Karpeles only made such objections where appropriate.

Plaintiff himself went one step further and decided that he was exempt from providing responsive documents that are allegedly available in the public domain or from providing anything that Mr. Karpeles may have in his possession.  Plaintiff responded to Mr. Karpeles Requests for Production Numbers 1-5, 7-11, 16, 18-21 with an objection that documents in his possession were also in the public domain:  "Plaintiff further objects that this Request seeks documents in Defendant's possession or in the public domain . . . and are therefore readily obtainable by Defendant with less burden and expense. Plaintiff will not produce such documents."  This objection came despite Plaintiff failing to identify most of the responsive documents that this referred to, thereby making it impossible for Mr. Karpeles to find them in the

10

public domain or his own possession. The parties remain at issue over this objection, and Mr. Karpeles may need to file a motion to compel on this point.

These are just some examples of the even lengthier objections Plaintiff submitted in response to Mr. Karpeles' requests. His current position about objections is belied by his own actions.

For each Request for Production of Documents except one, Mr. Karpeles indicated that: (1) he had no responsive documents in his possession or control, (2) that he is forbidden from disclosing other documents due to Japanese law, as discussed above, or (3) that he would produce relevant, non-privileged documents. The sole request that Mr. Karpeles did not respond to was on the basis of attorney-client privilege and relevancy considerations. Plaintiff's Request No. 6 sought "[a]ll communications relating to this or any other judicial proceeding or dispute concerning Mt. Gox, including those concerning CoinLab, Inc., Marko Simovic, or the Mt. Gox bankruptcy and civil rehabilitation procedures." (See Ex. J, Defendant Mark Karpeles' Responses and Objections to Plaintiff Gregory Greene's First Set of Requests for Production of Documents at 2.) This request largely covers communications with attorneys involved in the various legal disputes related to the Mt. Gox exchange that would be covered by attorney-client privilege. Furthermore, they are overly broad and not relevant to the actual events at issue, how the Mt. Gox exchange went dark and to what extent Mr. Karpeles was responsible for the removal of bitcoin from the Mt. Gox exchange. The communications Plaintiff seeks are not relevant to his claims or his damages and the minimal benefits of production do not outweigh the burden on Mr. Karpeles of producing these communications. *See Kleen Prods. LLC v. Packaging Corp. of Am.*, No. 10 C 5711, 2012 U.S. Dist. LEXIS 139632, at *32 (N.D. Ill. Sep.

28, 2012) ("Plaintiffs do not address the Rule 26 proportionality principle. In other words, they do not explain how the value of the proposed discovery outweighs its burden.")

Plaintiff's requests that Mr. Karpeles' "boilerplate" objections be stricken should be denied, particularly in light of Plaintiff's own nearly identical objections. *See Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *26 (N.D. Ill. Sep. 27, 2018) (" . . . what is good for the goose is good for the gander."). To the extent that Mr. Karpeles did not respond to only one of Plaintiff's requests, that request does not seek relevant information. Plaintiff's request to strike Mr. Karpeles' objections should be denied.

## CONCLUSION

Plaintiff's requests for production seek documents that are largely in the sole possession and control of the various bankruptcy trustees and the Japanese authorities. To the extent that any documents are in Mr. Karpeles' possession or control, those documents were provided to him by Japanese authorities for his criminal defense. Forcing Mr. Karpeles to produce the documents would lead to criminal liability under Japanese law and subject Mr. Karpeles to a criminal process with which he is already too familiar. Mr. Karpeles did not deliberately take the documents to Japan to conceal them or remove the information and this case does not present the type of compelling United States concern that overwhelm Japanese law.

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court (i) deny Plaintiff's Motion to Compel Production of Documents Responsive to Plaintiff's First Set of Requests for Documents and (ii) grant all other just relief.

Dated: October 8, 2019          Respectfully submitted,

Mark Karpeles

By: /s/ Bevin Brennan
      One of His Attorneys

12

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*