**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GREGORY GREENE, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

MARK KARPELES, an individual,

*Defendant*.

No. 1:14-cv-01437

Hon. Gary Feinerman

Magistrate Judge Susan Cox

**REPLY IN SUPPORT OF MOTION TO COMPEL**

Defendant Mark Karpeles does not contest that Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure *only* apply to documents made available to him by the Japanese prosecutors in connection with his criminal trial.[1] (Opp. to Mot. to Compel ("Opp."), dkt. 441, at 4.) That concession significantly narrows the issues before the Court. But Karpeles still insists that he needn't produce any documents in this case because, he claims, *every* document in his possession relating to the Mt. Gox exchange (and, in turn, responsive to Plaintiff Gregory Greene's discovery requests) was "provided to him by the Japanese authorities [in order to put on his defense in his criminal trial]." (Opp. at 2.)

That factual contention simply is not credible. Karpeles's own actions show that he has access to information other than the materials the Japanese prosecutors let him copy. To the extent such information is responsive to Plaintiff's requests, Article 281-4 does not limit

[1] Karpeles submits a letter from a Japanese lawyer and suggests that it should be given additional weight because it comes from a native speaker. (Opp. at 5; Opp. Ex. D.) But the individual agrees with the translation and opinion of Professor Wilson, so it's unclear what additional "weight" would accomplish here.

Karpeles's ability to produce it here. Indeed, as Plaintiff has previously explained, Karpeles already has produced documents in his control. He attempts to explain this away as the actions of a naïve, uncounseled litigant, but the evidence shows that the documents in question wouldn't be subject to Article 281-4, and Karpeles produced other information he now claims to be shielded from disclosure after retaining counsel, and apparently on their advice. Thus, not only does Karpeles's explanation fail to withstand scrutiny, it isn't fair. Karpeles has—in this and other litigation—affirmatively used these same documents to defend himself. His selective and misguided invocation of Japanese criminal law should not be countenanced. And third, even if every single document in Karpeles's possession, custody, or control was provided to him by the Japanese prosecutors in connection with his criminal trial, Karpeles does not persuasively explain why the applicable balancing test points away from disclosure, particularly given the obvious and undisputed relevance of the documents in question. Because Karpeles does not otherwise argue that his failure to produce any documents is justified, Plaintiff's Motion to Compel should be granted.

## I. ARTICLES 281-4 AND 281-5 DO NOT EXCUSE KARPELES FROM PARTICIPATING IN DISCOVERY.

### A. Karpeles has access to responsive documents outside the scope of Section 281-4; these must be produced.

Karpeles concedes that to the extent he has responsive information originally in his possession, custody, or control—as opposed to information he only received from the Japanese prosecutors—it is not shielded by Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure. (Opp. at 4 ("Under the Japanese Code of Criminal Procedure, Mr. Karpeles is precluded from producing materials given to him by the Japanese prosecution for his defense.").) Still, Karpeles says he needn't produce anything in this case because he only has access to copies of documents given to him by the Japanese criminal prosecutors. (Opp. at 2, 5.)

That's just not true. Initially, Karpeles does not provide any support for any factual contention made by his attorneys. He did not, for example, submit a declaration or affidavit attesting to his conduct or the documents accessible to or deleted by him. Instead, Karpeles only submits a blank form, which we are to presume he received from the bankruptcy trustee and complied with. (*See* Opp. Ex. A; Opp. at 1-2.)

But even Karpeles's presumed compliance with the trustee's instructions does not support his broader claim that "[a]ny documents or materials related to Mt. Gox that are currently in Mr. Karpeles' possession were provided to him by the Japanese authorities in [order to put on his defense in his criminal trial]." (Opp. at 2.) The record is clear on this point. Exhibit A to the Opposition asks the recipients (again, presumably Karpeles) to delete information *stored on personal computers*. But the form neither inquires into the existence of, nor asks Karpeles to delete or relinquish access to, email accounts that he used to conduct Mt. Gox business. (*See* Opp. Ex. A.) And we know Karpeles has access to such accounts because he forwarded exchange-related emails (from his "mark@tibanne.com" email address) to attorneys at Edelson PC on October 18, 2016—*more than two years* after he says the trustee asked him to delete information and more than a year after his arrest. (Declaration of Benjamin S. Thomassen ("Thomassen Decl.") ¶ 2; *see also* dkt. 277-3 at PageID #:3148 (Mt. Gox-related email from **gonzage@tibanne.com** to **jean-denis.max@baermckenzie.com** and mark@tibanne.com).)[2]

Significantly, these were not "copies" of emails. (*See* Opp. at 5 ("[T]he only reason that Mr. Karpeles has any materials relevant to Plaintiff's discovery requests is because copies of those materials were provided to Mr. Karpeles by Japanese prosecutors in order to put on his

---

[2] There is no dispute that Karpeles used the "mark@tibanne.com" email address to conduct Mt. Gox business. (*See* dkt. 277-3 at PageID #:3148; Ex. A to Thomassen Decl.)

defense.").) Rather, the emails Karpeles forwarded had been accessed and printed *directly from* the "mark@tibanne.com" email account on October 11, 2016, only a few days before Karpeles emailed them to Edelson PC. (Thomassen Decl. ¶ 2.) Karpeles may suggest that his access to these accounts are somehow included in the "copies" of documents given to him by the Japanese prosecutors. But the idea that the Japanese prosecutors provided Karpeles unfettered access to *live* email accounts, where Mt. Gox-related emails could be deleted, is fanciful. (*See* Bitcoin Documentary | The Unbelievable Story of Mark Karpeles at 1:13:55, https://youtu.be/1ivWSLQRQp0?t=4436 (Karpeles's Japanese criminal attorney explaining that Japanese prosecutors were concerned that Karpeles would "falsify evidence").) More plausible is that—as Karpeles explains in the feature-length documentary detailing his time at Mt. Gox and then re-states in the Opposition—prosecutors provided him with reams of paper documents that were copies of certain Mt. Gox-related documents, such as transaction records or bank statements relevant to the charges against him (i.e., embezzlement). (Bitcoin Documentary at 1:44:44 – 1:15:04, https://youtu.be/1ivWSLQRQp0?t=4484; *see also* Opp. at 5). Not included in this physical document dump was access to his email account. He has access to the "mark@tibanne.com" email account because he knows the account's username and password; not because it was provided to him as part of his criminal defense.

Karpeles's actions in seeking to have the various actions against him dismissed for lack of personal jurisdiction also are inconsistent with his belated reliance on Articles 281-4 and 281-5. In this case, Karpeles supported his Rule 12(b)(2) motion to dismiss (his first formal action in this case) with a declaration, in which he downplayed Mt. Gox's connection to Illinois. There, he stated:

> 13. Mt. Gox had a total of over 1,000,000 accounts. Mt. Gox has over 450,000 addresses associated with those accounts. Of those addresses, 7,056 had a zip code which started with 60, 61, or 62, which I understand are associated with Illinois. That is approximately 1.5% of all accounts.

(Dkt. 392-1 at ¶ 13.) It is clear that Mr. Karpeles accessed and used the Mt. Gox customer database to search for the *specific* number of exchange accounts associated with Illinois's several zip codes. This fits with his attorney's explanation that Karpeles *still has access to* the Mt. Gox customer database. (Dkt. 438-5 at 1 ("[Karpeles] also has access to the Mt. Gox database. . . .").) Karpeles also used information from the database in three other federal cases, including when moving to dismiss Gregory Pearce's claims in the Eastern District of Pennsylvania. *See Pearce v. Karpeles*, No. 18-cv-00306, dkt. 20-2 at ¶ 15 ("Mt. Gox had a total of over 1,000,000 accounts. Mt. Gox has over 450,000 addresses associated with those accounts. Of those addresses, 19,208 had a zip code which started with 15, 16, 17, 18, or 19, which I understand are associated with Pennsylvania.") (E.D. Penn. Apr. 18, 2019).

Not only does this demonstrate that Karpeles has access to documents apart from the paper documents the Japanese provided him, but it also undermines counsel's assertions, as well. In his opposition, Karpeles points out that his disclosures of ostensibly prohibited materials to attorneys at Edelson PC were made at a time that he was without counsel (at least without *U.S.* counsel—he was still consulting with Japanese attorneys on his criminal case who, presumably, would have advised him about the ways in which he could use Mt. Gox-related information), (Opp. at 5 ("When Mr. Karpeles previously sent e-mails and other documents to Edelson PC, he was not aware that doing could be a crime under Japanese law.").) But *these* disclosures, i.e.,

those made in support of motions under Fed. R. Civ. P. 12(b)(2), were done with the advice and recommendation of counsel.

Because the record shows that Karpeles has possession, custody, or control of discoverable information *other than* what was given to him for defense of in his criminal case, Karpeles should be compelled to search for and produce documents.

**B. Karpeles cannot selectively invoke Articles 281-4 and 281-5 only when it might harm (rather than serve) his interests.**

Next, Karpeles's selective invocation of Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure to his avoid discovery obligations, while at the same time using the purportedly covered information in his defense, is fundamentally unfair. "[L]itigants [cannot] selectively disclose information only when, and to the extent, that disclosure suits their present purpose; sword-and-shield litigation tactics are anathema to the Federal Rules' discovery provisions." *Flomo v. Bridgestone Americas Holding, Inc.*, No. 106CV00627DFHJMS, 2009 WL 10688034, at *4 (S.D. Ind. June 16, 2009) (citing *Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co.*, 132 F.R.D. 204, 207 (N.D. Ind. 1990) ("calling selective disclosure 'truth garbling'").). But "truth garbling" is precisely what Karpeles' selective reliance on Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure accomplishes here.

Karpeles hasn't shied from relying on Mt. Gox documents and data when it suits his purposes, but when asked to produce it in discovery—i.e., so that Plaintiff could use it to build his own case—he refused to do so.[3] Given that the historical record demonstrates that Articles

---

[3] Karpeles has also withheld information from his written interrogatory responses in this fashion. He has refused to provide detail in response to some requests because, consistent with his position here, answering "would rely on documents that he believes are precluded from disclosure under Japanese law applicable to criminal proceedings." (Thomassen Decl. ¶ 4.) Plaintiff will address this directly with Karpeles and, if necessary, the Court.

281-4 and 281-5 do not provide a basis for nondisclosure, it appears that Karpeles's only goal here is to muddy the waters, and perhaps delay the inevitable. Karpeles's selective use of Articles 281-4 and 281-5 of the Japanese Code of Criminal Procedure as a discovery shield must be rejected.

**C. Even if every single document concerning Mt. Gox was given to him by criminal prosecutors (a factual contention that is not true), Karpeles's fails to carry his burden to show that his failure to produce documents is justified.**

Finally, Karpeles recognizes it is his burden to show that his non-production is justified. (Opp. at 2 (quoting *Charvat v. Valente*, 82 F. Supp. 3d 713, 717 (N.D. Ill. 2015) ("The objecting party must show 'why a particular discovery request is improper.'"). To this end, Karpeles bases his non-production on the five factors identified in the Restatement (Third) of the Law of Foreign Relations § 442, (*id.* at 3): He concedes that the first two factors cut in favor of production (i.e., because the "documents [at issue] are admittedly relevant to the litigation and [Plaintiff's] requests are sufficiently specific," (*id.* at 5-6) but suggests the rest fall in his favor. Not so.

Regarding the third factor, "whether the information originated in the United States[,]" (Opp. at 3), Karpeles says that all the documents at issue are "in Japan." (*id*. at 6.) But that's not the inquiry: the question is where the information *originated* and, in this case, because the Mt. Gox servers were based in the United States (where they existed when Karpeles first bought the exchange from Jed McCaleb, an American citizen), (dkt. 11 at ¶ 6), it follows that the documents relating to customer transactions and accounts likewise originated in this country. *See In re Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 WL 7473109, at *2 n.2 (S.D.N.Y. June 27, 2018) (citing *In re Search of Info. Associated with [redacted]@gmail.com that is Stored at Premises Controlled by Google, Inc.*, No. 16-MJ-00757 (BAH), 2017 WL 3445634, at *2

(D.D.C. July 31, 2017) (assuming that electronic communications are located where the servers on which they are stored are located)).

With respect to this same factor, Karpeles additionally notes that he "could be subject to . . . penalties in Japan," (Opp. at 6), and goes on to stress that "there is a very real risk of prosecution under Japanese criminal law in this situation." (*id.* at 7.) As discussed above, this is wrong; at least some of the documents in question were not provided to Karpeles by the Japanese prosecutor. And to the extent this factor is relevant, the risk is overstated. Even if Karpeles's discussion of what information is shielded by Articles 281-4 and 281-5 is right, Karpeles's U.S.-based attorneys *counseled* their client to use that information defensively in this and other cases and then filed that purportedly confidential information in public court documents, yet Karpeles has not been prosecuted. The same goes for Karpeles's forwarding of information and documents to Edelson PC: Karpeles's conduct was noted publicly in this case long ago and has been flagged again here by his attorneys, (*see* dkt. 277-3 (email and other information provided Mark Karpeles discussing exchange-related conduct and activity); Opp. at 5), but again, Karpeles has not been prosecuted. Thus, any "risk" of prosecution here is slight.

Regarding the fourth factor, "the availability of alternative means of securing the information," Karpeles suggests that the at-issue documents are obtainable just as easily from the bankruptcy trustees. (Opp. at 4, 6.) Hardly. Obtaining documents from non-parties in Japan depends entirely on the third party's voluntary cooperation. *See* J. Soble and M. Tanabe, Conducting Discovery in Japan: Depositions, Letter Rogatory, and Production of Documents, available online at https://www.foley.com/en/insights/publications/2012/09/conducting-discovery-in-japan-depositions-letter-r (explaining that under the Civil Procedures Code of Japan, "the only way to obtain documents in Japan from a third party in Japan would be to ask

that third party to 'voluntarily' produce the documents.'"); *see also U.S.O. Corp. v. Mizuho Holding Co.*, No. 06 C 0459, 2007 WL 2893628, at *5 (N.D. Ill. Sept. 27, 2007), *aff'd,* 547 F.3d 749 (7th Cir. 2008) (citing collected sources) ("Because Japan is not a party to the Hague Evidence Convention, compelling evidence, whether testimonial or documentary, from a third-party witness in Japan for a case litigated in an American court is extremely burdensome and sometimes impossible."). And, since early on in this litigation, the Japanese trustee has not been willing to disclose information to attorneys at Edelson PC. (Thomassen Decl. ¶ 5.) As a practical matter, if Plaintiff is to obtain documents relating to the Mt. Gox exchange, it will be from Karpeles.

Regarding the fifth factor, the competing interests of the United States and Japan, the outcome is a wash, at best. The Seventh Circuit opinion relied upon by Karpeles emphasizes that "the courts of the United States undoubtedly have a vital interest in providing a forum for the final resolution of disputes," which would cover the interests assented by Plaintiff and putative class members here. *Reinsurance Co. of Am. v. Administratia Asigurarilor de Stat (Admin. of State Ins.)*, 902 F.2d 1275, 1280 (7th Cir. 1990). But while the opposing party in *Reinsurance Company* identified a stronger competing Romanian interest, the protection of state secrets, *id.* at 1280-81, here, Karpeles doesn't point to any corresponding interests of Japan. Instead, he agrees that the interests at issue are those identified by Professor Wilson: the prevention of "defendants from misusing prosecutorial files and dossiers . . . [the protection of] the privacy interests of unrelated third parties who are mentioned in the government's files." (Opp. at 7 (quoting dkt. 438-1 at ¶¶ 12-13).) But given the agreed purpose of Sections 281-4 and 281-5, disclosure in this case would not harm Japan's interests at all, considering that the production of case documents in this litigation would align with Japanese prosecutors' interests of holding Karpeles accountable

for his actions with respect to the Mt. Gox exchange and, thus, would not be an instance of Karpeles "misusing prosecutorial files and dossiers" for his own purposes. (Dkt. 438-1 at ¶ 14.) Similarly, the confidentiality concerns of Section 281-4 could be easily addressed through the Court's protective order, which could keep the identity of any "unrelated third parties who are mentioned in the government's files" out of the public's view. (*Id.*)

Regardless of whether Sections 281-4 and 281-5 of the Japanese Code of Criminal Procedure applies in part or in whole to the documents at issue here, Karpeles's decision to produce *nothing* in this case is not justified.

## II. KARPELES IDENTIFIES NO OTHER REASONS SUPPORTING HIS REFUSAL TO PRODUCE DOCUMENTS.

Karpeles does not contend that any of his remaining objections justify his failure to produce documents. Rather, he spends his time pointing out flaws in Plaintiff's written responses, even though Plaintiff *has* produced documents and explained that he has withheld nothing from his production. (Thomassen Decl. ¶ 6.) Indeed, the only set of objections Karpeles attempts to justify is his response to Plaintiff's Request for Production No. 6. (Opp. at 11-12.) But as noted in the opening brief and motion, Plaintiff does not seek to compel a response to that Request. (Mot. at 2 n.1.) Without any submitting any additional justification for the Court's consideration, there is nothing to support Karpeles's non-participation in discovery.

## CONCLUSION

The motion to compel should be granted.

Respectfully submitted,

EDELSON PC

Date: October 15, 2019

By: /s/ Benjamin S. Thomassen
One of Plaintiff's Attorneys

Benjamin S. Thomassen

bthomassen@edelson.com
Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Counsel for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

I, Benjamin S. Thomassen, an attorney, hereby certify that on October 15, 2019, I served the above and foregoing document by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

/s/ Benjamin S. Thomassen