UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| Plaintiffs, | ) ) ) | Hon. Gary Feinerman |
| v. | ) ) ) | Magistrate Judge Susan Cox |
| MARK KARPELES, an individual, | ) ) ) | |
| Defendant. | ) | |

**DEFENDANT MARK KARPELES' MOTION TO STRIKE EXPERT DISCLOSURE OF AND PRECLUDE EXPERT TESTIMONY FROM CAROL R. GOFORTH**

Pursuant to Federal Rules of Evidence 702 and 703, Defendant Mark Karpeles hereby moves this Court to strike the Declaration of Carol R. Goforth and preclude her from offering any expert testimony in this matter, as her proposed purported expertise and opinions are irrelevant to this case. In support of this Motion, Mr. Karpeles states as follows:

**BACKGROUND**

Professor Goforth's proposed testimony suffers from many flaws, but the one that needs to be addressed now is its patent irrelevance to this case and the Plaintiff's apparent improper effort to entirely change the allegations at issue via an expert report. The sole remaining Plaintiff in this case, Gregory Greene, filed the initial complaint in this case on February 27, 2014. [Dkt. No. 1.] The Fourth Amended Complaint ("Complaint"), filed on March 17, 2017, is the operative complaint in this case. [Dkt. 245.] The Complaint contains only three counts against Mr. Karpeles: Count I for conversion/trespass to chattels, alleging that Mr. Karpeles intentionally, with gross recklessness, or negligently stole Mr. Greene's and alleged class members' bitcoin and fiat currency from the Mt. Gox exchange; Count II for negligence in the

alternative to the conversion claim, alleging that Mr. Karpeles negligently failed to follow industry standards or implement proper security procedures to safeguard Mr. Greene's bitcoins on the Mt. Gox exchange; and Count III for consumer fraud relating to alleged statements made by Mr. Karpeles. [*See id.* ¶¶ 95-, 103-108; 112-120.]

After fact discovery closed in this case, in accordance with the Court's scheduling order [Dkt. Nos. 432, 450], Mr. Greene submitted his expert disclosure on December 26, 2019. Mr. Greene disclosed Carol R. Goforth, a law professor at the University of Arkansas, purportedly "as an expert in the regulation of cryptoassets, transactions, and business, including bitcoin exchanges." (Declaration of Carol R. Goforth ¶ 1, a copy of which is attached hereto as Exhibit A ("Declaration").) Putting aside all of the obvious delinquencies with Professor Goforth's report, which is chock full of legal conclusions and inadmissible statements of the subjective intent of others, reiterates Mr. Greene's lawyers' arguments, and shows a failure to possess or use any purported expertise, all of which Mr. Karpeles will raise at an appropriate later time if necessary, there is a more fundamental reason why Professor Goforth's Declaration should be stricken and any of her proposed testimony barred now: it is entirely irrelevant to the issues in this case.

As will be discussed in detail in the Motion for Summary Judgment that Mr. Karpeles is filing contemporaneously with this Motion, Mr. Greene contradicted the crucial allegations underlying his consumer fraud claim. Apparently, Mr. Greene is trying to avoid the consequences of his testimony under oath and use a purported expert to entirely change his claims. This is not permissible. While ordinarily a party like Mr. Karpeles would wait to contest the admissibility of an expert's opinion until after more of a record is established, this is not an ordinary case. Mr. Karpeles should not be required to incur the significant expense to retain an

expert (if one is even proper) and incur the significant expenses associated with depositions and a full *Daubert* motion to try to rebut and exclude patently irrelevant testimony. And that is what Professor Goforth has offered here. Her Declaration should be stricken in its entirety, and she should not be permitted to testify in this matter.

## LEGAL STANDARD

"Issues related to expert opinion testimony are matters of law to be determined by the trial judge," and the "trial judge must ensure that any and all expert testimony or evidence admitted is not only relevant, but reliable." *TRW Title Ins. Co. v. Security Union Title Ins. Co.*, 887 F. Supp. 1029, 1030 (N.D. Ill. 1995) (internal quotations and citations omitted). The proponent of the evidence carries the burden to establish its admissibility by a preponderance of the evidence. *Id.* One of the requirements to admit expert testimony pursuant to Federal Rule of Evidence 702 is that "the expert's testimony must be relevant, or 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Porges v. Wal-Mart Stores, Inc.*, No. 09 C 3705, 2011 U.S. Dist. LEXIS 26267, at *8 (N.D. Ill. Mar. 15, 2011), quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007).

A court may strike a proposed expert's opinion where (as here) the proposed opinion is "not relevant to any issue in the case," and where there are "no allegations [in the complaint] giving defendants fair notice that plaintiff[] would be pursuing a claim" premised on a different theory in an expert report. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 791-92 (7th Cir. 2011). Courts routinely exclude proposed expert testimony that is irrelevant to the issues, as it must under Rule 702. *See, e.g., Legg v. Pappas*, 383 Fed. Appx. 547, 550 (7th Cir. 2010) (affirming exclusion of proposed expert on police department policies and standards as irrelevant to what is objectively reasonable); *Nolan v. United States*, No. 12 C 0247, 2015 U.S. Dist.

3

LEXIS 115807, at *33 (N.D. Ill. Sept. 1, 2015) (excluding doctor's testimony about conditions of confinement that was irrelevant to a claim for malpractice); *Jones v. Nat'l Council of Young Men's Christian Ass'ns of the United States*, 34 F. Supp. 3d 896, 898-901 (N.D. Ill. 2014) (striking proposed expert report and testimony where proposed testimony was not relevant to the actual claims at issue); *Chi. Mercantile Exch., Inc. v. Tech. Research Group, LLC*, 782 F. Supp. 2d 667, 673-74 (N.D. Ill. 2011) (excluding patent expert's testimony as irrelevant where opinion was based on a mistaken construction and claim construction was an issue for the court to decide); *Porges*, 2011 U.S. Dist. LEXIS 26267, at *16 (granting motion to strike and bar irrelevant expert testimony); *Perry v. First Nat'l Bank*, No. 05 C 1470, 2005 U.S. Dist. LEXIS 23100, at *3 (N.D. Ill. Sept. 13, 2005) (granting motion to strike irrelevant expert report and summary judgment in favor of defendant); *Ryan v. Illinois*, No. 91 C 3725, 1999 U.S. Dist. LEXIS 1095, at *12 (N.D. Ill. Feb. 3, 1999) (striking expert opinion regarding losses as irrelevant and granting summary judgment to defendant); *TRW Title*, 887 F. Supp. at 1031 (excluding opinion of proposed expert where opinion was not relevant to any issue).

## ARGUMENT

As an initial matter, there should be no dispute that Professor Goforth has not offered any opinion about whether Mr. Karpeles was negligent in Mt. Gox's handling of security procedures on the Mt. Gox exchange or that he converted any bitcoins or cash from the Mt. Gox exchange. (*See generally* Declaration.) Nor could she, as a law professor without technical training with no claim to any technical expertise. Her opinion is therefore undeniably irrelevant to any of the issues raised in Counts I or II or the Complaint.

That leaves only Count III, a consumer fraud claim. Applying the Illinois Consumer Fraud Act claim to Mr. Greene, an Illinois resident, he had two options: to sufficiently allege

4

that Mr. Karpeles committed either a deceptive act or an unfair practice or both. *See, e.g., Benson v. Fannie May Confections Brands, Inc.*, No. 19-1032, 2019 U.S. App. LEXIS 36419, at *7 (7th Cir. Dec. 9, 2019). While Mr. Greene includes a generic and conclusory allegation of "unfair conduct," Mr. Greene makes no allegations to support that inclusion in a list with similar conclusory allegations of "unlawful" and "deceptive conduct." (Compl. ¶ 112.) Throughout Count III, Mr. Greene repeatedly asserts and confirms that his claim is based on allegations of fraud and deceptive conduct:

- "Through Mt. Gox's online marketing materials and advertisements, including its Terms of Use, Karpeles represented to Plaintiffs and the Mt. Gox Class that Mt. Gox would, *inter alia*, protect their bitcoins and Fiat Currency, and safely and quickly allow them to buy, sell, trade, or withdraw the same." (*Id.* ¶ 112.)

- "However, as discussed above, Karpeles did not—and never had any intention to—safeguard or protects his users' bitcoins and Fiat Currency or allow Plaintiffs and the members of the Class to buy, sell, and otherwise trade or withdraw the same, and instead, had since 2011, secretly siphoned—or allowed others to siphon—Plaintiffs' and the Class's bitcoins and money from their accounts for his own personal gain." (*Id.* ¶ 113.)

- "Thus, Karpeles' representations to Plaintiffs and the members of the Mt. Gox class were knowingly and intentionally false." (*Id.* ¶ 114.)

- "Knowing that consumers are less likely to do business with companies that fail to adequately safeguard and hold their bitcoins and Fiat Currency or allow them to buy, sell, trade or withdraw the same, Karpeles made these false representations with the intention that Plaintiffs and the members of the Class would rely on them in contracting with Mt. Gox and transferring money and Bitcoin into their accounts." (*Id.* ¶ 115.)

- "Karpeles additionally made false representations to Plaintiffs and the members of the Class through Mt. Gox's online Support Desk and in its customer service correspondence, which he controlled and directed, as described in Paragraphs 19, 34, and 38 supra. In particular, Karpeles falsely claimed that Mt. Gox's withdrawal and deposit issues were only temporary, that withdrawals would soon resume, that he was developing new business relationships with other banks for improved transaction capabilities, and that a security "bug" in Mt. Gox's system was the cause of its suspended withdrawals." (*Id.* ¶ 116.)

- "Karpeles further concealed the fact that (i) Mizuho was no longer providing international withdrawal services, and thus, U.S. customers had no means to

5

> withdraw deposited cash from the Exchange, (ii) that thousands of user bitcoins had been lost or stolen, and (iii) that he was preparing to shut down the Exchange and file for bankruptcy. (*Id.* ¶ 117.)

- "…Karpeles made the false representations and omissions with the intent that Plaintiffs and the members of the Class would rely on them and continue to deposit money and bitcoins into their Mt. Gox accounts and not attempt to withdraw funds and/or close accounts." (*Id.* ¶ 118.)

As all of these allegations show, Mr. Greene's claim is based on alleged fraud, and therefore falls into the deceptive practices side of the ICFA. If there were any doubt, Mr. Greene concludes with the summary allegation of Mr. Karpeles' alleged "fraudulent conduct." (*Id.* ¶ 119.) Count III is even entitled "Consumer Fraud." (*Id.* at 25.) Mr. Greene never alleges any particular unfair conduct.

Because Mr. Greene's "claim rests on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) applies. *Benson*, 2019 U.S. App. LEXIS 36419, at *7. Mr. Greene therefore was required to "plead with particularity the circumstances constituting fraud," which 'means as a practical matter that [he] must identify the 'who, what, when, where, and how' of the alleged fraud." *Id.*

As Mr. Greene's allegations make clear, including those specifically about his own considerations and decisions before deciding to join the Mt. Gox exchange in 2012 (Compl. ¶¶ 49-58), the alleged fraud underlying the deception boils down to alleged misrepresentations regarding: (i) the protection of bitcoins and Fiat Currency in 2013-14; (ii) the ability to safely and quickly allow user to buy, sell, trade, or withdraw their bitcoins and Fiat Currency in 2013-14; (iii) statements in 2014 that Mt. Gox's withdrawal and deposit issues were only temporary, that withdrawals would soon resume, that he was developing new business relationships with other banks for improved transaction capabilities, and that a security "bug" in Mt. Gox's system was the cause of its suspended withdrawals; (iv) concealment in 2013-14 that Mizuho Bank was

no longer providing international withdrawal services, and thus, U.S. customers had no means to withdraw deposited cash from the Exchange; (v) concealment in early 2014 that thousands of user bitcoins had been lost or stolen in that timeframe; and (iv) concealment in early 2014 that Mr. Karpeles was preparing to shut down the Exchange and file for bankruptcy.

Professor Goforth's Declaration does not address any of these bases for the alleged consumer fraud claim as stated in the Complaint. Instead, in contravention of pleading requirements, the Federal Rules of Civil Procedure and Mr. Karpeles' ability to defend himself fully in this action, Mr. Greene apparently has taken the opportunity to retain an expert to change the basis for his entire claim. Although it is difficult to discern exactly what are Professor Goforth's ultimate opinions rather than just Mr. Greene's general argument in this case, it appears that Professor Goforth seeks to offer the following as her two primary opinions:

(1) "No rational investor would have knowingly chosen to put or keep bitcoin or currency on an exchange with a bitcoin or cash deficit. Accordingly, if there had been a disclosure of the fact that there was a bitcoin deficit after the 80,000 BTC theft in March 2011 that was never recovered, users would have demanded return of their assets long before 2014, and the massive losses that eventually accrued would not have happened." (Declaration ¶ 63.)

(2) "Likewise, if Mt. Gox's bitcoin deficit had been publicly disclosed in or around March 2011, it is my opinion that the exchange would have failed, or at the least, would not have attracted additional investors in 2011 or the years that followed unless and until the deficits were eliminated and the problems that cause the shortfalls resolved. Either way, the losses realized in 2014 would have been avoided." (*Id.*)

That is, as Professor Goforth defines it, she is referring to what she calls an "80,000 BTC theft" in March 2011 -- an issue found nowhere in the Complaint as is required by Rule 9(b) if this were the true basis for the consumer fraud count.

There is very little else in Professor Goforth's report, other than her analysis of deposition testimony and public news articles, none of which requires any expertise and applies no skill set outside the province of an average juror. This is a thinly-disguised attempt to introduce inadmissible evidence through the imprimatur of a purported expert law professor. (*See, e.g.,* Declaration ¶¶ 11-27; 31-44.) The remaining portions of the Declaration that may arguably be considered opinions are also not relevant to the actual allegations in the Complaint:

- "A sizeable and growing deficit in the BTC and cash balances for the Mt. Gox exchange," relating to the use of a "Bot," another term that appears nowhere in the Complaint. (Declaration ¶¶ 39-45.)

- Alleged effects of the use of a Bot on pricing, a topic not mentioned in the Complaint. (*Id.* ¶ 43.)

- What members "who did not actually read the Terms of Use" (such as Mr. Greene -- a fatal flaw in his claim and in direct contradiction of the allegations in this Complaint on file for years) "would have anticipated" regarding who was their trading partner, whether accounts were backed by real bitcoin, fiat currency or real assets, none of which is found anywhere in the Complaint. (*Id.* ¶ 51.)

- The impact of "deficits in customer accounts that were neither corrected nor disclosed promptly," which is again found nowhere in the Complaint. (*Id.* ¶ 54.)

- Legal conclusions, such as "basic principles that essentially amount to good faith and fair dealing" about unknown "certain basic principles" (*id.* ¶ 48), whether there was "clear notice" in the site's Terms of Use about whether the Mt. Gox site would be a trading partner, which is not at issue in the Complaint (*id.* ¶ 49), and that it is "customary to assume that individuals have read the contracts that they sign." (*Id.* ¶ 54.)

There are many other problems with Professor Goforth's Declaration and proposed testimony that fall more along the standard issues with the admissibility of expert testimony, such as a lack of expertise, reliability, and the impermissibility of testifying to legal conclusions

8

or another's subjective intent, knowledge or behavior. If necessary, after the close of all expert discovery, Mr. Karpeles will raise those additional issues at that time. But expert discovery should not even proceed that far. Retaining his own expert and proceeding with expert discovery based on a patently improper report is unfair and unjust and will only serve to impose significant additional costs on Mr. Karpeles. When an expert report is as unattached to the allegations and issues in a case as Professor Goforth's Declaration is here, it should be stricken as not relevant.

This case was initially filed in 2014, and the operative Complaint was filed in 2017. The vast majority of news sources that Professor Goforth cites are from 2011-2015, including a source analyzing and discussing the use of a "bot." (*See, e.g.,* Declaration ¶¶ 25, 34, 44, 46, 57, 58, 62; Declaration Ex. B "List of Supplemental Sources Reviewed and Consulted during the preparation of the declaration to which this Exhibit is attached" (12 of 16 articles are dated October 22, 2015 and earlier).) Had this new, alternative theory been the actual basis for a consumer fraud claim that Mr. Greene intended to pursue, he has had years to seek to amend his Complaint. With discovery closed, the chance to amend the Complaint to fundamentally change his entire theory of his claim has passed. Professor Goforth's Declaration cannot serve as a *de facto* amendment.

As established by the accompanying Motion for Summary Judgment, Mr. Greene's claims cannot survive. He has directly contradicted the allegations in his own Complaint, allegations that needed to be pled with particularity to allow him to defend himself. (Given Mr. Greene's express denial of allegations in the Complaint that has been on file for years, it is a wonder that they were not withdrawn a long time ago.) Even if notice pleading were to apply, Mr. Karpeles has had absolutely no notice of these new theories: about the alleged need for disclosure of an issue from March 2011, its purported effects, the use of a bot and an alleged

bitcoin and fiat currency deficit. Those allegations are found nowhere in the Complaint, let alone as the basis for a consumer fraud claim. Mr. Greene cannot pursue those theories now, as he failed to properly plead them and provide the necessary allegations even under a less stringent notice pleading standard. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint cannot simply allege "an unadorned, the-defendant-unlawfully-harmed-me accusation"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (confirming that even under Federal Rule of Civil Procedure 8(a)(2) that a complaint must "given the defendant fair notice of what the … claim is and the grounds upon which it rests.") (quoting *Conley v. Gibson*, 355 U.S. 41).

In any event, this is a fraud claim premised on alleged deceptive practices, and the stricter pleading standards of Rule 9(b) apply. The Complaint does not contain any of the specific "who, what, when, where, and how" that Professor Goforth now propounds. There is no way that Mr. Greene can now pursue these alternative theories. *Benson*, 2019 U.S. App. LEXIS 36419, at *7. Professor Goforth cannot testify to the irrelevant matters sought to be raised for the first time in her Declaration, which are apparently being offered to save a claim that Mr. Greene and his counsel must know cannot survive as alleged.

## CONCLUSION

Aside from the more standard deficiencies with her Declaration in support of her proposed expert testimony, Professor Goforth cannot provide irrelevant testimony. That is all she has disclosed pursuant to Federal Rule of Civil Procedure 26. For that reason alone, her Declaration should be stricken in its entirety and any testimony from her should be barred. Mr. Karpeles brings this Motion now to spare him considerable unnecessary expenses that are patently obvious from her Declaration in light of the actual allegations and issues in this case.

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court: (i) grant this Motion; (ii) strike the Declaration of Carol R. Goforth in its entirety; (iii) bar any testimony in this matter from Carol R. Goforth; and (iv) grant all other just relief.

Dated: January 7, 2020

Respectfully submitted,

Mark Karpeles

By: */s/ Bevin Brennan*
One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*