## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| | ) ) | Hon. Gary Feinerman |
| Plaintiff, | ) ) | Magistrate Judge Susan Cox |
| v. | ) ) | |
| MARK KARPELES, an individual, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT MARK KARPELES' MEMORANDUM IN SUPPORT
## OF HIS MOTION FOR SUMMARY JUDGMENT
## <u>PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56</u>

Dated: January 8, 2020

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com
*Attorneys for Defendant Mark Karpeles*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ........................................................................................................................ 1

STATEMENT OF FACTS ......................................................................................................... 1

ARGUMENT ............................................................................................................................. 3

I.  THERE IS NO EVIDENCE THAT MR. KARPELES ASSUMED CONTROL, DOMINION, OR OWNERSHIP OVER PLAINTIFF'S BITCOIN AND FIAT CURRENCY FOR COUNT I (CONVERSION). ............................................................4

II.  THERE IS NO EVIDENCE OF ANY NEGLIGENCE, AND ILLINOIS' ECONOMIC LOSS DOCTRINE PRECLUDES MR. GREENE'S NEGLIGENCE CLAIM IN ANY EVENT (COUNT II). ......................................................................................................6

    A.  There is No Legally Recognized Duty As Required for a Negligence Claim, Nor Is There Any Evidence of a Breach of Any Duty. ...................................................6

        1.  Illinois Law Does Not Recognize Any Duty of Care With Respect to Bitcoins and Fiat Currency Held on the Mt. Gox Exchange. .....................6

        2.  There is No Evidence that Mr. Karpeles Breached Any Duty....................8

    B.  The Economic Loss Doctrine Precludes Mr. Greene's Negligence Claim.............8

III.  MR. KARPELES IS ENTITLED TO SUMMARY JUDGMENT ON THE ILLINOIS CONSUMER FRAUD ACT CLAIM (COUNT III) BECAUSE MR. GREENE ADMITS THAT HIS ALLEGATIONS ARE UNTRUE AND UNFOUNDED. .............................11

CONCLUSION ......................................................................................................................... 20

## **TABLE OF AUTHORITIES**

**Cases**

*Aliano v. Ferriss*, 988 N.E.2d 168 (Ill. App. Ct. 2013) ................................................................ 12

*Allstate Ins. Co. v. Pulte Homes of St. Louis, LLC*,
  No. 10-cv-237, 2010 U.S. Dist. LEXIS 115797 (N.D. Ill. Nov. 1, 2010) .............................. 10

*Benson v. Fannie May Confections Brands, Inc.*,
  No. 19-1032, 2019 U.S. App. LEXIS 36419 (7th Cir. Dec. 9, 2019)...................................... 11

*Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676 (7th Cir. 2011) ...................................................... 8

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................................... 3

*Cirrincione v. Johnson*, 703 N.E.2d 67 (Ill. 1998) ......................................................................... 4

*City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill 2004)............................................ 9

*Coleman v. Donahoe*, 667 F.3d 835 (7th Cir. 2012).......................................................................... 4

*De Bouse v. Bayer*, 922 N.E.2d 309 (Ill. 2009) .............................................................................. 12

*First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327 (Ill. 2006) ................. 10

*Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716 (N.D. Ill. 2015).............. 9

*Gondeck v. A Clear Title & Escrow Exch., LLC*,
  47 F. Supp. 3d 729 (N.D. Ill. 2014) (Feinerman, J.)................................................................. 6

*Home Valu, Inc. v. Pep Boys-- Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960 (7th Cir. 2000) .. 6

*Hutchison v. Fitzgerald Equipment Co.*, 910 F.3d 1016 (7th Cir. 2018)......................................... 6

*Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 792 N.E.2d 1 (Ill. App. Ct. 2003) ....... 10

*LaSalle Bank Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840 (N.D. Ill. 2008) ........... 6

*McCoy v. Midland Funding, LLC*,
  No. 18 C 1035, 2019 U.S. Dist. LEXIS 110026 (N.D. Ill. July 2, 2019) (Feinerman, J.).......... 4

*Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443 (Ill. 1982)............................................ 9

*Osborn v. J.R.S.-I., Inc.*, 949 F. Supp. 2d 807 (N.D. Ill. 2013) ..................................................... 12

*Phillips v. DePaul Univ.*, 19 N.E.3d 1019 (Ill. App. Ct. 2014) ..................................................... 12

*Porter v. Whitehall Labs., Inc*., 9 F.3d 607 (7th Cir. 1993)............................................................. 5

*Pumputyte v. United Airlines, Inc.*,
  No. 16 C 4868, 2018 U.S. Dist. 38786 (N.D. Ill. Mar. 9, 2018) (Feinerman, J.). .................... 4

*Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891 (7th Cir. 2003)........................................... 3

*Roberts v. Robert v. Rohrman, Inc.*, 909 F. Supp. 545 (N.D. Ill. 1995) ....................................... 12

*Siegel v. Shell Oil Co*., 612 F.3d 932 (7th Cir. 2010). ............................................................. 4, 12

*Totz v. Continental DuPage Acura*, 602 N.E.2d 1374 (Ill. App. Ct. 1992)................................... 12

*Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437 (7th Cir. 2005)............................. 4

*Wiegel v. Stork Craft Mfg.*, 946 F. Supp. 2d 804 (N.D. Ill. 2013)................................................ 12

*Zummo v. City of Chicago*, 345 F. Supp. 3d 995 (N.D. Ill. 2018) ................................................. 12

**Statutes**

815 ILCS 505/1 ........................................................................................................................ 11

Fed. R. Civ. P. 56(a) ................................................................................................................. 3

Fed. R. Civ. P. 9(b) ................................................................................................................. 12

## INTRODUCTION

Plaintiff Gregory Greene filed this lawsuit against Defendant Mark Karpeles and other defendants almost six years ago based on very limited information available at the time relating to the demise of the bitcoin exchange Mt. Gox.  Since the initial complaint was filed, Mr. Greene pursued defendants other than Mr. Karpeles for years.  After the resolution of the claims against the other defendants in mid-2018, rather than withdrawing claims based on allegations that Mr. Greene readily admitted in subsequent discovery were not true or unsupported, Mr. Greene doggedly pursued these claims.  The time has come to end this litigation in its entirety.

Mr. Karpeles should be granted summary judgment in his favor for each of the three counts alleged against Mr. Karpeles in the operative Fourth Amended Complaint ("Complaint") [Dkt. No. 245] -- namely Count I for conversion, Count II for negligence, or Count II for Consumer Fraud -- for a host of reasons.  First, Mr. Greene has no evidence to support a claim for conversion.  Second, for the negligence count, Mr. Greene has no supporting evidence and cannot recover under that theory for a purely economic injury.  Third, for the consumer fraud count, Mr. Greene directly contradicted the underlying allegations in his Complaint of the purported fraud or deception, thereby dooming his claim.

Mr. Karpeles respectfully requests that this Court enter summary judgment in his favor on Counts I-III of the Complaint, thereby ending this litigation.

## STATEMENT OF FACTS

Defendant Mark Karpeles is the sole shareholder and CEO of Tibanne KK, which owned eighty-eight percent of the shares of Mt. Gox KK.  (Defendant's Local Rule 56.1(a)(3) Statement of Fact ("SF") ¶ 4.)  Mr. Karpeles was the President and CEO of Mt. Gox KK from 2011 to 2014.  (*Id.* ¶ 5.)  The Mt. Gox Bitcoin Exchange ("Mt. Gox") was a bitcoin exchange from 2010-2014.  (*Id.* ¶ 6.)  Mt. Gox operated out of Japan starting in March 2011.  (*Id.* ¶ 7.)  Customers

could sign up for an account with Mt. Gox that allowed them to buy, sell, and store bitcoins and fiat currency. (*Id.* ¶ 8.) Users of Mt. Gox could transfer bitcoins directly into their accounts or deposit cash into their accounts by wiring money to one of Mt. Gox's banking partners. (*Id.* ¶ 9.) Users could withdraw cash from the exchange by submitting requests through their Mt. Gox accounts which were then sent to one of Mt. Gox's banking partners for processing. (*Id.* ¶ 10.)

In September 2011, unbeknownst to Mr. Karpeles until years later, someone gained access to one of Mt. Gox's four hot bitcoin wallets and began transferring small amounts of bitcoin out of it. (*Id.* ¶¶ 15, 41.) Mt. Gox had internal procedures to address security risks and issues, and Mt. Gox fixed any security risks, bugs, or hacks were discovered in Mt. Gox's code whenever they were discovered. (*Id.* ¶ 42.) Mr. Karpeles did not steal, gain access to, use, exercise control, dominion or ownership over, and/or dispossess Mr. Greene's, or any other Mt. Gox user's, bitcoins and Fiat currency. (*Id.* ¶ 43.)

Mr. Greene signed up for a Mt. Gox exchange account in 2012 and bought bitcoin on only two occasions: January 2012 and March 2013. (*Id.* ¶ 22.) Mr. Greene does not remember reading any particular information on the Mt. Gox website before creating his account. (*Id.* ¶ 23.) He does not recall any information about the security of the Mt. Gox website or exchange that was on the Mt. Gox website. (*Id.* ¶¶ 23, 25.) Mr. Greene believes he read Mt. Gox's Terms of Use, but cannot identify any particular provision. (*Id.* ¶ 26.) He testified that the Terms of Use "probably" included a statement that Mt. Gox would securely hold bitcoin for all users. (*Id.* ¶ 24.) However, the Mt. Gox Terms of Use did not make that representation. (*Id.* ¶ 27.) No portion of the Terms of Use stood out to him at the time that he signed up for an account at Mt. Gox or after; in fact, he could not remember any of the Terms of Use at all. (*Id.* ¶ 26.)

By no later than 2013, Mr. Greene was aware that other users were experiencing delays in withdrawing bitcoin. (*Id.* ¶ 32.) Mr. Greene did not have any interactions with Mt. Gox's customer service until he tried to take bitcoins off the exchange in November 2013. (*Id.* ¶ 31.) Starting in November 2013, Mr. Greene experienced delays with bitcoin transactions and contacted Mt. Gox's customer service, who helped resolve the issue. (*Id.* ¶¶ 31, 33.) In February 2014, he corresponded again with customer service as he tried to move more bitcoin out of his Mt. Gox account. (*Id.* ¶ 35.) Mr. Greene does not recall what Support Desk updates were from Mt. Gox, nor does he recall reviewing any sort of blog or updates that were posted directly to Mt. Gox's website. (*Id.* ¶ 30.)

Mr. Greene has no evidence relating to his allegations that Mr. Karpeles is liable for negligence for failing to protect bitcoin and fiat currency on the Mt. Gox exchange or for conversion of bitcoin and fiat currency. (*Id.* ¶¶ 38-39.) Mr. Greene submitted a proposed expert report from a law professor at the University of Arkansas, Professor Carol R. Goforth. Professor Goforth does not provide any opinions on any technical issues regarding operation of bitcoin exchanges. Her report is subject to a Motion to Strike being filed simultaneously with this Motion for Summary Judgment, as it is not relevant to the issues and allegations in this case.

## ARGUMENT

Summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Rauen v. U.S. Tobacco Mfg. Ltd. P'ship*, 319 F.3d 891, 895 (7th Cir. 2003). When the non-movant has the burden of proof, the moving party can satisfy its burden on summary judgment by "pointing out to the district court" that there is no evidence supporting the non-movant's claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In deciding the motion, the court examines the record in the light most favorable to the non-moving party, resolving all evidentiary conflicts

3

in its favor and affording it the benefit of all reasonable inferences that may be drawn from the record. *Coleman v. Donahoe*, 667 F.3d 835, 842 (7th Cir. 2012). However, the "mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive a summary judgment motion; there must be evidence on which the jury could reasonably find in favor of the nonmoving party." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 936 (7th Cir. 2010).

This Court has recognized that the Court may decide the merits of a proposed class representative's claim before addressing class certification. *See, e.g., McCoy v. Midland Funding, LLC*, No. 18 C 1035, 2019 U.S. Dist. LEXIS 110026, at *15 (N.D. Ill. July 2, 2019) (Feinerman, J.); *Pumputye v. United Airlines, Inc.*, No. 16 C 4868, 2018 U.S. Dist. 38786, at *18-20 (N.D. Ill. Mar. 9, 2018) (Feinerman, J.)

## I. THERE IS NO EVIDENCE THAT MR. KARPELES ASSUMED CONTROL, DOMINION, OR OWNERSHIP OVER PLAINTIFF'S BITCOIN AND FIAT CURRENCY FOR COUNT I (CONVERSION).

There is no evidence to support Mr. Greene's claim that Mr. Karpeles converted his, or anyone else's, bitcoin and fiat currency stored on Mt. Gox. "In order to recover for conversion in Illinois, a plaintiff must show: (1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby Cty. State Bank*, 425 F.3d 437, 439 (7th Cir. 2005), citing *Cirrincione v. Johnson*, 703 N.E.2d 67, 70 (Ill. 1998). Mr. Greene has no evidence that Mr. Karpeles wrongfully and without authorization assumed control, dominion or ownership over any bitcoin or fiat currency stored on Mt. Gox.

In an interrogatory, Mr. Karpeles asked Mr. Greene to "Identify all facts and basis that support the allegations contained in Paragraph 22 of the Fourth Amended Complaint that 'On

4

information and belief, Karpeles exploited the security bugs on the Exchange to steal his users' bitcoins.'" (*See* SF Ex. N at 4-5.) After a litany of unnecessary and irrelevant objections, Mr. Greene provided only three substantive responses: (1) incorporating his response to Interrogatory No. 12; (2) referring to the report of Emin Gun Sirer [Dkt. No. 57-4]; and (3) citing to a host of articles in the press. (*Id.*) The response to Interrogatory No. 12 is irrelevant and provides no facts supporting a claim that Mr. Karpeles stole any bitcoins. (*Id.* at 1-3.) Mr. Sirer was not disclosed as an expert witness in this case and his prior purported expert opinion is inadmissible. *See Porter v. Whitehall Labs., Inc.*, 9 F.3d 607, 612 (7th Cir. 1993) (expert testimony must be admissible to be considered in a motion for summary judgment). In any event, Mr. Sirer's report was rendered less than two months after the Mt. Gox exchange went dark, and was based on extremely limited information. Mr. Sirer merely speculates that an insider may have perpetrated a theft. [Dkt. No. 57-4 at 3.] This is not evidence sufficient to stave off summary judgment. Finally, none of the news articles are admissible in this case, and none of them provide any evidence that Mr. Karpeles converted or stole any bitcoins. In addition, Mr. Greene did not identify fact witnesses for this purpose, and he did not provide any expert testimony on technical issues. (*See* SF Ex. M, Plaintiff's Second Amended Rule 26(a)(1) Disclosures Section (i).)

Mr. Karpeles did not assume control, dominion, or ownership over any bitcoin or fiat currency from Mt. Gox. (SF ¶ 43) Mr. Greene has no evidence to contradict that fact. (*Id.* ¶ 38.) Because of the "absence of evidence to support the [plaintiff's] case" regarding the supposed conversion by Mr. Karpeles, Mr. Karpeles is entitled to summary judgment on Count I.

II.     **THERE IS NO EVIDENCE OF ANY NEGLIGENCE, AND ILLINOIS'
        ECONOMIC LOSS DOCTRINE PRECLUDES MR. GREENE'S NEGLIGENCE
        CLAIM IN ANY EVENT (COUNT II).**

In Count II, Mr. Greene claims that Mr. Karpeles was negligent by failing to use
reasonable care and industry standards to prevent improper access and misuse of his bitcoin and
fiat currency. (Compl. ¶¶ 102-109.) Summary judgment is proper for Mr. Karpeles for two
separate, independent reasons: (1) Mr. Greene has no evidence to support a claim for
negligence; and (2) the claim is barred by Illinois' economic loss doctrine.

A.     **There is No Legally Recognized Duty As Required for a Negligence Claim,
       Nor Is There Any Evidence of a Breach of Any Duty.**

"To prove a defendant's negligence under Illinois law, a plaintiff must establish the
existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an
injury proximately caused by that breach." *Hutchison v. Fitzgerald Equipment Co.*, 910 F.3d
1016, 1022 (7th Cir. 2018). Putting aside for purposes of this Motion whether Mr. Greene can
hold Mr. Karpeles personally liable in this case for negligence regarding Mt. Gox's operations,
Mr. Greene fails to establish either a duty of care or a breach of any duty of care.

1.     *Illinois Law Does Not Recognize Any Duty of Care With Respect to
       Bitcoins and Fiat Currency Held on the Mt. Gox Exchange.*

First, with respect to whether Mr. Karpeles (through Mt. Gox) owed Mr. Greene any duty
of care, any extra-contractual duty must "be a duty recognized by Illinois law." *LaSalle Bank
Nat'l Assoc v. Paramont Properties*, 588 F. Supp. 2d 840, 852 (N.D. Ill. 2008). Where there is
an absence of Illinois law recognizing a particular duty, the Court "generally choose[s] the
narrow interpretation which restricts liability, rather than the more expansive interpretation
which creates substantially more liability." *Gondeck v. A Clear Title & Escrow Exch., LLC*, 47
F. Supp. 3d 729, 745 (N.D. Ill. 2014) (Feinerman, J.) (quoting *Home Valu, Inc. v. Pep Boys--
Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000)). "In the absence of Illinois

authority establishing an extracontractual duty" for a party in a particular circumstance, "the issue must be resolved" against imposing a duty on a party.  *Id.*  In this case, that means in favor of Mr. Karpeles.

None of the generally alleged duties upon which Mr. Greene alleges negligence are recognized by Illinois law:

- An alleged "duty of reasonable care to employ procedures to detect and prevent the improper access and misuse of Plaintiffs' and the Class's bitcoins and Fiat Currency and also to allow them complete access to the same."  (Compl. ¶ 103);

- An alleged duty of "maintaining, protecting, accounting for, and safeguarding the Plaintiffs' and the Mt. Gox Class' bitcoins and Fiat Currency within Mt. Gox's control."  (*Id.* ¶ 104);

- A "fai[ure] to implement security procedures to detect and prevent unauthorized access to Plaintiff's and the Mt. Gox Class' bitcoins and Fiat Currency."  (*Id.*¶ 105); and

- An alleged obligation "to exercise reasonable care in safeguarding such information [*i.e.* the Plaintiff's and Class' bitcoins and Fiat Currency] by adopting, implementing, and maintaining appropriate data management, accounting, and security measures." (*Id.*)

There is no separately created legal duty that Mt. Gox or Mr. Karpeles owed to Mr. Greene as recognized by Illinois law (and definitely not such a duty that existed in 2014 or before), as this is exactly the type of business transaction that falls into contractual principles rather than negligence (a point further discussed below with respect to the economic loss doctrine).  Mr. Greene never alleged or provided a legal basis for these conclusory assertions. Without "the existence of a duty of care owed by the defendant to the plaintiff," Mr. Greene cannot sustain his claim for negligence, there is no genuine issue of material fact, and summary judgment is proper in Mr. Karpeles' favor on Count II for this reason alone.

### 2. *There is No Evidence that Mr. Karpeles Breached Any Duty.*

Even if there were a duty of care regarding the security or maintenance of bitcoins and fiat currency on the Mt. Gox exchange, there is no evidence that Mr. Karpeles breached it. (SF ¶ 39.) Mr. Greene has not produced evidence that Mr. Karpeles or Mt. Gox breached any particular duty in running the exchange or specifically what they did or did not do that constitutes a breach of duty. Mr. Greene has not identified any witness who can testify that Mr. Karpeles somehow breached any duty of care. None of his fact witnesses are identified for this purpose, and he did not provide any expert testimony on technical issues. (*See* SF Ex. M.) On the other hand, Mr. Karpeles explained in detail why this allegation is not true. Mt. Gox had procedures in place whenever someone discovered a security risk, bug, or hack in Mt. Gox's code and those issues were fixed by Mr. Karpeles and Mt. Gox. (SF ¶ 42.) Mt. Gox was the first exchange to use encrypted cold wallets and paper wallets for more secure bitcoin storage, and other exchanges followed its lead. (*Id.* ¶¶ 11-13.) Mr. Greene has no evidence to refute this testimony or support his allegations of breach of duty.

Again, because of the "absence of evidence to support the [Plaintiff's] case" regarding the supposed negligence, Mr. Karpeles should be granted summary judgment on Count II because Mr. Greene has no evidence that Mr. Karpeles breached any duty owed to him, and there is no genuine issue of material fact on this element. *Sterk*, 770 F.3d at 627. This is a second, independent basis to grant summary judgment to Mr. Karpeles on Count II.

### B. The Economic Loss Doctrine Precludes Mr. Greene's Negligence Claim.

In addition, Illinois' economic loss doctrine bars Mr. Greene's negligence claim. In Illinois, the economic loss doctrine "bars tort recovery for purely economic losses based on failure to perform contractual obligations." *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 692-93 (7th Cir. 2011), citing *Moorman Mfg. Co. v. National Tank Co.*, 435 N.E.2d 443, 448-49 (Ill.

1982).  Under the economic loss doctrine, "a party may not recover for solely economic loss under the tort theories of strict liability, negligence and innocent misrepresentation."  *Id.* at 693.  Even "the absence of a contractual relationship does not place a negligence claim outside the doctrine's scope."  *Gondeck*, 47 F. Supp. 2d at 746.  As this Court held, discussing a host of cases on the issue, "[w]hat these decisions implicitly convey, and what subsequent decisions explicitly hold, is that coverage by the economic loss doctrine is governed not by whether the plaintiff was a party to a contract, but rather by whether the plaintiff alleges personal or property damage as opposed to simply pecuniary losses."  *Id.*  This Court continued, "[a]s the Supreme Court of Illinois explained nearly a decade ago, '[a]lthough the economic loss doctrine is rooted in the theory of freedom of contract, it has grown beyond its original contract-based policy justifications of maintain the fundamental distinction between contract and tort and protecting the freedom of parties to allocate risk by contract."  *Id.* at 747, quoting *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1140 (Ill. 2004).

Mr. Greene here alleges only pecuniary economic loss:  "the form of the price of the bitcoins and Fiat Currency that [was] in [his] Mt. Gox account[ ] at the time it went dark that is not recoverable under the liquidation proceedings in Mt. Gox's Japanese bankruptcy."  (Compl ¶ 109.)  He confirmed this in his Rule 26(a)(1) disclosures and interrogatory response.  (SF Ex. M, Plaintiff's Second Amended Rule 26(a)(1) Disclosures Section (iii); Ex. G at 1-2.)  Although the Complaint and the Rule 26 disclosures add the phrase "and other damages" after "economic injury," this conclusory statement of non-economic losses is insufficient to thwart the application of the economic loss doctrine.  *See, e.g., Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 723 (N.D. Ill. 2015).  Nor has Mr. Greene provided any evidence of anything other than economic damages.

Illinois law precludes negligence claims like the one asserted by Mr. Greene here. For example, in *Jewelers Mutual Insurance Co. v. Firstar Bank Illinois*, 792 N.E.2d 1 (Ill. App. Ct. 2003), the plaintiff jewelry insurance company and a jeweler sued the defendant bank, alleging breach of contract and negligence arising from the theft of over $1 million worth of loose diamonds and fine jewelry from three safety deposit boxes. The plaintiff alleged that "the bank was negligent by failing to properly monitor the vault and prevent unauthorized persons from gaining access to his safety deposit box." *Id.* at 7. The court held that the economic loss doctrine precluded the jeweler plaintiff's negligence claim because the jeweler's sole loss was personal property held in the safety deposit box. *Id.* at 7-8. Here, Mr. Greene's sole loss was bitcoin and cash, *i.e.* personal property, and, therefore, his negligence claim is precluded by the economic loss doctrine.

None of the economic loss doctrine's limited exceptions apply here: "(1) where the plaintiff sustained damage, *i.e.*, personal injury or property damage, resulting from a sudden or dangerous occurrence; (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud; and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions." *Catalan*, 629 F.3d at 693, citing *First Midwest Bank, N.A. v. Stewart Title Guaranty Co.*, 843 N.E.2d 327, 333-34 (Ill. 2006). There was no sudden or dangerous occurrence such as an underground flood or thunderstorm. *See Allstate Ins. Co. v. Pulte Homes of St. Louis, LLC*, No. 10-cv-237, 2010 U.S. Dist. LEXIS 115797, at *6-8 (N.D. Ill. Nov. 1, 2010) (collecting cases). Nor did he suffer personal injury or property damage. Mr. Greene does not allege an intentional, false representation as the proximate cause for his alleged damages in his negligence claim. Additionally, as discussed

10

more fully below, he disowned allegations regarding misrepresentations in Count III through discovery, even if the Court were to consider them here.  Finally, neither Mt. Gox nor Mr. Karpeles were in the business of supplying information for the guidance of others in their business transactions.

The economic loss doctrine precludes Mr. Greene from recovering any of his claimed damages, all of which are economic, pecuniary losses, based on his negligence claim in Count II. Mr. Karpeles is therefore entitled to summary judgment on Count II of the Complaint for this third separate reason.

### III.   MR. KARPELES IS ENTITLED TO SUMMARY JUDGMENT ON THE ILLINOIS CONSUMER FRAUD ACT CLAIM (COUNT III) BECAUSE MR. GREENE ADMITS THAT HIS ALLEGATIONS ARE UNTRUE AND UNFOUNDED.

Mr. Greene's admissions, actions and repeated disavowals of his own assertions filed in pleadings in this Court, including the Complaint, eviscerate his Consumer Fraud Act claim.  To state a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq.*, a plaintiff must allege that the defendant committed either a deceptive act or an unfair practice or both.  *See, e.g., Benson v. Fannie May Confections Brands, Inc.*, No. 19-1032, 2019 U.S. App. LEXIS 36419, at *7 (7th Cir. Dec. 9, 2019).  In this case, Mr. Greene has alleged only that Mr. Karpeles committed deceptive acts.  (Compl. ¶¶ 112-119 (alleging consumer fraud claim all based solely on allegations of misrepresentations and concealment, not any unfair practices).)

For ICFA claims premised on deceptive acts, a plaintiff must establish:  "(1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) that the deception occurred in the course of conduct involving trade or commerce; and (4) actual damage to the plaintiff (5) proximately caused by the deception."  *Zummo v. City of*

*Chicago*, 345 F. Supp. 3d 995, 1010 (N.D. Ill. 2018), citing *Aliano v. Ferriss*, 988 N.E.2d 168, 176 (Ill. App. Ct. 2013). For the proximate cause element, a plaintiff must show that "but for the defendants' conduct," he or she would have made a different decision. *Wiegel v. Stork Craft Mfg.*, 946 F. Supp. 2d 804, 809 (N.D. Ill. 2013), citing *Siegel*, 612 F.3d at 932.

A key requirement is that "the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *Osborn v. J.R.S.-I., Inc.*, 949 F. Supp. 2d 807, 813 (N.D. Ill. 2013), citing *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). "If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause." *Id.* For fraudulent omissions, the "plaintiffs must establish the existence of a special or fiduciary relationship, which in turn gives rise to a duty to speak." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1038 (Ill. App. Ct. 2014). The omission must also be of a material fact. *See* 815 Ill. Comp. Stat. 505/2 (defining deceptive conduct, in part, as "concealment, suppression or omission of any material fact"). "A fact is 'material' for purposes of the ICFA if the other party would have acted differently had she been aware of it." *Roberts v. Robert v. Rohrman, Inc.*, 909 F. Supp. 545, 550 (N.D. Ill. 1995), citing *Totz v. Continental DuPage Acura*, 602 N.E.2d 1374, 1381 (Ill. App. Ct. 1992).

Because Mr. Greene's ICFA "claim rests on allegations of deceptive conduct," Federal Rule of Civil Procedure 9(b) applies. *Benson*, 2019 U.S. App. LEXIS 36419, at *7. Mr. Greene, therefore, was required to "plead with particularity the circumstances constituting fraud," which 'means as a practical matter that [he] must identify the 'who, what, when, where, and how' of the alleged fraud." *Id.* His ICFA claim in this case is therefore limited to the particular allegations in the Complaint.

12

The particular allegations about the representations and concealments that purportedly form the basis of Mr. Greene's consumer fraud claim are found in Paragraphs 49, 50, 112, 116 and 117 of the Complaint. Comparing the allegations with Mr. Greene's discovery responses, including responses to interrogatories and in his deposition, and other allegations in the Complaint shows that there is no genuine issue of material fact: Mr. Greene's allegations are wholly unfounded and cannot proceed.

As detailed for each of the pertinent allegations below, Mr. Greene admits that he does not recall seeing any particular representation or that his conduct was not affected by any of the alleged statements or concealed facts, or both. Mr. Karpeles addresses each of the allegations in turn:

### Paragraphs 49 and 50

Paragraph 49 Allegations:    In late 2011, while searching the Internet for a Bitcoin exchange, Plaintiff navigated to Mt. Gox's website (www.mtgox.com) and read its advertisements about its service, including its representations about the Exchange's security, reliability, and ability to withdraw or deposit bitcoins at any time -- substantially similar to the advertisements and representations described in Paragraphs 13-14 above.

And

Paragraph 50 Allegations:    Relying upon these representations made by Mt. Gox—namely, that it would allow him to "quickly and securely trade bitcoins with other people around the world" and give him "the ability to securely store [his] Bitcoins in a virtual 'vault' for safe keeping"—Greene signed up for an account on Mt. Gox's website in 2012 and began trading and selling Bitcoin.

The Undisputed Factual Record:    Mr. Greene does not know what information on the Mt. Gox website he actually looked at or read. (SF ¶¶ 23-30; SF Ex. G at 4.) Furthermore, Mr. Greene readily admits that he knows no website or bitcoin exchange is 100 percent secure. (*Id.* ¶ 28.) Mr. Greene further admits that he signed up for a Mt. Gox account without seeing any information regarding the security of Mt. Gox. (*See id.* ¶¶ 23-25.) In addition, Mr. Greene identifies no specific evidence about Mt. Gox's representations about security, reliability or

ability to withdraw or deposit bitcoins that the saw. His speculation is wrong that there are any such representations in the Terms of Use, terms that he admits he cannot identify and by which he cannot possibly deemed to have been deceived. (SF ¶¶ 26-27.)

## Paragraph 112

Paragraph 112 Allegations: "Through Mt. Gox's online marketing materials and advertisements, including its Terms of Use, Karpeles represented to Plaintiffs and the Mt. Gox Class that Mt. Gox would, *inter alia*, protect their bitcoins and Fiat Currency, and safely and quickly allow them to buy, sell, trade, or withdraw the same."

The Undisputed Factual Record: Mr. Greene does not remember and cannot identify what he looked at before opening his Mt. Gox account. (SF ¶¶ 23-27.) Mr. Greene does not remember looking at any specific portion of the Terms of Use, and cannot identify any statement in it. (*Id.* ¶ 26.) The Mt. Gox Terms of Use did not make any representations regarding securely holding bitcoin or safely and quickly allowing users to buy, sell, trade or withdraw them. (*Id.* ¶ 27.) Mr. Green has not produced any evidence of any other alleged marketing materials or advertisements, nor has he identified any with the requisite specificity. Furthermore, Mr. Greene readily admits that he knows no website or bitcoin exchange is 100 percent secure. (*Id.* ¶ 28.) Mr. Greene further admits that he signed up for a Mt. Gox account without seeing any information regarding the security of Mt. Gox. (*See id.* ¶¶ 23-26.)

## Paragraph 116

Paragraph 116 Allegations: "Karpeles additionally made false representations to Plaintiffs and the members of the Class through Mt. Gox's online Support Desk and in its customer service correspondence, which he controlled and directed, as described in Paragraphs 19, 34, and 38 supra."

The Undisputed Factual Record: Mr. Greene does not recall what Support Desk updates even were from Mt. Gox, nor does he recall reviewing any sort of blog or updates that was posted directly to Mt. Gox's website. (SF ¶ 30.) Mr. Greene cannot use Support Desk

updates or statement that he never read or saw as the basis for his ICFA claim. Mr. Greene does

not allege any specific representations in his correspondence with customer service as a basis for

his claim. (Compl. ¶ 52-54.) He only alleges that certain things were supposedly concealed

from him in November 2013 and early 2014. (*Id.*) Mr. Greene corresponded with Mt. Gox

customer service only via email, and he did not identify a single false representation in any of

that correspondence. (SF ¶ 31; SF Ex. E at 31:8-10.) This paragraph alleges actual false

representations, which do not exist; any implicit concealment allegation (which is not alleged

with the requisite particularity) is addressed with respect to Paragraph 117 below.

In addition, the only Support Desk statements referenced (generically) in the Complaint

are from February 2014, and Mr. Greene only contacted customer service for the first time in

November 2013. (Compl. ¶¶ 35, 39; SF ¶ 31.) As will be discussed below with respect to

Paragraph 117, these late allegations cannot possibly be the proximate cause of any damages to

Mr. Greene, a position expressly incorporated herein.

## **Paragraph 117**

Paragraph 117 Allegations: "Karpeles further concealed the fact that (i) Mizuho was no
longer providing international withdrawal services, and thus, U.S. customers had no means to
withdraw deposited cash from the Exchange, (ii) that thousands of user bitcoins had been lost or
stolen, and (iii) that he was preparing to shut down the Exchange and file for bankruptcy."

The Undisputed Factual Record: As an initial matter, Mr. Karpeles did not have any

special or fiduciary duty to Mr. Greene to disclose these alleged points, and Mr. Greene has not

and cannot provide any factual basis to create this duty. Without any such duty, these alleged

omissions cannot sustain an ICFA claim. *Phillips*, 19 N.E.3d at 1038. That alone eliminates

these allegations from being a basis for Mr. Greene to pursue his consumer fraud claim, and

summary judgment should be granted with respect to these alleged bases for that reason alone.

15

In addition, Mr. Greene's own testimony and discovery responses show that none of these allegations can be the proximate cause of his alleged damages as a matter of law and are not material. The Complaint alleges three things that Mr. Greene would have done (or not done) "[h]ad Greene known that Mizuho was interfering with Mt. Gox's ability to service its users, that the security of Mt. Gox had been compromised, or that Karpeles was preparing to go offline and declare bankruptcy": (1) he would not have opened an account with Mt. Gox; (2) he would not have deposited or stored his bitcoins on the Mt. Gox Exchange; and (3) and/or would have taken immediate steps to withdraw his bitcoins from the Exchange before it went down." (Compl. ¶ 58.) Marching up the three alleged bases of concealment with these allegations of what Mr. Greene purportedly would have done show that these allegations do not hold water.

First, Mizuho Bank's ceasing to provide international withdrawal services did not have any effect on what Mr. Greene did or would have done. Mr. Greene only bought bitcoin via the Mt. Gox exchange on two occasions: in January 2012 and March 2013. (SF ¶ 22.) Mizuho bank did not stop providing international withdrawal services until mid-2013. (Compl. ¶¶ 2, 31.) Any cessation of Mizuho Bank to stop processing withdrawals in mid-2013 therefore could not possibly have any effect on Mr. Greene's decision to open an account with Mt. Gox, and he deposited and stored his bitcoin on the exchange long before any such decision by Mizuho Bank. This directly establishes a lack of any possible causation. (*Id.* ¶ 58.) Nor did Mizuho Bank's decisions stop him from taking immediate steps to withdraw his bitcoins from the Mt. Gox Exchange before it went down in February 2014 (*id.*): he readily admitted that he in fact did do that based on information known to him:

Q.     And what bitcoin transactions were you trying to make in November 2013?

A.     I was trying to remove the bitcoins from my account to a personal address.

Q.      What do you mean by personal address?

A.      A personal bitcoin address.

Q.      And explain to me what your personal bitcoin address was.

A.      An individual address that holds bitcoin.

Q.      Because I knew at the time that other individuals were having difficulty removing their bitcoins from the Mt. Gox Exchange.

(SF Ex. E at 32:6-18.)

In addition, Mr. Greene expressly alleges that users were "report[ing] substantial difficulties in withdrawing cash from their Mt. Gox accounts -- wondering online about the source of the delays." (Compl. ¶ 32.) Mr. Greene was aware of this via the online forums such as bitcointalk.org. (SF Ex. E at 32:20-21.) Any alleged concealment was neither material nor a proximate cause of any failure of Mr. Greene to act. In fact, he did exactly what he alleges in the Complaint that he would have done. And finally, it is not true that Mizuho Bank's actions left U.S. customers "with no means to withdraw deposited cash from the Exchange." Mt. Gox subsequently set up a banking relationship with Japanese Post Bank to provide these services. (SF ¶ 17.) For all of these reasons, Mr. Greene has no basis to sustain an ICFA claim based on Mt. Gox's relationship with Mizuho Bank.

Second, the loss or theft of bitcoin had no effect on Mr. Greene. The only alleged loss or theft that is mentioned in the Complaint (and again, had to be pled with particularity) was not known to Mr. Karpeles until February 2014. (SF ¶ 41.) Mr. Greene opened his account in 2012, made his first purchase in January 2012 and his second purchase in March 2013. (*Id.* ¶¶ 20, 22.) This subsequent discovery cannot possibly be considered concealment that has any connection to whether Mr. Greene would have set up his account on Mt. Gox or deposited or stored his bitcoin

there a year or two before.  Nor would it have had any impact on any allegation of forgoing efforts to withdraw his bitcoin from the exchange "before it went down" in February 2014:  as quoted above directly from Mr. Greene's deposition, he was already doing that beginning in November 2013.  (*Id.* ¶ 32.)

In addition, Mr. Greene readily admitted he did not "believe that any exchange like Mt. Gox used for bitcoins is 100 percent secure" and that he "do[es]n't think anything can be 100 percent secure."  (SF Ex. E at 21:4-12; SF ¶ 28.)  In fact, Mr. Greene read about a prior attack on the Mt. Gox exchange by a hacker in 2011 -- before setting up an account and purchasing any bitcoin via Mt. Gox -- and that it didn't have "any effect on [his] decision" to purchase bitcoin. (SF Ex. E at 10:16-11:7; SF ¶ 21.)  His generic allegations about lack of security and what he would have done are belied by his own admissions and actions.

Third, any decision to go offline and declare bankruptcy did not happen until late February 2014.  (SF ¶ 19.)  Those dates are important, as they show once again that this later conduct they cannot possibly have proximately caused Mr. Greene's damages.  Mr. Greene opened his Mt. Gox account in 2012, well before any of the listed conduct.  The same is true for the second alleged inaction:  he bought, deposited and stored his bitcoin on the Mt. Gox exchange in January 2012 and March 2013, long before any decision to go offline and file for bankruptcy in February 2014.  (*Id.* ¶ 22.)  Moreover, Mr. Greene was already trying to withdraw his remaining bitcoins from the exchange from November 2013 through February 2014, exactly the actions he claimed he would have taken had he known that the exchange would soon go offline and Mt. Gox would file for bankruptcy (which did not happen until February 2014).  (*Id.* ¶¶ 32, 34.)  Any alleged concealment had no effect on Mr. Greene's actions.

18

Analyzing each of the particular allegations of misrepresentations and concealment -- the only ones pled in the Complaint and which can be considered here -- shows that there are no issues of material fact, and that Mr. Greene's claims are all untrue and unfounded. None of them provides the necessary proximate cause of damages, and the alleged concealments are not material. Because of Mr. Greene's own actions and statements belying all of these allegations, summary judgment should be granted in favor of Mr. Karpeles on Count III.

Perhaps sensing that his claims as asserted are totally baseless and contrary to his own version of events, Mr. Greene has submitted a proposed expert opinion that attempts to divorce the theory of liability from Mr. Greene's allegations in the Complaint. But Mr. Greene's proposed expert testimony is irrelevant to any of the actual issues raised in the Complaint. Professor Carol R. Goforth opines on new theories of deceptive conduct that are not pled anywhere in the Complaint. Mr. Karpeles is filing a Motion to Strike her report and bar any testimony from her as irrelevant simultaneously with this Motion, and incorporate the arguments contained in that Motion to Strike here rather than repeat them. The bottom line is that Professor Goforth's assertions and opinions are inadmissible and irrelevant. Even if the Court were to consider Professor Goforth's report for purposes of this Motion for Summary Judgment, it cannot save Mr. Greene's claim. His claim is based on his own allegations and the facts that pertain to him specifically. And those facts, as discussed in detail above, firmly establish that the allegations in the Complaint are untrue by his own admissions.

The undisputed facts demonstrate Mr. Greene's ICFA claim is entirely unfounded, as he has contradicted his own allegations, many of which should have been withdrawn long ago. Because Mr. Green cannot show many of the required elements of an ICFA claim, Mr. Karpeles is entitled to summary judgment on Count III.

## CONCLUSION

For all of the foregoing reasons, those stated in his accompanying Motion, and any further written submissions and oral argument to this Court, summary judgment is warranted in Defendant Mark Karpeles favor on Counts I, II, and III of Plaintiff Gregory Greene's Fourth Amended Complaint.

Dated: January 8, 2020                          Respectfully submitted,

                                                MARK KARPELES

                                                By: _____*/s/ Bevin Brennan*_____
                                                        One of his Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*