# Exhibit M

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 14-cv-01437 ) |
| v. | ) Hon. Gary Feinerman ) |
| MARK KARPELES, an individual, | ) Magistrate Judge Susan Cox ) ) |
| Defendant. | ) |

**DEFENDANT MARK KARPELES' OBJECTIONS AND RESPONSES TO PLAINTIFF GREGORY GREENE'S FIRST SET OF REQUESTS TO ADMIT FACTS**

Defendant MARK KARPELES by and through his attorneys, PEDERSEN & HOUPT and in response to Plaintiff Gregory Green's First Set of Requests to Admit Facts submits his responses as follows:

**REQUESTS TO ADMIT FACTS**

1. Admit that the English subtitles for Your interviews on the documentary entitled "Bitcoin Documentary: The Unbelievable Story of Mark Karpeles" are accurate translations.

**RESPONSE:** Karpeles objects to Request to Admit 1 on the basis that it violates the requirement that requests to admit be simple and direct so that they can be readily admitted or denied. *See, e.g., Robinson v. Morgan Stanley*, No. 06 C 5158, 2009 U.S. District LEXIS 93971, at *5-6 (N.D. Ill. Oct. 8, 2009). Mr. Karpeles has not watched a video over 1 hour and 42 minutes long, and this is not a simple and direct request that can be readily admitted or denied. This also an unduly burdensome request. Further answering, translation is not always a straightforward exercise, nor do two languages always exactly convey the same meaning. This request to admit is not proper, and Mr. Karpeles objects to it in its entirety.

01172025v1

2. Admit that, to the best of Your understanding and belief, the statements made by You in Your interview for the documentary entitled "Bitcoin Documentary: The Unbelievable Story of Mark Karpeles" were truthful.

**RESPONSE:** Admitted.

3. Admit that, to the best of Your understanding and belief, the statements made by You in Your interview for the "What Bitcoin Did" podcast, episode 76, were truthful.

**RESPONSE:** Admitted.

4. Admit that before You began to work with Mt. Gox, You understood that Mt. Gox lost some amount of fiat currency.

**RESPONSE:** Mr. Karpeles admits that he understood that Mr. Gox lost some amount of fiat currency when he entered into the Mt. Gox purchase agreement. Karpeles denies that he understood that Mr. Gox lost some amount of fiat currency before that time.

5. Admit that before You began to work with Mt. Gox, You understood that Mt. Gox lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity.

**RESPONSE:** Karpeles admits that he was told that Mt. Gox lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity when he entered into the Mt. Gox purchase agreement. Karpeles denies that he understood that Mt. Gox lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity before that time.

6. Admit that at or around the time You began to work with Mt. Gox, You did not tell Mt. Gox Users that Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity.

**RESPONSE:** Admitted.

7. Admit that after the time You began to work with Mt. Gox and continuing through February 2014, You did not tell Mt. Gox Users that, in 2011, Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity.

**RESPONSE:** Denied.

8. Admit that at or around the time You began to work with Mt. Gox, You did not tell other Mt. Gox employees that Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity.

**RESPONSE:** Karpeles admits that at or around the time he began to work with Mt. Gox, he did not tell other Mt. Gox employees that Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity because there were no other Mt. Gox employees at that time.

9. Admit that after the time You began to work with Mt. Gox and continuing through February 2014, You did not tell other Mt. Gox employees that, in 2011, Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity.

**RESPONSE:** Karpeles admits that he did not tell all other Mt. Gox employees that, in 2011, Mt. Gox had lost some amount of fiat currency due to a hack, theft, or some other unauthorized activity because Jed McCaleb qualified the information as confidential corporate information.

10. Admit that at or around the time You began to work with Mt. Gox, You understood that there were bitcoins missing from the Mt. Gox exchange.

**RESPONSE:** Denied.

11. Admit that at or around the time You began to work with Mt. Gox, You understood that there were around 80,000 bitcoins missing from the Mt. Gox exchange.

**RESPONSE:** Denied.

12. Admit that at or around the time You began to work with Mt. Gox, You understood that bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Denied.

13. Admit that at or around the time You began to work with Mt. Gox, You did not tell Mt. Gox Users that bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Denied. *See* Response to Request to Admit No. 12. This request is based on an inaccurate premise.

14. Admit that after You began to work with Mt. Gox and continuing through February 2014, You did not tell Mt. Gox Users that, in 2011, bitcoins had been transferred from

01172025v1

the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Denied. *See* Response to Request to Admit No. 12. This request is based on an inaccurate premise.

15. Admit that at or around the time You began to work with Mt. Gox, You did not publicly disclose that bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Denied. *See* Response to Request to Admit No. 12. This request is based on an inaccurate premise.

16. Admit that after You began to work with Mt. Gox and continuing through February 2014, You did not publicly disclose that, in 2011, bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Admitted.

17. Admit that at or around the time You began to work with Mt. Gox, You did not tell other Mt. Gox employees that bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Karpeles admits that at or around the time he began to work with Mt. Gox, he did not tell other Mt. Gox employees that bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization because there were no other Mt. Gox employees at that time.

18. Admit that after You began to work with Mt. Gox and continuing through February 2014, You did not tell other Mt. Gox employees that, in 2011, bitcoins had been transferred from the bitcoin client running on the Mt. Gox server to an outside bitcoin address without authorization.

**RESPONSE:** Denied. Some employees were so informed.

19. Admit that at the time You began to work with Mt. Gox, one or more automated "bots" operated on the Mt. Gox exchange and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

01172025v1

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

20. Admit that it is Your understanding that before You began to work with Mt. Gox, Jed McCaleb operated one or more automated "bots" on the Mt. Gox exchange that bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

21. Admit that after the time You began to work with Mt. Gox, one or more automated "bots" operated on the Mt. Gox exchange and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to cover pay for bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

22. Admit that after the time You began to work with Mt. Gox, You operated one or more automated "bots" on the Mt. Gox exchange that bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

23. Admit that after the time You began to work with Mt. Gox and to the best of Your knowledge and belief, no other Mt. Gox employees operated any other automated "bots" on the

Mt. Gox exchange that bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

24. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 10,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

25. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 100,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

26. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 200,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant

clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

27. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 300,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

28. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 400,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

29. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 500,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

30. Admit that after the time You began to work with Mt. Gox, the "bot" or "bots" that operated on the Mt. Gox exchange—and bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full—acquired over 600,000 bitcoins.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

31. Admit that after the time You began to work with Mt. Gox and continuing through February 2014, You did not tell Mt. Gox employees that the exchange operated one or more automated "bots" that ran on the Mt. Gox exchange, which bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

32. Admit that after the time You began to work with Mt. Gox and continuing through February 2014, You did not tell Mt. Gox Users that one or more automated "bots" operated on the Mt. Gox exchange, which bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

33. Admit that after the time You began to work with Mt. Gox and continuing through February 2014, You did not publicly disclose that one or more automated "bots" operated on the Mt. Gox exchange, which bought bitcoin using accounts that were not backed by fiat currency balances sufficient to pay for such bitcoin purchases in full.

**RESPONSE:** Karpeles objects to the premise of this request, which relies on an inaccurate premise about how Mt. Gox worked and therefore would require significant clarification for any further response. It is not capable of a simple and direct response. For this reason, Karpeles denies the allegation.

34.     Admit that in 2011, You stored a portion of Mt. Gox's Users' bitcoin balance in a private bitcoin wallet kept on a computer.

**RESPONSE:**  Admitted.

35.     Admit that in 2011, You had knowledge that an individual removed, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a computer.

**RESPONSE:**  Admitted.

36.     Admit that in 2011, You had knowledge that an individual removed, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a computer after You connected that computer to a network.

**RESPONSE:**  Admitted.

37.     Admit that in 2011, You had knowledge that an individual was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a computer after You connected that computer to a network without using a firewall.

**RESPONSE:** Karpeles admits that, in 2011, he had knowledge that an individual was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance stored in a private bitcoin wallet on a computer. Karpeles denies that he connected a computer containing a private bitcoin wallet to a network without using a firewall.

38.     Admit that You told Kim Nilsson that an individual was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a computer after You connected that computer to a network without using a firewall.

**RESPONSE:** Karpeles objects to Request to Admit 38 on the basis that any conversations he had with Kim Nilsson regarding this subject took place pursuant to a non-disclosure agreement. Karpeles admits that, in 2011, he had knowledge that an individual was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance stored in a private bitcoin wallet on a computer. Karpeles denies that he connected a computer containing a private bitcoin wallet to a network without using a firewall.

39. Admit that You paid the individual—who was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a computer after You connected that computer to a network without using a firewall— to return the bitcoins that he or she removed.

**RESPONSE:** Karpeles admits that Mt. Gox made an offer that the individual could keep some of the bitcoins removed in exchange for returning the remaining bitcoins. Karpeles admits that, in 2011, he had knowledge that an individual was able to remove, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance stored in a private bitcoin wallet on a computer. Karpeles denies that he connected a computer containing a private bitcoin wallet to a network without using a firewall.

40. Admit that storing bitcoins in a private bitcoin wallet on a computer connected to a network without using a firewall is a security risk.

**RESPONSE:** Karpeles admits that storing bitcoins in any form is a security risk. Karpeles denies that he connected a computer containing a private bitcoin wallet to a network without using a firewall.

41. Admit that, to the best of Your knowledge and belief, the facts pertaining to Mt. Gox as described in Kim Nilsson's interview on the "What Bitcoin Did" podcast (which is accessible at https://www.whatbitcoindid.com/podcast/kim-nilssons-on-his-investigation-into-mt-gox) are true.

**RESPONSE:** Karpeles objects to Request to Admit 41 on the basis that it violates the requirement that requests to admit be simple and direct so that they can be readily admitted or denied. *See, e.g., Robinson v. Morgan Stanley*, No. 06 C 5158, 2009 U.S. District LEXIS 93971, at *5-6 (N.D. Ill. Oct. 8, 2009). Mr. Karpeles has not watched listened to a podcast over 1 hour and 9 minutes long, and this is not a simple and direct request that can be readily admitted or denied. Further answering, this request to admit is vague, overly broad and unduly burdensome. This request to admit is not proper, and Mr. Karpeles objects to it in its entirety.

42. Admit that as of 2011 and continuing through February 2014, You did not tell Mt. Gox Users that an individual had removed, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a networked computer.

**RESPONSE:** Admitted.

43. Admit that as of 2011 and continuing through February 2014, You did not tell other Mt. Gox employees that an individual had removed, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a networked computer.

**RESPONSE:** Denied.

44. Admit as of 2011 and continuing through February 2014, You did not publicly disclose that an individual had removed, without authorization, bitcoins from Mt. Gox's Users' bitcoin balance that You stored in a private bitcoin wallet on a networked computer.

**RESPONSE:** Admitted.

45. Admit that as of February 2014, the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox Users' fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Admitted.

46. Admit that as of 2013, the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox Users' fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Karpeles objects that he lacks access to information sufficient to respond to Request to Admit 46 as the information and records necessary to respond are in the possession of the Mt. Gox bankruptcy trustee.

47. Admit that as of 2012, the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox Users' fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Karpeles objects that he lacks access to information sufficient to respond to Request to Admit 47 as the information and records necessary to respond are in the possession of the Mt. Gox bankruptcy trustee.

48. Admit that as of 2011, the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox Users' fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Karpeles objects that he lacks access to information sufficient to respond to Request to Admit 48 as the information and records necessary to respond are in the possession of the Mt. Gox bankruptcy trustee.

49. Admit that You knew Mt. Gox was insolvent at some point prior to February 2014.

**RESPONSE:** Denied.

50. Admit that You knew Mt. Gox was insolvent at some point in 2013.

**RESPONSE:** Denied.

51. Admit that You knew Mt. Gox was insolvent at some point in 2012.

**RESPONSE:** Denied.

52. Admit that You knew Mt. Gox was insolvent at some point in 2011.

**RESPONSE:** Denied.

53. Admit that You knew Mt. Gox was insolvent before you started working with Mt. Gox.

**RESPONSE:** Denied.

54. Admit that at no time prior to February 2014 did You disclose to other Mt. Gox employees that the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox User's fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Denied. Some employees were so informed.

55. Admit that at no time prior to February 2014 did You disclose to Mt. Gox Users that the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox User's fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Karpeles admits that he did not disclose to Mt. Gox Users that the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was

less than the amount of Mt. Gox User's fiat currency holdings reflected in such Users' Mt. Gox accounts prior to February 2014.

56. Admit that at no time prior to February 2014 did You publicly disclose that the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox User's fiat currency holdings reflected in such Users' Mt. Gox accounts.

**RESPONSE:** Karpeles admits that he did not publicly disclose that the amount of Mt. Gox's actual fiat currency holdings (as reflected in Mt. Gox's various bank accounts) was less than the amount of Mt. Gox User's fiat currency holdings reflected in such Users' Mt. Gox accounts prior to February 2014.

57. Admit that Mt. Gox Users' bitcoins were stored in Cold Wallets.

**RESPONSE:** Karpeles admits that some Mt. Gox Users' bitcoins were stored in Cold Wallets but denies that all Mt. Gox Users' bitcoins were stored in Cold Wallets.

58. Admit that You did not monitor or audit Mt. Gox's Cold Wallet bitcoin balances until some date in 2014.

**RESPONSE:** Admitted.

59. Admit that You did not monitor or audit Mt. Gox's Cold Wallet bitcoin balances until some date in 2014 because you knew bitcoins were missing from those balances.

**RESPONSE:** Denied.

60. Admit that You did not monitor or audit Mt. Gox's Cold Wallet bitcoin balances until some date in 2014 because you were concerned that bitcoins were missing from those balances.

**RESPONSE:** Denied.

61. Admit that You had the ability to monitor or audit Mt. Gox's Cold Wallet bitcoin balances before 2014.

**RESPONSE:** Karpeles admits that he had the ability to monitor or audit Mt. Gox's Cold Wallet bitcoin balances before 2014 but states that doing so would put the security of the Cold Wallets at risk.

62. Admit that if You had monitored or audited Mt. Gox's Cold Wallet bitcoin balances before 2014, You would have detected that bitcoins were missing from such Cold Wallet bitcoin balances.

**RESPONSE:** Admitted.

63. Admit that You did not tell other Mt. Gox employees that neither You nor anyone else at Mt. Gox monitored or audited Mt. Gox's Cold Wallet bitcoin balances.

**RESPONSE:** Karpeles denies that he did not tell other Mt. Gox employees that neither he nor anyone else at Mt. Gox monitored or audited Mt. Gox's Cold Wallet bitcoin balances as some Mt. Gox employees were so informed.

64. Admit that You did not tell Mt. Gox Users that neither You nor anyone else at Mt. Gox monitored nor audited Mt. Gox's Cold Wallet bitcoin balances.

**RESPONSE:** Admitted.

65. Admit that You did not publicly disclose that neither You nor anyone else at Mt. Gox monitored or audited Mt. Gox's Cold Wallet bitcoin balances.

**RESPONSE:** Admitted.

66. Admit that You knew, prior to February 2014, that some amount of bitcoins were missing from Mt. Gox's Cold Wallets.

**RESPONSE:** Denied.

    Respectfully submitted,
    Mark Karpeles,

    By: /s/ Matthew J. Schmidt
         One of his attorneys

Bevin M. Brennan
Matthew J. Schmidt
Pedersen & Houpt
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com
Attorney No. 07779

01172025v1

## CERTIFICATE OF SERVICE

    I, Matthew J. Schmidt, an attorney, on oath state that I caused copies of the foregoing **DEFENDANT MARK KARPELES' RESPONSES TO PLAINTIFF GREGORY GREENE'S FIRST SET OF REQUESTS TO ADMIT FACTS** to be served upon the following via e-mail on October 18, 2019:

Benjamin S. Thomassen
Aaron Lawson
EDELSON PC
350 North LaSalle Street,
13th Floor Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378
bthomassen@edelson.com
alawson@edelson.com

                                                    /s/ Matthew J. Schmidt
                                                      Matthew J. Schmidt