# Exhibit AB

The Honorable Marsha J. Pechman

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COINLAB, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>MT. GOX KK, a Japanese corporation, and<br>TIBANNE KK, a Japanese corporation,<br><br>Defendants. | No. 2:13-cv-00777-MJP<br><br>**ANSWER AND COUNTERCLAIM** |

**PREFATORY STATEMENT**

In the following Answer and Counterclaims, Defendants MtGox KK ("MtGox") and Tibanne KK ("Tibanne") are answering the Complaint filed by CoinLab, Inc. ("CoinLab") and asserting Counterclaims against CoinLab. As set forth in more detail below, the claims asserted by CoinLab in its Complaint are without merit and should be dismissed by the Court. These claims arise out of the November 22, 2012 Exclusive License Agreement for the USA and Canada ("the Agreement") between the parties and that Agreement expressly provided that by March 22, 2013 CoinLab was to be compliant with all federal and state statutes, rules and regulations which govern the Bitcoin exchange services that CoinLab was to provide under the Agreement. To perform the Bitcoin exchange services in the United States called

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 1

for under the Agreement, CoinLab was required to be registered and licensed with the federal government and most of the states as a money transmitter. The Agreement is void and unenforceable, and is subject to rescission, because CoinLab failed and refused to become so registered and licensed, and, the Agreement, if performed by CoinLab, would have been unlawful -- if MtGox had continued to perform under the Agreement and transferred customer accounts to CoinLab, such that CoinLab was engaging in Bitcoin exchange services in the US, CoinLab would have been acting in violation of federal and state law, to the prejudice of the MtGox customers. MtGox has rescinded the Agreement.

In their Counterclaims MtGox and Tibanne are requesting that the Court, among other things, adjudge and declare that the Agreement is void *ab initio* and unenforceable in light of CoinLab's failure to be properly registered and licensed; and, in light of the rescission of it, to order CoinLab to return to MtGox all benefits that CoinLab received under the Agreement, including the amounts of USD $62,258.70, CAD $ 40.00 and 1428.81263537 Bitcoins.

In addition, and separate and apart from the Agreement, CoinLab has wrongfully converted the amount of $5,315,210.79 in MtGox customer deposits. MtGox is asking the Court to impose a constructive trust over such amounts, to order an accounting, and to enter judgment against CoinLab for all damages suffered by MtGox as a result of such conversion.

## **ANSWER**

Defendants MtGox KK ("MtGox") and Tibanne KK ("Tibanne") (collectively "Defendants"), by and through their undersigned attorneys, hereby answer the Complaint. The allegations in the following paragraphs 1-57 are directed to the corresponding paragraphs 1-57 of the Complaint, respectively.

1. As to the first sentence of this paragraph, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations and on such basis deny them; and, further allege that Defendants have not breached the exclusive license agreement referred to in the first sentence. As to the second sentence, Defendants admit that

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 2

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1   MtGox is among the world's largest providers of Bitcoin exchange services; as to the

2   remaining allegations in this sentence, Defendants lack knowledge or information sufficient to

3   form a belief about the truth of said allegations and on such basis deny them.  As to the third

4   sentence of this paragraph, Defendants admit that in November 2012 CoinLab and Defendants

5   entered into the Exclusive License Agreement for the USA and Canada ("the Agreement")

6   and that a copy of it is attached as Exhibit A to the Complaint; that the terms of the

7   Agreement are set forth in the Agreement itself; and, except as so admitted, deny the

8   allegations of this sentence.  As to the fourth sentence of this paragraph, Defendants admit

9   that under the Agreement CoinLab was "…to manage and market the exchange services in

10  North America…"; except as so expressly admitted Defendants deny the allegations of this

11  sentence.

12          2.      As to the first and third sentences of this paragraph Defendants admit that,

13  because of CoinLab's failure to comply with the state and federal laws and regulations that

14  apply to the Bitcoin exchange services that CoinLab was to provide under the Agreement,

15  MtGox ceased performing under the Agreement, and providing CoinLab with account

16  reconciliation data, server access, and other information called for under the Agreement

17  because Defendants' performance was excused by such breaches by CoinLab; and, except as

18  so admitted and alleged, Defendants deny the allegations of these sentences.  As to the second

19  sentence, Defendants admit that persons in North America have continued to use the website

20  at www.mtgox.com to effectuate the purchase and sale of Bitcoin; and, except as so admitted

21  Defendants lack knowledge or information sufficient to form a belief about the truth of the

22  allegations in said sentence and on such basis deny them.  Defendants allege that they lack

23  knowledge or information sufficient to form a belief about the truth of the allegations and on

24  such basis deny them.  Defendants deny the allegations of the fourth sentence of this

25  paragraph.  As to the fifth sentence, Defendants lack knowledge or information sufficient to

26  form a belief about the truth of said allegations and on such basis deny them.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 3

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

3.      Defendants admit the allegations of the first, second and third sentences of this paragraph.  As to the fourth sentence, Defendants admit that CoinLab is alleging damages in excess of $75 million; Defendants deny that CoinLab has been damaged in such amount or any amount at all, as a result of the acts of Defendants; and, further deny that CoinLab is entitled to any recovery or remedy in this action.

4.      Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations of this paragraph and on such basis deny them.

5.      Admitted.

6.      Defendants admit that in November 2012 they and CoinLab entered into the Agreement and that a true and accurate copy of the Agreement is attached as Exhibit A to the Complaint.  Except as so expressly admitted, Defendants deny the allegations of this paragraph.

7.      Defendants admit that section 10.E. of the Agreement provided in pertinent part, as follows—"The parties hereby irrevocably consent to the personal jurisdiction of and venue in the state and federal courts located in King County, Washington with respect to any action, claim or proceeding arising out of or relating to this Agreement."  Except as expressly admitted, Defendants deny these allegations of this paragraph.

8.      Admitted.

9.      As to the first sentence of this paragraph, Defendants admit that Bitcoin were first mined in 2009, since that time over 11 million Bitcoin that have been mined, and since 2009 the acceptance and use of Bitcoin has increased substantially; the term "most successful" is vague and subjective and, therefore, except as so admitted, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in said sentence.  As to the second sentence, Defendants admit that Bitcoin were first described in a paper on the Internet in 2008 and that the first Bitcoin were mined in 2009; except as so admitted Defendants lack knowledge or information sufficient to form a belief about the truth

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 4

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1  of the allegations in said sentence and on such basis deny them.  As to the third and fourth

2  sentences of this paragraph, Defendants admit that Bitcoin are not issued by any government,

3  that Bitcoin are created and mined through a peer-to-peer network over the Internet, that

4  cryptography is used in an attempt to protect the security of the Bitcoin system and in an

5  attempt to prevent counterfeiting; and, except as so admitted Defendants lack knowledge or

6  information sufficient to form a belief about the truth of the allegations in said sentences and

7  on such basis deny them.

8          10.     As to the first sentence of this paragraph, Defendants lack knowledge or

9  information sufficient to form a belief about the truth of the allegations and on such basis

10  deny them.  Defendants admit the allegations in the second, third and fourth sentence of this

11  paragraph.

12          11.     As to the first sentence of this paragraph, Defendants admit that Bitcoin

13  exchange services can involve a customer purchasing Bitcoin with "fiat" or "sovereign"

14  currency, or a customer selling Bitcoin for "fiat" or "sovereign" currency.  Except as so

15  expressly admitted Defendants lack knowledge or information sufficient to form a belief

16  about the truth of the allegations and on such basis deny them.  As to the second sentence,

17  Defendants admit that the annualized volume of Bitcoin transactions conducted over

18  exchanges can be estimated by reviewing certain resources, and, making estimates of market

19  rates is also possible with certain resources, but Defendants have not done such estimates "as

20  of April 2013"; and, except as so admitted Defendants lack knowledge or information

21  sufficient to form a belief about the truth of the allegations in said sentences and on such basis

22  deny them.

23          12.     Defendants admit that Bitcoins are not a traditional fiat based currency; and,

24  that persons and entities that are involved in certain types of Bitcoin services and transactions

25  in the United States are subject to regulation by the United States Financial Crimes

26  Enforcement Network ("FinCEN"), subject to limits on the jurisdiction of FinCEN.  Except as

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 5

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

so expressly admitted, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in said sentences and on such basis deny them.

13.    Admitted.

14.    As to the first and second sentences of this paragraph, Defendants admit that MtGox provides Bitcoin exchange services via the internet and that MtGox operates an interactive website available at https://mtgox.com/; Defendants deny that Defendant Tibanne engages in such activities.  As to the third sentence of this paragraph, Defendants admit that once a customer opens an account with MtGox, provides certain customer information requested by MtGox, and deposits currency into such account, such customer can use the website (referred to in this paragraph as "the MtGox website") to purchase Bitcoin from other MtGox customers; except as so expressly admitted Defendants deny the allegations of this sentence.  As to the fourth sentence, Defendants admit that MtGox has been reported to be the largest operating Bitcoin exchange in the world; and, except as so admitted Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in said sentence and on such basis deny them.

15.    As to the first sentence, Defendants allege they lack knowledge or information sufficient to form a belief about the truth of the allegations and on such basis deny them. Defendants deny the second sentence of this paragraph.  As to the third and fourth sentences of this paragraph, Defendants deny that CoinLab adhered "…to applicable regulatory frameworks…"; as to the remaining allegations Defendants allege they lack knowledge or information sufficient to form a belief about the truth of the allegations and on such basis deny them.

16.    Defendants deny that CoinLab was properly registered with FinCEN as of the time relevant under the Agreement; as to the other allegations in this paragraph Defendants allege they lack knowledge or information sufficient to form a belief about the truth of the allegation and on such basis deny them.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 6

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

17.    Defendants admit that in November 2012 CoinLab and Defendants entered into the Agreement and that Exhibit A to the Complaint is a true and accurate copy of the Agreement.  Except as so expressly admitted, Defendants deny the allegations of this paragraph.

18.    Defendants admit that MtGox currently has no established banking relationships in North America.  Except as so expressly admitted, Defendants deny the allegations of this paragraph.

19.    Denied.

20.    Defendants admit that under section 1.B. and C. of the Agreement CoinLab was granted "…an exclusive, non-transferable royalty-free license to the Licensed Materials for use to provide the Services within the United States of America and Canada (collectively the "Territory"), effective during the Term (as defined herein below) and on the terms and conditions set forth in this Agreement. …"; and further allege that the term "Licensed Materials" is defined in section 1.B. of the Agreement.  Except as so expressly admitted and alleged Defendants deny the allegations in this paragraph.

21.    Defendants admit that section 1.F.1 of the Agreement provides as follows:

> "During the Term, MtGox and Tibanne shall not grant anyone
> the right to use the Licensed Materials to provide the Services,
> or any part thereof, in the Territory.  The exclusivity granted
> herein shall apply strictly to Services targeting the Territory and
> the CoinLab Customers (as defined below) and advertised and
> sold as such. It shall not include the provision of Services to
> users of the Services who, depending on the interpretation or
> circumstances, may or may not be considered CoinLab
> Customers."

Except as expressly admitted Defendants deny the allegations of this paragraph.

22.    Defendants admit that the Agreement set forth those responsibilities imposed on CoinLab with respect to managing and marketing the Services in the Territory, and that under the Agreement CoinLab was to "assume responsibility for managing and marketing"

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 7

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

the Bitcoin exchange services in the United States and Canada.' Except as so expressly admitted Defendants deny the allegations in this paragraph.

23.    Defendants admit that the Agreement provided that a breach of section 1.F.1 "…shall be considered a material breach of this Agreement." Except as so expressly admitted Defendant deny the allegations in this paragraph.

24.    Defendants deny the allegations in this paragraph, including denying that they have "breached the exclusivity provisions of the Agreement", including section 1.F.1; and, further denying that any interaction between MtGox and MtGox customers in the United States and Canada after the effective date of the Agreement constitutes a breach of any provision of the Agreement.

25.    Denied.

26.    As to the first sentence of this paragraph, Defendants admit that since the parties entered into the Agreement in November 2012, users located in the United States and Canada have used the www.mtgox.com website to effectuate purchases and/or sales of Bitcoin; Defendants deny that such conduct constitutes a breach of any provision of the Agreement; and, except as so admitted and denied, Defendants lack knowledge or information sufficient to form a belief about the truth to the allegations of such sentence and on such basis deny them. Defendants deny the second sentence of this paragraph.

27.    Defendants admit that: the Agreement provided that the term CoinLab Customers "…mean all current and future users of the Services who are citizens of either the United States of America or Canada or that can be identified as such from identification documents provided to MtGox or CoinLab."; the Agreement provides for a Transition Period that is to expire on March 22, 2013; and, the Agreement provides that MtGox and CoinLab were to cooperate in transferring the Liquidity Funds as defined in section 3.C. of the Agreement by the expiration of such Transition Period. Except as so expressly admitted Defendant deny the allegations of this paragraph.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 8

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

28.     Defendants admit that:  by March 22, 2013 MtGox had not deposited all Bitcoins and other funds of the MtGox customers that were the subject of the Agreement into an account or accounts controlled by CoinLab; MtGox did not do so because CoinLab was not compliant with those laws applicable to the Services that CoinLab was to provide under the Agreement; and, that any alleged "duty" on the part of MtGox to so deposit or transfer the Bitcoins and funds of the "CoinLab Customers" is void *ab initio* and not enforceable and/or was legally excused.  Except as so expressly admitted Defendants deny the allegations of this paragraph.

29.     Defendants admit that section 2 of the Agreement set forth the operational responsibilities of MtGox under the Agreement.  Except as so expressly admitted Defendants lack knowledge or information sufficient to form a belief about the truth to the allegations of such paragraph and on such basis deny them.

30.     Defendants admit that Defendants ceased performing under the Agreement because CoinLab failed and refused to comply with the laws and regulations applicable to the Bitcoin exchange services it was to provide under the Agreement by the March 22, 2013 expiration of the Transition Period; and, that in light of CoinLab's failure the duties of Defendants under the Agreement are void *ab initio* and unenforceable and/or legally excused. Except as so expressly admitted, Defendants deny the allegations of this paragraph.

31.     Defendants admit that section 2.E. of the Agreement provided as follows:

> "Before completion of the Transition Period, MtGox shall deliver all passwords, Yubikeys, administrative logins and any other security information required so that CoinLab may assume operation of the services under the terms of this Agreement."

Except as so expressly admitted Defendants deny the allegations of this paragraph.

32.     Defendants admit that: by March 22, 2013 MtGox had not delivered all passwords, Yubikeys, administrative logins and other security information so that CoinLab

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 9

1  could assume operation of the Services for the MtGox customers that were to be transferred to

2  CoinLab under the Agreements; MtGox did not make such deliveries because CoinLab was

3  not compliant with those laws applicable to the Services that CoinLab was to provide under

4  the Agreement; and, that any alleged duty on the part of MtGox in this regard is void *ab initio*

5  and not enforceable and/or was legally excused.  Except as so expressly admitted Defendants

6  deny the allegations of this paragraph.

7       33.      Defendants admit that section 2.G. of the Agreement set forth the duties of

8  MtGox with respect to access to MtGox databases and other related records and data

9  pertaining to any and all customer accounts to have been managed by CoinLab under the

10  Agreement.  Except as so expressly admitted Defendants deny the allegations of this

11  paragraph.

12      34.      Defendants admit that MtGox had stopped allowing access to CoinLab of

13  MtGox's databases and other related records and data pertaining to the MtGox customers that

14  were to be transferred to CoinLab under the Agreements; MtGox did so because CoinLab had

15  failed to provide evidence that such customers had agreed to CoinLab's Terms of Service;

16  and, CoinLab was not compliant with those laws applicable to the Services that CoinLab was

17  to provide under the Agreement; and, that any alleged duty on the part of MtGox in this

18  regard is void *ab initio* and not enforceable and/or was legally excused.  Except as so

19  expressly admitted Defendants deny the allegations of this paragraph.

20      35.      Defendants admit that section 3.A., of the Agreement defined the term

21  "CoinLab Customers" but deny that the allegations of this paragraph accurately characterize

22  such provisions; Defendants admit that section 4.A. of the Agreement provided for the

23  splitting of revenue that is "…derived from fees, commissions or other payment [sic] charged

24  to CoinLab Customers in relation to the Services during the Term (a "**Revenue**"), …" but

25  deny that the allegations of this paragraph accurately characterize such provisions.  Except as

26  so expressly admitted Defendants deny the allegations of this paragraph.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 10

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

36.     Defendants admit that:  MtGox stopped engaging in the splitting or sharing of Revenue as called for under the Agreement; MtGox did so because CoinLab was not compliant with those laws applicable to the Services that CoinLab was to provide under the Agreement; and, that any alleged duty on the part of MtGox in this regard is void *ab initio* and not enforceable and/or was legally excused.  Except as so expressly admitted Defendants deny the allegations of this paragraph.

37.     Defendants admit that:  under the agreement the term "CoinLab Customers" meant "…all current and future users of the Services who are citizens of either the United States of America or Canada or that can be identified as such from identification documents provided to Mt. Gox or CoinLab."; the Agreement provided for a Transition Period that is to expire on March 22, 2013; and, under the Agreement MtGox and CoinLab were to cooperate in transferring the Liquidity Funds as defined in section 3.C. of the Agreement by the expiration of the Transition Period.  Except as so expressly admitted Defendant deny the allegations of this paragraph.

38.     Defendants admit that: MtGox stopped depositing Bitcoins and other funds of the MtGox customers that were to be transferred to CoinLab under the Agreement into an account or accounts controlled by CoinLab; MtGox did so because CoinLab was not compliant with those laws applicable to the Services that CoinLab was to provide under the Agreement; and, that any alleged duty on the part of MtGox to so deposit or transfer the Bitcoin and funds is void *ab initio* and not enforceable and/or was legally excused.  Except as so expressly admitted Defendants deny the allegations of this paragraph.

39.     Defendants admit that section 4.B. of the Agreement set forth the parties' duties with respect to reconciling revenue and customer trade imbalances; and, deny that the allegations in paragraph 39 accurately set forth the duties reflected in section 4.D.  Except as so expressly admitted Defendants deny the allegations of this paragraph.

40.     Defendants admit that MtGox stopped engaging in the process called for under

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 11

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    the Agreement for the reconciling revenue and customer trade imbalances; MtGox did so

2    because CoinLab was not compliant with those laws applicable to the Services that CoinLab

3    was to provide under the Agreement; and, that any alleged duty on the part of MtGox in this

4    regard is void *ab initio* and not enforceable and/or was legally excused.  Except as so

5    expressly admitted Defendants deny the allegations of this paragraph.

6         41.    Defendants admit that section 5.E. of the Agreement set forth the duties of the

7    parties with respect to post-termination receipt of trailing revenues.  Except as so expressly

8    admitted Defendants deny the allegations of this paragraph and further deny that it accurately

9    sets forth the provisions of section 5.E.

10        42.    Denied.

11        43.    Denied.

12        44.    Denied.

13        45.    Denied.

14        46.    Defendants reallege and reincorporate their responses to paragraphs 1-45

15    above as if fully set forth herein.

16        47.    Denied.

17        48.    Defendants deny that they breached the Agreement in any manner, including

18    the manner set forth in paragraph 48, subparagraphs B [sic] through I.  Defendants further

19    allege that any alleged duties to perform any of the acts referred to paragraph 48 are void *ab*

20    *initio* and not enforceable and any alleged failure to perform them was excused because of

21    CoinLab's prior breaches and/or failures to perform and/or failure of consideration.

22        49.    Defendants deny the allegations of this paragraph and further deny that

23    CoinLab has suffered actual damages or any damages in any amount, or at all.

24        50.    Defendants reallege and reincorporate their responses to paragraphs 1-49,

25    above, as if fully set forth herein.

26        51.    Defendants lack knowledge or information sufficient to form a belief about the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 12

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

truth of the allegations and on such basis deny them.

52.     Defendants deny that they breached the Agreement in any manner, including the manner set forth in paragraph 52, subparagraphs A through H.  Defendants further allege that any alleged duties to perform any of the acts referred to paragraph 52 are void *ab initio* and not enforceable and any alleged failure to perform them was excused because of CoinLab's prior breaches and/or failures to perform and/or failure of consideration.

53.     Defendants deny the allegations of this paragraph and further deny that CoinLab has suffered actual damages or any damages in any amount, or at all.

54.     Defendants reallege and reincorporate their responses to paragraphs 1-53, above, as if fully set forth herein.

55.     Denied.

56.     Defendants admit that in February 2013 counsel for CoinLab notified MtGox that CoinLab was going to exercise its audit rights under the Agreement; however, CoinLab did not pursue such audit and Defendants are informed and believe that CoinLab did not so proceed because Defendants provided the information then being requested by CoinLab.  Except as so expressly admitted, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations and on such basis deny them.

57.     Defendants deny the allegations in this paragraph.  Defendants further allege that the duties called for under the Agreement and which are referred to in this paragraph are void *ab initio* and unenforceable and any alleged breaches of such duties were excused because of CoinLab's prior breaches and/or failures to perform and/or failure of consideration.

58.     Responding to the allegations at page 11, lines 10-20 of the Complaint, Defendants deny that: CoinLab is entitled to any judgment in its favor; CoinLab has been damaged in any amount, or at all; or, that CoinLab is entitled to any relief from this Court.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 13

**AFFIRMATIVE DEFENSES**

By way of further answer and for their affirmative defenses Defendants allege as follows:

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Claim)**

59.     As a first affirmative defense to the Complaint and to each cause of action, Defendants allege that Plaintiff has failed to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

**(Illegality)**

60.     As a second affirmative defense to the Complaint and to each cause of action, Defendants allege that because CoinLab was not, and is not, registered or licensed under applicable money services business and/or money transmitter business ("MTB") statutes the Agreement is illegal, void *ab initio* and unenforceable; and, as set forth in the attached Counterclaim has been rescinded.

**THIRD AFFIRMATIVE DEFENSE**

**(Failure of Consideration)**

61.     As a third affirmative defense to the Complaint and to each cause of action, Defendants allege that because CoinLab was not, and is not, registered or licensed under applicable money services business and/or MTB statutes there is a failure of consideration and the Agreement; and, as set forth in the attached Counterclaim, has been rescinded.

**FOURTH AFFIRMATIVE DEFENSE**

**(Material Breach)**

62.     As a fourth affirmative defense to the Complaint and to each cause of action, Defendants allege that because CoinLab was not, and is not, registered or licensed under applicable money services business and/or MTB statutes there has been a material breach and the Agreement; and, as set forth in the attached Counterclaim has been rescinded.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 14

**FIFTH AFFIRMATIVE DEFENSE**

**(Fraud)**

63.    As a fifth affirmative defense to the Complaint and to each cause of action, Defendants allege that CoinLab made an express promise that it would "…operate the Services in the Territory in compliance with all applicable laws…", which laws included the MTB laws and regulations of the states in which MtGox had customers and that when it made such promise CoinLab had no intent to be so compliant; and, as set forth in the attached Counterclaim the Agreement has been rescinded.

**SIXTH AFFIRMATIVE DEFENSE**

**(Mistake)**

64.    As a sixth affirmative defense to the Complaint and to each cause of action, Defendants allege that Defendants were induced to enter into the Agreement by virtue of mistake.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Excuse of Performance)**

65.    As a seventh affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*, unenforceable and/or rescinded, Defendants allege that any performance on their part alleged to be due by virtue the Agreement is excused by virtue of CoinLab's breaches and/or failure of consideration of the Agreement.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Failure to Perform Obligations)**

66.    As an eighth affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*,

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 15

1   unenforceable and/or rescinded Defendants allege that any alleged failure of Defendants to

2   perform their obligations resulted from CoinLab's failure to perform its obligations, and the

3   performance on CoinLab's part of its obligations was a condition precedent to, or a condition

4   concurrent with, the performance of Defendants' obligations.

5                          **NINTH AFFIRMATIVE DEFENSE**

6                                **(Impossibility)**

7          67.    As a ninth affirmative, and alternative, defense to the Complaint and to each

8   cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable

9   and/or rescinded, if the Court determines that the Agreement is not void *ab initio*,

10  unenforceable and/or rescinded Defendants allege that the performance on Defendants' part

11  was excused and/or extinguished because of impossibility.

12                         **TENTH AFFIRMATIVE DEFENSE**

13                               **(Termination)**

14         68.    As a tenth affirmative, and alternative, defense to the Complaint and to each

15  cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable

16  and/or rescinded, if the Court determines that the Agreement is not void *ab initio*,

17  unenforceable and/or rescinded Defendants allege that the Agreement has been terminated

18  and any performance on Defendants' part is excused and/or extinguished.

19                       **ELEVENTH AFFIRMATIVE DEFENSE**

20                                 **(Estoppel)**

21         69.    As an eleventh affirmative, and alternative, defense to the Complaint and to

22  each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable

23  and/or rescinded, if the Court determines that the Agreement is not void *ab initio*,

24  unenforceable and/or rescinded, Defendants allege that CoinLab's claims are barred by the

25  doctrine of estoppel.  Among other things, CoinLab represented, promised and warranted to

26  be compliant with all laws and regulations applicable to the Bitcoin exchange services it was

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 16

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

to provide under the Agreement; Defendants relied on such representations, promises and warranties in entering into the Agreement and would not have entered into the Agreement had they known that CoinLab was not so compliant and would not be so compliant.  In addition, CoinLab represented, promised and agreed to perform other acts which Defendants relied upon and CoinLab is estopped to claim one or more of the alleged breaches because of CoinLab's failure to perform them As a result of these facts and others, CoinLab is estopped to assert the claims alleged in the Complaint.

## TWELFTH AFFIRMATIVE DEFENSE

### (Waiver)

70.     As an twelfth affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*, unenforceable and/or rescinded, Defendants allege that CoinLab's claims are barred by the doctrine of waiver.  Among other things, by promising, representing and warranting to be compliant with all laws and regulations applicable to the Bitcoin exchange services it was to provide under the Agreement.  And, in section 9 of the Agreement CoinLab expressly waived the claims for damages it is asserting in this case.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Liquidated Damages Clause Void and Unenforceable)

71.     As a thirteenth affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*, unenforceable and/or rescinded, Defendants allege that liquidated damages provisions of section 1.K., of the Agreement are void and unenforceable.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 17

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Damages Barred by Section 9 of the Agreement)**

72.     As a fourteenth affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*, unenforceable and/or rescinded, Defendants allege that CoinLab's claim for damages are barred by section 9 of the Agreement which prohibits CoinLab from seeking "indirect, incidental or consequential damages in connection with this Agreement, including, without limitation damages relating to the loss of profits, income or goodwill, even if aware of the possibility of such damages."

**FIFTEENTH AFFIRMATIVE DEFENSE**

**(Unclean Hands)**

73.     As a fifteenth affirmative, and alternative, defense to the Complaint and to each cause of action, and without waiving that the Agreement is void *ab initio*, unenforceable and/or rescinded, if the Court determines that the Agreement is not void *ab initio*, unenforceable and/or rescinded, Defendants allege that Plaintiff's claims are barred by the doctrines of unclean hands and/or inequitable conduct.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 18

**COUNTERCLAIM**

1   Defendants MtGox KK ("MtGox") and Tibanne KK ("Tibanne") (collectively

2   "Defendants"), for their Counterclaims against Plaintiff CoinLab, Inc. ("CoinLab"), allege as

3   follows:

## I.   INTRODUCTION

1.   Bitcoin was first created, or "mined", in 2009.  Initially, the numbers of
Bitcoins and Bitcoin owners were small and its uses were limited.  Since 2009, over 11
million Bitcoins have been mined and Bitcoin has experienced significantly increased
acceptance and use in several countries as an alternate to "fiat" or traditional currencies,
including the United States.  Along with such growth and increased usage Bitcoins, Bitcoin
services and transactions, and the persons and entities involved in such services and
transactions, have been subjected to regulation in the United States, both by the federal
government and most states.  In this regard federal and state regulators have held that the
regulatory requirements that apply to money services businesses and money transmission
businesses ("MTBs") apply to persons and entities engaged in various types of Bitcoin
transactions and services.

2.   In November 2012 the parties to this action, that is, CoinLab, MtGox and
Tibanne, entered into an agreement called the "Exclusive License Agreement for the USA and
Canada" ("the Agreement"), a copy of which is attached as Exhibit A to the Complaint.
Under the Agreement CoinLab was to provide certain Bitcoin exchange services in the United
States and Canada to MtGox customers who were U.S. or Canadian citizens.  One of the
express conditions of that Agreement was that by the March 22, 2013 expiration of the
"Transition Period" under the Agreement, CoinLab was to be compliant with all laws and
regulations applicable to the Bitcoin exchange services that it was to provide under the
Agreement; such compliance would have required, among other things, that CoinLab be
registered as a MTB under federal law and licensed as an MTB in each of the states that it

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 19

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1   would be conducting Bitcoin exchange services.  As of March 22, 2013 CoinLab was not so

2   registered or licensed and CoinLab is still not licensed in almost every state in which it would

3   have been providing Bitcoin exchange services under the Agreement.  As a result, MtGox and

4   Tibanne have rescinded the Agreement.

5           3.      Defendants are bringing these Counterclaims for declarations, judgments and

6   orders as follows:

7                   a.      That the Court adjudge, decree, declare and order that the Agreement is

8   void *ab initio* and unenforceable.  Under such Agreement CoinLab agreed and promised it

9   would be compliant with all laws applicable to the Bitcoin exchange services that it was to

10  provide under the Agreement yet CoinLab was not, and is not, compliant with the money

11  transmitter and/or money services business laws of most, if not all, of the states in which it

12  would be performing such services.  As a result, it would be unlawful for CoinLab to perform

13  such services and the Agreement is void *ab initio* and unenforceable.  And, alternatively and

14  without prejudice to the above,

15                  b.      That the Court enter judgment that the Agreement has been rescinded

16  and that CoinLab be ordered to provide restitution to Defendants of all benefits that CoinLab

17  received under the Agreement, including, but not limited to the amount of USD $62,258.70

18  and CAD $40.00 that was paid to CoinLab under section 4 of the Agreement; and, the amount

19  of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the Agreement.  And,

20  alternatively and without prejudice to the above,

21                  c.      That the Court adjudge, decree, declare and order that the "liquidated

22  damages" provisions of section 1.K., of the Agreement are void and unenforceable.  And,

23  alternatively, and without prejudice to the above,

24                  d.      Separate and apart from the Agreement, that the Court impose a

25  constructive trust, order an accounting and enter judgment against CoinLab for damages, and

26  all other appropriate relief, for CoinLab's misrepresentation, conversion and wrongful

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 20

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    retention of MtGox customer funds in the amount of $ 5,315,210.79, plus interest.

2    Defendants are informed and believe that in March and April, 2013 MtGox customers, at the

3    suggestion of CoinLab, deposited $12,788,701.08 into one or more CoinLab bank accounts;

4    CoinLab then caused the amount of such funds to be credited to such customers' MtGox

5    accounts but CoinLab did not transfer the actual funds into the MtGox bank account.  As a

6    result, such customers' MtGox account reflected a higher amount of currency funds available

7    to such customers than were actually in the MtGox bank account.  In April, 2013, and upon

8    the demand of MtGox, CoinLab transferred a portion of those amounts, $ 7,473,490.29, to the

9    MtGox bank account, leaving a balance of approximately $ 5,315,210.79 to be transferred to

10    the MtGox account and which is being wrongfully held by CoinLab.

## II.     JURISDICTION AND VENUE

12         4.       Jurisdiction is proper in this Court under 28 U.S.C. § 1332 and 2201.  On

13    information and belief, CoinLab is a resident of Delaware and Washington State.  Defendants

14    MtGox and Tibanne are residents of Japan.  CoinLab has alleged damages under the

15    Agreement in excess of $75,000,000.00 excluding interest, attorneys' fees and costs.  In these

16    Counterclaims, MtGox and Tibanne are seeking restitution of amounts that have a dollar

17    value in excess of $200,000, a constructive trust over sums in excess of $5 Million, and

18    damages according to proof.  And, Defendants are seeking declaratory relief as alleged herein.

19         5.       On information and belief, CoinLab is a Delaware corporation with its

20    principal place of business in King County Washington.

21         6.       MtGox and Tibanne are corporations organized under the laws of Japan with

22    their principal places of business in Tokyo, Japan.

23         7.       Section 10.E. of the Agreement provides, in pertinent part, that "[t]he parties

24    hereby irrevocably consent to the personal jurisdiction of and venue in the state and federal

25    courts located in King County, Washington with respect to any action, claim or proceeding

26    arising out of or relating to this Agreement."

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 21

### III.    FACTUAL BACKGROUND

**A.    The Parties.**

8.      MtGox is a Japanese corporation headquartered in Shibuya ward, Tokyo, Japan.  MtGox hosts and operates the website at http://www.mtgox.com ("the mtgox.com website").  Such website allows persons to open an account and to effectuate the purchase or sale of Bitcoin with other MtGox customers.  Such MtGox customers are located in numerous countries around the world.

9.      Tibanne is a Japanese corporation headquartered in Shibuya ward, Tokyo, Japan.  Tibanne is the parent corporation of MtGox.

10.     On information and belief, as of November 22, 2012 CoinLab was engaged in the business of Bitcoin business incubation as well as offering Bitcoin mining services for companies.  On information and belief CoinLab is currently engaged in the business of "incubating" Bitcoin companies.  At all relevant times Peter Vessenes ("Vessenes") has been CEO of CoinLab.

11.     Upon information and belief, CoinLab is a founding member of the Bitcoin Foundation.  Upon information and belief, the Bitcoin Foundation was formed in 2012 and its members consist of persons and entities that all work in companies using or promoting Bitcoins.  According to its website at https://bitcoinfoundation.org/, the purpose of the Bitcoin Foundation is to promote Bitcoins and the wider acceptance of Bitcoins.  Since its founding, and up to at least May, 2013 Vessenes has been chairman of the Bitcoin Foundation.

**B.    Bitcoin Exchange Business At Issue in this Action.**

12.     Bitcoin was first created, or "mined", in 2009.  Since 2009, when the first Bitcoin was mined, over 11 million Bitcoins have been mined and Bitcoin has experienced significantly increased acceptance and use in several countries as an alternate to "fiat" or traditional currencies, including the United States.

13.     On information and belief, the website that became mtgox.com website was

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 22

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1   created by an individual named Jed McCaleb in approximately 2007 as a cards online

2   exchange for the game "Magic: The Gathering." At that time it was not an online Bitcoin

3   exchange. In approximately 2010 it changed into the Bitcoin online exchange which is now

4   the mtgox.com website. In March 2011 Tibanne purchased the mtgox.com website and in

5   August 9, 2011 MtGox was formed as a separate corporation and subsidiary of Tibanne; at

6   that point MtGox commenced hosting and operating the mtgox.com website.

7          14.     The mtgox.com website allows persons who have a MtGox account to

8   purchase and sell Bitcoins for "fiat" currency with other MtGox account holders. To engage

9   in such exchange transactions through the website a person must first open an account at

10  MtGox to become a MtGox customer; then he/she must undergo an anti-money laundering

11  ("AML") verification process and then can deposit Bitcoin or currency in such account. At

12  that point the customer can effectuate a Bitcoin purchase transaction. Currency funds

13  deposited by MtGox customers, or credited to such customers as a result of selling Bitcoin,

14  are maintained in a bank account opened and maintained by MtGox. The main bank account

15  is in Japan. Bitcoin credited to such customers in their MtGox account are stored by MtGox

16  in a series of bitcoin "wallets" held by MtGox. Customers can withdraw such currency funds

17  and Bitcoin by communicating such instructions through the mtgox.com website.

18         15.     The United States and approximately 47 states have statutes and/or regulations

19  which regulate the "money services business." One of the types of "money services business"

20  regulated by such federal and state statutes and regulations is the "money transmission

21  business" or "MTB." Persons or entities which are engaged in the MTB are often referred to

22  as "money transmitters." At the federal level, the "money services business," including MTB,

23  is regulated by the Department of the Treasury, primarily through an agency called the

24  Financial Crimes Enforcement Network ("FinCEN"). Such money services businesses are

25  regulated under the federal Bank Secrecy Act ("BSA"), 31 U.S.C. sec. 5330, *et seq.*, and

26  regulations promulgated pursuant to such Act. The purposes of such statute and regulations

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 23

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

include the detection of money laundering.

16.     In addition, approximately 47 states have enacted statutes and/or regulations regulating "money transmitters," and the MTB.  Such statutes are referred to herein as "MTB statutes" or "money transmitter statutes."  The purposes of such statutes include the detection of money laundering and the protection of consumers.

17.     In order to obtain licenses in each of the approximately 47 states referred to above, an applicant is required to pay a variety of fees upon application; and, in most such states is required to provide monetary security.  If one were to apply for licenses in all 47 such states the amount of fees and monetary security required to be paid by the applicant would be substantial; and the applicant could also incur legal or professional fees.

18.     Under 18 U.S.C. § 1960 it is unlawful to conduct an "unlicensed money transmitting business"; and, an "unlicensed money transmitting business" includes a money transmitting business which affects interstate or foreign commerce and is operated without a state money transmitting license or which fails to comply with 31 U.S.C. § 5330 or the regulations promulgated under that statute.

19.     Federal and state regulators have held that the regulatory requirements that apply to money services businesses and MTBs apply to persons and entities engaged in various types of Bitcoin transactions and services.  For example, in 2013, several steps were taken at the federal and state level which demonstrate that various types of services and transactions relating to Bitcoin, and persons and entities which provide such services and transactions in the United States, are subject to the federal and state laws and regulations that govern money services businesses and MTBs.  In this regard, and among other things:

a.     On March 18, 2013 FinCEN issued an interpretive guidance ("the FinCEN March 2013 Guidance") to clarify the applicability of regulations implementing the BSA to "persons creating, obtaining, distributing, exchanging, accepting or transmitting virtual currencies".  A true and correct copy of the FinCEN March 2013 Guidance is attached

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 24

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

hereto as **EXHIBIT 1.** In such guidance, FinCEN stated, among other things, the following:

> The definition of a money transmitter does not differentiate between real currencies and convertible virtual currencies. Accepting and transmitting anything of value that substitutes for currency makes a person a money transmitter under the regulations implementing the BSA.

b.       On May 30, 2013 the California Department of Financial Institutions issued a warning letter to the Bitcoin Foundation, which is a trade organization of the Bitcoin industry, stating that "…the Bitcoin Foundation may be engaged in the business of money transmission without having obtained a license or proper authorization required by the California Financial Code…".  A true and correct copy of such warning letter is attached hereto as **EXHIBIT 2.**

c.       Defendants are informed and believe that in August 2013 the New York Department of Financial Services had subpoenas issued on approximately 24 companies involved in the Bitcoin industry and has expressed concern that such companies were not complying with New York's money transmission laws. CoinLab was one of the companies to which such a subpoena was directed.

### C.   Negotiations Leading Up to the Agreement and the Relevant Terms of the Agreement.

20.       In approximately May 2012 MtGox and CoinLab commenced negotiations which led up to the Agreement.

21.       One of the major issues, if not the major issue, that MtGox was concerned about was legal compliance on the part of CoinLab to conduct the Bitcoin exchange services in the United States that were being discussed by the parties during the negotiations.  Early in the negotiations, that is, in approximately May and June 2012 discussions took place among CoinLab and MtGox representatives, including meetings in Japan and over "Skype" video conferencing.  In one or more of those early discussions Vessenes made statements to the effect that CoinLab was compliant with all laws and regulations relevant to conducting the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 25

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1  Bitcoin exchange business that was the subject of the parties' negotiations; and, that CoinLab

2  was registered as a "prepaid access" provider and such was sufficient. Vessenes refused to

3  disclose or why this was the case even though requested by MtGox, claiming it to be a "trade

4  secret"; and, that if it were disclosed MtGox would have no need for CoinLab. Based on such

5  assurances, MtGox continued negotiations with CoinLab and ultimately entered into the

6  Agreement.

7      22.    The Agreement had an effective date of November 22, 2012.

8      23.    Under the Agreement MtGox and Tibanne granted CoinLab an exclusive

9  license to use the "Licensed Materials" to provide, in the Territory (that is, the United States

10 and Canada), the "digital currency exchange service operated by Mt. Gox…" on the

11 mtgox.com website. The "Licensed Materials" were defined to mean "…all software,

12 processes, know-how, copyrights, patents, trademarks, trade dress, trade secrets, agreements,

13 policies and any and all other intellectual property that constitutes or is used in providing…"

14 the Bitcoin exchange services operated by MtGox on the website.

15     24.    Section 3., B., of the Agreement provided for a Transition Period which was

16 defined as the 120 day period starting on the November 22, 2012 effective date of the

17 Agreement. That 120 day period expired on March 22, 2013.

18     25.    Under Section 2.A., of the Agreement, following the Transition Period

19 CoinLab was to assume the "…responsibility for managing and marketing…" the Bitcoin

20 exchange services in the "Territory" (the United States and Canada) in accordance with the

21 terms of service (the "TOS') approved in advance and in writing by MtGox. In this regard,

22 upon the expiration of the Transition Period, CoinLab was to offer the Bitcoin exchange

23 services in the United States and Canada through a CoinLab website. That is, persons in the

24 United States and Canada that wanted to purchase or sell Bitcoin through the MtGox

25 exchange would do so through accounts opened at, or transferred to, CoinLab; they would

26 effectuate such transactions by accessing a CoinLab website; and, their currency funds would

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 26

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1  be held at one or more bank accounts controlled by CoinLab.

2       26.    In this regard, Sections 3.B. and 3.C., of the Agreement provided that by the

3  end of the Transition Period MtGox was to transfer and deposit all Bitcoin and other funds of

4  its customers who were citizens of the United States and Canada to one or more "accounts

5  controlled by CoinLab."

6       27.    Persons in numerous countries had accounts at MtGox and used the exchange

7  services of the mtgox.com website. Such persons, including the United States and Canadian

8  customers who were to use the Bitcoin exchange services of CoinLab, were charged fees or

9  commissions based upon the size of the transaction.  Section 4.A., of the Agreement provided

10  for an allocation of such fees and commissions as between MtGox and CoinLab with respect

11  to the United States and Canada customers governed by the Agreement.  Had the Agreement

12  been fully implemented, Bitcoin purchases and sales could have been between and among

13  customers in the United States covered by the Agreement and MtGox customers in other

14  countries who were not covered by it.  As a result, the Agreement in Section 4.D., provided

15  for a reconciliation process by which "Revenue" (that is, the commissions and fees earned

16  from a transaction) and customer funds would be reconciled between MtGox on the one hand,

17  and CoinLab on the other, with respect to transactions covered by the Agreement.  Section

18  4.D., provided that such reconciliations would take place "…on a weekly basis on an as

19  mutually agreed upon basis…".  The revenue sharing provisions of Section 4 of the

20  Agreement did not refer to the Transition Period; and, after the November 22, 2012 effective

21  date CoinLab took the position that such revenue sharing and reconciliations were in effect as

22  of the November 22, 2012 effective date, not the March 22, 2013 expiration of the Transition

23  Period.  As a result, for a period of time after November 22, 2012  the parties engaged in

24  periodic reconciliations, and, as a result, MtGox made a net transfer to CoinLab of USD

25  $62,258.70, CAD $ 40.00 and 1428.81263537 Bitcoins.

26       28.    The Agreement expressly referred to CoinLab's duty to be compliant with all

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 27

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    laws applicable to the Bitcoin exchange services it was to provide under the Agreement.

2               a.    Section 2.D. provided that CoinLab would operate the Bitcoin

3    exchange services in the Territory "…in compliance with all applicable laws after completion

4    of the Transition Period…", that is, by March 22, 2013.

5               b.    In section 6.A. (iv) CoinLab warranted that it would "…continue

6    throughout the Term to comply with all statutes, code, ordinances, laws, regulations, rules,

7    orders, and decrees of all governmental authorities… having jurisdiction…" over it.

8         29.    Section 1.F.1 of the Agreement provided that during the term of the

9    Agreement, "…MtGox and Tibanne shall not grant anyone the right to use the Licensed

10   Materials to provide the Services, or any part thereof, in the Territory…". Section 1.K., of the

11   Agreement further provided that if Defendants breached section 1.F.1 such would be a

12   material breach and would give rise to liquidated damages of $50 million.

13        **D.    The Parties' Attempts to Implement the Agreement**

14        30.    During the period starting in late November or early December, 2012 and

15   continuing into March 2013 the parties were taking steps to implement the Agreement,

16   including making a public announcement of the launch of the CoinLab services, exchanging

17   certain customer information, and exchanging certain technical information.  In addition,

18   CoinLab stated that it was running operational and technical tests.

19        31.    As of March 18, 2013, MtGox and Tibanne were prepared to complete

20   implementation of the Agreement. On that date, FinCEN issued the FinCEN March 2013

21   Guidance.

22        32.    On or about March 20, 2013 MtGox sent an email to CoinLab which set forth a

23   list of the states which had MtGox customers and the approximate percentage of U.S.

24   customers located in each such state.

25        33.    Between approximately March 19, 2013 and April 20, 2013 MtGox personnel

26   and CoinLab personnel had several oral and email communications in which MtGox sought to

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 28

1   determine if CoinLab was properly registered with FinCEN as a money transmitter and

2   properly licensed as a money transmitter in those states in which MtGox customers were

3   located. In such communications CoinLab personnel admitted that CoinLab was not

4   registered with FinCEN as a MTB and that CoinLab had not been licensed as a MTB by any

5   state. By the expiration of the Transition Period on March 22, 2013 CoinLab was not

6   FinCEN registered as a money transmitter and was not licensed by any state to be a money

7   transmitter. During these communications MtGox personnel made requests for a detailed and

8   precise plan of how CoinLab would become compliant; in response CoinLab personnel

9   repeatedly made vague statements, without a schedule, a deadline or a plan to finance the

10  application process.

11      34.     Notwithstanding that it was not compliant with applicable federal and state

12  statutes and regulations, CoinLab nevertheless demanded that MtGox complete transfer of the

13  customer accounts that were to be transferred under the Agreement. MtGox refused to do so

14  because if CoinLab was not properly licensed or registered, CoinLab could be held in

15  violation of federal and/or state laws, which could, among other things, prejudice customers.

16      35.     Defendants are informed and believe that in April 2013 CoinLab applied for an

17  MTB license in the State of Washington. CoinLab still has not obtained a MTB license in any

18  other state that CoinLab would have been conducting a Bitcoin exchange business had the

19  Agreement been fully implemented. For CoinLab to conduct the Bitcoin exchange services

20  called for under the Agreement would be a violation of the MTB statutes of such states and a

21  violation of 18 U.S.C. § 1960.

22      36.     MtGox and Tibanne have delivered to CoinLab a notice and amended notice,

23  each of which rescinds the Agreement; or, alternatively and without prejudice to Defendants'

24  claims of rescission, voidness, and unenforceability, terminates the Agreement.

25      37.     On May 2, 2013 CoinLab filed the Complaint in this action. In that

26  Complaint, CoinLab alleges, among other things, that since "…November 22, 2012 the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 29

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

Agreement has been a valid contract between CoinLab and …" Defendants; and, that

Defendants have breached the Agreement by failing to, among other things, transfer the

MtGox customers that are the subject to the Agreement to CoinLab and to deposit the

currency funds and Bitcoin of such customers and held in the MtGox accounts to accounts

owned by CoinLab.

## FIRST COUNTERCLAIM

### (Declaratory Judgment)

38.     Defendants reallege and incorporate the allegations of paragraphs 1-37 of their

counterclaim above, as if set forth in full.

39.     A genuine, actual, substantial and justiciable controversy has arisen, and now

exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to whether the

Agreement is void *ab initio* and unenforceable.  MtGox and Tibanne contend that CoinLab

was not, and is not, registered or licensed under applicable money services business and/or

MTB statutes and, therefore, the Agreement is illegal and is void *ab initio* and unenforceable.

CoinLab contends that the Agreement is valid and should be enforced.  As such, the parties

have adverse legal interests.

40.     The controversy between Plaintiff CoinLab and Defendants MtGox and

Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance

of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is

necessary and appropriate at this time to set to rest the respective rights and obligations of the

parties.  Among other things, as of the date of this Counterclaim Defendants have not granted

anyone else "…the right to use the Licensed Materials to provide…" the Bitcoin exchange

services in the Territory and have not otherwise breached the Agreement. However, because

CoinLab cannot legally provide the Bitcoin exchange services called for under the Agreement

Defendants should be free, if they so choose, to find other persons who are legally able to do

so without the "cloud" of the Agreement interfering with such efforts. Defendants may also

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 30

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    have a need to demonstrate to others including banks, potential finance partners or investors,

2    that the Agreement is void and of no force and effect.  This Court's declaratory judgment of

3    the rights of the parties will finally determine the rights, liabilities and obligations of the

4    parties and eliminate uncertainty, insecurity and doubt as to the validity of the Agreement.

5           41.    Defendants therefore request that this Court enter judgment or decree to

6    declare, adjudge and order that the Agreement is void *ab initio*, unenforceable and of no force

7    or effect, and grant such further necessary and proper relief based on such judgment or decree.

8                              **SECOND COUNTERCLAIM**

9              **(Failure of Consideration -- Rescission and Restitution)**

10          42.    Defendants reallege and incorporate the allegations of paragraphs 1-37 of their

11   Counterclaims above, as if set forth in full.

12          43.    Defendants allege the following as a further counterclaim, and without waiving

13   that the Agreement is void *ab initio* and unenforceable as alleged above.

14          44.    Under the Agreement the main consideration that CoinLab was to provide was

15   to be compliant with all statutes, code, ordinances, laws, regulations, rules, orders, and

16   decrees of all governmental authorities that would apply to the Bitcoin exchange services that

17   it was to perform under the Agreement.

18          45.    CoinLab has failed to be so compliant and by such failure has materially

19   breached the Agreement and failed to provide the main consideration to which Defendants

20   were due.

21          46.    Defendants have rescinded the Agreement in light of this failure of

22   consideration.  In doing so Defendants have demanded of CoinLab that it return all benefits

23   that Defendants conferred on CoinLab under that Agreement, including, but not limited to, the

24   amounts of USD $62,258.70 and CAD $ 40.00 that were paid to CoinLab under section 4 of

25   the Agreements and the amount of 1428.81263537 Bitcoins also paid to CoinLab under

26   section 4 of the Agreement.  Defendants allege that CoinLab has conferred no benefits to

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 31

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

Defendants under the Agreement and therefore Defendants have nothing to return to CoinLab; however, in their notice of rescission Defendants stated that if CoinLab contends it did confer any such benefits they should be identified and that Defendants shall return them.

47. Defendants are entitled to restitution of all benefits that Defendants conferred on CoinLab under that Agreement, including, but not limited to, the amounts of USD $62,258.70 and CAD $ 40.00 that were paid to CoinLab under section 4 of the Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the Agreement.

48. In addition, a genuine, actual and justiciable controversy has arisen, and now exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to the validity of the Agreement in light of such failure of consideration. Defendants contend that the Agreement has been rescinded for a failure of consideration. However, CoinLab contends that the Agreement is valid and should be enforced. As such, the parties have adverse legal interests.

49. The controversy between Plaintiff CoinLab and Defendants MtGox and Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is necessary and appropriate at this time to set to rest the respective rights and obligations of the parties. Among other things, as of the date of this Counterclaim Defendants have not granted anyone else "…the right to use the Licensed Materials to provide…" the Bitcoin exchange services in the Territory and have not otherwise breached the Agreement. However, because CoinLab cannot legally provide the Bitcoin exchange services called for under the Agreement Defendants should be free, if they so choose, to find other person who are legally able to do so without the "cloud" of the Agreement interfering with such efforts. Defendants may also have a need to demonstrate to others including banks, potential finance partners or investors, that the Agreement is void and of no force and effect. This Court's declaratory judgment of the rights of the parties will finally determine the rights, liabilities and obligations of the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 32

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

parties and eliminate uncertainty, insecurity and doubt as to the validity of the Agreement

50.     Defendants therefore request that this Court enter a judgment granting Defendants restitution and further enter judgment or decree to declare, adjudge and order that the Agreement  has been rescinded and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree.

## THIRD COUNTERCLAIM

### (Material Breach -- Rescission and Restitution)

51.     Defendants reallege and incorporate the allegations of paragraphs 1-37 of their Counterclaims above, as if set forth in full.

52.     Defendants allege the following as a further counterclaim, and without waiving that the Agreement is void *ab initio* and unenforceable as alleged above.

53.     Under the Agreement CoinLab agreed that it would be compliant with all statutes, code, ordinances, laws, regulations, rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin exchange services that it was to perform under the Agreement.

54.     CoinLab has failed to be so compliant and by such failure has materially breached the Agreement and failed to provide the main consideration to which Defendants were due.

55.     Defendants have rescinded the Agreement in light of this material breach.  In doing so Defendants have demanded of CoinLab that it return all benefits that Defendants conferred on CoinLab under that Agreement, including, but not limited to, the amounts of USD $62,258.70 and CAD $ 40.00 that were paid to CoinLab under section 4 of the Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the Agreement. Defendants allege that CoinLab has conferred no benefits to Defendants under the Agreement and therefore Defendants have nothing to return to CoinLab; however, in their notice of rescission Defendants stated that if CoinLab contends it did confer any such

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 33

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    benefits they should be identified and that Defendants shall return them.

2        56.     Defendants are entitled to restitution of all benefits that Defendants conferred

3    on CoinLab under that Agreement, including, but not limited to, the amounts of

4    USD $62,258.70 and CAD $40.00 that were paid to CoinLab under section 4 of the

5    Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4

6    of the Agreement.

7        57.     In addition, a genuine, actual, substantial and justiciable controversy has

8    arisen, and now exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to

9    the validity of the Agreement in light of such material breach.  Defendants contend that the

10   Agreement has been rescinded for a material breach.  However, CoinLab contends that the

11   Agreement is valid and should be enforced.  As such, the parties have adverse legal interests.

12       58.     The controversy between Plaintiff CoinLab and Defendants MtGox and

13   Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance

14   of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is

15   necessary and appropriate at this time to set to rest the respective rights and obligations of the

16   parties.  . Among other things, as of the date of this Counterclaim Defendants have not

17   granted anyone else "…the right to use the Licensed Materials to provide…" the Bitcoin

18   exchange services in the Territory and have not otherwise breached the Agreement. However,

19   because CoinLab cannot legally provide the Bitcoin exchange services called for under the

20   Agreement Defendants should be free, if they so choose, to find other person who are legally

21   able to do so without the "cloud" of the Agreement interfering with such efforts. Defendants

22   may also have a need to demonstrate to others including banks, potential finance partners or

23   investors, that the Agreement is void and of no force and effect.  This Court's declaratory

24   judgment of the rights of the parties will finally determine the rights, liabilities and

25   obligations of the parties and eliminate uncertainty, insecurity and doubt as to the validity of

26   the Agreement.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 34

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

59.     Defendants therefore request that this Court enter a judgment granting Defendants restitution and further enter judgment or decree to declare, adjudge and order that the Agreement has been rescinded and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree.

### FOURTH COUNTERCLAIM

### (Misrepresentation - Rescission and Restitution)

60.     Defendants reallege and incorporate the allegations of paragraphs 1-37 of their Counterclaims above, as if set forth in full.

61.     Defendants allege the following as a further counterclaim, and without waiving that the Agreement is void *ab initio* and unenforceable as alleged above.

62.     In the negotiations which took place in approximately May to September 2012 and which led up to the Agreement Vessenes represented that CoinLab was compliant with all laws and regulations relevant to conducting the Bitcoin exchange business that was the subject of the parties' negotiations; and, that CoinLab was registered as a "prepaid access" provider and such was sufficient. In the Agreement itself CoinLab represented, promised and warranted that it would be compliant with all statutes, code, ordinances, laws, regulations, rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin exchange services that it was to perform under the Agreement. The Agreement was signed by Vessenes on or about November 22, 2012.

63.     Such representations, promises and warranties were material to Defendants and they relied upon them when entering into the Agreement.

64.     Such representations, promises and warranties and when it made such representations, promises and warranties CoinLab did not intend to perform them. Among other things, CoinLab had no intent to become licensed in all the states in which customers using the Bitcoin exchange services that CoinLab was to provide were located.

65.     Defendants have rescinded the Agreement in light of this misrepresentation.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 35

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1  In doing so Defendants have demanded of CoinLab that it return all benefits that Defendants

2  conferred on CoinLab under that Agreement, including, but not limited to, the amounts of

3  USD $62,258.70 and CAD $40.00 that were paid to CoinLab under section 4 of the

4  Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4

5  of the Agreement. Defendants allege that CoinLab has conferred no benefits to Defendants

6  under the Agreement and therefore Defendants have nothing to return to CoinLab; however,

7  in their notice of rescission Defendants stated that if CoinLab contends it did confer any such

8  benefits they should be identified and that Defendants shall return them.

9       66.     Defendants are entitled to restitution of all benefits that Defendants conferred

10  on CoinLab under that Agreement, including, but not limited to, the amounts of USD

11  $62,258.70 and CAD $40.00 that were paid to CoinLab under section 4 of the Agreement and

12  the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the

13  Agreement.

14      67.     In addition, a genuine, actual, substantial and justiciable controversy has

15  arisen, and now exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to

16  the validity of the Agreement in light of such misrepresentation.  Defendants contend that the

17  Agreement has been rescinded for a misrepresentation and is therefore void *ab initio* and

18  unenforceable.  However, CoinLab contends that the Agreement is valid and should be

19  enforced.  As such, the parties have adverse legal interests.

20      68.     The controversy between Plaintiff CoinLab and Defendants MtGox and

21  Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance

22  of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is

23  necessary and appropriate at this time to set to rest the respective rights and obligations of the

24  parties.  .  Among other things, as of the date of this Counterclaim Defendants have not

25  granted anyone else "…the right to use the Licensed Materials to provide…" the Bitcoin

26  exchange services in the Territory and have not otherwise breached the Agreement. However,

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 36

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

because CoinLab cannot legally provide the Bitcoin exchange services called for under the Agreement Defendants should be free, if they so choose, to find other person who are legally able to do so without the "cloud" of the Agreement interfering with such efforts. Defendants may also have a need to demonstrate to others including banks, potential finance partners or investors, that the Agreement is void and of no force and effect and eliminate uncertainty, insecurity and doubt as to the validity of the Agreement.

69.     Defendants therefore request that this Court enter a judgment granting Defendants restitution and further enter judgment or decree to declare, adjudge and order that the Agreement  has been rescinded and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree.

## FIFTH COUNTERCLAIM

**(Declaratory Judgment - Liquidated Damages Clause is Void and Unenforceable)**

70.     Defendants reallege and incorporate the allegations of paragraphs 1-37 of their Counterclaims above, as if set forth in full.

71.     Defendants allege the following as a further and alternative counterclaim, and without waiving that the Agreement is void *ab initio* and unenforceable as alleged above.

72.     A genuine, actual, substantial and justiciable controversy has arisen, and now exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to whether the liquidated damages clause of Section 1.K., of the Agreement is void and/or enforceable. MtGox and Tibanne contend that the liquidated damages clause of Section 1.K., is void and/or unenforceable because it is not compensatory, it is intended to be a punishment for a failure to perform, CoinLab has suffered no losses, and it is not a reasonable or supportable estimate or forecast of any losses that CoinLab would suffer should the provisions of Section 1.F.1 of the Agreement be breached (which they have not been).  CoinLab contends that the liquidated damages clause is valid and should be enforced.  As such, the parties have adverse legal interests.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 37

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

73.     The controversy between Plaintiff CoinLab and Defendants MtGox and Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is necessary and appropriate at this time to set to rest the respective rights and obligations of the parties.   CoinLab contends that Defendants breached section 1.F.1 of the Agreement and it is therefore entitled to the liquidated damages referred to in section 1.K. Defendants contend that the Court should declare that the entire Agreement is void and unenforceable; however, if the Court does not do so, and  if CoinLab is entitled to enforce the Agreement, CoinLab should not be able to enforce the provisions of section 1.K. Such provisions provide an unreasonable and unjust advantage to CoinLab and encourage it to not perform since MtGox could not find an alternate partner at the risk of CoinLab invoking such provisions, as it is doing in this action.   This Court's declaratory judgment of the rights of the parties will finally determine the rights, liabilities and obligations of the parties and eliminate uncertainty, insecurity and doubt as to the validity of the Agreement.

74.     Defendants therefore request that this Court enter judgment or decree to declare, adjudge and order that section 1.K., of the Agreement is void, unenforceable and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree.

## SIXTH COUNTERCLAIM

### (Declaratory Judgment)

75.      Defendants reallege and incorporate the allegations of paragraphs 1-37 of their counterclaims above, as if set forth in full.

76.     Defendants allege the following as a further and alternative counterclaim, and without waiving that the Agreement is void *ab initio* and unenforceable as alleged above.

77.     A genuine, actual, substantial and justiciable controversy has arisen, and now exists, between Plaintiff CoinLab and Defendants MtGox and Tibanne as to whether the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 38

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1    Agreement is terminated.  MtGox and Tibanne contend that CoinLab was not, and is not,

2    registered or licensed under applicable money services business and/or MTB statutes, that

3    such constitutes a material breach justifying termination, and that the Agreement has been

4    terminated.  CoinLab contends that the Agreement is valid and should be enforced.  As such,

5    the parties have adverse legal interests.

6            78.      The controversy between Plaintiff CoinLab and Defendants MtGox and

7    Tibanne is ripe for decision and is of sufficient immediacy and reality to warrant the issuance

8    of a declaratory judgment. This Court's declaratory judgment of the rights of the parties is

9    necessary and appropriate at this time to set to rest the respective rights and obligations of the

10   parties.  Among other things, as of the date of this Counterclaim Defendants have not granted

11   anyone else "…the right to use the Licensed Materials to provide…" the Bitcoin exchange

12   services in the Territory and have not otherwise breached the Agreement. However, because

13   CoinLab cannot legally provide the Bitcoin exchange services called for under the Agreement

14   Defendants should be free, if they so choose, to find other person who are legally able to do

15   so without the "cloud" of the Agreement interfering with such efforts. Defendants may also

16   have a need to demonstrate to others including banks, potential finance partners or investors,

17   that the Agreement is void and of no force and effect.  This Court's declaratory judgment of

18   the rights of the parties will finally determine the rights, liabilities and obligations of the

19   parties and eliminate uncertainty, insecurity and doubt as to the validity of the Agreement.

20           79.      Defendants therefore request that this Court enter judgment or decree to

21   declare, adjudge and order that the Agreement has been terminated and is of no force or

22   effect, and grant such further necessary and proper relief based on such judgment or decree.

### SEVENTH COUNTERCLAIM

### (Constructive Trust)

25           80.      Defendants reallege and incorporate the allegations of paragraphs 4-14 and 30

26   of their counterclaims above, as if set forth in full.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 39

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

81.     Defendants allege the following as a tort counterclaim for the tortious and unjust conduct of CoinLab, and without waiving that the Agreement is void, unenforceable and rescinded as alleged above.

82.     On information and belief, during the period of approximately February, March and/or April, 2013 CoinLab requested or suggested to certain MtGox customers that they deposit funds into one or more bank accounts owned or controlled by CoinLab.

83.     On information and belief, in or about March and April 2013, CoinLab received funds from several, if not all, of such customers, and Defendants are informed and believe that the amount of such funds was $12,788,701.08.  Such funds were credited to their MtGox account and the actual funds themselves were to be transferred and deposited into the MtGox bank account.  MtGox has a superior right to such funds over CoinLab.

84.     On information and belief, CoinLab caused the deposited funds to be reflected and credited to the customers' MtGox accounts; however, CoinLab never transferred the actual funds money to MtGox's bank account.

85.     In April, 2013, MtGox discovered a discrepancy between the currency funds reflected in such customers' account holdings and the money that  had been actually received from such customers, and such discrepancy was in the amount of approximately $12,788,701.08.

86.     In April 2013, MtGox requested that CoinLab transfer the funds deposited by such customers to the MtGox bank account.

87.     In April 2013, CoinLab transferred approximately $7,473,490.29 of the $12,788,701.08 amount leaving a balance to be transferred to the MtGox bank account by CoinLab of $ 5,315,210.79.

88.     MtGox has again requested CoinLab to transfer the$ 5,315,210.79 amounts.

89.     Despite having a duty to return the money had and received by CoinLab to MtGox, CoinLab has not turned over the remaining $ 5,315,210.79 amount.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 40

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

90.     CoinLab is under a duty to transfer such funds to the MtGox bank account on the grounds that CoinLab would be unjustly enriched if CoinLab were permitted to retain the customer funds that lawfully belong to MtGox.

91.     CoinLab has not transferred the customer funds to the MtGox bank account and, in good conscience, CoinLab cannot retain the beneficial interest in MtGox's customer funds.

92.     As such, CoinLab does not own the customer funds, but instead CoinLab holds such funds in constructive trust.  Such constructive trust is for the benefit of the MtGox customers and/or MtGox as the Court determines to be proper;  For these reasons the Court should impose a constructive trust over such amounts.

## EIGHTH COUNTERCLAIM

### (Accounting)

93.     Defendants reallege and incorporate the allegations of paragraphs 4-14, 30 and 80-92 of their counterclaim above, as if set forth in full.

94.     Defendants allege the following as a tort counterclaim for the tortious and unjust conduct of CoinLab, and without waiving that the Agreement is void, unenforceable and rescinded as alleged above.

95.     MtGox has been damaged as a result of CoinLab's wrongful conversion of the MtGox customer funds as alleged above.  The MtGox accounts of the customers whose funds were deposited with CoinLab were credited with such amounts yet the funds themselves were not transferred to the MtGox account.  Through the purchase and sale of Bitcoins, or through withdrawals, such customers may therefore have acquired more funds than to which they are entitled, all to the damage of MtGox.

96.     MtGox demanded a full accounting from CoinLab of the funds collected from MtGox's customers, including the location of such funds, any disposition of such funds and the accounting and handling of the proceeds of any such disposition; however, CoinLab has

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 41

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1   refused to render it to date.

2        97.    An accounting is necessary because without one MtGox cannot ascertain

3   sufficient information as to whether CoinLab still has the customer funds, whether they have

4   been disposed of, and the nature, extent and location of the proceeds of such disposition. Such

5   information is unknown to MtGox and cannot be ascertained without a detailed accounting by

6   CoinLab.

7                        **NINTH COUNTERCLAIM**

8                     **(Conversion -- Damages)**

9        98.    Defendants reallege and incorporate the allegations of paragraphs 4-14, 30 and

10   80- 97 of their counterclaim above, as if set forth in full.

11        99.    Defendants allege the following as a tort counterclaim to recover for the

12   tortious and unjust conduct of CoinLab, and without waiving that the Agreement is void,

13   unenforceable and rescinded as alleged above.

14        100.    CoinLab's failure to transfer the MtGox customer funds, and CoinLab's

15   retention of them, constitute conversion of the MtGox's customer funds as their own.

16        101.    As a result, MtGox has been damaged.  Among other things, the MtGox

17   accounts of the customers whose funds were deposited with CoinLab were credited with such

18   amounts yet the funds themselves were not transferred to the MtGox account.  Through the

19   purchase and sale of Bitcoins, and/or through withdrawals, such customers may therefore

20   have obtained from MtGox more funds than to which they are entitled, all to the damage of

21   MtGox in an amount to be proven at trial

22                        **TENTH COUNTERCLAIM**

23             **(Tort -- Misrepresentation - Damages)**

24        102.    Defendants reallege and incorporate the allegations of paragraphs 4-14, 30, 80-

25   101 of their Counterclaims above, as if set forth in full.

26        103.    Defendants allege the following as a tort counterclaim for misrepresentation to

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 42

recover for the tortious and unjust conduct of CoinLab and without waiving that the
Agreement is void, unenforceable and rescinded as alleged above.

104.    In the negotiations which took place in approximately May to September 2012
and which led up to the Agreement Vessenes represented that CoinLab was compliant with all
laws and regulations relevant to re; and, that CoinLab was registered as a "prepaid access"
provider and such was sufficient.  In the Agreement itself CoinLab represented, promised and
warranted that it would be compliant with all statutes, code, ordinances, laws, regulations,
rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin
exchange services that it was to perform under the Agreement.  The Agreement was signed by
Vessenes on or about November 22, 2012.

105.    In making such representations, promises and warranties CoinLab was stating
its intent to be so compliant.

106.    Such representations, promises and warranties were material to Defendants.
Among other things, CoinLab's compliance with all such laws and  regulations was the reason
that Defendants were interested and willing to enter into the Agreement and to grant CoinLab
access to the MtGox system, including access that would allow CoinLab to make credit
entries on the accounts of MtGox account holders.

107.    Such representations, promises and warranties were false, when it made such
representations, promises and warranties CoinLab did not intend to perform them, and
CoinLab knew as much when it made them.  Among other things, CoinLab had no intent to
become licensed in all the states in which customers using the Bitcoin exchange services that
CoinLab was to provide were located.  At the time such representations, promises and
warranties were made Defendants did not know they were false and that CoinLab had no
intent to perform them.

108.    CoinLab intended for Defendants to rely on such representations, promises and
warranties.  Defendants had a right to rely on them and did rely on them.   Because of such

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 43

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1   reliance MtGox, among other things, granted  CoinLab access to the MtGox system, including

2   access that would allow CoinLab to make credit entries on the accounts of MtGox account

3   holders.

4          109.    As a result, MtGox has been damaged.  Among other things, the MtGox

5   accounts of the customers whose funds were deposited with CoinLab were credited by

6   CoinLab with such amounts yet the funds themselves were not transferred to the MtGox

7   account.  Through the purchase and sale of Bitcoins, and/or through withdrawals, such

8   customers may therefore have obtained from MtGox more funds than to which they are

9   entitled, all to the damage of MtGox in an amount to be proven at trial.

10   **ELEVENTH COUNTERCLAIM**

11   **(Tort -- Innocent Misrepresentation - Damages)**

12          110.    Defendants reallege and incorporate the allegations of paragraphs 4-14, 30, 80-

13   101 of their Counterclaims above, as if set forth in full.

14          111.    Defendants allege the following as a tort counterclaim for innocent

15   misrepresentation to recover for the tortious and unjust conduct of CoinLab  and without

16   waiving that the Agreement is void*,* unenforceable and rescinded as alleged above.

17          112.    In the negotiations which took place in approximately May to September 2012

18   and which led up to the Agreement Vessenes represented that CoinLab was compliant with all

19   laws and regulations relevant to re; and, that CoinLab was registered as a "prepaid access"

20   provider and such was sufficient.  In the Agreement itself CoinLab represented, promised and

21   warranted that it would be compliant with all statutes, code, ordinances, laws, regulations,

22   rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin

23   exchange services that it was to perform under the Agreement.  The Agreement was signed by

24   Vessenes on or about November 22, 2012.

25          113.    In making such representations, promises and warranties CoinLab was stating

26   its intent to be so compliant.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 44

114. Such representations, promises and warranties were material to Defendants. Among other things, CoinLab's compliance with all such laws and regulations was the reason that Defendants were interested and willing to enter into the Agreement and to grant CoinLab access to the MtGox system, including access that would allow CoinLab to make credit entries on the accounts of MtGox account holders.

115. Defendants had a right to rely on them and did justifiably rely on them. Because of such reliance MtGox, among other things, granted CoinLab access to the MtGox system, including access that would allow CoinLab to make credit entries on the accounts of MtGox account holders.

116. As a result, MtGox has been damaged. Among other things, the MtGox accounts of the customers whose funds were deposited with CoinLab were credited by CoinLab with such amounts yet the funds themselves were not transferred to the MtGox account. Through the purchase and sale of Bitcoins, and/or through withdrawals, such customers may therefore have obtained from MtGox more funds than to which they are entitled, all to the damage of MtGox in an amount to be proven at trial.

## TWELFTH COUNTERCLAIM

### (Tort --Negligent Misrepresentation - Damages)

117. Defendants reallege and incorporate the allegations of paragraphs 4-14, 30, 80-101 of their Counterclaims above, as if set forth in full.

118. Defendants allege the following as a tort counterclaim for negligent misrepresentation to recover for the tortious and unjust conduct of CoinLab and without waiving that the Agreement is void, unenforceable and rescinded as alleged above.

119. CoinLab supplied information to Defendants for their guidance which was false. In the negotiations which took place in approximately May to September 2012 and which led up to the Agreement Vessenes represented that CoinLab was compliant with all laws and regulations relevant to conducting the Bitcoin exchange business that was the

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 45

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

1  subject of the parties' negotiations; and, that CoinLab was registered as a "prepaid access"

2  provider and such was sufficient.  In the Agreement itself CoinLab represented, promised and

3  warranted that it would be compliant with all statutes, code, ordinances, laws, regulations,

4  rules, orders, and decrees of all governmental authorities that would apply to the Bitcoin

5  exchange services that it was to perform under the Agreement.  The Agreement was signed by

6  Vessenes on or about November 22, 2012.

7      120.    In making such representations, promises and warranties CoinLab was stating

8  its intent to be so compliant.

9      121.    Such representations, promises and warranties were material to Defendants.

10  Among other things, CoinLab's compliance with all such laws and  regulations was the reason

11  that Defendants were interested and willing to enter into the Agreement and to grant CoinLab

12  access to the MtGox system, including access that would allow CoinLab to make credit

13  entries on the accounts of MtGox account holders.

14      122.    Such representations, promises and warranties were false and when it made

15  such representations, promises and warranties CoinLab did not intend to have or obtain a

16  MTB license in each state where it would be conducting the Bitcoin exchange business that

17  was the subject of the parties' negotiations.  CoinLab knew, or through the exercise of

18  reasonable diligence should have known, that it was required to be registered and licensed in

19  every state it was to conduct the Bitcoin exchange business and CoinLab was, at a minimum,

20  negligent in not obtaining such information. At the time such representations, promises and

21  warranties were made Defendants did not know they were false and that CoinLab had no

22  intent to perform them.

23      123.    CoinLab knew or should have known that the information it was supplying

24  Defendants was to be used by Defendants to guide their decisions and CoinLab intended for

25  Defendants to rely on such representations, promises and warranties.  Defendants had a right

26  to rely on them, did rely on them and such reliance was reasonable and justified. Because of

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 46

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

such reliance MtGox, among other things, granted CoinLab access to the MtGox system, including access that would allow CoinLab to make credit entries on the accounts of MtGox account holders.

124.    As a result, MtGox has been damaged.  Among other things, the MtGox accounts of the customers whose funds were deposited with CoinLab were credited by CoinLab with such amounts yet the funds themselves were not transferred to the MtGox account.  Through the purchase and sale of Bitcoins, and/or through withdrawals, such customers may therefore have obtained from MtGox more funds than to which they are entitled, all to the damage of MtGox in an amount to be proven at trial.

## REQUEST FOR RELIEF

Defendants having answered Plaintiff's complaint and having alleged affirmative defenses and counterclaims request that the Court grant the following relief:

1.    That Plaintiff's complaint be dismissed with prejudice;

2.    On the First Counterclaim, a judgment or decree to declare, adjudge and order that the Agreement is void *ab initio*, unenforceable and of no force or effect, and grant such further necessary and proper relief based on such judgment or decree;

3.    On the Second, Third and Fourth Counterclaims:

   a.    a declaratory judgment or decree to declare, adjudge and order that the Agreement has been rescinded and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree; and,

   b.    that CoinLab be ordered to pay restitution to Defendants of all benefits conferred on CoinLab, including the amounts of USD $62,258.70 and CAD $40.00 that were paid to CoinLab under section 4 of the Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the Agreement and the amount of 1428.81263537 Bitcoins also paid to CoinLab under section 4 of the Agreement.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 47

4.       On the Fifth Counterclaim, a declaratory judgment or decree to declare, adjudge and order that section 1.K., of the Agreement is void, unenforceable and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree;

5.       On the Sixth Counterclaim a declaratory judgment or decree to declare, adjudge and order that the Agreement has been terminated and is of no force or effect, and grant such further necessary and proper relief based on such judgment or decree;

6.       On the Seventh Counterclaim, a judgment or decree imposing a constructive trust over the MtGox customer funds being held by CoinLab in the  amount of  $5,315,210.79 for the benefit of the MtGox customers and/or MtGox as the Court determines to be proper, and such further and related relief that the Court determines to be just and proper as to such funds;

7.       On the Eighth Counterclaim, a judgment or decree ordering an accounting of the MtGox customer funds being held by CoinLab in the amount of  $ 5,315,210.79;

8.       On the Ninth Counterclaim a judgment for damages in favor of Defendants and against CoinLab in an amount to be proven, plus interest;

9.       On the Tenth Counterclaim a judgment for damages in favor of Defendants and against CoinLab in an amount to be proven, plus interest;

10.       On the Eleventh Counterclaim a judgment for damages in favor of Defendants and against CoinLab in an amount to be proven, plus interest; and

11.       On the Twelfth Counterclaim a judgment for damages in favor of Defendants and against CoinLab in an amount to be proven, plus interest.

12.       That Defendants be awarded their costs of suit incurred in defense of this action.

13.       That Defendants be awarded their reasonable attorneys' fees as recoverable at law or equity.

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 48

14.     For such other and further relief as the Court deems just and proper.

DATED this 10th day of September, 2013.

BAKER & MCKENZIE LLP
(Admitted *pro hac vice*)
    Tod L. Gamlen
    Daniel G. Valles
    Baker & McKenzie LLP
    660 Hansen Way
    Palo Alto, CA 94304
    Telephone:  (650) 856-2400
    Facsimile:  (650) 856-9299
    Email:  Tod.Gamlen@bakermckenzie.com;
           daniel.valles@bakermckenzie.com

HILLIS CLARK MARTIN & PETERSON P.S.

By    s/ Louis D. Peterson
    Louis D. Peterson, WSBA #5776
    Joseph B. Genster, WSBA #14968
    Hillis Clark Martin & Peterson P.S.
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
    Email:  ldp@hcmp.com; jbg@hcmp.com
Attorneys for Defendants

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 49

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789

**CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Lindsey N Godfrey - lngodfrey@susmangodfrey.com,ahightower@susmangodfrey.com

Edgar Guy Sargent - esargent@susmangodfrey.com,ahightower@susmangodfrey.com

Floyd G Short - fshort@susmangodfrey.com,ahightower@susmangodfrey.com

Roger M Townsend -rtownsend@bjtlegal.com,mvizzare@bjtlegal.com,admin@bjtlegal.com

DATED this 10th day of September, 2013 at Seattle, Washington.

By___s/ Louis D. Peterson_____
    Louis D. Peterson, WSBA #5776
    1221 Second Avenue, Suite 500
    Seattle WA 98101-2925
    Telephone:  (206) 623-1745
    Facsimile:  (206) 623-7789
    Email:  ldp@hcmp.com

*Answer and Counterclaim*
(Case No. 2:13-cv-00777-MJP) - 50

HILLIS CLARK MARTIN & PETERSON P.S.
1221 Second Avenue, Suite 500
Seattle, WA 98101
Tel: (206) 623-1745 | Fax: (206) 623-7789