IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>MARK KARPELES, an individual,<br><br>*Defendant*. | Case No. 1:14-cv-01437<br><br>Hon. Gary Feinerman<br><br>Magistrate Judge Susan Cox |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE**

In connection with his motion for summary judgment, Defendant Mark Karpeles moves to strike the expert declaration of Professor Carol Goforth on relevance grounds.[1] The motion to strike should be denied.

**I.    BACKGROUND**

The gist of Plaintiff Gregory Greene's fraud claim is found in paragraphs 115 and 118 of the Fourth Amended Complaint, along with the corresponding allegations of each prior complaint. To summarize, those paragraphs allege that Karpeles issued Terms of Use (the "Terms of Use" or the "TOU") for Mt. Gox users that misrepresented the nature of the exchange and that Karpeles further concealed evidence of security breaches suffered by Mt. Gox because he knew that users would elect to take their business elsewhere, were they fully informed about Mt. Gox's affairs. (Dkt. 245, ¶¶ 115, 118.) Specifically, Plaintiff alleged that "[t]hrough Mt. Gox's online marketing materials and advertisements, *including its Terms of Use*, Karpeles

---

[1]    Although any challenge to admissibility based upon methods or qualifications would be frivolous, Karpeles makes clear that his present motion relates exclusively to relevance and he intends to make a successive challenge to Professor Goforth's declaration on other grounds at a later time.

1

represented to Plaintiffs and the Mt. Gox Class that Mt. Gox would, *inter alia*, protect their bitcoins and Fiat Currency, and safely and quickly allow them to buy, sell, trade, or withdraw the same." *(Id.* ¶ 112 (emphasis added); *see also id.* ¶ 20.) He alleged that the Terms of Use were required reading for all Mt. Gox customers, *(id.* at ¶¶ 13-14 ("To use Mt. Gox's service, customers were required to sign up for an account at www.mtgox.com and agree to Mt. Gox's Terms of Use . . .."), and specifically referenced those pages discussing the TOU's representations that, *inter alia*, Mt. Gox would hold all users' deposits, all bitcoin trades would be for actual bitcoins and cash, and Mt. Gox would not be a counterparty to any trade, *(id.* at n. 5 (citing dkt. 11-2 (Terms of Use) at 3-4.).) And to complete the allegations of fraud, he alleged that these representations were false and made to induce Plaintiff (and others) to deposit bitcoins and currency when they otherwise would not have done so. *(Id.* ¶ 115.) Plaintiff further alleged that Karpeles concealed evidence of "large-scale loss/theft" of bitcoins, knowing that users would stop depositing bitcoins in their accounts and instead attempt to withdraw their money had they known of such losses—an outcome that would cripple Mt. Gox. *(Id.* ¶ 118.)

With respect to the allegations made by Greene against Karpeles (rather than the allegations made by other plaintiffs against Mizuho Bank, Ltd.), the initial complaint was filed days after Mt. Gox ceased operations and was updated a few weeks later. (Dkt. 1; dkt. 36.) Given Karpeles's refusal to engage, that portion of the case and complaint lay dormant until Karpeles resurfaced in 2018. Subsequent developments, including gumshoe detective work by Mt. Gox creditors, public interviews with Mark Karpeles that corresponded with the beginning of his criminal trial in Japan, and Karpeles's deposition in this case—which took place in November of last year—allowed Greene to significantly flesh out his case at summary judgment. Thus, for instance, Plaintiff learned that Karpeles had concealed evidence of hacks and losses of bitcoin

from Mt. Gox, dating back to the very first days of his tenure at Mt. Gox, because Karpeles believed that revealing these security incidents and losses would cause users to demand the return of their investments and, ultimately, would "kill the exchange . . . [because] people wouldn't use Mt. Gox anymore." (Dkt. 467 Ex. A ("Karpeles Dep. Tr.") at 64:11-20.) Plaintiff also discovered that Karpeles had a personal motivation for keeping quiet: he believed that disclosures to Mt. Gox's userbase would expose him to legal liability. (*Id.* at 70:2-14.) And related to both these several hacks and losses of bitcoin—and contrary to the affirmative statements he made through the TOU—Plaintiff learned that Karpeles had programmed a bot to operate on Mt. Gox (one through which Karpeles acquired users' bitcoins and cash using fake assets) in order to mask the effects of Mt. Gox's asset deficit, with similar motivations. (*Id.* 75:19-76:11, 78:13-79:22, 83:13-16, 121:5-14, 239:18-240:4.) And while all these facts were only discovered in 2019, they each supported the same theory that Greene had alleged all along: that the TOU's representations that Mt. Gox was a safe and secure place to deposit, store, and trade bitcoins and cash were not true. (Dkt. 245 ¶¶ 13-14, 112.) Greene relies on all of this in opposing Karpeles's motion for summary judgment.

In addition to documentary evidence and lay testimony, Greene also offered the expert declaration of Carol R. Goforth, a professor of business associations and securities regulation at the University of Arkansas and a leading expert on the regulation of cryptoassets and transactions. Professor Goforth is preparing to publish what is believed to be the first textbook on the regulation of cryptotransactions in the U.S. (Dkt. 457-1 ¶ 5.) For this case, her declaration explains how and why Karpeles's misrepresentations—again, the same ones that have formed the basis of Greene's claim for fraud since 2014—were material to Mt. Gox's investors. (*See, e.g., id.* ¶¶ 48-52, 54-55.) But because Professor Goforth's declaration discusses events and

misrepresentations other than those specifically alleged in the complaint (specifically, the facts that came to light during Karpeles's November 2019 deposition), Karpeles believes it to be irrelevant to the case at hand.

## II. ARGUMENT

Expert testimony is admissible if, among other things, it will "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). This requirement "goes primarily to relevance." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993). The Court has "wide latitude" in determining that an expert's opinion is admissible. *See SEC v. Ustian*, No. 16 C 3885, 2020 WL 416289 at *1 (N.D. Ill. Jan. 26, 2020). "Absent strong factors favoring exclusion, '[d]oubts regarding whether an expert's testimony will be useful [to the trier of fact] should generally be resolved in favor of admissibility.'" *Davis v. Duran*, 277 F.R.D. 362, 366 n.4 (N.D. Ill. 2011) (quoting *United States v. Finch,* 630 F.3d 1057, 1062 (8th Cir.2011)).

Karpeles's challenge to the admissibility of Professor Goforth's declaration is limited to his contention that the declaration goes beyond the issues raised by the complaint. The premise of that challenge is flawed. The case law establishes two propositions that demonstrate the relevance and propriety of Professor Goforth's declaration. First, when a fraudulent misrepresentation is sufficiently alleged, Fed. R. Civ. P. 9(b) does not prohibit the plaintiff from developing his case in discovery, including by relying, at a later stage in the case, on "new and specific evidence relevant to their initial [fraud] claims," so long as those facts are consistent with the theory of fraud alleged in the complaint. *United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180, 196 n. 9 (D.D.C. 2017); *see also 4 MVR, LLC v. Warren W. Hill Constr. Co., Inc.*, No. 12-10674-DJC, 2016 WL 4775451, at *4 (D. Mass. Sept. 13, 2016) ("Because the core of the allegations at issue were asserted in the second amended complaint, 4

4

MVR was permitted to elaborate upon those allegations based upon information it obtained during discovery."); *E.I. Du Pont De Nemours & Co. v. Abbott Labs.*, No. 90 C 7338, 1992 WL 245642, at *3 (N.D. Ill. Sept. 18, 1992) ("Abbott cannot be faulted for failing to plead with particularity in its answer a fraud that it later learned about during pretrial discovery."). Second, a plaintiff is allowed to revise her theory of fraud at summary judgment, without amending the complaint, where the revision is based upon facts that were developed during discovery. *See Ash v. Wallenmeyer*, 879 F.2d 272, 274-75 (7th Cir 1989). And beyond these two points, neither Karpeles nor his cited cases provide any basis for striking Professor Goforth's declaration. The motion should be denied.

   **A.** **New evidence relevant to a theory of misrepresentation alleged in the Complaint can be raised and relied upon at summary judgment.**

  First, the theory of misrepresentation that Greene presses at summary judgment—and, here, supports with Professor Goforth's declaration—is the same as that articulated in the Fourth Amended Complaint. As described here and in his opposition to Karpeles's motion for summary judgment, Greene alleged that Karpeles withheld critical information about Mt. Gox, yet assured users that the Exchange was secure by directing the development and dissemination of Mt. Gox's Terms of Use. (Dkt. 245 ¶¶ 13-14, 112, 115, 118-119.) Discovery revealed facts supporting this theory, because Karpeles withheld information concerning Mt. Gox's asset shortfall, long history of security breaches, and use of an automated trading account to acquire users' actual bitcoins and cash using fake assets—primarily because he recognized that the truth would drive people away from Mt. Gox. As such, the misrepresentations, half-truths, and omissions stated in or connected to the Terms of Use induced users to use Mt. Gox, even though there is substantial evidence—including Karpeles's own deposition testimony—that users would have abandoned the Exchange long before it declared bankruptcy, had they known the whole truth. (Karpeles

Dep. Tr. 64:11-20, 68:6-24, 69:9-23; dkt. 457-1 ¶ 63.) In other words, the basic thrust of Greene's fraud claim—who made the misrepresentations, what the misrepresentations concerned, and why those misrepresentations were material—is the same now as it was when the case began.

In these circumstances, evidence, including Professor Goforth's declaration and all of the facts it considers, is relevant and admissible if it will assist the trier of fact in determining a fact at issue. "Rule 9(b) weeds out vague claims of fraud and prevents parties from greatly expanding theories of liability from what was alleged in the initial complaint . . . [but it] was not intended, however, to preclude parties from offering new and specific evidence relevant to their initial claims. . . ." *Landis*, 234 F. Supp. at 196 n.9. In *Landis*, a qui tam relator alleged, as relevant here, that the Postal Service was fraudulently induced to enter into a sponsorship agreement with a professional cycling team by Lance Armstrong's false denials that he was doping during the Tour de France. *See id.* at 195-96. At the pleadings stage, the relator alleged two such false statements, but cited several others in opposition to summary judgment. *See id.* Citing Rule 9(b), Armstrong urged the district court to disregard those statements that had not appeared in the complaint, but the district court rejected that argument. *Id.* at 196 n. 9.

In a similar vein is *4 MVR*, 2016 WL 4775451. In that case, plaintiff 4 MVR, LLC ("4 MVR") retained the defendant to build a property for a certain sum. *See id.* at *2. After the defendant was unable to finish the project, 4 MVR sued, alleging that the defendant had misrepresented the quality of their work and fraudulently overbilled the plaintiff. *See id.* at *4. The complaint contained "example[s]" of such overbilling. *Id.* At summary judgment, the plaintiff set forth in more exhaustive detail the fraudulent scheme of the defendant and introduced evidence tending to show that the defendant had been insolvent. *Id.* at *3-5. The court

6

denied the defendant's motion to strike this material. With respect to the more detailed recitation of the defendant's purported misstatements, the court reasoned that "the core of the allegations at issue were asserted in the second amended complaint," that "4 MVR was permitted to elaborate upon those allegations based upon information it obtained during discovery[,]" and the purportedly "new details" contained "substantial overlap" with those in the complaint and were "properly narrow and drawn from information disclosed to both parties during discovery." *Id.* at *4 (finding that such details "[did] not amount to new claims and are, therefore, permissible without formal amendment to the pleadings") (citing *Umar v. Johnson*, 173 F.R.D. 494, 503 (N.D. Ill. 1997). As to the information about solvency, the court noted that there was reference to it in the complaint, even if it was not central to the alleged misrepresentations, so it was also fair game at summary judgment. *Id.* at *5.

Also relevant is *Du Pont*, 1992 WL 245642. Du Pont alleged that Abbott had infringed one of its patents and Abbott defended on the ground that Du Pont's patents were unenforceable because they had been procured through inequitable conduct. *See id.* at *1. Abbott's answer specifically alleged that Du Pont had withheld a particular reference from the Patent Office and further explained that Du Pont had "submitted false information" with its patent application. *Id.* During discovery, Abbott discovered information tending to show that Du Pont had submitted fraudulent testing results. *Id.* at *2. Du Pont moved *in limine* to exclude this information on the grounds that this specific misrepresentation was not included in Abbott's answer. *Id.* The court denied that motion, noting that the answer sufficiently apprised Du Pont of Abbott's intention to proceed with an inequitable conduct defense based on the submission of false information. *Id.* at *2-3; *see also id.* at *2 (quoting *Ash*, 879 F.2d at 274) ("The Federal Rules of Civil Procedure

'do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process.'").

These cases all show that Karpeles's narrow view of relevance is mistaken. At summary judgment, a plaintiff may support his theory of fraud with new evidence, including new misrepresentations, apart from those included in the complaint. Thus, a plaintiff can rely on new misrepresentations concerning that same subject matter, *see Landis*, 234 F. Supp. 3d at 196 n.9; *Du Pont*, 1992 WL 245642, at *2-*3, along with new background information tending to prove the plaintiff's theory of fraud, even where such information is not spelled out in the complaint, *see 4 MVR*, 2016 WL 4775451, at *4-*5.

That is all Greene has done here. His theory of fraud was that Karpeles's express representations about Mt. Gox's functionality, safety, and security—as set out in the Terms of Use—were false. And discovery revealed that those same Terms of Use mispresented Mt. Gox in more ways than were or could have been known when the First, Second, Third, and Fourth Amended Complaints were filed. Similarly, discovery revealed that Karpeles had concealed more evidence of Mt. Gox's loss of bitcoins than previously was known and had additional motivations for doing so. At a minimum, then, there is "substantial overlap" between this new information and that alleged in the complaint. *4 MVR*, 2016 WL 4775451, at *4. And because that information is fair game for Greene generally at summary judgment, it is likewise appropriate for discussion in an expert report. Professor Goforth's declaration, which is based on her expertise in the areas of cryptocurrency and cryptotransactions, will assist a trier of fact to understand the import of Karpeles's decision to conceal information about Mt. Gox's hacks, loss of bitcoin, and misrepresentations contained in the Terms of Service to Greene and the Exchange's other users. *See* Advisory Committee Notes to Fed. R. Evid. 702 ("An intelligent

8

evaluation of facts is often difficult or impossible without the application of some … specialized knowledge."). Because Professor Goforth's declaration will assist the trier of fact in understanding the evidence, it should not be excluded on relevance grounds. *See* Fed. R. Evid. 702(a).

      **B.**     **Even in a fraud case, a complaint does not need to be amended to reflect new evidence revealed during discovery, regardless whether that new information alters a plaintiff's theory of the case.**

Next, even if the evidence adduced through discovery has expanded or shifted Greene's theory of fraud, there is still no basis to exclude consideration of it here. Professor Goforth's report, along with Greene's opposition to summary judgment, relies upon information revealed after the operative pleading was filed in this case and of which Mark Karpeles was aware. While the initial complaint was drafted and filed in the maelstrom surrounding Mt. Gox's collapse, facts have trickled out since that time—particularly in 2019, around the same time as Karpeles's criminal trial in Japan—that supplemented Greene's understanding of events. Greene's discovery requests have focused on many of these facts, as did the deposition of Karpeles himself.[2] Any claim of surprise by Karpeles, therefore, rings hollow. Indeed, the majority of these "new" facts were within Karpeles's exclusive (or nearly exclusive) knowledge for some time. For that reason, although Greene's theory of fraud pulls from information made publicly available in the last year (as does Professor Goforth's expert declaration), it was not until discovery on Greene's claim began—and, in particular, when he was finally able to take Karpeles's deposition on

---

[2] As described in Greene's opposition to Karpeles's motion for summary judgment, Greene was not coy about seeking the information offered in support of his opposition (and outlined in the Goforth Declaration) through discovery. For example, Greene's written discovery responses pointed Karpeles to the several statements he made in a series of 2019 interviews, where Karpeles—for the first time—discussed Mt. Gox's early bitcoin deficit and his use of Gox Bot to acquire cash and bitcoins from Mt. Gox users. (Dkt. 465 at 21.) He also issued requests to admit on these same subjects. (*Id.*) And then Greene's lawyers questioned Karpeles extensively on these same issues during his November 2019 deposition. (*Id.*)

9

November 5, 2019—that he was able to test these facts in the crucible of discovery and assess their reliability or usefulness for this case. For these reasons, Seventh Circuit precedent dictates consideration of the evidence on which Greene relies but is beyond the four corners of the complaint, including Professor Goforth's report. *See Ash*, 879 F.2d at 273-75.

In *Ash*, the plaintiff, the owner of a trucking company (J&W), hired an individual (Wallenmeyer) and put him in charge of the company. *Id.* at 273. While the owner was away, Wallenmeyer formed a second company (S.M.F. Lines, Inc. ("S.M.F.")), and conspired with a plant manager to submit invoices on S.M.F.'s behalf for work done by J&W. *Id.* In exchange for this, Wallenmeyer charged below-tariff rates to the plant, contrary to an agreement Wallenmeyer had with plaintiff. *Id.* The plaintiff discovered the scheme to divert funds to S.M.F. and sued all involved for fraud. *Id.* During discovery, he discovered the underbilling and asked to press that theory at trial, as well. The district court ruled he could not. *Id.* at 273-74. The Seventh Circuit reversed, concluding that the judge should have allowed the plaintiff to present the underbilling theory to the jury because, as a matter of common sense, "a plaintiff cannot be faulted for failing to plead with particularity in his complaint a fraud that he first learns of, with all due diligence, in pretrial discovery." *Id.* at 274. And although, the court conceded, the plaintiff could have amended "to make meticulous compliance with Rule 9(b)[,]" that was unnecessary because "the federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process." *Id.* Furthermore, since the underbilling theory had featured prominently in discovery, the defendants could not claim surprise. *Id.* at 274-75.

*Ash* militates in favor of denying Karpeles's motion to strike. The evidence relied upon by Greene and Professor Goforth was known to Karpeles and was expressly sought through Greene's discovery inquiries. Karpeles could have tested it himself or offered competing

10

evidence. Thus far he has chosen not to. Significantly, Karpeles deposed Greene *after* Karpeles's own deposition, where Greene's lawyers questioned Karpeles extensively about the facts relied upon in Greene's summary judgment opposition. (*See*, *e.g.*, Karpeles Dep. Tr. at 65:3-8 ("Q: So is it right, are you saying that had Mt. Gox users at this time, March 2011, been made aware that there was a hack of 80,000 bitcoins, they may have decided to move their bitcoins elsewhere. Is that fair? A: I would guess so."), 78:13-79:22, 239:18-240:4 (questions regarding Karpeles's manipulation of Mt. Gox's database to "credit" the Gox Bot account with cash or bitcoins), 96:10-99:1 (questions regarding the Terms of Use and its significance to Mt. Gox users).) Karpeles, thus, had the opportunity to ask Greene about the many misrepresentations and omissions discussed in that deposition. For his own reasons, he chose not to. But that choice does not bind Greene. What's more, as Karpeles's motion makes clear, Karpeles's deadline for proffering expert testimony has yet to pass. He, thus, still has the opportunity to challenge Greene's theory of fraud.

But this case is even easier than *Ash*. Here, unlike in *Ash*, Greene's core theory of fraud has remained consistent across several amended complaints. It remains consistent today: Greene does not ask the Court to consider a new basis for finding that Karpeles committed fraud, only to consider new details consistent with the original theory. This, as *Ash* and the other cases cited above make clear, is proper.

Again, because Professor Goforth's declaration is relevant to a theory of fraud that is properly before the Court, there is no basis to strike the report on relevance grounds.

  **C.**  **None of Karpeles's cases support the proposition that a plaintiff's theory of fraud is limited only to the specific allegations in a complaint.**

Rather than discuss or attempt to distinguish the above authority, Karpeles emphasizes a related principle: Expert testimony relevant only to an unpleaded, or unlitigated, theory is

11

inadmissible. (Mot. at 3-4.) With this general proposition Greene has no quarrel: expert testimony that is unrelated to any issue in the case is not "useful" at all.

But Karpeles's application of this principle is deeply flawed. Karpeles asserts that the case is, exclusively, about fraud perpetrated in late 2013 and early 2014. (*Id.* at 6-7.) Having so limited Greene's complaint, Karpeles then argues that because Professor Gorforth includes analysis about earlier events, her declaration must be irrelevant. (*Id.* at 8.) Karpeles also faults Professor Goforth's declaration for discussing bot activity on Mt. Gox and Mt. Gox's asset deficits, asserting that they are out of bounds because they are not mentioned in the operative complaint. (*Id.* at 9.) As Karpeles asserts in a concluding paragraph, "the Complaint does not contain any of the specific 'who, what, when, where, and how' that Professor Goforth now propounds." (*Id.* at 10).

None of Karpeles's cases support this rigid understanding of Fed. R. Civ. P. 9(b), which would require plaintiffs to litigate *only* the specific misrepresentations and supporting facts contained in the complaint. To the contrary, "Rule 9(b) is . . . designed to [e]nsure that litigants have *some* factual basis, even if they do not have *all* of the facts, *before* proceeding with a fraud claim." *Hood v. Dryvit Sys., Inc.*, No. 04-CV-3141, 2005 WL 3005612 at *7 (N.D. Ill. Nov. 8, 2005) (emphasis in original). That is why the courts in *4 MVR*, *Du Pont*, and *Landis* permitted the relevant litigants to elaborate on their theories of misrepresentation at the summary judgment stage. Neither is Karpeles's suggestion that Greene should have amended the complaint well-taken. "The federal rules do not contemplate that parties will amend their pleadings to reflect new information obtained in the discovery process." *Ash*, 879 F.2d at 274. Indeed, the practical consequence of Karpeles's view of the relationship between the complaint and summary judgment practice would be parties filing serial amendments to the complaint as each new fact is

learned, which no doubt would be a burdensome practice for all involved.[3] But there is no such requirement.

Indeed, it has long been error to "refuse[] to admit evidence [a plaintiff seeks] to introduce as proof of fraud beyond the specific acts alleged in the complaint." *Sundstrand Corp. v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973). Seventh Circuit precedent cautions against entertaining "new and drastic" factual allegations raised at summary judgment, *Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014), but when the facts relied upon at summary judgment are of the same flavor as those alleged in the complaint, nothing prevents a court from considering them, *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996).

In *Samuels v. Wilder*, for instance, the plaintiff alleged that the defendant, a partner in the oil business, had defrauded it by "cherry picking," a discredited oil industry practice by which one party favors itself while allocating well interests. *See* 871 F.2d 1346, 1348 (7th Cir. 1989). But at summary judgment, the plaintiff attempted to rely on a theory of fraud that had "little to do" with its "cherry picking" theory. *Id.* at 1349-50. The Seventh Circuit held that the district court appropriately declined to consider this new theory. *See id.*

The court contrasted its conclusion with *Sundstrand*. In *Sundstrand*, the plaintiff sued the defendants for securities fraud. 488 F.2d at 809. The complaint alleged three specific instances of fraudulent misconduct and the district judge prevented the plaintiff from presenting evidence of the fraud beyond that related to those statements. *Id.* at 811. The Seventh Circuit concluded that this was error. The court held that it was inappropriate to limit the plaintiff to the specific

---

[3] Of course, should the Court prefer that Greene file an amended complaint that quotes directly and extensively from Karpeles's own deposition testimony and discovery responses, he would be glad—and would seek leave—to do so.

13

misrepresentations alleged in the complaint because "the fruits of discovery … provide a wealth of information relevant to discerning the breadth of a complaint," and the plaintiff had, through discovery, put the defendants on notice that it would elaborate on its allegations as the case developed. *Id.* at 811-12. Because these elaborations were relevant to the fraudulent scheme already alleged in the complaint, the Seventh Circuit concluded that they should be considered. *Id.* at 812.

That distinction was also at play in one of Karpeles's cited cases. In *George v. Kraft Foods Global, Inc.*, an ERISA case, the plaintiff alleged that a 401(k) plan's fiduciaries had breached their duties by paying out excessive fees to two service providers (a recordkeeper and trustee). *See* 641 F.3d 786, 788-89 (7th Cir. 2011). According to the plaintiffs, the fiduciaries should have (but did not) solicited competitive bids for these services after 1995, resulting in the plan paying unreasonable rates for recordkeeping services every year. *Id.* at 798. To support this claim, the plaintiffs sought to designate an expert who opined that fees paid by actively managed funds are necessarily unreasonable because active fund management offers no tangible benefit over passive fund management. *Id.* at 791-92. The court excluded that testimony, finding that the excessive-fees theory alleged by the plaintiffs had nothing to do with whether the fund was actively or passively managed. *Id.* at 792.

The problem with *Samuels* and *George* is that the new facts introduced at summary judgment advanced a completely new factual basis for liability that was unrelated to the allegations in the complaint. This is the type of "new and drastic" change that the Seventh Circuit has warned against. But *Sundstrand* shows that a plaintiff is entitled to elaborate on the allegations in his complaint, even if specific misrepresentations must be alleged to comply with

14

Rule 9(b). A plaintiff's theory is not limited just to the misrepresentations and facts specified in the complaint.

Here, Greene's theory of fraud—*i.e.*, the types of things Karpeles misrepresented, why he misrepresented them, and how/when he misrepresented them to Mt. Gox's users—has remained constant. Discovery has allowed Greene to explore and elaborate on those theories, including by adding new details and misrepresentations. These are not "new and drastic" allegations. Instead, they are consistent with what is alleged in the complaint. *See Sundstrand*, 488 F.2d at 812. And to the matter at hand, Professor Goforth's declaration merely discusses these new details. Her report does not shift Greene's entire theory of liability or represent an attempt to revive a claim previously rejected by the Court. *See George*, 641 F.3d at 792. Thus, while the expert report disclosed in *George* discussed facts and issues outside the case and was thus irrelevant, Professor Goforth's declaration opines on issues related to the core theory of liability at play: Karpeles's fraud by misrepresentation (through the Terms of Use) and concealment (of evidence of thefts from and losses affecting Mt. Gox). It is, therefore, relevant. *See* Fed. R. Evid. 702(a).

## CONCLUSION

The motion to strike should be denied.

Dated: February 18, 2020

GREGORY GREENE, individually and on behalf of a class of similarly situated individuals,

By: /s/Benjamin S. Thomassen
    One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Benjamin S. Thomassen
bthomassen@edelson.com
Edelson PC
350 North LaSalle Street, 14th Floor

15

Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Counsel for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

      I, Benjamin S. Thomassen, an attorney, hereby certify that on February 18, 2020, I served the above and foregoing document by causing a true and accurate copy of such paper to be filed and served on all counsel of record via the court's CM/ECF electronic filing system.

                                              /s/ Benjamin S. Thomassen