# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| | ) | |
| | ) | Hon. Gary Feinerman |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Susan Cox |
| v. | ) | |
| | ) | |
| MARK KARPELES, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MARK KARPELES' COMBINED REPLY IN SUPPORT**
**OF HIS MOTION FOR SUMMARY JUDGMENT**
**PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 AND**
**HIS MOTION TO STRIKE EXPERT DISCLOSURE OF AND PRECLUDE**
**EXPERT TESTIMONY FROM CAROL R. GOFORTH**

Dated: March 13, 2020

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

## **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

I.    MR. KARPELES' MOTION FOR SUMMARY JUDGMENT SHOULD BE
      GRANTED. ........................................................................................................2

      A.    Mr. Greene Concedes that He Cannot Succeed On the Fraud Claims
            He Actually Alleged. ..........................................................................3

II.   MR. GREENE'S LATEST THEORIES ARE COMPLETELY NEW FACTUAL
      THEORIES THAT CANNOT BE ALLOWED AT THIS STAGE OF THE
      PROCEEDINGS. ................................................................................................6

      A.    The Court Should Not Consider Any Documents Not Produced In
            Discovery or Buried in Thousands of Pages of Production Documents...........7

      B.    Mr. Greene Cannot Amend His Complaint in Response to a Summary
            Judgment Motion. ...............................................................................10

      C.    Questions at Mr. Karpeles' Deposition, Just Over a Month Before the
            Close of Discovery, Do Not Constitute Notice.................................14

      D.    Mr. Greene's Arguments on This Issue in His Response to the Motion
            to Strike Expert Disclosure of and Preclude Expert Testimony from
            Carol R. Goforth Are Also Flawed. ..................................................17

III.  IF THE COURT WERE TO CONSIDER MR. GREENE'S NEW
      ALLEGATIONS, THERE IS STILL NO ISSUE OF MATERIAL FACT ON HIS
      FRAUD CLAIM. ...............................................................................................19

      A.    Mr. Greene Cannot Sustain a Claim Based on the Terms of Use....................20

      B.    Mr. Greene Cannot Use a Contradictory Declaration to Stave off
            Summary Judgment. ...........................................................................21

      C.    There Is No Evidence that Mr. Karpeles Actively Concealed Flaws
            From Mr. Greene. ...............................................................................22

      D.    Illinois Law Forecloses a Fraud-On-The-Market Theory...............................23

IV.   MR. KARPELES HAS NOT WAIVED THE ONE-WAY INTERVENTION
      RULE. ...............................................................................................................24

V.    MR. KARPELES' MOTION TO STRIKE PLAINTIFF'S EXPERT AND
      PRECLUDE HER TESTIMONY SHOULD BE GRANTED. ........................25

CONCLUSION................................................................................................................ 26

## **TABLE OF AUTHORITIES**

**Cases**

*4 MVR, LLC v. Warren Hill Constr. Co. Inc.*,
No. 12-10674-DJC, 2016 WL 4775451 (D. Mass. Sept. 13, 2016) .......................................... 17

*Ash v. Wallenmeyer*, 879 F.2d 272 (7th Cir. 1989).......................................................................... 13

*Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841 (7th Cir. 2007) ........................................ 20

*Auston v. Schubnell*, 116 F.3d 251 (7th Cir. 1997)......................................................................... 12

*Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801 (Ill. 2005) .......................................... 20

*Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162 (7th Cir. 1996) ........................ 21

*BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529 (7th Cir. 2018) ..................... 11

*CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729 (7th Cir. 2015) ............................................ 11

*Colovos v. Owens-Corning Fiberglas Corp.*,
Case No. 93 C 6483, 1995 U.S. Dist. LEXIS 15183 (N.D. Ill. Oct. 11, 1995). ................ 12, 15

*Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675 (7th Cir. 2005) ............................. 11

*Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584 (Ill. 1996) .................................................... 19

*Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir. 2016) .............................................................. 24

*Cowen v. Bank United of Texas, FSB*, 70 F.3d 937 (7th Cir. 1995) .............................................. 24

*Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392 (7th Cir. 2009).................................................. 22

*Del. Motel Assocs. v. Capital Crossing Servicing Co. LLC*,
No. 17 C 1715, 2017 U.S. Dist. LEXIS 167201 (N.D. Ill. Oct. 10, 2017). ............................. 13

*Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*,
No. 17 C 6285, 2019 U.S. Dist. LEXIS 114960 (N.D. Ill. July 11, 2019) ........................ 12, 13

*E. I. Du Pont de Nemours & Co. v. Abbott Labs.*,
No. 90 C 7338, 1992 U.S. Dist. LEXIS 14204 (N.D. Ill. Sep. 16, 1992)................................ 17

*George v. Kraft Foods Global, Inc.*, 641 F.3d 786 (7th Cir. 2011) .............................................. 26

*Griffin v. Potter*, 356 F.3d 824 (7th Cir. 2004)............................................................................. 11

*Henderson Square Condo. Ass'n v. Lab Townhomes, L.L.C.*,
16 N.E.3d 197 (Ill. App. Ct. 2014) ......................................................................................... 23

*Information Resources, Inc. Securities Litig.*,
No 89 C 3772, 1994 U.S. Dist. LEXIS 4500 (N.D. Ill. Apr. 11, 1994)................................... 24

*Kostovetsky v. Ambit Energy Holdings*, LLC,
242 F. Supp. 3d 708 (N.D. Ill. 2017) (Feinerman, J.).................................................... 11, 14

*Medline Indus. v. Sullivan*,
No. 08 C 5867, 2009 U.S. Dist. LEXIS 93970 (N.D. Ill. Oct. 6, 2009) ................................. 16

*Mitchell v. Skubiak*, 618 N.E.2d 1013 (Ill. App. Ct. 1993)......................................................... 23

*Oglesby v. Rotche*, No. 93 C 4183, 1994 U.S. Dist. LEXIS 4866 (N.D. Ill. Apr. 15, 1994)........ 25

*Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*,
    No. 02 C 1329, 2004 U.S. Dist. LEXIS 19 (N.D. Ill. Jan. 5, 2004) ................................... 12, 14

*Phillips v. DePaul Univ.*,
    19 N.E.3d 1019 (Ill. App. Ct. 2014) ................................................................... 22, 23

*Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473 (7th Cir. 2019)........................................ 10, 11

*Samuels v. Wilder*, 871 F.2d 1350 (7th Cir. 1989) ................................................................ 15, 18

*Sanders v. Venture Stores, Inc.*, 56 F.3d 771 (7th Cir. 1995) ....................................................... 13

*Shanahan v. City of Chicago*, 82 F.3d 776 (7th Cir. 1996) ......................................................... 12

*Thompson's Gas & Elec. Serv. v. BP Am. Inc.*, 691 F. Supp. 2d 860 (N.D. Ill. 2010)..... 19, 20, 23

*Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401 (7th Cir. 2009) ................................ 11

*Underwriters Labs. Inc. v. Solarcom LLC*,
    No. 02 C 3933, 2002 U.S. Dist. LEXIS 18278 (N.D. Ill. Sept. 18, 2002)......................... 12, 14

*United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180 (D.D.C. 2017) ....... 17

*Vidimos, Inc. v. Laser Lab*, 99 F.3d 217 (7th Cir. 1996) ............................................................ 18

*Whitaker v. Milwaukee Cty.*, 772 F.3d 802 (7th Cir. 2014)......................................................... 11

*Whitaker v. T.J. Snow Co.*, 151 F.3d 661 (7th Cir. 1998)............................................................ 11

**Statutes**

Fed. R. Civ. P. 23(c)(1)................................................................................................................. 24

Fed. R. Civ. P. 30(d)(3)................................................................................................................. 16

Fed. R. Civ. P. 8 ..................................................................................................................... 12, 18

Fed. R. Civ. P. 9(b) ............................................................................................................... 2, 7, 14

## INTRODUCTION

The issue for the Court is very straightforward: can Plaintiff Gregory Greene pursue completely different and new factual theories for a common law fraud claim than what he pled in the operative complaint? Mr. Greene takes 23 pages [Dkt. No. 465] to try to convince this Court that generic allegations that were made on behalf of four plaintiffs who were in the case at the time of filing the governing complaint somehow save his individual fraud claim. In doing so, Mr. Greene ignores the allegations specific to him in the Complaint -- which do not include any claim that he looked to or relied on the Terms of Use on Mt. Gox's website. In fact, that cannot possibly be true for the simple and objective reason that the Terms of Use did not exist at the time he signed up for his account and made his initial deposit on the Mt. Gox exchange. Yet Mr. Greene repeatedly asserts that this is the basis for his claim now.

Mr. Greene attempts to do what Seventh Circuit law plainly forbids: change the underlying basis of his fraud claims after Defendant Mark Karpeles filed his motion for summary judgment. The only remaining claim against Mr. Karpeles is for "consumer fraud" (Count III); which Mr. Greene now claims is a common law fraud claim.[1]

As demonstrated in Mr. Karpeles' motion for summary judgment, and the supporting memorandum and statement of material facts, Mr. Greene doomed his fraud claim by directly contradicting the underlying allegations in his Complaint of the purported fraud or deception during discovery. In response, Mr. Greene sets forth a host of new factual allegations that were not alleged in his Fourth Amended Class Action Complaint ("Complaint"). His addition of new allegations of fraud in response to a motion to summary judgment violates Seventh Circuit

---

[1] On February 18, 2020, Mr. Greene voluntarily dismissed his conversion claim (Count I) without prejudice and his negligence claim (Count II) with prejudice. [*See* Dkt. 464.] Those counts therefore are not at issue.

precedent and Mr. Karpeles' unequivocal right under Federal Rule of Civil Procedure 9(b) for the fraud claim against him to be pled with particularity.

As to the fraud claim that *is* actually alleged in his Complaint, by failing to address the allegations that Mr. Greene made specific to him about any underlying fraud, Mr. Greene concedes that those claims cannot survive summary judgment. Even if the Court were to consider these entirely new factual theories, Mr. Greene cannot create an issue of material fact by submitting a declaration that contradicts his deposition testimony. Nor has Mr. Greene produced evidence that Mr. Karpeles made any half-truth representations or actively concealed anything from Mr. Greene to create a duty to speak. Additionally, Mr. Greene's implication of a fraud-on-the-market theory of reliance is misplaced.

Similarly, with respect to Mr. Karpeles' pending Motion to Strike Expert Disclosure of and Preclude Expert Testimony from Carol R. Goforth [Dkt. No. 458], Professor Carol R. Goforth's opinion is only relevant to the extent that this Court allows Mr. Greene to substantively change his fraud claim in response to Mr. Karpeles' motion for summary judgment. Because such an amendment is not allowed, Professor Goforth's opinion is irrelevant to the issues and allegations in this case, and Mr. Karpeles respectfully requests that this Court grant his motion to strike her report and preclude any evidence from her in its consideration of the motion for summary judgment (or at any time).

## I.     MR. KARPELES' MOTION FOR SUMMARY JUDGMENT SHOULD BE GRANTED.

Mr. Greene's opposition to summary judgment confirms that Mr. Greene is now seeking to proceed on entirely new factual theories that are not found anywhere in the Complaint with respect to Mr. Greene; and one new theory cannot possibly be true as a matter of the objective factual record in any event. First, Mr. Greene now relies on representations contained in Mt.

2

Gox's "Terms of Use." (Opp. at 4-5.) Second, Mr. Greene contends that his common law fraud claim is premised on the use of the "Gox Bot." (*Id.* at 5-7.) But an analysis of the operative Complaint establishes that Mr. Greene cannot avoid summary judgment (or seek any relief) premised on these un-pled theories.

**A.    Mr. Greene Concedes that He Cannot Succeed On the Fraud Claims He Actually Alleged.**

In the Complaint, Mr. Greene made certain specific allegations of fraud with respect to his own interactions with Mt. Gox. The specific factual allegations relating to Mr. Greene, expressly included under the heading "Facts Relating to Plaintiff Greene," are found in Paragraphs 49-58. [Dkt. No. 245 at 14-15, ¶¶ 49-58.]

*Nowhere* in any of those allegations specific to Mr. Greene is there any mention of reviewing, relying upon, or reading the Terms of Use when he opened his Mt. Gox account, or that he is basing his portion of a fraud claim on the Terms of Use. This is in stark contrast to two other now-former plaintiffs, who expressly alleged that they accepted the Terms of Use when activating their accounts on Mt. Gox. [Dkt. No. 245 ¶ 59 (allegations about Mr. Lack accepting Mt. Gox's Terms of Use); ¶ 70 (same for Mr. Motto).] All that Mr. Greene alleges is that he "read [Mt. Gox's] advertisements about its service" that he contends were "substantially similar to the advertisements and representations described in Paragraphs 13-14 above." [Dkt. No. 245 ¶ 49.] Paragraph 13 states:

> In addition to buying and selling bitcoins, Mt. Gox promised its customers "the ability to securely store Bitcoin in a virtual 'vault' for safe keeping" on its servers. It further promised that its website would be 'always on' so that users could '[b]uy and sell Bitcoin 24/7/365 with world's most sophisticated trading platform."

The source of these representations is the "About Us" section of the Mt. Gox website (in archived format). [Dkt. No. 245 ¶ 13 n.3 and 4.]

Paragraph 14 does reference the Terms of Use, but only cites the provision that:

MtGox represents and warrants that … it will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account detail, and on such Member's behalf.

[Dkt. No. 245 ¶ 14 (citing in footnote 5 the Terms of Use as the source).]

Despite Mr. Greene's citation to Paragraphs 13-14 as a general matter, he only claims the following representations that he allegedly relied upon in the Complaint: (1) "that [Mt. Gox] would allow him to 'quickly and securely trade bitcoins with other people around the world'" and (2) "give him 'the ability to securely store [his] Bitcoins in a virtual 'vault for safe keeping' -- Greene signed up for an account on Mt. Gox's website in 2012 and began trading and selling Bitcoin." [Dkt. No. 245 ¶ 50.]

Neither of these representations is found in the Terms of Use, which Mr. Greene concedes by failing to point to anywhere they are contained in the Term of Use. (*See generally* Opp.) At his deposition, Mr. Greene confirmed that these allegations were entirely baseless. (Plaintiff's Resp. to SOF ¶¶ 20-28.)

Mr. Greene further tied his allegations in the Complaint to Mizuho's limitations on bank transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had supposedly known about since 2011, and Mt. Gox's plan to declare bankruptcy. [*See*, *e.g.*, Dkt. 245 ¶ 58.] These allegations, too, have been abandoned.

There is no dispute about these allegations: Mr. Greene has renounced them. Without an issue of material fact, summary judgment should be entered for Mr. Karpeles on Mr. Greene's actual fraud claim.

**B.      Mr. Greene's New Theory About the Terms of Use Fails As a Factual Matter.**

The issue for the Court, therefore, is whether Mr. Greene can proceed on new factual theories entirely absent from the Complaint.  Mr. Greene's new fact patterns for his fraud claims assert claims based on the Terms of Use, new contentions that Mr. Karpeles hid or misrepresented the fact that Mt. Gox did not have enough cash and/or Bitcoin to cover users' deposits due to previously unalleged hacks or thefts, and new claims about an automated trading program (the "Gox Bot").  (Opp. at 1-2.)  None of these allegations are mentioned in the Complaint.  For instance, the Complaint never once includes the term "Gox Bot" or "CoinLab," major aspects that Mr. Greene now contends underlie his current claim.  (Opp. at 5-9 and 16.)

Mr. Karpeles will explain why Mr. Greene cannot pursue any of these new theories as a matter of law in the next section.  Before getting into that, however, the allegations about the Terms of Use are particularly disturbing and need to be addressed.  This latest theory highlights what is actually going on here, as Mr. Greene desperately tries to keep his claim alive in light of his own testimony and discovery responses that fully and completely undercut his allegations in the Complaint that he has allowed to stand on file for almost three years in the current iteration (and other similar iterations for over six years).

Specifically, Mr. Greene cannot support his new theory that "the TOU's representations convinced Greene that the Exchange was secure and he relied on them when deciding to move bitcoins onto Mt. Gox" as a factual matter.  (Opp. at 10.)  This is patently and objectively false.

Mr. Greene moved bitcoins to Mt. Gox on or about January 5, 2012.  (Karpeles Resp. to Pl. SOAF, Ex. F.)  The Terms of Use on Mt. Gox's website did not exist before at least January 20, 2012.  (*Id.*, Ex. B at 94:12-95:11.)  Therefore, there is no possible way that any representations in the Terms of Use convinced Mr. Greene to move bitcoins onto the Mt. Gox

5

exchange on January 5, 2012, or that he relied upon them in any way. Mr. Greene reiterates this fallacy numerous times in trying to maintain his claim, reasserting for example that "Greene reviewed the Mt. Gox Terms of Use *when creating an account* and relied on the representations contained therein when deciding to move and keep assets on the Exchange." (Opp. at 17 (emphasis added).) This is impossible, as his creation of an account and making a deposit on the Mt. Gox Exchange preceded the existence of the Terms of Use by at least more than two weeks.

In addition, to the extent that Mr. Greene alleges that the Terms of Use had anything to do with his decision to keep bitcoins on Mt. Gox or to move additional bitcoins to the site in March 2013, that too is completely belied by his own deposition testimony. He was aware of other hacks, acknowledged that learning about a Mt. Gox hack before setting up an account did not have any effect on his decision, and acknowledged that no website or Bitcoin exchange is 100% secure. (Plaintiff's Resp. to SOF ¶¶ 21, 28; *id.*, Ex. D 10:22-11:7.)

Mr. Greene's latest theory about the Terms of Use fails as a matter of indisputable fact. In addition, like the other theories, it also cannot be pursued as a matter of law, as discussed in the next section.

## II. MR. GREENE'S LATEST THEORIES ARE COMPLETELY NEW FACTUAL THEORIES THAT CANNOT BE ALLOWED AT THIS STAGE OF THE PROCEEDINGS.

Mr. Greene's attempt violates binding Seventh Circuit law, which prohibits this exact tactic. His latest allegations cannot thwart summary judgment; they should not be allowed or considered. Mr. Karpeles therefore should be awarded summary judgment in his favor on the last remaining count for common law fraud. The inclusion of a significant number of documents never produced in discovery (and most of which are dated years ago) shows that this new theory was never disclosed in discovery. Nor can Mr. Greene amend his factual theory now. His approach is exactly what is not allowed, particularly not for fraud claims: a sort of "you know

6

what you did" style assertion for his late and unwarranted changes.  Seventh Circuit law is quite clear that this is not allowed.

A.     **The Court Should Not Consider Any Documents Not Produced In Discovery or Buried in Thousands of Pages of Production Documents.**

Permitting Mr. Greene to change his specific fraud allegations at the summary judgment stage would eviscerate Federal Rule of Civil Procedure 9(b) by allowing plaintiffs to plead specific fraudulent conduct, wait until the close of discovery, and then completely change their allegations when the original claim is not borne out by the evidence.   In his opening Memorandum, Mr. Karpeles methodically went through the allegations in the Complaint, and showed why the factual record established that there was no issue of material fact on any of the alleged fraudulent conduct.   (Mem. at 13-15.)   In Opposition, Mr. Greene has completely changed his theory, apparently realizing that his actual claims cannot survive judicial scrutiny. There is no better indication of that than the fact that Mr. Greene needed eight pages to explain his new theories, with virtually no citations to the governing Complaint.  (Opp. at 2-9.)

Even worse, and just as telling, Mr. Greene has appended approximately 350 pages of documents comprising 31 exhibits to support his new theories.  [Declaration of Benjamin S. Thomassen Dkt. No. 467.]  Yet unjustifiably, **nine** of these 31 exhibits were never produced or identified in discovery in this case, fact discovery that closed on December 12, 2019, long after the dates on these documents.  [Declaration of Benjamin S. Thomassen Dkt. No. 467 Ex. B (internet article dated February 21, 2019 not produced in discovery and accessed on February 18, 2020 according to its header); Ex. G (screenshot of post dated September 10, 2012 not produced in discovery and accessed on February 17, 2020 according to its header); Ex. Q (article dated September 20, 2019 not produced in discovery and apparently accessed on February 12, 2020 according to its header); Ex. T (internet article dated March 14, 2019 not produced in discovery

and apparently accessed on January 30, 2020 according to its header); Ex. U (document allegedly "leaked onto the Internet in February 2014" with no authentication or supporting testimony and not produced in discovery); Ex. V (document purportedly dated January 2012 allegedly downloaded from internet archive with no indication of the date that was done, and not produced in discovery); Ex. W (document purportedly dated August 2012 and allegedly downloaded from internet archive with no indication of the date that was done, and not produced in discovery); Ex. Y (press release dated February 28, 2013 and allegedly downloaded from internet archive not produced in discovery); Exhibit AF (document dated July 4, 2013 downloaded from internet archive and not produced in discovery and apparently accessed on February 12, 2020 according to its header); Dkt No. 432 (ordering fact discovery closed on December 12, 2019).][2]

In addition to the fact that these documents were never produced in discovery and cannot be considered for that reason alone, most -- if not all -- of them are inadmissible in any event. (*See, e.g.,* Opp. at 7-9.)  The Court cannot rely on internet news articles; those are not admissible evidence.  And there is no testimony that would provide any insight into documents allegedly "leaked" on the internet.[3]

In addition, Mr. Greene has also included five filings in other District Courts in support of his new theory.  [Dkt. 467 Ex. R (seizure warrant filed on June 19, 2013 in the District of Maryland federal court); Ex. S (seizure warrant filed on August 8, 2013 in the District of

---

[2] None of these exhibits have bates-labels, and Mr. Karpeles' counsel has conducted a diligent search in attempting to find these documents in the voluminous production.

[3] Mr. Karpeles further objects to the portions of Mr. Thomassen's Declaration [Dkt. No. 467] that purport to provide factual testimony.  Mr. Thomassen is an attorney of record in this case. The Court should not consider unsupported factual embellishments, such as whether a document was "leaked" to the internet in 2014 (¶ 22), or the statement that Mr. Karpeles "confirmed some of the particulars in the documents" (*id.* ¶¶ 22-23).  Nor should it consider the arguments made in trying to tie together other testimony.  (*See, e.g.,* ¶¶ 8, 17, 23, 24, 25 and 32.)  That is not appropriate for such a declaration.

Maryland federal court); Ex. Z, AA and AB (documents filed in 2013 in another case pending against Mt. Gox in the Western District of Washington federal court).]  While these documents were produced in this litigation, there were among the over 30,000 pages of production documents in this case.  They were not used in any deposition or identified in any particular discovery response.  There is no possible way that these documents can be considered as having been used in a manner to give any notice to Mr. Karpeles that they would be part of a new theory for Mr. Greene's fraud claim.

There are also two new declarations.  One, from Jed McCaleb [Dkt. No. 467 Ex. N], attached 2,322 pages of documents that Mr. Greene received in response to a subpoena on November 13, 2019 and did not produce to Mr. Karpeles until February 11, 2020 -- after Mr. Karpeles had filed his motion for summary judgment.  (Exhibit A, October 18, 2019 e-mail from Ben Thomassen; Exhibit B February 11, 2020 e-mail from Ben Thomassen.)  These attached documents cannot even be complete and provide all documents responsive to Mr. Karpeles' document requests, as they do not include responsive e-mails and documents relating to the declaration itself, such as drafts.  (Mr. Karpeles requested all communications with Mr. McCaleb, including those of his attorneys with Mr. McCaleb or Mr. McCaleb's representatives.)

Mr. Greene has also submitted a new declaration, which directly contradicts his deposition testimony.  [Dkt. No. 467 Ex. F.]  And then there is also Professor Goforth's declaration, which only discusses Mr. Greene's latest theories and was provided after the close of discovery.  It does nothing to save Mr. Greene's deficient factual allegations.  [Dkt. No. 467 Ex. O.]

While the Court should disregard these materials in their entirety, they also confirm a bigger problem:  there is no way that this Court can find that these new theories are just fine-

9

tuning existing allegations. They are completely new theories, that required substantial additional declarations, a proposed expert, and citations to documents never previously produced or identified in any manner so as to give notice that these would be the basis for any fraud claim. These materials comprise a whopping 17 of the 31 documentary exhibits that Mr. Greene submitted in opposition to Mr. Karpeles' motion for summary judgment. This alone establishes that this was not a theory that was already pled and Mr. Greene just included a little bit more in support from discovery. These are entirely new allegations -- allegations that Mr. Karpeles could not possibly have known (and did not know) are supposedly the basis for the fraud claim. They are not allowed at this stage of this litigation.

**B.    Mr. Greene Cannot Amend His Complaint in Response to a Summary Judgment Motion.**

In bringing new factual allegations in response to a motion for summary judgment, Mr. Greene attempts to supplant the specific fraud allegations in his Complaint, something which Seventh Circuit precedent clearly forbids. Mr. Greene is wrong when he contends that Rule 9(b) is only a pleading standard and that he can "develop his case in discovery," even if it means changing the entire factual basis for the fraud claim. (Opp. at 18.)

A plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012), citing *Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). "When a new argument is made in summary judgment briefing, the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories [the] plaintiff has pursued so far." *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 479 (7th Cir. 2019). While a plaintiff can alter the legal theories asserted in his complaint, he "cannot alter 'the factual basis of [his] complaint at

summary judgment.'" *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018), quoting *Whitaker v. Milwaukee Cty.*, 772 F.3d 802, 808 (7th Cir. 2014).

A plaintiff may "refine and develop his legal and factual theories based on the record that emerges in discovery." *Kostovetsky v. Ambit Energy Holdings*, LLC, 242 F. Supp. 3d 708, 719 (N.D. Ill. 2017) (Feinerman, J.) (citing *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 743 (7th Cir. 2015)). However, at the summary judgment stage a plaintiff cannot "introduce a new factual basis not previously presented in the pleadings for a claim." *Whitaker v. Milwaukee Cty.*, 772 F.3d at 808.

This limitation is "routinely enforce[d] . . . against plaintiffs who wait until summary-judgment briefing to raise a new claim." *Reed*, 915 F.3d at 479, citing *Anderson*, 699 F.3d at 997 (plaintiff could not reassert disability discrimination and reasonable accommodation claims in his response to motion for summary judgment); *Trade Finance Partners, LLC v. AAR Corp.*, 573 F.3d 401, 412 (7th Cir. 2009) (finding plaintiff waived alternative basis for breach of contract claims by raising them for the first time during summary judgment proceedings); *Conner v. Illinois Dep't of Natural Resources*, 413 F.3d 675, 679-80 (7th Cir. 2005) (affirming summary judgment for defendant where plaintiff raised temporary assignment pay and non-promotion as new bases for her employment discrimination claim when responding to summary judgment motion); *Griffin v. Potter*, 356 F.3d 824, 830 (7th Cir. 2004) (upholding summary judgment on discrimination claims where plaintiff, for the first time, in response to summary judgment claimed that employer withheld raises); *Grayson*, 308 F.3d at 817 (rejecting plaintiff's attempt to argue retaliation claim related to specific EEOC charge against summary judgment when complaint asserted retaliation related to a different EEOC charge); *Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 663-64 (7th Cir. 1998) (plaintiff waived negligence theory by only inserting

11

the claim into her brief in opposition to summary judgment); *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir. 1997) (rejecting promissory estoppel claim added at the summary judgment stage); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) (upholding denial of motion to amend the complaint where request made after discovery had closed in summary judgment response).

Mr. Greene's attempt to alter his fraud claim is even less acceptable: "A court should strengthen its unwillingness to consider 'new' theories leveled in response to a defendant's summary judgment motion when, as in the instant case, the plaintiff accuses the defendant of committing fraud." *Colovos v. Owens-Corning Fiberglas Corp.*, Case No. 93 C 6483, 1995 U.S. Dist. LEXIS 15183, at *24 (N.D. Ill. Oct. 11, 1995). "While the lenient notice pleading standards of Rule 8 of the Federal Rules of Civil Procedure sometimes may allow a plaintiff to raise arguments based on facts not alleged in the initial complaint, this is not true when the plaintiff alleges fraud." *Underwriters Labs. Inc. v. Solarcom LLC*, No. 02 C 3933, 2002 U.S. Dist. LEXIS 18278, at *3 n. 5 (N.D. Ill. Sept. 18, 2002). "A plaintiff cannot put off making particularized allegations of fraud until summary judgment. Such an approach would thwart the underlying purpose of Rule 9(b) and render it a nullity." *Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02 C 1329, 2004 U.S. Dist. LEXIS 19, at *24-25 (N.D. Ill. Jan. 5, 2004).

In spite of this clear authority, Mr. Greene argues that Rule 9(b) is a pleading rule that does not affect a motion for summary judgment, citing *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17 C 6285, 2019 U.S. Dist. LEXIS 114960, at *8-9 (N.D. Ill. July 11, 2019). (Opp. at 18.) But *Dyson* does not help Mr. Greene. In that case, the district court rejected the defendant's argument that it could not consider new fraudulent statements at the summary judgment stage because defendant "cite[d] no cases applying Rule 9(b) to preclude consideration of allegedly

fraudulent statements at the summary judgment stage merely because they were not specifically mentioned in the pleadings." *Dyson,* 2019 U.S. Dist. LEXIS 114960, at *8. As demonstrated above, there is an overwhelming amount authority from the Seventh Circuit and this District holding just that. Apparently the defendant in *Dyson* did not alert the Court to this extensive authority. Likewise, Mr. Greene's reference to *Ash v. Wallenmeyer*, 879 F.2d 272 (7th Cir. 1989) (Opp. at 21-22), fares no better, as *Ash* addresses a trial judge's refusal to allow a plaintiff to pursue certain damages arising from the same underlying fraudulent conduct. *Ash,* 879 F.2d at 274 ("discovery . . . revealed that the damages resulting from the alleged fraud . . . went beyond the diversion of business"). The plaintiff in *Ash* was not, as here, alleging entirely different frauds as the basis of his claim. Nor does the *Ash* case, which is over 30 years old, override the significant Seventh Circuit and more recent precedent cited above on this exact issue.

There is no doubt that Mr. Greene is changing his factual allegations of fraud. Contrary to the allegations, Mr. Greene does not "still rel[y] on the Mt. Gox Terms of Use to ground his fraud claim." (Opp. at 20.) As explained above in Section I, this was *never* Mr. Greene's claim, nor could it be. Mr. Greene has undeniably changed the "who, what, when, where, and how" in response to Mr. Karpeles' summary judgment motion. As such, Mr. Greene's entirely new factual theory "provides, by itself, a sufficient basis for the Court to grant [Defendant's] motion for summary judgment." *Del. Motel Assocs. v. Capital Crossing Servicing Co. LLC*, No. 17 C 1715, 2017 U.S. Dist. LEXIS 167201, at *8 (N.D. Ill. Oct. 10, 2017).

"There must be a point at which a plaintiff makes a commitment to the theory of its case." *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995) (internal quotation omitted). This case is most like *Grayson*, where the plaintiff alleged "that he was disciplined in retaliation for opposing discrimination against his coworker, but at summary judgment he

13

maintained for the first time that he had actually been retaliated against for complaining to the EEOC about discrimination against him." *Kostovetsky*, 242 F. Supp. at 718, citing *Grayson*, 308 F.3d at 814-15, 817. Here, Mr. Greene made specific allegations that Mr. Karpeles' alleged misrepresentations and omissions were tied to Mizuho's limitations on bank transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had supposedly known about since 2011, and Mt. Gox's plan to declare bankruptcy. [*See, e.g.*, Dkt. 245 ¶ 58.] Mr. Greene's new factual theories raised in response to summary judgment are entirely different.

When confronted with the facts regarding the specific bases for the fraud claim in the Complaint, Mr. Greene attempts to seek shelter in general allegations regarding Mt. Gox's Terms of Use and allegations that actually specifically reference a "transaction malleability" bug, which was not the cause of Mt. Gox shutting down (and which he disavowed). (Opp. at 19-20, citing Complaint ¶¶ 13, 14, 21, 23, 112, 115, 118). But the notice pleading standards of Federal Rule of Civil Procedure 8 do not allow Mr. Greene to make arguments regarding fraud claims based on facts not alleged in his Complaint. *See Underwriters Labs. Inc.*, 2002 U.S. Dist. LEXIS 18278 at *3 n.5. Mr. Greene's approach would render Federal Rule of Civil Procedure 9(b) "a nullity." *Payne*, 2004 U.S. Dist. LEXIS 19 at *25.

Mr. Greene cannot entirely change his factual bases for his fraud claims, as the overwhelming, most recent and binding authority from the Seventh Circuit requires, as well as the other authority from this District.

### C. Questions at Mr. Karpeles' Deposition, Just Over a Month Before the Close of Discovery, Do Not Constitute Notice.

Mr. Greene's argument that Mr. Karpeles was on notice of these claims due to his deposition and some documentaries borders on the ridiculous. (Opp. at 21-22; Opp. to Mot. to

Strike Expert at 9, 9 n.2, and 11.)  As discussed above, Mr. Greene's specific factual allegations centered around, and are inseparably tied to, representations relating to Mizuho's limitations on bank transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had supposedly known about since 2011, and Mt. Gox's plan to declare bankruptcy.  [*See*, *e.g.*, Dkt 245 at ¶¶ 39, 52, 54, 58.]  There were no specific references to any other hacks or bugs or any sort of bot activity.

Mr. Greene cannot pursue his new claims based on his assertions that the purported evidence "was known to" Mr. Karpeles in general (Opp. to Mot. to Strike Expert at 10; *see also* Opp. at 21), that questions at Mr. Karpeles' deposition somehow provided notice of the complete change in factual theories (*id.* at 11; *see also* Opp. at 21), or that that this new "theory of fraud pulls from information made publicly available in the last year" (*id.* at 9; *see also* Opp. at 21).  A party cannot sidestep its Rule 8 and Rule 9(b) obligations to plead facts with a "you should have known these facts" type position.  Nor are these new theories based on information that became publicly available in the last year.  As the exhibits to Mr. Thomassen's Declaration show on their face, the vast majority of these documents are dated years ago.  (And again, most were never produced in this litigation.)

Questions at a deposition are insufficient to put a defendant on notice of new claims raised in response to a summary judgment motion.  *Colovos*, 1995 U.S. Dist. LEXIS 15183, at *24-25, citing *Samuels v. Wilder*, 871 F.2d 1350 (7th Cir. 1989).  Exploring new claims in a deposition "is totally insufficient to put the defendants on notice" because "[o]ther issues not covered in the complaint are irrelevant and would be treated as such in the court's ruling on defendant's motion for summary judgment."  *Samuels*, 871 F.2d at 1350.  Furthermore, relevance objections are disfavored under the Rules:  "objections should be kept to a minimum

during a deposition, and 'ordinarily should be limited to those that under Rule 32(d)(3) might be waived if not made at that time, i.e., objections on grounds that might be immediately obviated, removed, or cured, such as to the form of a question or the responsiveness of an answer.'" *Medline Indus. v. Sullivan*, No. 08 C 5867, 2009 U.S. Dist. LEXIS 93970, at *4-5 n.2 (N.D. Ill. Oct. 6, 2009) (citing Fed. R. Civ. P. 30(d)(3), 1993 advisory committee's note).

In contrast, courts have found notice to defendants where, for example, "[e]arly in discovery, in response to interrogatories requesting additional information about the alleged fraud, [plaintiff] submitted a detailed elaboration of the allegations set forth in the complaint." *Wilder*, 871 F.2d at 1350, citing *Sundstrand Corp. v. Standard Kollsman Industries, Inc.*, 488 F.2d 807 (7th Cir. 1973). Even then, the discovery requests elaborated on allegations that plaintiff set forth in the complaint; they did not assert entirely new factual theories as the basis for a fraud claim.

That is not what happened here. Mr. Greene never elaborated on or amended his allegations of the underlying fraud. Questions at a deposition not only cannot provide sufficient notice to pursue a new factual theory as a matter of law, that certainly cannot be considered to have happened in this case as a matter of fact. At the time of Mr. Karpeles' deposition, Mr. Greene had three claims: the fraud claim and the now-dismissed claims for negligence and conversion. Mr. Greene's counsel's questions appeared to be directed at those other claims at most, and more reasonably appeared to be irrelevant. Not only would relevance objections have been frowned upon had the deposition been taken in the United States, Mr. Karpeles' deposition was taken in Tokyo under the strict rules of Japanese law regarding American depositions taken in Japan. Relevance objections (and instructions not to answer) were particularly impossible.

**D.** **Mr. Greene's Arguments on This Issue in His Response to the Motion to Strike Expert Disclosure of and Preclude Expert Testimony from Carol R. Goforth Are Also Flawed.**

Mr. Greene also addresses this issue in his response to Mr. Karpeles' Motion to Strike Expert Disclosure of and Preclude Expert Testimony from Carol R. Goforth. [*See* Dkt. 470.] In that response, Mr. Greene cites two non-Seventh Circuit opinions, *United States ex rel. Landis v. Tailwind Sports Corp.*, 234 F. Supp. 3d 180 (D.D.C. 2017) and *4 MVR, LLC v. Warren Hill Constr. Co. Inc.*, No. 12-10674-DJC, 2016 WL 4775451 (D. Mass. Sept. 13, 2016), and an inapplicable Northern District of Illinois opinion, *E. I. Du Pont de Nemours & Co. v. Abbott Labs.*, No. 90 C 7338, 1992 U.S. Dist. LEXIS 14204 (N.D. Ill. Sep. 16, 1992), for the proposition that a party may elaborate upon allegations based on information obtained during discovery. (Resp. to Mot. to Strike at 5-6.) Unfortunately for Mr. Greene, there is clear Seventh Circuit authority that a plaintiff cannot make new fraud claims in response to a summary judgment motion. (*See* Section II.B., *supra.*) The *E.I. Du Pont* case is also quite different from this case. Not only does it pre-date more robust and binding Seventh Circuit authority on this very point, in that case, the plaintiff in *E.I. Du Pont* "ha[d] known of [the defendant's] intent to use the allegedly misleading test data since discovery and of [the defendant's] intent to wage an 'inequitable conduct' defense since [the defendant] filed its answer." 1992 U.S. Dist. LEXIS 14204, at *7. This is not the case here, where Mr. Greene has lobbed many undisclosed documents at Mr. Karpeles in response to his motion for summary judgment, included totally new declarations supposedly supporting his new theories, pulled a few documents from a voluminous production and does not point to any pleadings that provided any information about these new theories. His fraud claim is limited to what he alleged: representations related to Mizuho's limitations on bank transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had supposedly known about since 2011, and Mt.

17

Gox's plan to declare bankruptcy. [*See* Dkt. 245 ¶ 58.] Mr. Greene never disclosed or provided any information about seeking to pursue theories based on the Terms of Use, an undisclosed hack from any other time, or the use of a "Gox Bot."

Mr. Greene's other cited cases only underscore that he cannot raise new allegations of fraud in a response to a summary judgment motion. (Resp. to Mot. to Strike at 13-15.) In *Vidimos, Inc. v. Laser Lab*, 99 F.3d 217 (7th Cir. 1996), the Seventh Circuit held that the plaintiff could alter its original legal theory, which is not what Mr. Greene is doing here. *See Vidimos*, 99 F.3d at 222 ("there is no burden on the plaintiff to justify its altering its original theory."). Of course what Mr. Greene leaves out is that the Seventh Circuit stated that fraud claims constituted an exception to this rule. *See id.* ("With immaterial exceptions, see, for example, *Samuels v. Wilder*, 871 F.2d 1346, 1350 (7th Cir. 1989) (proof of fraud), the rules require only the pleading of a claim, Fed. R. Civ. P. 8(a) . . . ."). Mr. Greene is not changing his underlying legal theory to another theory that fits the facts alleged in his Complaint; he is attempting to change the facts alleged in his Complaint to fit his theory.

The case at hand aligns with the Seventh Circuit's decision in *Samuels*. In *Samuels*, the plaintiffs attempted to add additional facts, which they claimed supported allegations of fraud in addition to the fraud and related common-law claims related to "cherry picking." *Samuels*, 871 F.2d at 1349 (7th Cir. 1989). Here, Mr. Greene is no longer alleging claims based on alleged misrepresentations and omissions related to Mizuho's limitations on bank transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had supposedly known about since 2011, and Mt. Gox's plan to declare bankruptcy. [*See* Dkt. 245 ¶ 58.] Instead, Mr. Greene asserts that Mr. Karpeles and Mt. Gox made fraudulent statements and omissions regarding the solvency of Mt. Gox and the operations of the Gox Bot. Simply put,

these are new *factual* allegations of fraud. The Seventh Circuit's opinion in *Samuels*, and the multiple further opinions discussed above, forbids Mr. Greene from asserting these theories in response to Mr. Karpeles' summary judgment motion.

For all of these reasons, the Court should not permit Mr. Greene to pursue these new factual allegations. Without them, his claims cannot withstand summary judgment, nor can Professor Goforth's testimony be considered relevant. For these reasons, both of Mr. Karpeles' pending motions should be granted in his favor.

## III.   IF THE COURT WERE TO CONSIDER MR. GREENE'S NEW ALLEGATIONS, THERE IS STILL NO ISSUE OF MATERIAL FACT ON HIS FRAUD CLAIM.

When taking out Mr. Greene's new factual underpinnings for his fraud claim, Mr. Greene's Opposition to Mr. Karpeles' summary judgment motion does not create an issue of material fact, and Mr. Karpeles is entitled to summary judgment on the only remaining claim. Mr. Greene has essentially conceded that. Even if the Court considers these new allegations, however, Mr. Greene's efforts are in vain. Mr. Karpeles explained in his opening Memorandum why Mr. Greene could not succeed on a statutory consumer fraud claim. (Mem. at 11-19.) While the Complaint alleges "consumer fraud," Mr. Greene now contends it is a claim for common law fraud. (Opp. at 11-18.) Even if rebranded as common law fraud, the claim still fails.

The parties agree that under Illinois law, the elements of common law fraud are: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Thompson's Gas & Elec. Serv. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010), citing *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996). Illinois common law fraud

19

claims must be proven by clear and convincing evidence. *Ass'n Ben. Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007), citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 856 (Ill. 2005). Mr. Greene argues, without any supporting authority, that his reliance can be inferred from circumstances alone. (Opp. at 16-17.) That is not true: Mr. Greene must prove that he personally and actually relied on the misrepresentations at issue. *Thompson's Gas*, 691 F. Supp. 2d at 870, citing *Connick*, 675 N.E.2d at 591-92.

      **A.**      **Mr. Greene Cannot Sustain a Claim Based on the Terms of Use.**

If Mr. Greene read the Terms of Use for a website, relied on them, and then brought a lawsuit alleging that representations in the Terms of Use were fraudulent (Opp. at 17 and 20; Opp. to Mot. to Strike Expert at 1 and 5), he would be familiar with those Terms of Use and what the fraudulent representations were. Yet, during his deposition, Mr. Greene did not recall what specific information on the Mt. Gox website he actually looked at or read. (Plaintiff's Resp. to SOF ¶¶ 23-30.) He recalled looking at the Terms of Use but not any of the supposedly false representations in them upon which he supposedly relied. This is the key and a necessary element of a claim, not a mere momentary lapse about a minor detail. And as discussed above, he could not possibly have read the Terms of Use before signing up for a Mt. Gox account, because they did not exist at that time. (*See* Section I, *supra*.) Furthermore, Mr. Greene admits that he knows no website or bitcoin exchange is 100 percent secure and that he knew about a hack on Mt. Gox before signing up for his account. (*Id.* ¶¶ 21, 28.) These facts plainly demonstrate that Mr. Greene did not rely on the Mt. Gox Terms of Use before signing up for a Mt. Gox account or in maintaining that account. (*See also* Mem. at 11-19.)

### B. Mr. Greene Cannot Use a Contradictory Declaration to Stave off Summary Judgment.

Mr. Greene's failure to recall specific misrepresentations by Mt. Gox or Mr. Karpeles dooms his fraud claim. In an attempt to resuscitate that claim, Mr. Greene now submits a declaration stating that he recalls reading security guarantees in the Terms of Use. (Pl. SOAF ¶ 38.) However, "parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions." *Bank of Ill. v. Allied Signal Safety Restraint Sys.*, 75 F.3d 1162, 1168 (7th Cir. 1996). Nor does Mr. Greene adequately explain the contradiction or resolve the disparity. *Id.* While Mr. Greene was not given a copy of the Terms of Use during his deposition, something which Mr. Karpeles' counsel was under no obligation to do, Mr. Karpeles' counsel walked Mr. Greene through the allegations of his Complaint which contained portions of the Terms of Use at issue. (*See* SOF, Ex. E, Dkt. 454-5, at 16:7-17:17.) Mr. Greene did not recall where he saw those statements. (*Id.* at 17:7-8, 16-17.) Mr. Greene's new recollection is an obvious attempt to save his fraud claim.

Even then, Mr. Greene's declaration internally contradicts what other representations he supposedly read. Mr. Greene now states that he "was not aware of any other bitcoin exchanges at the time that I opened my account, so having an understanding of and confidence in Mt. Gox's basic security features was very important to me." [Dkt. 467, Ex. F ¶ 5.] But Mr. Greene also states that he read a post on the website bicointalk.org, "where Mr. Karpeles made representations regarding the security of Mt. Gox." [*Id.* ¶ 6.] The reason that Mr. Greene now supposedly remembers doing so is "because, at the time, I had learned about a competing exchange (CampBX) that was based in the United States and was interested in how its security features compared with Mt. Gox's." [*Id.*] Mr. Greene also testified at his deposition that Mt. Gox was the only bitcoin exchange at the time or that, if others existed, he was not aware of

them. (Karpeles Resp. to Pl. SOAF, Ex. D at 21:13-18.) By his own declaration's terms and deposition testimony, Mr. Greene either knew about other bitcoin exchanges before creating his Mt. Gox account or he did not. It cannot be both. Even so, Mr. Karpeles' posts on bitcointalk.com, or any other forum, were not raised in the Complaint and cannot serve as a basis for Mr. Greene's fraud claim.

Additionally, Mr. Greene admitted that he was aware of other hacks, acknowledged that learning about a Mt. Gox hack before setting up an account did not have any effect on his decision to purchase bitcoin, and acknowledged that no website or Bitcoin exchange is 100% secure. (Plaintiff's Resp. to SOF ¶¶ 21, 28; Karpeles Resp. to Pl. SOAF, Ex. D 10:22-11:7.) Mr. Greene cannot now claim he relied on any supposed representations as to Mt. Gox's security.

Mr. Greene's declaration does not create a dispute of material fact.

### C. There Is No Evidence that Mr. Karpeles Actively Concealed Flaws From Mr. Greene.

In response to the fact that Mr. Karpeles had no duty to disclose information, Mr. Greene argues that half-truths and/or active concealment created a duty to speak. (Opp. at 12.) Mr. Greene does not claim that Mr. Karpeles told any half-truths or actively concealed flaws from Mr. Greene. For fraudulent omissions, the "plaintiffs must establish the existence of a special or fiduciary relationship, which in turn gives rise to a duty to speak." *Phillips v. DePaul Univ.*, 19 N.E.3d 1019, 1038 (Ill. App. Ct. 2014). A "duty to disclose may arise under Illinois law if the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009). However, Mr. Greene has not identified any statements as "half-truths."

22

Mr. Greene also argues that Mr. Karpeles had a duty to disclose information to Mr. Greene because he actively concealed issues with Mt. Gox. (Opp. at 11-12.) But Mr. Greene attempts to expand this exception far beyond its normal limits. "[S]ilence combined with deceptive conduct or the suppression of material facts results in active concealment" may give rise to a duty to speak. *Henderson Square Condo. Ass'n v. Lab Townhomes, L.L.C.*, 16 N.E.3d 197, 216 (Ill. App. Ct. 2014) (reversed on other grounds). However, this exception is limited to when a plaintiff actually inquires about an issue. *See Mitchell v. Skubiak*, 618 N.E.2d 1013, 1018 (Ill. App. Ct. 1993) (defendants had a duty to reveal the true nature of cracks in the master bedroom once plaintiffs asked about them). Mr. Greene has not alleged any facts or produced any evidence demonstrating that Mr. Karpeles actively concealed an issue that Mr. Greene inquired about.

Without a duty to disclose, Mr. Karpeles' newly-created supposed omissions cannot sustain Mr. Greene's fraud claim. *Phillips v. DePaul Univ.*, 19 N.E.3d at 1038 (Ill. App. Ct. 2014). (And again, the currently alleged concealed facts are found nowhere in the Complaint.)

### D.     Illinois Law Forecloses a Fraud-On-The-Market Theory.

While not explicitly arguing the proposition, Mr. Greene also appears to be claiming that the Gox Bot fraudulently affected prices (*see* Opp. at 14; Pl. SOAF ¶ 34), but this avenue of argument is not available under Illinois law. Mr. Greene cannot rely on any sort of fraud-on-the-market theory of reliance whereby Mt. Gox or Mr. Karpeles supposedly "provided misinformation to the market, thus affecting the price of the commodity at issue." *Thompson's*, 691 F. Supp. 2d at 870-71. Courts have consistently rejected attempts to substitute a fraud-on-the-market theory of reliance for the personal reliance required by Illinois law. *See In re Soybean Futures Litig.*, 892 F. Supp. 1025, 1060 (N.D. Ill. 1995) (a fraud-on-the-market presumption of reliance cannot replace actual reliance as required by Illinois common law fraud

23

claim); *In re Information Resources, Inc. Securities Litig.*, No 89 C 3772, 1994 U.S. Dist. LEXIS 4500, at *3 (N.D. Ill. Apr. 11, 1994) ("every Northern District of Illinois case addressing this issue has declined to extend the fraud-on-the-market presumption to Illinois common law fraud claims."). Mr. Greene cannot replace his own lack of personal reliance with a market reliance theory.

Not only is such a theory foreclosed as a matter of law, Mr. Greene himself belies this latest theory. Mr. Greene now argues that "when bitcoin exchange users learned of hacks, user reaction was swift" and that he "would never have placed his bitcoins on Mt. Gox had the hacks … been disclosed." (Opp. at 14-15.) But Mr. Greene directly testified to the opposite. He knew about a hack of Mt. Gox in June 2011, and he admitted it had no effect on his decision to use the Mt. Gox exchange. (Plaintiff's Resp. to SOF ¶¶ 21, 28; Karpeles Resp. to Pl. SOAF, Ex. D 10:22-11:7.)

## IV. MR. KARPELES HAS NOT WAIVED THE ONE-WAY INTERVENTION RULE.

In a footnote, Mr. Greene claims that Mr. Karpeles has waived the one-way intervention rule. (Opp. at 11 n. 6.) "The rule against one-way intervention prevents plaintiffs from moving for class certification after acquiring a favorable ruling on the merits of a claim." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057 (7th Cir. 2016). In contrast, courts look favorably upon defendants seeking a dispositive motion prior to class certification. *Id.* at 1057 n.3 (7th Cir. 2016), citing *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 941 (7th Cir. 1995) ("The [defendant] elected to move for summary judgment before the district judge decided whether to certify the suit as a class action. This is a recognized tactic and does not seem to us improper."); Fed. R. Civ. P. 23(c)(1) advisory committee's notes to 2003 amendment ("The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified."). Additionally, a

ruling can effectively preclude class certification entirely where "the ground on which the district court threw out the plaintiff's claims would apply equally to any other member of the class." *Id.*

Mr. Greene's sole Seventh Circuit case for Mr. Karpeles allegedly waiving the one-way intervention rule is completely irrelevant, as the defendants in that case literally "agree[d] to waive objections to certification of the Plaintiffs' class should Defendants lose on the merits." *Oglesby v. Rotche*, No. 93 C 4183, 1994 U.S. Dist. LEXIS 4866, at *2-3 (N.D. Ill. Apr. 15, 1994). As discussed above, notwithstanding Mr. Greene's other cited cases, the Seventh Circuit favors defendants bringing motions for summary judgment before class certification. Mr. Karpeles has not waived any objections to certification of Mr. Greene's class and has no intention to do so.

## V. MR. KARPELES' MOTION TO STRIKE PLAINTIFF'S EXPERT AND PRECLUDE HER TESTIMONY SHOULD BE GRANTED.

Mr. Greene's proposed expert opinion addresses new theories and facts regarding fraud claims that do not appear in the Complaint, but rather impermissibly arise in response to Mr. Karpeles' motion for summary judgment. [Dkt. No. 457.] As discussed more fully in Mr. Karpeles' Motion to Strike Expert Disclosure of and Preclude Expert Testimony from Carol R. Goforth, Mr. Greene's proposed expert testimony is irrelevant to any of the issues and facts actually raised in the Complaint. And, as discussed above, Mr. Greene cannot add new factual predicates for his fraud claim in response to a motion for summary judgment.

The same arguments that apply to why the Court cannot consider Mr. Greene's new theories in opposition to the summary judgment motion apply equally to the admissibility of Professor Goforth's report and proposed testimony. In the interest of efficiency, Mr. Karpeles submits this as a joint reply rather than reiterate arguments. Mr. Karpeles has also addressed the case law cited in Mr. Greene's opposition to his motion to strike the expert report and preclude

25

the proposed expert testimony. (*See* Section II.B.2., *supra.*) Mr. Karpeles therefore stands on the arguments made in this reply as his reply to both his pending Motion to Strike and his pending Motion for Summary Judgment.

Therefore, Professor Goforth's assertions and opinions are inadmissible and irrelevant. A court may strike a proposed expert's opinion where (as here) the proposed opinion is "not relevant to any issue in the case," and where there are "no allegations [in the complaint] giving defendants fair notice that plaintiff[] would be pursuing a claim" premised on a different theory in an expert report. *George v. Kraft Foods Global, Inc.*, 641 F.3d 786, 791-92 (7th Cir. 2011). The court should do so here and preclude Professor Goforth from testifying.

## CONCLUSION

For all of the foregoing reasons, those stated in his Motion for Summary Judgment, Memorandum in Support of Motion for Summary Judgment, Motion to Strike Expert Disclosure of and Preclude Testimony from Carol R. Goforth, and any further written submissions and oral argument to this Court, summary judgment is warranted in Defendant Mark Karpeles' favor on the sole remaining count of Plaintiff Gregory Greene's Fourth Amended Complaint, Count III. Similarly, because her expert opinion is irrelevant to the claims actually pled by Mr. Greene, the Court should strike the expert disclosure of, and preclude expert testimony from, Plaintiff's proposed expert, Carol R. Goforth. Mr. Karpeles also requests grant all other just relief.

Dated: March 13, 2020                           Respectfully submitted,

                                                MARK KARPELES

                                                By: _____*/s/ Bevin Brennan*_____
                                                        One of his Attorneys

26

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

# EXHIBIT A

| | |
|---|---|
| **From:** | Ben Thomassen [bthomassen@edelson.com] |
| **Sent:** | 10/18/2019 1:10:41 PM |
| **To:** | Brennan, Bevin; Schmidt, Matthew |
| **Cc:** | Aaron Lawson |
| **Subject:** | Greene v. Karpeles |
| **Attachments:** | Greene-Karpeles - Notice of McCaleb Subpoena.pdf; |

Bevin:

Please see attached.

Thanks,
Ben

--
Ben Thomassen | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.572.7208 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
bthomassen@edelson.com | www.edelson.com

  
Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

GREGORY GREENE, individually and on
behalf of all others similarly situated,

                  *Plaintiff*,

v.

MARK KARPELES, an individual,

                  *Defendant*.

No. 1:14-cv-01437

Hon. Gary Feinerman

Magistrate Judge Susan Cox

**NOTICE OF SUBPOENA**

      PLEASE TAKE NOTICE that, in accordance with Rule 45 of the Federal Rules of Civil

Procedure, Plaintiff Gregory Greene, by and through his undersigned attorneys, will serve the

attached subpoena on Jed McCaleb through his counsel. The subpoena calls for the production of

the documents identified in the attached Rider that are in the possession, custody or control of

Jed McCaleb at the location, date, and time indicated, or at some other location, date, and time

agreed upon by the parties. The subpoena further calls for Mr. McCaleb's testimony at the date,

time, and location indicated.

Dated: October 18, 2019

            **GREGORY GREENE**, individually and
            on behalf of a class of similarly situated
            individuals,

            By: /s/ Benjamin S. Thomassen
                 One of Plaintiff's Attorneys

            *Counsel for Plaintiff and the putative Class*

            Benjamin S. Thomassen
            bthomassen@edelson.com
            Edelson PC
            350 North LaSalle Street, 14th Floor

Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Counsel for Plaintiff and the putative class*

**CERTIFICATE OF SERVICE**

I, Benjamin S. Thomassen, an attorney, hereby certify that on October 18, 2019, I served the above and foregoing Notice of Subpoena and related subpoena form and rider by causing a true and accurate copy of such paper to be filed and served on Mark Karpeles's counsel of record via email.

/s/ Benjamin S. Thomassen

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Northern District of Illinois

| | | |
|---|---|---|
| Gregory Greene | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. **14-cv-1437** |
| Mark Karpeles | ) | |
| *Defendant* | ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                         Jed McCaleb

*(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: Edelson PC<br>123 Townsend Street, Suite 100<br>San Francisco, California 94017 | Date and Time:<br>November 13, 2019, 9:30 a.m. |
|---|---|

The deposition will be recorded by this method:      Stenographically

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See attached rider

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      Oct. 18, 2019

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                        *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*      Gregory Greene
_____ , who issues or requests this subpoena, are:

Aaron Lawson, Edelson PC, 123 Townsend St. #100, San Francisco CA 94017, (415) 212-9300, alawson@edelson.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No. 14-cv-1437

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:

   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
   **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | |
| *Plaintiff*, | No. 1:14-cv-01437 |
| v. | Hon. Gary Feinerman |
| MARK KARPELES, an individual, | Magistrate Judge Susan Cox |
| *Defendant*. | |

**RIDER TO SUBPOENA TO JED MCCALEB**

Pursuant to Federal Rules of Civil Procedure 45, Plaintiff Gregory Greene requests that Jed McCaleb ("McCaleb") cause to be delivered all of the following Documents that are in his possession, custody, or control to one of the following locations by November 7, 2019 at 5:00 p.m. Pacific Standard Time.

| J. Aaron Lawson | Office of the Clerk |
|---|---|
| EDELSON PC | United States District Court |
| 123 Townsend Street, Suite 100 | Phillip Burton Federal Building |
| San Francisco, California 94107 | & United States Courthouse |
| Tel: 415.212.9300 | 450 Golden Gate Avenue |
| alawson@edelson.com | San Francisco, CA 94102 |

**DEFINITIONS**

1.      "Communication" means or refers to the transmittal of information expressed by any means.

2.      "Document" or "Documents" includes all documents, Communications, information, or tangible things within the scope of Federal Rules of Civil Procedure 26 and 34, including ESI, and all versions and drafts of documents.

1

3.      "ESI" or "Electronically Stored Information" means or refers to information that is stored in electronic media, regardless of the media or whether it is in the original format in which it was created, and that is retrievable in perceivable form and includes metadata, system data, deleted data, and fragmented data.

4.      "Mt. Gox" or "Exchange" means or refers to the Mt. Gox bitcoin exchange.

5.      "Person" or "Persons" means or refers to any natural person, corporation, partnership, association, organization, joint ventures, or other entity of any type or nature, including any business, governmental entity, or association.

6.      "Plaintiff" means or refers to Gregory Greene.

7.      "Relevant Time Period" means or refers to February 27, 2010 through the present.

8.       "You," "Your," or "McCaleb" means or refers to Jed McCaleb.

<u>INSTRUCTIONS</u>

1.      Please call the attorney issuing this Subpoena, J. Aaron Lawson, at 415-212-9300, or email him at alawson@edelson.com at your earliest convenience. The intent is to avoid or minimize unnecessary expenses or burdens on the respondent.

2.      Unless otherwise specified, these requests seek Documents from the Relevant Time Period. If any request is objected to on the basis that the time period covered by the request is irrelevant, burdensome, or otherwise inappropriate, state what time period You consider proper for that request and answer the request for that time period, preserving Your objection to the remainder of the time period.

3.      Unless words or terms have been given a specific definition herein, each word or term used herein shall be given its usual and customary dictionary definition except where such words have a specific custom and usage definition in a particular trade or industry, in which case

2

they shall be interpreted in accordance with such usual custom and usage definition of which you are aware.

4.     "And" as well as "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these requests any information which might otherwise be construed to be outside of their scope. Singular and plural words should be read so as to bring within the scope of these requests any information which might otherwise be construed to be outside their scope. "Each" shall encompass "every."

5.     In responding to these requests, furnish all information, however obtained, including hearsay that is available to You and any information known by You, in Your possession, or appearing in Your records.

6.     It is intended by this set of requests to elicit information not merely within Your knowledge, but obtainable by You or on Your behalf.

7.     If You claim privilege as grounds for failing to produce any Document requested:

   (i)     Identify the author or originator of the Document, the date authored or originated, the identity of each Person to whom an original or a copy was addressed or delivered, the identity of each Person known or reasonably believed by You to have present possession, custody, or control thereof;

   (ii)    Discuss the factual basis for Your claim of privilege in sufficient detail to permit the court to adjudicate the validity of that claim; and

   (iii)   Produce so much of each such Document that does not contain privileged information or Communications.

8.     If You cannot respond to a request in full after exercising due diligence to secure the full information needed to do so, so state and respond to the extent possible, specifying Your

inability to respond to the remainder, stating whatever information or knowledge You have concerning the unresponded portion, and detailing what You did in attempting to secure the unknown information.

9.　　Attachments. Email attachments and embedded files must be mapped to their parent by the Document or production number. If attachments and embedded files are combined with their parent Documents, then "BeginAttach" and "EndAttach" fields listing the unique beginning and end number for each attachment or embedded Document must be included.

10.　　Bates Numbering. Each page of a produced Document, or Media upon which ESI in native format is produced, shall have a legible, unique page identifier "Bates Number" electronically "burned" onto or associated with the Media, or imaged in such a manner that information from the source Document is not obliterated, concealed, or interfered with. There shall be no other legend or stamp placed on the Document image unless a Document qualifies for confidential treatment pursuant to the terms of the Protective Order entered in this litigation or has been redacted in accordance with applicable law or Court order. In the case of confidential materials as defined in the Protective Order, a designation may be "burned" onto or otherwise associated with the Document's image at a location that does not obliterate or obscure any information from the source Document. For redacted material, the word "Redacted" will be burned onto the Document image over the protected information. To the extent native files are produced, the producing party will name the native file with the Bates Number.

11.　　For any term used herein, which is not otherwise specifically defined, the common and usual meaning of such term is intended. Any ambiguity in these requests shall be resolved so as to construe these requests as broadly as possible.

4

## DOCUMENTS REQUESTED

1.      All Communications between You and Mark Karpeles relating to Mt. Gox.

2.      All Communications between You and any Mt. Gox employees or agents, including Gonzague Gay-Bouchery, relating to Mt. Gox.

3.      All Documents relating to the sale of Mt. Gox.

4.      All Documents relating to the loss of bitcoin or currency on Mt. Gox, including losses resulting from hacks or other unauthorized activity on the Mt. Gox Exchange.

5.      All Documents relating to the use of automated bots on Mt. Gox.

6.      All Documents relating to the solvency or insolvency of Mt. Gox.

7.      All Documents relating to security measures used on or by Mt. Gox.

8.      All Documents relating to Mt. Gox's servers, such as server images or architectures.

9.      All Documents relating to Plaintiff.

\*                              \*                              \*

Dated: October 18, 2019                **GREGORY GREENE**, individually and
                                       on behalf of a class of similarly situated
                                       individuals,


                                       By:  /s/ J. Aaron Lawson
                                             One of Plaintiff's Attorneys

                                       *Counsel for Plaintiff and the putative Class*

                                       Benjamin S. Thomassen
                                       bthomassen@edelson.com
                                       Edelson PC
                                       350 North LaSalle Street, 14th Floor
                                       Chicago, Illinois 60654
                                       Tel: 312.589.6370
                                       Fax: 312.589.6378

J. Aaron Lawson
alawson@edelson.com
Edelson PC
123 Townsend Street, Suite 100
San Francisco, California 94107
Tel: 415.212.9300
Fax: 415.373.9495

*Counsel for Plaintiff and the putative class*

# EXHIBIT B

**Brennan, Bevin**

| | |
|---|---|
| **From:** | Ben Thomassen <bthomassen@edelson.com> |
| **Sent:** | Wednesday, February 12, 2020 4:54 PM |
| **To:** | Brennan, Bevin |
| **Cc:** | Schmidt, Matthew; Aaron Lawson |
| **Subject:** | Re: Greene v. Karpeles |

We received the emails in Ex. A on Nov. 22, 2019.

I certainly understand your reservation of rights, but do want to reiterate that we are not planning on utilizing those emails at all (and certainly not in connection with the pending motions). Rather, any citations to emails from Jed will come from the documents that were produced to you prior to Karpeles's deposition. So, at this point, I'm not sure there's anything to gain by a cross comparison between Ex. A and Greene's production. If you want clarification of that by phone I'm happy to discuss.

Also, on the AEO designation issue, McCaleb's attorney said that he would need to do an email-by-email review for the emails in Exhibit A on which Karpeles was not copied.

Thanks,
Ben

On Wed, Feb 12, 2020 at 3:37 PM Brennan, Bevin <bbrennan@pedersenhoupt.com> wrote:

Obviously the failure to produce responsive documents is a problem. When did you receive the documents attached as Exhibit A? I have not done a comparison of the new production with the old to see what was previously produced. We reserve all of our rights to object to and seek any other related relief for an untimely production (in addition to the other objections to Mr. McCaleb's declaration).

-- Bevin



Pedersen & Houpt

Bevin Brennan
Attorney at Law
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
312-261-2186
bbrennan@pedersenhoupt.com

**From:** Ben Thomassen [mailto:bthomassen@edelson.com]
**Sent:** Wednesday, February 12, 2020 3:17 PM
**To:** Brennan, Bevin
**Cc:** Schmidt, Matthew; Aaron Lawson
**Subject:** Re: Greene v. Karpeles

Bevin:

I looked back over our correspondence and production and it looks like Exhibit A may not have been produced to you previously. If that's the case it is obviously our fault -- I was under the impression that the file had been produced. But hopefully the oversight won't matter. First, as you may have noticed, many of the emails in that file overlap with what was produced to you from the *Raggio* docket, (GREENE_000021-2312), including Exhibits D through G, which you ask about below. (Exhibit A was included in the declaration just to make the authentication process easier for Mr. McCaleb.) Second, we do not plan on relying on any of the documents in Exhibit A that do not overlap with the *Raggio* files, which were produced to you in October. And third, as you note, Karpeles was copied on most if not all of the emails anyway, so we assume their contents are not surprising to you.

As for the disclosure question, because Karpeles was a recipient on most if not all of the emails, ¶ 9 of the protective order allows him to view the documents even with the AEO designations. But to be safe, I am happy to follow up with McCaleb's attorneys to see if they have any objections in the event Karpeles is not copied on some of the emails in Exhibit A. I'll follow up with you once I hear back.

On an unrelated note, I should get you the dismissal stipulation we discussed either today or tomorrow. Apologies for the hold up on that.

Ben

On Wed, Feb 12, 2020 at 2:14 PM Brennan, Bevin <bbrennan@pedersenhoupt.com> wrote:

We are able to access the document.

1.      Have the following been produced to us previously:

        Ex. A:  MCCALEB 1-2322

2

Ex. D:     E-mails from another court filing

Ex. E:     E-mails from another court filing

Ex. F:     E-mails from another court filing

Ex. G:     E-mails from another court filing.

I don't see bates labels for these that appear to apply to Greene's or Motto's productions, or another connection to this case.

2.       Most of the documents are marked Attorneys' Eyes Only.  Mark is on most (if not all) of them.  Please confirm that you agree that he is allowed to view these documents pursuant to Section 8(a) of the Protective order in this case.

-- Bevin

# Pedersen
Pedersen & Houpt

Bevin Brennan
Attorney at Law
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
312-261-2186
bbrennan@pedersenhoupt.com

**From:** Ben Thomassen [mailto:bthomassen@edelson.com]
**Sent:** Tuesday, February 11, 2020 10:00 PM
**To:** Brennan, Bevin; Schmidt, Matthew
**Cc:** Aaron Lawson
**Subject:** Greene v. Karpeles

Counsel:

We are sharing the declaration we received from Mr. McCaleb with you today via a box link. Please let me know if you don't receive it.

Thanks,

Ben

--

Ben Thomassen | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.572.7208 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
bthomassen@edelson.com | www.edelson.com
   @EdelsonPC        Edelson-PC        EdelsonLaw
Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

-----------

Information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, do not read, distribute or reproduce this transmission (including any attachments). If you have received this e-mail in error, please notify the sender by e-mail reply.
-----------

--

Ben Thomassen | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.572.7208 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
bthomassen@edelson.com | www.edelson.com

@EdelsonPC    Edelson-PC    EdelsonLaw

Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.

-----------

Information contained in this e-mail transmission is privileged and confidential. If you are not the intended recipient, do not read, distribute or reproduce this transmission (including any attachments). If you have received this e-mail in error, please notify the sender by e-mail reply.

-----------

--

Ben Thomassen | Edelson PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
312.572.7208 (direct) | 312.589.6370 (firm) | 312.589.6378 (fax)
bthomassen@edelson.com | www.edelson.com

@EdelsonPC    Edelson-PC    EdelsonLaw

Please consider the environment before printing this e-mail.

CONFIDENTIALITY AND LIABILITY FOR MISUSE.

The information contained in this communication is the property of Edelson PC. It is confidential, may be attorney work product, attorney-client privileged or otherwise exempt from disclosure under applicable law, and is intended only for the use of the addressee(s). Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited. If you have received this communication in error, please notify Edelson PC immediately by return e-mail and destroy this communication and all copies thereof, including all attachments.

Pursuant to requirements related to practice before the U.S. Internal Revenue Service, any tax advice contained in this communication (including any attachments) is not intended to be used, and cannot be used, for purposes of (i) avoiding penalties imposed under the U.S. Internal Revenue Code or (ii) promoting, marketing or recommending to another person any tax-related matter.