**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY GREENE and ANTHONY MOTTO, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| | ) ) | Hon. Gary Feinerman |
| Plaintiffs, | ) ) | Magistrate Judge Susan Cox |
| v. | ) ) | |
| MARK KARPELES, an individual, | ) ) | |
| Defendant. | ) ) | |

**DEFENDANT MARK KARPELES' MOTION TO CERTIFY ORDERS FOR
INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(b)**

Defendant Mark Karpeles hereby submits his Motion to Certify Orders for Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b) and states as follows:

**BACKGROUND**

The Court has decided two motions, either one of which would have ended these proceedings against Mr. Karpeles. Most recently, this Court denied Mr. Karpeles' Motion for Summary Judgment, finding that the Plaintiff Gregory Greene could pursue a common law fraud claim. [Dkt. Nos. 489 and 490.] Previously, this Court denied Mr. Karpeles' Motion to Dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). This Court has entertained extensive briefing and oral argument on both of these issues, and Mr. Karpeles incorporates his position with respect to these issues as stated in his briefs. [Dkt. Nos. 392 and 394 (personal jurisdiction); Dkt. Nos. 460 and 478 (summary judgment).] This Court denied Mr. Karpeles' Motion to Dismiss pursuant to Rule 12(b)(2) on March 12, 2019 [Dkt. Nos. 409 and 410] and his Motion for Summary Judgment on June 16, 2020 [Dkt. Nos. 489 and 490]. By this Motion, Mr. Karpeles requests that this Court certify for interlocutory appeal these orders, which

involve the questions of whether this Court has personal jurisdiction over him and whether the Court properly denied Mr. Karpeles summary judgment on the one remaining claim for common law fraud, given the potential dispositive effect on this litigation each of these issues has.

## ARGUMENT

Pursuant to 28 U.S.C. § 1292(b), this Court should certify the orders regarding whether personal jurisdiction over Mr. Karpeles exists and whether Mr. Greene has pled and is entitled to pursue at trial his latest theories for his common law fraud claim.

Certification of a ruling for interlocutory appeal is appropriate where the "order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Seventh Circuit criteria for the grant of certification are: "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation . . . [and] the petition must be filed in the district court within a *reasonable time* after the order sought to be appealed." *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000) (emphasis in original). Where the statutory criteria are met it is "the duty of the district court . . . to allow an immediate appeal to be taken." *Id.* at 677. Further, where reversal would result in dismissal, "the concerns underlying that decision argue for empowering the district court and the court of appeals to authorize an interlocutory appeal." *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625 (7th Cir. 2011).

This Court should certify the orders for interlocutory appeal, which involve the following questions:

    1.    Whether Plaintiff Gregory Greene pled his common law fraud claim with sufficient particularity pursuant to Federal Rule of Civil Procedure 9(b) and common law pleading doctrines to withstand summary judgment and

proceed to trial on the theories included in his opposition to summary judgment and in his proposed expert's report; and

2. Whether an individual foreign defendant's alleged operation of a company that runs a website that allows for users worldwide, including in the forum state, to open accounts and trade currencies, by itself, constitutes sufficient purposefully directed contact with the forum state for the Court to exercise personal jurisdiction over that defendant.

I. **BOTH OF THESE QUESTIONS AND ORDERS INVOLVE A CONTROLLING ASPECT OF LAW.**

    A. **Whether Mr. Greene sufficiently pled his latest theories for his common law fraud claims is a controlling aspect of law.**

Mr. Karpeles seeks interlocutory review of whether Mr. Greene sufficiently pled, in accordance with Federal Rule of Civil Procedure 9(b) and common law pleading doctrines, the theories raised in his proposed expert's report and his response to Mr. Karpeles' motion for summary judgment and can proceed to trial on them, which is a controlling question of law.

A question of law refers to "a question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine rather than to the question whether the party opposing summary judgment had raised a genuine issue of material fact." *Ahrenholz*, 219 F.3d at 676. Normally, "[w]hether [the plaintiff] has presented sufficient evidence to show a genuine issue . . . [of] material fact, and thus avoid summary judgment . . . is not a question of law within the meaning of § 1292(b)." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 626. However, an interlocutory appeal is warranted where a case involves applying a common law doctrine, such as the federal common law doctrine of pleading, and does not involve hunting through the record or the analysis of a complicated contract. *See id.* ("But in this case there is no question of hunting through a record or immersing ourselves in a complicated contract, and moreover we do have a question of the meaning of a common law doctrine—namely the federal common law doctrine of pleading in complex cases, announced in *Twombly*."). "Decisions holding that the

application of a legal standard is a controlling question of law within the meaning of section 1292(b) are numerous." *Id.*

This proposed interlocutory appeal presents a question of the federal common law doctrine of pleading and the statutory requirements of Federal Rule of Civil Procedure 9(b) specific to a fraud claim. This issue does not require the appellate court to dig through the record or make factual determinations. There is no dispute that Mr. Greene raised new allegations and theories in response to summary judgment. [*See* Dkt. 490 at 10 ("Greene has expanded on the complaint's allegations concerning the Terms").] Federal Rule of Civil Procedure 9(b) "requires a party alleging fraud to state with particularity the circumstances constituting fraud" and requires plaintiff to describe "the who, what, when, where, and how of the fraud." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (internal quotations omitted). The Seventh Circuit would not have to decide any contested issue of fact, merely compare the allegations in the Complaint to the new facts and theories Mr. Greene raises in response to summary judgment and decide whether Mr. Greene adequately pled those theories to continue to trial. The is a pure and controlling question of the heightened pleading requirements under Rule 9(b) and the federal common law on pleading.

**B.     Whether this Court can exercise personal jurisdiction over Mr. Karpeles represents a controlling aspect of law.**

Whether Mr. Karpeles is subject to personal jurisdiction in Illinois is a question of law. *See Mid-Am. Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1358 (7th Cir. 1996) ("The determination of personal jurisdiction is a question of law . . . ."). It is also controlling, as "its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Associates, Inc.*, 86 F.3d 656, 659 (7th Cir. 1996). Here, a finding that there is no personal jurisdiction over Mr. Karpeles would

end the litigation. Indeed, one of the Seventh Circuit cases regarding personal jurisdiction cited by Mr. Karpeles in his original briefing was an interlocutory appeal. *See Illinois v. Hemi Grp. LLC*, 622 F.3d 754 (7th Cir. 2010). Whether Mr. Karpeles himself had sufficient contacts with Illinois to confer personal jurisdiction represents a controlling aspect of law.

## II. BOTH OF THE ORDERS ARE CONTESTABLE.

Certification for immediate appeal is proper where, as here, the "question requires the interpretation, and not merely the application, of a legal standard." *In re Text Messaging Antitrust Litig.*, 630 F.3d at 625. Moreover, Courts in this district have held that an interlocutory appeal is appropriate where there are defensible, competing interpretations and no binding precedent. *See Dahlstrom v. Sun-Times Media, LLC*, 39 F. Supp. 3d 998, 1002 (N.D. Ill. 2014) ("These competing interpretations — both of them defensible and neither of them precluded by binding precedent — evidence substantial grounds for difference of opinion."); *see also In re Text Messaging Antitrust Litig.*, 630 F.3d at 626 (certifying an interlocutory appeal where the scope of a recent decision was "unsettled"). Here, both questions require the interpretation of a legal standard, there are defensible, competing interpretations, and there is no binding precedent.

### A. The Court's ruling on the summary judgment is contestable because it involves a question of the level of particularity necessary to plead and pursue a fraud claim.

Whether Mr. Greene's fraud claim was pled with the required level of particularity to survive Mr. Karpeles' Motion for Summary Judgment, which allowed Mr. Greene to proceed on his latest allegations raised in response to the summary judgment motion and his proposed expert's report, is a contestable issue.

In its ruling on Mr. Karpeles' motion for summary judgment, the Court did not cite any binding precedent addressing the interplay between heightened pleading standards under Rule 9(b) and new factual predicates for fraud claims at summary judgment. [*See* Dkt. 490 at 8-10.]

5

In *BRC Rubber & Plastics*, the Seventh Circuit addressed whether the plaintiff impermissibly changed the facts as to one of the plaintiff's contract claims, anticipatory repudiation. *See BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 540-43 (7th Cir. 2018). In *Anderson v. Donahoe*, the Seventh Circuit addressed whether the plaintiff could reassert his disability discrimination and reasonable accommodation claims in response to a summary judgment motion after omitting them from two subsequent amended complaints. *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012).

In *Whitaker v. Milwaukee Cty.*, the Seventh Circuit addressed "an alternative legal characterization of the factual relationship between the two governmental entities" in relation to the plaintiff's employment claims on summary judgment. *See Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014). The Seventh Circuit specifically distinguished the cases the district court relied on to reject plaintiff's summary judgment argument because, in the cited cases, "new factual bases for claims or legal claims were at the center of the analysis." *Id.*

In *CMFG Life Ins. Co. v. RBS Sec., Inc.*, the Seventh Circuit addressed whether the plaintiff could, for the first time in response to summary judgment, argue that certain oral due-diligence representations independently supported a rescission claim. *CMFG Life Ins. Co. v. RBS Sec., Inc.*, 799 F.3d 729, 743 (7th Cir. 2015). However, those due-diligence claims had been alleged in both the plaintiff's first and second amended complaints. *Id.* In *CMFG*, the plaintiff was merely arguing that already-alleged misrepresentations could constitute an independent basis for rescission. That is, the facts had been expressly pled.

As Mr. Karpeles presented to this Court, the district courts that have addressed Rule 9(b)'s application to introducing new facts or theories in response to a summary judgment motion support Mr. Karpeles, with one easily distinguishable exception discussed below. [Dkt.

6

478 at 10-14.] For example, in *Colovos v. Owens-Corning Fiberglas Corp.*, the plaintiffs raised a new theory that an individual was the defendant's agent and made fraudulent statements in their sur-reply to defendant's summary judgment motion. *See Colovos v. Owens-Corning Fiberglas Corp.*, CASE NO. 93 C 6483, 1995 U.S. Dist. LEXIS 15183, at *22 (N.D. Ill. Oct. 11, 1995). The court held that the plaintiff could not present their new agency theory at trial as it ran afoul of the heightened pleading standards of Rule 9(b). *See id.* at *24-25, citing *Samuels v. Wilder*, 871 F.2d 1346, 1349-51 (7th Cir. 1989) ("The court correctly prevented plaintiffs' attempted bypass of Rule 9(b) (pleading fraud with particularity in the complaint) and concentrated only on the averments of fraud originally pleaded."). The court specifically held that "[a] court should strengthen its unwillingness to consider 'new' theories leveled in response to a defendant's summary judgment motion when, as in the instant case, the plaintiff accuses the defendant of committing fraud." *Id.* at *24.

Additional cases further confirm Mr. Karpeles's position. In *Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, in response to the defendant's summary judgment motion, the plaintiffs claimed that a direct mailing was deceptive; however, this allegation was not in the complaint. *Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02 C 1329, 2004 U.S. Dist. LEXIS 19, at *24 (N.D. Ill. Jan. 5, 2004). The court held that "[w]hile the lenient notice pleading standards of Rule 8 of the Federal Rules of Civil Procedure sometimes may allow a plaintiff raise arguments based on facts not alleged in the initial complaint, this is not true when the plaintiff alleges fraud." *Payne v. Ken Diepholz Ford Lincoln Mercury, Inc.*, No. 02 C 1329, 2004 U.S. Dist. LEXIS 19, at *24 (N.D. Ill. Jan. 5, 2004). "A plaintiff cannot put off making particularized allegations of fraud until summary judgment. Such an approach would thwart the underlying purpose of Rule 9(b) and render it a nullity." *Id.* at *24-25.

In *Hood v. Dryvit*, the plaintiff attempted to add "misrepresentations over which he is suing [to] include statements that Weatherlast was a 'protective and decorative coat over stucco,' 'water repellant,' and 'designed to be maintenance free'" in his brief in opposition to summary judgment. *Hood v. Dryvit Sys.*, No. 04-CV-3141, 2005 U.S. Dist. LEXIS 27055, at *13-14 (N.D. Ill. Nov. 8, 2005). The complaint alleged misrepresentations that "the Weatherlast coating was 'an efficient and economical protective coating for stucco'" and that "the Weatherlast coating was 'impenetrable by water.'" *Id.* at *5. The plaintiff argued that "the general allegation [of Defendant's misrepresentations in the Complaint] also consumes more detailed allegations that the Weatherlast coating was protective, water repellant, weather resistant, and virtually maintenance free.'" *Id.* at *13. The court rejected this argument: "Plaintiff cannot rely on his opposition brief to add specificity to allegations in the Complaint which should have been pled with particularity at the outset and which, even after discovery, the facts do not support." *Id.* at *14-15.

The lone dissenting opinion from this district is an outlier, based on the holding that the defendant "cite[d] no cases applying Rule 9(b) to preclude consideration of allegedly fraudulent statements at the summary judgment stage merely because they were not specifically mentioned in the pleadings." *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17 C 6285, 2019 U.S. Dist. LEXIS 114960, at *8 (N.D. Ill. July 11, 2019). As demonstrated above, and as further discussed in Mr. Karpeles reply in support of summary judgment [Dkt. 478 at 10-14], there is an overwhelming amount of authority from the Seventh Circuit and this District holding just that.

Mr. Greene's complaint alleged his fraud claim based on specific supposed misrepresentations and omissions related to Mizuho Bank's limitations on transfers, Mr. Greene's ability to make cash withdrawals, a "transaction malleability" bug that Mt. Gox had

8

supposedly known about since 2011, and Mt. Gox's plan to declare bankruptcy. [*See* Fourth Amend. Compl. ¶ 58.] Nowhere in any of the allegations specific to Mr. Greene is there any mention of reviewing, relying upon, or reading the Terms of Use when he opened his Mt. Gox account, or that he is basing his portion of a fraud claim on the Terms of Use now asserted. There is no who, what, where, or when. The Complaint's general averments to the Terms of Use are insufficient under Rule 9(b) for the new particular theories of fraud that Mr. Greene now pursues. (*See* Fourth Amend. Compl. ¶¶ 14, 49-51, 112.)

Mr. Greene's new factual allegations for his fraud claims are based on the Terms of Use, with new contentions that Mr. Karpeles hid or misrepresented the fact that Mt. Gox did not have enough cash and/or Bitcoin to cover users' deposits due to previously unalleged hacks or thefts, and new claims about an automated trading program (the "Gox Bot"). (Fourth Amend. Compl. at 1-2.) None of these allegations are mentioned in the Complaint. For instance, the Complaint never once includes the term "Gox Bot" or "CoinLab," major aspects that Mr. Greene now contends underlie his current claim. (*Id.* at 5-9 and 16.) Mr. Greene did not take specific facts that were already in the complaint and make new arguments based on those facts, as the plaintiff in *CMFG* did. Instead, Mr. Greene changed his claims to rely on the Terms of Use and only added the required specificity in response to summary judgment. The portions of the Terms of Use upon which he now claims is the basis of his claim are not cited in the Complaint. Even Mr. Greene does not mention that specific term in his new affidavit, claiming instead just generally that he relied on some terms in the "obligations" sections of the Terms of Use. [*See* Dkt. 467-6 at ¶ 5.] Mr. Greene's fraud claim "cannot rely on his opposition brief to add specificity to allegations in the Complaint which should have been pled with particularity at the outset." *Hood*, 2005 U.S. Dist. LEXIS 27055 at *14-15.

Whether Mr. Greene's new assertions impermissibly add new theories and factual predicates to his fraud claim that were not sufficiently alleged in his Complaint is a highly contestable issue.

> **B. The Court's holding that Mr. Karpeles is subject to personal jurisdiction is contestable because it involves competing defensible interpretations in an area of undeveloped law.**

Whether the operation of Mt. Gox and the Mt. Gox exchange -- which are separate and apart from Mr. Karpeles, an individual -- is sufficient to subject Mr. Karpeles to personal jurisdiction is a highly contestable issue.

Mr. Greene has not established intentional conduct by Mr. Karpeles that targeted Illinois. The Supreme Court's ruling held that "[a] forum [s]tate's exercise of jurisdiction over an out of state intentional tortfeasor *must be based on intentional conduct by the defendant* that creates the necessary contacts with the forum." *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (emphasis added); *see also Noboa v. Barceló Corporación Empresarial, S.A.*, 812 F.3d 571, 572 (7th Cir. 2016) ("Only intentional contacts by the defendant with the forum jurisdiction can support specific jurisdiction."). The cases cited by the Court in support of finding jurisdiction have a common element not present for Mr. Karpeles, purposeful targeting of the forum state either through advertisement, *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 428 (7th Cir. 2010) (finding that defendant's "national marketing campaign" was "intended to reach as large an audience as possible" and constituted purposeful direction towards the forum state and all other states), or shipping products to the forum state, *see Hemi Grp. LLC*, 622 F.3d at 758 (finding personal jurisdiction where defendant "expressly elected to do business with the residents of forty-nine states" by stating that "it would ship to any state in the country except New York") But without further intentional conduct targeting the forum state, personal jurisdiction does not arise from simply operating a website. *See be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011)

10

("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution.").

While the Court cited to *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873 (2011), for the proposition that personal jurisdiction does not require singling out the forum state for business, that case did not involve a website. [Dkt. No. 410 at 8-9.] Justice Breyer's concurrence expressly left open the proper analysis for personal jurisdiction based on websites: "But what do those standards mean when a company targets the world by selling products from its Web site? And does it matter if, instead of shipping the products directly, a company consigns the products through an intermediary (say, Amazon.com) who then receives and fulfills the orders? And what if the company markets its products through popup advertisements that it knows will be viewed in a forum? Those issues have serious commercial consequences *but are totally absent in this case*." *J. McIntyre*, 564 U.S. at 890 (emphasis added). Thus *J. McIntyre's* effect on personal jurisdiction cases pertaining to websites is uncertain and Justice Breyer's concurrence is *dicta*. Even if it were not, Justice Breyer questioned the effects of a website's delivery of products and advertising on personal jurisdiction analysis, leaving the question open. Mr. Greene did not allege delivery of products or advertising, making the exercise of jurisdiction even more tenuous.

Additionally, at least one other court within the Seventh Circuit has reached a contrary conclusion, holding that, under the holding in *J. McIntyre*, a plaintiff must show that a defendant purposefully availed itself of the forum market specifically, not merely that defendant intended to serve the U.S. market generally. *Gerk v. CL Med. Sarl*, 175 F. Supp. 3d 1074, 1079 (C.D. Ill. 2016) (citing *J. McIntyre*, 564 U.S. at 886) (finding personal jurisdiction where defendant was a conference exhibitor in Chicago; advertised, sponsored, or promoted "Reference Centers" in

11

Illinois, including one located in Illinois; performed product training courses in Illinois; and had an employee working in Illinois and selling devices in Illinois). The *Gerk* case further demonstrates that this is an area of unsettled law.

In addition, the issue is not whether the Court can exercise personal jurisdiction over Mt. Gox, a corporate entity, but over Mr. Karpeles personally. It is his contacts and conduct that must be evaluated. Mr. Greene presented no evidence of any contacts with Illinois or even any knowledge on the part of Mr. Karpeles personally that Mr. Greene (or any of the other former plaintiffs) resided in Illinois. There was no evidence that Mr. Karpeles "deliberately targeted or exploited the Illinois market." *be2 LLC*, 642 F.3d at 559. Nor did Mr. Greene show that Mt. Gox or Mr. Karpeles expressly aimed any intentional conduct at Illinois. *See Felland v. Clifton*, 682 F.3d 665, 674-75 (7th Cir. 2012) (personal jurisdiction requires "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state."). There is no allegation that Mt. Gox or Mr. Karpeles held "itself out as open to do business with" Illinois residents. *Hemi Group, LLC* 622 F.3d at 758.

The only alleged contact between Mr. Karpeles and Mr. Greene, of any of the other former plaintiffs, came after the complained of conduct. [Dkt. 10, Declaration of Gregory Greene at ¶¶ 2, 6; Fourth Amend. Compl. ¶¶ 70-71.] Those contacts amount to three total communications allegedly sent by Mr. Karpeles and/or Mt. Gox to the current or former plaintiffs, which is far less than the number of contacts the Seventh Circuit has found to be sufficient for personal jurisdiction. *Compare Felland*, 682 F.3d at 671 ("Overall, between May 11, 2006, and February 20, 2009, Clifton and his associates sent the Fellands 22 emails and two mailed messages.") with *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,

12

751 F.3d 796, 801-02 (7th Cir. 2014) (finding a "few sales" and "two misleading e-mail blasts" insufficient for personal jurisdiction). To the extent that Mr. Karpeles is alleged to have made public statements on February 7 and February 24, there are no allegations that the statements were directed towards Illinois or that Mr. Karpeles knew that they, or other customers, were located in Illinois. Further, some of the representations cited in the Complaint were representations made by Mt. Gox, not by Mr. Karpeles. [Fourth Am. Compl. ¶¶ 13, 14.] Those representations were only on the Mt. Gox website. There is no other alleged conduct aimed towards or communications with individuals residing in Illinois or Illinois itself.

Mr. Karpeles is mindful of the Court's denial of Mizuho Bank's prior motion to certify its dispute over personal jurisdiction for appeal. [Dkt. No. 212; Transcript of Proceedings dated April 27, 2016 at 3-8, the relevant pages of which are attached hereto as Exhibit A.] Mr. Karpeles is in a different position than the bank. The bank was provided with customers' locations and facilitated deposits and withdrawals. It was subject to banking regulations. The Court disagreed that one of the bank's proposed controlling questions of law was actually at issue, and the second proposed question involved a blanket policy of the bank. Those are not the questions presented by Mr. Karpeles, an individual, over whom this Court is exercising personal jurisdiction via alleged contacts by the current and former plaintiffs with a corporate website.

There are defensible, contestable interpretations regarding personal jurisdiction, where Mr. Karpeles is solely alleged to have run a web-based currency exchange in a foreign country and directed three communications to individuals in Illinois after the complained-of conduct.

### III. THE RESOLUTION OF EITHER OF THESE ISSUES COULD SPEED UP THE LITIGATION, AS A DECISION IN HIS FAVOR ON EITHER ISSUE WOULD END THE LITIGATION.

The resolution of the issues in both of these orders would speed up the litigation. This element does "not require that the interlocutory appeal resolve the matter in its entirety; it is

13

sufficient that an interlocutory appeal would remove uncertainty about the status of a claim that might delay settlement or resolution." *F.D.I.C. v. Mahajan*, No. 11 C 7590, 2013 U.S. Dist. LEXIS 99450, at *3 (N.D. Ill. July 16, 2013), citing *Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012). Here, the interlocutory appeal in Mr. Karpeles' favor on either motion would resolve the matter in its entirety, which more than satisfies the requirement that an interlocutory appeal *may* materially advance the termination of the litigation. *See Sterk*, 672 F.3d at 536 (holding interlocutory appeal may materially advance termination of litigation by reducing completion time of litigation and removing uncertainty that may delay settlement).

In addition, in light of the current worldwide COVID pandemic, granting the interlocutory appeal could actually speed up the eventual endpoint of this litigation even if the Seventh Circuit were to affirm the Court on both issues. The parties are scheduled to finish expert discovery and class certification briefing by the end of 2020. After the Court addresses any expert-related motions and the motion for class certification, when the Court will be able to conduct jury trials is anybody's guess. Delayed criminal trials will be prioritized. (*See* Chief Judge Rebecca R. Pallmeyer's May 25, 2020 Video Message to the Bar at 2.) And presumably this Court has both criminal and civil trials that need to be rescheduled and cases closer to being ready for trial. Granting this interlocutory appeal would expedite matters because, at best, it would end this litigation; at worst, it would eliminate two major issues for appeal that Mr. Karpeles would almost certainly pursue after a trial if necessary. An immediate appeal could use the time more productively.

**IV. THIS MOTION IS BROUGHT WITHIN A REASONABLE TIME AFTER THE ORDER SOUGHT TO BE APPEALED.**

Finally, this motion is being filed within a reasonable time. Mr. Karpeles brings this motion within four business days after the order denying Mr. Karpeles' motion for summary

judgment, which was entered on June 16, 2020. *See Boim v. Quranic Literacy Inst.*, 291 F.3d 1000, 1008 (7th Cir. 2002) (motions for certificates of appealability brought within a reasonable time when motions were filed thirty-five and thirty-six days after ruling). The order on the motion for personal jurisdiction is obviously older, but if the Court grants the interlocutory appeal for the summary judgment motion, it would be most judicially efficient to have the Seventh Circuit Court of Appeals address the personal jurisdiction issue as well.

## CONCLUSION

For all of these reasons, the Court's orders denying his Motion for Summary Judgment and his Motion to Dismiss for Lack of Personal Jurisdiction should be certified for immediate appeal.

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Court grant this Motion and: (i) certify the orders [Dkt. Nos. 409, 489] for interlocutory appeal pursuant to 28 U.S.C. § 1292(b); and (ii) grant all other just relief.

Dated: June 22, 2020

Respectfully submitted,

Mark Karpeles

By: /s/ Bevin Brennan
One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*