# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

GREGORY GREENE, JOSEPH LACK, and ANTHONY MOTTO, individually and on behalf of all others similarly situated,

Plaintiffs,

-vs-

MIZUHO BANK, LTD., a Japanese financial institution, and MARK KARPELES, an individual,

Defendants.

Case No. 14 C 1437

Chicago, Illinois
April 27, 2016
10:30 a.m.

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE GARY FEINERMAN

APPEARANCES:

For the Plaintiffs: EDELSON P.C.
BY: MR. ARI J. SCHARG
MR. JOHN AARON LAWSON
350 North LaSalle Street
Suite 1300
Chicago, Illinois 60654
(312) 239-3362

Court Reporter:

CHARLES R. ZANDI, CSR, RPR, FCRR
Official Court Reporter
United States District Court
219 South Dearborn Street, Room 2128
Chicago, Illinois 60604
Telephone: (312) 435-5387
email: Charles_zandi@ilnd.uscourts.gov

APPEARANCES: (Continued)

For Defendant Mizuho Bank, Ltd.:

SHEARMAN & STERLING, LLP
BY: MR. JEROME S. FORTINSKY
MR. JEFFREY RESETARITS (via telephone conference call)
599 Lexington Avenue
New York, New York 10022
(212) 848-4900

NEAL, GERBER & EISENBERG
BY: MR. JONATHAN S. QUINN
Two North LaSalle Street
Suite 1700
Chicago, Illinois 60602
(312) 269-8093

(Proceedings heard in open court:)

THE CLERK: 14 C 1437, Greene versus Mt. Gox.

THE COURT: Do we have anybody on the phone?

MR. RESETARITS: Yes. Jeff Resetarits with Shearman & Sterling for Mizuho is on the line.

MR. SCHARG: Good morning --

THE COURT: And could you say your name one more time, please.

MR. RESETARITS: Sure. It's Jeff, last name is Resetarits.

THE COURT: Got it. Thank you.

MR. SCHARG: Good morning. Ari Scharg on behalf of the plaintiffs.

MR. LAWSON: Good morning. Aaron Lawson on behalf of the plaintiffs.

MR. FORTINSKY: Good morning, your Honor. Jerry Fortinsky with Shearman & Sterling for Mizuho.

MR. QUINN: Good morning, your Honor. Jonathan Quinn on behalf of defendant Mizuho.

THE COURT: Good morning. So, if the lawyers want to stand at the podium, you can. If you want to sit down and talk into the microphones, you can, whatever you feel most comfortable doing. I'm indifferent to that.

So, we have a couple of motions. One is fully briefed. One isn't. Let me do the 1292 motion first, which

asks for an interlocutory appeal on the personal jurisdiction ruling. I'm going to deny that motion, and I'm going to state my reasons on the record.

Under 1292, the district court can certify legal questions to the Court of Appeals under particular circumstances. It has to be a controlling question of law, and it has to be -- there has to be a substantial ground for a difference of opinion. And then it has to materially advance the ultimate termination of the litigation.

And I agree that for both questions presented -- well, actually, I'm not sure about that. So, I'm going to put aside the third prong of the test. The two questions that Mizuho has proposed for immediate interlocutory review fall short on the first prong and the second prong.

So, the first question is: May a foreign defendant's alleged silence or inaction, in this case when accepting funds for a deposit, constitute intentional contact with the forum state sufficient by itself to support personal jurisdiction consistent with due process?

That's not a controlling question of law in this case because it doesn't fit this case. It doesn't describe what happened or what is alleged to have happened in this case. And just to make things easier, whenever I say that something happened or that Mizuho did X or Y or the plaintiff did X or Y, I'm not actually saying that Mizuho did X or Y or

plaintiff did X or Y. I'm saying that it's been alleged, that those things have been alleged, and because we're at the pleadings stage, that's my factual predicate.

It can't fairly be described as silence or inaction for a bank to take custody of, accept, and profit from bank deposits that are sent to an account in the bank. That's not inaction. That is putting out a net, taking what comes in the net, and not giving it back, and profiting from it.

It's that conduct that was the basis for my personal jurisdiction ruling, and from where I sit, I don't think that that conduct can fairly be described as silence or inaction.

So, the first question is a perfectly good question, and I think it's probably a contestable question; but it's not a controlling question of law in this case because it doesn't fit this case.

The second proposed question is: May a foreign defendant's adoption of a policy that equally affects thousands of individuals around the world or its failure to disclose such a policy to those individuals subject it to personal jurisdiction in each forum state where any of those individuals may be located consistent with due process?

That question is a contestable -- no, that question is a controlling question in this case because that describes this case, but it's not a contestable question of law. And on that point, I'll just say the following:

I mean, let's assume that a bank did something that it knew was engaged in -- said, "You know, we're only going to engage in transactions, we're only going to accept deposits from" -- and I know the bank says that they weren't able to accept or not accept, and that's something that's going to come up in the motion to dismiss. Right now, I'm just talking about the motion -- the personal jurisdiction motion.

"We're going to accept deposits only from Texas, Oklahoma, Arkansas, Mississippi, and Alabama," as opposed to a bank that says, "We're going to accept deposits from everywhere." It can't possibly be that the bank that limits its alleged tortious conduct to those five states are suable in those five states, are subject to personal jurisdiction in those five states, but that banks who are indiscriminate with respect to the states in which they're knowingly doing things and accepting money from can't be sued anywhere other than where that bank is located.

In other words, you don't get extra credit, from a personal jurisdiction perspective, by treating people in all 50 states in a tortious way, as opposed to limiting your tortious conduct to certain states.

And this goes back to a passage in the opinion where I said that I have no doubt that Mizuho didn't care that Lack was from California or Greene and Motto were from Illinois. And I remember having a discussion -- I think I remember

having a discussion with Mr. Fortinsky when we argued this motion where I heard him saying, perhaps incorrectly, that after *Walden versus Fiore*, personal jurisdiction requires that the defendant actually care which state the defendant is from and which state they're affecting.

And I don't read *Walden versus Fiore* that way, and I think that notion is what underlies the question, the second question that's been presented for a 1292(b) interlocutory appeal.

So, let's say I'm a meat -- a hamburger manufacturer in Canada and I know that my hamburgers are tainted, and I just send out my trucks to deliver -- my trucks are delivering those hamburgers in the United States to all 50 states. I have adopted a policy that equally affects thousands of individuals around the world, or at least in the country; and it really doesn't matter to me whether the trucks are going to North Dakota or Wisconsin or California or Alabama or Mississippi or whatever, but I know that they are, and I know that I'm affecting people in those 50 states.

Mizuho's preferred answer to the second question would be, under those circumstances, the Canadian hamburger manufacturer isn't subject to personal jurisdiction in any of those states because it just acted with a shotgun as opposed to with a rifle. And that -- that's not a contestable question, I don't think. I don't think it's a close question.

So, while it describes this case, it doesn't satisfy the requirements of 1292(b).

So, for those reasons, I'm going to deny the motion for an interlocutory appeal, which is docket No. 208.

Let's move on to the -- let's move on to the motion to dismiss, which presents meatier issues than the 1292(b) motion. So, Mizuho had the last word in writing, so let me ask the plaintiffs whether they would feel that there's anything in the reply to which they'd like to respond in a way that they haven't already responded in their opposition brief.

MR. LAWSON: I don't believe so, your Honor.

THE COURT: Okay. Is there any -- are there any points that you would like to emphasize that you've already put forth in writing?

MR. LAWSON: I don't think so. I imagine you'll have questions about the choice of law issues that come up. If not, I think we'd like to talk about them now, but I think that's perhaps the only issue in which we might have anything we'd want to really put forward.

THE COURT: Okay. Well, tell me what you -- give me your pitch on choice of law.

MR. LAWSON: Okay. Excuse me. It seems to us that if Japanese law is going to apply, then a request that you dismiss the case under Illinois law is essentially a request for an advisory ruling; and we're not sure that Rule 44.1