# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| Plaintiff, | ) ) | Hon. Gary Feinerman |
| v. | ) ) | Magistrate Judge Susan Cox |
| MARK KARPELES, an individual, | ) ) | |
| Defendant. | ) ) | |

## DEFENDANT MARK KARPELES' REPLY MEMORANDUM IN SUPPORT OF HIS MOTION TO EXCLUDE THE REPORT AND OPINION TESTIMONY OF PLAINTIFF'S EXPERT PROFESSOR CAROL GOFORTH PURSUANT TO FEDERAL RULE OF EVIDENCE 702

Dated: November 25, 2020

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

LEGAL STANDARDS ....................................................................................................... 2

ARGUMENT ....................................................................................................................... 2

I.     PROFESSOR GOFORTH EMPLOYS NO RELIABLE METHODOLOGY TO CREATE A FACTUAL NARRATIVE. .......................................5

II.    PROFESSOR GOFORTH'S OPINION IS NOT BASED ON ANY EXPERTISE. .........................................................................................................7

III.   PROFESSOR GOFORTH CANNOT TESTIFY TO LEGAL CONCLUSIONS..................................................................................................15

CONCLUSION.................................................................................................................. 15

i

# TABLE OF AUTHORITIES

**Cases**

*Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804 (2d Cir. 1994) ........................ 8

*Alfa Corp. v Oao Alfa Bank*, 475 F. Supp. 2d 357 (S.N.D.Y. 2007) ........................................... 13

*Aponte v. City of Chicago*,
    No. 09-CV-8082, 2011 U.S. Dist. LEXIS 5213 (N.D. Ill. May 12, 2011) .............................. 10

*Ethicon, Inc.*, No. 2014 U.S. Dist. LEXIS 15351 (S.D. W. Va. Jan. 15, 2014) ............................ 9

*Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*,
    No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792 (N.D. Ill. Mar. 31, 2017) .................. 5, 6, 7, 12

*Gentieu v. Tony Stone Images/Chicago, Inc.*,
    214 F. Supp. 2d 849 (N.D. Ill. 2020) ...................................................................................... 10

*Hostetler v. Johnson Controls, Inc.*,
    No. 3:15-cv-226 JD, 2020 U.S. Dist. LEXIS 151437 (N.D. Ind. Aug. 21, 2020) ..................... 8

*Information Resources Sec. Litig.*,
    No. 89 C 3772, 1994 U.S. Dist. LEXIS 4500 (N.D. Ill. Apr. 11, 1994) .................................... 4

*Jackson v. City of Pittsburgh*,
    No. 07-111, 2010 U.S. Dist. LEXIS 82965 (W.D. Pa. Aug. 13, 2010) ..................................... 6

*Kirkland v. Sigalove*,
    No. 11 C 7285, 2015 U.S. Dist. LEXIS 14621 (N.D. Ill. Feb. 6, 2015) .................................. 12

*Lawson v. Trowbridge*, 153 F.3d 368 (7th Cir. 1998) ..................................................................... 9

*Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698 (7th Cir. 2009) .................................................... 2

*Manpower Inc. v. Ins. Co. of Pa.*, 732 F.3d 796 (7th Cir. 2013) .................................................. 10

*Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*,
    877 F.2d 1333 (7th Cir. 1989) ............................................................................................ 1, 7

*Miller v. GMC*,
    No. 98 C 7386, 2003 U.S. Dist. LEXIS 1467 (N.D. Ill. Jan. 31, 2003) .................................... 4

*Newman ex rel. Newman v. McNeil Consumer Healthcare*,
    No. 10 C 1541, 2013 U.S. Dist. LEXIS 113438 (N.D. Ill. Mar. 29, 2013) ............................... 9

*Ocean Bank*, 481 F. Supp. 2d 892 (N.D. Ill. 2007) ....................................................................... 15

*Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ............................................. 14

*Schall v. Suzuki Motor of Am., Inc.*,
    No. 4:14-CV-00074-JHM, 2020 U.S. Dist. LEXIS 41275 (W.D. Ky. Mar. 10, 2020) ............ 10

*Smith v. Union Pac.*,
    No. 11-cv-986, 2017 U.S. Dist. LEXIS 94501 (N.D. Ill. June 20, 2017) ................................ 11

*Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D. Ill. 2008) ............................................... 11

*Tilstra v. BouMatic LLC*, 791 F.3d 749 (7th Cir. 2015) ................................................................ 13

*United States v. Hall*, 93 F.3d 1337 (7th Cir. 1996) ....................................................................... 2

*ViaMedia, Inc. v. Comcast Corp.*, 951 F.3d 429 (7th Cir. 2020)............................................. 6, 10

*Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452 (D.N.J. 1999).................................................. 10

*Welding Fume Prod. Liab. Litig.*,
   No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164, (N.D. Ohio Aug. 8, 2005)............... 10, 14

*Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416 (7th Cir. 2005) ................................. 5

**Statutes**

Federal Rule of Evidence 702................................................................................................... 2, 9

**Introduction**

In his Opening Memorandum, Mr. Karpeles explained that all the Plaintiff's proposed expert, a corporate professor and lawyer, did was -- without any particular methodology -- pick and choose some articles on the internet geared towards the general public, read those and Mr. Karpeles' deposition, and come up with a "common sense" opinion. In Opposition, Plaintiff Gregory Greene fails to explain: (i) Professor Goforth's methodology, wrongfully asserting that "experience" is sufficient under the law; (ii) how Professor Goforth applied her expertise; or (iii) how her proposed testimony has any connection to Mr. Greene's particular claims.

Instead, Plaintiff Gregory Greene cherrypicks quotes from cases completely different than the situation here. The Plaintiff fails to address 20 of the 29 cases cited by Mr. Karpeles in his opening Memorandum. Many of the Plaintiff's cited cases come from outside this District and apply the law of different Circuit Courts, and, not surprisingly, are cases where expert testimony was allowed. Those cases, however, involve doctors, engineers, economists, explanations of technical and complicated documents -- not experts picking internet articles and reading a deposition to make a decision about what an average consumer "would have" thought.

The Plaintiff never clearly states the issue Professor Goforth addresses or the methodology she employed. She cites websites she has never used before. The Plaintiff cannot provide a single case where an expert was allowed to testify by looking up some general articles on the internet and then conclude what a party "would have thought" on a classwide basis untethered to the particular plaintiff's claims in a fraud case.

As the Seventh Circuit has held, "Judges should not be buffaloed by unreasoned expert opinions. … [U]kase in the guise of expertise is a plague in contemporary litigation." *Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago*, 877 F.2d 1333, 1340 (7th Cir. 1989). It cannot just be "an opinion broached by an expert." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir.

1996), cited in Opp. at 13). "Unless the expertise adds something, the expert at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury that would be subject to control under Rule 403." *Id.* As the case *Gayton v. McCoy* cited by the Plaintiff holds (Opp. at 5-6), the question "is not whether an expert is qualified in general, but whether his qualifications provide a foundation for [him or her] to answer a specific question." 593 F.3d 610, 617 (7th Cir. 2010) (internal quotations and citation omitted). A general background as a law professor in "cryptocurrency" is not specialized to answer any specific question in this case. Any testimony and opinion from Professor Goforth should be excluded.

### Legal Standards

The parties agree that Federal Rule of Evidence 702 governs and that an expert witness' testimony must (i) be relevant to the issues in the case and (ii) assist the trier of fact, and (iii) the expert must be qualified in the area of the testimony. (Mem. at 2; Opp. at 4-5.) The Plaintiff then ignores, but does not dispute, most of the rest of the standards stated by Mr. Karpeles. (Mem. at 2-4; Opp. at 4-5.) The Plaintiff fails to satisfy these standards by a preponderance of the evidence. *See Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

### Argument

As stated in Mr. Karpeles' opening Memorandum, (i) Professor Goforth has employed no discernable methodology at all, and certainly not anything reliable, as the majority of her Declaration is a factual narrative; (ii) her limited opinions are not based on any expertise, but are her subjective and speculative beliefs and impressions; and (iii) several of Professor Goforth's opinions are statements of law properly left to the Court and/or the jury.

Before addressing the Plaintiff's specific arguments, which essentially combine most of these arguments into one and never directly address or answer the first two issues listed above, Mr. Karpeles needs to address two overarching problems with the Plaintiff's Opposition.

First, the Plaintiff claims that the Court (and a jury) needs "context" to assess the claims against Mr. Karpeles. (Opp. at 1, 7-9, 13-14.) According to the Plaintiff, the Court needs an expert like this to understand whether a class relied on Mr. Karpeles' representations. (Opp. at 1 (claiming that Professor Goforth is being offered solely to address whether "the nature of the misrepresentations permits a jury to infer reliance on a classwide basis").) That is wrong: that factual determination must be determined by the lead plaintiff's own case.

The purpose of a class representative is that his experience is supposed to be "typical" of the class, so much so that the issues are "common." Mr. Greene's claim is what will determine whether a class is appropriate for a common law fraud claim. It is not a hypothetical narrative about what happened on other exchanges or what somebody else might have thought if they had known something different. Mr. Greene seeks to be the representative. He needs to explain what he knew, thought, and considered. He needs to state why whatever was said or not said mattered to him. (Opp. at 10.) In opposing Mr. Karpeles' Motion for Summary Judgment, Mr. Greene submitted a declaration wherein he stated, under penalties of perjury, "I was not aware of any other bitcoin exchanges at the time that I opened my account." (Declaration of G. Greene ¶ 6, attached as Exhibit F to Declaration of B. Thomassen [Dkt. No. 467-6 at 3].) Mr. Greene's theory cannot change yet again to allow Professor Goforth to hypothesize about what somebody else may or may not have known or read about other exchanges and what they may have done.

The Plaintiff never argues that Professor Goforth's testimony has any bearing on any element of Mr. Greene's own individual claim against Mr. Karpeles. Professor Goforth cannot testify to what others may have done or thought, completely divorced from the claim of the proposed representative plaintiff and based on entirely different information. (*See, e.g.,* Opp. at 14 (claiming that "Professor Goforth brings critical background information about what bitcoin

3

investors expected from exchanges, what happened to other exchanges in analogous situations, and how those expectations sync up with the expectations of investors involved in more traditional exchanges").) This is not a classwide issue of calculation of damages or a common design defect. Mr. Greene cannot sustain a common law fraud claim based on a "fraud-on-the-market" style theory (which he never pled in any event). *See, e.g., Miller v. GMC*, No. 98 C 7386, 2003 U.S. Dist. LEXIS 1467, *12 (N.D. Ill. Jan. 31, 2003) (refusing to apply the presumption of reliance "fraud-on-the-market" theory to state law claims); *In re Information Resources Sec. Litig.*, No. 89 C 3772, 1994 U.S. Dist. LEXIS 4500, at *11-13 (N.D. Ill. Apr. 11, 1994) (refusing to allow fraud-on-the-market basis for common law fraud claim under Illinois law). He cannot do for a proposed class what he cannot do for himself.

This impermissible notion of "context" permeates the entire Opposition, and it is very important to keep in mind for the entire analysis. Mr. Greene never identified any of the articles upon which Professor Goforth relies as anything he considered in any discovery responses or in the allegations in the Complaint. He never identifies any of the history of Bitcoin and failures of other exchanges as anything he thought or considered relevant.

There is no need or use for any expert testimony that "draws heavily on Karpeles's deposition" or for Professor Goforth's "opinion" about the Terms of Use on the Mt. Gox website. (Opp. at 4.) Her reiteration of the reasons for Mr. Karpeles' decisions from his deposition testimony is not relevant or based on any expertise. (*Id.* at 10.) Professor Goforth's proposed testimony based on "her understanding of the historical record" and her supposed "informed interpretation of the Terms of Use and Karpeles's testimony" emphasizes that her testimony is not admissible. (*Id.* at 4.) Cases cannot be brought on behalf of theoretical class members who may or may not exist, based on whatever story a professor may have put together.

4

Second, the Plaintiff ignores almost all of the cases cited by Mr. Karpeles and much of the very detailed explanations that Mr. Karpeles provided in his Opening Memorandum. (Mem. at 5-15; *id.* Ex. C.) In response, the Plaintiff essentially waves his hand and cites to various forms of "experience" and "context." Mr. Karpeles will therefore respond to the Opposition, but it should be noted how much of his opening Memorandum is never addressed.

I. **PROFESSOR GOFORTH EMPLOYS NO RELIABLE METHODOLOGY TO CREATE A FACTUAL NARRATIVE.**

Mr. Karpeles explained in detail that Professor Goforth has not employed any reliable methodology. (Mem. at 5-9.) Professor Goforth admittedly is "drawing heavily on Karpeles's deposition," and her "background on bitcoin" was "sourced principally from contemporary internet reports." (Opp. at 3-4.) Her purported experience led her to conclude that users would expect an exchange "to act honestly and in good faith" and to "opine[]" on the Terms of Use. (*Id* at 4.) Professor Goforth's fallback position of her "background" or "experience" is not enough. *In re Fluidmaster, Inc. Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 U.S. Dist. LEXIS 48792, at *73 (N.D. Ill. Mar. 31, 2017) (cited in Opp. at 13) (holding that "[m]erely prefacing a deposition answer with the phrase 'based on my experience' does not a save a completely unsupported opinion from exclusion," quoting *Zenith Elecs. Corp. v. WH-TV Broad. Corp.*, 395 F.3d 416, 419 (7th Cir. 2005)). With no discernible application, methodology or specialized knowledge, this proposed evidence is not admissible by a preponderance of the evidence.

While the Plaintiff is laser focused on finding cases that have held, in a comment or two, that an expert *may* do certain things in forming an opinion, none of these cases state that these things alone are admissible. What the Plaintiff fails to do at all is explain or provide any

5

methodology or basis to admit this particular testimony, which is just an inadmissible narrative followed by limited unfounded opinions not involving any expertise and legal opinions.

The only mention of what could possibly be Professor Goforth's supposed methodology comes near the end, when the Plaintiff finally states that "[a]n expert who applies their non-scientific expertise to the facts of the case has used a permissible methodology." (Opp. at 14, citing *ViaMedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 484 (7th Cir. 2020).) The Seventh Circuit made no such broad holding in *ViaMedia*, an antitrust case. The trial court there should have allowed "an expert witness on the economic rationales of [the defendant's] conduct and the competitive ramifications from such conduct." 951 F.3d at 484. This economic witness with a Ph.D. used his expertise to explain "why a self-provision is not a viable business option for smaller MVPDs [multichannel video programming distributors]" and why the plaintiff "cannot make a competitive offer for ad rep services if [the defendant] conditions its competitor MVPD's Interconnect access on forgoing [the plaintiff's] services." *Id.* That is, he used his economic expertise to explain market issues for an antitrust case -- where markets are directly at issue. It was not an individual fraud claim, and his testimony was specific to a particular issue.

*Jackson v. City of Pittsburgh*, No. 07-111, 2010 U.S. Dist. LEXIS 82965 (W.D. Pa. Aug. 13, 2010) does not hold that a non-scientific expert can merely cite "experience" as a methodology. (Opp. at 14.) *Jackson* required the specific application of a methodology even from experience. The court excluded almost of the proposed expert testimony, and only allowed testimony regarding standardized police procedures. *Jackson*, 2010 U.S. Dist. LEXIS 82965, at *33-46. The remaining case also uses an actual methodology. (*See* Opp. at 13, citing *In re Fluidmaster,* 2017 U.S. Dist. LEXIS 48792, at *17-25 (allowing an expert with a Ph.D. in marketing to offer an opinion on a survey plan and design for calculating classwide damages).)

6

There is "no hint of an inferential process, no discussion of hypotheses considered and rejected" in what Professor Goforth did. *In re Fluidmaster*, 2017 U.S. Dist. 48792, at *20, quoting *Mid-State Fertilizer*, 877 F.2d at 1339. Professor Goforth read some internet articles and came up with a theory. She did not use her past experience to explain anything. She now contends she can tell what individual purchasers "would have" done or "would have" thought, or "would have" expected. She has no basis or expertise to do that. A generic statement of her "expertise" does not make that a methodology. This alone precludes her testimony.

**II. PROFESSOR GOFORTH'S OPINION IS NOT BASED ON ANY EXPERTISE.**

In addition to not explaining any methodology, the Plaintiff never explains *how* Professor Goforth applied any expertise. For instance, part of Professor Goforth's purported expertise "is separating fact from potential fictions when researching cryptocurrencies." (Opp. at 6.) The underlying citation for this statement leaves no doubt that this is nowhere near an expertise. Professor Goforth testified that she reviewed internet articles about what happened to other bitcoin exchanges. All she did was "mak[e] sure they were reported in multiple sources and that it's consistent with what was generally said from other publicly available sources, no. I didn't take just one article and say, ah-ha, that's it. But I did do an investigation, just not original research into the records from many of these exchanges." (Goforth Tr. 110:12-16, attached hereto as Exhibit A.)

That is, the purported "expertise" was looking for more than one article on the internet that stated the same information as another. That's it. That is not an expertise. Anybody with access to the internet can do that. That is hardly "separating fact from potential fictions."

The Plaintiff then makes a host of statements based on limited excerpts from cases that did not preclude an expert from testifying. Of course, in all of those cases, many other considerations came into play. For instance, the Plaintiff misses the point when he argues that an

7

expert may draw on record facts. (Opp. at 7-8.) The problem with Professor Goforth's proposed testimony is that an expert cannot only reiterate certain facts from the record and pull internet articles as the entire sum and substance of an opinion. The Plaintiff cannot take refuge in a snippet from *Hostetler v. Johnson Controls, Inc.*, No. 3:15-cv-226 JD, 2020 U.S. Dist. LEXIS 151437, at *16 (N.D. Ind. Aug. 21, 2020). (Mem. at 5; Opp. at 7-8.) The court there was very clear: "Acting simply as a narrator of the facts does not convey opinion based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. Mere narration thus fails to fulfill *Daubert's* most basic requirements." *Id.* at *17 (quotation and citation omitted). The Plaintiff here fails in the same way as in *Hostetler*: that proposed expert had "great difficulty articulating what those opinions are or what expert gloss she offered beyond reciting a narrative or offering observations that would be apparent to a lay person." *Id.*

The Plaintiff continues on this path by trying to convince the Court that an expert can just "highlight[] what she considers the most relevant parts of [Mr. Karpeles'] testimony and explaining why." (Opp. at 12, n.3.) That is hardly what happened in the case about the bombing of PanAm Flight 103 that the Plaintiff cites in support. That court held that experts in aviation could opine on issues relating to whether PanAm was operating "under a commercial rather than security priority" and "training requirements." *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 825-26 (2d Cir. 1994). The court did not find error "in the format of the testimony," which included "the use of transparencies to highlight portions of the trial transcripts to which the witnesses referred when they were on the witness stand." *Id.* at 826. That is, the court did not reject the form of a demonstrative exhibit with highlights. The Second Circuit most certainly did not say that an expert can come in just to highlight portions of testimony.

8

Nor should this issue be left for trial. (Opp. at 12, n. 3, citing *In re Ethicon, Inc.*, No. 2014 U.S. Dist. LEXIS 15351, at *2597 (S.D. W. Va. Jan. 15, 2014).) In *Ethicon*, the court excluded the portion of a surgeon's opinion taken from two peer-reviewed journal articles for a claim about the market, finding that not within his expertise. The portion of that opinion allowing for some historical commentary gives no indication to what admissible part of his opinion it relates or why. It does not hold that "context" alone is a permissible reason.

This is also quite different from *Lawson v. Trowbridge*, 153 F.3d 368, 376 (7th Cir. 1998), where the Seventh Circuit found that "[k]nowledge of police training is specialized." (Opp. at 8, 13.) The fact that some jurors would have experience with knives did not render police training to be a non-specialty. Those experts -- who taught police officers -- were not looking things up on the internet and explaining what they found as "context." They were explaining actual training, including what they taught a particular defendant. *Id.* at 375.

Professor Goforth's proposed testimony is also nothing like that in *Newman ex rel. Newman v. McNeil Consumer Healthcare*, No. 10 C 1541, 2013 U.S. Dist. LEXIS 113438 (N.D. Ill. Mar. 29, 2013). (Opp. at 10.) In that case, a pharmacologist and toxicologist was allowed to explain highly technical regulatory language not standard to a layperson. That included things like what it means when the "General Accounting Office concluded that the FDA obtained limited postmarket information on OTC drugs and that the FDA lacked access to critical postmarketing surveillance information for OTC drugs." *Id.* at *21. There is no complicated information in this case that would need similar explanation.

In each and every one of the remaining cases cited by the Plaintiff on this point, the court either very clearly explained the application of the expertise in the cases in which the testimony was allowed or did not allow the testimony because it failed to satisfy the standards of Rule 702.

9

(*See* Opp. at 7-9, citing *ViaMedia*, 951 F.3d 429 (discussed *supra*); *Gentieu v. Tony Stone Images/Chicago, Inc.*, 214 F. Supp. 2d 849, 851-52 (N.D. Ill. 2020) (recognizing that an expert cannot opine like a "closing argument" and provide "speculation about motives," why a defendant "took certain actions," or about the meaning of a provision of a contract); *Aponte v. City of Chicago*, No. 09-CV-8082, 2011 U.S. Dist. LEXIS 5213 (N.D. Ill. May 12, 2011) (excluding three of four proffered opinions of a retired law enforcement offer who did nothing more than provide opinions "readily understandable to the average layperson" or legal opinions, applied no professional standards, and relied on "no stated principle nor methodology nor on any specialized knowledge"); *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-00074-JHM, 2020 U.S. Dist. LEXIS 41275, at *20-21 (W.D. Ky. Mar. 10, 2020) (allowing mechanical engineering expert to testify about that field and brake and safety design, which included review of certain documentary evidence); *In re Welding Fume Prod. Liab. Litig.*, No. 1:03-CV-17000, 2005 U.S. Dist. LEXIS 46164, at *74-80 (N.D. Ohio Aug. 8, 2005) (permitting the testimony of "a medical doctor, epidemiologist, and specialist in Occupational Medicine" to testify regarding a "great majority of documents and articles" that "are complicated, and the inferences those documents may or may not support are not at all simple"; not allowing expert "to offer testimony that is based largely on personal belief or his own assessment of the weight of the evidence"); *Voilas v. Gen. Motors Corp.*, 73 F. Supp. 2d 452, 461-65 (D.N.J. 1999) (permitting an economist to testify about his "clarification and summary of a large corporation's business plans" as helpful for "complex financial matters" and excluding the same expert's proposed testimony on punitive damages); Opp. at 12, citing *Manpower Inc. v. Ins. Co. of Pa.*, 732 F.3d 796, 807 (7th Cir. 2013) (finding that trial court should not have excluded damages expert where issue was not with the methodology but dispute over the soundness of data selection for input).)

In the three instances the Plaintiff cites to contend that Professor Goforth relied on "her understanding of markets and market behavior" (Opp. at 10), there is no expert application; all of it just summarizes testimony and public reports:

- Opp. at 10, citing Goforth Tr. 124:6-17: After first stating she based her opinion on "her understanding of what people would have reacted to if they had known the truth," and admitting that she did no independent analysis for the effects of the Gox Bot on pricing of bitcoin in 2013 and 2014, Professor Goforth tried to save her testimony by asserting that her "view of general market behavior" was the reason for dropping "minimal" from Mr. Karpeles' testimony. Professor Goforth had written, "Karpeles acknowledged, for example that Gox Bot activity would have affected the price of bitcoin on the exchange, given that it would have impacted the apparent demand for (and, thus the price of) bitcoin on Mt. Gox." (The full relevant transcript portion is 123:13-124:17, attached as Exhibit A.)

- Opp. at 10, citing Goforth Tr. 130:2-7: Claiming to rely on unidentified "publicly available reports," but providing no detail and no way to determine if those public reports are the type relied upon by experts or even require expertise to interpret. (The transcript portion is attached as Exhibit A.)

- Opp. at 10, citing Goforth Tr. 156:13-23: Professor Goforth admits that she is just summarizing public reports regarding the factual occurrence that Mt. Gox shut down, and not identifying any reports requiring any expertise. (The full relevant transcript portion is 156:8-157:6, attached as Exhibit A.)

Simply stating "my experience" with no explanation of how that applies is insufficient to sustain an expert report. *Smith v. Union Pac.*, No. 11-cv-986, 2017 U.S. Dist. LEXIS 94501, at *17-18 (N.D. Ill. June 20, 2017). This case is like *Sommerfield v. City of Chicago*, 254 F.R.D. 317 (N.D. Ill. 2008). (Opp. at 13.) The *Sommerfield* plaintiff sought to introduce the testimony of an expert on policing. The Court struck the report and excluded most of the proposed testimony as being inadmissible where the proposed expert sought to make judgments and provide commentary on actions, like Professor Goforth here. The Court only left open the possibility that the expert could opine applying police training standards. Again, application of some expertise was key. Professor Goforth's opinion falls into all of the types excluded by the *Sommerfield* court: general conclusions outside of any qualifications. *Id.* at 333-37.

11

Interestingly, aside from a passing statement in the introduction, the Plaintiff never says that Professor Goforth applied her "understanding of markets and market behavior" as the basis for her opinions, only saying that "[h]er bottom line is informed by her understanding of securities markets and buttressed by historical evidence." (Opp. at 10; *see id.* at 3 (similar).) Her conclusions are merely consistent with her experience and what she found on the internet. This is not a trivial distinction. Professor Goforth has no expertise in what certain, individual buyers "would have" thought or "done. *See, e.g., In re Fluidmaster*, 2017 U.S. Dist. LEXIS 48792, at *74 (striking portion of engineer's opinion because that background "gives him no insight into the motivations, intent, and state of mind of a corporation").

The Plaintiff also claims that an argument Mr. Karpeles never made is incorrect: Mr. Karpeles *never* contended that any expert may not rely on materials that would otherwise be inadmissible as a blanket rule. (Opp. at 10-12.) Mr. Karpeles is well aware that, if appropriate and if the type of information is the kind upon which an expert in the field reasonably relies, an expert may rely on hearsay. *See, e.g., Kirkland v. Sigalove*, No. 11 C 7285, 2015 U.S. Dist. LEXIS 14621, at *25-26 (N.D. Ill. Feb. 6, 2015) (excluding proposed expert testimony where the defendants "made no effort to carry their burden of providing that the information" upon which the expert relied "is the kind 'reasonably relied upon' by experts in the field"). Experts cannot just be the "mouthpiece" for inadmissible hearsay. *Id.* at *26.

Nor did Mr. Karpeles ever argue that an expert is summarily precluded from relying on information from the internet. (Opp. at 11.) Mr. Karpeles cited to cases showing that testimony like that being proposed here, just a narrative based on certain information from the internet, is

12

not admissible. (Mem. at 6-7 and cases cited therein.)[1]  All that Professor Goforth did was select a narrow set of some articles off of the internet without any particular methodology or reasoning, and without any basis to say that they are authoritative or regularly considered in her field, and put together a narrative. That is the missing connection. (Opp. at 11-12, citing *Alfa Corp. v Oao Alfa Bank*, 475 F. Supp. 2d 357, 362 (S.N.D.Y. 2007) (deciding that the website Wikipedia is not "inherently unreliable as to render inadmissible any opinion that references it," including studies about its error rate).)

The Plaintiff even wrongfully tells the Court that Mr. Karpeles argued "that an expert cannot, under any circumstances, rely on the work of other without independently verifying it." (Opp. at 12, n.4.) The Plaintiff quoted *Tilstra v. BouMatic LLC*, 791 F.3d 749, 753 (7th Cir. 2015) as follows: "[A]n expert witness is not required to verify all the facts on which he relies." (Opp. at 12, n.4.) The remainder of the sentence exposes the very problem with the Plaintiff's position, continuing on: "he [an expert] can rely on hearsay (in this case, what the accountants stated in the financial statements) ***provided that such reliance is an accepted practice in his profession***, as it is." *Tilstra*, 791 F.3d at 753 (emphasis added). Nothing about what Professor Goforth did is an accepted practice nor are her sources those generally relied upon in the field.

Professor Goforth repeatedly testified that she did not know many of the sources that she culled from the internet. (*See* Mem. Ex. B, Goforth Dep. Tr. at 69:2-70:4; 76:21-77:12; 78:13-20; 79:10-14; 84:5-10; 87:13-23; 90:5-15; *id.* Ex. A, Goforth Decl. Ex. B.) The Plaintiff fails to show that Professor Goforth used sources customarily relied upon by experts in the field. In fact, the Plaintiff tries to reverse the burden: "Karpeles does not argue that cryptocurrency experts do not rely on internet reporting about cryptocurrency. And given that the field is very technology-

---

[1] The Plaintiff is correct that *Barnett v. City of Chicago*, 969 F. Supp. 1359 (N.D. Ill. 1997) found the testimony dubious and was admitted, but did not discuss whether anybody challenged it prior to trial. The Court's comments remain valid and a basis to exclude the testimony, had such a motion been brought. (Mem. at 6; Opp. at 9.)

forward, it would be unusual for relevant materials *not* to come from the internet." (Opp. at 11 (emphasis original).) But the Plaintiff makes no argument about the particular sources chosen by Professor Goforth as being standard, authoritative sources. "The Internet" cannot be considered a customary, authoritative source.

The Plaintiff's position, therefore, appears to be that anything and everything on the internet is a perfectly fine basis for an expert opinion as long as the expert has some "cryptocurrency" background with no further showing needed. The Court cannot accept this proposition. This is not a question about the reliability of the data. (Opp. at 12.) If necessary, that challenge will come at a later time. But this Court must first determine if the particular sources are reasonably relied upon by experts in the field. Even the Plaintiff never argues that.

In a footnote, the Plaintiff contends that "[a]s to the historical facts relie[d] upon by Professor Goforth, they are appropriately part of her testimony because there are no percipient witnesses available to establish those facts," citing *In re Welding Fume Prod. Liab. Litig.*, 2005 U.S. Dist. LEXIS 461464, at \*78, n.31. This grossly misstates *Welding Fume.* That case first noted that "'any historical commentary of what happened' is 'properly presented through percipient witnesses and documentary evidence,' not expert narrative." *Id.*, quoting *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004). The *Welding Fume* court allowed a medical expert to testify on his "historical review" of "publicly available medical and scientific literature," and then opine on welding fumes and the state of the art of the industry and causation. Professor Goforth picked internet articles without any apparent rhyme or reason (other than if they appeared to support what the Plaintiff wanted), without any analysis of their acceptance in the field, and then wants to opine what effect those general documents would (or could) have had on an unnamed party. That is not allowed.

14

### III. PROFESSOR GOFORTH CANNOT TESTIFY TO LEGAL CONCLUSIONS.

The Plaintiff unwittingly admits that Professor Goforth is being offered to provide a legal opinion in total. Professor Goforth purportedly will "provide[] ***context*** that will allow the jury ***to understand the legal import*** of Karpeles's misrepresentations." (Opp. at 9 (emphases added).) The jury will determine whether there is any "legal import" to Mr. Karpeles' conduct. Mr. Greene must establish all of the elements of his common law fraud claim. There is no need for anybody else to provide "context" about what he or others may have done or thought.

The Plaintiff barely addresses Professor Goforth's legal conclusion in Paragraph 54, arguing only that it would not determine the outcome of the case. (Opp. at 15.) Even the one case the Plaintiff cites struck the vast majority of two proposed expert opinions containing legal conclusions. (Opp. at 15, citing *In re Ocean Bank*, 481 F. Supp. 2d 892, 901-04 (N.D. Ill. 2007).) *Ocean Bank* held that "courts will not admit testimony on purely legal matters and comprised solely of legal conclusions." 418 F. Supp. at 898. Paragraph 54 is improper: saying it is within Professor Goforth's "broader discussion" does not make it admissible. (Opp. at 15.)

### Conclusion

The Plaintiff's Opposition is full of generalizations and provides no basis for allowing Professor Goforth to testify in this case. She has not applied any methodology or expertise. For all of the reasons in this Reply, Plaintiff's opening Motion and Memorandum and any further argument to the Court, she should be precluded from providing any testimony and her Declaration should be stricken, excluded and not used in any capacity by this Court.

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Honorable Court grant his Motion to Exclude Plaintiff's Expert Carol Goforth's Report and Opinion Testimony and for such other and further relief as this Court deems just in Mr. Karpeles' favor.

| | |
|---|---|
| Dated: November 25, 2020 | Respectfully submitted, |
| | Mark Karpeles |
| | By: /s/ Bevin Brennan |
| | One of His Attorneys |

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*