**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 14-cv-01437 |
| | ) | |
| | ) | Hon. Gary Feinerman |
| Plaintiff, | ) | |
| | ) | Magistrate Judge Susan Cox |
| v. | ) | |
| | ) | |
| MARK KARPELES, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MARK KARPELES' OPPOSITION TO
PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Dated: December 14, 2020

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com
*Attorneys for Defendant Mark Karpeles*

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND ..................................................................................3

ARGUMENT ..........................................................................................................5

    I.    Mr. Greene fails to satisfy each element of Rule 23(a) because the proposed class members do not share commonality, his claims are not typical of the class, and he is not an adequate class representative. .......................6

        A.    The proposed class lacks commonality because it includes class members, such as Mr. Greene, who created their accounts before the Mt. Gox Terms of Use existed....................................6

        B.    The proposed class also fails because Mr. Greene's claims are not typical and Mr. Greene is not an adequate class representative. ......................................................................11

    II.    The proposed class fails to meet the requirements of Rule 23(b)(3) because individual issues for each putative class member's fraud claim would predominate and the Japanese civil rehabilitation proceedings provide a superior forum for the putative class. ....................................15

        A.    Individual, fact intensive determination of issues regarding whether potential class members read and relied upon the Mt. Gox Terms of Use would predominate. ..............................16

            1)    Courts in the Seventh Circuit routinely refuse to certify class actions in common law fraud claims because of the individualized nature of fraud. ..............................16

            2)    Circumstantial evidence cannot allow an inference of reliance....................................................................................21

        B.    A class action is not the superior method to address these claims where class members can recover through the Japanese civil rehabilitation proceedings....................................25

            1)    A class action is not superior to the Japanese civil rehabilitation proceedings.............................................26

            2)    Certification is not warranted where potential recoveries are not too small to preclude individual suits. ...................................................................................30

    III.    The class should not be certified with or without Professor Goforth's testimony.............................................................................31

CONCLUSION......................................................................................................32

# TABLE OF AUTHORITIES

## Cases

*Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659 (N.D. 1966)...................................... 22

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ...................................................... 11, 16

*Audet v. Fraser*, 332 F.R.D. 53 (D. Conn. 2019)................................................................ 21

*Blair v. Supportkids, Inc.*,
   No. 02 C 0632, 2003 U.S. Dist. LEXIS 6640 (N.D. Ill. Apr. 17, 2003)................................... 17

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) .................................................... 30

*CE Design Ltd. v. King Architectural Metals, Inc.*,
   637 F.3d 721 (7th Cir. 2011) ................................................................ 11, 12, 13, 15

*CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014)............................. 21

*Chatham v. Sears, Roebuck & Co.*,
   Nos. MDL-1703, 05 C 4742, 05 C 2623,
   2007 U.S. Dist. LEXIS 89349 (N.D. Ill. Dec. 4, 2007).......................................................... 19

*Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*,
   797 F.3d 426 (7th Cir. 2015) ............................................................................... 7

*Christie Clinic, P.C. v. MultiPlan, Inc.*,
   No. 08-CV-2065, 2009 U.S. Dist. LEXIS 5750 (C.D. Ill. Jan. 26, 2009) .............................. 19

*Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996) .......................................... 7

*Cook v. Hayden*, 31 S.E.2d 625 (Va. 1944)........................................................................ 22

*Creative Montessori Learning Ctr. v. Ashford Gear LLC*,
   662 F.3d 913 (7th Cir. 2011) ............................................................................... 6

*Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019)........................................................... 27

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)......................................... 16

*First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006)........................................................ 21

*Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365 (N.D. Ill. 1998).......................................... 17

*Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328 (N.D. Ill. 2006) ................................................ 19

*Glazer v. Abercrombie & Kent, Inc.*,
   No. 07 C 2284, 2008 U.S. Dist. LEXIS 91142 (N.D. Ill. Nov. 10, 2008)........................... 5, 10

*Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583 (7th Cir. 2011) .................................. 11

*Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190 (N.D. Ill. 2018).................................. 15

*Hardy v. City Optical Inc.*, 39 F.3d 765 (7th Cir. 1994).................................. 13

*Harper v. Sheriff*, 581 F.3d 511 (7th Cir. 2009) .................................. 6

*Information Resources Sec. Litig.*,
 No. 89 C 3772, 1994 U.S. Dist. LEXIS 4500 (N.D. Ill. Apr. 11, 1994).................................. 24

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
 634 F.3d 883 (7th Cir. 2011) .................................. 16

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) .................................. 21

*Kroot v. Shu B. Chan*, 125 N.E.3d 531 (Ill. App. Ct. 2019) .................................. 28

*Lipton v. Chattem, Inc.*, 289 F.R.D. 456 (N.D. Ill. 2013) (Feinerman, J.).................................. passim

*Med. Mut. of Ohio v. AbbVie Inc.*,
 No. MDL No. 2545, 2018 U.S. Dist. LEXIS 125041 (N.D. Ill. July 26, 2018) .................................. 13

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012) .................................. 7

*Metro. Life Ins. Co. v. Moore*,
 No. 17 C 7377, 2019 U.S. Dist. LEXIS 114011 (N.D. Ill. July 10, 2019) .................................. 12

*Miller v. GMC*,
 No. 98 C 7386, 2003 U.S. Dist. LEXIS 1467 (N.D. Ill. Jan. 31, 2003) .................................. 24

*Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) .................................. 21

*Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654 (7th Cir. 2015).................................. 26, 27

*Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009).................................. 11

*Murray v. GMAC Mortgage Corp.*, 434 F.3d 948 (7th Cir. 2006) .................................. 26

*Myers v. Hertz Corp.*, 624 F.3d 537 (2d Cir. 2010).................................. 16

*Nagel v. ADM Inv'r Servs.*, 217 F.3d 436 (7th Cir. 2000).................................. 16

*Oshana v. Coca-Cola Co.*, 472 F.3d 506 (7th Cir. 2006).................................. 5, 13, 17

*Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010) .................................. 17

*People ex rel. Peters v. Murphy-Knight*,
 618 N.E.2d 459 (Ill. App. Ct. 1993) .................................. 7

*Peterson v. H&R Block Tax Servs., Inc.*,
174 F.R.D. 78 (N.D. Ill. 1997) .................................................................................... 22

*Premier Elec. Constr. Co. v. Morse/Diesel, Inc.*,
628 N.E.2d 1090 (Ill. App Ct. 1993) ............................................................................ 7

*Randall v. Rolls-Royce Corp.*, 637 F.3d 818 (7th Cir. 2011) ................................. 11, 13

*Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290 (N.D. Ill. 2008) ........................ 26

*Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584 (7th Cir. 1993) ................... 11

*Schleicher v. Wendt*, 618, F.3d 679 (7th Cir. 2010) .................................................... 25

*Seekamp v. It's Huge, Inc.*,
No. 1:09-CV-00018 LEK, 2012 U.S. Dist. LEXIS 33295,
2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) ........................................................ 21

*Sherwin v. Samsung Elecs. Am.*,
No. 16 C 7535, 2019 U.S. Dist. LEXIS 234008, (N.D. Ill. Dec. 18, 2019) ........... 12

*Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898 (N.D. Ill. 2014) ......... 7, 16

*Smith v. NVR, Inc.*,
No. 17 C 8328, 2019 U.S. Dist. LEXIS 216560,
(N.D. Ill. Dec. 16, 2019) (Feinerman, J.) ............................................................. 17

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 756 (7th Cir. 2014) ................................ 7, 23

*Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001) .................................. 5

*Thompson's Gas & Elec. Serv. v. BP Am. Inc.*,
691 F. Supp. 2d 860 (N.D. Ill. 2010) .................................................................... 7, 12

*Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742 (7th Cir. 2008) ........................... 17

*Tomeo v. CitGroup, Inc.*,
No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117 (N.D. Ill. Sept. 27, 2018) ............ 27

*Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629 (5th Cir. 2016) .................................... 21

*Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971) ............................................... 22

**Rules**
Federal Rule of Civil Procedure 23 ..................................................................... passim

Federal Rule of Civil Procedure 44 ............................................................................ 29

## INTRODUCTION

Plaintiff Gregory Greene asks this Court to certify a class [Dkt. No. 508] ("Motion") for a single count alleging common law fraud relating to the closure of the Mt. Gox bitcoin exchange in 2014 despite: (i) Mr. Greene's inconsistent allegations and testimony about what his own claim for fraud even is; (ii) the mix of information that any individual user read, considered and relied upon is vastly different for each user; (iii) Mr. Greene's lack of typicality and adequacy based on his meandering allegations of fraud, his credibility issues, and a hotly contested issue of whether the Terms of Use upon which he now bases his claim even existed when he began using Mt. Gox; (iv) the predominance of individual issues of reliance and what constitutes specific misrepresentations for each proposed class member; and (v) the superior method of recovery in the Japanese civil rehabilitation proceedings, which are likely to provide recovery to potential class members with less cost and fewer expenses.

But the most glaring problem is that in his entire Motion, Mr. Greene only generically states that there are "misrepresentations" in the Terms of Use -- a document over four single-spaced pages in length. He never once identifies any particular provision as the basis for his common law fraud claim. Instead, he alleges that "[r]ead as a whole, the Terms of Use presented Mt. Gox as a legitimate and secure place to deposit, store and trade bitcoins and fiat currency." (Mem. at 4.) An examination of those provisions shows there is no clear question of even what the purported fraud is and how it ties to the Terms of Use.

Despite all of these problems, Mr. Greene asks this Court to certify a class, which would be against Seventh Circuit precedent and rulings in this District. Ignoring many cases from this Circuit, including binding authority cautioning that classes for common law fraud claims are "not likely," Mr. Greene cites primarily out-of-Circuit and out-of-state authorities as the purported legal authority for many dispositive, factors -- going so far as to ask this Court to follow a 1944

case from a Virginia state court and a 1966 case from a North Dakota state court regarding reliance. Those citations exemplify just how unsupported Mr. Greene's efforts are. Under Federal Rule of Civil Procedure 23 and the applicable federal case law in this Circuit, no class can be certified here for "All persons in the United States who had bitcoins or money stored with Mt. Gox on February 24, 2014," let alone one with Mr. Greene as the class representative. (Mem. at 7.)

Mr. Greene fails to satisfy three of the four required elements for class certification under Federal Rule of Civil Procedure Rule 23(a). There is no commonality in Mr. Karpeles' supposed conduct towards the class because the proposed class includes individuals who created their Mt. Gox accounts before the Terms of Use existed, including Mr. Greene himself. Mr. Greene's changing allegations, discovery responses, deposition testimony and subsequent declarations subject him to individual defenses and credibility problems. Because of this, Mr. Greene's claims are not typical, and he is not an adequate class representative.

Mr. Greene also fails to satisfy Federal Rule of 23(b)(3), as individual issues will predominate and there is a superior method of adjudication. First, individual claims and issues would predominate where each individual class member will have to prove what he or she saw, read and relied upon with respect to the Mt. Gox Terms of Use (if they saw them at all). Second, the Japanese civil rehabilitation proceedings provide a superior and already-existing method of recovery, without the potential subtraction of attorneys' fees and without the need to prove multiple elements of fraud by clear and convincing evidence. In addition, the claims are sizeable enough to be pursued individually.

Because Mr. Greene fails to demonstrate that certification of the proposed class is appropriate pursuant to Federal Rule of Civil Procedure 23, the Motion should be denied.

**Factual Background**

Mr. Greene, via Professor Goforth's Report, his Opposition to Mr. Karpeles' Motion for Summary Judgment and his Motion, but not in the operative Complaint, now argues that the underlying conduct that makes certain statements fraudulent in the Terms of Use implemented by Mt. Gox on January 12, 2012 is (i) that a theft of 80,000 bitcoins in March 2011 that left Mt. Gox in a deficit position that was concealed and (ii) that Mt. Gox used a bot to effect some trades. (Mem. at 4-6.) The theories do not align with the provisions he now cites from the Terms of Use. Putting aside all of the rhetoric and interpretation that Mr. Greene and his lawyers include in the Motion of what the Terms of Use mean when "[r]ead as a whole" (*id.* at 4), Mr. Karpeles believes that Mr. Greene's claim implicates three provisions of the Terms of Use.

Based on Professor Goforth's Report and Mr. Greene's Opposition to Mr. Karpeles' Motion for Summary Judgment, Mr. Greene appears to be constructing his current common law fraud claim based on the three provisions in the Terms of Use that became effective on or after January 20, 2012. (*See* Exhibit A, Goforth Decl. ¶¶ 49-50; 52-53; Mem. 4-6.) Comparing the provisions with the theories shows just how much individual interpretation and application would matter.

1.      In the section "Mt. Gox's Obligations" on page 3 of the Terms of Use, it states, "Except in the case of Purchase Transactions, Members acknowledge and agree that, when completing Transactions, they are trading with other Members, and Members accept that Mt. Gox acts only as an intermediary in such Transactions and not as a counterparty to any trade."

This section obviously has nothing to do with any representations about a deficit. It also states that in transactions between "Members," Mt. Gox is just an intermediary. Whether somebody believed that Mt. Gox itself would never trade in any situation is not uniform and is subject to interpretation, particularly with the placement of the clause "in such Transactions." Nor is there evidence to suggest that this was a material term upon which a Mt. Gox user would

rely, depending on one's interpretation. As Mr. Karpeles expert David Pelleg, who has decades of experience in actual capital markets, explained, this provision "is indemnifying Mt. Gox from any legal responsibility of being the counterparty to a trade. … I do not read this to imply or promise that Mt. Gox itself will never be the counterparty in a trade. In fact, a market-participant would EXPECT them to be in the market from time-to-time for administrative and rebalancing reasons." (*See* Exhibit B, Pelleg Declaration ¶ 48.) Nobody would care who the counterparty was -- be it friend or villain. (*Id.* ¶ 40.) In the relevant timeframe, the early users were risk-takers who simply wanted to be able to trade, and Mt. Gox was used by over 70% of the market to do just that, with the best core exchange functions that existed in the world at the time. (*Id.* ¶¶ 37-42.)

2.      That same section of the Terms of Use further provides that Mt. Gox "will hold all monetary sums and all Bitcoins deposited by each Member in its Account, in that Member's name as registered in their Account details, and on such Member's behalf."

This statement was made in 2012, and has nothing to do with any deficit stemming from 2011. It also has nothing to do with the Gox Bot. As Mr. Pelleg explained, this provides that Member's deposited assets would be held on a commingled basis in Mt. Gox's own account(s). (Ex. B, Pelleg Dec. ¶ 50.) "This effectively discloses the possibility that the net amounts held in the Mt. Gox accounts would not have to match client balances to the penny -- the same way that a bank holds customer deposits." (*Id.*)

3.      In the section "Members' Obligations" on page 3 of the Terms of Use, it states that "Seller warrants that the Bitcoins offered to sell or to transfer correspond to actual Bitcoins."

This statement imposes an obligation on Members (like Mr. Greene) and has nothing to do with any deficit or the Gox Bot.

Mr. Greene does not address the fact that it appears that some users of Mt. Gox did know about the existence of the Gox Bot, and may even have factored that into their trading. (Ex. B,

Pelleg Dec. ¶ 47, citing reports relied upon by both experts.)  Mr. Pelleg further explained why "market participants would not have minded the presence of the Gox Bot": "because the bot did provide liquidity to sellers of Bitcoin."  (*Id.* ¶ 40.)  That it, some users may have found the Gox Bot to be advantageous.  Mr. Greene provides no evidence to the contrary.

To pursue his common law fraud claim, Mr. Greene makes numerous interpretations and inferences from these provisions and what people may or may not have cared about or relied upon.  Even though Mr. Greene has no evidence that any other Mt. Gox user ever read these provisions, interpreted them in the same way that he did or relied upon them in any way or specifically the way that he did, he asks this Court to certify a class based on his latest allegations and the stamp of approval of a proposed (and improper) expert.  His proposed expert Professor Carol Goforth even goes so far as to say that it would not have mattered if anybody ever read the Terms of Use, and her theory would just have been "expected" practice.  (Ex. A, Goforth Decl. ¶ 54.)  Mr. Greene seems to have abandoned a theory that there is any basis for fraud even in the case of somebody not reading the Terms of Use.  In his Motion, Mr. Greene asserts that the Terms of Use underlie his claim, presumably because speculation about "expectations" cannot form the basis for a claim for common law fraud.  (Mem. at 3 (stating claim "turns" on the representations in the Terms of Use).)

## ARGUMENT

Mr. Greene bears the burden of showing that class certification is appropriate.  *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006).  In deciding whether to certify a class, "[t]he Court is not required to take the allegations in the complaint as true and must decide whatever factual and legal issues are relevant to its Rule 23 analysis."  *Glazer v. Abercrombie & Kent, Inc.*, No. 07 C 2284, 2008 U.S. Dist. LEXIS 91142, at *4-5 (N.D. Ill. Nov. 10, 2008), citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).  "To certify a class, a

district court must find that each requirement of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) is satisfied as well as one subsection of Rule 23(b)." *Harper v. Sheriff*, 581 F.3d 511, 513 (7th Cir. 2009). Certification is only appropriate "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Creative Montessori Learning Ctr. v. Ashford Gear LLC*, 662 F.3d 913, 916 (7th Cir. 2011). Pursuant to Rule 23(b)(3), the subsection under which Mr. Greene seeks to proceed, Mr. Greene must also show that common questions predominate over any individual issues and that a class action is superior to any other method to adjudicate these claims. *Harper*, 581 F.3d at 513. "Failure to meet any of the Rule's requirements precludes class certification." *Id.*

I.  **Mr. Greene fails to satisfy each element of Rule 23(a) because the proposed class members do not share commonality, his claims are not typical of the class, and he is not an adequate class representative.**

Mr. Greene's proposed class lacks commonality because his current theory relies on an alleged misrepresentation in Mt. Gox's Terms of Use. Yet his proposed class includes members who created their accounts before the Mt. Gox Terms of Use existed, who therefore could not have read and relied on those Terms of Use upon opening an account -- including Mr. Greene himself. The individual defenses to Mr. Greene's claim also render him an atypical and inadequate class representative.

A.  **The proposed class lacks commonality because it includes class members, such as Mr. Greene, who created their accounts before the Mt. Gox Terms of Use existed.**

The proposed class includes individuals who could not have read, let alone relied upon, the Terms of Use because they created their accounts before the Terms of Use even existed, which destroys commonality.

One requirement for class certification under Rule 23(a) is whether "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although a court need only find a

single common question of law or fact …, the mere occurrence of all plaintiffs suffering as a result of a violation of the same provision of law is not enough."  *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015).  "The claims must depend upon a common contention that is capable of class-wide resolution."  *Id.*  "The critical point is 'the need for conduct common to members of the class.'"  *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014).

As Mr. Greene states, the inquiry into commonality "begins with the elements of the underlying claim sought to be litigated by the class."  (Mem. at 11, citing *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012).)  Under Illinois law, the elements of common law fraud are:  "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement."  *Thompson's Gas & Elec. Serv. v. BP Am. Inc.*, 691 F. Supp. 2d 860, 870 (N.D. Ill. 2010), citing *Connick v. Suzuki Motor Co., Ltd.,* 675 N.E.2d 584, 591 (Ill. 1996).  "A claim for common law fraud requires actual reliance."  *Slep-Tone Entm't Corp. v. Kalamata, Inc.*, 75 F. Supp. 3d 898, 906 (N.D. Ill. 2014), quoting *People ex rel. Peters v. Murphy-Knight*, 618 N.E.2d 459, 465 (Ill. App. Ct. 1993).  A plaintiff must show that he or she saw or heard, and relied on, a false statement of material fact.  *See Premier Elec. Constr. Co. v. Morse/Diesel, Inc.*, 628 N.E.2d 1090, 1099 (Ill. App Ct. 1993) (common law fraud claim requires "that the misrepresentations must reach the plaintiff who must reasonably rely on them").[1]

Mr. Greene bases his allegation of common conduct on the Mt. Gox Terms of Use and whether certain sections of those terms were true or false.  (Mem. at 11-13.)  However, the

---

[1] The pattern jury instructions supplied by Mr. Greene demonstrates that reliance is an element of common law fraud in each of the fifty states and the District of Columbia.  [Dkt. No. 510-13.]

proposed class is not limited to Mt. Gox users who saw, read and/or agreed to the Mt. Gox Terms of Use (and any particular provision of those terms), but rather includes anyone who had bitcoin or money stored with Mt. Gox on February 24, 2014. (*Id.* at 7.) Although the Mt. Gox website was already in operation beginning in mid-2010, the Mt. Gox Terms of Use were first included on the Mt. Gox website on January 20, 2012, or shortly thereafter. (*See* Exhibit C, Karpeles Dep. 94:15-20; Dkt. 467-14 at 2.) Mr. Greene completely mischaracterizes Mr. Karpeles' testimony when he claims that users who signed up for a Mt. Gox account before January 20, 2012 were somehow subsequently required to agree to the Terms of Use. (Mem. at 2.) Mr. Karpeles only testified that users who signed up *after* January 20, 2012 were required to agree to the Terms of Use. (Ex. C, Karpeles Dep. at 90:23-91:4; 99:7-17.) Mr. Karpeles stated that, before January 20, 2012, users could just create an account and start trading bitcoin and that after the Terms of Use were adopted. (*See id.*)

Mr. Karpeles did not testify that users who created their accounts before January 20, 2012 were required to read or agree to the Terms of Use after the Terms of Use were adopted. Notably, in his list of questions common to the class, Mr. Greene does not even list whether class members read or saw the particular provisions. (Mem. 11-13.) This is a gateway issue for a fraud claim. The Court cannot continue with an inquiry about whether anybody relied on them, when it would be impossible to answer whether they even read or reviewed them. (*Id.* at 13.) Mr. Greene makes a cursory argument that there can be an "inference" of reliance, which will be addressed below. (*Id.*) Actual Seventh Circuit case law, and not the other jurisdictions cited by Mr. Greene, resoundingly says no. But an "inference" of reliance is absolutely impossible for representations that even Mr. Greene and his proposed expert do not contend were read by or relied upon by all putative class members.

Mr. Greene did not produce any evidence to support his theory: there is absolutely no evidence in this case showing that Mr. Greene agreed to the Terms of Use at any time, nor did Mr. Greene produce his own copy of the Terms of Use or any other evidence from any other potential class member who reached out to counsel who signed up for a Mt. Gox account before January 20, 2012 showing that they ever agreed to the Terms of Use. Argument of counsel does not substitute to satisfy the burden to establish the requirements for a class action. Mr. Greene cannot establish commonality among *all* users who had bitcoin on the Mt. Gox exchange, regardless of when they signed up for a Mt. Gox account.

The January 20, 2012 date alone is a hard dividing line: users who registered on the Mt. Gox website before that date would not have seen or read the Mt. Gox Terms of Use without subsequent effort. Mr. Greene's Declaration to the contrary -- submitted in opposition to Mr. Karpeles' motion for summary judgment after Mr. Greene could not support the theories as pled in his Complaint -- is belied by his original allegations in his operative complaint and his deposition testimony. Mr. Greene *never* contended that he read and relied on any specific provisions of the Terms of Use, other than a passing generic mention of the Terms of Use in a single paragraph in the Complaint. [Dkt. 245 ¶ 52.] When asked to provide specifics in written discovery, he did not even identify the Terms of Use as something he considered or read before making any investment in Mt. Gox at any time. (*See* Exhibit D, Plaintiff's Response to Interrogatory No. 8.)[2] In his deposition, Mr. Greene could not identify anything about the Term of Use. (*See* Exhibit E, Greene Dep. at 17:18-18:6.) Nor is there any evidence that the Terms of Use existed before January 20, 2012. The Terms of Use do not provide "conduct common to

---

[2] Mr. Greene made two purchases: one on January 5, 2012 as discussed and one in March 23. (*See* Mar. 4, 2013 email confirming order via BitInstant, attached here to as Exhibit F.) Notably, Mr. Greene's written discovery response never mentions reviewing the Terms of Use prior to that purchase either.

members of the class" because the proposed class includes members who never saw or read non-existent Mt. Gox Terms of Use.

Nor can this be corrected by including a timeframe for the proposed class with Mr. Greene as the representative, as Mr. Greene would fall on the wrong side of that dividing line, having registered for an account and conducting a transaction before January 20, 2012, namely on January 5, 2012. (*See id.* at 23:6-25:10; *See* Exhibit G, Greene January 5, 2012 Bitcoin Order.) Mr. Greene would not be a member of that class, and he is the only remaining plaintiff.

There is also no evidence that users who created a Mt. Gox account on or after January 20, 2012 actually read the Terms of Use or relied on any specific representations therein. Even Mr. Greene's proposed expert does not believe that everyone who signed up to use the Mt. Gox exchange after January 2012 read the Terms of Use. (*See* Exhibit H, Goforth Dep. 138:14-18.)[3] This also is a major problem precluding a finding of commonality. For instance, in *Glazer*, the court rejected an attempt to certify a class of individuals who had purchased club memberships based on non-disclosures and materially false and misleading statements. The court found that the proposed class did not even meet the low bar of commonality because "[t]he information that each purchaser received is not identical" and "each purchaser may have a different understanding and impression of the sales and marketing information s/he received." *Glazer*, 2008 U.S. Dist. LEXIS 91142 at *7-8. The same potential for different understandings and impressions preclude commonality here.

Mr. Greene's proposed class based on statements in the Terms of Use fails to satisfy the commonality requirement of Rule 23(a)(2).

---

[3] Mr. Karpeles has separately moved to strike and exclude any testimony or evidence provided by Professor Goforth. [Dkt. No. 501.] Mr. Karpeles addresses Professor Goforth's proposed testimony here in the event that the Court denies Mr. Karpeles' pending motion to exclude her testimony as directed during the hearing on December 4, 2020. Nothing in this Opposition should be construed as a waiver of the relief requested in Mr. Karpeles' motion to strike and exclude any testimony from Professor Goforth.

### B. The proposed class also fails because Mr. Greene's claims are not typical and Mr. Greene is not an adequate class representative.

Mr. Greene's claims are not typical of the proposed class and he is not an adequate class representative. The Rule 23(a)(3) typicality requirement "directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993). The typicality requirement is met if the named plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and is based on the same legal theory." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (alterations and internal quotation marks omitted). "A class is disserved if its representative's claim is not typical of the claims of the class members, for then if his claim fails, though claims of other class members may be valid, the suit will at the least be delayed by the scramble to find a new class representative." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011).

The adequacy inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011). "[N]amed plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives, and adequacy of representation is one of the requirements for class certification." *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011), citing Fed. R. Civ. P. 23(a)(4); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-27 (1997)). For example, a "named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual

defense may not be an adequate class representative." *CE Design Ltd.*, 637 F.3d at 726. In many cases, the typicality and adequacy requirements merge. *See id.* at 724.

Mr. Greene must prove that he both read and relied upon the portions of Mt. Gox Terms of Use he now cites to establish his common law fraud claim by clear and convincing evidence. *See Thompson's Gas & Elec. Serv.*, 691 F. Supp. 2d at 870*; Metro. Life Ins. Co. v. Moore*, No. 17 C 7377, 2019 U.S. Dist. LEXIS 114011, at *9 (N.D. Ill. July 10, 2019) (plaintiff must establish "[e]ach element of the [alleged] wrongdoing . . . by clear and convincing evidence." (alterations in original)). Mr. Greene is subject to numerous specific defenses on his common law fraud claim: whether the Terms of Use even existed when he registered on Mt. Gox, whether he could have read them, whether he did read them, and whether he ever agreed to or relied upon them. "The presence of even an arguable defense peculiar to the named plaintiff or a small subset of the plaintiff class may destroy the required typicality of the class as well as bring into question the adequacy of the named plaintiff's representation." *CE Design Ltd.*, 637 F.3d at 726. In deciding a motion for class certification, "[t]he unique defense need not be a slam dunk; it need only be arguable." *Sherwin v. Samsung Elecs. Am.*, No. 16 C 7535, 2019 U.S. Dist. LEXIS 234008, at *7 (N.D. Ill. Dec. 18, 2019), citing *Lipton v. Chattem, Inc.*, 289 F.R.D. 456, 460 (N.D. Ill. 2013) (Feinerman, J.) ("[T]he jury might excuse the harmful testimony [and] return a verdict in [plaintiff's] favor. But a defense need not be a sure bet to defeat a proposed class representative's adequacy; the defense need only be 'arguable.'").

Mr. Greene is an inadequate class representative because the Mt. Gox Terms of Use did not exist at the time Mr. Greene created his account on Mt. Gox. As discussed above, the Terms of Use first went into effect on January 20, 2012 at the earliest. (Ex. C. Karpeles Dep. 94:15-20.) Mr. Greene confirmed that January 5, 2012 was the first date that he purchased Bitcoin using the

Mt. Gox exchange. (Ex. E, Greene Dep. at 25:2-10.) Tautologically, in order to purchase Bitcoin on the Mt. Gox exchange on January 5, 2012, Mr. Greene would have had to create his account on or before January 5, 2012, before the Mt. Gox Terms of Use at issue existed. Therefore, Mr. Greene could not have reviewed and relied on the Mt. Gox Terms of Use before opening his account. He never identified them as anything he reviewed before purchasing any cryptocurrency via Mt. Gox at any time, even after January 20, 2012. (Ex. D, Greene Resp. to Interrogatory No. 8.)

This objective flaw alone presents an individual defense to Mr. Greene's claim, making him an inadequate class representative. *See Randall*, 637 F.3d at 824 ("named plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representative"); *Oshana*, 472 F.3d at 514 (affirming denial of class certification where the proposed class representative's claim was subject to "certain specific factual defenses"); *Hardy v. City Optical Inc.*, 39 F.3d 765, 770 (7th Cir. 1994) ("a plaintiff against whom the defendants have a defense not applicable to other members of the class is not a proper class representative").

In addition to this issue about the date the Terms of Use were implemented, Mr. Greene "will face significant hurdles in convincing a jury that [he] relied on defendants' alleged misrepresentations and that the misrepresentations caused [his] injuries." *Med. Mut. of Ohio v. AbbVie Inc. (In re Testosterone Replacement Therapy Prods. Liab. Litig.)*, No. MDL No. 2545, 2018 U.S. Dist. LEXIS 125041, at *334 (N.D. Ill. July 26, 2018) (finding plaintiff not a suitable class representative because it was subject to individual defenses). These specific factual defenses mean that Mr. Greene's claim is not typical of the claims of the proposed class members and that he is not an adequate class representative. *See Randall*, 637 F.3d at 824; *CE Design Ltd.*, 637 F.3d at 724.

Mr. Greene has told disparate and changing stories regarding the Terms of Use. In his deposition, Mr. Greene did not remember much about the Terms of Use at all. He did not remember reading any particular information on the Mt. Gox website before creating his account. (Ex. E, Greene Dep at 15:5-18:10.) Mr. Greene believed he read Mt. Gox's Terms of Use but could not identify any particular provision. (*Id.* at 17:23-18-6.) He testified that the Terms of Use "probably" included a statement that Mt. Gox would securely hold bitcoin for all users. (*Id.* at 15:8-16:2.) According to Mr. Greene's later declaration submitted in opposition to Mr. Karpeles' Motion for Summary Judgment, he recalls "reading and relying on specific representations made in the Terms of Use when deciding ***whether to open*** and maintain a Mt. Gox account." [Dkt. 467-6 at ¶ 5 (emphasis added).] As discussed above, it is impossible for Mr. Greene to have read and relied on the Terms of Use when opening his account before those terms even existed.

His interrogatory response also directly contradicts this current position, where he never identified the Terms of Use as something he reviewed prior to making any purchases via Mt. Gox. (Ex. D, Greene Resp. to Interrogatory No. 8.) That is not a function of a minor memory lapse during a deposition. He had 30 days (not including any extensions) to provide that information in his answer. He is required under the Federal Rules to supplement that response if appropriate. He never did. This lack of candor and credibility also dooms him as an adequate class representative.

Mr. Greene's deficiency as a class representative is similar to previous-plaintiff Anthony Motto's deficiency as a class representative. This Court found that Mr. Motto was subject to a particular defense applicable only to him or to him and a small subset of other subclass members: "that he was not injured by Mizuho's decision to stop processing outbound wire transfers of fiat

currency from Mt. Gox's account because he did not rely on the presence of that functionality in deciding to purchase bitcoin on the Mt. Gox exchange." *Greene v. Mizuho Bank, Ltd.*, 327 F.R.D. 190, 196 (N.D. Ill. 2018). Because of this, among other potential defenses, Mr. Motto could not serve as a class representative for the deposit subclass. *Id.* at 197. For Mr. Greene, there is similar evidence raising additional individual defenses to his claim, including that he did not read or rely on what he now claims in the Terms of Use.

Mr. Greene's shifting testimony and allegations, credibility issues, the lack of evidence of reliance and the uncontradicted evidence that Mr. Greene created his Mt. Gox account before the Terms of Use existed all raise significant issues, and Mr. Greene would have to devote substantial attention to rebutting these individual defenses. Therefore, Mr. Greene is an atypical and inadequate class representative. *See CE Design Ltd.*, 637 F.3d at 726.

## II.  The proposed class fails to meet the requirements of Rule 23(b)(3) because individual issues for each putative class member's fraud claim would predominate and the Japanese civil rehabilitation proceedings provide a superior forum for the putative class.

Mr. Greene fails to satisfy the requirements of Rule 23(b)(3), which require Mr. Greene to carry his burden to show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Mr. Greene has only one claim: for common law fraud. Seventh Circuit courts routinely hold that individual issues related to each putative class member's fraud claim would overwhelm common questions. That is particularly true where, as here, each putative class member must have read and relied upon the alleged misrepresentation: not just whether anybody generally read the Terms of Use, but whether they read and relied on particular provisions in those terms, and what they understood them to mean. Merely saying that

somebody generally looked at the overall Terms of Use would not suffice. Additionally, a class action is not superior to the Japanese civil rehabilitation proceedings because the only proof required for recovery there is that an individual held Bitcoin or fiat currency in a Mt. Gox account when the exchange went dark with no costs to a claimant.

    **A.**    **Individual, fact intensive determination of issues regarding whether potential class members read and relied upon the Mt. Gox Terms of Use would predominate.**

        **1)**    *Courts in the Seventh Circuit routinely refuse to certify class actions in common law fraud claims because of the individualized nature of fraud.*

Each proposed class member for a common law fraud claim would have individual issues that would predominate over common questions. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance requirement of Rule 23(b)(3) is far more demanding than the Rule 23(a)(2) commonality requirement. *See id* at 625. "Predominance is not satisfied where liability determinations are individual and fact-intensive." *Lipton*, 289 F.R.D. at 462, citing *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011); *Myers v. Hertz Corp.*, 624 F.3d 537, 551 (2d Cir. 2010). The predominance analysis "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2184 (2011). Common law fraud requires that an individual read (or hear) and rely on misstatements. *See, e.g., Slep-Tone Entm't Corp.*, 75 F. Supp. 3d at 906.

The Seventh Circuit has recognized that common law fraud is "plaintiff-specific" and "issues common to all of the class members [a]re not likely to predominate over issues peculiar to specific members." *Nagel v. ADM Inv'r Servs.*, 217 F.3d 436, 443 (7th Cir. 2000). Mr. Greene acknowledges that "consumer fraud class actions present problems that courts must

carefully consider before granting certification[.]" *Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010). (Mem. at 17.) But Mr. Greene cites only one Seventh Circuit case in his ill-fated discussion about predominance (Mem. at 17-24), and that is only to mention that the Seventh Circuit has permitted the use of a special master or representative trials in a totally different context. In citing only out-of-Circuit cases and out-of-state cases (save for one case from this District, which will be discussed below), Mr. Greene effectively concedes that the binding law in this Circuit precludes his claim. (In fact, it is highly questionable why Mr. Greene failed to provide the Court with the actual Seventh Circuit law that binds this Court, as would be expected and required.)

Courts in the Seventh Circuit and this District routinely reject class certification for fraud claims precisely because individual issues predominate over common issues. *See, e.g.*, *Thorogood v. Sears, Roebuck & Co.*, 547 F.3d 742, 746-48 (7th Cir. 2008) (finding that common issues did not predominate where the "evaluation of the class members' claims will require individual hearings"); *Oshana*, 472 F.3d at 514 (affirming the denial of a consumer fraud class due to individual causation and damages issues); *Smith v. NVR, Inc.*, No. 17 C 8328, 2019 U.S. Dist. LEXIS 216560, at *12-15 (N.D. Ill. Dec. 16, 2019) (Feinerman, J.) (denying class certification where plaintiff did not show that potential consumer fraud class received same misrepresentation or that proximate cause could be proved on a class wide basis); *Blair v. Supportkids, Inc.*, No. 02 C 0632, 2003 U.S. Dist. LEXIS 6640, at *14 (N.D. Ill. Apr. 17, 2003) ("Such individual issues of causation, reliance and damages plague class actions brought for fraud, and the courts frequently deny class certification in such cases because those issues generally predominate over any alleged common issues of fact or law."); *Lipton*, 289 F.R.D. at 462 (discussed below); *Fisher v. Bristol-Myers Squibb Co.*, 181 F.R.D. 365, 372 (N.D. Ill. 1998)

(finding no predominance for consumer fraud claims where "causation inquiry will involve innumerable individual questions.").

In *Lipton*, this Court rejected an attempt to certify a class for fraud claims because of these same types of issues. As this Court surely knows, those fraud claims centered on Dexatrim, a weight loss product that was contaminated with a toxic substance, hexavalent chromium. *Lipton*, 289 F.R.D. at 458. The plaintiff sought to certify a class of all Illinois residents who purchased a Dexatrim product that listed chromium as an ingredient. *Id.* To prevail on their claims, "each class member would have to prove that they were deceived by [defendant's] labeling of Dexatrim and that they suffered damages as a result." *Id.* at 462. This Court held that the fraud claims could not "be proved on a classwide basis" because the proposed class included individuals who: "(1) were unaware of the presence of hexavalent chromium in Dexatrim and who would not have purchased the product had they been so aware; (2) were unaware of the presence of hexavalent chromium but may have still purchased the product had they been so aware; and (3) were aware of the presence of hexavalent chromium and purchased the product anyway." *Id.* The "differences among the proposed class require that the key liability issues," whether a class member was deceived by the labeling and suffered damages, could "be resolved only on an individual basis." *Id.*

Similar categorizations plague Mr. Greene's proposed class, which includes individuals who: (1) did not read the Terms of Use because they did not exist at the time; (2) did not read the Terms of Use despite any requirement to agree to them to use the exchange; (3) read the Terms of Use but did not care about any particular provision; (4) read the Terms of Use but only relied on some of the provisions (and not the ones cited by Mr. Greene); and (5) read the Terms of Use and relied on the same provisions as Mr. Greene now alleges. Mr. Greene estimates that

18

"(at least) approximately 30,701 individuals with a bitcoin or cash balance at Mt. Gox at the time the company filed for bankruptcy resided in the United States." (Mem. at 8.) That would mean approximately 30,700 absent putative class members requiring separate evidentiary hearings to determine into which category they belong and whether each was entitled to any recovery at all.

Courts bound by the Seventh Circuit are particularly reluctant to certify a class in relation to fraud where putative class members may have received, and relied upon, different sets of information. *See, e.g., Fletcher v. ZLB Behring LLC*, 245 F.R.D. 328, 332 (N.D. Ill. 2006) ("fraud claims turn on what [defendant] communicated to each putative class member" and "proof concerning the individual class member's reliance on these various statements would also be individual and fact intensive."); *Christie Clinic, P.C. v. MultiPlan, Inc.*, No. 08-CV-2065, 2009 U.S. Dist. LEXIS 5750, at *32-33 (C.D. Ill. Jan. 26, 2009) (absent "common proof of a false statement or failure to disclose … the critical proof of fraud would have to be supplied by providers individually."); *Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.)*, Nos. MDL-1703, 05 C 4742, 05 C 2623, 2007 U.S. Dist. LEXIS 89349, at *20, 28 (N.D. Ill. Dec. 4, 2007) (finding fraud claims that relied on advertising campaign with several differing representations "will involve individualized issues of deception and causation, and these issues would outweigh common issues.").

It is curious that Mr. Greene seeks to certify a class for a common law fraud claim based on provisions in the Terms of Use, as even his own proposed expert admitted that it is highly unlikely that most users even read them, let alone relied upon them:

> Q. Do you believe that everybody who signed up to use the Mt. Gox exchange after January of 2012 read all of the Terms of Use?
>
> A. *Absolutely not.*

> Q. Do you think that all of the people who signed up for the Mt. Gox exchange would have cared about this provision in the Terms of Use when they started trading?
>
> A. *No.*

(Ex. H, Goforth Dep. 138:14-22) (emphasis added). Mr. Karpeles' expert concurred that the "vast majority would not have read the Terms of Use." (*See* Exhibit I, Pelleg Dep. at 173:24-174:5.) As Mr. Pelleg explained, at this time, users were risk-takers. (Ex. B, Pelleg Dec. ¶ 43.) It is even less likely that a potential class member who signed up for a Mt. Gox account before January 20, 2012 would have subsequently looked for, read, and relied upon any portion of the Terms of Use in any way. Thus, whether a class member read the Terms of Use, cared about any particular provision of the Terms of Use, and relied on particular provisions in the Terms of Use are highly individualized questions.

Mr. Greene even concedes that "[o]ther factors may have influenced an individual Class Member's decision in Mt. Gox," but contends that it is "reasonable to infer that the facts allegedly suppressed" somehow "played a substantial, if implicit, role in each Class member's calculus." (Mem. at 23.) That is not the right analysis: Mr. Greene must show that these specific provisions of the Terms of Use were statements that each class member read, relied upon, and understood in the same way as he did, and then the effect of the deficit and the Gox Bot in relation to those provisions of the Terms of Use was the same for each class member. This is a complicated road. It cannot be "implicit." Mr. Greene leaves out the actual basis for his claim -- the Terms of Use -- and just wants this Court to say that some general allegations can be determined on a classwide basis. There is absolutely no basis for this Court to do so.

Under Seventh Circuit precedent, common issues would not predominate to satisfy Rule 23(b), and this Court should not certify a class for this common law fraud claim.

### 2)     *Circumstantial evidence cannot allow an inference of reliance.*

Mr. Greene relies on a slew of out-of-Circuit federal cases to claim that the mere *availability* of certain information that potential class members *may have* looked at is sufficient for common issues to predominate over individual issues.  (*See* Mem. at 17-21, citing *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629 (5th Cir. 2016) (class wide reliance for RICO fraud permissible where illegal pyramid scheme held itself out as a legal multi-level marketing program); *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076 (10th Cir. 2014) (reliance assumed for proposed RICO class that paid "substantial up-front fees in return" for promises of loans where "no rational actor" would have paid fees in exchange for not receiving a loan); *In re First Alliance Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006) (recognizing that "other courts have adopted somewhat different standards in identifying the degree of factual commonality required in the misrepresentations to class members"); *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004) (class wide reliance for RICO fraud permissible where insurance company defendants claimed they would pay the proper amount of medical reimbursement to doctors); *Moore v. PaineWebber, Inc.*, 306 F.3d 1247 (2d Cir. 2002) (holding uniform misrepresentations may allow for class certifications but denying certification because sales presentation representations varied by individual); *Audet v. Fraser*, 332 F.R.D. 53 (D. Conn. 2019) (classwide reliance acceptable for Ponzi scheme related to virtual currency mining); *Seekamp v. It's Huge, Inc.*, No. 1:09-CV-00018 LEK, 2012 U.S. Dist. LEXIS 33295, 2012 WL 860364 (N.D.N.Y. Mar. 13, 2012) (classwide reliance for consumer fraud claim could be based on uniform contract and implicit "legality and beneficialness" of unlicensed insurance policy).)  None of these federal cases is analogous to the issues here, where the motives, reliance and sources of information for each proposed class member would be different, nor do they change Seventh Circuit precedent.

Mr. Greene also asks this Court to follow non-Illinois state court cases regarding fraud that are dated from 1944-1971. (*See* Mem. at 18, citing *Vasquez v. Superior Court*, 484 P.2d 964 (Cal. 1971) (fraud in "standard food orders" could be determined by looking at the food contracts and the salesperson's potential use of "a defined formula to determine the amount of food a particular family would need for a specified period of time"); *Adams v. Little Missouri Minerals Ass'n*, 143 N.W.2d 659, 683 (N.D. 1966) (finding reliance presumed where the landowners would not have exchanged mineral rights for stock had they known that stock did not convey any control of the company); *Cook v. Hayden*, 31 S.E.2d 625 (Va. 1944) (circumstantial evidence could be considered in fraud case where mental competency and health of person who supposedly deeded property was at issue).) These cases are completely irrelevant and have no impact on the robust case law regarding fraud claims developed in this Circuit, this District and Illinois state courts at any time, and certainly in the last 75 years. Rather than supporting Mr. Greene's Motion, the need to cite to such old, out-of-state and irrelevant case law confirms just how unsupported Mr. Greene's position is.

The sole case cited by Mr. Greene for the proposition that common issues would predominate over individual issues that comes from this District is *Peterson v. H&R Block Tax Servs., Inc.*, 174 F.R.D. 78 (N.D. Ill. 1997) (Mem. at 18). *Peterson* involved claims where individual reliance was not required: "individual reliance is not an element of either the ICFA or a RICO claim based on mail and wire fraud, the predicate RICO acts alleged here." *Peterson*, 174 F.R.D. at 84. That is not the case here, where reliance is a required element of common law fraud. Additionally, the court in *Peterson* found that reliance was apparent where the class members paid a significant fee for a service for which they were not eligible. *Id.* at 85. That is

22

not the case here, and the Seventh Circuit law and other extensive, on-point precedent in this District all preclude certification.

Mr. Greene argues that certification is still warranted even if putative class members must show individual reliance by relying on *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014). (Mem. at 23-24.) However, the issues here are dissimilar to *Suchanek*. In that case, the question was whether packaging was "likely to mislead a reasonable consumer … [,] an objective question, not one that depends on each purchaser's subjective understanding of the package." *Suchanek*, 764 F.3d at 758. The *Suchanek* plaintiff seeking class certification submitted numerous expert surveys and studies about what actual participants understood and believed by overt statements on the packaging. *Id.* at 753-54. Aside from Professor Goforth's speculation, Mr. Greene did not submit anything close to similar evidence based on actual statistics or polls. Discovery in this case is closed, including expert discovery. This is not evidence that can be adduced, as apparently it could be in *Suchanek*. In addition, whether a reasonable consumer was likely to be misled is irrelevant here. For common law fraud, each individual class member would have to show that they actually read and relied upon the particular sections of the Mt. Gox Terms of Use.

Additionally, contrary to *Suchanek*, the class issues here are not the "the most complex and costly to prove, while the individual issues and the information needed to prove them will be simpler and more accessible to individual litigants." *Id.* The individual follow up proceedings would be essentially full, exceedingly time-consuming mini-trials. Each proposed class member would still need to establish that he or she read these provisions of the Terms of Use, interpreted and understood them as Mr. Greene alleges, relied upon them, and incurred damages.

Reliance cannot be assumed here, under either the facts or the law. In fact, to the extent that the Court considers Professor Goforth's proposed testimony, both experts testified that it is unlikely that every individual who signed up for a Mt. Gox account read the Terms of Use. (Ex. H, Goforth Dep. 138:14-17; Ex. I, Pelleg Dep. at 173:24-174:5.) Professor Goforth testified that not everyone would care about particular provisions in the Terms of Use. (Ex. H, Goforth Dep. 138:18-22.) Even if the Court could consider circumstantial evidence to infer reliance (and it cannot), there is no circumstantial evidence that would allow that inference regarding a Mt. Gox user's reliance on the Terms of Use. Even Mr. Greene's own expert testified to the opposite.

Former co-plaintiff Mr. Motto also belies this claim for an inference of reliance. When asked during his deposition about the Terms of Use, he too could not remember any particular provisions and stated, "I just skimmed through the general terms of use to make sure I wasn't going to do anything wrong." (*See* Exhibit J, Motto Dep. 18:4-7.) He could not remember anything in particular about the Terms of Use or any representations about "the exchange's security, reliability, and ability to withdraw or deposit bitcoin." (*Id.* 17:16-18:10.) Mr. Motto certainly did not rely on these provisions, and there can be no "inference" that every other potential class member did either.

Assuming reliance from circumstantial evidence is not accepted in the Seventh Circuit or under Illinois state law. This appears to be an attempt to recast a "fraud-on-the-market" theory that is not viable in this Court (which he never pled in any event). *See, e.g., Miller v. GMC*, No. 98 C 7386, 2003 U.S. Dist. LEXIS 1467, *12 (N.D. Ill. Jan. 31, 2003) (refusing to apply the presumption of reliance "fraud-on-the-market" theory to state law claims); *In re Information Resources Sec. Litig.*, No. 89 C 3772, 1994 U.S. Dist. LEXIS 4500, at *11-13 (N.D. Ill. Apr. 11, 1994) (refusing to allow fraud-on-the-market basis for common law fraud claim under Illinois

law).  Mr. Greene cites to a securities case to claim that "materiality" could be determined on a classwide basis; that is a very different set of laws than what is required for common law fraud. (Mem. at 11, n.4, citing *Schleicher v. Wendt*, 618, F.3d 679, 687 (7th Cir. 2010).)

Though seemingly discarded recently in favor of his Terms of Use theory (which Mr. Greene may think is more amenable to class certification), Mr. Greene initially identified articles about Mt. Gox and posts on bitcointalk.org as the documents he reviewed prior to making his decision to making any purchases through Mt. Gox, not the Terms of Use.  (Ex. D, Plaintiff's Resp. to First Set of Interrogatories No. 8.)  It is likely that other members of the putative class also had numerous sources of information about Mt. Gox before deciding to open their account or use the exchange as well, had different understandings and impressions of the information that they received, and relied on different sets of information in opening and/or using a Mt. Gox account.  There are likely some who never relied on anything at all about the exchange itself, "enthusiasts" simply caught up in the potential of Bitcoin and wanting to use any exchange that would let them conduct transactions.  (Ex. I, Pelleg Dep. 59:15-60:11.)

Common law fraud claims require individualized proof on reliance, causation, and damages that precludes class certification.  The proposed class could require over 30,000 follow-up proceedings. These individualized issues predominate over any common issues and, therefore, class certification is not appropriate under Rule 23(b)(3).

**B.      A class action is not the superior method to address these claims where class members can recover through the Japanese civil rehabilitation proceedings.**

Despite Mr. Greene's cursory effort to wave off the very real problems for his proposed class due to the ongoing Japanese civil rehabilitation proceedings (Mem. at 25), those proceedings doom a proposed class as a superior method of adjudication, another independent reason to deny certification pursuant to Rule 23(b)(3).

### 1) *A class action is not superior to the Japanese civil rehabilitation proceedings.*

Rule 23(b)(3) "requires that the class device be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Mullins v. Direct Dig., Ltd. Liab. Co.*, 795 F.3d 654, 663 (7th Cir. 2015), quoting Fed. R. Civ. P. 23(b)(3). The superiority analysis is comparative, and courts should review other available methods in determining whether a class action is superior. *See Mullins*, 795 F.3d at 663. A class action is not a superior method where class certification would only "give rise to hundreds or thousands of individual proceedings." *Andrews v. Chevy Chase Bank*, 545 F.3d 570, 577 (7th Cir. 2008). As this Court held in *Lipton*, "[t]he claims of the absent putative class members would require separate evidentiary hearings to establish liability, and a class action would not be superior to other methods of adjudication." *Lipton*, 289 F.R.D. at 453.

Rule 23(b)(3) provides a non-exhaustive list of factors to consider whether a class action is superior:

(A)     the class members' interests in individually controlling the prosecution or defense of separate actions;

(B)     the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C)     the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D)      the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3)(A)-(D). "Rule 23(b)(3) is designed for situations where 'potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'" *Redmon v. Uncle Julio's of Ill., Inc.*, 249 F.R.D. 290, 296 (N.D. Ill. 2008), citing *Murray v. GMAC Mortgage Corp.*,434 F.3d 948, 953 (7th Cir. 2006).

Contrary to Mr. Greene's assertion, there are substantial individual issues that weigh against class certification as a superior method. (*See* Mem. 24.) And these individual issues cannot be addressed, as Mr. Greene suggests, in individual follow-on proceedings by a special master, representative trials, or other administrative means. (Mem. at 24, citing *Mullins*, 795 F.3d at 664; *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968).) *Mullins* does not help Mr. Greene, as the issue in *Mullins* was whether ascertaining the class members would be too difficult administratively and not whether there was common proof for a required element of the claim. *See Mullins*, 795 F.3d at 657-58. Here, the individual proceedings would require individual proof for numerous elements of a common law fraud claim. As the Seventh Circuit made clear in a subsequent opinion addressing *Mullins*, while District courts may be able to use means to ascertain the identities of class members after establishing liability classwide, this is not an open door to expand that to substantial subsequent practice to establish liability. *See Dancel v. Groupon, Inc.*, 949 F.3d 999 (7th Cir. 2019). As another Court in this District held in denying class certification, like Mr. Greene here, that plaintiff's citation to *Mullins* was "entirely off-base"; that court recognized that "*Mullins* addresses an entirely different aspect of class certification (ascertainability)." *Tomeo v. CitGroup, Inc.* No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *43 (N.D. Ill. Sept. 27, 2018). Here individual follow-on proceedings would be required to establish the most basic elements of a fraud claim: whether a person saw a statement, what that person understood the statement to mean, and whether that person relied upon the statement in any way. This makes managing a class action impossible and unmanageable. Fed. R. Civ. P. 23(b)(3)(D).

There is also a superior method of recovery already in place in another jurisdiction. *See* Fed. R. Civ. P. 23(b)(3)(B). The civil rehabilitation proceedings underway in Japan cover the

entire proposed class. The proposed class here, consisting of all *United States* individuals who had Bitcoin and cash in Mt. Gox accounts on February 24, 2014, fits squarely within those who could file a rehabilitation claim. The civil rehabilitation proceedings are superior to a class action in several respects, such as costs, amount of recovery, and burden of proof.

In this admittedly unique situation, the Japanese civil rehabilitation proceedings are expected to provide more recovery to putative class members than this litigation ever could. A claimant does not have to proceed to litigation, pay lawyers, or prove anything like fraud by clear and convincing evidence. All a user had to provide was sufficient information to show that he or she had BTC held on the Mt. Gox exchange at the time of its closure on February 24, 2014. (*See* Exhibit K, June 22, 2018 Announcement of Commencement of Civil Rehabilitation Proceedings at 5-8.) That is, a former Mt. Gox user needed to do nothing but submit a claim online. That is a far superior, and easier, method for recovery. Mr. Greene even took advantage, successfully submitting his rehabilitation claim for the full amount of Bitcoin and fiat currency in his account at the time Mt. Gox went dark. Mr. Greene's full claim was approved by the Japanese trustee. (Ex. E, Greene Dep. 36:2-38:18.)

A claimant also would not have his or her recovery reduced by attorneys' fees for a claim in the Japanese proceedings. In this Court, attorneys' fees are not recoverable for a common law fraud claim. *See, e.g., Kroot v. Shu B. Chan*, 125 N.E.3d 531, 534 (Ill. App. Ct. 2019). Presumably, however, Mr. Greene's attorneys expect to be compensated out of any classwide collection. In a recovery from the Japanese proceedings, there is no such discount.

Nor can Mr. Greene save his superiority argument by claiming that he may be able to be awarded punitive damages here, because that judgment would not be enforceable in Japan. While Japan may recognize certain foreign judgments, Japanese courts do not enforce punitive

damages awards because they are against Japanese public policy. (*See* Exhibit L, Enforcement of Foreign Judgments in Japan at 8) ("…the court may reduce the amount of damages if the foreign judgment includes in the damage amount punitive damages, which are contrary to Japanese public policy," admissible pursuant to Federal Rule of Civil Procedure 44.1).) As Mr. Karpeles is a resident of Japan who has never stepped foot in the United States, an enforcement action against him would have to occur in Japan. [*See* Dkt. 392-1.] And Japan would not allow for the enforcement of any punitive damages, making any such award effectively useless.

Mr. Greene even implicitly concedes that the Japanese civil rehabilitation proceedings undermine his claim of the superiority of a class action, stating that "if the Japanese proceedings reach a conclusion, the Court's findings regarding superiority can be revisited." (Mem. at 25.) The Court need not revisit this issue: it is Mr. Greene's burden *now* to show that a class action is the superior method. He has not, by his own implicit admission. The Court must consider all the factors today when making this determination. Recovery there is very likely to moot Mr. Greene's claim.[4] He never contends otherwise, presumably because additional evidence suggests he may recoup more than the amount that he held on the exchange in February 2014.

Mr. Greene admitted that he turned down an offer from the financial institution Fortress for his claims, which would have exceeded the amount he seeks in this litigation as compensatory damages. Fortress offered him a minimum of $600 per Bitcoin; at the time of the closure of Mt. Gox, Mr. Greene had 42.97104 BTC valued at approximately $25,000, for approximately $581.78 per BTC. (*See* Exhibit M, https://www.bloomberg.com/news/articles/2020-02-19/fortress-said-to-increase-offer-to-

---

[4] This payment would moot the claim and not be considered a collateral source, as it comes from the estate of Mt. Gox. *See Hillmann v. City of Chi.*, 66 F. Supp. 3d 1109, 1119 (N.D. Ill. 2014).

purchase-mt-gox-claims; *See* Exhibit N, Greene Rehabilitation Claim; Dkt. 245 ¶ 57).[5]   The

reason for parties rejecting Fortress' offer is simple:  parties like Mr. Greene expect a far bigger

payout from the Japanese proceedings (as does the offeror).   Fortress reportedly upped its offer

to purchase creditors' claims for $1,300 for BTC, or more than double the value of the bitcoin at

the time Mt. Gox closed. (*See* Ex. M.)  Rejecting these offers shows that claimants expect bigger

payouts in the Japanese civil rehabilitation proceedings, and have an interest in controlling their

own claims.  Fed. R. Civ. P. 23(b)(3)(A).

Mr. Greene suggests that a class action is superior because of the length of recovery

occurring in the civil rehabilitation proceedings.  (Mem. at 25.)  But Mr. Greene neglects to

mention that the rehabilitation plan, like many things in many courts, has been delayed in large

part due to COVID issues.  (*See* Exhibit O, May 7, 2020 Limitation of Rehabilitation Trustee's

Work Due to Spread of Infection of Coronavirus Disease 2019.)  This Court, too, has a backlog

of cases and trials due to COVID.  There is no evidence of which will proceed more quickly.

A class action therefore is not the superior method for numerous reasons.

### 2) Certification is not warranted where potential recoveries are not too small to preclude individual suits.

This is also not a case "where a defect that may have imposed costs on tens of thousands

of consumers, yet not a cost on any one of them large enough to justify the expense of an

individual suit."  *Id.* at 759, quoting *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 798 (7th Cir.

2013).   Mr. Greene had 42.97104 Bitcoin on Mt. Gox when the exchange went dark, which

equaled approximately $25,000 at the time.    (Ex. N, Greene Rehabilitation Claim;

---

[5] Mr. Greene confirmed in his deposition that he received an offer from Fortress, but did not recall how much the offer was for and did not produce Fortress's offer e-mail or his response to that e-mail.  (Ex. E, Greene Dep. at 40:22-42:9.)  He has not supplemented his production with this new additional information about Fortress.

Dkt. 245 ¶ 57.)  This is a substantial enough claim for many individuals to seek their own recovery if they thought it necessary outside of the Japanese civil rehabilitation proceedings.

**III.     The class should not be certified with or without Professor Goforth's testimony.**

At the December 4, 2020 hearing, this Court asked the parties to address the effect of a ruling on Mr. Karpeles' pending motion to strike and exclude the testimony of Professor Carol Goforth.  As an initial matter, if this Court believes her testimony is necessary to the class certification determination, this Court must decide that motion before ruling on Plaintiff's Motion. *See Messner*, 669 F.3d at 812 ("When an expert's report or testimony is 'critical to class certification,' . . . a district court must make a conclusive ruling on any challenge to that expert's qualifications or submissions before it may rule on a motion for class certification.").  In any event, her testimony does not allow for certification.

If the Court were to deny Mr. Karpeles' motion to exclude her testimony, Professor Goforth's own testimony undermines Mr. Greene's claims.  As discussed above, Professor Goforth agrees that most users would not have read or relied upon the Terms of Use.  That alone is fatal to class treatment of a common law fraud claim directly based on the Terms of Use.  Nor can she provide any testimony about what any class member read or relied upon.  Her interpretation has no basis to suggest what any actual class member would have done, unlike other cases discussed previously where experts have shown surveys and supporting information. There is no actual analysis regarding actual absent potential class members that would allow a class to be certified.

If the Court grants Mr. Karpeles' motion to exclude Professor Goforth's proposed testimony, then there is no evidence whatsoever about what other users may have thought or may have done.  There would be no testimony about Professor Goforth's theories taken from articles on the internet.  Without Professor Goforth, there is even less of a basis for this Court to hold

that an entire class of Mt. Gox users read the Terms of Use, relied upon the same provisions, had the same understanding of those provisions as Mr. Greene, made the same decisions as Mr. Greene based on the same information and somehow incurred damages as a result. Professor Goforth's exclusions would only confirm the individual nature of Mr. Greene's claims.

## CONCLUSION

WHEREFORE, Defendant Mark Karpeles respectfully requests that this Honorable Court deny Plaintiff's Class Certification Motion and for such other and further relief as this Court deems just in Mr. Karpeles' favor.

Dated: December 14, 2020

Respectfully submitted,

Mark Karpeles

By: __/s/ Bevin Brennan_____

One of His Attorneys

Bevin Brennan
Matthew Schmidt
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com
mschmidt@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*