# EXHIBIT L

# LEXOLOGY.



☐ Save & file | ☐ View original | ☐ Forward | ☐ Print | ☐ Share | ☐ Follow | ☐ Like | ☐ Instruct

**Register now** for your free, tailored, daily legal newsfeed service.

Questions? Please contact customerservices@lexology.com

Register

# Enforcement of Foreign Judgments in Japan

**TMI Associates**



**Japan** | September 26 2019





## Legislation

*Treaties*

**Is your country party to any bilateral or multilateral treaties for the reciprocal recognition and enforcement of foreign judgments? What is the country's approach to entering into these treaties, and what, if any, amendments or reservations has your country made to such treaties?**

Japan is not a party to any bilateral or multilateral treaties for the reciprocal recognition and enforcement of foreign judgments.

*Intra-state variations*

**Is there uniformity in the law on the enforcement of foreign judgments among different jurisdictions within the country?**

Yes. There is uniformity in the law on the enforcement of foreign judgments throughout Japan.

*Sources of law*

**What are the sources of law regarding the enforcement of foreign judgments?**

Legislation is the main source of law in Japan, and enforcement of foreign judgments is governed by article 118 of the Code of Civil Procedure (CCP) and article 24 of the Civil Execution Act (CEA).

Article 118 of the CCP sets out the requirements for final and binding foreign judgments to be effective in Japan, which are:

- the jurisdiction of the foreign court is recognised under laws, regulations, conventions or treaties;

- the defendant has received service (excluding service by publication or means similar thereto) of a summons or an order necessary for the commencement of the suit, or has appeared in the action without receiving such service;

- the content of the judgment and the court proceedings are not contrary to public policy in Japan; and

- a mutual guarantee exists with Japanese courts (ie, reciprocity).

Article 24 of the CEA stipulates that execution of a judgment must be rendered without investigating whether or not the decision is appropriate, but that a foreign judgment should not be executed if:

- it is not proved that the judgment is final and binding; or

- it does not fulfil the requirements provided for in article 118 of the CCP.

*Hague Convention requirements*
**To the extent the enforcing country is a signatory of the Hague Convention on Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters, will the court require strict compliance with its provisions before recognising a foreign judgment?**

Japan is not a signatory to the Hague Convention on the Recognition and Enforcement of Foreign Judgments in Civil and Commercial Matters.

## Bringing a claim for enforcement

*Limitation periods*
**What is the limitation period for enforcement of a foreign judgment? When does it commence to run? In what circumstances would the enforcing court consider the statute of limitations of the foreign jurisdiction?**

In principle, the limitation period for enforcement of a foreign judgment is 10 years from the day after the foreign judgment became final and binding.

Neither the CCP nor the CEA has any rules regarding a limitation period for enforcement of a foreign judgment. However, article 174-2 of the Civil Code provides that any right determined by a final and binding judgment is subject to a limitation period of 10 years. Therefore, if 10 years have passed since the day after the foreign judgment became final and binding, a Japanese court might not render an execution judgment for the reason that it might be contrary to public policy in Japan.

In this regard, an amendment to the Civil Code was enacted in the Diet session in May 2017, and will take effect within three years of the enactment date. The amendment (to article 169 of the Civil Code) provides that any right determined by a final and binding judgment, or any similar order or decree having the same effect, shall be subject to a limitation period of 10 years, except for rights that are not yet due and payable at the time when the judgment becomes final.

*Types of enforceable order*
**Which remedies ordered by a foreign court are enforceable in your jurisdiction?**

Foreign money judgments can be enforceable and be satisfied by the compulsory execution of a pecuniary claim

as long as the judgment satisfies all the requirements set forth in section 3, article 24 of the CEA (see question 3). Provisional remedies such as provisional attachment and provisional disposition are not enforceable, because a foreign judgment must be 'final and binding' in order to be enforceable in Japan (article 118 of the CCP).

Permanent injunctions can be enforceable as long as they are final and binding. However, the more relevant issue often is whether the permanent injunction in question is not contrary to public policy in Japan as required by article 118(iii) of the CCP. If the permanent injunction is deemed to be contrary to public policy in Japan, it will not be enforceable.

Assuming that a foreign judgment satisfies all the requirements set forth in section 3, article 24 of the CEA, specific performance can be enforceable where the nature of the obligation permits such enforcement (section 1, article 414 of the Civil Code). For example, the delivery of real property can be satisfied by the compulsory execution of a non-pecuniary claim.

With regard to specific performance, section 2, article 414 of the Civil Code provides that, in the event that the nature of the obligation does not permit the enforcement of specific performance, if it is an obligation for an act, the obligee may request the court to cause a third party to perform such act at the expense of the obligor; provided, however, that with respect to any obligation for any juristic act, the manifestation of intention of the obligor may be achieved by a judgment. Furthermore, section 3, article 414 of the Civil Code states that, with respect to any obligation for an inaction, a request may be made to the court at the expense of the obligor seeking the removal of the outcome of the action performed by the obligor, or an appropriate ruling against any future action.

*Competent courts*
**Must cases seeking enforcement of foreign judgments be brought in a particular court?**

An action seeking an execution judgment for a judgment of a foreign court must be filed with the district court having jurisdiction over the location of the general venue of the obligor, and when there is no such general venue, with the district court having jurisdiction over the location of the subject matter of the claim or the seizable property of the obligor (section 1, article 24 of the CEA). If the obligor is a natural person, the general venue is his or her place of residence; and if the obligor is a corporation, the general venue is its principal place of business (article 4 of the CCP).

Then, once an execution judgment is obtained, a petition for compulsory execution must be filed with a competent district court.

*Separation of recognition and enforcement*
**To what extent is the process for obtaining judicial recognition of a foreign judgment separate from the process for enforcement?**

In Japan, a judgment rendered by a foreign court is recognised without any necessity of a separate procedure as long as it satisfies the requirements of article 118 of the CCP. Therefore, a foreign judgment will have legal effect, such as acting to restrict a claim in a later litigation that contradicts the foreign judgment, without any separate procedure being necessary.

On the other hand, in order to execute a foreign judgment by compulsion, it is necessary to obtain an execution judgment from a competent court and then file a petition for compulsory execution based on that execution judgment.

**<u>Opposition</u>**

*Defences*

**Can a defendant raise merits-based defences to liability or to the scope of the award entered in the foreign jurisdiction, or is the defendant limited to more narrow grounds for challenging a foreign judgment?**

As section 2, article 24 of the CEA stipulates that an execution judgment must be made without investigating whether or not the decision is appropriate, a substantive re-examination of the foreign judgment is prohibited in principle. The defendant may only be allowed to challenge a foreign judgment on the basis that it is not final and binding, or that it does not satisfy any of the requirements set out in article 118 of the CCP. In such a challenge, the defendant may argue that the content of the judgment is contrary to public policy in Japan.

*Injunctive relief*
**May a party obtain injunctive relief to prevent foreign judgment enforcement proceedings in your jurisdiction?**

No. In principle, injunctive relief to prevent foreign judgment enforcement proceedings is not possible under Japanese law.

## Requirements for recognition

*Basic requirements for recognition*
**What are the basic mandatory requirements for recognition of a foreign judgment?**

See question 3 for a discussion of the CCP's requirements for recognition of a foreign judgment.

With regard to the requirement sets forth in article 118(iv) of the CCP, the Supreme Court of Japan has ruled that 'a mutual guarantee' is interpreted to mean there is a guarantee that, in the country where a foreign court rendering a judgment is located, judgments rendered by the courts of Japan that are of the same type as said judgment shall be effective on conditions that are not different in any material respect from those listed in article 118 of the CCP (Supreme Court judgment of 7 June 1983).

In this case, the Supreme Court concluded that the requirement of 'mutual guarantee' was met with respect to the original judgment in question rendered by the US District Court for the District of Columbia in the United States.

On the other hand, judgments rendered by courts in China have not been found to meet this requirement.

*Other factors*
**May other non-mandatory factors for recognition of a foreign judgment be considered and, if so, what factors?**

Only those items listed in article 118 of the CCP are considered with regard to recognition of foreign judgments and whether or not to grant execution judgment in respect thereof (see question 9).

*Procedural equivalence*
**Is there a requirement that the judicial proceedings where the judgment was entered correspond to due process in your jurisdiction and, if so, how is that requirement evaluated?**

Article 118(i) of the CCP requires that the jurisdiction of the foreign court that gave the judgment be recognised under laws, regulations, conventions or treaties, and article 118(ii) of the CCP requires that the defendant must have received service (excluding service by publication or means similar thereto) of a summons or an order necessary for the commencement of the suit, or have appeared in the action without receiving such service. In addition to these specific procedural requirements, article 118(iii) of the CCP requires 'procedural public policy' for a foreign judgment to be acknowledged, by setting forth that the content of the judgment and the court proceedings pursuant to which the judgment was rendered must not be contrary to public policy in Japan. For example, if the judge who rendered the foreign judgment had been bribed, procedural public policy will be denied

and such foreign judgment will not be recognised in Japan. Moreover, a recent Supreme Court judgment (issued on 18 January 2019) ruled that, in order for the public policy requirement to be met, the defendant must have been informed of or been provided with the opportunity to be aware of the content of the judgment and thereby provided with the opportunity to appeal.

The Supreme Court of Japan has ruled that a 'judgment of a foreign court' as provided in article 24 of the CEA denotes a final judgment rendered by a foreign court on private law relations that has provided procedural guarantees to both parties, regardless of the name, procedure or form of judgment. The court also ruled that even if the judgment is called a decision or order, insofar as it possesses the characteristics described above of a final judgment, it should be regarded as a judgment of a foreign court (Supreme Court judgment of 28 April 1998).

With regard to the example mentioned in the question, whether there was no or limited pretrial discovery available to the defendant is irrelevant. Rather, procedural guarantees to both parties or the opportunity for both parties to litigate the case is vital.

## Jurisdiction of the foreign court

### Personal jurisdiction
**Will the enforcing court examine whether the court where the judgment was entered had personal jurisdiction over the defendant and, if so, how is that requirement met?**

The court rendering the execution judgment will examine whether the jurisdiction of foreign court that rendered the judgment is recognised under laws or regulations or conventions or treaties.

In this regard, the court will examine whether or not the foreign court had jurisdiction over the case in question by applying mutatis mutandis the Japanese rules regarding jurisdiction. Then, the court will determine in light of the rule of reason, while basically complying with the provisions on international jurisdiction under the CCP of Japan and considering whether or not it is appropriate for Japan to recognise a judgment rendered by the foreign court, in the context of the specific circumstances of the case (Supreme Court judgment of 24 April 2014).

Article 3-2 of the CCP stipulates that a Japanese court will have personal jurisdiction over a defendant if the defendant had its address within Japan, or in the event that the address is unknown, if it has a domicile within Japan, or in the event the domicile is unknown, if it had its address within Japan before the filing of the case.

### Subject-matter jurisdiction
**Will the enforcing court examine whether the court where the judgment was entered had subject-matter jurisdiction over the controversy and, if so, how is that requirement met?**

As per question 14, whether or not the foreign court had subject-matter jurisdiction over the case in question will be determined by applying mutatis mutandis the Japanese rules regarding jurisdiction. Then, the court will determine in light of the rule of reason, while basically complying with the provisions on international jurisdiction under the CCP of Japan and considering whether or not it is appropriate for Japan to recognise a judgment rendered by the foreign court, in the context of the specific circumstances of the case (Supreme Court judgment of 24 April 2014).

Article 3-3 of the CCP provides the rules regarding subject-matter jurisdiction. For example, if the place of performance of an agreement is in Japan, or if the place of any asset to be seized is located in Japan, or if a party has a place of business in Japan, then Japanese courts will have subject-matter jurisdiction.

### Service
**Must the defendant have been technically or formally served with notice of the original action in the foreign jurisdiction, or is actual notice sufficient? How much notice is usually considered sufficient?**

Article 118(ii) of the CCP requires that, for a foreign judgment to be recognised, the defendant has received service (excluding service by publication or means similar thereto) of a summons or order necessary for the commencement of the suit, or has appeared in the action without receiving such service. In this regard, the Supreme Court judgment of 28 April 1998 sets out the following criteria as to whether this requirement has been met:

- the defendant must have been actually aware of the commencement of the suit;

- the defendant must not have had his or her right to defend the action interfered with; and

- if there is any treaty prescribing the method of service executed between the country of judgment and Japan, and if this treaty provides that the service of the document required for the commencement of litigation must be effected in a manner set out in this treaty, the service must have been made in accordance with that method.

In addition, whether service directly made by post satisfies the requirement contained in article 118(ii) of the CCP is problematic. Regarding the third element described in the Supreme Court ruling referred to above, Japan is party to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, which provides that it does not preclude the party from exercising its authority to make a service directly by post unless the contracting state declares that it refuses such service. Japan has not made such a declaration of refusal. Nevertheless, there is a risk a Japanese court will conclude that service directly made by post does not meet the requirement set out in article 118(ii) of the CCP.

Further, in order to satisfy the first requirement set out by the Supreme Court judgment referred to above (ie, the defendant must have been actually aware of the commencement of the suit), although there is no Supreme Court decision on this point, the Tokyo High Court judgment of 18 September 1997 determined that a Japanese translation of the summons is required regardless of the language skill of the defendant, if the defendant is a Japanese national and has his or her domicile in Japan.

However, it should be noted that a Tokyo High Court judgment of 24 September 2015 determined that the service of summons from a court in California on a Japanese national who was domiciled in California without a Japanese translation satisfied the requirement set out in article 118(ii) in a case where the defendant apparently had a very high comprehension and understanding of English.

*Fairness of foreign jurisdiction*
**Will the court consider the relative inconvenience of the foreign jurisdiction to the defendant as a basis for declining to enforce a foreign judgment?**

Yes. Relative inconvenience will be considered by the court in the course of considering whether the jurisdiction of the foreign court is recognised as set forth in article 118(i) of the CCP.

In this regard, article 3-9 of the CCP provides that a Japanese court may reject all or part of an action, even if it has jurisdiction over the case, if the court finds that, based on the nature of the case, the burdens on the defendant to respond, the location of the evidence and other facts, allowing a Japanese court to handle the case would interfere with the fairness between the parties or the realisation of an appropriate and prompt trial.

**Examination of the foreign judgment**

*Vitiation by fraud*
**Will the court examine the foreign judgment for allegations of fraud upon the defendant or the court?**

Yes. The court will examine the foreign judgment for allegations of fraud upon the defendant or the court. Any

foreign court judgment obtained by fraud will not satisfy the requirement set forth in article 118(iii) of the CCP, which requires that the content of the judgment and the court proceedings not be contrary to public policy in Japan, and enforcement will not be permitted.

## Public policy

**Will the court examine the foreign judgment for consistency with the enforcing jurisdiction's public policy and substantive laws?**

Yes. Article 118(iii) of the CCP requires that the content of the judgment and the court proceedings not be contrary to public policy in Japan. Recognition and enforcement of any foreign judgment may be denied because of not meeting this requirement if it conflicts with Japanese laws or Japanese public policy.

A typical example of such a conflict with Japanese public policy is an award of punitive damages (see question 24). Moreover, a recent Supreme Court judgment (issued on 18 January 2019) ruled that, in order for the public policy requirement to be met, the defendant must have been informed of or been provided with the opportunity to be aware of the content of the judgment and thereby provided with the opportunity to appeal.

## Conflicting decisions

**What will the court do if the foreign judgment sought to be enforced is in conflict with another final and conclusive judgment involving the same parties or parties in privity?**

First, with regard to the conflict between decisions of a Japanese court and a foreign court, while there is no Supreme Court decision directly on this point, there are two different schools of thought. One is that a foreign judgment is always contrary to Japanese public policy if there is a conflicting Japanese judgment, and the other is that a foreign judgment will be contrary to Japanese public policy only if the conflicting Japanese judgment was rendered and became final before the foreign judgment.

With regard to this issue, the Osaka District Court judgment of 22 December 1977 determined that a foreign judgment that is in conflict with another final judgment in Japan between the same parties shall not be recognised, because it is contrary to Japanese public policy regardless of the chronological order of the foreign and Japanese judgments, in relation to the filing of an action, rewarding of a judgment and finalisation of the judgment.

Second, there are no court precedents in Japan with respect to a conflict between two different foreign judgments.

## Enforcement against third parties

**Will a court apply the principles of agency or alter ego to enforce a judgment against a party other than the named judgment debtor?**

Simply, a judgment is enforceable only against the named judgment debtor, but in very limited cases, it may be enforced against a party other than the named judgment debtor through the application of the doctrine of piercing the corporate veil.

## Alternative dispute resolution

**What will the court do if the parties had an enforceable agreement to use alternative dispute resolution, and the defendant argues that this requirement was not followed by the party seeking to enforce?**

The court will recognise and enforce a foreign judgment if the defendant appeared before the foreign court without alleging that the case should be rejected because there was an alternative dispute resolution agreement. In this particular case, the application of Japanese law regarding jurisdiction will result in jurisdiction by appearance having been established (article 12 of the CCP). Further, if such a foreign judgment was obtained without appearance of the defendant but all the requirements provided for in article 118 of the CCP are met, then the foreign judgment also may be recognised and enforced.

*Favourably treated jurisdictions*

**Are judgments from some foreign jurisdictions given greater deference than judgments from others? If so, why?**

In principle, all foreign jurisdictions are supposed to be treated equally, as a Japanese court is only to examine whether the judgment of a foreign court satisfies the requirements set forth in article 118 of the CCP and whether such a judgment has become final and binding. An execution judgment is to be made without investigating whether or not the underlying judicial decision is appropriate.

*Alteration of awards*

**Will a court ever recognise only part of a judgment, or alter or limit the damage award?**

Yes. A court may recognise only part of a judgment. In particular, for example, the court may reduce the amount of damages if the foreign judgment includes in the damage amount punitive damages, which are contrary to Japanese public policy. In this regard, the Supreme Court in a decision of 11 July 1997 held that, in a case where an execution judgment of a judgment rendered by a court in California was sought, the portion corresponding to the punitive damage award that was imposed on the defendant for the purpose of publicly shaming and sanctioning the defendant's conduct should not be effective because it was contrary to Japanese public policy.

A fundamental principle of Japanese tort law is to restore the plaintiff to its status when the tort did not exist, and this principle conflicts with the idea of requiring a defendant to pay punitive damages (therefore putting the plaintiff in a better position, assuming the compensatory damages suffice to restore the plaintiff's status).

## Awards and security for appeals

*Currency, interest, costs*

**In recognising a foreign judgment, does the court convert the damage award to local currency and take into account such factors as interest and court costs and exchange controls? If interest claims are allowed, which law governs the rate of interest?**

The court does not convert the damage award to Japanese yen. With regard to interest, the court does take it into account, even if the foreign judgment does not clearly provide for interest, if it is apparent from the local law applicable to that foreign judgment that interest accrues at a specific rate (Supreme Court judgment of 11 July 1997).

*Security*

**Is there a right to appeal from a judgment recognising or enforcing a foreign judgment? If so, what procedures, if any, are available to ensure the judgment will be enforceable against the defendant if and when it is affirmed?**

Yes. There is a right to appeal the execution judgment. The procedure for appeal is the same as that for other judgments. The judgment rendered by the first instance court may be appealed twice under the Japanese legal system. The procedure at the second instance court is a fact-finding proceeding, but the third instance court (ie, the Supreme Court) only considers very limited legal issues, and appeals concerning issues related to facts are not allowed by the Supreme Court. The appeal must be made within 14 days of service of the relevant prior instance court judgment, and if this period passes without the judgment being appealed, the relevant judgment becomes final and binding and is therefore enforceable. However, if the first instance court approves provisional execution, such judgment may be enforced without waiting for the judgment to be final.

## Enforcement and pitfalls

Case: 1:14-cv-01437 Document #: 526-12 Filed: 12/14/20 Page 10 of 12 PageID #:9320

*Enforcement process*

## Once a foreign judgment is recognised, what is the process for enforcing it in your jurisdiction?

Once an enforcement judgment is obtained, the foreign court judgment for which an execution judgment has become final and binding will serve as a title of obligation, and compulsory execution can be carried out based thereon. Article 22(vi) of the CEA lists as one of the titles with which compulsory execution can be carried out, 'a judgment rendered by a foreign court for which an execution judgment has become final and binding'.

*Pitfalls*

## What are the most common pitfalls in seeking recognition or enforcement of a foreign judgment in your jurisdiction?

Every foreign judgment case in which the demand for an execution judgment has been dismissed has had different reasons for the dismissal, and it is difficult to identify common pitfalls to be avoided, but in several of these cases dismissal resulted because the requirements set in either article 118(ii) or (iii) of the CCP had not been met (ie, service requirement or public policy requirement). A Japanese court will not consider service effected via mail or courier delivery, or similar means of publication, as satisfying the requirements set forth in article 118(ii) of the CCP.

## Update and trends

*Hot topics*

## Are there any emerging trends or hot topics in foreign judgment enforcement in your jurisdiction?

Hot topics29 Are there any emerging trends or hot topics in foreign judgment enforcement in your jurisdiction? On 18 January 2019, the Supreme Court rendered a judgment regarding the requirement under article 118(iii) of the CCP. It ruled that a court proceeding will be contrary to public policy in Japan if a foreign judgment became final and binding under a circumstance where a party to that judgment had not been provided with the opportunity to appeal because he or she had not been informed of the content of the judgment or had not been provided with the opportunity to become aware of the content of the judgment. While article 118(ii) explicitly requires that the defendant has received service of a summons or an order necessary for the commencement of the suit but does not mention anything about the receipt of a foreign judgment, it has now been clarified by way of this Supreme Court judgment that it is necessary for the defendant to actually be aware of the content of the judgment in order for the court proceeding that rendered the foreign judgment not to be found contrary to public policy in Japan.

**TMI Associates** - Masanobu Hara and Misa Takahashi

☐ Save & file | ☐ View original | ☐ Forward | ☐ Print | ☐ Share | ☐ Follow | ☐ Like | ☐ Instruct

Filed under

Japan | Litigation | TMI Associates

Tagged with

Enforcement of foreign judgments

## Popular articles from this firm

Cybersecurity in Japan

Q&A: Labour & Employment Law in Japan

Cybersecurity in Japan

Fund management in Japan

Commercial Contracts in Japan

If you would like to learn how Lexology can drive your content marketing strategy forward, please email enquiries@lexology.com.



## Related topic hubs

**Japan**

**Litigation**

## Related Japan articles

Court examination of foreign judgments in Japan

Court examination of foreign judgments in Japan

Snapshot: bringing a claim for enforcement of a foreign judgement in Japan

## Related international articles

Enforcement of Foreign Judgments in South Korea **- South Korea**

Court examination of foreign judgments in South Korea **- South Korea**

Conditions for recognition and enforcement of foreign judgments in the Netherlands **- Netherlands**

Thomas Grozinger

"

Principal Trust Specialist

RBC Wealth Management

**What our clients say**

*"Lexology is a great service, providing easy access to a variety of relevant articles from a number of information providers across different geographical zones -- I just wanted to say thank you to all who are involved in providing this reference!"*

Terms of use

Cookies

Disclaimer

Privacy policy

GDPR compliance

RSS feeds

Contact

Submissions

About

Login

Register

Follow on Twitter

Search

© Copyright 2006 - 2020
Law Business Research