IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GREGORY GREENE, individually and on behalf of all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>MARK KARPELES, an individual<br><br>*Defendant*. | Case No. 1:14-cv-01437<br><br>Hon. Gary Feinerman |

**OPPOSITION OF PLAINTIFF GREGORY GREENE TO MOTION TO STRIKE**

Defendant Mark Karpeles's Motion addresses two exhibits that Plaintiff Gregory submitted in connection with his motion for class certification. Both exhibits are documents concerning the Mt. Gox bitcoin exchange that Karpeles authored. Both were publicly available when they were made, and both are publicly available today. Both were explicitly sought by Plaintiff in discovery, but neither was identified or produced by Karpeles because, in his words, each was "equally accessible to Plaintiff." And one, Exhibit G, a release signed by Karpeles that was posted to the Mt. Gox website in 2011, was identified by Plaintiff's expert, Professor Carol Goforth, in her timely-produced expert report. Now citing the fact that Plaintiff did not affirmatively and specifically identify these (and, presumably, other) documents that Karpeles authored and are now available online, Karpeles says the Court should "strike and exclude" them from the motion for class certification pursuant to Federal Rule of Civil Procedure 37.

Should Greene have updated his Rule 26(a) disclosures after he identified Karpeles's public statements—even though Karpeles himself refused to produce or identify them in discovery? Perhaps. But is the proper remedy to exclude them from the case entirely? Absolutely not. Karpeles's approach to the motion to strike mirrors his approach at summary judgment: He

1

has long known what this case is about and what evidence Greene has intended to use but, instead of facing it head on or seeking other remedies, has tried (and now tries again) to strike Greene's central theory and supporting evidence from the case, seeking to wield procedure to avoid substantive review of his own conduct. But Karpeles was neither surprised nor harmed by Greene's inclusion of Exhibits D or G with his motion for class certification, and no other factor supports Karpeles's request that they be stricken. The Motion should be denied.

## BACKGROUND

Early in the case against Mark Karpeles, it became clear that discovery was going to be atypical. (*See generally* dkt. 437 (Pl. Mot. to Compel).) Karpeles explained that because of his ongoing criminal prosecution in Japan, the body of evidence that would normally be subject to discovery—hundreds or thousands of records and communications concerning Mt. Gox—could not be produced. (*Id.* at 4-5.) This contention was the subject of motion practice initiated by Plaintiff, who identified a discovery dispute between the parties and then timely sought relief from the Court. Upon review of those papers, the Court ultimately requested that the Japanese authorities allow Karpeles to produce the sought-after information in discovery, (dkts. 446, 447), but that effort fell flat. As a result, while Greene has produced thousands of pages of documents in discovery, Karpeles has produced next to nothing.

So: Plan B. In July 2019 (during the fact discovery period), Greene requested that Karpeles "[i]dentify all interviews, statements, comments, testimony, or other communications given or made by you concerning Mt. Gox, including by identifying the location of any videos, transcripts, or articles concerning such interviews, statements, comments, testimony, or other communications." (Ex. A[1] (Greene 2d Interrogs. to Karpeles).) The request should not have

---

[1] References to exhibits refer to the exhibits attached to the Declaration of Benjamin S. Thomassen, filed contemporaneously herewith.

2

come as any surprise; Karpeles's public statements about the Exchange have been a core part of this case since the very beginning. (*See*, *e.g.*, dkt. 1 ¶ 28; dkt. 36 ¶ 18; dkt. 146 ¶¶ 18, 21, 33, 37; dkt. 205 ¶¶ 19, 22, 34, 38; dkt. 245 ¶¶ 20, 23, 35, 39.) In response to Plaintiff's request, Karpeles acknowledged that there were many such documents available online, but, with a few exceptions, refused to identify them because they were all "equally accessible to Plaintiff." (Ex. B (Karpeles Resp. to Greene 2d Interrogs.).) But Karpeles did point to at least some responsive material. Particularly, he noted that in a prior written discovery response, he had "identified user names [that he] used to communicate about Mt. Gox." (*Id.*) This included Karpeles's user name ("MagicalTux") on "bitcointalk.org," which is where Plaintiff located the forum post submitted as Exhibit D to the motion for class certification. (*Id.*) To be clear, Karpeles knew about this. During his deposition, Karpeles's attorney asked Mr. Greene whether he believed that Karpeles's "knowingly concealed the defects [on Mt. Gox] and falsely assured users that their bitcoins and money were safe in their accounts." (Ex. E (Greene Dep. Tr.) 44:24-45:3.) Greene answered that he did and, as a source, he testified that Karpeles "was on bitcointalk.org's website on numerous occasions indicating that Mt. Gox was solid; that it was secure; and that bitcoin – that Mt. Gox was a stable company." (*Id.* at 45:4-9.) And he specifically said Karpeles made these posts between 2011 and 2014 "under the username MagicalTux." (*Id.* at 45:10-17.) A few moments later, Greene also said these posts evidenced Karpeles's control over the Exchange. (*Id.* at 48:2-9.) Karpeles's attorney, however, did not pursue this topic and did not follow up on it.

      To be fair, Plaintiff, like just about every litigant, took a similar approach when responding to discovery requests that arguably sought the production of publicly-available documents and information: Plaintiff produced or identified responsive documents in his possession, but did not scour the internet to affirmatively identify and/or produce every comment

or statement Karpeles himself had ever made about Mt. Gox. (Karpeles is, after all, correct: there are a lot of them and, taken together, they evidence Karpeles's strong control over Mt. Gox and his choices about what to reveal or keep secret from Mt. Gox users.) Rather, Plaintiff produced what he had, and made clear that the list of materials he identified was not intended to be exhaustive and that there were many other responsive sources and materials available online; in other words, exactly the approach Karpeles took in *his* response to Plaintiff's request for the same information.

Shortly after Plaintiff filed his own motion to compel, the parties discussed this approach. Plaintiff provided case law in support of his position, and Karpeles's counsel concluded—as she had earlier in the case when the parties first discussed this issue in or around June 2019 (*see* Ex. C (June 3, 2019 Brennan letter to Thomassen))—that the parties remained "at an impasse" over whether all publicly-available documents needed to be affirmatively identified by Plaintiff in discovery. (Ex. D (Sept. 19, 2019 Brennan email to Thomassen).) Karpeles's counsel did not, however, reference or account for her client's same refusal to identify publicly-available documents in his discovery responses. And contrary to Plaintiff's approach with his own identified discovery disputes, Karpeles's counsel gestured toward a motion to compel on this issue, but never followed through with it.

In December 2019, and in line with the deadlines set by the Court, Plaintiff produced the expert report of Professor Carol Goforth. A key issue addressed by Professor Goforth is what rational Mt. Gox users would have done in response to information regarding the Mt. Gox exchange that was either mispresented or suppressed by Mark Karpeles. Important to her consideration (and, as the Court is aware, Plaintiff's overall theory of liability) was what information Exchange users would or could have known at the time. Thus, as part of her

4

analysis, Professor Goforth considered, *inter alia*, information that had been posted to the Mt. Gox website. One of those posts is Exhibit G: a "clarification" that Karpeles posted online in September 2011 to explain away the circumstances leading to a publicly-known hack and resulting bitcoin sell-off at Mt. Gox. (Dkt. 510-8 (Goforth Decl.) ¶ 34.) Professor Goforth's report provided a hyperlink to an archived version of this "clarification." (*Id.*) For his motion for class certification, Plaintiff's counsel accessed that link and included its contents as Exhibit G. The Exhibit bears a date of October 29, 2020 simply because that is the day the document was printed from the Internet. But because it is an archived version of the webpage, Exhibit G has the exact same content as the page referenced by Professor Goforth and identified for Karpeles a year ago.

      Some months later, the parties briefed Karpeles's motion for summary judgment. As Karpeles now notes, Plaintiff cited to some online documents (including Exhibit D at issue here)—just as he always said he would and just as the parties' conferred about in June and September 2019. But Karpeles did not seek leave to conduct discovery on those documents; instead, he claimed surprise and asked that they be excluded from the case, along with Greene's central theory of fraud (even though, as Greene noted, the theory was pleaded in his complaint). And then the parties began briefing Plaintiff's motion for class certification. Plaintiff again cited to online statements made by Karpeles, and Karpeles again claimed surprise. But even though he had long known about Plaintiff's intent to rely on "equally available" online documents made by Karpeles, he did not move—nor has he ever moved—to compel or for leave to conduct any additional discovery. Rather, he filed the instant motion to strike and exclude the offending documents from the case.

5

## ARGUMENT

Karpeles's motion to strike Exhibits D and G contends that exclusion of these documents is required because Plaintiff never identified the documents in his initial disclosures or discovery responses. It is not at all clear that the Court should even embrace this underlying premise. Exhibit D to the motion for class certification was effectively produced *by Karpeles* when he acknowledged that he made certain online statements, including those memorialized in Exhibit D, behind his "MagicalTux" username. And Exhibit G to the Motion for Class Certification was identified in Plaintiff's timely-produced expert disclosures. In other words, both parties had ample notice that these specific documents (and the statements of Mark Karpeles contained therein) could be used in this case. And, of course, both statements were pulled from the Internet, and are equally available to both parties. A party bears the burden of producing documents in their control, regardless of public availability, but a party is not obligated to survey the internet for other documents that respond to an adversary's discovery request. Arguably, then, there has been no failure on Greene's part to comply with the letter or spirit of Rule 26.

But let's assume for the sake of argument that Plaintiff has violated a discovery obligation. Even if he was technically required to specifically identify Exhibits D and G in discovery responses or initial disclosures, or should have supplemented a discovery response specifically to flag them, his failure to do so was substantially justified or harmless and, as a result, there is no reason to strike or exclude them. The Court has discretion to determine whether a Rule 26(a) violation is justified or harmless. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003) (quoting *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir.1996)). "A district court need not make explicit findings concerning the existence of a substantial justification or the harmlessness of a failure to disclose." *Id.* But to

6

guide the decision-making process, courts in this Circuit consider four factors: "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Doe 1 v. City of Chicago*, No. 18-CV-3054, 2019 WL 5290899, at *3 (N.D. Ill. Oct. 18, 2019) (quoting *David*, 324 F.3d at 857).

Here, the factors weigh against exclusion. The motion should be denied.

**I.     There is no prejudice or surprise.**

The first factor, prejudice or surprise, weighs in Greene's favor. Initially, there is no surprise because Karpeles has known—for a very long time—that Greene sought to use Karpeles's public statements about Mt. Gox in this case. All of Greene's discovery materials demonstrate this. His initial disclosures note his intention to use documents identified or produced by parties in discovery. And then, consistent with that approach and after learning that Karpeles would not be producing any documents in his possession in this case, he specifically requested that Karpeles identify the publicly-available statements that he made concerning Mt. Gox. *See Moule v. Winnebago Cty. Pub. Def.'s Office*, No. 03 C 50121, 2006 WL 8462272, at *3 (N.D. Ill. Dec. 13, 2006) (late disclosure of witness excused because during discovery party indicated that witness was a potential source of relevant, discoverable information). Karpeles's response both acknowledged that such documents existed (even though he generally refused to identify them) and specifically directed Plaintiff to certain online forums that Karpeles had used to talk about Mt. Gox (along with the usernames he used on those forums). Thus, while neither Exhibits D nor G specifically appeared in Karpeles's discovery responses or on Greene's Rule 26 disclosures, they were effectively identified or, at the least, Karpeles understood that Greene

7

intended to use them, along with other of Karpeles's statements about Mt. Gox, in this litigation.[2] *See Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 418 (7th Cir. 2019) (agreeing there was no surprise when party "supplied (in some form) nearly all the information Rule 26(a)(2) requires"). Certainly, Karpeles cannot claim surprise that Greene cites to a statement about Mt. Gox made by Karpeles in an online forum after Karpeles specifically identified the username under which he posted in that forum about the same subject matter. This is doubly-true with respect to Exhibit G, which, as noted above, Professor Goforth explicitly identified in her timely-produced expert report.

The issue of prejudice also cuts in Greene's favor. This is not a case of an undisclosed expert or expert theory (who would have, but for a late disclosure, been subject to a deposition or other discovery), witness (who a party would have normally deposed or otherwise sought discovery from prior to trial), or document or report produced by a third party (who might have otherwise been served with a subpoena). *See, e.g.*, *Karum Holdings LLC v. Lowe's Companies, Inc.*, No. 15 C 380, 2017 WL 10311207, at *4 (N.D. Ill. Sept. 8, 2017) (discussing prejudice resulting from late disclosures of discovery information, where parties agreed that additional depositions and other discovery would be required as a result). Rather, the documents at issue here are all statements made *by the Defendant* himself about the subject matter of this lawsuit. Karpeles has all the information he could possibly need about the statements *he* made: He need not depose or issue discovery requests to himself to figure out what he might testify to at trial and, thus, suffers no prejudice on account of the discovery period being closed. *See, e.g.*, *Shott v. Rush Univ. Med. Cty.*, No. 11 CV 50253, 2014 WL 7665075, at *2 (N.D. Ill. Nov. 6, 2014) (denying motion to strike documents produced for the first time at summary judgment when the

---

[2] Not the least because, as noted above, Karpeles's posts on bitcointalk.org were specifically discussed by Greene during his deposition.

8

documents were created by the defendant). *See also Compak Companies, LLC v. Johnson*, No. 03 C 7427, 2011 WL 1654269, at *17 (N.D. Ill. Apr. 28, 2011) (party's "failure to update its Rule 26(a) disclosures . . . was harmless" as to documents already in the defendants' possession). And, of course, Karpeles's own out-of-court statements are not inadmissible hearsay. Fed. R. Evid. 801(d)(2).

Karpeles has implied that the use of his own statements in this case would cause prejudice because Karpeles was not able to conduct discovery against Greene. (Mot. ¶ 23.) But Karpeles has long-been aware that this case addresses what Greene and others knew about the Mt. Gox exchange. Given that Karpeles indisputably knows about his *own* public statements concerning Mt. Gox (after all, as Karpeles discussed in his deposition, he directed Mt. Gox's public outreach campaigns and made decisions about what information to disclose to the Exchange's userbase and what to keep private, (*see, e.g.*, dkt. 510-8 ¶¶ 27, 34-35)) and knew that Plaintiff sought the identification of them for use in this lawsuit, Karpeles had every opportunity to review his statements in preparing his defense and, in turn, was free to question Greene about any of them during his deposition. Indeed, as noted above, Greene affirmatively brought Karpeles's posts up during his deposition as evidence of Karpeles's concealment and fraud, among other topics. But instead of pursing the topic, his attorney adjourned the deposition after less than 90 minutes. *See Palar v. Blackhawk Bancorporation Inc.*, No. 11-4039, 2013 WL 1704302, at *6 (C.D. Ill. Mar. 19, 2013), *report and recommendation adopted sub nom. Palar v. Blackhawk Bankcorporation, Inc.*, No. 4:11-CV-4039-SLD-JAG, 2013 WL 1716445 (C.D. Ill. Apr. 19, 2013) ("This entire lawsuit is about the money Palar claims the Bank owed but did not pay him. Plaintiff's pay stubs were, after all, issued by the Bank; surely the Bank has examined its own pay records in preparing its defense in this case. The Bank deposed Palar and was free to

9

question him about the pay he received compared to the pay he thought he deserved.").

And apart from this, conducting additional discovery against Greene would be futile. As the Motion details, in discovery Karpeles asked Greene to (i) produce documents that Greene "reviewed, studied, or considered before investing via Mt. Gox," (Mot. ¶ 14), and (ii) identify documents he reviewed "prior to purchasing Cryptocurrency via Mt. Gox", (*id.* ¶ 16). Greene, however, did not purchase bitcoins on Mt. Gox; he bought them elsewhere, moved them onto the Exchange, and then did not do anything with them until he tried (unsuccessfully) to move them off the Exchange shortly before it collapsed. So there was literally nothing to provide in response to these requests. But proceeding in good faith, Greene identified that he read a Wired article about bitcoin before becoming involved with Mt. Gox, so he identified that. (Mot. Ex. C at Resp. No. 8.) Exhibit D, on the other hand, would never would have been responsive to any reading of Karpeles's discovery requests: the document shows that Karpeles posted it on September 10, 2012, which was *after* Greene had moved bitcoin onto the Exchange—not before. And while Exhibit G was available at that time (the document evidences that Karpeles published it in September 2011, as Professor Goforth notes in her report), Greene testified in his deposition that he didn't even become interested in bitcoin until after he read the Wired article (which was published in November 2011), (Ex. E at 9:1-10), so he wouldn't have reviewed that document either. In terms of documents he *did* review, Greene's testimony made clear that once his interest was piqued, Greene reviewed the Mt. Gox website to get familiar with how "user friendly" it was and to review any terms and conditions relating to the Exchange. (*Id.* at 15:5-24.) Once he was invested in bitcoin, he began paying more attention to the available developments about Mt. Gox and other bitcoin exchanges—including by paying attention to Karpeles's comments on bitcointalk.org. Karpeles could have probed this more extensively during Greene's deposition

10

(including by offering exhibits of statements Karpeles had made) or issued follow up discovery, but chose not to.

Likewise, there is no need to re-open expert discovery. The parties' respective experts had no trouble surveying what absent class members may have been exposed to when deciding to open or maintain accounts on Mt. Gox and drawing their own conclusions from that information, and what information they would have found material. As noted herein, Professor Goforth used her experience to show what Mt. Gox users would have known and expected, and supported her opinion by referencing public documents (including, for example, statements made or directed to be made by Karpeles) that would have been available to bitcoin users at the time. She also identified the documents she specifically considered in this process. This included, among many others, the press release submitted by Greene as Exhibit G. (Dkt. 510-8 ¶ 34.)

On the whole, the lack of surprise and prejudice here is evidenced by Karpeles's overall approach to this issue. While he continues to express surprise when these documents come to the fore—including, as Karpeles makes sure to stress again, the fact that the case centers (as it always has) on the Mt. Gox terms of use—it is notable that Karpeles has never pursued the "obvious, alternative option" of moving to compel production or identification of the documents that he contends should have been produced or identified. *See Uncommon*, 926 F.3d at 418 (citing *David*, 324 F.3d at 857). *See also Corcoran v. CHG-Meridian U.S. Fin., Ltd.*, No. 5:11-cv-1462 (MAD)(DEP), 2014 WL 1976671, at *6 (N.D.N.Y. May 15, 2014) (although plaintiff "could have been more diligent in his disclosure of the news that he had obtained gainful employment, the remedy of preclusion [of mitigation efforts] is not warranted" where defendant did not file a motion to compel when it became aware of plaintiff's deficient responses to defendant's outstanding demands while discovery was ongoing). As one court explained:

> Under these circumstances, allowing a party to seek to exclude testimony without first taking the less drastic action of attempting to compel production of the requested information seems like permitting a party to play discovery "gotcha." When a party deems a discovery production to be lacking, it generally has two choices after unsuccessfully attempting to resolve the conflict: it can file a motion to compel, or it can let the conflict go and elect to do nothing further to obtain the information at issue. Although this Court is reluctant to find that failure to file a motion to compel waives a party's right to seek to exclude evidence or other severe sanctions, fairness suggests that a party opposing the discovery should have the opportunity to do so without subjecting itself to the death penalty for its evidence, if it guesses wrong.

*S.E.C. v. Huff*, No. 08-60315-CIV, 2010 WL 228000, at *3 (S.D. Fla. Jan. 13, 2010). That describes the situation here. As noted above, Karpeles's counsel conclusively determined that the parties were at "an impasse" on this issue during the discovery period but, instead of moving to compel or pressing the issue, Karpeles moved forward with his "strategic risk" of excluding evidence and theories from the case. *Uncommon*, 926 F.3d at 419. But given that Karpeles knew Greene sought these same materials in discovery—and were otherwise alleged to be a core part of his case—Karpeles cannot credibly claim he suffered surprise or prejudice from Greene's failure to identify which of Karpeles's public statements about Mt. Gox might eventually be used in the case. *Id.* ("Litigation is adversarial, not a game of gotcha."). *See also Fenje v. Feld*, 301 F. Supp. 2d 781, 815 (N.D. Ill. 2003), *aff'd,* 398 F.3d 620 (7th Cir. 2005) (allowing affidavits of undisclosed witnesses where, *inter alia*, the opposing party was well aware of their roles and their potential as witnesses, and defendant was not obliged to supplement his interrogatory answers to identify them as witnesses.).

## II. The remaining factors weigh against exclusion as well.

While the lack of prejudice and surprise to Karpeles should be enough to resolve this issue, the remaining factors also weigh against the relief sought by Karpeles.

First, the consideration of a party's ability to "cure" is tied to the prejudice that the party has suffered. *David*, 324 F.3d at 857. Thus, where "[t]here is no cognizable surprise or prejudice,

. . . there is no need to cure any prejudice." *Palar*, 2013 WL 1704302, at \*6. That is the case here. But if there is a need for action, Karpeles could avoid surprise going forward by providing a complete response to Greene's discovery request that Karpeles affirmatively identify the public statements he has made about Mt. Gox. Setting forth that information would also cure any technical defects Karpeles complains of here, since Karpeles's response would (as Greene originally anticipated) align with Plaintiff's stated intent to use documents and information produced or identified by any party in discovery. *Rashid v. Peoria Ear, Nose & Throat, P.C.*, No. 18-1366, 2020 WL 3051597, at \*7 (C.D. Ill. June 8, 2020) ("Defendant cites no authority for the proposition that a witness disclosed by one party to the other party must then be disclosed by the receiving party if that party concludes the witness has discoverable information.").

Second, Karpeles does not even articulate how trial might be disrupted by the inclusion of these two documents in the motion for class certification. The Court has addressed this case in phases, and the parties are currently briefing whether the case should proceed as a class action. Because Plaintiff's motion for certification is pending, there is no trial date and, thus, nothing to be interrupted. *Palar*, 2013 WL 1716445, at \*7 (no disruption to case schedule where trial date would be set following resolutions of pending motions). Indeed, Karpeles's "receipt" of his *own* statements in connection with Plaintiff's motion obviously did not affect his ability to respond to the substance of Plaintiff's motion for class certification. Rather, he filed a 32-page brief in response and doesn't bring up any hardship caused by Plaintiff's use of Exhibits D or G. *See Physicians Healthsource, Inc. v. Allscripts Health Sols., Inc.*, No. 12 C 3233, 2016 WL 7034074, at \*6 (N.D. Ill. Dec. 2, 2016) (finding that late disclosure was harmless when "there appears to be no likelihood of disruption to trial or, more accurately, the briefing and resolutions of the two dispositive motions").

Finally, there was no bad faith or willfulness for Plaintiff's failure to specifically include either Exhibit D or G in his discovery responses or initial disclosures. This is not a case where a party intentionally attempts to blindside another with surprise evidence. *Uncommon*, 926 F.3d at 418 (citing *Sherrod v. Lingle*, 223 F.3d 605, 613 (7th Cir. 2000)); *see also Brown v. Columbia Sussex Corp.*, 664 F.3d 182, 191 (7th Cir. 2011) (concepts of "willfulness" and "bad faith" usually require "intentional or reckless behavior") (citation omitted). Rather, Plaintiff's failure to specifically identify Exhibits D and G—which, to reiterate, are statements made *by Karpeles*—in his discovery responses was the above-board approach taken by both parties in the case with respect to equally-available public documents. As discussed above, Plaintiff, like Karpeles, did not identify every document on the internet that, while responsive to a particular discovery request, was equally available to his opponent and not specifically within his control.

## CONCLUSION

The motion to exclude should be denied.

Date: December 18, 2020               By: /s/ Benjamin S. Thomassen
                                      One of Plaintiff's Attorneys

                                      Jay Edelson
                                      jedelson@edelson.com
                                      Benjamin S. Thomassen
                                      bthomassen@edelson.com
                                      Edelson PC
                                      350 North LaSalle Street, 14th Floor
                                      Chicago, Illinois 60654
                                      Tel: 312.589.6370
                                      Fax: 312.589.6378

                                      Rafey Balabanian
                                      rbalabanian@edelson.com
                                      J. Aaron Lawson
                                      alawson@edelson.com
                                      Edelson PC
                                      123 Townsend Street, Suite 100
                                      San Francisco, California 94107

          Tel: 415.212.9300
          Fax: 415.373.9495

          *Counsel for Plaintiff*