# EXHIBIT 1

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| GREGORY GREENE, | ) | |
| individually and on behalf of | ) | Case No. 14-cv-01437 |
| all others similarly situated, | ) | |
| | ) | Hon. Gary Feinerman |
| Plaintiffs, | ) | |
| | ) | Magistrate Judge Susan Cox |
| v. | ) | |
| | ) | |
| MARK KARPELES, an individual, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT MARK KARPELES' SECOND SUPPLEMENT TO HIS
OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

Defendant Mark Karpeles, by and through his undersigned counsel, hereby submits this second supplement to his Opposition to Plaintiff's Motion for Class Certification [Dkt. 526] ("Opposition") and states as follow:

1. The parties last appeared before this Court on January 6, 2021 for oral argument on Plaintiff's fully-briefed Motion for Class Certification.

2. At that hearing, the Court requested to be apprised of any additional developments in the rehabilitation proceedings of Mt. Gox in Japan following the Japanese Rehabilitation Trustee's filing of a draft rehabilitation plan on December 15, 2020.

3. On February 25, 2021, there was a public announcement regarding an Order to Refer Draft Rehabilitation Plan to Resolution. (A true and correct copy of that February 25, 2021 announcement is attached hereto as Exhibit A.)

4. The February 25, 2021 announcement states that the Rehabilitation Trustee filed a revised draft rehabilitation plan on February 15, 2021 and a written revision to schedules to that plan on February 19, 2021. (*Id.* at 1.)

5.     Also according to the announcement, the examiner filed a report with the Tokyo District Court on February 16, 2021, stating that there were no grounds for disapproving the draft rehabilitation plan under a certain provision of the Japanese Civil Rehabilitation Act and that there "were no other unreasonable grounds."  (*Id.*)

6.     On February 22, the Tokyo District Court made an order to refer the draft rehabilitation plan to resolution, and creditors will be asked to vote on the plan.  (*Id.*)

7.     The Tokyo District Court set the following schedule:

   a.   Record date for determining voting rights holders:  March 24, 2021

   b.   Deadline for notice of non-uniform exercise of voting rights:  September 10, 2021

   c.   Deadline for online voting and voting by mail:  October 8, 2021

   d.   Creditors' meeting for resolution of the draft rehabilitation plan:  October 20, 2021

(*Id.*)

8.     Although there are reports in the media and on the internet, the plan itself is not publicly available and is not allowed to be made public.   One website has attempted to summarize its understanding of the plan.   (*See* https://blog.wizsec.jp/2021/02/mtgox-claim-calculator.html#calculator, dated February 9, 2021.  A copy of this article is attached hereto as Exhibit B.)

9.     The WizSec blog is one cited by Plaintiff's proposed expert.  (*See* Exhibit A to Motion to Strike Expert Disclosure of and Preclude Testimony from Carol R. Goforth [Dkt. No. 457-1] at ¶ 43.)

10.     At the time of the closing of Mt. Gox, Mr. Greene had 42.97104 bitcoins and $2.66 in fiat currency, for which he has a fully approved claim in the rehabilitation proceedings.  (Plaintiff Greene's Response to Defendant Mark Karpeles's Local Rule 56.1(a)(3) Statement of Facts ¶¶ 39, 42 [Dkt. 466].)

11.     Mr. Greene's claim in this case is for "the value of the bitcoin and the currency that he lost when Mt. Gox went offline in February 2014."  (*Id.* ¶ 40.)  Mr. Greene contends that his bitcoins

were worth approximately $25,000 at the time that Mt. Gox shut down. (Fourth Amended Class Action Complaint ¶ 57 [Dkt. No. 245].) The value per bitcoin at that time was a bit under $600.

12. According to the admittedly unofficial calculator put together by persons at the WizSec blog, as of the morning of the date of this filing, under the terms of the plan and choosing the more conservative of the two options (a guaranteed early payment rather than a later payment with potential upside but also risks), if the plan is approved, Mr. Greene's claim in is estimated to be valued at $347,083.74 (not including the $2.66 in fiat). (*See* Ex. B at 11.)

13. Payments to creditors will be paid in a combination of bitcoin, bitcoin cash and yen. The value, therefore, is dependent upon the value of bitcoin. As of the morning of the date of this filing, Bitcoin was valued at over $50,000 per coin. According to the calculator, again as of the morning of this filing, if he were to choose the early payment option, Mr. Greene is likely to receive approximately 6.33 bitcoins, 6.39 bitcoin cash and over 2,400,000 yen. (*Id.*) The yen alone is valued at over $22,000 at current conversion rates. (*See* Conversion attached hereto as Exhibit C.)

14. Choosing the later payment option may allow for an even greater recovery, but a claimant would also run the risk of a potentially smaller recovery. The later recovery could increase the amount to be distributed pending the resolution of one large outstanding claim.

15. As such, a class action is not the superior method to address these claims where class members can vote and recover through the Japanese civil rehabilitation proceedings. (Opposition § II.B.1 at 25-30.)

Dated: March ___, 2021

Respectfully submitted,

Mark Karpeles

By:___/s/_____
          One of His Attorneys

Bevin Brennan
PEDERSEN & HOUPT
161 North Clark Street, Suite 2700
Chicago, Illinois 60601
(312) 641-6888
bbrennan@pedersenhoupt.com

*Attorneys for Defendant Mark Karpeles*

# EXHIBIT A

February 25, 2021

To whom it may concern:

Rehabilitation Debtor: MtGox Co., Ltd.
Rehabilitation Trustee: Nobuaki Kobayashi,
Attorney-at-law

**Order to Refer Draft Rehabilitation Plan to Resolution**

As announced in the "Announcement of Filing of Draft Rehabilitation Plan" dated December 15, 2020, the Rehabilitation Trustee filed a draft rehabilitation plan with the Tokyo District Court on December 15, 2020.

Thereafter, the Rehabilitation Trustee filed with the Tokyo District Court a revised draft rehabilitation plan (hereinafter, the revised draft rehabilitation plan is referred to as the "**Draft Rehabilitation Plan**") on February 15, 2021, and a written revision to schedules (lists of allowed and disputed rehabilitation claims as of the last day of March 2020) of the Draft Rehabilitation Plan on February 19, 2021.

On February 16, 2021, the examiner filed an examination report with the Tokyo District Court, stating that there were no grounds for disapproving the Draft Rehabilitation Plan as provided in Article 174, Paragraph 2 of the Civil Rehabilitation Act, and that there were no other unreasonable grounds.

Following the proceedings above, on February 22, 2021, the Tokyo District Court made an order to refer the Draft Rehabilitation Plan to a resolution (the "**Order**"). Rehabilitation creditors will be asked to vote to agree or disagree with the Draft Rehabilitation Plan.

The following is the schedule prescribed by the Order:

(1) Record date for determining voting rights holders: March 24, 2021 (Wednesday)
(2) Deadline for notice of non-uniform exercise of voting rights: September 10, 2021 (Friday)
(3) Deadline for online voting and voting by mail: October 8, 2021 (Friday)
(4) Creditors' meeting for resolution on the Draft Rehabilitation Plan: October 20, 2021 (Wednesday), from 14:00 onwards

1

Rehabilitation creditors who are eligible to vote on the Draft Rehabilitation Plan will be those indicated on the list of rehabilitation creditors as of the record date for determining voting rights holders (see (1) above).

There are three methods of voting on the Draft Rehabilitation Plan: (A) online voting, (B) voting by mailing a voting form, or (C) voting in person on the date of the creditors' meeting (see (4) above), and rehabilitation creditors with voting rights will be asked to choose one of these methods.

The specific method and timing of voting on the Draft Rehabilitation Plan will be announced to rehabilitation creditors via MTGOX's website and other means.

Please note that, in accordance with the Civil Rehabilitation Act, new proofs of rehabilitation claims cannot be filed after the Order is made.

We kindly ask for your continued understanding and cooperation in the civil rehabilitation proceedings.

End of document

# EXHIBIT B

Create Blog    Sign In

More



February 9, 2021

## MtGox payout guide and calculator

As there is a lot of confusion surrounding how the MtGox civil rehabilitation distribution will happen, here is an attempt to share my understanding of things, and an interactive calculator for estimating your possible payouts.



▼ Skip straight to the calculator ▼

⚠ **Warning:** This unofficial guide is based on a best-effort understanding of the process and estimates of the total assets and liabilities of the estate.

I am not a lawyer and this is neither legal advice nor financial advice. If you are a creditor, it is solely your own responsibility to educate yourself and make informed decisions about your claim, and consulting with legal professionals if needed.

**10 second summary version:**

- There will be an upcoming vote on this civil rehabilitation plan. **Vote yes**.
- You will get a choice: wait until the end of the process or ask for an early payout.
- Early payout: faster, risk-free guaranteed payouts at 90%+ of maximum.
- Waiting: several more years, will probably receive a bit more, but possibly less.

## The process explained

**Labels**

- MtGox (7)
- CoinLab (1)

**Blog Archive**

▼ 2021 (2)
  ▼ February (1)
    MtGox payout guide and calculator
  ► January (1)

► 2020 (1)
► 2019 (5)
► 2018 (1)
► 2017 (2)
► 2015 (2)

LEGAL



new low
auto rates
you need
to see to
believe

**quote now**

There's been a great many twists and turns in the MtGox post-collapse saga, with many legal obstacles and attempted workarounds. The civil-rehabilitation-turned-bankruptcy-turned-civil-rehabilitation case is an unprecedented case for Japan, with a number of complicating factors, such as:

- Creditor claims in a novel asset.
- An unusually high assets-to-liabilities ratio, with a very large amount of assets.
- Largely refraining from liquidating (bitcoin) assets.
- An extreme value appreciation in those assets, while the legal claim valuation remains fixed.
- Tens of thousands of creditors spread out all over the world, who largely don't speak Japanese or have any relevant experience with the legal process.

As a consequence, it's no wonder that the claim handling and planned distribution process is rather convoluted, with several aspects that at first glance might appear arbitrary or unfair, but there is generally a good reason why everything looks the way it does—usually due to legal requirements, or as a workaround to legal restrictions that were causing problems for creditors.

Between 2014–2018, MtGox was in **bankruptcy** proceedings. If you were a creditor in these proceedings, you filed a claim and your bitcoins were valued at the exchange rate at the time, 50,058.12 JPY per BTC. All claims in these proceedings are legally required to be valued in JPY.

The approximately 200,000 BTC held by the bankruptcy estate meanwhile kept appreciating in value, eventually overtaking the total legal claim value of all creditors and creating a "surplus" which would have been paid out to shareholders instead of creditors. To avoid this, creditors and the trustee worked to convert the bankruptcy into **civil rehabilitation** proceedings instead.

As the process restarted in mid-2018, claims were re-filed with new valuations, with 1 BTC valued at 749,318.83 JPY. Additionally, by this time Bitcoin Cash had forked away from Bitcoin and were claimable in the civil rehabilitation, at a valuation of 97,481.19 JPY. Since then the market rate for Bitcoin has continued to greatly increase, but thanks to the increased flexibility of the civil rehabilitation process we are not heading towards another "surplus" situation; all of the estate's assets are going to be distributed to creditors.



## Zombie claims

Due to legal quirks, there are a lot more claims in the civil rehabilitation than there were during the bankruptcy. In addition to everyone that has filed civil rehabilitation claims, the trustee is also recognizing certain unclaimed customer accounts and will reserve and hold their payouts for years in case their owners attempt to pursue these claims in the future. There are two types of these "zombie claims": people who filed bankruptcy claims but failed to file a civil rehabilitation claim, and accounts that were unclaimed in either process. The claims list from 2019 reported the current claims as:

| CR claim? | BK claim? | Claim prefix | Count | BTC Amount |
|:---:|:---:|:---:|:---:|:---:|
| ✔ | ✔ | X/Y | ~18,000 | ~770,000 BTC |
| ✔ | ✘ | X/Y | ~5,500 | ~35,000 BTC |
| ✘ | ✔ | Z1 | ~6,700 | ~45,000 BTC |
| ✘ | ✘ | Z2 | ~82,500 | ~90,000 BTC |

Unfortunately, even if no one claims these zombie funds, they will eventually go to the Japanese government rather than being redistributed to other "real" creditors. The Z1 category of zombie claims are at this point impossible to avoid, but creditor groups filed an objection to all Z2 claims

hoping to get them dropped. The trustee previously attempted to contact all Z2 account holders and has admitted anyone who responded within some deadline (so far some 6,500 claims), but for remaining claims the objection has a good chance of standing, which would see those claims dropped.

## Determined vs undetermined claims

After you filed your claim, the trustee either approved or rejected your claimed amounts (or approved only a partial amount). If you agreed with the trustee's decision, your claim is now considered *determined* and final. If you were rejected and filed an objection, your claim remains *undetermined* and disputed. A disputed claim becomes determined once the dispute is resolved and its proper amount is decided by the court.

Currently, there are about **860,000 BTC/BCH** and **8.8B JPY** in determined claims, and about 130,000 BTC/BCH and 50B JPY in undetermined claims. Of the latter, CoinLab is responsible for almost the entire undetermined fiat amount, while other creditors are attempting to get large BTC amounts approved. Disputes thus far have largely resolved in favor of the trustee, with only a few thousand BTC added to determined claims.

Realistically, the *best case scenario* for current creditors is therefore if none of the remaining undetermined claims are approved (including CoinLab), leaving the total claim amount at the current determined claim amount. To get a better payout than that would require extraordinary events such as the recovery of significant additional assets, which at this point is not likely.

## Priority payments

As a prerequisite for the conversion to civil rehabilitation, the trustee needed to guarantee that no bankruptcy creditor would ever receive worse results than under bankruptcy—including fiat creditors who were set to receive a full 100% payout under the "surplus" situation—as otherwise those creditors might raise objections. Therefore, **any creditor who had a fiat bankruptcy claim will receive the full value of that claim**. This includes Z1 zombie claims.

The paid out amount will be the **bankruptcy valuation** of the fiat claims, **plus delay damages** for the time period until the start of civil rehabilitation (at 6% per year, adding up to about 25.9%). This payout counts towards your civil rehabilitation fiat claim payouts, and will typically exceed the size of your civil rehabilitation claim (thanks to the delay damages), i.e. you'll have no remaining fiat claims for the rest of the distribution process.

(Note that there will be no delay damages paid out on civil rehabilitation claims.)

The trustee also reserved a buffer of what bankruptcy creditors would have received for their crypto claims (50,058.12 JPY per BTC) by selling a portion of MtGox's remaining bitcoins in order to guard against a possible future drop in market value. The estate currently holds 141,686 BTC and 142,846 BCH, plus about 68 billion JPY worth of fiat.

## A note on claim valuation

As mentioned above, your claims of each currency are converted into JPY at a valuation fixed at the start of the civil rehabilitation process. Distribution meanwhile will happen in JPY, BTC and BCH. For simplicity's sake when estimating your claim, let's group all of your fiat currency claims into a single JPY denominated "fiat" claim. Similarly, you can group your combined BTC and BCH claims into a single JPY denominated "crypto" claim.

The valuation used is the source of many misconceptions, e.g. that it somehow limits potential payouts to BTC creditors. The confusion is understandable considering what happened during the bankruptcy process and given that the BTC valuation is again several times lower than the current market value (though the BCH valuation is now *higher* than the current market value), but in actuality the current situation is quite different.

It can perhaps help to think of the claim valuations not as actual JPY but instead as an arbitrary unit of measurement of the relative sizes of claims; "**goxen**" if you will. All assets and claims are valued and denominated in these goxen at fixed valuations; it is the **unit of account** for the estate. In other words, it is the goxen asset amounts that will be proportionally divided between the goxen claim amounts.

Only at distribution time once you awarded a certain prorated goxyen amount for each of your claims does this amount get translated back into actual assets. For fiat claims, this is simple: **1 goxyen = 1 JPY**. For BTC/BCH claims, their **fixed valuation** is used in reverse: 749,318.83 goxyen = 1 BTC and 97,481.19 goxyen = 1 BCH.

Recall however that the trustee sold bitcoins? As a result of this sale and the general imbalance of assets in the estate, your BTC/BCH claims will actually be paid out as a **combination of JPY and BTC/BCH**. The proportion of your claim paid out as fiat depends on the exact assets/liabilities remaining, but is estimated to be around **30%** of the goxyen valuation.

The artificial valuation does affect the proportions between fiat and BTC/BCH claims and thus how much fiat you'll get for your BTC/BCH claim, but it's important to note is that **all remaining BTC/BCH assets will be paid out to BTC/BCH creditors**, so no matter the valuation there's no longer any "lost" windfall unless something extreme happens.

## Small sum payments

Given how many creditors there are in the MtGox case, the logistics of the distribution process is a massive task that will incur significant expense. In order to somewhat simplify it, the trustee will make **small sum payments** of up to 200,000 JPY per creditor. In other words, **the first 200,000 JPY** of your combined claim will be paid out **in full** as JPY. This first applies to your fiat claim and then your crypto claim.



Similarly to the priority payments, the small sum payments count towards your claims; the paid out amount will be deducted from your remaining claim amounts. As a result, the smallest claims will be left at 0 after this payout and will not participate in the remaining distribution process.

For crypto claims, the small sum payment is **prorated between your BTC and BCH claim** according to their goxyen valuation. For example, a 200,000 JPY payment going entirely towards a crypto claim with 1 BTC and 1 BCH (= 749,318.83 + 97,481.19 goxyen) will result in 177,976.57 goxyen being subtracted from your BTC claim and 23,023.43 goxyen being subtracted from your BCH claim (0.236 BTC and 0.236 BCH), with those amounts being considered fully repaid.

Creditors who qualify for a priority payment will typically have no remaining fiat claim, and their small sum payment will thus count entirely towards their crypto claims (if any).

## Prorated payments

The priority payment and small sum payment are collectively referred to as the **base payments**, and will expend some of MtGox's assets but also reduce the amount of liabilities (claims). The remaining assets at this point will be distributed proportionally between remaining claims (i.e. prorated), with the ratio of remaining post-base payment assets to liabilities as the **final payment rate**. In other words, everyone is awarded the same percentage of their remaining claims.

Again, it is the **claim valuations** (i.e. goxyen) that are prorated, and that you won't receive your entire prorated goxyen amount as BTC/BCH but rather as a combination of fiat and BTC/BCH. To estimate the actual BTC/BCH amounts you can expect to receive you will need to run through the entire claim calculation.

## CoinLab and Fortress / MGIF

As previously mentioned, CoinLab is suing the MtGox estate for a large amount of money; they are currently suing for a 50B JPY claim, but they originally filed for (and are threatening to once again demand if successful in court) a truly ludicrous **1.69 trillion** yen (16 billion USD). This threat has been holding up the distribution process, seemingly as a deliberate strategy to hold other creditors' claims hostage as leverage.

While the MtGox trustee is first and foremost arguing that the court should strike down CoinLab's claim entirely, he is also asking the court to make an early determination that CoinLab is not legally allowed to reinflate their claim like they're threatening. If successful, this would cap CoinLab's claim at 50B JPY and would allow the trustee to begin distributing any other assets no longer within reach of CoinLab's sticky fingers.

(When suing for a claim in Japan, you are required to put up a security deposit of part of the claimed amount, precisely to prevent people from demanding ludicrous amounts. This is presumably the reason CoinLab sued for a lower amount of "only" 50B JPY, as they wouldn't be able to afford the deposit for a 1.69T JPY claim. This restriction would be toothless if you can simply reinflate your claim if it starts looking like you have a chance of winning.)

To break the stalemate, Fortress / MtGox Investment Fund LLP (MGIF), a claims buyer which is now one of the largest MtGox creditors, entered three-way negotiations with CoinLab and the trustee to try to unblock the distribution process. An agreement subsequently reached between the parties will allow early distribution of a significant portion of assets, though the trustee demanded guarantees for creditors that CoinLab only agreed to after MGIF essentially paid CoinLab $11M USD out of their own pocket.

### Early lump-sum payments

Normally, creditors will have to wait until the end of the entire civil rehabilitation process to receive their payouts (which thanks to CoinLab can easily take another 3–5 years, though the trustee will try to perform interim distributions). The proposed civil rehabilitation plan offers creditors an alternative: receive a single **early lump-sum payment** at a **fixed 21% payout rate** instead (in addition to the priority payment and small sum payment).

The 21% rate is calculated by the trustee to be a realistic estimate of the real final payment rate with a small buffer. The *best-case* estimate for the final payment rate (if the trustee wins every single dispute and nothing unexpected happens) is something like 23.6%, with realistic estimates being lower depending on how many additional claims are accepted. The early payment includes both fiat and BTC/BCH, same as the final payment.

In other words, the early lump-sum payment offers **at least 90%** of what you can realistically hope to get by staying in until the end, except you get paid much sooner. (Though again, the trustee is hoping to be able to perform interim distributions even for creditors who wish to stay on and wait for final payment.)

This early payout will almost certainly be an attractive option to many creditors, but let's look over the implementation and implications in a bit more detail.

To limit the risk to creditors who *don't* opt for early payment, the final payment rate at the end of the process is calculated as if there was no early payment for anyone. In other words, the final payment rate is a *hypothetical* calculation of what it was **supposed** to be, including assets and liabilities that are no longer there.

This means that if enough additional claims are admitted so that the final payment rate drops **below 21%**, there won't actually be enough assets left in the estate to pay all creditors that rate, since the 21% paid out in early payments turned out to be too high. If this happens, creditors who received early payment still keep their 21%. Instead, MGIF and CoinLab have agreed to *subordinate* their claims, meaning that the trustee first pays out all remaining normal creditors at the final payment rate, then CoinLab, and lastly MGIF, as long as remaining assets last. This effectively makes up for "overpaying" the creditors that opted for early payments.





If instead the outcomes of remaining claim disputes are favorable and the calculated final payment rate is **higher than 21%**, creditors who received early payments still only keep their 21%. This leaves a **surplus** of the difference for those claims, which gets **paid out to MGIF** as compensation for the risk taken by being subordinated in the previous scenario.



The current realistic best-case payment rate (in which the trustee wins all disputes and no additional claims get approved) is about **23.6%**. To reach a higher rate than this would require the recovery of **additional assets**, which is considered unlikely.

As such asset recoveries are considered exceptional events, the idea is that any recovered assets should be distributed fairly between creditors and not disproportionally benefit MGIF. To achieve this, the prorated final payment amount (which also forms the basis for MGIF's risk compensation) is **capped at 23.6%**, with any assets above that treated as a special surplus paid out to creditors with an additional distribution instead.

The type of distribution depends on how high the standard final payment rate would be. If enough assets are recovered to push it above 23.6% but **no higher than 24.6%**, the surplus is **divided proportionally between all creditors that remain for final payment** (i.e. everyone except creditors that opted for early payment).



If on the other hand significant assets were to be recovered pushing the payment rate **above 24.6%**, the entire amount exceeding 23.6% will instead be divided between **all** creditors, **including** those that opted for early payment.



Presumably the reason for the two different distribution types is that performing an additional distribution to early creditors is a costly affair, and if the recovered amount is small it could be mostly or entirely eaten up by this cost overhead.

Again, the above scenarios of significant asset recoveries should be considered **very unlikely**, and are mainly included in the plan for completeness. If you believe this can happen though, know that if enough additional assets are recovered you will benefit from them even if you opted for early payment.

In other words, in addition to guaranteeing creditors 21% of their claim (in goxyen), the early payment option is additionally guaranteed to be at most 3.6 percentage points lower than the final payouts, making it a very low-risk option if this worst-case haircut is acceptable.

Speaking of completeness, there are a few additional rules for these payouts providing both the trustee and MGIF with some flexibility for extreme cases. MGIF can for example provide a substitute fiat collateral instead and receive normal payouts along with everyone else. This post is already more than long enough though, so let's ignore these corner cases for now (I'll maybe revisit them at a later date).

## Crypto or fiat payouts

After you have been awarded a base payment and a prorated percentage of your remaining claim (21% if you opted for early payment, otherwise the final payment rate), you are left with simple awarded amounts of goxyen for BTC, BCH and JPY respectively. The last step is to translate these from goxyen back into **actual payout amounts**, and to receive them via your preferred payout method.

As mentioned previously, you will receive your BTC/BCH claims as a combination of fiat and BTC/BCH, the exact ratio of which will be determined so that the final payment expends all remaining BTC/BCH assets repaying remaining BTC/BCH claims. As such the ratio can only be estimated in advance (most likely something like 30% fiat). Rest assured though, **all BTC/BCH assets are being distributed**; this is just the accounting method to make sure all the fiat assets get distributed as well.

As the early lump-sum payment is also paid out in both fiat and BTC/BCH, it will use a ratio estimated by the trustee. As such it can differ from the final payment, as we can't perfectly

predict what will happen with remaining assets and liabilities, but the trustee will make a best-effort estimate.

(Similarly, the trustee will have to estimate the payment rate and ratio for any interim distributions for remaining creditors, so they can vary but the trustee will try to adjust to make the final amounts as fair and equal as possible.)

Once you have a specific amount of goxyen to receive as BTC/BCH for your awarded BTC/BCH claim, the amount is finally translated back to BTC/BCH using the fixed valuation rate; you get 1 real BTC for every awarded 749,318.83 goxyen of your BTC claim.

You will as part of the process be asked whether you want to receive any BTC/BCH claims **as BTC/BCH or as fiat**. Regardless of which you choose, **the calculation is the same up to this point**.

If you opt for BTC/BCH payouts, you will need to **register with a designated exchange** (the trustee will provide a list), the trustee will transfer coins in bulk to the exchange, and your exchange account will be **credited with your awarded BTC/BCH amount**.

Otherwise, the trustee will  **liquidate the coins for you** at current market value, and you will receive the proceeds together with any fiat claim payout via bank transfer. (You cannot receive fiat payouts to an exchange account.)


## Summary

Done! A simple explanation of the distribution process in only 3,000 words or so. (Don't worry, it's complicated for everyone else too.)

Let's summarize the main steps again:

1. Your claims in each currency is **converted into "goxyen"** at fixed valuations.
2. If you had a **bankruptcy fiat claim**, you're awarded **the entire bankruptcy valuation** of that claim plus 25.9% delay damages in full in goxyen.
3. Of your remaining combined fiat and crypto claims, you're awarded **the first 200,000 goxyen** in full, starting with fiat.
4. If you choose **early payment**, you get **21%** of your remaining claim amounts awarded as goxyen.
5. Otherwise, you **wait** until the end of the process for the **final payment rate**. (There may be interim distributions while you wait.)
6. Of your awarded BTC/BCH claims, some of the amount will be repaid in JPY (30% or so), so your actual awarded BTC/BCH will be lower than the nominal payout rate.
7. You can receive your awarded BTC/BCH at a **designated exchange**, alternatively the trustee will **sell** the coins for you and send you the resulting cash instead.

### How do I choose?

Should you choose early payment or wait for final payment? Both are valid choices and only you can determine which is right for you.

While there is a decent chance that the final payment rate will be higher than the early payment's 21%, you might not be at a point in life where you can afford to wait a long time, or feel that the opportunity cost of waiting is too significant. If you believe the BTC price will keep increasing for example, maybe you want to invest the fiat part of your payout back into BTC as soon as possible. If you were previously considering selling your claim to one of the private claims buyers, this early payment is a vastly superior option.

There is also the risk that the final payment can be lower than expected, maybe even catastrophically so. The outcomes of the legal disputes can't be confidently predicted, so there might be a significant increase in claims, possibly even from a CoinLab victory. In such a scenario, you will have waited several more years only to receive less than the creditors who opted for early payments.

The trustee has indicated that more information will be proveded before you have to choose, such as information about any planned interim distributions, and there will no doubt be a lot of shared information and discussion between creditors as well. For some of the best and most informed discussions, I recommend joining **MtGoxLegal** if you haven't already.

## What happens next?

First of all, the court has to approve the submitted rehabilitation plan proposal. This should hopefully happen without incident.

Next, creditors have to **vote** on the plan. In order for the rehabilitation plan to be be accepted, **over 50% of cast votes** must be in favor, but they must also represent **over 50% of all determined claim value** (in goxyen). The latter requires hundreds of the largest creditors to vote in favor of the plan, and while this will probably happen, with large creditor groups ready to organize and rally everyone to vote in favor. Remember, the only alternative on the table is to return to bankruptcy, which means **less money for everyone**.

To reiterate: when it's time to vote, **you should absolutely vote YES for the civil rehabilitation plan**, or we all risk losing everything we fought for over the last several years!

The court may however worry that the vote may fail due to the difficulty reaching the large number of creditors spread out all over the world, and out of caution set the voting period to a very long time (e.g. a whole year). This would be unfortunate as it would cause another significant delay before payouts can happen, and as such creditors are asking the court to set a shorter voting period.

---

# MtGox Claim Calculator
**version 1.2 (20210215)**

⚠ **Warning:** This calculator is based on an **unofficial** best-effort understanding of the process and estimates of assets and claims. No guarantees are made as to its correctness or accuracy; if you need accurate estimates, consult a legal expert.

💡 This calculator does not model every aspect of the rehabilitation plan, such as Intermediate Payments. Consider checking out **MtGoxLegal** for more in-depth models and calculators!

### Step 1: Enter your approved claim size:

| | | Civil rehabilitation valuation | Bankruptcy valuation |
|---|---|---|---|
| 42.97104000 | BTC | 32,199,009 JPY | 2,151,049 JPY |
| 42.97104000 | BCH | 4,188,868 JPY | |
| 0.00 | USD | | |
| 0.00 | EUR | | |
| 0.00 | JPY | | |
| 0.00 | GBP | | |
| 0.00 | AUD | | |
| 0.00 | CAD | | |
| 0.00 | CHF | | |
| 0.00 | PLN | | |
| 0.00 | NZD | | |
| 0.00 | HKD | | |
| 0.00 | RUB | | |
| 0.00 | NOK | | |
| 0.00 | SEK | | |

| | | |
|---|---|---|
| 0.00 DKK | | |
| 0.00 SGD | | |
| 0.00 CZK | | |
| 0.00 INR | | |
| 0.00 CNY | | |
| 0.00 THB | | |
| 0.00 KRW | | |
| Total crypto claims: | 36,387,878 JPY | 2,151,049 JPY |
| Total fiat claims: | 0 JPY | |
| Total claim valuation: | **36,387,878** JPY | 2,151,049 JPY |

## Step 2: Did you previously file a bankruptcy claim?

Yes ⌄

Bankruptcy fiat claim:

Delay damages:

**Priority Payment:**

💡 For any **fiat** claims from the bankruptcy process, the **full bankruptcy valuation** will be paid out, including delay damages for the period until the start of civil rehabilitation.

⚠ This calculator assumes your bankruptcy claim was the same size as your civil rehabilitation claim.

Claim remaining:      36,387,878 JPY (crypto)

## Step 3: Small Sum Payment

Applicable fiat claim:

Applicable crypto claim:      200,000 JPY

**Small Sum Payment:**      **200,000** JPY

💡 Every creditor receives up to **200,000 JPY** as a Small Sum Payment. The payment counts first towards any fiat claims, then towards crypto claims. This helps remove many small claims and simplifies final distribution. The Small Sum Payment is paid out in JPY.

Claim remaining:      36,187,878 JPY (crypto)

## Step 4: Choice of Early Lump-Sum Payment or Final Payment

At this stage creditors split all remaining assets proportionally according to their remaining claim size. You will be given a choice between a fixed **early payout** or taking your chances and waiting for the **final results**.

Early Lump-Sum Payment ⌄

💡 The **Early Lump-Sum Payment** option gives you a **fixed 21%** of your remaining claim. This number is based on the trustee's estimate of the final percentage. Your claim against current assets will be considered already settled regardless of what the actual percentage ends up being, though you can still share in hypothetical **future recoveries** of additional assets.

💡 The **Final Payment** option means waiting in all likelihood several more years until the end of civil rehabilitation, while remaining disputes run their course. The final payout rate will depend on actual assets and liabilities remaining at that point. If the trustee wins the majority of disputes or additional assets are recovered, this can lead to a **higher payout than 21%**.

However, if the trustee loses ongoing disputes or costs are greater than anticipated, the payout can **drop below 21%**. In extreme cases (such as CoinLab winning its lawsuit), the trustee could be forced to liquidate more coins.

**ESTIMATED PAYOUT**

| | | |
|---|---|---|
| Priority Payment | | |
| Small Sum Payment | | 200,000 JPY |
| Early Lump-Sum Payment | | 21.00 % |

| | | | | |
|---|---|---|---|---|
| BTC claim | 14.82 % 4,746,587 JPY | + | 6.18 % 1,978,040 JPY | |
| BCH claim | 14.94 % 622,554 JPY | + | 6.06 % 252,274 JPY | |
| Fiat claims | | | 21.00 % 0 JPY | |

**PAYOUT**    6.33453614 BTC  +  6.38639874 BCH  +  2,430,313 JPY

☑ Current market value in  [ USD ▾ ]         347,083.74 USD

Live rates from Blockchain.com, ratesapi.io

💡 If you opt to receive BTC/BCH the trustee will credit your account at a designated exchange. Otherwise the trustee will liquidate the coins on your behalf and add the proceeds to your fiat payment.

⚠ These **estimated** payouts depend heavily on the many assumptions used by this calculator; play around with them below to get a feel for the possible spread.

▶ **Tweak calculator assumptions?**

Posted by Kim Nilsson

ⓘⓧ

# Illinois Bankruptcy Attorney

## Start Bankruptcy For $0 Down

File Your Bankruptcy Case in a Convincing Manner. Get Help from Our Attorneys. Call Today.

contact.piolettilaw.com

OPEN

Home                          Older Post

---

**About WizSec**



This research is a voluntary effort. If you wish to express appreciation and encourage more of this, please consider donating bitcoin to **1nikuYD1PUhAkhJaQWzLiLahuJBe9a2sZ**.

Theme images by Petrovich9. Powered by Blogger.

# EXHIBIT C

Get the App

# Convert 2,430,313 JPY to USD

Xe Currency Converter



$$Convert \qquad Send \qquad Charts \qquad Alerts$$

**Amount**

¥2,430,313

**From**

🔴 **JPY** ▾
Japanese Yen

**To**

🇺🇸 **USD** ▾
US Dollar

2,430,313 Japanese Yen =

## 22,318.8197644031 US Dollars

1 JPY = 0.00918352 USD
1 USD = 108.891 JPY

✈ Transfer your USD to 2,430,313 JPY

View transfer quote

Japanese Yen to US Dollar conversion

Mid-market exchange rate - last updated Mar 8, 2021, 17:26 UTC

Feedback 🚀